MCJGellP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4               v.                        22 Cr. 673 (RA)

5  CAROLINE ELLISON,

6                                         Plea
               Defendant.
7  ------------------------------x

8
                                         New York, N.Y.
9                                        December 19, 2022
                                         4:30 p.m.
10

11 Before:

12                    HON. RONNIE ABRAMS,

13                                       District Judge

14
                        APPEARANCES
15
   DAMIAN WILLIAMS
16      United States Attorney for the
        Southern District of New York
17 DANIELLE SASSOON
   NICOLAS ROOS
18      Assistant United States Attorney

19 ANJAN SAHNI
   PETER G. NEIMAN
20 STEPHANIE AVAKIAN
   NICK WERLE
21      Attorneys for Defendant

22 Also Present:

23 Lea Harmon, Pretrial Services Officer

24

25

MCJGellP

1              (Case called)

2              LAW CLERK:  Counsel, please state your name for the

3      record.

4              MS. SASSOON:  Good afternoon, your Honor.  Danielle

5      Sassoon and Nick Roos for the United States.  And with us at

6      counsel's table is Lea Harmon from pretrial services.

7              THE COURT:  Good afternoon to all of you.

8              MR. SAHNI:  Good afternoon, your Honor.  Anjan Sahni,

9      Peter Neiman, Stephanie Avakian and Nick Werle from WilmerHale

10     on behalf of Ms. Caroline Ellison.

11             THE COURT:  Good afternoon to all of you.

12             I do want to note for the record that Mr. Sahni and I

13     worked together at the US attorney's office many years ago.

14             You can be seated.

15             As I said in my endorsement earlier today, I do not

16     believe that Ms. Ellison has met the high standard for closing

17     the courtroom.  I intend to file her letter requesting as much

18     together with my endorsement once the other filings in this

19     matter have been unsealed.  And I'll address the related

20     sealing issues at the end of this proceeding.

21             So, Ms. Ellison, I understand that you wish to plead

22     guilty to Counts One through Seven of the superseding

23     information; is that correct?

24             THE DEFENDANT:  Yes.

25             THE COURT:  So before deciding whether to accept you

MCJGellP

1    plea, I'm going to ask you certain questions so that I can be

2    sure you understand your rights and that you are pleading

3    guilty voluntarily and because you are guilty and not for any

4    other reason.  It's important that you answer my questions

5    honestly and completely, but if at any time you have questions

6    about anything, feel free to ask me or feel free to consult

7    with your counsel; okay?

8                THE DEFENDANT:  Okay.

9                THE COURT:  Could you please place Ms. Ellison under

10   oath.

11               (Defendant sworn)

12               THE COURT:  So you are now under oath.  You should

13   know if you answer any of my questions falsely, you could be

14   charged with a separate crime of perjury.

15               Do you understand that?

16               THE DEFENDANT:  Yes.

17               THE COURT:  So I'm going to start by asking you

18   questions to ensure that you are competent to plead guilty.

19   These are questions I ask of everyone in your situation.

20               How old are you?

21               THE DEFENDANT:  28.

22               THE COURT:  How far did you go in school?

23               THE DEFENDANT:  I got a bachelor's degree.

24   ████████████     ██████████████████████████

25   █████████████████████████████████████████████████

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

MCJGellP

1      ███████████

2                 ██████████████    ████████████████████████

3      ████████████████████

4               █████████    ███████████████████████

5      ██████████████████████████████████████████

6      ██████████████████

7               ██████████   ████

8      THE COURT:  Have you ever been hospitalized for mental

9  illness, alcoholism or drug addiction?

10     THE DEFENDANT:  No.

11     THE COURT:  In the past 24 hours, have you taken any

12  drugs, medicine or pills or drunk any alcoholic beverages?

13     THE DEFENDANT:  I had one beer at about 8:00 p.m. last

14  night.  That's it.

15     THE COURT:  Is your mind clear today?

16     THE DEFENDANT:  Yes.

17     THE COURT:  And do you understand what's happening in

18  these proceedings?

19     THE DEFENDANT:  Yes.

20     THE COURT:  Does either counsel have any doubt as to

21  Ms. Ellison's competence to plead guilty at this time?

22     MS. SASSOON:  No doubt, your Honor.

23     MR. SAHNI:  No, your Honor.

24     THE COURT:  On the basis of Ms. Ellison's responses to

25  my questions and my observations of her demeanor here in court

MCJGellP

```
 1    and representations of counsel, I find that she's fully

 2    competent to enter an informed plea of guilty at this time.

 3             Have you had enough time and opportunity to discuss

 4    your case with your attorneys, including the nature of the

 5    charges to which you intend to plead guilty to and any possible

 6    defenses you may have?

 7             THE DEFENDANT:  Yes, I have.

 8             THE COURT:  Have you had enough time to discuss with

 9    them the consequences of pleading guilty and the sentence which

10    may be imposed?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Are you satisfied with their

13    representation of you?

14             THE DEFENDANT:  Yes.

15             THE COURT:  So I understand, as I noted, that you

16    intend to plead guilty to the charges contained in a

17    superseding information, which is a document containing a

18    formal accusation brought by the government.

19             Have you received a copy of the superseding

20    information?

21             THE DEFENDANT:  Yes, I have.

22             THE COURT:  And have you read it?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Have you discussed it with your attorneys?

25             THE DEFENDANT:  Yes.
```

