N133banc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        22 Cr. 673 (LAK)

SAMUEL BANKMAN-FRIED,

            Defendant.

------------------------------x    Arraignment

                                   New York, N.Y.
                                   January 3, 2023
                                   2:00 p.m.


Before:

                  HON. LEWIS A. KAPLAN,

                                   District Judge


                      APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
DANIELLE R. SASSOON
NICOLAS ROOS
ANDREW ROHRBACH
SAMUEL RAYMOND
     Assistant United States Attorneys

COHEN & GRESSER, LLP
     Attorneys for Defendant
MARK S. COHEN
CHRISTIAN R. EVERDELL

N133banc

1          THE DEPUTY CLERK:  United States v. Samuel

2  Bankman-Fried.

3          Government, are you ready?

4          Can you please put your appearances on the record.

5          MS. SASSOON:  Yes.  Good afternoon, your Honor.

6  Danielle Sassoon, Nick Roos, Sam Raymond, and Andrew Rohrbach

7  for the United States.

8          THE COURT:  Good afternoon.

9          MR. COHEN:  Good afternoon, your Honor.  Mark Cohen,

10  Cohen & Gresser, for the defendant Samuel Bankman-Fried.

11          MR. EVERDELL:  Christian Everdell for

12  Mr. Bankman-Fried.

13          THE COURT:  Good afternoon.

14          THE DEPUTY CLERK:  Mr. Cohen, have you received a copy

15  of the indictment?

16          MR. COHEN:  Yes.

17          THE DEPUTY CLERK:  Have you reviewed it with your

18  client?

19          MR. COHEN:  Yes.

20          THE DEPUTY CLERK:  Does he waive the public reading?

21          MR. COHEN:  Yes, we do.

22          THE DEPUTY CLERK:  How does he plead?

23          MR. COHEN:  He pleads not guilty to all counts.

24          THE DEPUTY CLERK:  Thank you, sir.

25          THE COURT:  Thank you.

N133banc

1        Now, I received early this morning a motion from

2   defendant's counsel to redact on the bonds that are to be

3   signed by two remaining bail sureties the names and what's

4   described as other identifying information.

5        Mr. Cohen, first of all, what do you have in mind when

6   you say "other identifying information"?

7        MR. COHEN:  I think just the address, your Honor.

8   Just the name and address.

9        THE COURT:  Okay.  Thank you.

10       Now, what I think I will do with this, which I gather

11  the government is taking no position on.  Is that right?

12       MS. SASSOON:  That's correct, your Honor.

13       THE COURT:  Is the following:  I understand the

14  argument put forth by the defense.  And put to one side for the

15  moment the question of standing.  But I'm going to grant the

16  application, but I do so without prejudice to any application

17  to release the names and addresses.  Unless otherwise ordered,

18  any such application shall be made by motion filed no later

19  than January 12.

20       I do this because I understand that there has not been

21  any adversarial determination of whether this application

22  should be granted, and I anticipate the possibility that

23  members of the media or others may wish to contest the sealing

24  of that information, and they're entitled to have that

25  opportunity.

N133banc

1          Any objection to my doing that, Ms. Sassoon?

2          MS. SASSOON:  No, your Honor.

3          THE COURT:  Mr. Cohen?

4          MR. COHEN:  No, your Honor.

5          THE COURT:  That takes care of that.

6          So Ms. Sassoon, I've read the indictment.  What does

7  the government have to say beyond it about the nature of the

8  case, the discovery, the schedule, the usual?

9          MS. SASSOON:  Yes, your Honor.  As you know, the

10  defendant is charged in an eight-count indictment that arises

11  from a wide-ranging fraud on customers of the defendant's

12  cryptocurrency exchange FTX, investors in that exchange, and on

13  lenders to his cryptocurrency hedge fund Alameda Research.

14          Would your Honor like a factual overview of the case?

15          THE COURT:  Whatever you'd like to do.

16          MS. SASSOON:  Yes, your Honor.

17          The government expects that the evidence in this case

18  will show that the defendant operated this FTX cryptocurrency

19  exchange, and that from the outset, it had a unique and

20  concealed relationship with his cryptocurrency hedge fund

21  Alameda Research.

22          From the outset, customer deposits were deposited into

23  bank accounts controlled by Alameda, and from the early days of

24  the exchange, Alameda was using that customer money for Alameda

25  operational expenses.

