

The New York Times Company





January 10, 2023

**VIA FEDERAL EXPRESS**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:  Unsealing Request in *U.S. v. Samuel Bankman-Fried*, 22 Cr. 673 (LAK)

Dear Judge Kaplan:

I write on behalf of The New York Times Company ("The Times") to respectfully seek an order releasing unredacted versions of documents identifying the two bail sureties ("the Materials") in the above-referenced case. On January 3, 2023, Mr. Bankman-Fried filed a letter with this Court seeking to keep secret the identities of the two individuals other than his parents who have agreed to serve as bail sureties in this case. *See* Request to Redact Names and Identifying Information for Certain Bail Sureties, Dkt. 29. The defense's request should be denied. Under both the federal common law and the First Amendment, the Materials are judicial records that are properly open to the public.[1]

**Background**

The information sought here relates to the prosecution of Samuel Bankman-Fried, the founder of FTX, a cryptocurrency exchange that filed for

---

[1] The right of access is an affirmative, enforceable public right, and the standing of the press to enforce it is well settled. *See, e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).

1

bankruptcy in November 2022.[2] On December 9, 2022, a grand jury indicted Mr. Bankman-Fried on two counts of wire fraud and six counts of conspiracy related to securities and commodities fraud, money laundering, and violations of campaign finance laws. Prosecutors have alleged that FTX was "one of the biggest financial frauds in American history."[3]

At Mr. Bankman-Fried's initial appearance on December 22, 2022, Magistrate Judge Gorenstein set strict conditions of release. *See* Order Setting Conditions of Release, Dkt. 14. Mr. Bankman-Fried's release was based on his parents signing his personal recognizance bond of $250 million. The Court also required that two additional sureties (one of them a non-family member) sign separate bonds in lesser amounts. Mr. Bankman-Fried's parents signed their bond on December 22, 2022, offering as surety their home in Palo Alto, California, where Mr. Bankman-Fried is confined under bail restrictions. The two remaining sureties signed their bond on January 5, 2023, but their identities remain under seal.

**Argument**

Both the federal common law and First Amendment endow the public with a right of access to judicial records, including information related to surety bonds. While that right is not absolute, parties seeking sealing face a particularly heavy burden where, as here, disclosure would not prejudice the investigation or prosecution, the information serves public oversight, and there is a substantial public interest in the prosecution. For the reasons set out below, The Times respectfully requests that the Court unseal the Materials.

---

[2] David Yaffe-Bellany, *How Sam Bankman-Fried's Crypto Empire Collapsed*, N.Y. Times (Nov. 14, 2022), https://www.nytimes.com/2022/11/14/technology/ftx-sam-bankman-fried-crypto-bankruptcy.html.

[3] David Yaffe-Bellany, Matthew Goldstein and Emily Flitter, *Prosecutors Say FTX Was Engaged in a 'Massive, Yearslong Fraud,'* N.Y. Times (Dec. 13, 2022), https://www.nytimes.com/2022/12/13/business/ftx-sam-bankman-fried-fraud-charges.html.

2

1. <u>The Common Law Right of Access Requires that the Materials Be Unredacted</u>

The public's common law right of access to judicial records in this jurisdiction is well established. Any "judicial document" is subject to a presumption of access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Counsel for Mr. Bankman-Fried does not dispute that the bond surety information is a judicial document. Dkt. 29 at 3. Under *Lugosch*, the strength of the presumption varies depending on the document's purpose, but judicial documents can be withheld only if countervailing interests outweigh the public's right of access. *Lugosch*, 435 F.3d at 119.

   a. *The presumption of access to the Materials is particularly weighty*

The weight of the presumption of access to a specific document varies based on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)) (internal marks omitted). Once the court has determined the weight of that presumption, it must then balance the value of public disclosure against "countervailing factors." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016).

The Materials play a significant role in this Court's exercise of its Article III power. "Bail, of course, is basic to our system of law." *Schilb v. Kuebel*, 404 U.S. 357, 484 (1971). "Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused," bail in our modern legal system is intended to provide courts with adequate assurance that a defendant will "stand trial and submit to sentence if found guilty." *Stack v. Boyle*, 342 U.S. 1, *4-*5 (1951). Bail is set in order to deter defendants from fleeing the jurisdiction of the court—a mechanism to ensure the federal courts' adjudication of the cases before them. The Second Circuit, among other federal appellate courts, has held that the public has a common law right of access to bail hearings. *See United States v. Graham*, 257 F.3d 143, 156 (2d Cir. 2001); *see also, e.g., In re Globe*

*Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984) (holding that common law right of access to criminal trials includes access to bail proceedings); *Associated Press v. U.S. Dist. Court for Cent. Dist. of California*, 705 F.2d 1143, 1145 (9th Cir. 1983) (holding that "pretrial documents, such as those dealing with the question whether [the defendant] should be incarcerated prior to trial ... are often important to a full understanding of the way in which the judicial process and the government as a whole are functioning") (citation omitted); *United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983) ("Pretrial release proceedings require decisions that attract significant public interest, and invite legitimate and healthy public scrutiny.").

