**KLARIS**

January 12, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:   <u>Motion to Unseal in *U.S. v. Samuel Bankman-Fried*, 22-cr-673-LAK</u>

Dear Judge Kaplan:

      CoinDesk, Inc., ("CoinDesk"), by and through its undersigned attorneys, respectfully moves the Court for an order to unseal and provide public access to the names of the two sureties who signed recognizance bonds in connection with Defendant Bankman-Fried's bail conditions. CoinDesk brings this letter-motion pursuant to the Court's instructions at a hearing on January 3, 2023 that "[t]he letter application dated 1/3/2023, DI 29, to redact names and identifying information for certain bail sureties, was granted by the Court without prejudice to any application to release the names and addresses, unless otherwise ordered; any such application shall be made by motion filed no later than 1/12/2023." *See* Minute Entry dated January 3, 2023.

      CoinDesk is a news media organization and its right, as a member of the public, to view judicial records is protected by the First Amendment as well as common law. Any purported interest in keeping these names secret or private is outweighed by the tremendous public interest in the identities of these individuals.

    I.    **BACKGROUND**

      Following the collapse of his multibillion-dollar crypto enterprise in November, Samuel Bankman-Fried was indicted in the Southern District of New York on charges that include money laundering and conspiracy to commit wire fraud for allegedly defrauding investors out of billions of dollars by illegitimately diverting customer funds to various other business and personal enterprises.[1] The founder of the now-bankrupt crypto exchange FTX was arrested in the Bahamas and was extradited to the U.S. to face charges on December 13, 2022.[2]

---

[1] Parikshit Mishra, Jack Schickler, "*US SEC Charges Sam Bankman-Fried for Defrauding FTX Investors*" https://www.coindesk.com/policy/2022/12/13/us-sec-charges-sam-bankman-fried-for-defrauding-ftx-investors/(Dec. 13, 2022); Sandali Handagama, "*Sam Bankman-Fried's Lawyers Ask Court to Conceal Identities of $250M Bail Co-Signers*" https://www.coindesk.com/policy/2023/01/03/sam-bankman-frieds-lawyers-ask-court-to-conceal-identities-of-250m-bail-co-signers/ (Jan. 3, 2023).

[2] *Id.*

Klaris Law PLLC
29 Little West 12th Street                                                                         Lance.Koonce@KlarisLaw.com
New York, NY 10014                                                                              Mobile: +1 917.612.5861

Bankman-Fried's bail conditions included a requirement that Bankman-Fried's parents co-sign his $250 million personal recognizance bond, and that two additional sureties sign separate bonds in lesser amounts, one of them a non-family member. *See* Order Setting Conditions of Release (ECF No. 14). Those two sureties signed their bond on January 5, 2023, but upon a request filed by Bankman-Fried, their names and identities were sealed. *See* Letter Motion re: Request to Redact Names and Identifying Information for Certain Bail Sureties. (ECF No. 29).

CoinDesk was the first news outlet to report on the undisclosed financial ties between FTX and Alameda Research, another company owned by Bankman-Fried.[3] It has been widely credited with alerting the investing public to the potential irregularities at FTX, thereby setting off a chain of events leading to the FTX bankruptcy. As part of that ongoing reporting, CoinDesk is attempting to shed light on the identities of various Bankman-Fried's allies and continue to piece together just how large Bankman-Fried's startling sphere of influence may actually be.[4]

II.   **ARGUMENT**

   A.   <u>**The Court Should Unseal the Names of the Bail Sureties**</u>

**1. The Names of the Bail Sureties are Judicial Records to Which the Public Has a Presumptive Right of Access**

Courts have been resolute in protecting the First Amendment and common law right of the public to access judicial documents. As noted by the Eleventh Circuit, "[a]ccess to judicial proceedings is crucial to our tradition and history, as well as continued public confidence in our system of justice. *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1358-59 (11th Cir. 2021). This includes bail proceedings. *See, e.g.*, *United States v. Graham*, 257 F.3d 143, 156 (2d Cir. 2001) ("there is nothing to lead us to think that we should treat materials introduced in the pretrial detention hearing in this case differently than those introduced in any other such hearing held in open court"); *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984) ("[T]he bail decision is one of major importance to the administration of justice, and openness will help to assure the public that the decision is properly reached.")

