UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        -against-                              22-cr-0673 (LAK)

SAMUEL BANKMAN-FRIED,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01-30-2023

## MEMORANDUM OPINION

Appearances:

        Danielle R. Sassoon
        Samuel Raymond
        Thane Rehn
        Andrew Rohrbach
        Nicolas Roos
        Danielle Marie Kudla
        Assistant United States Attorneys
        DAMIAN WILLIAMS
        UNITED STATES ATTORNEY

        Mark Stewart Cohen
        Christian R. Everdell
        COHEN & GRESSER, LLP
        *Attorneys for Defendant*

        Lacy H. Koonce, III
        KLARIS LAW PLLC
        *Attorneys for Intervenor CoinDesk, Inc.*

        Jeremy A. Chase
        Alexandra Settelmayer
        DAVIS WRIGHT TREMAINE LLP
        *Attorneys for Intervenors The Associated Press,*
        *Bloomberg L.P., The Financial Times Ltd.,*
        *CNBC LLC, Reuters News & Media Inc., Dow Jones*

> & Co., Inc., publisher of The Wall Street Journal,
> Insider, Inc., and WP Company LLC, publisher of
> The Washington Post
>
> Dana R. Green
> THE NEW YORK TIMES COMPANY
> Attorney for Intervenor The New York Times
> Company
>
> Matthew Russell Lee
> Intervenor Pro Se

LEWIS A. KAPLAN, District Judge.

This matter involves motions by various news organizations (the "News Organizations") to intervene for the purpose of seeking to unseal the names of defendant Samuel Bankman-Fried's non-parental bail sureties.[1]

### Facts

At defendant's presentment on December 22, 2022, the government and defense jointly proposed a set of bail conditions.[2]  Those conditions required, *inter alia*, that defendant sign a $250 million personal recognizance bond to be co-signed by defendant's parents.  The joint proposal required also that two additional sureties, one of whom must be a non-family member, sign separate bonds in lesser amounts to be agreed upon by the government and the defendant (the "Individual Bonds").  Magistrate Judge Gorenstein approved the joint proposal, defendant's parents co-signed

---

[1]   *See* Dkt 31 (Inner City Press), 40 (The New York Times Company), 42 (The Associated Press, Bloomberg L.P., The Financial Times Ltd., CNBC LLC, Reuters News & Media Inc., Dow Jones & Co., Inc., publisher of The Wall Street Journal, Insider, Inc., and WP Company LLC, publisher of The Washington Post), 43 (CoinDesk, Inc.).

[2]   *See* Dkt 36, at 8–11.

defendant's personal recognizance bond, and the defendant was released.  That all occurred before the proposed non-parental sureties were identified to the Court or the amounts agreed upon.  Thus, at the time the magistrate judge approved the bail package, the identities of the two non-parental sureties and the amounts of the Individual Bonds were unknown to the magistrate judge.

On January 3, 2023, defendant moved to redact the names of the non-parental sureties on the Individual Bonds, which still had not been signed.[3]  He claimed these redactions were necessary to "protect . . . the privacy and safety of the sureties."[4]  The government took no position on that request,[5] which I granted without prejudice to any application to release the names of defendant's non-parental sureties.  I did so in order to protect the ability of the press and other interested persons to be heard before a final decision was made concerning the proposed redaction.[6]  On January 4, 2023, the government interviewed and approved the defendant's proposed non-parental sureties.[7]  The government and defense agreed that the sureties would sign separate appearance bonds in the amount of $500,000 and $200,000, respectively.[8]  On January 19, 2023, defendant moved with the

---

[3]

Defendant's motion initially sought redaction of the non-parental sureties' " names and other identifying information." Dkt 29, at 1.  At his arraignment before the undersigned, however, defendant conceded that he sought to redact only the "names and addresses" of the non-parental sureties. *See* Dkt 38, at 3.  In all events, the Individual Bonds do not contain any addresses or identifying information for the non-parental sureties other than their names.  Thus, the names of the non-parental sureties are the only information now at issue.

[4]

Dkt 29, at 1.

[5]

*Id.*

[6]

*See* Jan. 3, 2023 Minute Entry.

[7]

Dkt 47, at 1.

[8]

*Id.*

4

government's consent to modify his bail conditions to reflect the agreed upon bond amounts.[9]  On January 20, 2023, I approved this modification "[i]n view of the fact that the government ha[d] agreed to all of the bail conditions for reasons it finds satisfactory."[10]  The non-parental sureties and defendant signed the Individual Bonds on January 25, 2023 and January 27, 2023, respectively.  Copies of the bonds, albeit with the sureties' names redacted subject to this decision, are publicly available.[11]

Pursuant to my January 3, 2023 order, the News Organizations filed four separate applications to intervene for the purpose of seeking access to the sureties' names.  Their applications make essentially the same arguments based on the common law and First Amendment rights of public access.[12]  Defendant does not contest the News Organizations' intervention, given that they are news organizations seeking to vindicate the public's claimed right of access to the information in question.[13] Defendant, however, continues to oppose disclosure of the names.

