

**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

February 15, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

  Re: *United States v. Samuel Bankman-Fried*, 22 Cr. 673 (LAK)

Dear Judge Kaplan:

  On behalf of our client, Samuel Bankman-Fried, we respectfully submit this letter pursuant to the Court's orders, dated February 9, 2023 and February 14, 2023, granting the parties additional time to file a submission regarding the parties' proposed modifications to Mr. Bankman-Fried's bail conditions. *See* ECF Nos. 65, 68. Set forth below are proposed modifications to the bail conditions that we respectfully submit address the concerns that the Court expressed at the oral argument on February 9, 2023 and in the Court's February 14, 2023 order, while still balancing the need for Mr. Bankman-Fried to meaningfully participate in his own defense and to be able to contact his friends and family directly.

  Prior to Monday, the defense had engaged in lengthy discussions with the Government regarding modifications to the bail conditions. Indeed, until Monday, when the Government first raised the issue of Mr. Bankman-Fried's use of a Virtual Private Network ("VPN"), we believed we had reached agreement in principle as to the appropriate modifications. We respect that the Government has changed its position. However, despite the Government's position, we respectfully submit that the modifications to the bail conditions listed below are appropriate and no more restrictive than necessary to achieve the purposes of the bail statute. *See* 18 U.S.C. § 3142(c) (A "judicial officer shall order the pretrial release of [a defendant] subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ."). We respectfully request that the Court "so order" these conditions.

The Honorable Lewis A. Kaplan
February 15, 2023
Page 2

1. <u>No Contact Condition</u>

The current condition provides: "the defendant shall not contact or communicate with current or former employees of FTX or Alameda (other than immediate family members) except in the presence of counsel, unless the government or the Court exempts an individual from this rule." ECF No. 58 at 6-7.

As the Court is aware, the no contact condition arose because of a message that Mr. Bankman-Fried sent to Witness-1. While we respectfully disagree that Mr. Bankman-Fried sent the message with any improper purpose (and we further deny and disagree with the allegations made by the Government at pages 2-3 in its letter dated January 27, 2023), we nonetheless agreed with the Government to adopt the no contact condition, after the Government exempted certain of Mr. Bankman-Fried's family members and close friends from a list provided by the defense.

At the February 9, 2023 oral argument, the Court indicated that it wanted the names of any individuals whom the Government exempted from this condition to be memorialized in writing to prevent any disputes between the parties. Feb. 9, 2023 Oral Arg. Tr. at 5-6. The Government responded that the parties had been memorializing the exemptions in emails, and the parties agreed to modify the bail condition to reflect this. *Id*. Accordingly, pursuant to the Court's statements at oral argument, we respectfully request that the phrase "in writing" be added to the no contact condition so that it reads as follows:

> The defendant shall not contact or communicate with current or former employees of FTX or Alameda (other than immediate family members) except in the presence of counsel, unless the government or the Court exempts an individual from this rule <u>in writing</u>.

2. <u>Call / Messaging Applications Condition</u>

The current condition provides: "the defendant shall not use any encrypted or ephemeral call or messaging application, including but not limited to Signal." ECF No. 58 at 7. This bail condition also arose out of Mr. Bankman-Fried's message to Witness-1, which was sent by Signal, an encrypted messaging app. The defense notes that, while Signal does have an auto-delete setting, Mr. Bankman-Fried disabled it for his Signal account and his other messaging applications well before his arrest.

The defense's main concern about this bail condition was that it would meaningfully impact our client's ability to communicate in connection with preparing his defense as well as with those close to him. Nevertheless, the defense worked with the Government to allay its concerns about potential message deletion in the messaging applications used by our client. After lengthy negotiations, the parties reached an agreement that allowed Mr. Bankman-Fried to

The Honorable Lewis A. Kaplan
February 15, 2023
Page 3

use certain messaging applications, but not others, as long as monitoring technology was installed on his cellphone that automatically preserves all communications using these platforms.

At oral argument, the Court indicated that it believed the words "encrypted" and "ephemeral" in the parties' proposed bail condition were ambiguous and that it wanted to ensure that any messages sent to and from Mr. Bankman-Fried would be preserved and could not be deleted, regardless of which messaging applications he used. Feb. 9, 2023 Oral Arg. Tr. 2/9/2023 at 6-9. The Court was willing to consider using a compliance application like the one proposed by the defense, which automatically preserves messages in a cloud-based archive, particularly if it could be applied to all text messaging or group messaging applications used by Mr. Bankman-Fried. *Id*. at 9-12. The Court gave the defense the opportunity to confer further with the Government and provide additional information about this compliance solution. *Id*. at 12-13.

