```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,              New York, N.Y.

            v.                         S5 22 Cr. 673 (LAK)

SAMUEL BANKMAN-FRIED,

            Defendant.

------------------------------x        Arraignment

                                       March 30, 2023
                                       11:00 a.m.
Before:

                 HON. LEWIS A. KAPLAN,

                                       District Judge


                       APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  NICOLAS T. ROOS
     DANIELLE M. KUDLA
     DANIELLE R. SASSOON
     ANDREW A. ROHRBACH
     Assistant United States Attorneys

MERRICK GARLAND
     Attorney General of the United States
     Department of Justice
BY:  JIL SIMON
     Trial Attorney

COHEN & GRESSER, LLP
     Attorneys for Defendant
BY:  MARK S. COHEN
     CHRISTIAN R. EVERDELL



Also Present:  Joseph Lupinacci, FBI
```

1            (Case called)
2            THE DEPUTY CLERK:  Government, are you ready?
3            MR. ROOS:  Yes.  Good morning, your Honor.  Nicolas
4   Roos, Daniel Kudla, Jil Simon, Danielle Sassoon, Andrew
5   Rohrbach for the United States.  We are joined by Joe Lupinacci
6   from the Federal Bureau of Investigation.
7            THE COURT:  Good morning.
8            THE DEPUTY CLERK:  Defendant, are you ready?
9            MR. COHEN:  Yes, your Honor.  Good morning.  Mark
10  Cohen, Cohen & Gresser, for the defendant, Mr. Bankman-Fried.
11           MR. EVERDELL:  Good morning, your Honor.  Christian
12  Everdell, Cohen & Gresser, for the defendant.
13           THE COURT:  Good morning.  And Mr. Everdell, I just
14  want you to know that the scheduling I had no flexibility on.
15  It just had to be.
16           MR. EVERDELL:  I understand, your Honor.
17           THE COURT:  Okay.
18           THE DEPUTY CLERK:  Should I arraign the defendant?
19           THE COURT:  Yes, on both outstanding ones.
20           THE DEPUTY CLERK:  Mr. Cohen, have you received
21  copies of the S3 and S5 indictments in this case?
22           MR. COHEN:  Yes, we have.
23           THE DEPUTY CLERK:  Have you reviewed both the S3 and
24  S5 indictments with your client?
25           MR. COHEN:  Yes, we have.

1    THE DEPUTY CLERK: Does your client waive the public
2 readings as to each of the S3 and S5 indictment?
3    MR. COHEN: Yes.
4    THE DEPUTY CLERK: And how does your client plead to
5 each of them?
6    MR. COHEN: My client pleads not guilty to each of
7 the S3 and S5 indictments.
8    Your Honor, for record purposes, we wish to note by
9 pleading not guilty my client is not acknowledging that he can
10 be tried on the new counts that were brought after his
11 extradition, and that will be the subject of one of our
12 motions to your Honor but, namely, it will be the new counts
13 brought in S3 and S5—Count Four for commodities fraud; Six for
14 securities fraud; Nine for conspiracy to commit bank fraud;
15 Ten, conspiracy to operate an unlicensed money transmitting
16 business; and Thirteen brought this week for conspiracy to
17 violate the FCPA.
18    THE COURT: Okay. Thank you.
19    Mr. Roos, I think it is you folks who wanted a
20 conference.
21    MR. ROOS: So, your Honor, in addition to arraigning
22 the defendant and excluding time, which I will ask for at the
23 end, I think the other reasons we wrote to you were, number
24 one, on the bail issues. Your Honor has now entered the bail
25 order, perhaps mooting that point.

1          The other thing is the discovery.  Last time we had
2  somewhat of a lengthy colloquy giving your Honor an update.
3  That was on March 10.  We have made productions.  We are about
4  to make another one.  I think it may -- some things have
5  changed since the last time.  I think it may be appropriate
6  just, if the Court is interested, to give you an update so
7  you --
8          THE COURT:  Yes, sure.
9          MR. ROOS:  -- sort of know where we are.
10         THE COURT:  Yes.
11         MR. ROOS:  Is it okay if I go over to the lectern?
12         THE COURT:  Yes, sure.
13         MR. ROOS:  Thank you.
14         So like I said, when we last appeared on March 10, we
15  had produced approximately -- I think I put it in the range of
16  2 million pages of documents.  Since then, we made another
17  production on March 17, which was about 1.1 million pages,
18  plus producing the defendant's Google accounts, which was
19  about 2.5 million pages, putting the total document production
20  around 6 million pages, plus some additional data that has not
21  been stamped because it's the full image for a device.
22         THE COURT:  Run that last part, it was the full?
23         MR. ROOS:  It's the full -- it's like the entirety of
24  a cell phone image or of a computer image, and therefore each
25  file doesn't have a stamp.  It's just like the device image

