# Exhibit 7

**To:** Daniel Friedberg
**From:** Igor Voloshin
**Sent:** Fri 2/28/2020 6:16:32 PM (UTC)
**Subject:** Tether Gold Analysis

Hi Dan:

You told us that Bitfinex or affiliate is considering listing its stablecoin ("**Tether Gold**") on FTX Trading Ltd. ("**FTX**"). You asked us to consider whether the transaction would result in Bitfinex engaging in a licensable activity, particularly whether money services business ("**MSB**") registration under the Bank Secrecy Act ("**BSA**") is required. As you know, the Financial Crimes Enforcement Network ("**FinCEN**") has not provided guidance on this exact issue, so our legal analysis follows. Please let me know if you want us to put this into a formal memo format.

There are two key questions to consider: (i) whether the underlying activity/transaction constitutes money transmission within the meaning of FinCEN; and if so (ii) whether the parties are MSBs by engaging in the underlying activity. Both conditions have to be present in the transaction to trigger MSB registration.

**Money Transmission**

BSA regulations define "money transmission" as "the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means." 31 C.F.R. § 1010.100(ff)(5)(i)(A) (emphasis in original). FinCEN has said that "convertible virtual currency" qualifies as "value that substitutes for currency." FIN-2013-G001. FinCEN has defined convertible virtual currency to include digital assets that have "an equivalent value in real currency or act[] as a substitute for real currency." *Id*.

Stablecoins fall under the definition of convertible virtual currency ("**CVC**"), thereby making Tether Gold subject to this regulatory regime. As I understand it, offering Tether Gold likely constitutes money transmission as Bitfinex is transmitting (e.g., converting) CVC for another substitute of value.

**Status as an MSB**

According to a 2012 FinCEN guidance, "[t]o qualify as an MSB, a person, wherever located, <u>must do business, wholly or in substantial part within the United States</u>, in one or more of the capacities listed in 31 CFR 1010.100(ff). Relevant factors include whether the foreign-located person, whether or not on a regular basis or as an organized or licensed business concern, <u>is providing services to customers located in the United States</u>." FIN-2012-A001 (emphasis added). As noted above, 31 C.F.R. § 1010.100(ff) includes money transmission.

In reviewing the available precedent and FinCEN guidance on this question, it is unlikely that FinCEN would take the position that this activity triggers MSB registration. FinCEN takes a facts and circumstances approach to the underlying transaction to determine if one or more of the parties to the transaction must register as MSBs.

Here, Bitfinex is incorporated and operated outside the US, and does not allow US based customers to trade on its platform. Likewise, FTX is incorporated and operated outside the US, and does not allow US persons to trade on its platform. FTX is majority owned by Sam Bankman-Fried who we understand is not a resident of the US, but is a US citizen and US taxpayer. FTX is operated from abroad, and no FTX business activities are conducted within the US. We note that FTX does not accept US customers or offer services to the US. FTX also has no physical presence within the US.

On its face, FTX is not a customer "located" in the United States. Any fair reading of the 2012 FinCEN Guidance indicates that the customer's physical location controls for purposes of determining whether an entity is doing business in the United States. This is buttressed by the fact that the few cases where a foreign entity was subject to proceedings for failing to register as an MSB, that entity had a direct and substantial customer base physically located in the US. *See e.g.*, *United States v. Budovsky*, No. 13CR368 DLC (S.D.N.Y. Sept. 23, 2015) (reviewing the application of the BSA to the Liberty Reserve offshore exchange).

However, we note of course that regulatory agencies have wide discretionary authority and often exceed their apparent regulatory authority, and are therefore unpredictable. We think it is very helpful if no FTX customers are US residents.

**Enforcement Risk**

As a practical matter, US agencies typically do not take enforcement action against offshore entities unless the underlying business activity sufficiently touches and concerns the US such that it would rebut the presumption against extraterritorial application of the US authority, would warrant the necessary resource allocation to pursue such an action, and requires such action due to the grave nature of the underlying conduct.

However, this of course is uncertain and most of these matters fall within the realm of regulatory discretion.

Thanks,
Igor

**IGOR VOLOSHIN**

Associate | Fenwick & West LLP |

Admitted to practice only in Washington.