# Exhibit 13

```
 1                UNITED STATES BANKRUPTCY COURT
                      DISTRICT OF DELAWARE
 2

 3   IN RE:                       .  Chapter 11
                                  .  Case No. 22-11068 (JTD)
 4   FTX TRADING LTD. et al.,     .
                                  .  (Jointly Administered)
 5              Debtors.          .
                                  .
 6   . . . . . . . . . . . . . .  .
                                  .
 7   AUSTIN ONUSZ, CEDRIC KEES    .  Adversary Proceeding
     VAN PUTTEN, NICHOLAS J.      .  No. 22-50513 (JTD)
 8   MARSHALL and HAMAD DAR, on   .
     behalf of themselves and all .
 9   others similarly situated,   .
                                  .
10              Plaintiffs,       .
                                  .
11       v.                       .
                                  .
12   WEST REALM SHIRES INC., WEST .
     REALM SHIRES SERVICES INC.   .
13   (D/B/A FTX US), FTX TRADING  .
     LTD., ALAMEDA RESEARCH LLC,  .
14   SAM BANKMAN-FRIED, ZIXIAO    .
     WANG, NISHAD SINGH and       .
15   CAROLINE ELLISON,            .
                                  .
16              Defendants.       .
                                  .
17   . . . . . . . . . . . . . .  .
                                  .
18   ALAMEDA RESEARCH LTD.; FTX   .  Adversary Proceeding
     TRADING LTD.,                .  No. 23-50084 (JTD)
19                                .
                Plaintiffs,       .
20                                .
        -against-                 .
21                                .
     VOYAGER DIGITAL, LLC; HTC    .  Courtroom No. 5
22   TRADING, INC.,               .  824 Market Street
                                  .  Wilmington, Delaware 19801
23              Defendants.       .
                                  .  Wednesday, April 12, 2023
24   . . . . . . . . . . . . . .  .  1:01 p.m.

25                            (CONTINUED)
```

1          MR. DIETDERICH:  Thank you.  Good afternoon, Your

2    Honor.  Andy Dietderich for the debtors; with me is my

3    partner Brian Glueckstein.

4          I think we have a presentation.  Does it -- do I

5    press it forward?  That's not it.

6       (Laughter)

7          THE COURT:  Remove that person from Zoom, please.

8    Thank you.

9          Can we bring that up for everybody in the

10   courtroom?

11      (Pause)

12         MR. DIETDERICH:  There is it.  Good.  So, thank

13   you.

14         Your Honor, it's been three months since we were

15   before you at an omnibus hearing.  We'd like to thank Your

16   Honor for the efficient manner in which the cases have been

17   conducted so far.  The Court has entered more than 38 orders

18   on certification of counsel, including 30 orders that

19   reflected negotiated solutions with stakeholders.  As a

20   result, the debtors have been able to focus almost entirely

21   on the business of the case, rather than court appearances.

22         The first months of the case have been

23   extraordinarily busy and productive.  There's an overwhelming

24   number of ongoing workstreams and novel issues in every

25   discipline.  Today, the situation has been stabilized and the

1  dumpster fire is out, and as I will explain in a moment, we

2  anticipate filing a plan of reorganization in July.

3          I would like to spend some time on a case update

4  for the Court.  First, and perhaps most important, our assets

5  available for stakeholder recovery.  Our estate consists of

6  many investments, businesses, and causes of action that have

7  not yet been monetized.  Valuing these now is impossible;

8  however, we are tracking distributable assets:  Cash, Class

9  A, or Category A cryptocurrency, which we defined in previous

10 submissions, and securities.

11          Here's a chart of these assets at petition date

12 value, including cash receivables from the settlements and

13 transactions recently approved by the Court.  We now stand at

14 $6.2 billion, an increase of $800 million from my update to

15 the Court in January.  This increase in value is more

16 significant if we take into account current asset pricing.

17          On this next slide, at current prices, our

18 distributable assets have increased to $7.3 billion, a $1.9

19 billion increase from my January briefing.  What goes up can

20 go down.  Prices will fluctuate during these cases.