MCJGellP

1          THE COURT:  Would you like me to read it out loud or

2     do you waive its public reading?

3          THE DEFENDANT:  I waive the public reading.

4          THE COURT:  So under our legal system, before you or

5     anyone else can be charged with a felony offense, the

6     government is obligated to go to a grand jury, which must

7     decide whether there's probable cause to believe that an

8     offense was committed and that you committed it, and that

9     decision can result in what's called an indictment.  I want to

10    make sure that you understand that by allowing the government

11    to charge you by way of this superseding information, you are

12    giving up your right to being charged by a grand jury in an

13    indictment.

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  And I have a waiver of indictment form

16    that you appear to have signed.

17         Did you just sign this waiver of indictment form?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And did you discuss it with your attorneys

20    before signing it?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Were any threats or promises made -- other

23    than by the prosecution in the written plea agreement -- to get

24    you to waive indictment?

25         THE DEFENDANT:  No.

MCJGellP

1          THE COURT:  Does any counsel believe that Ms. Ellison

2     has not knowingly and voluntarily waived her right to be

3     charged by a grand jury?

4          MR. SAHNI:  No, your Honor.

5          MS. SASSOON:  It appears her waiver is knowing, your

6     Honor.

7          THE COURT:  I find that Ms. Ellison has knowingly and

8     voluntarily waived her right to be charged by a grand jury and

9     authorize the filing of the information.

10         So what now I'm going to do is explain certain

11    constitutional rights that you have to you.  These are rights

12    that you will be giving up if you enter a guilty plea.

13         First, under the Constitution and laws of the United

14    States, you have a right to plead not guilty to the charges in

15    the superceding information.

16         Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  If you did plead not guilty, you would be

19    entitled under the Constitution to a speedy and public trial by

20    jury to those charges.

21         Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  In advance of trial, if you went to trial,

24    you would have the opportunity to seek suppression of any or

25    all of the evidence against you, on the basis that it was

MCJGellP

1    obtained in violation of the Constitution.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  At trial, again, if you chose to go to

5    trial, you would be presumed innocent.  That means that you

6    would not have to prove that you were innocent.  Instead, the

7    government would need to prove your guilt beyond a reasonable

8    doubt before you could be found guilty.  So even if you did

9    nothing or said nothing at trial, you could not be convicted

10   unless a jury of 12 people agreed unanimously that you are

11   guilty.

12             Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  During trial, if you chose to go to trial,

15   the witnesses for the prosecution would have to come to court

16   and testify in your presence, where you could see them and hear

17   them and your lawyer could cross-examine them.  If you wanted

18   to, your lawyer could offer evidence on your behalf.  You would

19   be able to use the Court's power to compel witnesses to come to

20   court to testify truthfully in your defense, even if they

21   didn't want to come.

22             Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And at trial, again, if you went to trial,

25   you would have the right to testify if you wanted to, but you

MCJGellP

1    would also have the right not to testify.  And if you chose not

2    to testify, that could not be used against you in any way.  So

3    no inference or suggestion of guilt could be made from the fact

4    that you chose not to testify.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  At trial and every stage of your case, you

8    would be entitled to be represented by an attorney.  And if you

9    could not afford an attorney, one would be appointed at public

10   expense, meaning free of cost, to represent you.

11             Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  If you were convicted at trial, if you

14   chose to go to trial, you would have the right to appeal that

15   verdict to a higher court.

16             Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  As I said before, you have the right to

19   plead not guilty.  So even as you sit here right now for

20   purposes of entering a guilty plea, you have the right to

21   change your mind and to go to trial.  If you do plead guilty

22   and I accept your plea, there will be no trial and you will be

23   giving up the rights that I just described.