N133banc

1           Over the lifetime of the exchange, the defendant

2    directed that Alameda receive certain preferential treatment on

3    the exchange that was built into the exchange's code and

4    software.  Some of those preferences included an allow negative

5    flag that allowed Alameda to accrue a negative balance on the

6    exchange.  There was also code that permitted Alameda to

7    essentially have an unbounded line of credit on the exchange,

8    even without sufficient collateral for that borrowing.

9           This culminated in June of 2022 with Alameda borrowing

10   billions of dollars off of FTX, which necessarily included FTX

11   customer money.  This was used in part to repay billions of

12   dollars in loans taken out by Alameda that were being recalled

13   by the lenders, and which Alameda otherwise had no ability to

14   repay.

15          Customer funds were also used and laundered through

16   political donations, charitable donations, and a variety of

17   venture investments by the defendant and his associates.

18          The evidence we expect will also show that even after

19   Alameda borrowed billions of dollars to repay loans, the

20   defendant directed continued borrowing for other additional

21   investments in the hundreds of millions of dollars.

22          This all occurred with the defendant's knowledge and

23   at his direction.  And after this borrowing took place, when

24   the defendant was aware that Alameda had no ability to repay

25   this borrowing, the defendant attempted to solve the problem by

N133banc

1     raising billions of dollars from equity investors.

2              In November, when there was a surge in customer

3     withdrawals from FTX in response to the leaking of Alameda's

4     balance sheet and tweets from the CEO of Binance, the defendant

5     tried to staunch the withdrawals by raising additional

6     investments, and also by lulling FTX's customers with false

7     information, including tweets that FTX's assets were fine, and

8     other messages along those lines that he knew were false, as he

9     was aware that there was a hole in FTX's balance sheet in the

10    billions of dollars as a consequence of Alameda's borrowing and

11    the misappropriation of customer money.

12              That's a brief overview of the case, your Honor.

13              With respect to discovery, we anticipate submitting a

14    protective order to the Court to govern the production of

15    discovery within the next few days.  We also anticipate making

16    a first production to the defense this week that will consist

17    of search warrants and other legal process.  Within the next

18    two weeks we anticipate making a large production of hundreds

19    of thousands of documents that includes materials from the FTX

20    debtors, from investors in FTX, from political campaigns, from

21    banks, from internet service providers, and from individual

22    employees of Alameda and FTX.

23              THE COURT:  This is material coming other than from

24    the companies with which the defendant was affiliated; is that

25    right?

N133banc

1          MS. SASSOON:  So FTX is now in bankruptcy, and they've

2     made numerous productions to us of company e-mails and

3     documents.

4          THE COURT:  So that will be included in this second

5     wave.  Is that right?

6          MS. SASSOON:  In this first large production, after we

7     produce the search warrants and other legal process.

8          We do anticipate, however, that discovery will

9     continue on a rolling basis.  Given the speed at which this

10    case was charged, we have a number of pending subpoenas and

11    voluntary document requests.  We continue to investigate and to

12    execute additional legal process.  And so, as we receive

13    discovery, we will work quickly to produce it to the defendant.

14         We also have executed searches on a number of accounts

15    and devices which are still being extracted, reviewed for

16    privilege and responsiveness, and we're working quickly to get

17    those reviews completed, but those are not yet complete.

18         Finally I wanted to flag that one more complicated

19    piece of the discovery is going to be the AWS database of FTX.

20    Basically, FTX had --

21         THE COURT:  AWS?

22         MS. SASSOON:  So that stands for Amazon Web Services.

23    And FTX hosted a database on AWS that included transaction

24    history for customers of the exchange.  We do not have custody

25    of the entire database, but we've received access to it from

N133banc

1  the FTX debtors, and we will work with defense counsel to

2  figure out a way to get them the necessary access so that we

3  can comply with our discovery obligations.

4           THE COURT:  Outside date?

5           MS. SASSOON:  I think the bulk of discovery will be

6  produced within the next few weeks, but with respect to

7  incoming productions, that's going to be ongoing and it's

8  difficult to say when we'll receive the last drips and drabs.