Mr. Bankman-Fried recognizes that *Graham* affirmed the common law right to access judicial documents in the Second Circuit, but he argues that the Materials sought here are distinguishable from the materials sought in *Graham*: audio and videotapes played during a pretrial detention hearing. *Graham* cannot be read so narrowly. There, the court held that, "Where such documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." 257 F.3d at 151. The *Graham* ruling did not turn on the particular nature of the materials in dispute. Here, there can be no doubt that the Materials are usually filed with the court and are generally available, making the presumption of access here strong.

The public interest in openness is particularly strong in this case. The Materials relate to the identities of two individuals who have committed large sums of money as security to ensure that Mr. Bankman-Fried—a person of significant means, with substantial ties outside the country, and facing the risk of a lengthy sentence in federal prison—will duly appear before the court. For the surety to be effective, first, these must be individuals with sufficient influence or connection to Mr. Bankman-Fried, such that forfeiture of their security would deter him from flight. And, second, the amount of the forfeiture must be sufficient that the impact on the surety would similarly deter flight. At the same time, the sureties would need to be free from motives or circumstances that would undermine

4

bail's intended purpose. For example, a surety who owed substantial sums of money to Mr. Bankman-Fried potentially would not be appropriate.

Mr. Bankman-Fried minimizes the significance of the Materials, characterizing them as "play[ing] little to no role in the Court's exercise of its Article III powers," but ensuring the defendant's appearance at trial is an important judicial function. And the question of whether the bail amount imposed actually achieves that purpose depends on *who* the sureties are. Openness enables the public and the press to exercise democratic oversight of the court's decision making, and ensures confidence that individuals serving as sureties are appropriate for that role.

Furthermore, while defense counsel treats the identities of the sureties as a ministerial matter peripheral to the substantive issues in this case, Mr. Bankman-Fried's bail package *itself* has become a subject of public interest, in part because there was no requirement that Mr. Bankman-Fried pay money upfront.[4] This has sparked a public debate about the federal bail system and whether Mr. Bankman-Fried is getting special treatment.

### b. The countervailing factors do not overcome the presumption of access to the Materials

The burden rests on the proponent of secrecy to establish that countervailing factors should set aside the public's right of access. For example, in other circumstances, countervailing factors have included "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Bernstein*, 814 F.3d at 143. Neither factor appears to have weight here.

---

[4] *Jonah E. Bromwich, How Did Sam Bankman-Fried Make His $250 Million Bail?*, N.Y. Times (Dec. 23, 2022), https://www.nytimes.com/2022/12/23/nyregion/sbf-bail-agreement-explained.html.

*First*, there does not appear to be any risk of impairing law enforcement interests because the identity of the sureties has no bearing on the Government's investigation. *See id.* (interests favoring secrecy were "weak" because disclosure would not "reveal details of an ongoing investigation").

*Second*, the legitimate privacy interests in the Materials appear negligible or nonexistent. The Second Circuit has held that where the privacy of third parties is at issue, courts should consider (1) whether the subject matter is traditionally considered private rather than public; (2) the nature and degree of injury resulting from disclosure; and (3) the reliability of the information contained in the record. *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995). Factors 1 and 3 pose no barrier to unsealing. Analyzing this case under the first privacy factor, the information sought is not of the same type that the court in *Amodeo* explained was deserving of confidential treatment, *e.g.*, "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters." *Id*. The Times seeks only the names of two individuals who have entered into a public controversy by virtue of volunteering as bond sureties in a highly publicized financial scandal. Under the third privacy factor, the reliability of the information—that two named individuals signed Mr. Bankman-Fried's bond—is not in question.

With respect to the second factor, the nature and degree of injury resulting from disclosure of the Materials is not a countervailing concern sufficient to outweigh the presumption of public access. The cases cited by Mr. Bankman-Fried do not support sealing. In *United States v. Nejad*, No. 18-cr-224 (S.D.N.Y. Apr. 18, 2018), Dkt. 21, the court permitted the defendant to file with his bail application redacted letters of support from 36 individuals volunteering as sureties. These letters contained a large swath of personal information, including their occupations, their financial situations, and the repercussions they would face if the court granted bond and the defendant fled the country, forcing them to forfeit their assets. *Id*, Dkt. 17 at 3-4. The letters in *Nejad* contained much more private information than the Materials sought here: just two names. Accordingly, the

harm from disclosure in *Nejad* was much higher than the risk of harm in this case.