---

[3] Ian Allison, "*Divisions in Sam Bankman-Fried's Crypto Empire on His Trading Titan Alameda's Balance Sheet*". https://www.coindesk.com/business/2022/11/02/divisions-in-sam-bankman-frieds-crypto-empire-blur-on-his-trading-titan-alamedas-balance-sheet/ (Nov. 2, 2022).

[4] To the extent necessary to effectuate this motion, CoinDesk seeks to intervene in this matter for the limited purposes of bringing this motion. It is well established that "[t]he press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media*, LLC, 918 F.3d 1161, 1170 (11th Cir. 2019); *see also Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983). CoinDesk is the leading news publication covering the cryptocurrency industry and, by extension, its effects on the public, and therefore has standing to intervene for the limited purpose of seeking access to all information contained on the Bail Sureties.

Klaris Law PLLC
29 Little West 12th Street                                                Lance.Koonce@KlarisLaw.com
New York, NY 10014                                                        Mobile: +1 917.612.5861

In considering whether the presumption in favor of public access applies, a court must first determine whether the documents at issue are "judicial documents". *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). If the court finds that they are, it then determines "the weight of that presumption" and balance that presumption against "countervailing factors", including "the privacy interests of those resisting disclosure." *Id*. at 119-20 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Amodeo II")). Here, Bankman-Fried concedes that the sureties' individual bonds would be considered "judicial documents" subject to the "presumption of access under both the common law and the First Amendment" under the controlling standard. ECF No. 29, at 3. Thus, such judicial documents can only be withheld if the countervailing interests outweigh the general public's right of access. *Lugosch,* 435 F.3d at 119.

2. **The Presumption of Public Access Outweighs the Guarantors' Privacy Interests**

In evaluating whether there is good cause to overcome the presumption of access, courts will weigh the presumption under the circumstances at issue and balance that weight against "countervailing factors". *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,* 814 F.3d 132, 143 (2d Cir. 2006). Certain factors the court will consider include "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records." *Comm'r, Ala. Dep't of Corr*., 918 F.3d at 1169. Courts also consider "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, [and] whether the information concerns public officials or public concerns." *Romero v. Drummond Co*., 480 F.3d 1234, 1246 (11th Cir. 2007).

There is significant public concern in this case. Bail is a mechanism used to provide assurances that the defendant facing federal trial will not attempt to flee the jurisdiction of the court, and is an important aspect of the Court's authority. For the surety to be effective, the guaranteeing individuals must have sufficient influence over Bankman-Fried to deter him from fleeing, and be appropriately arms-length so as not to undermine the judicial process. Effectiveness and appropriateness depend on the identity of the sureties themselves. Already Bankman-Fried's bail package – and the fact that he was not required to pay any money in connection therewith – has sparked controversy over whether he is receiving special treatment.[5] Without transparency over the individuals involved, the public is not able to evaluate its confidence in, and oversight of, the judicial process.

The risk of illegitimacy and public scandal cannot be evaluated without knowing who Bankman-Fried's guarantors are. His sphere of influence is immense and mystifying. He was one

---

[5] James Murphy, "*Bankman-Fried's Incredible Shrinking '$250 Million Bond'*" https://www.coindesk.com/consensus-magazine/2022/12/23/bankman-frieds-incredible-shrinking-250-million-bond/ (Dec., 2022); Jonah E. Bromwich, "*How Did Sam Bankman-Fried Make His $250 Million Bail?*" https://www.nytimes.com/2022/12/23/nyregion/sbf-bail-agreement-explained.html (Dec. 23, 2022).

of the most influential political dealers in cryptocurrency[6] and, in the years before FTX's collapse, had spent or pledged hundreds of millions of dollars to various political and charitable contributions and investments in media outlets.[7] Just weeks before his extradition, Bankman-Fried was scheduled to appear at a live New York Times event alongside heavyweights such as President Zelensky, Janet Yellen, and Mark Zuckerberg,[8] sparking further speculation about his access and connection to individuals at the very top of the world's political, financial, educational and pharmaceutical spaces.[9] Among the many crucial questions the proceedings against Bankman-Fried and the FTX may reveal to the public is just how far his and FTX's respective spheres of influence reach. Here is a man who has allegedly defrauded thousands out of billions. If found guilty, it will have been on the backs of those defrauded that he was able to carefully cultivate a space for himself in the highest echelons of societal power.