*Discussion*

I.      *Common Law Right of Access*

"The Supreme Court has recognized a qualified right 'to inspect and copy judicial

---

[9]      *Id.*

[10]     Dkt 48, at 2.

[11]     *See* Dkt 55, 56.

[12]     *See* Dkt 31, 40, 42, 43.

[13]     *See United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (although the "Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case[,] . . . such motions are common [ ] to assert the public's First Amendment right of access to criminal proceedings").

records and documents.'"[14]  That qualified "common law right . . . is firmly rooted in our nation's history."[15]  But "[w]hile the existence of the common law right to inspect and copy judicial records is beyond dispute . . . it is equally clear that that right is not absolute."[16]  "[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."[17]

"Before any such common law right can attach . . . a court must first conclude that the documents at issue are indeed 'judicial documents.'"[18]  "Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption."[19]  Last in the analysis, "the court must 'balance competing considerations against it.'"[20]

### A.    Judicial Documents

A "judicial document" in this context is any material presented in court "relevant to

---

[14]

Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019) (quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 597–98 (1978)).

[15]

Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006).

[16]

United States v. Graham, 257 F.3d 143, 149 (2d Cir. 2001) (internal citations and quotations omitted).

[17]

Nixon, 435 U.S. at 599.

[18]

Lugosch, 435 F.3d at 119.

[19]

Id.

[20]

Id. at 120 (quoting United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Amodeo II")).

the performance of the judicial function and useful in the judicial process."[21]  Thus, the object of the qualified common law right of access is to afford a presumption of public access to materials that shed light on the manner in which judges perform their judicial duties as distinct from satisfaction of curiosity.

A document is "relevant to the performance of the judicial function" if it "would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision."[22]  In *United States v. Graham*, the Court of Appeals held that "the decision whether to detain [a defendant] obviously constitute[s] a determination of the defendant's 'substantive rights.'"[23]  Accordingly, documents related to that determination are "judicial documents" for purposes of the common law right of access.[24]

In this case, the Individual Bonds – with or without names of non-parental sureties – did not exist when the magistrate judge approved the bail package.  Indeed, neither their amounts nor the identities of the sureties yet had been agreed upon.  Accordingly, it is at least arguable that the Individual Bonds, on the facts of this case, are not judicial documents.  Nevertheless, no one disputes that they are judicial documents.[25]  I therefore so assume for purposes of this motion.  In consequence,

---

21

       *Id.* at 119 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")).

22

       *Brown*, 929 F.3d at 49 (emphasis in original) (internal citations and quotations omitted).

23

       *Graham*, 257 F.3d at 153.

24

       *See id.*

25

       Dkt 29, at 3 ("We assume for purposes of this submission that the Court would deem the sureties' individual bonds to be 'judicial documents' subject to the 'presumption of access under both the common law and the First Amendment.'" (quoting *Lugosch*, 435 F.3d at

I assume that the presumption of accessability applies here and turn to the question of the weight to which it is entitled in this case.

### B.   Weight of the Presumption

> "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance."[26]

The presumption of access is strong for "documents that 'directly affect an adjudication' and play a significant role in 'determining litigants' substantive rights.'"[27]  Moreover, documents that "are usually filed with the court and are generally available" enjoy a stronger presumption of public access than documents for which "filing with the court is unusual or is generally under seal."[28]  By contrast, "documents that 'play only a negligible role in the performance of Article III duties' are accorded only a low presumption that 'amounts to little more than a prediction of public access absent a countervailing reason.'"[29]

As indicated above, neither the Individual Bonds nor the non-parental sureties' names played any role in the magistrate judge's approval of defendant's release pending trial.  Those bonds did not then exist and the sureties' names were not known, at least to the magistrate judge.  The fact

---

124)).

[26]   *Amodeo II*, 71 F.3d at 1049.

[27]   *Graham*, 257 F.3d at 153 (quoting *Amodeo II*, 71 F.3d at 1049).

[28]   *Id.* at 151 (quoting *Amodeo II*, 71 F.3d at 1050).

[29]   *Brown*, 929 F.3d at 49–50 (quoting *Amodeo II*, 71 F.3d at 1050).

that the identities of the non-parental sureties played no role in the bail decision "appreciably" weakens the strength of the presumption.[30]  On the other hand, the fact that bonds signed by sureties and co-sureties, which include their names, routinely are filed in this Court and made available to the public cuts in the other direction.[31]

At bottom, the strength of the presumption in this case, as it applies to the identities of the non-parental sureties, is not strong.  The benefit to the public of knowing the identities of the non-parental sureties for the purposes of "monitoring the federal courts" is extremely limited at best despite the fact that there appears to be a lot of popular interest in who they are.  Nevertheless, the presumption exists albeit it is entitled only to limited weight.