Until Monday, the defense believed that it had reached an agreement in principle with the Government regarding this bail condition. In light of the Government's changed position, we propose a slightly different bail condition, which we think constitutes a clear, easily administrable solution that addresses the Court's concerns about the use of "encrypted" and "ephemeral" messaging applications.

First, to address the ambiguity of the words "encrypted" and "ephemeral," we propose removing the first sentence of the existing bail condition.

Second, we propose that Mr. Bankman-Fried be permitted to make traditional phone calls and use voice/call platforms because they do not produce written communications.

Third, based on the Court's comments at oral argument, we understand the Court's primary concern about our client's use of messaging applications is ensuring that any messages sent or received by Mr. Bankman-Fried cannot be permanently deleted and are preserved by the relevant service provider so that they are available to the Government if relevant to a later inquiry. Because email providers, cellphone service providers (through which SMS text messages are sent) and Twitter maintain records of communications for each account, the Government can obtain these communications from the providers with a search warrant, regardless of whether the messages are deleted (as noted below, our client will not be deleting messages in any event).[1] Accordingly, we propose that Mr. Bankman-Fried be permitted to use email, SMS text messaging and Twitter Direct Messaging ("Twitter DM"). To the extent that the defense would ask for Mr. Bankman-Fried to have access to additional messaging

---

[1] The discovery produced by the Government confirms our understanding that Twitter preserves the content of direct messages and user activity on the account. The Government has produced a pen register order for Mr. Bankman-Fried's Twitter account and copies of his Twitter direct messages obtained by a search warrant.

applications with these same properties in the future, the defense will file a new application with the Court at that time.

Fourth, as an added precaution, we propose that Mr. Bankman-Fried must also disable any auto-delete functions and be prohibited from manually deleting any messages on these platforms, which he has already done.

Fifth, because iMessage may not have the same properties as email, SMS text messaging and Twitter DM, we agree that Mr. Bankman-Fried will no longer use iMessage and will disable iMessage on his iPhone and any other device he uses to communicate.

Sixth, we previously proposed to the Court the possibility of using a compliance application. To simplify the issue and because it is not needed for email, SMS text messaging and Twitter DM (as explained above), we are not presently seeking the ability to use a compliance application. However, we respectfully request that the Court allow the defense to revisit this issue in a future application if Mr. Bankman-Fried would like to seek the Court's permission to have access to other messaging applications.

For these reasons, the defense requests that the bail condition be modified to read as follows:

> The defendant shall be permitted to place voice calls, FaceTime calls, and Zoom audio and video calls. The defendant is further permitted to use email, SMS text messaging and Twitter DM. The defendant must also disable any auto-delete functions and is prohibited from manually deleting any messages on these platforms. The defendant is not permitted to use any other messaging platforms apart from those listed above, including iMessage, which the defendant must disable on his iPhone and any other device he uses to communicate.

3. Asset Transfer Condition

The current condition provides: "the defendant [is] prohibited from accessing or transferring any FTX or Alameda assets or cryptocurrency, including assets or cryptocurrency purchased with funds from FTX or Alameda." Appearance Bond at 5. The defense's principal concern with this bail condition was that it could be read to prevent Mr. Bankman-Fried from pursuing legal claims to assert his lawful ownership interest in certain assets that the Debtors believe are FTX customer assets. In the parties' discussions, the Government represented that pursuing such legal claims is not covered by the bail condition. Based on this representation, the defense withdraws its request to remove the asset transfer condition.

4. <u>VPN Condition</u>

The current condition prohibits "the defendant's use of any VPN." ECF No. 68.

The Government raised the issue of our client's use of a VPN for the first time on Monday afternoon and stated that it was considering seeking a bail condition prohibiting Mr. Bankman-Fried from using a VPN. We promptly contacted our client about this new development and, after conferring with him, informed the Government that the contemplated bail condition would restrict Mr. Bankman-Fried's ability to meaningfully participate in the preparation of his own defense and requested that the parties continue to meet and confer to see if they could resolve the matter without seeking the Court's assistance. The Government respectfully declined our request and filed its letter raising the VPN issue with the Court.

As noted in the Government's February 13, 2023 letter and our response, Mr. Bankman-Fried has stopped using a VPN, and, in accordance with the Court's February 14, 2023 order, will not use a VPN until this matter is resolved by the Court, and only then if permitted to do so by the Court. As discussed further below, the defense does not believe that Mr. Bankman-Fried's VPN usage was improper but agrees to a bail condition restricting his VPN usage that does not hinder his ability to exercise his right to meaningfully participate in preparing his defense.

The Court observed in its February 14, 2023 order that Mr. Bankman-Fried used a VPN "at least once since the Court ordered that [he] refrain from using any encrypted or ephemeral call or messaging applications." ECF No. 68. As noted in our February 13, 2023 letter, Mr. Bankman-Fried used the VPN on February 12, 2023 for the purpose of accessing the NFL Game Pass international subscription that he had purchased when he previously resided in the Bahamas and watched a livestream of the Super Bowl. In our view, Mr. Bankman-Fried's use of a VPN for entertainment purposes does not implicate the concerns the Government raised in its February 13, 2023 letter.

Moreover, we respectfully submit that it was entirely reasonable for Mr. Bankman-Fried to believe that using a VPN was permitted. Accompanying this letter is the expert declaration of David Sun, a cybersecurity professional with 30 years of experience in the fields of technology, computer networking, cybersecurity, and computer forensics.[2] As Mr. Sun explains, a VPN is not an "encrypted or ephemeral call or messaging application" like Signal. The two technologies are very different, serve different functions, and are not thought to be related to each other in the technology field. *See* Sun Decl. ¶¶ 9, 17. Signal and other encrypted call or messaging applications allow users to conduct two-way, person-to-person communications such that the communications are rendered unreadable and inaccessible by third parties, including the servers hosting the application. *See* Sun Decl. ¶ 10. A VPN, by contrast, is not a call or messaging

---

[2] *See* Declaration of David Sun, attached as Exhibit A ("Sun Decl.") at ¶¶ 2-6.

The Honorable Lewis A. Kaplan
February 15, 2023
Page 6

application. It is a widely adopted personal, business, and government utility most frequently used to access client-server content such as web sites and video channels, and to provide work-from-home support. *See, e.g.*, Sun Decl. ¶¶ 11-16. Ephemeral call or messaging applications automatically delete or render communications unreadable. *See* Sun Decl. at ¶ 10. A VPN, by contrast, does not delete content or render any communication or transmitted content completely unreadable. *See* Sun Decl. at ¶ 17 (VPNs "do not have any autodeletion features").

Mr. Sun notes that VPNs are used by many individuals and companies in a variety of use-cases to, among other things, enhance security, and do not present the same risks as the use of encrypted or ephemeral two-way messaging applications addressed by this Court's February 1 Order. *See* Sun Decl. at ¶¶ 11-12, 17. For example, we were advised by counsel for the Chapter 11 FTX Debtor that, for security reasons, Mr. Bankman-Fried <u>must</u> use a VPN to access the FTX transactional database produced by the Government during discovery. The database contains information concerning FTX's financial transactions and is likely to be crucial to preparing Mr. Bankman-Fried's defense. This underscores how a complete ban on VPN usage would significantly constrain Mr. Bankman-Fried's ability to meaningfully participate in the preparation of his own defense.

To resolve this issue, we propose a restriction on Mr. Bankman-Fried's VPN usage that addresses any concerns the Court or the Government may have while allowing Mr. Bankman-Fried to exercise his right to assist in his defense. Thus, the defense proposes the addition of a bail condition that reads as follows:

> The defendant shall not use a "Virtual Private Network" or VPN, except as required to access any databases produced by the Government in discovery.

To the extent that the defense would ask for Mr. Bankman-Fried to have access to a VPN for other purposes in the future, the defense will file a new application with the Court at that time.

For the foregoing reasons, the parties respectfully request that the Court "so order" the proposed modifications to Mr. Bankman-Fried's bail conditions.

Respectfully submitted,

/s/ Christian R. Everdell
Mark S. Cohen
Christian R. Everdell
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York  10022

The Honorable Lewis A. Kaplan
February 15, 2023
Page 7

(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com

cc:    All counsel of record (via ECF)