1   has a stamp.
2           So at this point the defendant has legal process, that
3   is, the warrants, affidavits, applications, and orders; he has
4   the F.B.I. records relating to the execution of the warrants
5   and the seizures; and he has the material seized from his own
6   devices.
7           I will also just note for the record that we have
8   received the discovery and particulars request, a letter
9   request from the defense, which we have responded to.
10          So sort of giving that to your Honor at the outset to
11  say I think, for purposes of motion practice, the defendant
12  has the indictment, he has the materials for a suppression
13  motion, he has the materials for any sort of discovery or bill
14  of particulars motion.  So I think defense counsel was going
15  to raise a slight adjustment to the motion schedule which we
16  are fine with, but I think the high-level point that I wanted
17  to make to your Honor is I think, broadly speaking, we are on
18  track to meet the motion deadline that we have in place or a
19  slight modification of it.
20          So that brings me to what's left.  Last time we
21  talked about, I will say, three buckets—the devices, the very
22  large Google search warrant return, and then the final two
23  buckets were sort of the voluntary and subpoena production,
24  some third-parties, and some other grab bag items.  So I was
25  just going to give your Honor a brief update on where we are

1  on those things, a little bit of bad news and then some good
2  news.  I will start with the bad news.
3  　　　　So last time we told the Court that there are seven
4  devices that are in the government's possession—two were
5  obtained pursuant to warrant, five were obtained on
6  consent—all subject to privilege review.  As of the last
7  conference, two of them had been produced and there were five
8  remaining.  Your Honor sort of identified them as devices A, B,
9  C, D, and E on the record just so we could talk about them, the
10 first three being A, B, and C which were all laptops on consent
11 and then D and E being the two seized devices.  So I am just
12 going to use the same nomenclature today as I am giving you an
13 update on the devices.
14 　　　　THE COURT:  D and E were the consent?
15 　　　　MR. ROOS:  Were the seized.  A, B, and C were the
16 consent; D and E were the seized.
17 　　　　THE COURT:  Okay.
18 　　　　MR. ROOS:  So on A, B, and C -- so A and C are two
19 laptops.  They were both received on consent.  They needed to
20 go through a privilege review.  That privilege review is done
21 for one of them and is effectively done for the other, and so
22 at this point all that needs to happen is the production of
23 the device without those privilege -- tagged privilege
24 materials to the defense.  So I think at the last conference I
25 told your Honor I thought we would be able to hit an end of

1   March deadline.  It may drag a teeny bit into April, but those
2   devices are done.
3              The other consent, which we were calling laptop B,
4   this is the bit of bad news.  So this is a -- it's a really
5   large device and, because of the size, there have been a lot
6   of sort of technical issues with the extracting device and
7   then also being able to do a privilege review of it.  We are
8   still trying to work through how to -- how to do the privilege
9   review and also how to get a copy to the defense that doesn't
10  have the privileged materials.
11             So our current plan is there is, let's say, a large
12  portion of the device that does not hit on privilege terms,
13  and so we are going to extract that out and put it on a
14  separate drive for the defense, and then try to deal with the
15  remainder.  The device is so large that recently when we have
16  tried to have a filter AUSA review the Slack messages on it,
17  we couldn't even load them up to do the privilege review.  So
18  we are basically going to have to take -- sort of virtually
19  take the device apart, as I understand it, and work through
20  it.
21             So the bad news is that is not going to be done by
22  the end of March.  I think we are going to continue to try to
23  devote a lot of resources to making this happen and hopefully
24  we will achieve it soon.  I am reluctant to give an exact date
25  on it because this particular device has taken in some places

1    weeks in order to even just extract off, and so I wish I could
2    say this will be -- this leg will copy off the device in this
3    amount of time, but I'm not that technically savvy.  They
4    won't even let me in the F.B.I. lab.  So I can't make any
5    assurances.  But we are certainly hoping in the next few weeks
6    or within the next month that will be produced.  I will say it
7    is a device on consent, so I don't think it should be
8    particularly relevant for motion practice, and the government
9    isn't getting like an advantage on this.  We are not looking
10   at it either.
11           The two other devices, which are the two warrant
12   devices, so device D was the laptop.  That has finished its
13   privilege review.  We had finished a responsiveness review,
14   but then it looked like there were some items missing that
15   basically didn't come out of the extraction, so we are in the
16   process of going back and looking to see if there are
17   additional materials that need to be produced off that.  And
18   the last item, E, is the cell phone which was obtained through
19   the warrant.  We just finished our review, and so we should be
20   getting the responsive materials out in this next production.
21           THE COURT:  Which will be approximately when?
22           MR. ROOS:  It could be tomorrow, it could be the
23   beginning of next week.
24           THE COURT:  Okay.
25           MR. ROOS:  So the second big category is Google.

1  This is, I would say, where there is, on balance, good news.
2  When we last spoke on March 10, the Google returns were still
3  being loaded, so there had been no privilege review at that
4  point.  At this point all of the privilege screening is done.
5  The defendant has been produced the entirety of the full
6  accounts that belong to him.
7         The responsiveness review has begun.  There are 2.69
8  million nonprivileged e-mails and documents.  At this point we
9  are through -- we have tagged responsive or not responsive
10 1.53 million, so it leaves a balance of about a million, but I
11 would say we are sort of making good headway and working
12 through this efficiently, and the F.B.I. has devoted a
13 tremendous amount of resources to this.  So I think we are on
14 pace to achieve the deadlines we spoke of previously.
15        The last category --
16        THE COURT:  Remind me of what that was.
17        MR. ROOS:  April.
18        THE COURT:  Okay.
19        MR. ROOS:  And the last category is the sort of
20 subpoena returns, voluntary productions, publicly available
21 information.  So we made a fairly substantial production about
22 a week after our last conference.  At this point we have
23 obtained 1.03 million documents, so 1,037,000 documents from
24 third parties by subpoena or voluntary production.  We have
25 produced 927,000, so that leaves, quick math, maybe 110,000,

give or take, to be produced.

            THE COURT:  Bedtime reading.

            MR. ROOS:  What's that?

            THE COURT:  Bedtime reading.

            MR. ROOS:  Bedtime reading.  But in the scheme of things, less than 10 percent.  So those will be pushed out in the next production or two.

            THE COURT:  All right.  It doesn't sound too terrible.

            Mr. Cohen, you are going to tell me why it is terrible.

            MR. COHEN:  Your Honor, briefly, we don't have an application today about the trial date in light of Mr. Roos's statement to the Court.  We just want to note that we do have a concern about laptop B that he just described because, as we understand that, that relates to a cooperating witness who will be an important government witness at trial, and I don't think there is anything to do about it today, but if this continues we may have to come back to your Honor on that.  So I would urge the government team to really devote resources to getting us laptop B.

            And the only other thing we have from the defense today, your Honor, as Mr. Roos bookmarked, we would request that the motion schedule be shifted by one week in light of the new charges brought in the S3 and S5.  Our motions are

1    currently due May 1, and this would have them be May 8; the
2    government's response is currently due May 22, and this would
3    move it to May 29; and our reply is currently due June 5, and
4    this would move it to June 12.
5             THE COURT:  Okay.  You've got it.
6             MR. COHEN:  Thank you.  That's all we have, your
7    Honor.
8             THE COURT:  Andy, we need to see whether we can set an
9    argument or conference date.
10            THE DEPUTY CLERK:  Sure, Judge.
11            (Court and deputy confer)
12            THE COURT:  We will set argument or conference for
13   June 15.  Since I have a trial that day, being a Thursday, we
14   will let the jury out early if we are still in trial, so let's
15   say 3:30.  Does that work for everybody?
16            MR. ROOS:  Yes, your Honor.
17            MR. COHEN:  Yes.
18            THE COURT:  Okay.  Anything else?
19            MR. ROOS:  Two other things.  Your Honor entered the
20   bail order.  At that point --
21            THE COURT:  I do appreciate all the hard work that
22   went into it --
23            MR. ROOS:  Thank you, your Honor.  Well --
24            THE COURT:  -- on both sides.
25            MR. ROOS:  -- I think it's fairly straightforward.

Case 1:22-cr-00673-LAK   Document 127   Filed 04/17/23   Page 12 of 13    12
N3u2BanC                        kjc

1  Your Honor signed it.  But we are, of course, happy to answer
2  any questions.  I think the bail order said on it the S3
3  indictment.  I think maybe it is just -- it is appropriate to,
4  to the extent -- to avoid any ambiguity, to confirm that the
5  current bail order extends to the now S5 indictment.
6           THE COURT:  All right.  The current bail order extends
7  to the S5 indictment.
8           MR. ROOS:  Thank you, your Honor.
9           The only other thing I would do --
10          THE COURT:  There's a careful fellow.
11          MR. ROOS:  -- would be to make a motion to exclude
12 time, unless there is anything else from defense counsel.
13          THE COURT:  Well, it is excluded already, isn't it,
14 until the trial date?
15          MR. ROOS:  It is excluded, I think, on the original
16 indictment.
17          MR. COHEN:  We have no objection, your Honor.
18          MR. ROOS:  So I would make the application to exclude
19 time in the S5 indictment for the reasons stated on the record
20 on January 3, which were principally so the government can
21 produce discovery, the defense can review discovery, engage in
22 motion practice, and prepare for trial.
23          THE COURT:  Granted.  Time is excluded until October 2
24 on all the indictments.
25          MR. ROOS:  Thank you, your Honor.

               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

N3u2BanC kjc

1        THE COURT:  Okay.  If there is nothing else?  Okay.
2   Thank you.
3                              oOo