21          As we will discuss in a moment, one of the

22 important tasks of the debtors is being a good and prudent

23 custodian of $7.3 billion of asset value.  We will be

24 increasing distributable assets, hopefully dramatically, as

25 the case progresses, but it's also important for us not to

1    lose what we have now.

2            Next, Your Honor, I'd like to review some

3    significant events by subject matter.  The first is our

4    investigative work.  In addition to everything else, the

5    debtors are conducting an extraordinarily complicated

6    forensic investigation, in coordination with multiple law

7    enforcement agencies in the United States and around the

8    world.  Early on in this case, the Board of Directors decided

9    it was in the interests of the estate to expend the resources

10   necessary to create a centralized collection of information

11   under the debtors' control and to make this information

12   available to law enforcement agencies in a transparent and

13   reliable manner.  The debtors believe that this cooperation

14   has, and will continue to benefit the estates economically,

15   especially as we approach the formation of a plan and the

16   coordination of the distribution of estate property with a

17   distribution of property subject to criminal forfeiture.

18   Government cooperation is in our financial interests.

19           The investment has been substantial.  Over 1.3

20   terabytes of data has been collected and compiled.  Much of

21   the information has been provided only to government

22   authorities, sometimes directly and sometimes in summary

23   presentations.  The debtor is limited in what it can say

24   publicly and provide to certain parties in interest because

25   of the pending government investigations; however, the

1   debtors were able to publish earlier this week, the first

2   interim report of Mr. Ray, the independent director; a report

3   that focuses on control failures at the FTX Group prior to

4   filing.

5           The gist of this report is clear:  Mr. Bankman-

6   Fried repeatedly, pervasively, and often persuasively, lied

7   to stakeholders and the customers and creditors in order to

8   maintain the digital con game.  The FTX exchanges appeared to

9   the user as legitimate, in fact, superficially, they appeared

10  to process trades and information more quickly and

11  conveniently than competitors.  The app worked beautifully,

12  but in truth, it was a facade, a digital Potemkin village, or

13  perhaps more apt, a video game.  Behind the user interface,

14  there was no correspondingly sophisticated reality, no

15  equivalent process for segregating assets or reconciling

16  trades, no reliable relationship between the positions

17  reflected in the online game and the underlying positions

18  held in the real world.

19          The debtors are working on a second report that

20  will focus on the violation of basic principles of asset

21  segregation.  The debtors will endeavor to make these reports

22  available on a rolling basis and hope they will facilitate

23  the common understanding necessary for productive plan

24  discussions.

25          Other developments include the guilty pleas of

1  Mr. Singh, joining Mr. Wang Ms. Ellison.  Those who have pled

2  guilty also have agreed to provide assistance to the

3  government and Mr. Wang, in particular, has provided material

4  assistance to the debtors, as well, helping us locate

5  additional assets.  And we've seen additional charges against

6  Sam Bankman-Fried.

7            We also appreciate the U.S. criminal authorities

8  working in parallel with us to secure assets.  This includes

9  approximately 100 million in cash in the name of FTX Digital

10 Markets, as well as the often-discussed HOOD stock.

11           From the debtors' perspective, Your Honor, we see

12 no tension between the debtors and the U.S. Attorney as to

13 whether particular assets are recovered by the U.S. Attorney

14 or by the debtors.  In this case, we believe victims entitled

15 to restitution and creditors entitled to a distribution in

16 Chapter 11 are functionally equivalent.  We will continue to

17 work with the U.S. Attorney on this basis.

18           Operationally, we reconciled customer balances

19 across an incredible 10 million accounts.  We have a

20 considerable cost and expense fortified, the AWS security

21 environment.  We've retained a core team of continuing

22 employees and Your Honor has approved a KERP.  We've

23 rationalized our use of office space and our footprint and,

24 importantly, we have returned cryptocurrency to customers in

25 Japan by opening for withdrawals.

1                    <u>CERTIFICATION</u>

2          I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    <u>/s/ William J. Garling</u>                 <u>April 12, 2023</u>

8    William J. Garling, CET-543

9    Certified Court Transcriptionist

10   For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25