24             Do you understand that?

25             THE DEFENDANT:  Yes.

MCJGellP

1          THE COURT:  If you plead guilty, I will sentence you

2     at the appropriate time based on your admissions, after

3     considering whatever submissions I get from you and from your

4     lawyers and from the government, as well as a presentence

5     report prepared by the probation department.  But there will be

6     no appeal with respect to whether the government could use the

7     evidence it has against you or with respect to whether you did

8     or did not commit the crime.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  If you plead guilty, you also have to

12     understand that you are giving up your right not to incriminate

13     yourself since I'm going to ask you certain questions here in

14     court today in order to satisfy myself that you are in fact

15     guilty as charged.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  So I understand that you intend to plead

19     guilty to Counts One through Seven of the superseding

20     information, and that includes conspiracy to commit wire fraud

21     on customers, wire fraud on customers, conspiracy to commit

22     wire fraud on lenders, wire fraud on lenders, conspiracy to

23     commit commodities fraud, conspiracy to commit securities fraud

24     and conspiracy to commit money laundering.

25          Would the government please state the elements of the

MCJGellP

1    offenses in question.

2              MS. SASSOON:  Yes, your Honor.

3              Counts One and Three charge the defendant with

4    conspiracy to commit wire fraud in violation of 18 USC 1349.

5    This has two elements:

6              First, the existence of the conspiracy to commit wire

7    fraud, and I'll walk through the elements of wire fraud in a

8    moment; and

9              Second, that the defendant knowingly and willfully

10   became a member and joined in the conspiracy.

11             The elements of wire fraud -- and wire fraud is also

12   charged in Counts Two and Four in the superseding

13   information -- are as follows:

14             First, that there was a scheme or artifice to defraud

15   or to obtain money or property by materially false and

16   fraudulent pretenses, representations or promises;

17             Second, that the defendant knowingly participated in

18   the scheme or artifice to defraud with knowledge of its

19   fraudulent nature and with specific intent to defraud, or that

20   she knowingly and intentionally aided and abetted others in the

21   scheme; and

22             Third, that in the execution of that scheme, the

23   defendant used or caused the use of interstate or international

24   wires, and wires refers to use of the telephone, text messages,

25   emails, and it also refers to wire transfers of funds.

MCJGellP

1          Count Five charges conspiracy to commit commodities

2     fraud in violation of 18 USC §371.  Conspiracy under 371 has

3     three elements:

4          First, that two or more persons entered the unlawful

5     agreement charged in the specific count of the indictment;

6          Second, that the defendant knowingly and willfully

7     became a member of that conspiracy; and

8          Third, that one of the members of the conspiracy

9     knowingly committed at least one overt act in furtherance of

10     the conspiracy.

11          Count Five charges the defendant with conspiracy to

12     commit commodities fraud in violation of Title 7 United States

13     Code §91 and 13(a)(5) and Title 17 Code of Federal Regulations

14     §180.1.  And there are three elements to this crime:

15          First, in connection with any swap or contract of sale

16     of any commodity in interstate commerce or contract for future

17     delivery on or subject to the rules of any registered entity;

18          Second, the defendant or one of her coconspirators did

19     any one of the following:  A, employed or attempted to use or

20     employ a manipulative device, scheme or artifice to defraud; B,

21     made or attempted to make an untrue or misleading statement of

22     a material fact or omitted to state a material fact necessary

23     in order to make the statements made not untrue or misleading;

24     or C, engaged or attempted to engage in an act, practice or

25     course of business that operated or would operate as a fraud or

MCJGellP

deceit upon any person; and

　　　　Third, that the defendant acted knowingly, willfully
and with the intent to defraud.

　　　　Count Six charges a conspiracy to commit securities
fraud in violation of Title 18 United States Code §371.  I
listed the elements of 371, so I'll now state the elements of
securities fraud in violation of Title 15 United States Code
§78JB and 78FF and Title 17 Code of Federal Regulations
§240.10b-5.  There are three elements:

　　　　First, that in connection with the purchase or sale of
securities, the proposed defendant either employed a device,
scheme or artifice to defraud or made an untrue statement of
material fact or omitted to state a material fact which made
what was said under the circumstances misleading, or three,
engaged in an act, practice or course of business that operated
or would operate as a fraud or deceit upon a purchaser or
seller;

　　　　Second, the defendant acted knowingly, willfully, and
with intent to defraud; and

　　　　Third, that the defendant knowingly used or caused to
be used any means or instruments of transportation or
communication in interstate commerce or the use of the mails in
furtherance of the fraudulent conduct.

　　　　The last count, Count Seven, charges the defendant
with conspiracy to commit money laundering in violation of 18

MCJGellP

USC §1956(h).  The elements of money laundering conspiracy are:

First, that two or more people entered into an unlawful agreement to commit money laundering; and

Second, that the defendant knowingly and willfully entered into the agreement.

Count Seven charges two objects of the conspiracy:

First, a concealment object, that the defendant conducted or attempted to conduct a financial transaction which must in some way or degree have affected interstate or foreign commerce;

Second, that the financial transaction at issue involved the proceeds of specified unlawful activity, which here is alleged to have been a wire fraud scheme;

Third, that the defendant knew that the financial transaction involved the proceeds of some form of unlawful activity; and

Fourth, that the defendant knew that the transaction was designed in whole or in part to either disguise the nature, location, source, ownership or control of the proceeds of the unlawful activity.

The second object of the money laundering conspiracy is engaging in money transactions of over $10,000 in property derived from specified unlawful activity.  The elements are:

First, that the defendant engaged in a monetary transaction in or affecting interstate commerce;

MCJGellP

Second, that the monetary transaction involved
criminally derived property of a value greater than $10,000;

Third, that the property was derived from specified
unlawful activity;

Fourth, that the defendant acted knowing that the
transaction involved proceeds of a criminal offense; and

Fifth, that the transaction took place in the United
States.

If this case proceeded to trial, the government would
also have to prove venue in the Southern District of New York
by a preponderance of the evidence.

THE COURT:  Thank you.

Ms. Ellison, I know that was a lot of legalese, but
the real question is:  Do you understand if you were to go to
trial, the government would need to prove all of the elements
of those crimes to a jury beyond a reasonable doubt, as well as
venue at a lower standard, by a preponderance of the evidence?

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  So now let's discuss the maximum
penalties.  The maximum means the most that could possibly be
imposed.  It doesn't necessarily mean it is the sentence you
will receive.  But you have to understand that by pleading
guilty, are you exposing yourself to the possibility of
receiving any combination of punishments up to the maximums I'm

MCJGellP

1  about to describe.

2         So the maximum sentences for Counts One, Two, Three

3  and Four are all the same, so I'm going to read them together,

4  okay, at once.  So with respect to your liberty, the maximum

5  term of imprisonment for each of the four counts, One through

6  Four, is 20 years in prison.

7         Do you understand that?

8         THE DEFENDANT:  Yup.

9         THE COURT:  Any term of imprisonment that you do

10 receive may be followed by a term of supervised release of

11 three years on each count.

12        Do you understand that?

13        THE DEFENDANT:  Yup.

14        THE COURT:  Supervised release means that, if you are

15 sentenced to prison, after you are released from prison, you

16 will be subject to the supervision of the probation department,

17 you will be required to obey certain rules, and if you violate

18 those rules, you can be returned to prison without a jury trial

19 to serve additional time even beyond your original sentence.

20        Do you understand that?

21        THE DEFENDANT:  Yup.

22        THE COURT:  You should also understand that there is

23 no parole in the federal system.  So if you are sentenced to

24 prison, you will not be released early on parole.  Although,

25 there is a limited opportunity to earn credit for good

MCJGellP

1    behavior.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Now, in addition to these restrictions on

5    your liberty, the punishment for these crimes may also include

6    certain financial penalties.  The maximum allowable fine on

7    each of Counts One through Four is $250,000, twice the gross

8    pecuniary gain derived from the offense or twice the gross

9    pecuniary loss to persons other than yourself resulting from

10   the offense, whichever is greatest.

11             Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  I'm also required to impose a mandatory

14   special assessment or fee of $100 on each count.

15             Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  In addition, I must order restitution to

18   any persons or entities injured as a result of your criminal

19   conduct, and I can order you to forfeit all property derived

20   from the offense or used to facilitate the offense.

21             So do you understand that those are the maximum

22   penalties for each of Counts One through Four?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Now, we're going to turn to Counts Five

25   through Six.  And again, I'm going to group these and talk

MCJGellP

1    about them together.

2              With respect to your liberty on Counts Five and Six,

3    the maximum term of imprisonment for each count is five years.

4              Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Any term of imprisonment may be followed

7    by a term of supervised release of three years on each count.

8    And in addition, the punishment, again, includes certain

9    financial penalties.  The maximum allowable penalty is, again,

10   $250,000 for each of Counts Five and Six or twice the gross

11   pecuniary gain derived from the offense or twice the gross

12   pecuniary loss to persons other than yourself resulting from

13   the offense, whichever is greatest.

14             Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Again, I'm required to impose a mandatory

17   special assessment of $100 on each count.  And I must order

18   restitution to any persons or entities injured as a result of

19   your criminal conduct, and I can order you to forfeit all

20   property derived from the offense or used to facilitate the

21   offense.

22             And then lastly, on Count Seven, that has a maximum

23   term of imprisonment of 20 years and a maximum term of

24   supervised release of three years, a maximum allowable fine of

25   $500,000 or twice the value of the property involved in the

MCJGellP

1     transaction, whichever is greater.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  I'm also required to impose the mandatory

5     special assessment of $100, as I mentioned earlier, on each of

6     these counts.  And I must, again, order restitution to any

7     persons or entities injured as a result of your criminal

8     conduct, and I can order you to forfeit all property derived

9     from the offense or used to facilitate the offense.

10             Do you understand that these are the maximum penalties

11     for each of the counts, Counts One through Seven?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that the total maximum

14     sentence of incarceration on Counts One through Seven of the

15     superseding information is 110 years in prison?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Is Ms. Ellison now serving a state or

18     federal sentence or otherwise being prosecuted or investigated

19     elsewhere, as far as you know?

20             MS. SASSOON:  No, your Honor, not criminally

21     investigated.

22             THE COURT:  Understood.  Thank you.

23             So you should be aware that the punishments that I

24     have just described are those that may be part of a sentence.

25     Being convicted of a felony may have other consequences.

MCJGellP

```
1               Are you a United States citizen?

2               THE DEFENDANT:  Yes.

3               THE COURT:  Then you should understand that as a

4  result of your guilty plea, you may lose certain valuable civil

5  rights, to the extent that you have them now, such as the right

6  to vote, the right to hold public office, the right to serve on

7  a jury and the right to possess any kind of firearm.

8               Do you understand that?

9               THE DEFENDANT:  Yes.

10              THE COURT:  So now we're going to talk about the

11 sentencing guidelines.  In imposing sentence, federal judges

12 are required to consider the recommendations of the federal

13 sentencing guidelines.  The guidelines are a complicated set of

14 rules for determining an appropriate sentence.  And although,

15 at one time, they were mandatory -- meaning judges were

16 required to follow them -- they are no longer mandatory or

17 binding on judges, but nonetheless, judges must consider the

18 guidelines and properly calculate them before imposing

19 sentence.

20              Ultimately, though, a judge is required to give the

21 sentence that she believes best satisfies the purposes of the

22 criminal law as set forth in a provision of the law, which is

23 18 United States Code §3553(a), even if that's higher or lower

24 than a guidelines recommendation.

25              Do you understand all of that?
```

MCJGellP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Did you discuss the sentencing guidelines

3    with your attorneys?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And do you understand that they're only

6    recommendations to the Court?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, I understand that you have entered

9    into a written plea agreement with the government; is that

10   correct?

11         THE DEFENDANT:  Yes.

12         THE COURT:  I have before me an agreement that's dated

13   December 18th, addressed to your attorneys, signed by various

14   representatives on behalf of the government.  I'm going to mark

15   it as Court Exhibit 1.  And I'm going to ask my law clerk just

16   to show it to you and ask you if your signature is on the last

17   page.

18         Is that your signature?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Before you signed this agreement, did you

21   read the entire agreement?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And did you discuss it with your

24   attorneys?

25         THE DEFENDANT:  Yes.

MCJGellP

1      THE COURT:  I understand it's a somewhat lengthy

2  document, it contains some technical legal language.  But after

3  reviewing it and discussing it with your attorneys, do you

4  understand all of the terms of the agreement?

5      THE DEFENDANT:  Yes.

6      THE COURT:  Do you have any questions about it?

7      THE DEFENDANT:  No.

8      THE COURT:  I'm going to ask the government to

9  summarize the primary terms of the agreement.

10      MS. SASSOON:  Yes, your Honor.

11      The agreement begins by outlining the seven charges to

12  which Ms. Ellison will plead guilty and the penalties

13  associated with those charges.  It specifies that the defendant

14  is agreeing to waive any defense related to venue with respect

15  to the seven charges in the information.  The defendant admits

16  to the forfeiture allegations and states that she understands

17  she'll be making restitution with respect to the charges.

18      The agreement then describes some of the terms of the

19  defendant's cooperation with the government and the obligations

20  she's committing to in order to fulfill her cooperation with

21  the government.  It then outlines essentially the defendant's

22  immunity that she's receiving under this agreement, both for

23  the charges in Counts One through Seven and also other conduct

24  in which she has engaged and disclosed to the government.

25      On page 4, the agreement outlines what the government

MCJGellP

1    will do if the defendant provides substantial assistance to the

2    government and upholds her end of the cooperation agreement,

3    including informing the Court of her assistance and making a

4    motion under United States Sentencing Guidelines §5K1.1, while

5    noting that her sentence is ultimately going to be determined

6    by the Court at the time of sentencing.

7              On page 5, the agreement outlines the proposed bail

8    package to the Court for the defendant.  And the agreement also

9    notes that the defendant has chosen not to request discovery

10   materials and understands that the government will also not be

11   producing any discovery or material under *Brady* and *Giglio.*

12             THE COURT:  Thank you.

13             Ms. Ellison, is that consistent with your

14   understanding of this agreement?

15             THE DEFENDANT:  Yes, it is.

16             THE COURT:  I'm just going to follow up just very

17   briefly with two of them.

18             I want you to understand that it's up to the

19   government and not to me to decide whether whatever cooperation

20   you provide is productive enough for the government to file the

21   5K1.1 motion it mentioned and recommend a sentence that's below

22   the sentencing guidelines.

23             Do you understand that's up to the government?

24             THE DEFENDANT:  Yes.

25             THE COURT:  You should also understand that even if

MCJGellP

1    the government does that, it's ultimately up to me to decide

2    whether to give you any credit and, if so, how much for any

3    cooperation you may have provided.

4              Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Did you willingly sign this agreement?

7              THE DEFENDANT:  Yes, I did.

8              THE COURT:  Are you willingly pleading guilty today?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Has anyone threatened, bribed or forced

11   you either to sign the plea agreement or to plead guilty?

12             THE DEFENDANT:  No.

13             THE COURT:  Other than what's in the plea agreement,

14   has anyone offered you any inducement to plead guilty?

15             THE DEFENDANT:  No.

16             THE COURT:  Has anyone made any promise to you as to

17   what your sentence will be?

18             THE DEFENDANT:  No.

19             THE COURT:  Do you understand that if anyone has

20   attempted to predict what your sentence will be that that

21   prediction will be wrong?

22             Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And I say that because no one here knows

25   for sure what your sentence will be -- your lawyers don't, the

MCJGellP

1   government doesn't, I don't -- because that's not going to be

2   determined until a later date, after I get a presentence report

3   from the probation department, I calculate the guidelines, I

4   get submissions from you, the government and the probation

5   department.

6           But even if your sentence is different from what you

7   had hoped for or expected, you won't be allowed to withdraw

8   your plea on that basis.

9           Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  So now that you have been advised of the

12  charges against you and the possible penalties you face and the

13  rights you are giving up, is it still your intention to plead

14  guilty?

15          THE DEFENDANT:  Yes, it is.

16          THE COURT:  So I'm going to ask you the official

17  question as to whether you are guilty or not guilty with

18  respect to each of the seven counts, one at a time.

19          So with respect to Count One of the superseding

20  information, conspiracy to commit wire fraud on customers, how

21  do you plead?

22          THE DEFENDANT:  Guilty.

23          THE COURT:  And with respect to Count Two, wire fraud

24  on customers, how do you plead?

25          THE DEFENDANT:  Guilty.

MCJGellP

1          THE COURT:  With respect to Count Three, conspiracy to

2   commit wire fraud on lenders, how do you plead?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  With respect to Count Four, wire fraud on

5   lenders, how do you plead?

6          THE DEFENDANT:  Guilty.

7          THE COURT:  With respect to Count Five, conspiracy to

8   commit commodities fraud, how do you plead?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  With respect to Count Six, conspiracy to

11   commit securities fraud, how do you plead?

12          THE DEFENDANT:  Guilty.

13          THE COURT:  With respect to Count Seven, conspiracy to

14   commit money laudering, how do you plead?

15          THE DEFENDANT:  Guilty.

16          THE COURT:  Now, tell me in your own words what you

17   did that makes you believe that you are guilty of these crimes.

18          THE DEFENDANT:  Yeah, so from approximately March 2018

19   through November 2022 --

20          THE COURT:  I'm going to ask you to speak very slowly,

21   please.  Thank you.

22          THE DEFENDANT:  From approximately March 2018 through

23   November 2022, I worked at Alameda Research, a cryptocurrency

24   trading firm principally owned by Sam Bankman-Fried.  At

25   Alameda Research, I first worked as a cryptocurrency trader and

MCJGellP

was later appointed by Mr. Bankman-Fried as the co-CEO and
eventually CEO of Alameda Research Ltd., the subsidiary that
housed the firm's main trading and market making operations.
In those roles, I reported to Mr. Bankman-Fried.

From 2019 through 2022, I was aware that Alameda was
provided access to a borrowing facility on FTX.com, the
cryptocurrency exchange run by Mr. Bankman-Fried.  I understood
that FTX executives had implemented special settings on
Alameda's FTX.com account that permitted Alameda to maintain
negative balances in various fiat currencies and crypto
currencies.  In practical terms, this arrangement permitted
Alameda access to an unlimited line of credit without being
required to post collateral, without having to pay interest on
negative balances and without being subject to margin calls or
FTX.com's liquidation protocols.  I understood that if
Alameda's FTX accounts had significant negative balances in any
particular currency, it meant that Alameda was borrowing funds
that FTX's customers had deposited onto the exchange.

While I was co-CEO and then CEO, I understood that
Alameda had made numerous large illiquid venture investments
and had lent money to Mr. Bankman-Fried and other FTX
executives.  I also understood that Alameda had financed these
investments with short-term and open-term loans worth several
billion dollars from external lenders in the cryptocurrency
industry.  When many of those loans were recalled by Alameda's

MCJGellP

lenders in and around June 2022, I agreed with others to borrow
several billion dollars from FTX to repay those loans.  I
understood that FTX would need to use customer funds to finance
its loans to Alameda.  I also understood that many FTX
customers invested in crypto derivatives and that most FTX
customers did not expect that FTX would lend out their digital
asset holdings and fiat currency deposits to Alameda in this
fashion.

From in and around July 2022 through at least
October 2022, I agreed with Mr. Bankman-Fried and others to
provide materially misleading financial statements to Alameda's
lenders.  In furtherance of this agreement, for example, we
prepared certain quarterly balance sheets that concealed the
extent of Alameda's borrowing and the billions of dollars in
loans that Alameda had made to FTX executives and to related
parties.  I also understood that FTX had not disclosed to FTX's
equity investors that Alameda could borrow a potentially
unlimited amount from FTX, thereby putting customer assets at
risk.  I agreed with Mr. Bankman-Fried and others not to
publicly disclose the true nature of the relationship between
Alameda and FTX, including Alameda's credit arrangement.

I also understood that Mr. Bankman-Fried and others
funded certain investments in amounts more than $10,000 with
customer funds that FTX had lent to Alameda.  The investments
were done in the name of Alameda instead of FTX in order to

MCJGellP

1     conceal the source and nature of those funds.

2             I am truly sorry for what I did.  I knew that it was

3     wrong.  And I want to apologize for my actions to the affected

4     customers of FTX, lenders to Alameda and investors in FTX.

5     Since FTX and Alameda collapsed in November 2022, I have worked

6     hard to assist with the recovery of assets for the benefit of

7     customers and to cooperate with the government's investigation.

8     I am here today to accept responsibility for my actions by

9     pleading guilty.

10            THE COURT:  You mentioned that you knew that what you

11    were doing was wrong.  Did you also know that it was illegal?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Does the government want to make a proffer

14    with respect to venue?

15            MS. SASSOON:  Yes.

16            With respect to venue and wires, your Honor, if the

17    case proceeded to trial, the government would prove that

18    certain acts in furtherance of each of the counts took place in

19    the Southern District of New York, including communications

20    with investors who were in New York, Tweets that were viewed by

21    customers and investors who were in the Southern District of

22    New York.  Among other things, that FTX had an office in the

23    Southern District of New York.  And in addition to that, that

24    the defendant has agreed to waive venue with respect to the

25    charges.

MCJGellP

1           In terms of wires, the proof at trial would include

2    evidence of wires transmitted in furtherance of the charges,

3    including emails, transmission of funds and Tweets.

4           THE COURT:  And what would the government's evidence

5    beyond that be if you were to go to trial against Ms. Ellison?

6           MS. SASSOON:  With respect to wires?

7           THE COURT:  With respect to all of the seven counts.

8           MS. SASSOON:  I see, your Honor.

9           The evidence against Ms. Ellison would include witness

10   testimony, as well as documentary and physical evidence, to

11   include signal communications, emails, documents transmitted to

12   investors and lenders, documents collected from FTX, including

13   evidence from FTX's software database and its code.

14          THE COURT:  Are there any additional questions you

15   would like me to ask Ms. Ellison?

16          MS. SASSOON:  No.  Thank you, your Honor.

17          THE COURT:  Do both parties agree that there's a

18   sufficient factual predicate for the guilty plea?

19          MS. SASSOON:  Yes, your Honor.

20          MR. SAHNI:  Yes, your Honor.

21          THE COURT:  Ms. Ellison, do you also admit to the

22   forfeiture allegation in the superseding information?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Ms. Ellison, because you acknowledge that

25   you are in fact guilty as charged in Counts One through Seven

MCJGellP

1   of the superseding information and because I'm satisfied that

2   you understand your rights, including your right to go to

3   trial, and that you are aware of the consequences of your plea,

4   including the sentence which may be imposed, because I find

5   that you are knowingly and voluntarily pleading guilty, I

6   accept your guilty plea to Counts One through Seven of the

7   superseding information.

8          Should we set a control date for sentencing

9   approximately, maybe, a year out?

10         MS. SASSOON:  Yes, your Honor.  We would propose a

11  control date maybe a year from now.

12         THE COURT:  Why don't we set a control date for

13  sentencing on December 19th of 2023.

14         Now, let's talk about bail.  I understand that the

15  parties have agreed on a bail package, which was in the plea

16  agreement.  I have read the pretrial services report, but I

17  would be happy to hear further from any of the parties if they

18  would like to be heard.

19         MS. SASSOON:  Yes, your Honor.

20         The government stands by the proposal in the plea

21  agreement.  I know there's some additional conditions in the

22  pretrial services report.  We don't think the travel

23  restrictions or the monetary restrictions are necessary, based

24  on the information we have about the defendant.

25         THE COURT:  Would pretrial like to be heard, or is

MCJGellP

1   that not necessary?  It's up to you.

2            MS. HARMON:  I don't think so, your Honor.

3            THE COURT:  Thank you.

4            So I'm going to grant that request.  Having reviewed

5   the pretrial services report, among other things, Ms. Ellison

6   has no criminal history and strong ties to the community, and

7   thus, I am releasing her on the following bail conditions:  A

8   $250,000 personal recognizance bond signed by her, travel

9   restricted to the continental United States, for her to

10  surrender all travel documents and refrain from making any new

11  applications, supervision will be as directed by pretrial

12  services, and she must adhere to all other standard conditions

13  of release.

14            Just to be clear, the government is not recommending

15  that the bond be signed by anybody other than Ms. Ellison?

16            MS. SASSOON:  That's correct, your Honor.

17            That was based on discussion withs defense counsel

18  about the feasibility of having a prompt cosigner and our

19  confidence that Ms. Ellison does not pose a flight risk.

20            THE COURT:  In light of that representation, I will

21  sign off on the bail conditions as requested.

22            Ms. Ellison, you should understand that if you don't

23  appear for any court proceedings for which you are scheduled to

24  appear, including sentencing, that you could be charged with a

25  separate crime of bail jumping and subject to additional fines

MCJGellP

1    and prison sentence in addition to whatever sentence you may

2    receive for the crimes to which you pleaded guilty.

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Moreover, if you violate any of the

6    conditions of your release, a warrant will be issued for your

7    arrest.  That may lead to revocation of your bail with

8    forfeiture of the bond that's being executed, as well as your

9    being detained.  And you could be prosecuted for contempt of

10   court as well.

11             Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  In addition, if you commit any crimes

14   while on release, that may lead to more severe punishment than

15   you would get for committing the same crimes at any other time

16   and, in addition, would likely constitute a breach of your

17   agreement with the government.

18             Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Finally, I should just advise you that

21   it's a crime to try and influence any juror or witness or any

22   person who may have information about the case or to retaliate

23   against anyone who may have provided information in the case or

24   otherwise attempt to obstruct justice.

25             Do you understand that?

MCJGellP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Should we talk next about sealing and the

3     government's request that the documents in connection with this

4     proceeding, as well as the transcript, be sealed and docketing

5     delayed until tomorrow?  I'm happy to hear you out.

6          MS. SASSOON:  Yes, your Honor.

7          As has been reported in the media, it's our

8     understanding that the defendant had some -- it was our

9     expectation that he was going to consent to extradition today,

10    and there have been some hiccups in the Bahamian courtroom.

11    We're still expecting extradition soon, but given that he has

12    not yet entered his consent, we think it could potentially

13    thwart our law enforcement objectives to extradite him if

14    Ms. Ellison's cooperation were disclosed at this time.  We're

15    therefore seeking a limited period of sealing until he's

16    brought here and presented in the Southern District of New

17    York.

18         THE COURT:  And my understanding is that there's no

19    objection from the defendant; is that correct?

20         MR. SAHNI:  That's correct, your Honor.

21         THE COURT:  So that application is granted.

22         I agree the compelling law enforcement interests

23    support an order directing that filings and other docket

24    entries temporarily be made under seal.  Exposure of

25    cooperation could hinder law enforcement officials' ability to

MCJGellP

1   continue the ongoing investigation and, in addition, may affect

2   Mr. Bankman-Fried's decision to waive extradition in this case.

3              Although there is a qualified right of public access

4   to court documents, the Second Circuit has recognized that

5   documents may be filed under seal to protect, among other

6   things, further ongoing law enforcement efforts.  And the

7   Second Circuit has specifically recognized that the docketing

8   and the applications to seal those materials could themselves

9   be prejudicial and that, in such cases, the applications

10  themselves and related notes to the docket could be sealed.

11  And I'm just going to cite *Alacantara* for that.

12             So the transcript of this proceeding shall thus remain

13  sealed and docketing delayed until -- and you don't want it

14  based on tomorrow, just until Mr. Bankman-Fried is presented

15  here in this district; is that correct?

16             MS. SASSOON:  That's correct.

17             And at this point, I think it's unlikely that it will

18  be by noon tomorrow.

19             THE COURT:  Understood, for the reasons I just noted.

20             Are there any further applications on either side?

21             MS. SASSOON:  Not from the government.  Thank you,

22  your Honor.

23             MR. SAHNI:  No, your Honor.  Thank you.

24             THE COURT:  We're adjourned.  Thank you.

25             (Adjourned)