9  But, as I said, as we receive things, we'll produce them

10 promptly.

11          THE COURT:  Well, you've said the bulk in the next few

12 weeks.  Given what you have in hand now, when do you finish?

13          MS. SASSOON:  In terms of what we have now, I would

14 say the bulk within two weeks, and all of it within four.

15          THE COURT:  What is the government's views on a

16 motions schedule?

17          MS. SASSOON:  We touched on that with defense counsel.

18 I think the parties would like to propose a trial date and then

19 back into a motion schedule in light of the trial date, if that

20 works for your Honor.  But we're happy to take it --

21          THE COURT:  You can propose.

22          MS. SASSOON:  I don't want to speak for defense

23 counsel, but we had discussed a potential trial date in

24 September or October of this year, your Honor.

25          MR. COHEN:  Your Honor, if I might.  We of course

N133banc

1    defer to the Court's schedule.  But if the Court has time for

2    us in September, October, we would like to have a trial date

3    then.

4              If I'm hearing, and I wasn't exactly sure, if I'm

5    hearing that discovery will be completed in four weeks, then we

6    would defer to the Court about setting a schedule that sort of

7    gears back to September, if that's a period the Court can --

8              THE COURT:  I didn't hear completion in four weeks.  I

9    heard completion of what they have in hand now.

10             MR. COHEN:  Yes.

11             THE COURT:  With other things to follow.

12             MR. COHEN:  The key to us is what does the other

13   things to follow mean.

14             THE COURT:  Yes.  And I understood it to be materials

15   received pursuant to outstanding legal process and future legal

16   process, devices and accounts that need to be rendered

17   intelligible, and access to the complete AWS databases of FTX.

18   Those three categories.

19             Did I get that right, Ms. Sassoon?

20             MS. SASSOON:  Yes, your Honor.  With respect to

21   warrants that might form the basis for motions, we're going to

22   get that out this week.

23             THE COURT:  All right.

24             How long a trial do you anticipate, Ms. Sassoon?  I'll

25   hear from you first.

N133banc

1        MS. SASSOON:  Approximately four weeks, your Honor.

2        THE COURT:  Okay.  Mr. Cohen?

3        MR. COHEN:  Very hard to say today, your Honor.  We

4   haven't gotten any of the discovery.  But I would put down two

5   weeks, two to three weeks, potentially.

6        THE COURT:  Let me take a look here.

7        October 2, 2023, for trial.  I may move that a day or

8   so later or a few days earlier, but that's what I'm shooting

9   for.  Unless you hear otherwise, that's when we're going to try

10  it.

11       So, now let's talk about this motion schedule.  Don't

12  all speak at once.

13       MS. SASSOON:  Your Honor, we're happy to let the

14  defense propose a date for the filing of their motions.

15       THE COURT:  Okay.  Mr. Cohen?

16       MR. COHEN:  Your Honor, it really depends on when we

17  get all the discovery.  But, assuming we do, say by the end of

18  February, we were going to suggest perhaps the end of April for

19  defense motions, if that works for the Court.

20       THE COURT:  Let's say April 3.  Any objection?

21       MS. SASSOON:  No, your Honor.

22       THE COURT:  How much time do you need, Ms. Sassoon?

23       MS. SASSOON:  Without knowing the scale of the

24  motions, we'd ask for three weeks.

25       THE COURT:  You can make a fair assumption.

N133banc

1        MS. SASSOON:  Three weeks, your Honor.

2        THE COURT:  Okay.  April 24.

3        A week for reply, counselor?

4        MR. COHEN:  Would it be possible to have two weeks,

5    your Honor?

6        THE COURT:  May 8.

7        We'll set it for argument or conference on May 18 at

8    10 a.m.

9        Is there any time gone on the clock?

10        MS. SASSOON:  Time is excluded through today, so we'd

11    move to exclude time between now and the trial date of

12    October 2, 2023, so that the government can produce discovery,

13    the defense can review it, prepare motions, so the parties can

14    litigate the motions, and the parties can prepare for trial.

15        THE COURT:  Any objection, Mr. Cohen?

16        MR. COHEN:  No, your Honor.

17        THE COURT:  Time is excluded from now to and including

18    October 2, 2023.  I find that the interests of justice served

19    thereby outweigh the interests of the public and the defendant

20    in a speedy trial for the reasons articulated by Ms. Sassoon,

21    and also the extensive character of the discovery and the

22    defense's need for a significant period of time to review it

23    and make any necessary motions.

24        Is there anything else we can usefully accomplish

25    today?

N133banc

1      MS. SASSOON:  Couple things, your Honor.  The first is

2   with respect to victim notification.  FTX was the second

3   largest cryptocurrency exchange, and the number of victims is

4   potentially above 1 million.  At least as estimated in a filing

5   by the FTX debtors, they said there could be as many as over 1

6   million victims.  So we intend to file a motion with the Court

7   in the next couple days asking to provide notice to victims

8   through a website rather than individually.

9      THE COURT:  Okay.

10      MS. SASSOON:  And then with respect to the defendant's

11   bail conditions.  The parties proposed an agreed-upon package

12   to Judge Gorenstein, which was entered at the presentment.  But

13   we would like to propose an additional bail condition that we

14   think would have been supported at the time of the presentment,

15   but in light of some recent events, we believe it's necessary

16   to add this condition.

17      Specifically, we'd like to add a condition that the

18   defendant be prohibited from accessing or transferring any FTX

19   or Alameda assets, including cryptocurrency, and including

20   assets or cryptocurrency purchased with FTX or Alameda funds.

21      THE COURT:  Mr. Cohen?

22      MR. COHEN:  Yes, your Honor.  We've been discussing

23   this with the government.  We spoke with them about it

24   yesterday.

25      Just as context for the Court, on Friday, there was I

N133banc

| | |
|---|---|
| 1 | guess a tweet alleging that Mr. Bankman-Fried had in fact |
| 2 | transferred assets when he had not.  We called the government |
| 3 | right away, we notified them about this, we offered to help |
| 4 | Friday and through the weekend.  And I think there was a |
| 5 | concern on the government's part that the standard conditions |
| 6 | and the strict conditions already in place be supplemented, |
| 7 | although I think this is probably just duplicative of those |
| 8 | conditions. |
| 9 | So we have spoken to them about potential language to |
| 10 | address this.  We have not, in fairness to the government, had |
| 11 | a chance to fully vet it with them.  We've exchanged drafts. |
| 12 | We think we can come to terms with them. |
| 13 | We would suggest that the Court give us a day or two |
| 14 | to see if we can, and we can make a joint submission, if the |
| 15 | Court would allow us to. |
| 16 | THE COURT:  Ms. Sassoon, what do you say? |
| 17 | MS. SASSOON:  A few things, your Honor. |
| 18 | First, we appreciate the defense is working with us |
| 19 | toward agreed-upon language.  That said, it was reported on |
| 20 | December 28, 2022, that some Alameda wallets had been accessed |
| 21 | and money was transferred.  We don't have evidence at this time |
| 22 | that it was the defendant.  We are investigating it.  But this |
| 23 | money is now inaccessible for purposes of government seizure |
| 24 | for forfeiture.  And we do have concerns that even within a |
| 25 | period of a few days, that additional assets could be accessed |

N133banc

1    and become inaccessible.

2              Assuming that it was not the defendant, it's hard to

3    understand why they would have an issue with entering such a

4    condition with the possibility of modifying the language if we

5    have further discussion.

6              But, in terms of the defendant's tweet that it was not

7    him and the representation it was not him, we don't put full

8    stock in that simply because our investigation has revealed

9    that he has tweeted knowing false statements before, including

10   as I described earlier.

11             In addition, while we don't know whether it was the

12   defendant who made these transfers, he did at one point have

13   access to these wallets, and we also have evidence that after

14   FTX entered bankruptcy and declared bankruptcy and he stepped

15   down as CEO, he worked with foreign regulators to transfer

16   assets to those foreign regulators when he knew that the U.S.

17   bankruptcy was also interested in those assets.  And he did it

18   expressing to a co-conspirator that he knew there was

19   competition between the U.S. bankruptcy and the foreign

20   regulators, but that he wanted to stall with the U.S.

21   bankruptcy, get the assets to the foreign regulators, in part

22   because he thought they would essentially be more lenient with

23   him, and he might have a possibility of regaining control of

24   his business.  That's in sum and substance what he said.

25             So, for these reasons we do think such a condition is

N133banc

1    justified, and that no harm would come of entering a condition

2    now with the possibility of proposing a modification to the

3    Court within a few days, if there are concerns about the

4    language.

5         THE COURT:  And the operative language, which I

6    acknowledge you're speaking of is interim language in the

7    absence of a subsequent agreement, is accessing or transferring

8    exactly what?

9         MS. SASSOON:  That the defendant be prohibited from

10   accessing or transferring any FTX or Alameda assets or

11   cryptocurrency, including assets or cryptocurrency purchased

12   with funds from FTX or Alameda.  With FTX defined to include

13   FTX.com, FTX U.S., FTX Digital Markets Ltd., and all affiliated

14   subsidiary and successor entities.  And Alameda defined to

15   include Alameda Research and any affiliated subsidiary and

16   successor entities.

17        THE COURT:  All right.  Unless otherwise ordered by

18   the Court, the requested condition as just stated by

19   Ms. Sassoon is made a condition of the defendant's bail as of

20   this moment.

21        I hope you can work out language that's mutually

22   acceptable.  But it seems to me that that condition is

23   warranted in all the circumstances.

24        MR. COHEN:  If I might be heard.  I understand the

25   Court's ruling.  I just would like to respond to a few things

N133banc

the government attorney said, because they could be relevant if
we're back before your Honor on this issue, which I hope we're
not.

          THE COURT:  Why don't we save it for when you're back
before the Court, if that should happen, which I hope isn't
necessary.

          MR. COHEN:  But, just for your Honor's benefit,
Mr. Bankman-Fried did not make these transfers.  We reached out
to the government telling them that.  And the proceedings she
referred to, Ms. Sassoon referred to before the Bahamians, he
was actually ordered by a court in the Bahamas to make those
transfers.

          THE COURT:  None of that is material to the ruling
which I have made already.  I understand you and Ms. Sassoon
may have different views about what did or didn't happen.  But
in all the circumstances, I can see no legitimate objection to
the condition that I have just imposed.  And unless you can
work out something that's mutually acceptable in its place,
that's the condition that will stand.

          MR. COHEN:  Your Honor, and what would be the Court's
preferred way to come back to you if we have to?

          THE COURT:  Letter.

          MR. COHEN:  Okay.

          THE COURT:  Just docket it on ECF.

          MR. COHEN:  Okay.

N133banc

1          THE COURT:  Okay.  I have one or two remaining

2     questions.

3          What's the status of any agreement or lack of

4     agreement with respect to the amounts of the bonds to be signed

5     by the two additional financially responsible persons?

6          MS. SASSOON:  Your Honor, there is no agreement yet

7     because we have scheduled interviews with those cosigners, and

8     the amount will be dependent on what we learn about their

9     financial circumstances in those interviews.  But I imagine

10    we'll come to a consensus about that.

11         THE COURT:  When?

12         MS. SASSOON:  Likely in the next day or two.

13         THE COURT:  Okay.  All right.  Thank you.

14         Which of the two insolvency proceedings was filed

15    first, Delaware or the Bahamas?

16         MR. COHEN:  The Bahamas, your Honor.

17         THE COURT:  Does that make any difference?

18         MR. COHEN:  That was the point I was trying to make

19    before, your Honor.

20         THE COURT:  Well, sure.

21         MS. SASSOON:  Your Honor, I'm no bankruptcy expert and

22    I'm not sure in what respect you're asking if it makes a

23    difference.  But, my understanding is that the Bahamian

24    proceeding was filed in contemplation of a U.S. bankruptcy

25    proceeding.

N133banc

1           THE COURT:  Okay.  Anything else?

2           MS. SASSOON:  Nothing from the government, your Honor.

3           THE COURT:  Okay.

4           MS. SASSOON:  Thank you.

5           THE COURT:  Thank you.

6           (Adjourned)