The other case Mr. Bankman-Fried relies on, *United States v. Maxwell*, No. 20-cr-330 (S.D.N.Y. Dec. 14, 2020), Dkt. 97, also does not support withholding. There, the court permitted the defendant to submit a redacted version of her renewed motion for release on bail. The defendant also submitted as exhibits redacted letters from 14 individuals volunteering as sureties, whose names were redacted from the motion. *Id.* Just as in *Nejad*, the filed redacted letters contained much more sensitive, private information than merely the release of names. In addition, *in Maxwell* there were unique concerns for sureties' safety, due to the particularly heinous nature of the defendant's crimes. Those same safety concerns are not present here. Mr. Bankman-Fried is alleged to have committed white collar financial fraud, not international child sex-trafficking.

Mr. Bankman-Fried claims in his January 3, 2023 letter that his parents "have become the target of intense media scrutiny, harassment, and threats ... including communications expressing a desire that they suffer physical harm." No. 22-cr-673, Dkt. 29 at 2. While The Times is sympathetic to these concerns, Mr. Bankman-Fried does not allege that there have been credible efforts to harm his parents. And Mr. Bankman-Fried's parents have played a prominent role in his career and these proceedings, entirely apart from the issue of bail. Mr. Bankman-Fried does not offer a substantial reason why the sureties would be endangered by their involvement in only his bail, which he characterizes as a minor part of the overall proceedings.[5]

2. The First Amendment Right of Access Compels Unsealing of the Materials

The legal principles governing the First Amendment right of access to judicial records are equally well settled and provide a second and independent basis for

---

[5] To the extent that the Court has concerns about the surety's safety, we suggest that the Court conduct *in camera* inspection of the communications Mr. Bankman-Fried's parents have received in order to assess the validity of his claims.

7

unsealing. *See Lugosch*, 435 F.3d at 124 (common law and constitutional right to judicial documents in civil case); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) (First Amendment right to judicial documents in a criminal case).

The constitutional right attaches to proceedings and documents that meet a two-part test, based on "experience" and "logic.". *See Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8 (1986); *see also Pellegrino*, 380 F.3d at 92. Under the experience prong, the court considers whether the document has historically been open to the press and the public. *Press-Enterprise*, 478 U.S. at 8. The logic prong concerns "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*

The Second Circuit has not directly considered whether a First Amendment right of access applies to bail sureties, but in *United States v. Abuhamra*, 389 F.3d 309, 323 (2d Cir. 2004), it examined the right in the context of a due process challenge where a criminal defendant was denied bail based on *ex parte* submissions from the prosecution. Invoking *Press-Enterprise*, the court opined, "Bail hearings fit comfortably within the sphere of adversarial proceedings closely related to trial. ... Thus, there is an interest in conducting such hearings in open courtrooms so that persons with relevant information can come forward." *Id.* While the Second Circuit has not specifically decided that the First Amendment right attaches to individual bond surety information, the argument that it does is compelling, both in terms of "experience" and "logic."

With respect to the "experience" prong, multiple federal courts have held that the public has a First Amendment right to access bail proceedings. *See, e.g., Globe*, 729 F.2d at 52; *Associated Press*, 705 F.2d at 1145; *Chagra*, 702 F.2d at 363. Logically, this right extends to the documents filed in bail proceedings. *See, e.g., Associated Press*, 705 F.2d at 1145 ("There is no reason to distinguish between pretrial proceedings and the documents filed in regard to them."). And as set out above, as a matter of logic, access to individual bond surety information aids the public in monitoring the Court's use of its Article III powers to compel the presence of criminal defendants in cases before it.

Where the First Amendment applies, it can be "overcome only by an overriding interest based on finding that [sealing] is essential to preserve higher values and is narrowly tailored to serve the interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984); *see also Lugosch*, 435 F.3d at 124 (citing *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). That is a heavier burden than the one imposed by the common law. *Lugosch*, 435 F.3d at 126. For the same reasons set out above in respect to the common law right, the First Amendment right of access to the Materials is not overcome by any countervailing interest.

**Conclusion**

For all of the foregoing reasons, The Times respectfully requests that the Materials be made public, or, alternatively, that the Government and Mr. Bankman-Fried be required to demonstrate why the records should remain under seal. If they seek to do so, The Times respectfully requests an opportunity to reply and otherwise be heard.

We thank the Court for its consideration of this matter.

Respectfully submitted,

*/s/ Dana Green*

Dana R. Green
Senior Counsel
The New York Times Company
Legal Department
620 8th Avenue
New York, NY 10018
Phone: 212-556-5290

9