Power and influence require allies. The public has a clear and powerful interest in who these allies may be. Besides Bankman-Fried's own parents, two other individuals have vouched for him. They have guaranteed, on behalf of the public, that Bankman-Fried will appear in court when required to do so. The public has a right to know who these people are, as a function of understanding how they wield sufficient influence on Bankman-Fried to prevent his flight.

Bankman-Fried's lawyers have asked the court to consider the "privacy and safety" of his sureties as "countervailing factors" that significantly outweigh the presumption of public access, citing examples that have led other district courts to permit redactions in bail documents. ECF No. 29 at 4-5. These exceptions do not apply here. Bankman-Fried's bail sureties do not contain "sensitive private information with respect to a whole series of individuals." *Id.*, citing *United States v. Nejad*, Transcript of Proceedings as to Ali Sadr Hashemi Nejad, at 25, *United States v. Nejad,* 18 Cr. 224 (S.D.N.Y. Apr. 18, 2018), ECF No. 21, nor are they on par with concerns for the individual safety of the sureties in *United States v. Maxwell*, No.20-cr-330 (SDNY Dec. 14, 2020), upon which Bankman-Fried also relies. In *Nejad*, the trove of "private information" included the individuals' occupations and financial situations. In *Maxwell,* the individuals in question were embroiled in the particularly hideous crime of international sex trafficking and not, as in this case, allegation of financial fraud. The potential harm arising from disclosure is not in parity with that faced in *Nejad* and *Maxwell.*

---

[6] Kenneth P. Vogel, Emily Flitter and David Yaffe-Bellany, "*Inside Sam Bankman-Fried's Quest to Win Friends and Influence People*" https://www.nytimes.com/2022/11/22/business/ftx-sam-bankman-fried-influence.html, (Nov. 22, 2022).
[7] *Id.*
[8] Patrick Reilly, "*FTX Founder Sam Bankman-Fried to appear alongside Ukraine's Volodymyr Zelensky at exclusive NYT event"* https://nypost.com/2022/11/17/sam-bankman-fried-to-appear-alongside-volodymyr-zelensky-at-exclusive-nyt-event/ (Nov. 17, 2022).
[9] Nicole Dominique, "*The Truth About Sam Bankman-Fried and How FTX Got Entangled with Democrats, WEF, Ukraine, and Other Strangeness*". https://www.eviemagazine.com/post/truth-about-sam-bankman-fried-media-wont-tell-you-ftx-wef-democrat-ukraine (Nov. 15, 2022).

Klaris Law PLLC
29 Little West 12th Street
New York, NY 10014

Lance.Koonce@KlarisLaw.com
Mobile: +1 917.612.5861

Rather, CoinDesk seeks to unseal only the names of two individuals who have voluntarily stepped in to provide assurances relating to an individual in the center of a high-profile, apparently widening controversy. Although Bankman-Fried cites to purported "harassment" and "threats" to his parents, ECF. No 29, at 2, nowhere does he allege that such actions have resulted from signing his personal recognizance bond, as opposed to their much larger role as parents and supporters of his work, and their involvement in this case generally. Bankman-Fried simply has not met his burden in demonstrating that such purported countervailing factors outweigh the presumption of access here.

### III. CONCLUSION

For the foregoing reasons, CoinDesk respectfully requests that the Court grant its motion to unseal the names of the Bail Sureties, and requests to be heard at any hearing on this matter.

Respectfully submitted,

Lacy H. Koonce, III
KLARIS LAW PLLC
29 Little W 12th St.
New York, NY 10014
917-612-5861
lance.koonce@klarislaw.com

*Attorney for CoinDesk, Inc.*

Page 5 of 5

Klaris Law PLLC
29 Little West 12th Street
New York, NY 10014

Lance.Koonce@KlarisLaw.com
Mobile: +1 917.612.5861