C.     *Countervailing Factors*

The conclusion that there is a modest presumption in favor of public access to this information is not the end of the analysis.  Courts must consider whether the presumption has been overcome.  Relevant factors include but are not limited to (i) "the danger of impairing law enforcement or judicial efficiency" and (ii) "the privacy interests of those resisting disclosure,"[32] including the "nature and degree of injury"[33] resulting from disclosure.

In this case, there does not appear to be any danger of impairing law enforcement.  The identities of the non-parental sureties have no bearing on the government's investigation, as evidenced

---

30

        *Graham*, 257 F.3d at 151.

31

        *Amodeo II*, 71 F.3d at 1050.

32

        *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II*, 71 F.3d at 1050).

33

        *Amodeo II*, 71 F.3d at 1051.

9

by the fact that the government has taken no position with respect to the motions.[34]

Second, the privacy interests of the non-parental sureties are limited. On the one hand, given the widespread popular interest in this case, many people appear to wish to know the names of the non-parental sureties. If the names of the non-parental sureties are disclosed, it is reasonable to assume that those individuals will become subject to publicity that they would prefer not to attract. That is entitled to some consideration, especially in a case which has the notoriety that this one has attracted. But that alone does not do the trick.

More serious is defendant's claim that he and his parents "have become the target of . . . harassment[] and threats . . . including communications expressing a desire that they suffer physical harm."[35] While there is no evidence to that effect before me, I have no reason to doubt the assertion. But it does not follow that the non-parental sureties "would face similar . . . threats and harassment . . . ."[36] Defendant's parents were subject to intense public scrutiny for their close relationship with defendant and their involvement with FTX well before co-signing his bail bond.[37] Indeed, defendant's father "was a paid employee of the company for nearly a year prior to FTX's collapse, connected FTX with at least one major investor, and participated in FTX's meetings with policy makers and officials."[38] In contrast, the amounts of the Individual Bonds – $500,000 and

---

[34] Dkt 29, at 1.

[35] *Id.* at 2.

[36] *Id.*

[37] *See* Dkt 42, at 4 & n.4.

[38] *Id.*

$200,000[39] – do not suggest that the non-parental sureties are persons of great wealth or likely to attract attention of the types and volume of that to which defendant's parents appear to have been subjected.  Thus, defendant's claim that the non-parental sureties "would face similar intrusions" is speculative and entitled only to modest weight.

Moreover, the information sought – i.e., the names of bail sureties – traditionally is public information.  The non-parental bail sureties have entered voluntarily into a highly publicized criminal proceeding by signing the Individual Bonds.  Accordingly, they do not have the type of privacy interests in their names that the Court of Appeals found to warrant confidential treatment with respect to "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters."[40]

Weighing the scales, with the presumption of public access on one scale and the countervailing factors on the other, there is not much weight on either side.  The information at issue is entitled only to a weak presumption of access, yet the countervailing factors are not sufficiently persuasive to overcome even that presumption.  In my view, the Individual Bonds should be on the public record.

## II.    *First Amendment Right of Access*

While the foregoing is sufficient to dispose of the applications before me, I recognize that a higher court might take a different view.  Accordingly, I briefly address the First Amendment issue.

---

[39]    Dkt 48, at 1.

[40]    *Amodeo II*, 71 F.3d at 1051.

11

It is "well established" that, "[i]n addition to the common law right of access," the public and press "have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'"[41]  The Court of Appeals has articulated two different approaches in deciding whether the First Amendment right applies to particular material.

> "The 'experience-and-logic' approach applies to both judicial proceedings and documents, and asks 'both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question.' [. . .] The second approach—which we adopt only when analyzing judicial documents related to judicial proceedings covered by the First Amendment right—asks whether the documents at issue 'are derived from or are a necessary corollary of the capacity to attend the relevant proceedings.'"[42]

With respect to the second approach, appearance bonds are neither "derived from" nor "a necessary corollary" of the capacity to attend a bail proceeding.[43]  As previously noted, the names of the non-parental sureties were not mentioned at that proceeding.  Hence, they are not "necessary to understand the merits" of a bail proceeding and, therefore, "are [not] covered by the First Amendment's presumptive right of access."[44]

*Conclusion*

For the foregoing reasons, the News Organizations' motions to intervene (Dkt 31, 40,

---

[41]

    *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)).

[42]

    *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013) (quoting *Lugosch*, 435 F.3d at 120).

[43]

    *Id.*

[44]

    *Id.*

42, 43) are GRANTED for the limited purpose of asserting the public's claimed right of access to the names of the non-parental sureties.  Further, the News Organizations' motions to unseal the names of the non-parental sureties are GRANTED.  As the question presented here is novel and an appeal is likely, this order is stayed until 5 p.m. on February 7, 2023 and, if a notice of appeal from this order is filed by then, until February 14, 2023 at 5 p.m. in order to permit an application for a further stay to be made to the Court of Appeals should any adversely affected party wish to file one.

SO ORDERED.

Dated:          January 30, 2023

/s/ Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge