# Exhibit 1

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Samuel Bankman-Fried | ) | Case No.  S5 22-CR-673 (LAK) |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE

To:   Fenwick & West LLP c/o Nancy Hart, Esq., Gibson, Dunn & Crutcher LLP,
200 Park Avenue, New York, NY 10166

*(Name of person to whom this subpoena is directed)*

   **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

Please see attached Exhibit A.

| Place:   Cohen & Gresser LLP<br>800 Third Ave., 19th Fl.<br>New York, New York 10022 | Date and Time:  06/20/2023 5:00 pm |
|---|---|

   Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

      *(SEAL)*

Date:   _____

                                        *CLERK OF COURT*

                                        _____
                                        *Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
Samuel Bankman-Fried                                        , who requests this subpoena, are:

 Christian R. Everdell, Cohen & Gresser LLP,
 800 Third Avenue, 21st Fl. New York, NY 10022, ceverdell@cohengresser.com; +1 212 707 7268

## Notice to those who use this form to request a subpoena

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case  (Page 2)

Case No.   S5 22-CR-673 (LAK)

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)*   Fenwick & West LLP
was received by me on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

**(1)  In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

**(2)  Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

**(3)  Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d) Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e)  Place of Service.**

**(1)  In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

**(2)  In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g)  Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

# Exhibit A

# Exhibit A

## DEFINITIONS

1.      "Alameda" shall mean Alameda Research LLC, Alameda Research LTD, and their subsidiaries and affiliates.

2.      "Communication" or "Communications" shall mean voice messages, letters, emails, presentations, drafts, memoranda, notes, text messages, or instant messages sent via Slack, Signal, or other similar applications.

3.      "Document" or "Documents" shall mean books, papers, documents, data or other objects, including Communications.  A draft or non-identical copy is a separate document within the meaning of this term.

4.      "Fenwick" shall mean Fenwick & West LLP.

5.      "FTX" shall mean FTX Trading Ltd. d/b/a FTX.com and its subsidiaries.

6.      "FTX Group" shall mean FTX and FTX US, collectively.

7.      "FTX US" shall mean West Realm Shires Inc. d/b/a FTX US and its subsidiaries.

8.      "Local Rules" shall mean the Local Criminal Rules of the United States District Courts for the Southern and Eastern Districts of New York.

9.      "North Dimension" shall mean North Dimension Inc., North Wireless Dimension Inc., and North Dimension Ltd.

10.      "Requests" shall mean the requests to produce Documents pursuant to this subpoena.

11.      "You" or "Your" shall mean Fenwick and all representatives, agents, advisors, and all other Persons or entities acting or purporting to act on Your behalf.

## INSTRUCTIONS

1.      Any and all provisions contained in the Federal Rules of Criminal Procedure and the Local Rules are incorporated by reference as if set forth fully herein.

2.      For the convenience of the Court and counsel, You are requested to restate each Request immediately before Your response thereto.

3.      In responding to the Requests, You shall produce all responsive Documents that are in Your possession, custody, or control, or in the possession, custody, or control of Your agents, employees, or other representatives.  A Document shall be deemed to be within Your control if You have the right to obtain the Document or a copy of the Document from another person having possession or custody of the Document.

4.      If You believe that any person or entity might have custody or control of any Document that is not within Your custody or control but is otherwise responsive to any part of these Requests, You shall state so and shall identify the person or entity that You believe might have custody or control of that Document.

5.      These Requests cover the time period of January 1, 2019 to the present unless otherwise specified or inherent in a particular Request.

6.      Although some of the Requests may overlap, each Request shall be construed independently and no Request should be read as limiting any other Request, but You are required to produce a Document only once, even if it is responsive to multiple Requests.

7.      The terms "concerning," "reflecting," "related to," and "relating to" mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

8.      Each requested Document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other documents at any time affixed thereto.  If a Document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

9.      You must produce responsive Documents as they have been kept in the usual course of business or organize and label them to correspond to the enumerated Requests.  If there are no Documents responsive to any particular Request, You must so state in writing.

10.     Any Document that contains any notation, addition, insertion, or marking of any kind that renders it not entirely identical to a version of that Document without such marks shall be produced as a separate Document.

11.     If You contend that part of a Request is objectionable, You are requested to respond to that portion of the Request that You do not contend is objectionable and specifically identify the respect in which You consider the Request to be objectionable.  If Your objection relates only to part of the Request, You are to produce all Documents or other information that do not fall within the scope of Your objection.

12.     If You claim any ambiguity in interpreting a Request or a definition or instruction applicable thereto, You should not rely on such claim as a basis for refusing to respond, but You shall set forth as part of Your response to such Request the language deemed to be ambiguous and the interpretation chosen to be used in responding to the Request.

13.     If any responsive Documents contain electronically-stored information, such Documents should be produced in a form that contains all electronically-stored information for those Documents, including but not limited to the metadata for those Documents.  Electronic

Documents and data that are electronically searchable should be produced in a form that does not remove or downgrade this feature.

14.     Documents in electronic form, including but not limited to e-mail, shall be produced in single-page, group IV tagged image file format ("TIFF") for black and white images, and single-page, Joint Photographic Experts Group ("JPEG") format for color images, in a separate folder labeled "Images."  Each image shall have a unique production number. Metadata associated with electronically-stored information shall be produced in delimited text format in a separate folder labeled "Data."  Full extracted text files, if any, should be delivered as document-level text files named for the first Bates number in a separate folder labeled "Text." Spreadsheets and database files shall be provided in native format, with an accompanying placeholder production-numbered TIFF file.  Each responsive spreadsheet filename shall be clearly labeled to indicate the placeholder production number that corresponds to each spreadsheet.

15.     If You believe that any Document covered by these Requests is or may be subject to a claim of privilege, including the attorney-client privilege or work product doctrine, prior to responding to these Requests, You should confirm with the holder of the privilege that any applicable attorney-client privilege or work product protection has not been waived, either in whole or in part.

16.     If any Document covered by these Requests is withheld by reason of a claim of privilege, including the attorney-client privilege or work product doctrine, You must provide a log identifying the categories of Documents for which the privilege is claimed specifically identifying the following:  (i) the type of Document, (ii) any addressor and addressee; (iii) any indicated or blind copies, (iv) the Document's date, (v) the general subject matter of the

Document, and a description of any attachments or appendices, (vi) all persons to whom the Document was distributed, shown, or explained, (vii) the nature and basis of the privilege or grounds for withholding being asserted, and (viii) whether the asserted privilege arises from a corporate representation only, a joint representation of a corporation and an individual, or an individual representation only.

17.     If information protected from disclosure by the attorney-client privilege is redacted from a Document produced in response to a Request, identify the redaction by stamping the text "Redacted – Privileged" on the Document at each place where information has been redacted and separately log each redaction on the privilege log.

18.     This request for production of documents is without prejudice to any later subpoenas in this action.

# REQUESTS FOR PRODUCTION

## Request No. 1

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda, dated November 2017 through November 2022, concerning the formation and incorporation of FTX, FTX US, or Alameda, including jurisdictional and regulatory considerations and determinations of applicable law, such as reflected in the following invoices:

- Attachment 1:  SBF_GOOGLE_SW_00192150 ("draft futures exchange documents; emails regarding Antigua entity . . . jurisdictional futures trading regulation survey . . . Review options to launch futures exchange . . . Call with Alameda and Fenwick team; A&O on proposed approach to establishing new foreign exchange . . . emails with A&O regarding multi-jurisdictional futures trading regulation survey; confer with D. Friedberg regarding same")

- Attachment 2:  SBF_GOOGLE_SW_00177562 ("read through relevant no action letters and policy statements regarding foreign exchange registration . . . research and analyze effect of CFTC's rules regarding exchanges not located in the United States . . . legal research on subsidiaries of U.S. companies trading on foreign futures exchanges . . . Review news articles regarding CFTC enforcement actions against foreign exchanges . . . Research and analyze [CFTC] regulations for foreign board of trade as applied to foreign crypto futures exchange")

- Attachment 3:  SDNY_03_00054152 ("regulatory advice on foreign jurisdictions")

## Request No. 2

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda in connection with the formation and incorporation of North Dimension Inc. and North Wireless Dimension Inc. in Delaware and North Dimension Ltd. in the British Virgin Islands, such as reflected in the following invoices:

- Attachment 4:  SDNY_03_00208210 ("Attention to incorporation of North Dimension Inc[.] and North Wireless Dimension Inc. . . Draft certificate of incorporation for subsidiary . . . North Dimension Inc. formation and North Wireless Dimension Inc. formation")

- Attachment 3:  SDNY_03_00054152 ("Confer with Silvergate; prepare material; regulatory advice on foreign jurisdictions")

**Request No. 3**

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda concerning whether FTX, Alameda or North Dimension were required to register as a Money Services Business as defined in 31 C.F.R. 1010.100(ff), such as reflected in the following invoices and memoranda:[1]

- <u>Attachment 4</u>:  SDNY_03_00208253 ("MTL project . . . orientation meeting with I. Voloshin and team members regarding money transmitter licensing project . . . MTL Project:  Daily check-in with FTX team")

- <u>Attachment 5</u>:  SDNY_02_00416556 (Memorandum from Fenwick to Dan Friedberg re: "West Realm Shires Services, Inc. dba FTX.US ("FTX.US") Exemption under Federal and State Money Transmission Rules re FTX US")

- <u>Attachment 6</u>:  SDNY_03_00056209 ("Compliance training for MSB matters . . . Money transmission related support")

- <u>Attachment 7</u>:  SDNY_03_00567632 (email from Igor Voloshin to Dan Friedberg re "Tether Gold Analysis")


**Request No. 4**

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda, dated May 2019 through November 2022, concerning a banking relationship between the FTX Group, Alameda or North Dimension and Silvergate Bank, specifically in connection with (i) opening bank accounts at Silvergate Bank, (ii) using such accounts to process deposits and withdrawals on behalf of FTX customers, (iii) using such accounts to conduct OTC trading and processing on behalf of FTX customers, and (iv) responding to compliance inquiries from Silvergate Bank, such as is reflected in the following invoices:

- <u>Attachment 8</u>:  SBF_GOOGLE_SW_00137561 ("Draft Silvergate letter")

- <u>Attachment 9</u>:  SDNY_03_00208162 ("Call with Silvergate; draft follow up email")

- <u>Attachment 10</u>:  SDNY_03_00208309 ("Draft response to Silvergate . . . Draft Silvergate EDD responses")

- <u>Attachment 3</u>:  SDNY_03_00054152 ("Prepare material for Silvergate submission . . . Confer with Silvergate; prepare material . . . update Silvergate material")

---

[1] We note that the U.S. Attorney's Office for the Southern District of New York has indicated to counsel for Mr. Bankman-Fried that FTX and Alameda have waived privilege regarding this topic.

**Request No. 5**

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to the FTX Group or Alameda, concerning data retention policies at FTX, including the use of auto-delete policies and ephemeral messaging applications, such as reflected in the following invoices:

- Attachment 11:  SDNY_03_00208353 ("research retention issues for ephemeral messaging and confer internally re same . . . draft retention policy and schedule")

- Attachment 12:  SDNY_03_00697055 ("Prepare for D. Friedberg call through review of prior draft retention policy")

**Request No. 6**

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to the FTX Group or Alameda concerning FTX's or FTX US's margin lending program and liquidity requirements, such as reflected in the following invoices:

- Attachment 13:  SDNY_03_00208054 ("Advice to C. Richman on margin lending program … Draft ECP only US margin agreement")

- Attachment 14:  SDNY_03_00208087 ("Review new CFTC guidance on actual delivery for FTX margin program")

**Request No. 7**

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group concerning (i) FTX Terms of Service, (ii) FTX customer agreements, (iii) FTX user agreements, and (iv) FTX master agreement, such as reflected in the following invoices:

- Attachment 15:  SDNY_03_00694422 ("Draft terms of use for FTX Exchange . . . drafting terms of use/service")

- Attachment 9:  SDNY_03_00208162 ("pull and evaluate FTX terms of service per D. Friedberg request . . . consider revisions to same")

- Attachment 16:  SBF_GOOGLE_SW_00199432 ("Draft cryptocurrency exchange master agreement")

- Attachment 17:  SDNY_03_00694438 ("Draft user agreements")

- <u>Attachment 18</u>:  SBF_GOOGLE_SW_00180328 ("Draft FTX customer agreement")

**<u>Request No. 8</u>**

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda concerning certain intercompany agreements between FTX and Alameda Research Ltd., specifically:

    i.    The Payment Agent Agreement, dated June 1, 2019

    ii.    The Intercompany Treasury Management Agreement, dated June 1, 2019

    iii.    The fiat integration agreement, dated sometime in or around November 2020

    iv.    The intercompany services agreement, pursuant to which Alameda provided certain services to FTX

    v.    The cost allocation agreement

    vi.    Token exchange agreements

    vii.    The Cash Management Agreement

such as reflected in the following invoices:

- <u>Attachment 19</u>:  SDNY_03_00056230 ("Draft intercompany services agreement")

- <u>Attachment 15</u>:  SDNY_03_00694422 ("confer with C. Richman on user agreement/liquidity provider agreement")

- <u>Attachment 20</u>:  SDNY_03_00208024 ("Review exchange agreement . . . Attend to intercompany agreements")

- <u>Attachment 3</u>:  SDNY_03_00054152 ("revise intercompany cash management agreement; research in connection with the same")

**<u>Request No. 9</u>**

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group concerning planned or actual statements or representations made on the FTX.com or FTX.us websites, such as reflected in the following invoices:

- <u>Attachment 21</u>:  SDNY_03_00208123 ("review FTX website for terms of service")

9

- <u>Attachment 13</u>:  SDNY_03_00208054 ("Review online disclosures regarding equity financing")

- <u>Attachment 9</u>:  SDNY_03_00208162 ("confer regarding FTT and FTX disclosures")

**<u>Request No. 10</u>**

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to the FTX Group or Alameda, in connection with any documents, materials, statements or representations made or contemplated to be made to actual or prospective investors in FTX, FTX US, or lenders to Alameda, including loans, pitch decks, prospectuses, offering documents and disclosure schedules thereto, such as reflected in the following invoices:

- <u>Attachment 15</u>:  SDNY_03_00694422 ("Revise FTX deck . . . review FTX deck, plan structuring for exchange and leveraged tokens)

- <u>Attachment 22</u>:  SDNY_03_00056076 ("Edit Series B-1 financing documents, address due diligence questions, and related correspondence")

- <u>Attachment 17</u>:  SDNY_03_00694438 ("Draft prospectus")

- <u>Attachment 23</u>:  SDNY_03_00208108 ("Research seed round docs")

- <u>Attachment 13</u>:  SDNY_03_00208054 ("comments to FTX offering documents; confer regarding same; prepare comments to same . . . Confer regarding global offering and current Reg D and Reg S compliance")

**<u>Request No. 11</u>**

We request Documents reflecting Fenwick's research, assessment, analysis, guidance, or legal advice conducted or prepared on behalf of, or provided to, the FTX Group or Alameda concerning intercompany loans or lines of credit, loans or lines of credit to individuals including but not limited to the founders and other executives, such as reflected in the following invoices:

- <u>Attachment 4</u>:  SDNY_03_00208210 ("attention to employee loan documents . . . attention to manager loans")

- <u>Attachment 23</u>:  SDNY_03_00208108 ("draft loan agreement")

**INDEX TO ATTACHMENTS**

|    | Beginning Bates Number | Description |
|----|------------------------|-------------|
| 1. | SBF_GOOGLE_SW_00192150 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated April 30, 2019 |
| 2. | SBF_GOOGLE_SW_00177562 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated September 26, 2019 |
| 3. | SDNY_03_00054152 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated February 11, 2021 |
| 4. | SDNY_03_00208210 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated September 11, 2020 |
| 5. | SDNY_02_00416556 | Memorandum from Igor Voloshin to Daniel Friedberg, dated January 10, 2022, regarding West Realm Shires, Inc. dba FTX.US ("FTX.US") Exemption under Federal and State Money Transmission Rules |
| 6. | SDNY_03_00056209 | Excerpts from Invoice from Fenwick & West LLP to West Realm Shires Services Inc., dated August 24, 2021 |
| 7. | SDNY_03_00567632 | Email from Daniel Friedberg to Igor Voloshin, dated February 28, 2020, regarding Tether Gold Analysis |
| 8. | SBF_GOOGLE_SW_00137561 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated December 11, 2020 |
| 9. | SDNY_03_00208162 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated August 21, 2020 |
| 10. | SDNY_03_00208309 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated November 18, 2020 |
| 11. | SDNY_03_00208353 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated January 26, 2021 |
| 12. | SDNY_03_00697055 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated March 31, 2021 |
| 13. | SDNY_03_00208054 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated March 31, 2020 |

11

| 14. | SDNY_03_00208087 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated April 15, 2020 |
|---|---|---|
| 15. | SDNY_03_00694422 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated May 31, 2019 |
| 16. | SBF_GOOGLE_SW_00199432 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated January 22, 2019 |
| 17. | SDNY_03_00694438 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated June 30, 2019 |
| 18. | SBF_GOOGLE_SW_00180328 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated August 28, 2019 |
| 19. | SDNY_03_00056230 | Excerpts from Invoice from Fenwick & West LLP to West Realm Shires Services Inc., dated January 27, 2022 |
| 20. | SDNY_03_00208024 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated January 28, 2020 |
| 21. | SDNY_03_00208123 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated July 13, 2020 |
| 22. | SDNY_03_00056076 | Excerpts from Invoice from Fenwick & West LLP to West Realm Shires Services Inc., dated October 19, 2021 |
| 23. | SDNY_03_00208108 | Excerpts from Invoice from Fenwick & West LLP to Alameda Research LLC, dated May 12, 2020 |

# Attachment 1

|  | Silicon Valley Center |
|---|---|
| **FENWICK & WEST LLP** | 801 California Street<br>Mountain View, CA 94041<br>Tel 650.988.8500<br>Fax 650.938.5200 |

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA 94704

Invoice Date:          April 30, 2019

Client Number:                   34394
Matter Number:                  00600
Invoice Number:                750861

Attn:   Sam Bankman-Fried

**(Invoice Emailed)**

_____

For professional services rendered through March 31, 2019.

Fees:                                    $ 44,050.00

Disbursements:                        5,123.50

                                    _____

CURRENT AMOUNT DUE               $ 49,173.50

SBF_GOOGLE_SW_00192150

Alameda Research LLC
Client Number: 34394

Invoice Date:     April 30, 2019
Invoice Number:          750861
Billing Attorney:    Daniel Friedberg

Page 2

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 03/01/19 | Daniel Friedberg | Analyze regulatory issues. | 0.8 | 572.00 |
| 03/01/19 | Chad Richman | Emails with accountants regarding tax reorganization. | 0.3 | 148.50 |
| 03/04/19 | David L. Forst | Conference call regarding trading activities. | 1.2 | 1,590.00 |
| 03/04/19 | Daniel Friedberg | Conference with client; draft futures exchange documents; emails regarding Antigua entity. | 2.3 | 1,644.50 |
| 03/04/19 | Chad Richman | Develop plan to address Jurisdictional considerations for futures exchange; emails with D.Forst regarding tax restructuring and ; emails with A&O regarding futures regulation; Call with Alameda to discuss futures exchange; emails to S.Bankman-Fried, A.Croghan regarding futures exchange; staff term sheet project. | 5.3 | 2,623.50 |
| 03/04/19 | Igor Voloshin | Discuss entity structure with C. Richman. | 0.6 | 297.00 |
| 03/04/19 | Igor Voloshin | Call with Andy and Sam on forming foreign entity; issuing security token; tax consequence of different business models. | 1.5 | 742.50 |
| 03/05/19 | Andrew Albertson | Confer regarding security token design. | 0.4 | 310.00 |
| 03/05/19 | Daniel Friedberg | Attention to formation and regulatory issues. | 1.4 | 1,001.00 |

SBF_GOOGLE_SW_00192151

Alameda Research LLC                      Invoice Date:           April 30, 2019
Client Number: 34394                      Invoice Number:              750861
                                          Billing Attorney:     Daniel Friedberg

Page 5

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 03/13/19 | Melanie McLain | Forward Delaware tax notification for Hilltop Technology Services, LLC; update corporate records. | 0.2 | 62.00 |
| 03/13/19 | Chad Richman | Review HK law analysis from Dentons; emails with Alameda and A&O; review Singapore-CFTC reciprocity agreement; emails regarding ETF token. | 1.6 | 792.00 |
| 03/13/19 | Igor Voloshin | Assist forming Antigua entity; discuss potential suite of products that can be offered by Alameda out of Antigua entity with C. Richman with minimal foreign regulatory scrutiny. | 1.2 | 594.00 |
| 03/14/19 | Chad Richman | Emails with A.Croghan regarding ECP status. | 0.3 | 148.50 |
| 03/15/19 | Chad Richman | Emails with A. Croghan regarding ECP status and FTX exchange; emails with A&O regarding FTX exchange; develop strategy for responding to HK law analysis; discuss FTX strategy with I.Voloshin, D.Friedberg; emails regarding same. | 2.2 | 1,089.00 |
| 03/17/19 | Daniel Friedberg | Review options to launch futures exchange. | 1.2 | 858.00 |
| 03/18/19 | Daniel Friedberg | Calls with Alameda and A&O; regulatory issues. | 2.8 | 2,002.00 |
| 03/18/19 | Chad Richman | Preparation for and call with Alameda/A&O regarding FTX exchange. | 1.3 | 643.50 |
| 03/18/19 | Igor Voloshin | Call with Alameda and Fenwick team; A&O on proposed approach to establishing new foreign exchange. | 0.9 | 445.50 |
| 03/19/19 | Mona Clee | Emails to, from Delaney Ornelas re review of 401(k) documents. | 0.2 | 143.00 |

SBF_GOOGLE_SW_00192154

Alameda Research LLC
Client Number: 34394

Invoice Date:           April 30, 2019
Invoice Number:              750861
Billing Attorney:     Daniel Friedberg

Page 6

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 03/19/19 | Chad Richman | Discuss interactive brokers issues with I.Voloshin; examine IB account types; emails with A.Croghan regarding IB account. | 0.7 | 346.50 |
| 03/20/19 | Mona Clee | Review 401(k) documents; send email to Delaney Ornelas raising questions for future revision of charter re exclusion of leased employees, misclassified employees; answer follow-up question from Delaney Ornelas regarding leased employees hired as permanent. | 1.5 | 1,072.50 |
| 03/20/19 | Chad Richman | Emails with A&O regarding multi-jurisdictional futures trading regulation survey. | 0.4 | 198.00 |
| 03/21/19 | Daniel Friedberg | Conference call with Deacons; analyze issues regarding futures. | 2.3 | 1,644.50 |
| 03/21/19 | Chad Richman | Call with Deacons regarding HK regulation of futures exchanges; emails with A&O regarding multi-jurisdictional futures trading regulation survey; confer with D.Friedberg regarding same. | 2.1 | 1,039.50 |
| 03/22/19 | Daniel Friedberg | Further analysis regarding futures exchange; draft documents. | 1.2 | 858.00 |
| 03/25/19 | Chad Richman | Emails with A&O regarding multi-jurisdictional futures trading regulation survey; confer with D.Friedberg regarding FTX exchange strategy and next steps. | 0.7 | 346.50 |
| 03/26/19 | Daniel Friedberg | Attention to issues with futures exchange. | 1.0 | 715.00 |
| 03/27/19 | Chad Richman | Discuss Alameda fund raising with D.Friedberg. | 0.2 | 99.00 |

SBF_GOOGLE_SW_00192155

Alameda Research LLC
Client Number: 34394

Invoice Date:             April 30, 2019
Invoice Number:                    750861
Billing Attorney:        Daniel Friedberg

Page 7

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 03/28/19 | Igor Voloshin | Analyze Singapore futures exchange operations presence with visiting Singaporean attorney. | 0.5 | 247.50 |
| 03/29/19 | Daniel Friedberg | Attention to formation matters; draft documents. | 2.0 | 1,430.00 |
| 03/29/19 | Chad Richman | Review FTX deck, discuss FTX process with D.Friedberg. | 0.8 | 396.00 |
| | | Total Hours and Fees | 73.4 | $ 44,050.00 |

Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Andrew Albertson | Partner | 3.8 | 775.00 | 2,945.00 |
| David L. Forst | Partner | 1.7 | 1325.00 | 2,252.50 |
| Mona Clee | Of Counsel | 1.7 | 715.00 | 1,215.50 |
| Daniel Friedberg | Of Counsel | 24.5 | 715.00 | 17,517.50 |
| Chad Richman | Associate | 30.7 | 495.00 | 15,196.50 |
| Vincent Sheu | Associate | 4.0 | 400.00 | 1,600.00 |
| Igor Voloshin | Associate | 6.5 | 495.00 | 3,217.50 |
| Melanie McLain | Paralegal | 0.2 | 310.00 | 62.00 |
| Kathleen Murray | Paralegal | 0.3 | 145.00 | 43.50 |
| Total | | 73.4 | | $ 44,050.00 |

Disbursement Summary

| Date | Description | Total |
|------|-------------|-------|
| 03/07/19 | Incorporation of International Business Corporation. - VENDOR: Corporate & Trust Services (Caribbean) | 3,802.00 |
| 03/31/19 | Voice & Data Communications | 1,321.50 |
| | Total Disbursements | $ 5,123.50 |

SBF_GOOGLE_SW_00192156

# Attachment 2

| | Silicon Valley Center |
|---|---|
| **FENWICK & WEST LLP** | 801 California Street<br>Mountain View, CA 94041<br>Tel  650.988.8500<br>Fax  650.938.5200 |

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley,  CA  94704

Invoice Date:          September 26, 2019

Client Number:                    34394

Invoice Number:                  770539

Attn:    Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through August 31, 2019.

| | |
|---|---|
| Fees: | $ 59,785.50 |
| No Charge for 32.50 Hours: | (17,578.00) |
| Adjusted Fees: | $ 42,207.50 |
| Disbursements: | 1,766.23 |
| | _____ |
| CURRENT AMOUNT DUE | $ 43,973.73 |

SBF_GOOGLE_SW_00177562

Alameda Research LLC
Client Number: 34394

Invoice Date:        September 26, 2019
Invoice Number:              770539
Billing Attorney:      Daniel Friedberg

Page 5

Compliance and Risk Mitigation
Matter number 34394-00402

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 08/08/19 | Michael Dicke | Analyze new Ninth Circuit CFTC enforcement case and consider application to Alameda's business, and follow-up with D. Friedberg re same; confer with D. Friedberg re FTX exchange, business strategy update, compliance issues, and follow-up. | 1.1 | 1,017.50 |
| 08/09/19 | Michael Dicke | Review compliance issues. | 1.9 | 1,757.50 |
| 08/14/19 | Michael Dicke | Analysis of CFTC guidance on non-U.S. swap participants. | 1.1 | 1,017.50 |
| 08/14/19 | Daniel Friedberg | Research regarding compliance issues. | 2.0 | 1,430.00 |
| 08/15/19 | Chad Richman | Research related to risk mitigation project. | 0.4 | 220.00 |
| 08/16/19 | Vincent Barredo | Analyze CFTC rules research for FTX. | 0.5 | 345.00 |
| 08/16/19 | Michael Dicke | Legal issue for FTX exchange; legal research re affiliates of U.S. entities trading on futures exchange. | 1.0 | 925.00 |
| 08/19/19 | Michael Dicke | Research for client inquiries on prediction markets, futures contracts. | 0.8 | 740.00 |
| 08/20/19 | Vincent Barredo | Research and review FTX website and materials (0.5); research and analyze effect of CFTC's rules regarding exchanges not located in the United States (2.0). | 2.5 | 1,725.00 |

SBF_GOOGLE_SW_00177567

Alameda Research LLC                    Invoice Date:        September 26, 2019
Client Number: 34394                    Invoice Number:               770539
                                        Billing Attorney:     Daniel Friedberg

Page 6

---

Compliance and Risk Mitigation
Matter number 34394-00402

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 08/21/19 | Vincent Barredo | Strategize approach to CFTC analysis with M. Dicke (0.6); read through relevant no action letters and policy statements regarding foreign exchange registration (1.4). | 2.0 | 1,380.00 |
| 08/21/19 | Michael Dicke | Review legal research on subsidiaries of U.S. companies trading on foreign futures exchanges. | 0.3 | 277.50 |
| 08/22/19 | Vincent Barredo | Review news articles regarding CFTC enforcement actions against foreign exchanges. | 0.2 | 138.00 |
| 08/23/19 | Vincent Barredo | Research and analyze CFCT regulations for foreign board of trade as applied to foreign crypto futures exchange (1.8); review no-action and policy letters (0.7); prepare analysis (1.6). | 4.1 | 2,829.00 |
| | | Total Hours and Fees | 17.9 | $ 13,802.00 |

Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Michael Dicke | Partner | 6.2 | 925.00 | 5,735.00 |
| Daniel Friedberg | Of Counsel | 2.0 | 715.00 | 1,430.00 |
| Vincent Barredo | Associate | 9.3 | 690.00 | 6,417.00 |
| Chad Richman | Associate | 0.4 | 550.00 | 220.00 |
| Total | | 17.9 | | $ 13,802.00 |

# Attachment 3



**Fenwick & West LLP**
**801 California Street**
**Mountain View, CA 94041**
**Tel 650.988.8500**
**www.fenwick.com**

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA 94704

| | |
|---|---|
| Invoice Date: | February 11, 2021 |
| Client Number: | 34394 |
| Invoice Number: | 841932 |

Attn:   Sam Bankman-Fried

**(Invoice Emailed)**

---

For professional services rendered through January 31, 2021.

| | |
|---|---|
| Fees: | $ 371,624.00 |
| Disbursements: | 34,052.38 |
| | ———————— |
| CURRENT AMOUNT DUE | $ 405,676.38 |

Confidential Treatment Requested by Armanino LLP

Armanino-FTX-001842
SDNY_03_00054152

Alameda Research LLC
Client Number: 34394

Invoice Date:    February 11, 2021
Invoice Number:    841932
Billing Attorney:    Andrew Albertson

Page 29

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 01/12/21 | Kent Suegang | Continue to collect and coordinate docusign distribution of purchase agreements; respond to client questions. | 0.7 | 129.50 |
| 01/12/21 | Can Sun | Weekly call; review SPAC precedents. | 1.2 | 1,074.00 |
| 01/12/21 | Jacob Wittman | Attend internal call; attend to emails. | 0.5 | 375.00 |
| 01/12/21 | Jacob Wittman | Attend to bittrex matters; internal call; review Binance restrictions on transaction. | 2.0 | 1,500.00 |
| 01/13/21 | David L. Forst | Review emails regarding Ashlan; review regulations regarding acquisition structuring; brief review of Westrealm agreements. | 2.7 | 4,117.50 |
| 01/13/21 | Sean McElroy | Research on exit tax issues; research Project Alshain tax planning issues. | 3.3 | 2,689.50 |
| 01/13/21 | Chad Richman | Call with D. Friedberg regarding FTX US futures business. | 0.3 | 225.00 |
| 01/13/21 | Ryan J. Straus | Attention to multijurisdictional issue; correspondence regarding same. | 0.8 | 728.00 |
| 01/13/21 | Can Sun | Coordinate token sales matters. | 0.2 | 179.00 |
| 01/13/21 | Igor Voloshin | Prepare material for Silvergate submission. | 2.1 | 1,575.00 |
| 01/14/21 | Andrew Albertson | Confer regarding open items, including options, transactions and form of forward contract. | 1.3 | 1,319.50 |

Armanino-FTX-001871
SDNY_03_00054181

Alameda Research LLC
Client Number: 34394

Invoice Date:    February 11, 2021
Invoice Number:    841932
Billing Attorney:    Andrew Albertson

Page 30

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 01/14/21 | David L. Forst | Review Westrealm contribution documents; discussions with S. McElroy regarding same; brief legal research regarding tax treatment; review and discuss proposed structuring for Ashlan. | 2.9 | 4,422.50 |
| 01/14/21 | Sean McElroy | Research on Project Alshain tax issues; research on West Realm IP contribution issue; confer with D. Forst regarding West Realm IP contribution issue. | 4.1 | 3,341.50 |
| 01/14/21 | Katherine Schuler | Prepare annual reports for NV and CA; emails re DBA filings; upload DBAs to NMLS. | 1.9 | 446.50 |
| 01/14/21 | Can Sun | Draft token evaluation memo; coordinate token sale matters; discuss SPAC with C. Richman. | 1.0 | 895.00 |
| 01/14/21 | Igor Voloshin | Confer with Silvergate; prepare material; regulatory advice on foreign jurisdictions. | 2.3 | 1,725.00 |
| 01/15/21 | David L. Forst | Discussion with S. McElroy regarding reorganization rules regarding Ashlan; review structuring alternatives; conference call regarding FTX and related issues. | 2.4 | 3,660.00 |
| 01/15/21 | Andrea King-Lock Louie | Attend meeting with I. Voloshin and K. Schuler to discuss MTL strategy; consider issues, review and analyze organizational chart. | 0.8 | 548.00 |

Armanino-FTX-001872
SDNY_03_00054182

Alameda Research LLC

Client Number: 34394

Page 31

| | | | Invoice Date: | February 11, 2021 |
| | | | Invoice Number: | 841932 |
| | | | Billing Attorney: | Andrew Albertson |

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 01/15/21 | Sean McElroy | Research Project Alshain tax issues; confer with D. Forst regarding same; research exit tax issues; research IP contribution issues; confer with D. Freidberg & D. Forst regarding IP planning issues. | 4.2 | 3,423.00 |
| 01/15/21 | Katherine Schuler | FTX-MTL team catch-up phone call. | 0.3 | 70.50 |
| 01/15/21 | Ryan J. Straus | Attention to jurisdictional matters; conference regarding same. | 3.2 | 2,912.00 |
| 01/15/21 | Kent Sucgang | Prepare purchase agreements and coordinate execution. | 0.5 | 92.50 |
| 01/15/21 | Igor Voloshin | Miscellaneous corporate items; MTL process update; update Silvergate material. | 2.4 | 1,800.00 |
| 01/15/21 | Jacob Wittman | Draft form of share transfer agreement; call with client. | 1.3 | 975.00 |
| 01/16/21 | Sean McElroy | Review emails; review notes on Project Alshain. | 0.3 | 244.50 |
| 01/16/21 | Kent Sucgang | Continue to put together additional token purchase agreements; coordinate execution of agreements. | 0.7 | 129.50 |
| 01/17/21 | Ryan J. Straus | Attention to audit policy; review jurisdictional matters. | 2.5 | 2,275.00 |
| 01/17/21 | Igor Voloshin | Regulatory advice to operations team on compliance recordkeeping. | 2.0 | 1,500.00 |
| 01/18/21 | David L. Forst | Review and comment on analysis regarding purchase structure for Ashlan. | 2.8 | 4,270.00 |
| 01/18/21 | Ryan J. Straus | Attention to jurisdictional matters; conference regarding same. | 2.5 | 2,275.00 |

Armanino-FTX-001873
SDNY_03_00054183

Alameda Research LLC                        Invoice Date:        February 11, 2021
Client Number: 34394                        Invoice Number:                841932
                                            Billing Attorney:     Andrew Albertson

Page 35

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|------------|-------------|-------|--------|
| 01/21/21 | Chad Richman | FTX US token listing analysis. | 0.3 | 225.00 |
| 01/21/21 | Kent Sucgang | Continue to collect and coordinate token purchase agreement distribution via Docusign. | 1.7 | 314.50 |
| 01/21/21 | Igor Voloshin | Confer with HK counsel on Cottonwood Spinoff. | 1.7 | 1,275.00 |
| 01/22/21 | Whitney Anne Bishop | Coordinate signatures on option grants. | 2.7 | 1,093.50 |
| 01/22/21 | David L. Forst | Emails to and from Mr. Friedberg regarding Solana; discussion with Mr. McElroy regarding same. | 0.3 | 457.50 |
| 01/22/21 | Sean McElroy | Review emails; coordinate meetings. | 0.2 | 163.00 |
| 01/22/21 | Kent Sucgang | Continue to collect, track, and send out additional docusigns for token purchase agreements; confer with client team regarding same. | 0.6 | 111.00 |
| 01/23/21 | Sean McElroy | Research crypto tax issues. | 0.6 | 489.00 |
| 01/23/21 | Ryan J. Straus | Ancillary review of intercompany and related agreements. | 1.0 | 910.00 |
| 01/24/21 | David L. Forst | Conference call regarding charitable donations and other issues; brief follow-up with Mr. McElroy and email to Ms. Fritz. | 0.8 | 1,220.00 |
| 01/24/21 | Sean McElroy | Research crypto tax issues; attend phone conference with S. Bankman-Fried et al. | 0.7 | 570.50 |
| 01/24/21 | Ryan J. Straus | Revise and revise intercompany cash management agreement; research in connection with the same. | 1.4 | 1,274.00 |

Armanino-FTX-001877
SDNY_03_00054187

Alameda Research LLC
Client Number: 34394

Invoice Date: February 11, 2021
Invoice Number: 841932
Billing Attorney: Andrew Albertson

Page 40

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 01/31/21 | Jacob Wittman | Prepare board consent for option grants, attend to emails, review FTX, FTT agreement. | 1.0 | 750.00 |
| | | Total Hours and Fees | 288.8 | $ 239,810.00 |

### Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Andrew Albertson | Partner | 9.1 | 1015.00 | 9,236.50 |
| David L. Forst | Partner | 29.0 | 1525.00 | 44,225.00 |
| Bomi Lee | Partner | 1.5 | 1050.00 | 1,575.00 |
| Felix Lee | Partner | 0.3 | 1095.00 | 328.50 |
| Eric Shedlosky | Partner | 0.3 | 995.00 | 298.50 |
| Mark Porter | Of Counsel | 2.6 | 880.00 | 2,288.00 |
| Ryan J. Straus | Of Counsel | 55.7 | 910.00 | 50,687.00 |
| Vincent Barredo | Associate | 7.9 | 880.00 | 6,952.00 |
| Andrea King-Lock Louie | Associate | 12.3 | 685.00 | 8,425.50 |
| Sean McElroy | Associate | 46.9 | 815.00 | 38,223.50 |
| Chad Richman | Associate | 7.8 | 750.00 | 5,850.00 |
| Leeza Soulina | Associate | 0.2 | 505.00 | 101.00 |
| Can Sun | Associate | 34.1 | 895.00 | 30,519.50 |
| Igor Voloshin | Associate | 20.2 | 750.00 | 15,150.00 |
| Jacob Wittman | Associate | 17.9 | 750.00 | 13,425.00 |
| Whitney Anne Bishop | Paralegal | 18.5 | 405.00 | 7,492.50 |
| Catherine Howell | Paralegal | 1.8 | 343.33 | 618.00 |
| Katherine Schuler | Paralegal | 4.3 | 235.00 | 1,010.50 |
| Jacob E. Simmons | Case Assistant | 0.5 | 185.00 | 92.50 |
| Kent Suegang | Case Assistant | 17.9 | 185.00 | 3,311.50 |
| Total | | 288.8 | | $ 239,810.00 |

# Attachment 4

Fenwick
FENWICK & WEST LLP

Silicon Valley Center
801 California Street
Mountain View, CA 94041
Tel 650.988.8500
Fax 650.938.5200

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA 94704

| | |
|---|---|
| Invoice Date: | September 11, 2020 |
| Client Number: | 34394 |
| Invoice Number: | 819810 |

Attn:   Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through August 31, 2020.

| | |
|---|---|
| Fees: | $ 498,484.50 |
| Disbursements: | 16,860.95 |
| CURRENT AMOUNT DUE | $ 515,345.45 |

FTX_000314124
SDNY_03_00208210

Alameda Research LLC
Client Number: 34394

Invoice Date:      September 11, 2020
Invoice Number:              819810
Billing Attorney:   Andrew  Albertson

Page 19

---

Project B
Matter number 34394-00201

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 08/13/20 | Victoria Lupu | Review and update the signing and closing checklist; email correspondence with the GP, FTX and Fenwick teams regarding signing timeline, deal status and next steps; review and provide comments on the Company disclosure letter. | 1.0 | 860.00 |
| 08/13/20 | Jason Malashevich | Perform trademark due diligence. | 0.5 | 295.00 |
| 08/13/20 | Jacob Wittman | Attend to Board Consent draft; attend to diligence matters. | 1.7 | 1,113.50 |
| 08/14/20 | David L. Forst | Review Benchmark documents; emails regarding same. | 0.6 | 870.00 |
| 08/14/20 | Ammanuel Gebeyehu | Revise disclosure schedule; attend to pre-signing workstreams. | 1.6 | 1,160.00 |
| 08/14/20 | Carson A. Jackson | Confer with A. Gebeyehu regarding disclosure schedule. | 0.1 | 59.00 |
| 08/14/20 | Bomi Lee | Attention to employee loan documents. | 0.4 | 394.00 |
| 08/14/20 | Sean McElroy | Research on crypto tax issues; draft memo to file on Subpart F issues; tax diligence; review ancillary documents for Project Benchmark and confer regarding same. | 2.0 | 1,480.00 |
| 08/14/20 | Marshall Mort | Attention to structuring transaction exercises and promissory note review. | 0.5 | 460.00 |
| 08/14/20 | Corinne Nhaissi | Markup disclosure schedules; confer with A. Gebeyehu regarding same; review SPA; email correspondence with M. Mort regarding disclosure schedules. | 2.4 | 1,896.00 |

Alameda Research LLC
Client Number: 34394

Invoice Date:       September 11, 2020
Invoice Number:                 819810
Billing Attorney:       Andrew Albertson

Page 24

---

Project B
Matter number 34394-00201

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 08/18/20 | Jacob Wittman | Attend to due diligence request list matters; review financials; attend to information statement. | 3.2 | 2,096.00 |
| 08/19/20 | Andrew Albertson | Attention to open points, ancillaries and information statement. | 1.3 | 1,248.00 |
| 08/19/20 | Julia Arruda | Update outstanding diligence requests. | 0.4 | 334.00 |
| 08/19/20 | Eric D. Bobila | Review and analyze material agreements; prepare diligence summary. | 0.3 | 112.50 |
| 08/19/20 | David L. Forst | Review documents and emails regarding Benchmark; discussion with S. McElroy. | 2.4 | 3,480.00 |
| 08/19/20 | Ammanuel Gebeyehu | Revise information statement descriptions; attend to pre-signing workstreams. | 5.0 | 3,625.00 |
| 08/19/20 | Carson A. Jackson | Prepare for and attend internal sync regarding deal status and timing; review and revise ancillary documents. | 0.5 | 295.00 |
| 08/19/20 | Bomi Lee | Participate on M&A team sync call; review pledge agreement; attention to manager loans. | 1.4 | 1,379.00 |
| 08/19/20 | Sean McElroy | Tax diligence for Project Benchmark; review ancillary documents for Project Benchmark; research on crypto tax issues; confer with D. Forst regarding Project Benchmark. | 2.9 | 2,146.00 |
| 08/19/20 | Marshall Mort | Attention to ancillary employment documents (e.g., loan and pledge). | 0.8 | 736.00 |

FTX_000314148
SDNY_03_00208234

Alameda Research LLC
Client Number: 34394

| | | |
|---|---|---|
| Invoice Date: | September 11, 2020 |
| Invoice Number: | 819810 |
| Billing Attorney: | Andrew Albertson |

Page 40

Project B
Matter number 34394-00201

## Timekeeper Summary

| **Name** | **Title** | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|
| Andrew Albertson | Partner | 17.8 | 960.00 | 17,088.00 |
| Connie L. Ellerbach | Partner | 0.2 | 1045.00 | 209.00 |
| David L. Forst | Partner | 62.8 | 1450.00 | 91,060.00 |
| Bomi Lee | Partner | 35.5 | 985.00 | 34,967.50 |
| Jonathan Millard | Partner | 4.6 | 1045.00 | 4,807.00 |
| Marshall Mort | Partner | 15.3 | 920.00 | 14,076.00 |
| Tyler G. Newby | Partner | 0.7 | 1015.00 | 710.50 |
| Christopher Joslyn | Of Counsel | 0.4 | 835.00 | 334.00 |
| Julia Arruda | Associate | 10.9 | 835.00 | 9,101.50 |
| Ammanuel Gebeyehu | Associate | 44.8 | 725.00 | 32,480.00 |
| Carson A. Jackson | Associate | 39.0 | 590.00 | 23,010.00 |
| Mark A. Jansen | Associate | 0.3 | 860.00 | 258.00 |
| Victoria Lupu | Associate | 48.5 | 860.00 | 41,710.00 |
| Jason Malashevich | Associate | 4.0 | 590.00 | 2,360.00 |
| Sean McElroy | Associate | 53.0 | 740.00 | 39,220.00 |
| Corinne Nhaissi | Associate | 19.4 | 790.00 | 15,326.00 |
| Shajee T. Rizvi | Associate | 24.4 | 590.00 | 14,396.00 |
| Jonathan Stephenson | Associate | 15.5 | 485.00 | 7,517.50 |
| Can Sun | Associate | 11.2 | 860.00 | 9,632.00 |
| Igor Voloshin | Associate | 1.7 | 655.00 | 1,113.50 |
| Jacob Wittman | Associate | 63.5 | 655.00 | 41,592.50 |
| Eric D. Bobila | Staff Attorney | 38.4 | 375.00 | 14,400.00 |
| Van Ly | Paralegal | 3.8 | 215.00 | 817.00 |
| Total | | 515.7 | | $ 416,186.00 |

## Disbursement Summary

| **Date** | **Description** | **Total** |
|---|---|---|
| 08/31/20 | Voice & Data Communications | 12,485.58 |
| | Total Disbursements | $ 12,485.58 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC                          Invoice Date:       September 11, 2020
Client Number: 34394                     Invoice Number:           819810
                                        Billing Attorney:     Andrew Albertson

Page 43

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 08/15/20 | Igor Voloshin | MTL Project; draft roadmap for MTL project; review outstanding items in application logs; review AML Policy audit. | 3.6 | 2,358.00 |
| 08/17/20 | Andrew Albertson | Attention to MTL and financial regulatory compliance. | 0.5 | 480.00 |
| 08/17/20 | Sean McElroy | Confer with D. Forst regarding generic crypto loan agreements and intercompany crypto loan agreements; mark up and edit loan agreement documents; circulate documents. | 1.5 | 1,110.00 |
| 08/17/20 | Igor Voloshin | MTL Project: Miscellaneous project management arrangements. | 1.2 | 786.00 |
| 08/18/20 | Andrew Albertson | Review intercompany note and prepare comments to same; confer regarding approval/ratification. | 0.7 | 672.00 |
| 08/19/20 | Andrew Albertson | Attention to MTL project and related issues. | 0.5 | 480.00 |
| 08/19/20 | Igor Voloshin | Comfort letter; miscellaneous international corporate formation matters. | 0.4 | 262.00 |
| 08/19/20 | Igor Voloshin | MTL Project: surety bonds; confer internally on project management. | 2.1 | 1,375.50 |
| 08/20/20 | Kathrine McEnroe | Orientation meeting with I. Voloshin and team regarding money transmitter licensing project. | 1.0 | 440.00 |
| 08/20/20 | Liliya McKenzie | Orientation meeting with I. Voloshin and team members regarding money transmitter licensing project. | 1.0 | 400.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date:      September 11, 2020
Invoice Number:                819810
Billing Attorney:      Andrew Albertson

Page 44

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 08/20/20 | Meera Park | Orientation meeting with I. Voloshin and team members regarding money transmitter licensing project. | 1.0 | 360.00 |
| 08/20/20 | Mark Porter | Meeting with I. Voloshin and others regarding licensing project. | 1.0 | 850.00 |
| 08/20/20 | Katherine Schuler | Orientation meeting with I. Voloshin and team members regarding money transmitter licensing project. | 1.1 | 236.50 |
| 08/20/20 | Igor Voloshin | MTL Project: presentation to MTL Team; client call on roadmap. | 3.5 | 2,292.50 |
| 08/21/20 | Liliya McKenzie | Prepare list of bonding requirements nationwide. | 1.7 | 680.00 |
| 08/21/20 | Igor Voloshin | MTL Project: Update AML policy. | 1.5 | 982.50 |
| 08/22/20 | Sean McElroy | Review loan documents; research tax issues regarding crypto loans; send emails regarding same. | 1.0 | 740.00 |
| 08/22/20 | Can Sun | Prepare EIACA for WRSS. | 0.2 | 172.00 |
| 08/23/20 | Sean McElroy | Research crypto tax loan issues; confer with D. Forst regarding same; mark up and review loan documents; organize call with D. Friedberg and D. Forst. | 2.5 | 1,850.00 |
| 08/23/20 | Igor Voloshin | MTL Project: Update AML Policy; review Washington licensing items; state assignment to Fenwick MTL Team. | 2.9 | 1,899.50 |
| 08/24/20 | Sean McElroy | Research tax reporting issue; confer with D. Forst regarding same; review loan document; draft internal emails on crypto tax issues. | 3.4 | 2,516.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC                     Invoice Date:      September 11, 2020
Client Number: 34394                     Invoice Number:              819810
                                         Billing Attorney:    Andrew  Albertson

Page 45

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 08/24/20 | Ryan J. Straus | Review communication regarding network operation; correspondence regarding same. | 2.7 | 2,376.00 |
| 08/24/20 | Igor  Voloshin | MTL Project: Update AML Policy; review bond summary. | 1.7 | 1,113.50 |
| 08/25/20 | Sean  McElroy | Research on tax reporting issues; confer with D. Forst regarding same and other tax issues; review ancillary documents for Project Benchmark; confer regarding intercompany agreements. | 2.8 | 2,072.00 |
| 08/25/20 | Kathleen  Murray | Attention to incorporation of North Dimension Inc and North Wireless Dimension Inc. | 0.7 | 150.50 |
| 08/25/20 | Jacob E. Simmons | Draft certificate of incorporation for subsidiary; file EIN application; confer with K. Murray  regarding same. | 1.2 | 204.00 |
| 08/25/20 | Ryan J. Straus | Review Fiat Integration and Revolving Loan Agreement; revisions to the same; review ancillary documents. | 2.3 | 2,024.00 |
| 08/25/20 | Igor  Voloshin | MTL Project: Surety bond call with Nano; miscellaneous project management. | 2.2 | 1,441.00 |
| 08/26/20 | Kathrine  McEnroe | Telephone calls to NMLS requesting unlocking of the FTX NMLS account; confer with I. Voloshin regarding steps to give Fenwick permission to access the account. | 0.3 | 132.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date: September 11, 2020
Invoice Number: 819810
Billing Attorney: Andrew Albertson

Page 46

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 08/26/20 | Kathrine McEnroe | Review State Assignments, checklists, current state requirements and current state of material in state folder. | 1.3 | 572.00 |
| 08/26/20 | Kathleen Murray | Attention to EIN for Alameda Research Ventures LLC. | 0.1 | 21.50 |
| 08/26/20 | Ryan J. Straus | Review and revise Fiat Integration and Loan Agreement; ancillary review in connection with same. | 1.6 | 1,408.00 |
| 08/26/20 | Igor Voloshin | MTL Project: Daily check-in with FTX team. | 1.0 | 655.00 |
| 08/27/20 | Kathrine McEnroe | WebEx meeting with I. Voloshin and money transmitter licensing team to answer question regarding NMLS DATABASE, MMLA application, status of Washington application; paralegal assignments and next steps. | 0.6 | 264.00 |
| 08/27/20 | Kathrine McEnroe | Contact IT Department regarding creating internal Fenwick email to be used for individual state applications and registering users on West Realm NMLS data base; register as a user on NMLS database; forward email to team members providing West Realm details, such as account number, user login, password, etc. for accessing database and instructions for setting up user account; download MU1 form and MU2 Associates and distribute to team. | 1.0 | 440.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Page 52

| | | Invoice Date: | September 11, 2020 |
| | | Invoice Number: | 819810 |
| | | Billing Attorney: | Andrew Albertson |

General Corporate
Matter number 34394-00600

### Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|------:|-----:|-------:|
| Andrew Albertson | Partner | 2.5 | 960.00 | 2,400.00 |
| David L. Forst | Partner | 2.7 | 1450.00 | 3,915.00 |
| Stephen Gillespie | Partner | 1.0 | 1175.00 | 1,175.00 |
| Mark Porter | Of Counsel | 2.6 | 850.00 | 2,210.00 |
| Ryan J. Straus | Of Counsel | 7.9 | 880.00 | 6,952.00 |
| Sean McElroy | Associate | 12.1 | 740.00 | 8,954.00 |
| Can Sun | Associate | 2.2 | 860.00 | 1,892.00 |
| Igor Voloshin | Associate | 26.5 | 655.00 | 17,357.50 |
| Jacob Wittman | Associate | 2.7 | 655.00 | 1,768.50 |
| Kathrine McEnroe | Paralegal | 12.9 | 440.00 | 5,676.00 |
| Liliya McKenzie | Paralegal | 4.1 | 400.00 | 1,640.00 |
| Kathleen Murray | Paralegal | 1.2 | 215.00 | 258.00 |
| Meera Park | Paralegal | 1.0 | 360.00 | 360.00 |
| Katherine Schuler | Paralegal | 4.3 | 215.00 | 924.50 |
| Jacob E. Simmons | Case Assistant | 1.6 | 170.00 | 272.00 |
| Total | | 85.3 | | $ 55,754.50 |

### Disbursement Summary

| Date | Description | Total |
|------|-------------|------:|
| 08/26/20 | North Dimension Inc. formation and North Wireless Dimension Inc. formation. - VENDOR: GKL Register Agents Inc./TIN 81-2236321 | 1,828.00 |
| 08/31/20 | Voice & Data Communications | 1,672.64 |
| | Total Disbursements | $ 3,500.64 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

# Attachment 5

# FENWICK

1191 Second Avenue     206.389.4510
10th Floor     Fenwick.com
Seattle, WA 98101

Igor Voloshin
Associate
ivoloshin@fenwick.com | +1 206-389-4546

January 10, 2022

Via Email [Daniel@FTX.US]

Daniel S. Friedberg
Chief Compliance Officer
West Realm Shires Services, Inc.

Re:     West Realm Shires Services, Inc. dba FTX.US ("**FTX.US**") Exemption under Federal and State
Money Transmission Rules

Dear Daniel:

## I.     EXECUTIVE SUMMARY

We are counsel for FTX.US. We have prepared this memorandum that addresses the permissibility of
FTX.US operating its cryptocurrency exchange. We have represented FTX.US since its inception in or
around January 2019 and the information and analysis provided herein reflects the legal assessment
of FTX.US products since this engagement.

FTX.US is registered with the U.S. Department of the Treasury Financial Crimes Enforcement Network
("**FinCEN**") as a money services business ("MSB") under the U.S. Federal Bank Secrecy Act and its
regulations (collectively, the "**BSA**") and has money transmitter licenses ("**MTLs**") in good standing in
twenty-three (23) states along with pending applications in twenty-three (23) others. FTX.US products
are not available to New York based residents.  FTX.US has established a BSA compliant compliance
program, which is subject to independent audits and assessment by reputable compliance firms as
well as state regulators as part of FTX.US' MTL application process.

FTX.US operates a cryptocurrency exchange which enables Users (as defined below) to purchase
cryptocurrency via the FTX.US orderbook that links Users (e.g., purchasers and sellers of
cryptocurrency) using a standard bid and quote system. Users login to their FTX.US account
("**Account**") using this Platform (as defined below) to generate payment instructions to participating
financial institutions (the "**Partner Financial Institutions**") to fund their FTX.US balances (collectively,
"**Services**"). Its key Partner Financial Institution, Silvergate Bank, has reviewed and passed upon
FTX.US's compliance systems including its regulatory posture related to money transmission for the
Services rendered to Users and continues to oversee activity processed through the Services.

FTX_000291858
SDNY_02_00416556

Daniel S. Friedberg
January 10, 2022
Page 2

Under Federal law, FTX.US is operating within the scope of its MSB registration.

Under state law, FTX.US has received MTLs and is applying for others. With respect to the states that FTX.US has not yet received an MTL, the applicable state exemptions are discussed below. It is very common for cryptocurrency exchanges to operate in such states while their MTL application is pending.

## II.      FENWICK & WEST BACKGROUND

The undersigned is a former enforcement attorney with a state non-depository regulatory agency with jurisdiction over, among other industries, money transmitters , and is intimately familiar with the KYC/AML requirements imposed in the United States under the framework of the Bank Secrecy Act of 1970. Several years ago, the undersigned shifted his emphasis to representing technology companies with respect to compliance with financial laws.

At Fenwick & West LLP, we represent the entire spectrum of clients in the cryptocurrency ecosystem including cryptocurrency exchanges, emerging payments, and financial institutions with respect to financial compliance. We have a deep understanding and knowledge of the space from both a technological and financial perspective.

## III.     SUMMARY OF FTX.US OPERATIONS

Presently, FTX.US' core product is a cryptocurrency exchange ("**Exchange**") where Users can purchase and sell eligible cryptocurrency on the platform ("**Platform**"). Users utilize FTX.US to operate in part its exchange activities, which primarily include cryptocurrency to cryptocurrency transactions. Several states have expressly either carved out crypto-to-crypto trading or otherwise limit their regulatory oversight functions to cash-to-crypto transactions.

### A.      Funding an Account and Maintaining an Account (Account Based Activity)

Users can fund their FTX.US account with U.S. Dollars ("**USD**") or cryptocurrency to begin trading. As further detailed in Appendix A,[1] where a User is only exposed to cryptocurrency transactions (e.g., crypto-to-crypto), the identified states where licenses are pending or not being sought do not presently require MTLs.

However, we also note that Users who fund their Account with USD are in effect receiving an advance from FTX.US where FTX.US where the Account is prefunded by FTX.US. This flow can best be characterized as an advance where FTX.US assumes the credit risk between the point of prefunding the Account balance and receiving the settlement amount advanced by FTX.US.[2] Account balances

---

[1] We have compiled a survey of state laws in those states where FTX.US has licenses pending, has not submitted license but intends to, or will not submit licenses due to the regulatory treatment of its operations in such jurisdictions (collectively discussed in "Appendix A").

[2] Our review has not uncovered a circumstance where applicable regulators have opined on a similar funds flow in the context of money transmission/cryptocurrency operations. California Department of Financial Protection and Innovation, however, recently issued an administrative opinion that stated, ". . . . transactions do not

FTX_000291859
SDNY_02_00416557

Daniel S. Friedberg
January 10, 2022
Page 3

denominated in USD also presently likely fall outside the scope of applicable money transmitter regulations as those balances are only maintained as necessary and incidental to the Exchange.

     B.    <u>Blind Order Matching</u>

FTX.US exchange operates an orderbook that on the backend, fulfills orders through a combination of institutional and retail liquidity pools into a single orderbook for Users. As a result, for each Exchange transaction on the Platform, Users are transacting opposite other Users and the subject consideration is immediately delivered. Applicable states have either explicitly or tacitly acknowledged that such transactions fall outside the scope of money transmitter regulations absent explicit guidance to the contrary.

     C.    <u>Future Products and Regulatory Roadmap</u>

FTX.US continues to operate its core product while pursuing MTLs without negative regulatory treatment. This approach is consistent with industry practice given the fractured nature of state regulations applicable to cryptocurrency operators, and FTX.US' stated desire to both exemplify best practices and release products that may require MTLs. As a result, FTX.US has received twenty-three (23) licenses in many states where it has a prior operational history. Further, FTX.US has applications pending in an additional twenty-three (23), with an additional eight (8) states and US territories that are pending submission or exempt from requiring licensure based on the current and future FTX.US product roadmap. As noted, FTX.US does not operate in New York, and Montana does not have a money transmission licensing law.

## IV.    FTX.US IS EXEMPT FROM STATE MONEY TRANSMISSION LICENSING

State rules on money transmission in the context of cryptocurrency operators vary, are ever evolving and disparate. Some states have instituted legislative changes to their money transmission rules that specify such rules apply to cryptocurrency (often referring to "virtual currencies"). For instance, in 2017, Washington State amended its money transmission act to incorporate virtual currency transmission:

> *"Money transmission" means receiving money or its equivalent value (equivalent value includes virtual currency) to transmit, deliver, or instruct to be delivered to another location,*

---

constitute money transmission because [Company's] first action after receiving instructions from its customers is to instruct [Company's] bank to immediately disburse the requested amount to the recipient. [Company] places a hold on sender's debit card; however, this hold does not initiate the transfer of funds to [Company]. Only *after* [Company] has paid the beneficiary is the hold status converted to a payment/post status, and the reimbursement to [Company] finalized. Under this payment reimbursement model, [Company] never 'receives money for transmission.' [Company] does not actually or constructively receive, take possession of, or hold money or monetary value for transmission. Since funds are not transferred to reimburse [Company] until after the designated beneficiary has been paid, [Company] incurs no transmission liability and consumer funds are not at risk. *Transactions in which recipients are paid before company is reimbursed are not subject to licensing under MTA*, Feb. 11, 2021. As noted in Appendix A, states uniformly require an acceptance of USD as a definitional element of money transmission (i.e., transfer of USD to another place or person). Therefore, FTX.US' model for USD funding transactions is distinct from the statutory treatment of money transmission activity where FTX.US does not accept funds for the purpose of transfer but prefunds the account from its own capital.

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Daniel S. Friedberg
January 10, 2022
Page 4

> *inside or outside the United States, by any means including but not limited to by wire, facsimile, or electronic transfer. "Money transmission" includes selling, issuing, or acting as an intermediary for open loop prepaid access and payment instruments, but not closed loop prepaid access. 'Money transmission' does not include: The provision solely of connection services to the internet, telecommunications services, or network access; units of value that are issued in affinity or rewards programs that cannot be redeemed for either money or virtual currencies; and units of value that are used solely within online gaming platforms that have no market or application outside of the gaming platforms."* RCW 19.230.010(18).

Other states promulgate guidance notices, regulatory bulletins, enforcement actions, or take some other affirmative step to broadcast their intent to regulate cryptocurrency operators. Each state interprets like business activity in distinct ways. As a result, the industry trend is to seek licensure as quickly as possible to avoid changes in regulatory treatment. Nonetheless, while states are grappling on how to adopt their rules to cryptocurrency, they are creating a fractured body of law that can be difficult to navigate.

For instance, in April 2019, Texas issued a memorandum that crypto-to-crypto trades within Texas are permissible without a money transmitter license. *See* Texas Memorandum 1037. Other states have sought to welcome cryptocurrency activity by intentionally limiting the scope of regulation or through determinations that existing legislation does not authorize them to treat cryptocurrency as analogous to statutorily defined "money." Wyoming and New Hampshire have also exempted the sale or third-party transmission of cryptocurrency from money transmitter licensing requirements.

As you know, we have continued to monitor regulatory developments in this space and reviewed relevant state money transmission rules and any available guidance on the treatment of cryptocurrency activity. In each of the states, as well as in the remaining jurisdictions where FTX.US operates, money transmission requires receiving money or monetary instruments as defined by such states. FTX.US would therefore not be subject to MTL obligations in such jurisdictions.

Prior to FTX.US commencing business, as a precautionary measure, we contacted those states that were deemed the most restrictive in this regard, as follows:

- California
- Colorado
- Indiana
- Kentucky
- Maryland
- Michigan
- Missouri
- Utah
- Wisconsin
- Wyoming

FTX.US has since received MTLs in Maryland, Michigan, and Missouri without those states objecting to any prior operational history in those jurisdictions. We have also assessed state money transmission laws in the states where FTX.US operates. *See* Appendix A. In each of those states,

FTX_000291861
SDNY_02_00416559

Daniel S. Friedberg
January 10, 2022
Page 5

money transmission includes either businesses that: (1) receive money for the purposes of transmission; or (2) sell payment instruments or stored value.[3] Further, where states have issued regulatory guidance on cryptocurrency, FTX.US has historically established commercial partnerships with Financial Partner Institutions prior to submitting an MTL application to buttress its regulatory model. For various reasons, these relationships shift during the FTX.US product lifecycle.  Based on this information, we have a reasonable belief that FTX.US is excluded from money transmission for the following reasons:

- States have expressed explicit regulatory interpretations that exempt the Platform from MTLs

- FTX.US does not presently offer services that may require licensure (e.g., peer to peer transfers within the Platform[4])

- FTX.US has submitted MTL license applications in all but nine (8) states or US territories and we understand that it has not to date received regulatory push-back on the above stated Platform's historic operations in such jurisdictions

We have kept in close contact with state regulators during the application process and have not received any negative feedback regarding the above information. FTX.US is also working with reputable compliance consultants as part of the application process who are well known to regulators and are providing ongoing application, license maintenance, and other support as part of FTX licensing strategy.

## V.    COMPLIANCE

Pursuant to 31 CFR § 1022.210, financial institutions must maintain a BSA/AML compliance program that incorporates five elements (commonly referred to the five pillars of BSA compliance). Further, FTX.US must maintain a registration in good standing as required under 31 CFR § 1022.380. FTX.US has developed and maintains AML policies and procedures ("AML Program") that meets or exceeds industry practices and regulatory standards. The AML Program must also include relevant procedures on reporting suspicious activity to appropriate governmental agencies in accordance with 31 CFR § 1022.320.

The Program incorporates the five pillars of institutional AML compliance that highlights FTX.US' regulatory obligations and demonstrates FTX.US' intent to ensure that an adequate AML program is implemented. It includes relevant sections that are generally found within an AML policy along with relevant AML regulatory references.

---

[3] Payment instruments include common negotiable instruments such as cashier's checks or similar bank notes, and stored value are open-loop prepaid cards.  FTX.US is not engaged in either business model.

[4] We note that states do typically regulate peer-to-peer USD and cryptocurrency transfers. *See e.g.*, Interim Regulatory Guidance Cryptocurrency and the Colorado Money Transmitters Act." ("If a person is engaged in the business of transmitting *money from one consumer to another within an exchange through the medium of cryptocurrency, that act would constitute money transmission and would be subject to licensure under the Colorado law*."). FTX.US does not offer a peer-to-peer product in the fashion of Venmo or other like products.

FTX_000291862
SDNY_02_00416560

Daniel S. Friedberg
January 10, 2022
Page 6

FTX.US has developed procedures that implement the AML program that are reasonably designed to deter and detect suspicious or other illicit activity consistent with regulatory guidance and industry practice. The procedures are effectuated through a team of specifically designated compliance representatives within FTX.US who report to the Chief Compliance Officer. The procedures include relevant customer identification procedures ("CIP") and transaction monitoring systems that combine automated and manual systems and leverage third party compliance vendors.

The procedures also discuss red flags applicable to FTX.US's business. The procedures discuss the record keeping obligations associated with AML requirements and include a requirement that the AML Policy be approved and signed off by the AML Compliance Officer.

As part of FTX.US's employee training requirement, FTX.US holds compliance meetings and employees are also required to complete an on-line AML training course. In reviewing the training material, FTX.US has developed sufficient material to cover the key components of the BSA. The Company's operationalization of the above is consistent with applicable AML Rules. We have also reviewed FTX.US's regulatory registrations and FTX.US is actively registered as an MSB and licensed as a money transmitter.

We note that FTX.US' procedures address applicable rules and BSA requirements including: designating an AML Compliance Officer and requiring that all employees sign an AML attestation form and provides procedures and supervisory controls for employees, supervisors. The Company's operationalization of the above is consistent with applicable AML Rules.

As a baseline all Users need to provide identifying information at onboarding, which is risk screened based on the information provided. These measures taken together form a reasonable belief of the User identity and their apparent use of FTX.US, which is consistent with AML Rules.

FTX.US regularly (and no less frequently than annually) reviews its CIP to determine if it needs to be recalibrated. The review is conducted on multiple levels including by third party BSA auditors (as described below). FTX.US has conducted third party assessments of its AML Program in September 2020 and September 2021. The scope of the audits include all elements of the AML Program including each of the five pillars of BSA compliance. Both found that FTX.US' BSA compliance policies are in line with BSA obligations related to an MSB and did not identify any material deficiencies. FTX.US also continues to advance and improve its compliance controls consistent with industry practices and regulatory obligations based on working with third party auditors and advisors.

## VI.    CONCLUSION

We trust that the foregoing is sufficient to satisfy your inquiry.

We are happy to provide additional information at your request relating the information noted above.

The scope of this memorandum is limited to the rules identified above and does not address any other laws or regulations. The analysis herein is limited to and based on statutes, regulations, historical precedents, relevant federal and state enforcement actions and other communications that we deemed relevant as of the date of this memorandum. We do not undertake to update this

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Daniel S. Friedberg
January 10, 2022
Page 7


memorandum after the date hereof as a result of any future developments. Regulators have broad
discretion to interpret the rules identified herein and may take a contrary position.



Sincerely,

FENWICK & WEST LLP



Igor Voloshin


IV:sdj

Daniel S. Friedberg
January 10, 2022
Page 8

## APPENDIX A: REVIEW OF STATE MONEY TRANSMITTER LAWS

**(a)** California

California defines "'Money transmission' means any of the following: (1) Selling or issuing payment instruments. (2) Selling or issuing stored value. (3) Receiving money for transmission." Cal. Fin. Code § 2003(q) (emphasis added). California's Money Transmitter Act does not address cryptocurrency and officially the State has "not determined whether a business that purchases and sells decentralized cryptocurrencies, or issuance of stored value that can be redeemed for cryptocurrency, triggers the application of California's money transmission law."[5]

Accordingly, guidance from California suggests that, in perhaps a faint-hearted way, the absence of any affirmative guidance requiring MTLs for cryptocurrency indicates that an MTL is not necessary. We further note that we have had opportunity to have informal conversations

In addition to our informal inquiry regarding FTX.US noted above, we also note that California has on nearly a dozen occasions identified that cryptocurrency transactions are not subject to the MTA.[6] Where a state has not taken an affirmative position on the application of its money transmission laws to cryptocurrency activity, such states have uniformly not required MTLs for cryptocurrency activity. FTX.US therefore does not presently require licensure. Based on informal conversations with state regulators, California does not presently accept MTL applications from cryptocurrency operators.

**(b)** Colorado

Outside counsel for FTX.US contacted the Colorado Division of Banking prior to beginning operations in the state and informed the agency about FTX.US' planned operations. The agency did not oppose FTX.US opening its business to residents.

Under Colorado law, "money transmission" means "the sale or issuance of exchange or engaging in the business of receiving money for transmission or transmitting money within the United States or to locations abroad by any and all means including but not limited to payment instrument, wire, facsimile, or electronic transfer."[7] Colorado has issued an advisory explaining that cryptocurrency is not covered within the definition of "exchange" and concluding that buying, selling, or facilitating the

---

[5] *See* 10/01/2019 Letter From The Department of Financial Protection and Innovation Letter (https://dfpi.ca.gov/2019/10/10/cryptocurrency-exchange-platform-10-1-19/).

[6] *See e.g.*, Cal. Department of Financial Protection and Innovation, *Request for Interpretive Opinion re Bitcoin ATM Kiosks*, May 25, 2021 ("Under the MTA, a person may not engage in the business of money transmission in California unless the person is licensed, exempt from licensure, or an agent of a person licensed or exempt from licensure. Financial Code section 2003, subdivision (q), defines 'money transmission' as: (1) selling or issuing payment instruments, (2) selling or issuing stored value, or (3) receiving money for transmission. The sale and purchase of bitcoin from [Company] through a bitcoin ATM kiosk does not meet the definition of 'money transmission.' Therefore, [Company]'s activities through its bitcoin ATM kiosks are not subject to licensing under the MTA.").

[7] C.R.S. 11-110-103(11).

FTX_000291865
SDNY_02_00416563

Daniel S. Friedberg
January 10, 2022
Page 9

transfer of cryptocurrencies is not an activity requiring a Colorado money transmission license.[8] We therefore believe that FTX.US current operations do not require licensure within the meaning of Colorado law. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

**(c)**      Connecticut

Under Connecticut law, "money transmission" means "engaging in the business of issuing or selling payment instruments or stored value, receiving money or monetary value for current or future transmission or the business of transmitting money or monetary value within the United States or to locations outside the United States by any and all means including, but not limited to, payment instrument, wire, facsimile or electronic transfer."[9] "Monetary value" means a medium of exchange, whether or not redeemable in money.[10]

The Connecticut Department of Banking has published an FAQ guidance document that notes, "Connecticut General Statutes treats virtual currency similarly to fiat currency (a.k.a. cash) under Connecticut's money transmission scheme."[11] The Department has entered two consent orders against cryptocurrency companies in the past year. In both instances, the companies were in the business of storing their customers' cryptocurrencies. On the other hand, the Department has issued two unpublished opinions holding that companies offering the purchase and sale of virtual currencies through Bitcoin ATMs or virtual currency kiosks were not required to obtain licensure under the Money Transmission Act.[12]

FTX.US's historic operations leveraged Partner Financial Institutions that assumed the regulated conduct while concurrently expeditiously compiling a license application for Connecticut. FTX.US has since submitted its MTL application to ensure compliance with applicable regulatory requirements.

**(d)**      Delaware

Delaware law prohibits any person from engaging in the business of selling checks or issuing checks or engaging in the business of receiving money for transmission or transmitting the same without having first obtained a money transmission license.[13] The state code does not define "money," and the Office of the State Bank Commissioner has not published any enforcement actions or issued any

---

[8] Colorado Division of Banking, "Interim Regulatory Guidance Cryptocurrency and the Colorado Money Transmitters Act" (Sep. 20, 2018), available at https://www.csbs.org/system/files/2019-05/CO-%20Interim%20Guidance%20Cryptocurrency%20and%20the%20Money%20Transmitters%20Act.pdf.

[9] Conn. Gen. Stat. § 36a-596(9).

[10] Conn. Gen. Stat. § 36a-596(8).

[11] Connecticut Department of Banking, Virtual Currency Money Transmission FAQs, https://portal.ct.gov/DOB/Consumer-Credit-Licensing-Info/Consumer-Credit-Licensing-Information/Virtual-Currency-MTRA-FAQs.

[12] *Id.*

[13] 5 Del. C. § 2303.

Daniel S. Friedberg
January 10, 2022
Page 10

guidance relating to the treatment of virtual currency under the state's Sale of Checks Act. Given this, consistent with fundamental canons of statutory interpretation, we believe that Delaware does not presently treat Exchange activity as requiring licensure. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

      **(e)**      Hawaii

The Hawaii legislature has tried to pass legislation that both includes (SB 949) and excludes (SB 2853 and 3082) virtual currencies from its Money Transmitter Act. While these proposed regulations have not been enacted, the State's Division of Financial Institutions has issued public guidance on the applicability of State MTL to cryptocurrency transactions, stating generally that "cryptocurrency transactions" require a money transmission license.

The States' Money Transmitter Act is uniquely burdensome in that it requires licensees to hold "in trust permissible investments having an aggregate market value of not less than the aggregate amount of its outstanding transmission obligations." In other words, if a virtual currency business were to hold a cryptocurrency on behalf of a Hawaiian customer they would be required by the State to maintain an equivalent cash value in trust. This requirement has proven financially untenable for virtual currency operators, including Coinbase, who have suspended service to Hawaii.

As a response to criticism regarding the burden Hawaii places on virtual currency businesses, Hawaii's legislature adopted HR 94 which requests the department of commerce and consumer affairs to reconsider the burdensome assert reserve requirements. Additionally, and in response to the State's burdensome virtual currency regulations, in August 2020 Hawaii created a no-license digital currency sandbox through its Digital Currency Innovation Lab (DCIL). See http://www.htdc.org/programs/#dcil-section. Sandbox participants are exempt from the requirement to maintain a cash equivalent, and from acquiring the usual money transmitter license, through June 2022.

With respect to money transmission laws, in January 2019, the Hawaii Senate introduced a bill to extend "the money transmitters act to expressly apply to persons engaged in the transmission of virtual currency" and require "licensees dealing with virtual currency to provide a warning to customers prior to entering into an agreement with the customers."

To account for this regulatory interpretation, FTX.US's historic operations leveraged Partner Financial Institutions that assumed the regulated conduct while concurrently expeditiously compiling a license application for Hawaii. Due to legislative pronouncements that indicated a shift in the treatment of exchanges referenced above, FTX.US awaited further clarity from local regulators. However, we understand that it is presently anticipating submitting an MTL as quickly as possible.

      **(f)**      Idaho

Under Idaho law, "money transmission" means "the sale or issuance of payment instruments or engaging in the business of receiving money for transmission or the business of transmitting money

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Daniel S. Friedberg
January 10, 2022
Page 11

within the United States or to locations outside the United States by any and all means including, but not limited to, payment instrument, wire, facsimile or electronic transfer."[14]

The Idaho Department of Finance has issued guidance stating, "If you act as a virtual/digital currency exchanger and accept legal tender (e.g., government backed/issued "fiat" currencies) for later delivery to a third party in association with the purchase of a virtual currency, then you must be licensed as a money transmitter with the Department of Finance."[15] As noted above, where FTX.US holds a USD balance, it does so primarily as an advance to Users.

FTX.US's historic operations leveraged Partner Financial Institutions that assumed the regulated conduct while concurrently expeditiously compiling a license application for Idaho. FTX.US has since submitted its MTL application to ensure compliance with applicable regulatory requirements.

    **(g)**    Indiana

Outside counsel for FTX.US contacted the Indiana Department of Financial Institutions prior to beginning operations in the state and informed the agency about FTX.US' planned operations. The agency did not oppose FTX.US opening its business to residents.

Per Indian's money transmission statute, "any entity that engages in the business of selling or issuing payment instruments primarily for personal, family, or household purposes. Money transmissions performed by an entity from an office or place of business, or internet, wherever located (inside or outside the United States) by any means, including but not limited to a payment instrument, wire, facsimile, or electronic transfer would be considered money transmission activity."[16] Indian's Money Transmitter Act does not expressly include the concepts of "virtual currencies" or "monetary value" and no guidance on the matter has been provided by the State. Where a state has not taken an affirmative position on the application of its money transmission laws to cryptocurrency activity, such states have uniformly not required MTLs for cryptocurrency activity. FTX.US therefore does not presently require licensure. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

    **(h)**    Kansas

Under the Kansas Money Transmitter Act, "money transmission" means "to engage in the business of the sale or issuance of payment instruments or of receiving money or monetary value for transmission to a location within or outside the United States by wire, facsimile, electronic means or any other means, except that money transmission does not include currency exchange where no transmission of money occurs."[17]

---

[14] Idaho Code § 26-2902(11).

[15] Idaho Money Transmitters Section, "Who is required to have an Idaho Money Transmitter License," https://www.finance.idaho.gov/who-we-regulate/money-transmitters/.

[16] Indiana Code 28-8-4-13.

[17] K.S.A. § 9-508(h).

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Daniel S. Friedberg
January 10, 2022
Page 12

The state's Office of the State Bank Commissioner issued 2014 guidance stating:

> Exchange of cryptocurrency for sovereign currency between two parties is not money transmission under the KMTA. This is essentially a sale of goods between two parties. The seller gives units of cryptocurrency to the buyer, who pays the seller directly with sovereign currency. The seller does not receive the sovereign currency with the intent to transmit to another entity[.][18]

FTX.US's historic operations have leveraged Partner Financial Institutions that assumed the regulated conduct while concurrently expeditiously compiling a license application for Kansas. We understand that FTX.US is presently anticipating submitting an MTL as quickly as possible. .

    **(i)**      Kentucky

Outside counsel for FTX.US contacted the Kentucky Department of Financial Institutions prior to beginning operations in the state and informed the agency about FTX.US' planned operations. The agency did not oppose FTX.US opening its business to residents.

Under Kentucky law, "money transmission" means "engaging in the business of receiving money or monetary value to transmit, deliver, or instruct to be transmitted or delivered, money or monetary value to another location inside or outside the United States by any and all means, including but not limited to wire, facsimile, electronic transfer, or issuing stored value."[19]

Kentucky's Department of Financial Institutions has not publicly taken any position on the application of its Money Services Act to virtual currency businesses, nor has the Department published any enforcement actions against virtual currency businesses under the Money Transmitters Act.[20] However, a company with a business model substantially similar to FTX.US's represented to another state regulator that the company had received confirmation from Kentucky that it did not need a license.[21] As previously noted, where a state has not taken an affirmative position on the application of its money transmission laws to cryptocurrency activity, such states have uniformly not required MTLs for cryptocurrency activity. FTX.US therefore does not presently require licensure. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

---

[18] Kansas Office of the State Bank Commissioner, Guidance Document MT 2014-01: "Regulatory Treatment of Virtual Currencies Under the Kansas Money Transmitter Act" (Jun. 6, 2014), https://www.osbckansas.org/wp-content/uploads/mt2014_01_virtual_currency.pdf.

[19] KRS § 286.11-003(17).

[20] Kentucky Department of Financial Institutions, "Other Industry Enforcement Actions," https://kfi.ky.gov/new_docs.aspx?cat=87.

[21] Letter from Arkansas Securities Department to CryptoFlip re: CryptoFlip 20-NA-0003 (Mar. 25, 2020), http://www.securities.arkansas.gov/!userfiles/CryptoFlip%2020-NA-0003.pdf.

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Daniel S. Friedberg
January 10, 2022
Page 13

**(j)**      Louisiana

Under Louisiana law, a person may not engage in virtual currency business activity unless it is licensed under the state's Virtual Currency Business Act.[22]

The State has issued public guidance on the applicability of the State's Money Transmitter Act to cryptocurrency transactions, stating that a person identified as an "exchanger" under FinCEN's interpretation is the only party who may be subject to licensure as a money transmitter in the State. FinCEN has characterized sellers of decentralized virtual currencies in exchange for another virtual currency or fiat currency, among others, as "exchangers."[23] Given the ambiguity associated with referencing FinCEN guidance, FTX.US operated in Louisiana consistent with industry practice. However, Effective August 1, 2020, Louisiana enacted House Bill 701, "Virtual Currency Businesses Act" which regulates various topics including definitions of virtual currency and relevant terminologies, applicability of the statute, licensure for businesses, and license application requirements. "Virtual currency business activity" is defined to include exchanging virtual currency, and "exchange" is defined as follows:

> "Exchange", when used as a verb, means to assume control of virtual currency from, or on behalf of, a resident, at least momentarily, to sell, trade, or convert either of the following: (a) Virtual currency for legal tender, bank credit, or one or more forms of virtual currency. (b) Legal tender or bank credit for one or more forms of virtual currency.[24]

To account for this regulatory change, FTX.US's historic operations leveraged Partner Financial Institutions that assumed the regulated conduct while concurrently expeditiously compiling a license application for Louisiana. FTX.US has since submitted its license application to ensure compliance with Louisiana law.

---

[22] La. Stat. Ann. § 6:1384.

[23] *See* La. Office of Fin. Inst., Consumer and Investor Advisory on Virtual Currency (2014), *available at* http://www.ofi.state.la.us/SOCGuidanceVirtualCurrency.pdf (last visited 7/16/2019). While FinCEN's treatment of exchange activity is broad, many have questioned the applicability of FinCEN's guidance to pure exchange activity. In particular because FinCEN, as relevant to the Platform described above, FinCEN clarified to a proprietary investment operation that its trading of cryptocurrency against various counterparties would not constitute exchange activities so long as such activity (i) constituted bona fide investment activity for the benefit of the company and (ii) did not involve the transmission of funds or cryptocurrency to a third party on behalf of the company's counterparties. In the Investor Letter, FinCEN noted that: "[] when the Company invests in a convertible virtual currency for its own account, and when it realizes the value of its investment, it is acting as a user of that convertible virtual currency within the meaning of the guidance. As a result, to the extent that the Company limits its activities strictly to investing in virtual currency for its own account, it is not acting as a money transmitter and is not an MSB under FinCEN's regulations. However, any transfers to third parties at the behest of the Company's counterparts, creditors, or owners entitled to direct payments should be closely scrutinized, as they may constitute money transmission." The letter further noted that the expansion of investment services to a trading desk or brokerage service may implicate MSB activities.

[24] La. Stat. Ann. § 6:1382(4).

FTX_000291870
SDNY_02_00416568

Daniel S. Friedberg
January 10, 2022
Page 14

     **(k)**    Massachusetts

Massachusetts law regulates foreign money transmission, not domestic money transmission. The state has issued an opinion letter[25] advising a foreign company that operates a virtual currency exchange business that it was not required to be licensed. It has since expanded on this rationale in a subsequent opinion stating:

> Massachusetts General Laws chapter 169 requires that all persons who engage or are financially interested in the business of receiving deposits of money for the purpose of transmitting the same or equivalents thereof to foreign countries obtain a foreign transmittal agency license from the Division. . . . [T]he Division has reasoned that where a transmission is effected but the sender has no knowledge of the identity of the recipient or the recipient's location (such as in certain automatic exchange transactions), the transmission of the virtual currency does not meet the statutory requirement.

> [The exchange] as noted, [has] three variations of transactions that occur utilizing the . . . Service. The first two permit users to: (i) receive Fiat currency from the user's external account with another bank (external bank account); (ii) send Fiat currency to the user's external bank account. In both of these scenarios, the sending and receiving party are the same person. A Massachusetts consumer who utilizes her [] account to send Fiat currency from her [] Account to her external bank account is merely moving her own money to a separate bank account. The Division does not view the transfer of money between an individual's bank accounts as money transmission. Accordingly, with respect to the first two variations of [] Service transactions, it is the position of the Division that no license would be required . . . .

> With respect to the [exchange,] transactions are automatic transactions, and are effected when a prospective buyer's desired order for the purchase of Digital Assets can be matched with the desired sale price agreeable to another LV user. P2P Exchange Service transactions may also occur as a trade of digital assets for other digital assets, which is also effected automatically when a match is found meeting the requirements of two LVL users. You have confirmed that LVL users may not select a specific individual with whom they will effect a transaction in a P2P Exchange Service transaction. The Division has previously opined that such exchange services do not constitute money transmission under Massachusetts law because they are not undertaken with the purpose of effecting a transmission to a foreign country where the identity of the recipient cannot be selected or determined by the sender; indeed, once an order is set, the trade is automatically

---

[25] ALM GL ch. 169. See Massachusetts Division of Banks, Opinion 18-003 (Jun. 14, 2018), https://www.mass.gov/decision/opinion-18-003, ("Massachusetts does not presently have a domestic money transmission statute").

FTX_000291871
SDNY_02_00416569

Daniel S. Friedberg
January 10, 2022
Page 15

> matched and neither party is able to select the other party to the trade. Accordingly, it is the position of the Division that offering the P2P Exchange Service, as described, would not require LVL to obtain a foreign transmittal license with the Division.[26]

As noted above, there is clear regulatory guidance that exempts the Exchange, as discussed herein, from licensure obligations. Therefore, FTX.US operations do not presently require licensure. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

> **(l)**   Nebraska

Under Nebraska law, "money transmission" means "the business of the sale or issuance of payment instruments or stored value or of receiving money or monetary value for transmission to a location within or outside the United States by any and all means, including wire, facsimile, or electronic transfer. Notwithstanding any other provision of law, money transmission also includes bill payment services not limited to the right to receive payment of any claim for another but does not include bill payment services in which an agent of a payee receives money or monetary value on behalf of such payee."[27] The Nebraska Department of Banking and Finance has not published any guidance relating to the application of its Money Transmitters Act to virtual currency activities. The Nebraska Legislature introduced three bills focusing on blockchain and cryptocurrency in January 2018. One of the bills would amend the state's money-laundering statutes to account for cryptocurrencies, and the remaining bills would prohibit local governments from taxing or otherwise regulating the use of distributive ledger technology.  All three bills have been indefinitely postponed since April 18, 2018.

In an administrative release, the Nebraska Department of Revenue found that the term "currency" does not include Bitcoin or other virtual currency.[28] As previously noted, where a state has not taken an affirmative position on the application of its money transmission laws to cryptocurrency activity, such states have uniformly not required MTLs for cryptocurrency activity. FTX.US therefore does not presently require licensure. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

> **(m)**   Nevada

Nevada law prohibits anyone from "[engaging] in the business of selling or issuing checks or of receiving for transmission or transmitting money or credits unless the person is licensed pursuant to this chapter."[29] A "check" means "any check, draft, money order or other instrument used for the

---

[26] ALM GL ch. 169. See Massachusetts Division of Banks, Opinion 020-003 (May 5, 2020), https://www.mass.gov/opinion/opinion-020-003.

[27] Neb. Rev. St. § 8-2716.

[28] *See* Jennifer Jensen, et al, Sales and Use Taxes in a Digital Economy, The Tax Adviser, (Jun. 1, 2015) http://www.thetaxadviser.com/issues/2015/jun/salt-jun2015.html#fnref_13.

[29] Nev. Rev. Stat. Ann. § 671.040.

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Daniel S. Friedberg
January 10, 2022
Page 16

transmission or payment of money."[30] The terms "money" and "credits" are not defined. The Nevada Financial Institutions Division issued guidance that implied the state's Money Transmitters Act would apply to some virtual currency activities, but the guidance does not specify which activities.[31] As previously noted, where a state has not taken an affirmative position on the application of its money transmission laws to cryptocurrency activity, such states have uniformly not required MTLs for cryptocurrency activity.

We further note that Nevada regulators have historically been very lenient towards the cryptocurrency industry and one of the few states that offers trust company charters for cryptocurrency operators. In reviewing its public statements and consent orders, we did not identify any actions that indicate FTX.US is subject to regulatory risk due to its present or historic operations. FTX.US therefore does not presently require licensure. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

> **(n)**      New Jersey

Under New Jersey law, "money transmitter" means "a person who engages in this State in the business of: (1) the sale or issuance of payment instruments for a fee, commission or other benefit; (2) the receipt of money for transmission or transmitting money within the United States or to locations abroad by any and all means, including but not limited to payment instrument, wire, facsimile, electronic transfer, or otherwise for a fee, commission or other benefit; or (3) the receipt of money for obligors for the purpose of paying obligors' bills, invoices or accounts for a fee, commission or other benefit paid by the obligor."[32]

The statute defines money as "a medium of exchange authorized or adopted by the United States or a foreign government as a part of its currency and that is customarily used and accepted as a medium of exchange in the country of issuance."[33] It furthermore defines "payment instrument" in a manner dependent on the definition of money:

> "Payment instrument" means any check, draft, money order, travelers check or other instrument or written order for the transmission or payment of money, sold or issued to one or more persons, whether or not the instrument is negotiable. The term "payment instrument" does not include any credit card voucher, any letter of credit or any instrument which is redeemable by the issuer in goods or services.[34]

---

[30] Nev. Rev. Stat. Ann. § 671.010

[31] Nevada Financial Institutions Division, Nevada Financial Institutions Division Statement on Regulation of Cryptocurrency                    in                    Nevada, https://fid.nv.gov/uploadedFiles/fidnvgov/content/Home/features/FID%20Statement%20on%20Crypotcurren cy.pdf.

[32] N.J. Stat. § 17:15C-2.

[33] *Id.*

[34] *Id.*

Daniel S. Friedberg
January 10, 2022
Page 17

Since as far back as 2014, the New Jersey Department of Banking and Insurance has not taken any enforcement action against a virtual currency company for violation of the New Jersey Money Transmitter Act.[35] Therefore, FTX.US operations as described above do not presently require licensure. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

        **(o)**     North Carolina

Under North Carolina law, "money transmission" means:

[T]o engage in the business of any of the following: a. Sale or issuance of payment instruments or stored value primarily for personal, family, or household purposes; or b. Receiving money or monetary value for transmission or holding funds incidental to transmission within the United States or to locations abroad by any and all means, including payment instrument, stored value, wire, facsimile, or electronic transfer, primarily for personal, family, or household purposes. This includes maintaining control of virtual currency on behalf of others.[36]

The North Carolina Commissioner of Banks provided in a publicly available FAQ document:

A virtual currency exchanger is a person that exchanges virtual currency for fiat currency or other virtual currencies, and vice versa. An exchanger that sells its own stock of virtual currency is generally not considered a virtual currency transmitter under the NC MTA. In contrast, an exchanger that holds customer funds while arranging a satisfactory buy/sell order with a third party, and transmits virtual currency and fiat currency between buyer and seller, will typically be considered a virtual currency transmitter.[37]

FTX.US's historic operations leveraged Partner Financial Institutions that assumed the regulated conduct while concurrently expeditiously compiling a license application for North Carolina. FTX.US has since submitted its North Carolina MTL application to ensure compliance with applicable regulatory requirements.

---

[35] New Jersey Department of Banking and Insurance, Depository and Licensee Enforcement Activity, https://www.state.nj.us/dobi/division_banking/bankdivenforce.html.

[36] N.C. Gen. Stat. § 53-208.42(13).

[37] North Carolina Commissioner of Banks, Money Transmitter Frequently Asked Questions, https://www.nccob.gov/Public/financialinstitutions/mt/mtfaq.aspx. *See also* North Carolina, In re: Worldlink Coin Investment, LLC., Docket No. 20:098:MT (Oct. 7, 2020) ("The MTA requires a person who holds or exchanges virtual currency on behalf of another to obtain a license from NCCOB").

FTX_000291874
SDNY_02_00416572

Daniel S. Friedberg
January 10, 2022
Page 18

**(p)** North Dakota

Under North Dakota law, "money transmission" means:

> [T]o engage in the business of the sale or issuance of payment instruments, stored value, or of receiving money or monetary value for transmission to a location within or outside the United States by any and all means, including wire, facsimile, or electronic transfer. Notwithstanding any other provision of law, "money transmission" also includes bill payment services not limited to the right to receive payment of any claim for another, but does not include payment processing activities conducted for a merchant under an agency relationship.[38]

The North Dakota Department of Financial Institutions has issued FAQ guidance stating, "Currently, the Department does not consider the control or transmission of virtual currency to fall under the scope of NDCC 13-09. However, any such company that also holds or transmits fiat currency will still need to secure a money transmitter license."[39] The document also provides, "The purchase, sale, or exchange of virtual currency does not in and of itself require a money transmitter license. However, other activities related to these business lines may trigger this requirement, such as the transmission of fiat currency-denominated assets to third parties."[40] Based on the above, FTX.US would not be subject to MTL requirements. Nonetheless, FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

**(q)** Ohio

Under Ohio law, "transmit money" means:

> [T]o receive, directly or indirectly and by any means, money or its equivalent from a person and to deliver, pay, or make accessible, by any means, method, manner, or device, whether or not a payment instrument is used, the money received or its equivalent to the same or another person, at the same or another time, and at the same or another place, but does not include transactions in which the recipient of the money or its equivalent is the principal or authorized representative of the principal in a transaction for which the money or its equivalent is received, other than the transmission of money or its equivalent. "Transmit money" also includes the sale of checks and other payment instruments.[41]

---

[38] N.D. Cent. Code Ann. § 13-09-02(13).

[39] North Dakota Department of Financial Institutions, Frequently Asked Questions - Non-Depository, https://www.nd.gov/dfi/about-dfi/non-depository/frequently-asked-questions-non-depository.

[40] *Id.*

[41] Ohio Rev. Code Ann. § 1315.01(G)

CONFIDENTIAL TREATMENT REQUESTED BY FTX

FTX_000291875
SDNY_02_00416573

Daniel S. Friedberg
January 10, 2022
Page 19

Ohio's Department of Commerce has not published guidance on virtual currency regulations, nor has it published any enforcement actions relating to virtual currency transmission.[42] As previously noted, where a state has not taken an affirmative position on the application of its money transmission laws to cryptocurrency activity, such states have uniformly not required MTLs for cryptocurrency activity. FTX.US therefore does not presently require licensure. However, we further note that FTX.US is preparing to submit an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

      **(r)**    Oklahoma

Under Oklahoma law, "money transmitter" means "any person who engages in the business of accepting currency or funds denominated in currency, and transmits the currency or funds or the value of the currency or funds, by any means through a financial agency or institution, a Federal Reserve Bank or other facility of one or more Federal Reserve Banks, the Board of Governors of the Federal Reserve System or both, or an electronic funds transfer network."[43] The statute defines "currency" or "funds" to mean fiat currency.[44] The Oklahoma State Banking Department has not issued any guidance specifically addressing virtual currency activities.[45] As previously noted, where a state has not taken an affirmative position on the application of its money transmission laws to

---

[42] Ohio Department of Commerce, Financial Institutions Enforcement Actions, https://www.com.ohio.gov/fiin/enforcement.aspx.

[43] 6 Okl. St. § 1512(7).

[44] 6 Okl. St. § 1512(3) ("'Currency' or 'funds' means the coin and paper money of the United States or of any other country that is designated as legal tender and that circulates and is customarily used and accepted as a medium of exchange in the country of issuance. Currency includes U.S. silver certificates, U.S. notes, and Federal Reserve notes. Currency also includes official foreign bank notes that are customarily used and accepted as a medium of exchange in a foreign country").

[45] Cryptocurrency transferees are not afforded the same protections as those afforded to the transferees of money. Okla. Stat. Ann. § 1-9-332. The Oklahoma legislature determined that a seller who accepts cryptocurrency (e.g., bitcoin as referenced in the legislator) does not take the cryptocurrency free of an existing security interest. Okla. Stat. Ann. § 1-9-332. Multiple bills have set to amend or add definitions with respect to digital currencies and blockchain. In April 2019, a Senate Bill was adopted, which amends the definitions for electronic records and signatures to be valid if secured via blockchain technology. S.B. 700, 57th Leg., 1st Reg. Sess. (Okla. 2019). Additionally, "virtual currency" is being proposed to be included within the definition of "contribution" for purposes of campaign finance. S.B. 809 57th Leg., 1st Reg. Sess. (Okla. 2019). Also introduced in February 2019, SB 822 defines "virtual currency" as a medium of exchange, unit of account or store of value and "is not recognized as legal tender by the United States." S.B. 822, 57th Leg., 1st Reg. Sess. (Okla. 2019). The Senate also introduced a bill "clarifying status of open blockchain tokens under certain conditions." The proposal delineates when a person is not considered a broker-dealer and posits ways to comply with exemptions. S.B. 843, 57th Leg., 1st Reg. Sess. (Okla. 2019). The House also proposed a bill to create "the Uniform Regulation of Virtual-Currency Businesses Act and the Uniform Supplemental Commercial Law for the Uniform Regulation of Virtual-Currency Businesses Act." H.B. 1954, 57th Leg., 1st Reg. Sess. (Okla. 2019). The Oklahoma Senate introduced a bill authorizing cryptocurrency to be used, offered, sold, exchanged and accepted as an instrument of monetary value within its governmental agencies, the governmental agencies within the its political subdivisions, and by marketplace sellers; provided such governmental agencies and marketplace sellers have entered into a written contractual agreement with a money services business to use cryptocurrency as payment. The bill is currently in the Business, Commerce and Tourism Senate Committee. S.B. 1667, 57th Leg., 2nd Reg. Sess. (Okla. 2020).

Daniel S. Friedberg
January 10, 2022
Page 20

cryptocurrency activity, such states have uniformly not required MTLs for cryptocurrency activity. FTX.US therefore does not presently require licensure. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

**(s)**     Rhode Island

Under Rhode Island law, "currency transmission" means:

> [E]ngaging in the business of any of the following: (i) Sale or issuance of payment instruments or stored value primarily for personal, family, or household purposes; or (ii) Receiving money or monetary value for transmission or holding funds incidental to transmission within the United States or to locations abroad by any and all means, including payment instrument, stored value, wire, facsimile, or electronic transfer, primarily for personal, family, or household purposes. This includes maintaining control of virtual currency or transactions in virtual currency on behalf of others.[46]

The checklist provided to the Nationwide Multistate Licensing System as well as an FAQ promulgated for new applicants for a license notes, "[A]ny entity that maintains control of virtual currency or facilitates transactions involving virtual currency on behalf of others is required to obtain the Rhode Island Currency Transmitter License."[47] However, Rhode Island's regulatory guidance also notes:

> R.I. Gen. Laws § 19-14-1(4) sets forth the several categories of business activities that fall into the definition of "currency transmission." Specific to "virtual currency," § 19-14-1(4)(ii) provides licensure is required for "maintaining control of virtual currency or transactions in virtual currency" "on behalf of others." If a business is participating as one party in a two-party transaction with its customer to buy and sell VC, it is not considered to be controlling a transaction on behalf of others. RI currency transmission licensure would NOT be required for a business that sells or buys VC in customer transactions in exchange for fiat consideration.

To account for this regulatory interpretation, FTX.US's historic operations leveraged Partner Financial Institutions that assumed the regulated conduct while concurrently expeditiously compiling a license application for Rhode Island. FTX.US has since submitted its license application to ensure compliance with applicable regulatory requirements.

---

[46] 19 R.I. Gen. Laws Ann. § 19-14-1(4).

[47]     Nationwide     Multistate     Licensing     System,     "RI     Currency     Transmitter," https://mortgage.nationwidelicensingsystem.org/slr/PublishedStateDocuments/RI_Curency_Transmitter-Company-New_App-Checklist.pdf.

FTX_000291877
SDNY_02_00416575

Daniel S. Friedberg
January 10, 2022
Page 21

**(t)**      South Carolina

Under South Carolina Law, "money transmission" means "selling or issuing payment instruments, stored value, or receiving money or monetary value for transmission. The term does not include the provision solely of delivery, online or telecommunications services, or network access."[48]

The Money Services Division of the South Carolina Attorney General's Office has issued guidance stating that the South Carolina Anti-Money Laundering Act "does not explicitly address activity involving virtual currency."[49] The Division further stated:

> [T]he Division finds that virtual currencies lack the characteristics of mediums of exchange. Therefore, it is the view of the Division that virtual currencies alone do not qualify as monetary value. However, to the extent that virtual currency transactions also involve the transfer of fiat currency, they may be subject to money transmission regulations under the Act.[50]

The Division subsequently issued an order determining:

> [T]he exchange of virtual currency for fiat currency through an ATM that acts as a third party exchanger that facilitates contemporaneous exchanges of virtual currency for fiat currency, such as where the operator of the ATM receives the buyer's fiat currency in exchange for a promise to make it available to the seller, is money transmission and requires a license under the Act...When an ATM does not act as a third party, and only facilitates a sale or purchase of virtual currency by the ATM operator directly with the customer, there is no money transmission because at no time is fiat currency received in exchange for a promise to make it available at a later time or different location, and therefore no license is required under the Act.[51]

South Carolina has demonstrated an express interest in acting as a regulatory incubator for fintech and crypto-specific businesses.[52] Nonetheless, given that FTX.US matches customer buy and sell orders on its Platform, it has applied for an MTL to ensure compliance with the current regulatory framework in South Carolina and as consistent with industry practice.

---

[48] S.C. Code Ann. § 35-11-105(12).

[49] Letter from Alan Wilson, Securities Commissioner, Re: Request for Interpretive Opinion Under South Carolina Anti-Money Laundering Act (Dec. 5, 2018), http://2hsvz0l74ah31vgcm16peuy12tz.wpengine.netdna-cdn.com/wp-content/uploads/2019/02/01845729.pdf.

[50] *Id.*

[51] South Carolina Office of the Attorney General, Money Services Division, Virtual Currency and Automated Machines, Order Number MSD-19003 (Sep. 6, 2019), http://2hsvz0l74ah31vgcm16peuy12tz.wpengine.netdna-cdn.com/wp-content/uploads/2019/10/Bitcoin-ATM-Order-02085245xD2C78.pdf.

[52] South Carolina is presently debating enacting the "South Carolina Blockchain Industry Empowerment Act of 2021" intended to develop the use of blockchain technology, which in relevant part provides that a person who develops, sells, or facilitates the exchange of an open blockchain token is not subject to specified securities and money transmission laws.

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Daniel S. Friedberg
January 10, 2022
Page 22

**(u)**     Tennessee

Under Tennessee law, "money transmission" means "the sale or issuance of payment instruments or engaging in the business of receiving money for transmission or transmitting money within the United States or to locations abroad by any and all means, including, but not limited to, payment instrument, wire, facsimile or electronic transfer."[53]

The Tennessee Department of Financial Institutions issued guidance in 2015 stating:

> The exchange of cryptocurrency for sovereign currency between two parties is not money transmission. This is essentially a sale of goods between two parties. The seller gives units of cryptocurrency to the buyer, who pays the seller directly with sovereign currency. The seller does not receive the sovereign currency in exchange for a promise to make it available at a later time or different location.[54]

Based on the above, FTX.US would not be subject to MTL requirements. Nonetheless, FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

**(v)**     Texas

Texas defines money transmission as "the receipt of money or monetary value by any means in exchange for a promise to make the money or monetary value available at a later time or different location."[55] The Texas Department of Banking issued 2019 guidance stating:

> Exchange of cryptocurrency for sovereign currency between two parties is not money transmission. This is essentially a sale of goods between two parties. The seller gives units of cryptocurrency to the buyer, who pays the seller directly with sovereign currency. The seller does not receive the sovereign currency in exchange for a promise to make it available at a later time or different location.[56]

Alternatively, the guidance holds that the exchange of cryptocurrency for sovereign currency through a third-party exchanger is generally money transmission.[57] The critical factor for the Department of Banking is whether the exchanger receives the buyer's sovereign currency in exchange for a promise to make it available to the seller of the cryptocurrency. However, a company with a business model

---

[53] Tenn. Code Ann. § 45-7-103(10).

[54] Tennessee Department of Financial Institutions, Memorandum Re: Regulatory Treatment of Virtual Currencies under the Tennessee Money Transmitter Act (Dec. 16, 2015), https://www.tn.gov/content/dam/tn/financialinstitutions/documents/2015-12-16_TDFI_Memo_on_Virtual_Currency.pdf.

[55] Tex. Fin. Code § 151.301(b)(4).

[56] Texas Department of Banking, Supervisory Memorandum 1037 Re: Regulatory Treatment of Virtual Currencies Under the Texas Money Services Act (April 1, 2019), https://www.dob.texas.gov/public/uploads/files/consumer-information/sm1037.pdf.

[57] *Id.*

FTX_000291879
SDNY_02_00416577

Daniel S. Friedberg
January 10, 2022
Page 23

substantially similar to FTX.US's represented to another state regulator that the company had received confirmation from Texas that it did not need a license.[58]

In the past year, the Texas Department of Banking has issued consent orders against two virtual currency businesses, and in each case the consent order was based on a finding that the respondent provided wallet services accepting fiat or virtual currency in exchange for a promise to distribute those funds at a later time or different location.[59]

To account for this regulatory interpretation, FTX.US's historic operations leveraged Partner Financial Institutions that assumed the regulated conduct while concurrently expeditiously compiling a license application for Texas. Based on anecdotal information, the use of a Partner Financial Institution is disfavored by Texas, and FTX.US has since compiled information necessary to submit a complete MTL application to Texas.

      **(w)**    Utah

Outside counsel for FTX.US contacted the Utah Department of Financial Institutions prior to beginning operations in the state and informed the agency about FTX.US' planned operations. The agency did not oppose FTX.US opening its business to residents.

In 2019, Utah's legislature passed cryptocurrency-specific amendments to the state's Money Transmitter Act ("**MTA**"). The MTA regulates financial institutions operating within the state of Utah. The amended language addressed the issue of whether cryptocurrency transactions are money transmissions and therefore under the MTA's statutory jurisdiction. According to the amendments, cryptocurrency transactions are not considered money transmissions. Therefore, virtual currency transactions are probably not subject to the MTA's statutory authority because the statutory definition of cryptocurrency is inconsistent with the statutory definition of "money transmission."
As noted above, there is clear regulatory guidance that exempts the Exchange, as discussed herein, from licensure obligations. Therefore, FTX.US operations do not presently require licensure. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

      **(x)**    Vermont

Under Vermont law, "money transmission" means "to engage in the business of selling or issuing payment instruments, selling or issuing prepaid access, or receiving money or monetary value for

---

[58] Letter from Arkansas Securities Department to CryptoFlip re: CryptoFlip 20-NA-0003 (Mar. 25, 2020), http://www.securities.arkansas.gov/!userfiles/CryptoFlip%2020-NA-0003.pdf.

[59] Texas Department of Banking, *In the Matter of Wyre Payments, Inc.*, Order No. 2020-051 (Dec. 2, 2020) ("Respondent provides retail customers services related to virtual currency, such as wallets to store virtual and fiat currency, which can be used to buy and sell virtual currencies from Respondent."); Texas Department of Banking, *In the Matter of Bitstamp LTD.*, Order No. 2020-050 (Nov. 17, 2020) ("Respondent operates an online virtual currency exchange whereby it offers users a stored value service for fiat currency in order to facilitate the purchase and sale of virtual currencies. Respondent provides users with an account whereby the user deposits and stores fiat currency to be used to purchase virtual currency or withdrawn at a later time.").

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Daniel S. Friedberg
January 10, 2022
Page 24

transmission to a location within or outside the United States."[60] The statute was amended in 2017 to define "prepaid access" to include virtual currency.[61] Several recent enforcement actions indicate Vermont's Department of Financial Regulation broadly construes the application of its money transmissions statute to exchange activity.[62] To account for this regulatory interpretation, FTX.US's historic operations leveraged Partner Financial Institutions that assumed the regulated conduct while concurrently expeditiously compiling a license application for Vermont. FTX.US has since submitted its MTL application to ensure compliance with applicable regulatory requirements.

   **(y)**   Virginia

Under Virginia law, "money transmission" means "receiving money or monetary value for transmission by wire, facsimile, electronic means or other means or selling or issuing stored value."[63] The Virginia Bureau of Financial Institutions issued a public notice stating that the Bureau "does not currently regulate virtual currencies; however, to the extent virtual currency transactions also involve the transfer of fiat currency…they may be regulated under Chapter 19 of Title 6.2 of the Code of Virginia (Money Order Sellers and Money Transmitters)."[64] The Virginia State Corporation Commission has not published any enforcement action involving virtual currency businesses transmitting money without a license.[65] As previously noted, where a state has not taken an affirmative position on the application of its money transmission laws to cryptocurrency activity, such states have uniformly not required MTLs for cryptocurrency activity. FTX.US therefore does not presently require licensure. However, we further note that FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

---

[60] 8 V.S.A. § 2500(9).

[61] 8 V.S.A. § 2500(12); H.B. 182, 2017 Gen. Assemb., Reg. Sess. (Vt. 2017).

[62] Vermont Department of Financial Regulation, *In re: Bitstamp, LTD.*, Docket No. 20-033-B (Nov. 13, 2020) (With limited factual description—the order concludes, "A Vermont money transmitter license is required to provide the virtual currency services Respondent provides to Vermont customers."); *In re: Uphold HQ, Inc.*, Docket No. 19-070-B (Jan. 21, 2020) ("Respondent operates a virtual currency exchange which serves as an online trading and settlement platform for virtual currency transactions. Respondent offers members the ability to store, move or exchange a variety of virtual currencies."); *In re: Poloniex, LLC*, Docket No. 19-006-B (May 22, 2019) ("Respondent operates the Poloniex Exchange, an online trading and settlement platform for virtual currency transactions. Respondent offers registered users of the Poloniex Exchange the option of creating an Exchange Account where Respondent will hold virtual currency for the registered user."); *In re: PYC, Inc.*, Docket No. 15-004-B (Mar. 11, 2015) (In a consent order predating the 2017 statutory amendments relating specifically to virtual currency, the Department held, "The business of 'money transmission' includes selling stored value, which includes selling bitcoin or other virtual currencies.").

[63] Va. Code Ann. § 6.2-1900.

[64] Virginia Bureau of Financial Institutions, Notice to Virginia Residents Regarding Virtual Currency, https://scc.virginia.gov/getattachment/1bb52b42-9a10-45a2-ba48-b352e48b6d2e/virtcur.pdf.

[65] Virginia State Corporation Commission, Docket Search, https://scc.virginia.gov/DocketSearch#.

Daniel S. Friedberg
January 10, 2022
Page 25

      **(z)**     Wisconsin

Outside counsel for FTX.US contacted the Wisconsin Department of Financial Institutions prior to beginning operations in the state and informed the agency about FTX.US' planned operations. The agency did not oppose FTX.US opening its business to residents.

Under Wisconsin's Seller of Checks law, "No person shall, as a service or for a fee or other consideration, engage in the business as a seller of checks without first securing a license from the division to do so."[66] A "seller of checks" means "a person who, as a service or for a fee or other consideration, engages in the business of selling and issuing checks or the receiving of money for transmission or the transmitting of money, or the transmitting of money to foreign countries."[67] The Wisconsin Department of Financial Institutions has stated:

> Chapter 217, the "Seller of Checks" law, does not currently give the Department the authority to regulate virtual currency. The division is therefore unable to license or supervise companies whose business activities are limited to those involving virtual currency. However, should the transmission of virtual currency include the involvement of sovereign currency, it may be subject to licensure depending on how the transaction is structured. The division would encourage companies to consult with their legal counsel to determine whether the business activities they plan to conduct meet those defined in Chapter 217 as requiring licensure. Please be advised, this position is given subject to subsequent changes required by any regulations or interpretations by the division under Chapter 217.[68]

Based on the above, FTX.US would not be subject to MTL requirements. Nonetheless, FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

      **(aa)**    Wyoming

Outside counsel for FTX.US contacted the Wyoming Division of Banking prior to beginning operations in the state and informed the agency about FTX.US' planned operations. The agency did not oppose FTX.US opening its business to residents.

Under Wyoming law, "money transmission" means "to engage in business to sell or issue payment instruments, stored value or receive money or monetary value for transmission to a location within or outside the United States by any and all means, including but not limited to wire, facsimile or electronic transfer."[69] However, the state's Money Transmitters Act provides an exemption for

---

[66] Wis. Stat. § 217.03.

[67] Wis. Stat. § 217.02(9).

[68] Wisconsin Department of Financial Institutions, Sellers of Checks, https://www.wdfi.org/fi/lfs/soc/.

[69] Wyo. Stat. § 40-22-102(xiii).

Daniel S. Friedberg
January 10, 2022
Page 26

"Buying, selling, issuing, or taking custody of payment instruments or stored value in the form of virtual currency or receiving virtual currency for transmission to a location within or outside the United States by any means."[70] Based on the above, FTX.US would not be subject to MTL requirements. Nonetheless, FTX.US has submitted an MTL application to account for changes in the regulatory treatment of the Platform and any future product launches that may require licensure.

---

[70] Wyo. Stat. Ann. § 40-22-104(a)(vi).

CONFIDENTIAL TREATMENT REQUESTED BY FTX

FTX_000291883
SDNY_02_00416581

# Attachment 6



**Fenwick & West LLP**
**801 California Street**
**Mountain View, CA 94041**
**Tel 650.988.8500**
**www.fenwick.com**

West Realm Shires Services Inc.
2000 Center Street
Suite 400
Berkeley, CA 94704

| | |
|---|---|
| Invoice Date: | August 24, 2021 |
| Client Number: | 38608 |
| Invoice Number: | 869276 |

Attn:   Dan Friedberg

**(Invoice Emailed)**

---

For professional services rendered through July 31, 2021.

| | |
|---|---|
| Fees: | $ 83,700.00 |
| Disbursements: | 6,453.01 |
| | ———————— |
| CURRENT AMOUNT DUE | $ 90,153.01 |

Confidential Treatment Requested by Armanino LLP

West Realm Shires Services Inc.          Invoice Date:        August 24, 2021
Client Number: 38608                     Invoice Number:                869276
                                         Billing Attorney:    Andrew Albertson

Page 11

General Corporate
Matter number 38608-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 07/07/21 | Andrea King-Lock Louie | MTL Project: communicate with client team regarding outstanding application items; correspond with I. Voloshin, K. Kirby, and K. Schuler regarding updates to application status; read and review client submitted materials. | 0.4 | 274.00 |
| 07/07/21 | Igor Voloshin | Miscellaneous corporate and regulatory advice. | 2.8 | 2,408.00 |
| 07/08/21 | Andrew Albertson | Attention to High-Vote Low Vote and financing and loan; confer regarding option plan amendments. | 1.3 | 1,319.50 |
| 07/08/21 | Whitney Anne Bishop | Review and respond to email communication regarding the WRS set up. | 0.2 | 81.00 |
| 07/09/21 | Can Sun | Call with Coachella; prepare pro forma cap tables. | 3.9 | 3,490.50 |
| 07/09/21 | Igor Voloshin | Compliance training for MSB matters. | 1.0 | 860.00 |
| 07/11/21 | Can Sun | Review and revise share transfer agreement; prepare updated cap table. | 1.4 | 1,253.00 |
| 07/12/21 | Whitney Anne Bishop | Correspondence regarding share transfer agreements. | 3.4 | 1,377.00 |
| 07/12/21 | Katherine Schuler | Emails re business plan, dbas and filing agent for MTLs; submit MU1 in NMLS; add user to NMLS. | 0.6 | 141.00 |
| 07/12/21 | Can Sun | Call with client; draft share transfer agreements. | 1.2 | 1,074.00 |
| 07/12/21 | Igor Voloshin | Miscellaneous regulatory advice. | 1.0 | 860.00 |

Confidential Treatment Requested by Armanino LLP

West Realm Shires Services Inc.   Invoice Date:   August 24, 2021
Client Number: 38608               Invoice Number:            869276
                                   Billing Attorney:   Andrew  Albertson

Page 12

General Corporate
Matter number 38608-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 07/13/21 | Whitney Anne Bishop | Review and respond to email communication from C. Papadopoulos regarding organizational chart; correspondence to C. Sun regarding WRSS capitalization table. | 0.8 | 324.00 |
| 07/13/21 | Andrea King-Lock Louie | Review and analyze Chartwell prepared materials and application status updates; attend meeting with Chartwell to discuss MTL project updates. | 0.9 | 616.50 |
| 07/13/21 | Sean  McElroy | Confer regarding tax reporting issues with D. Friedberg et al.; emails regarding ownership structure. | 0.7 | 570.50 |
| 07/13/21 | Katherine  Schuler | Emails re manually signed forms; add users to NMLS; Chartwell weekly call. | 0.9 | 211.50 |
| 07/13/21 | Jacob  Wittman | Call re WRS matters. | 0.5 | 375.00 |
| 07/14/21 | Andrea King-Lock Louie | MTL Project: communicate with I. Voloshin regarding status of applications; read and review email from Chartwell; review and analyze information from NMLS; correspond with client regarding application status in WA. | 0.4 | 274.00 |
| 07/14/21 | Sean  McElroy | Confer regarding tax reporting issues. | 0.3 | 244.50 |
| 07/14/21 | Igor  Voloshin | Money transmission related support. | 1.0 | 860.00 |

West Realm Shires Services Inc.                      Invoice Date:        August 24, 2021
Client Number: 38608                                Invoice Number:                 869276
                                                    Billing Attorney:    Andrew Albertson

Page 16

General Corporate
Matter number 38608-00600

| Name | Title | Hours | Rate | Amount |
|---|---|---|---|---|
| Andrew Albertson | Partner | 2.1 | 1015.00 | 2,131.50 |
| Kevin S. Kirby | Associate | 1.1 | 750.00 | 825.00 |
| Andrea King-Lock Louie | Associate | 7.8 | 685.00 | 5,343.00 |
| Sean McElroy | Associate | 1.4 | 815.00 | 1,141.00 |
| Can Sun | Associate | 22.1 | 895.00 | 19,779.50 |
| Igor Voloshin | Associate | 17.7 | 860.00 | 15,222.00 |
| Jacob Wittman | Associate | 0.5 | 750.00 | 375.00 |
| Whitney Anne Bishop | Paralegal | 5.9 | 405.00 | 2,389.50 |
| Katherine Schuler | Paralegal | 4.8 | 235.00 | 1,128.00 |
| Total | | 63.4 | | $ 48,334.50 |

## Disbursement Summary

| Date | Description | Total |
|---|---|---|
| 07/06/21 | Philadelphia indemnity insurance company. - VENDOR: Woodruff Sawyer | 500.00 |
| 07/20/21 | West Realm shires Inc. amendment to articles. - VENDOR: GKL Register Agents Inc./TIN 81-2236321 | 642.00 |
| 12/17/20 | Philadelphia indemnity insurance company fees - VENDOR: Woodruff Sawyer | 200.00 |
| 04/29/21 | Philadelphia indemnity insurance company fees - VENDOR: Woodruff Sawyer | 1,000.00 |
| 07/06/21 | Philadelphia indemnity insurance company fees. - VENDOR: Woodruff Sawyer | 500.00 |
| 07/06/21 | Philadelphia indemnity insurance company fees. - VENDOR: Woodruff Sawyer | 200.00 |
| 07/31/21 | Voice & Data Communications | 1,450.04 |
| | Total Disbursements | $ 4,492.04 |

# Attachment 7

Hi Dan:

You told us that Bitfinex or affiliate is considering listing its stablecoin ("***Tether Gold***") on FTX Trading Ltd. ("***FTX***"). You asked us to consider whether the transaction would result in Bitfinex engaging in a licensable activity, particularly whether money services business ("***MSB***") registration under the Bank Secrecy Act ("***BSA***") is required. As you know, the Financial Crimes Enforcement Network ("***FinCEN***") has not provided guidance on this exact issue, so our legal analysis follows. Please let me know if you want us to put this into a formal memo format.

There are two key questions to consider: (i) whether the underlying activity/transaction constitutes money transmission within the meaning of FinCEN; and if so (ii) whether the parties are MSBs by engaging in the underlying activity. Both conditions have to be present in the transaction to trigger MSB registration.

**Money Transmission**

BSA regulations define "money transmission" as "the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means." 31 C.F.R. § 1010.100(ff)(5)(i)(A) (emphasis in original). FinCEN has said that "convertible virtual currency" qualifies as "value that substitutes for currency." FIN-2013-G001. FinCEN has defined convertible virtual currency to include digital assets that have "an equivalent value in real currency or act[] as a substitute for real currency." *Id.*

Stablecoins fall under the definition of convertible virtual currency ("***CVC***"), thereby making Tether Gold subject to this regulatory regime. As I understand it, offering Tether Gold likely constitutes money transmission as Bitfinex is transmitting (e.g., converting) CVC for another substitute of value.

**Status as an MSB**

According to a 2012 FinCEN guidance, "[t]o qualify as an MSB, a person, wherever located, **must do business, wholly or in substantial part within the United States**, in one or more of the capacities listed in 31 CFR 1010.100(ff). Relevant factors include whether the foreign-located person, whether or not on a regular basis or as an organized or licensed business concern, **is providing services to customers located in the United States**." FIN-2012-A001 (emphasis added). As noted above, 31 C.F.R. § 1010.100(ff) includes money transmission.

In reviewing the available precedent and FinCEN guidance on this question, it is unlikely that FinCEN would take the position that this activity triggers MSB registration. FinCEN takes a facts and circumstances approach to the underlying transaction to determine if one or more of the parties to the transaction must register as MSBs.

Here, Bitfinex is incorporated and operated outside the US, and does not allow US based customers to trade on its platform. Likewise, FTX is incorporated and operated outside the US, and does not allow US persons to trade on its platform.

FTX is majority owned by Sam Bankman-Fried who we understand is not a resident of the US, but is a US citizen and US taxpayer. FTX is operated from abroad, and no FTX business activities are conducted within the US. We note that FTX does not accept US customers or offer services to the US. FTX also has no physical presence within the US.

On its face, FTX is not a customer "located" in the United States. Any fair reading of the 2012 FinCEN Guidance indicates that the customer's physical location controls for purposes of determining whether an entity is doing business in the United States. This is buttressed by the fact that the few cases where a foreign entity was subject to proceedings for failing to register as an MSB, that entity had a direct and substantial customer base physically located in the US. *See e.g., United States v. Budovsky*, No. 13CR368 DLC (S.D.N.Y. Sept. 23, 2015) (reviewing the application of the BSA to the Liberty Reserve offshore exchange).

However, we note of course that regulatory agencies have wide discretionary authority and often exceed their apparent regulatory authority, and are therefore unpredictable. We think it is very helpful if no FTX customers are US residents.

**Enforcement Risk**

As a practical matter, US agencies typically do not take enforcement action against offshore entities unless the underlying business activity sufficiently touches and concerns the US such that it would rebut the presumption against extraterritorial application of the US authority, would warrant the necessary resource allocation to pursue such an action, and requires such action due to the grave nature of the underlying conduct.

However, this of course is uncertain and most of these matters fall within the realm of regulatory discretion.

Thanks,

Igor

**IGOR VOLOSHIN**

Associate | Fenwick & West LLP |  ███████████  █ █
Admitted to practice only in Washington.

# Attachment 8



**Fenwick & West LLP**
**801 California Street**
**Mountain View, CA 94041**
**Tel  650.988.8500**
**www.fenwick.com**

Alameda Research LLC                          Invoice Date:              December 11, 2020
2000 Center Street, Suite 400
Berkeley,  CA  94704                          Client Number:                         34394

                                              Invoice Number:                       832742

Attn:    Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through November 30, 2020.

Fees:                                         $ 138,857.00

Disbursements:                                    32,770.72

                                              _____

CURRENT AMOUNT DUE                            $ 171,627.72

SBF_GOOGLE_SW_00137561

Alameda Research LLC
Client Number: 34394

Invoice Date:          December 11, 2020
Invoice Number:                   832742
Billing Attorney:     Andrew  Albertson

Page 21

_____

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|------------|-------------|-------|--------|
| 11/17/20 | Ryan J. Straus | Attention to public facing materials; review ancillary material in connection with same. | 0.5 | 440.00 |
| 11/17/20 | Igor  Voloshin | Draft Silvergate letter; miscellaneous compliance matters related to FTX.US. | 1.0 | 655.00 |
| 11/17/20 | Jacob  Wittman | Attend to corporate records. | 0.5 | 327.50 |
| 11/18/20 | Mark  Porter | Inquiry to Hawaii Department of Financing about licensure. | 0.1 | 85.00 |
| 11/18/20 | Ryan J. Straus | Attention to regulatory review relating to funds travel rule; ancillary regulatory review of same. | 2.5 | 2,200.00 |
| 11/19/20 | Sean  McElroy | Email client regarding IRS residency forms; review emails. | 0.2 | 148.00 |
| 11/20/20 | Andrew  Albertson | Attention to FTX.US redemption and IP issues. | 1.0 | 960.00 |
| 11/20/20 | David L. Forst | Discussion with D. Friedberg, A. Albertson, and S. McElroy regarding structuring. | 0.9 | 1,305.00 |
| 11/20/20 | Sean  McElroy | Confer with D. Friedberg et al. regarding tax issues; review crypto tax developments and update client. | 1.2 | 888.00 |
| 11/20/20 | Mark  Porter | Attention to Texas application. | 1.3 | 1,105.00 |
| 11/20/20 | Jacob  Wittman | Call with client regarding IP contribution matters. | 0.5 | 327.50 |
| 11/21/20 | Igor  Voloshin | Miscellaneous compliance and regulatory advice. | 1.8 | 1,179.00 |
| 11/22/20 | David L. Forst | Emails to and from D. Friedberg and S. McElroy regarding IP transfer. | 0.2 | 290.00 |

SBF_GOOGLE_SW_00137582

Alameda Research LLC
Client Number: 34394

Invoice Date:          December 11, 2020
Invoice Number:                   832742
Billing Attorney:      Andrew Albertson

Page 24

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
|      |           | Total Hours and Fees | 114.6 | $ 94,263.50 |

### Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Andrew Albertson | Partner | 17.6 | 960.00 | 16,896.00 |
| David L. Forst | Partner | 11.8 | 1450.00 | 17,110.00 |
| Mark Porter | Of Counsel | 6.8 | 850.00 | 5,780.00 |
| Ryan J. Straus | Of Counsel | 22.1 | 880.00 | 19,448.00 |
| Sean McElroy | Associate | 18.4 | 740.00 | 13,616.00 |
| Can Sun | Associate | 2.5 | 860.00 | 2,150.00 |
| Igor Voloshin | Associate | 10.7 | 655.00 | 7,008.50 |
| Jacob Wittman | Associate | 11.8 | 655.00 | 7,729.00 |
| Whitney Anne Bishop | Paralegal | 6.5 | 370.00 | 2,405.00 |
| Miriam dela Cruz-Rice | Paralegal | 1.4 | 440.00 | 616.00 |
| Catherine Howell | Paralegal | 2.0 | 340.00 | 680.00 |
| Francisco Rodriguez | Paralegal | 1.0 | 395.00 | 395.00 |
| Katherine Schuler | Paralegal | 2.0 | 215.00 | 430.00 |
| Total | | 114.6 | | $ 94,263.50 |

### Disbursement Summary

| Date | Description | Total |
|------|-------------|-------|
| 11/05/20 | Professional services rendered for October 2020. - VENDOR: Alan C. Shapiro, Inc. | 27,950.00 |
| 11/30/20 | Voice & Data Communications | 2,827.91 |
| | Total Disbursements | $ 30,777.91 |

SBF_GOOGLE_SW_00137585

# Attachment 9



|  | Silicon Valley Center |
|---|---|
|  | 801 California Street |
|  | Mountain View, CA 94041 |
|  | Tel 650.988.8500 |
|  | Fax 650.938.5200 |

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA 94704

| Invoice Date: | August 21, 2020 |
|---|---|
| Client Number: | 34394 |
| Invoice Number: | 817195 |

Attn:   Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through July 31, 2020.

| Fees: | $ 556,852.50 |
|---|---|
| Disbursements: | 27,033.58 |
| CURRENT AMOUNT DUE | $ 583,886.08 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date:      August 21, 2020
Invoice Number:      817195
Billing Attorney:    Andrew  Albertson

Page 8

Project B
Matter number 34394-00201

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| 07/01/20 | Andrew  Albertson | Attention to defensive diligence and open items in term sheet; confer regarding FTT and FTX disclosures. | 1.3 | 1,248.00 |
| 07/01/20 | Bomi  Lee | Attention to equity issuance and securities law issues. | 0.6 | 591.00 |
| 07/01/20 | Sean  McElroy | Research on Project Benchmark tax issues. | 0.7 | 518.00 |
| 07/01/20 | Jacob  Wittman | Attend to defensive diligence matters; review F-4. | 2.4 | 1,572.00 |
| 07/02/20 | Andrew  Albertson | Call with Dan F. regarding open term sheet points and offensive and defensive diligence, including holding company and nominees; confer regarding same; attention to open items. | 1.5 | 1,440.00 |
| 07/02/20 | Bomi  Lee | Attention to Benchmark term sheet; attention to drafting of definitive agreements. | 0.8 | 788.00 |
| 07/02/20 | Sean  McElroy | Research on Project Benchmark tax issues for D. Forst. | 1.2 | 888.00 |
| 07/02/20 | Jacob  Wittman | Attend to diligence matters; review MNDA; call with client. | 1.5 | 982.50 |
| 07/03/20 | Ammanuel Gebeyehu | Attend transaction discussion with B.Lee. | 0.9 | 652.50 |
| 07/03/20 | Bomi  Lee | Attention to drafting approach; call with deal team and attention to regulatory questions. | 0.8 | 788.00 |

FTX_000314084
SDNY_03_00208170

Alameda Research LLC
Client Number: 34394

Invoice Date:    August 21, 2020
Invoice Number:           817195
Billing Attorney:    Andrew Albertson

Page 35

---

Project B
Matter number 34394-00201

Timekeeper Summary

| **Name** | **Title** | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|
| Andrew Albertson | Partner | 59.8 | 960.00 | 57,408.00 |
| David L. Forst | Partner | 26.7 | 1450.00 | 38,715.00 |
| Bomi Lee | Partner | 55.5 | 985.00 | 54,667.50 |
| David K. Michaels | Partner | 0.4 | 1325.00 | 530.00 |
| Jonathan Millard | Partner | 16.5 | 1045.00 | 17,242.50 |
| Marshall Mort | Partner | 9.8 | 920.00 | 9,016.00 |
| Tyler G. Newby | Partner | 3.3 | 1015.00 | 3,349.50 |
| Julia Arruda | Associate | 9.4 | 835.00 | 7,849.00 |
| Ammanuel Gebeyehu | Associate | 86.8 | 725.00 | 62,930.00 |
| Carson A. Jackson | Associate | 24.4 | 590.00 | 14,396.00 |
| Mark A. Jansen | Associate | 0.4 | 860.00 | 344.00 |
| Victoria Lupu | Associate | 32.4 | 860.00 | 27,864.00 |
| Jason Malashevich | Associate | 2.5 | 590.00 | 1,475.00 |
| Sean McElroy | Associate | 29.6 | 740.00 | 21,904.00 |
| Corinne Nhaissi | Associate | 13.9 | 790.00 | 10,981.00 |
| Shajee T. Rizvi | Associate | 23.9 | 590.00 | 14,101.00 |
| Jonathan Stephenson | Associate | 8.7 | 485.00 | 4,219.50 |
| Can Sun | Associate | 18.1 | 860.00 | 15,566.00 |
| Jacob Wittman | Associate | 81.0 | 655.00 | 53,055.00 |
| Eric D. Bobila | Staff Attorney | 5.4 | 375.00 | 2,025.00 |
| Van Ly | Paralegal | 3.2 | 215.00 | 688.00 |
| Amber Wales | Paralegal | 11.8 | 260.00 | 3,068.00 |
| Gerald Delbarrio | Elec Info Mgmt | 0.5 | 395.00 | 197.50 |
| Jana Lay | Elec Info Mgmt | 0.6 | 450.00 | 270.00 |
| Bao Nguyen | Elec Info Mgmt | 0.6 | 450.00 | 270.00 |
| Total | | 525.2 | | $ 422,131.50 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC                                   Invoice Date:        August 21, 2020
Client Number: 34394                                   Invoice Number:              817195
                                                       Billing Attorney:    Andrew  Albertson

Page 37

---

Response to Regulatory Inquiries
Matter number 34394-00401

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 07/16/20 | Casey O'Neill | Research, pull and evaluate FTX terms of service per D. Friedberg request (.7); consider revisions to same (.4). | 1.1 | 935.00 |
| 07/31/20 | Casey O'Neill | Research and collect FTX terms of service for review per prior conversation with D. Friedberg. | 0.3 | 255.00 |
| | | Total Hours and Fees | 1.4 | $ 1,190.00 |

### Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Casey O'Neill | Of Counsel | 1.4 | 850.00 | 1,190.00 |
| Total | | 1.4 | | $ 1,190.00 |

### Disbursement Summary

| Date | Description | Total |
|------|-------------|-------|
| 07/31/20 | Voice & Data Communications | 35.70 |
| | Total Disbursements | $ 35.70 |

Alameda Research LLC
Client Number: 34394

Invoice Date:        August 21, 2020
Invoice Number:              817195
Billing Attorney:    Andrew  Albertson

Page 40

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 07/08/20 | Jacob  Wittman | Draft FTX Record Holder purchase agreement. | 1.0 | 655.00 |
| 07/09/20 | Andrew  Albertson | Review and prepare comments to and confer regarding FTT Option plans; prepare Registered Holder share transfer agreement and nominee and voting agreement; review existing FTT agreements regarding same. | 3.1 | 2,976.00 |
| 07/09/20 | Kathleen  Murray | Review as filed certificate of formation for Alameda Research LLC. | 0.2 | 43.00 |
| 07/09/20 | Jacob  Wittman | Draft nominee and voting agreement with respect to FTX Equity Record Holder Ltd. | 1.0 | 655.00 |
| 07/10/20 | Andrew  Albertson | Attention to FTT option plans and Reg S compliant equity incentive plans. | 0.6 | 576.00 |
| 07/10/20 | Igor  Voloshin | Assist foundation formation for Panama foundation. | 0.3 | 196.50 |
| 07/11/20 | Andrew  Albertson | Attention to FTT options and Reg S restrictions and compliance for Reg S plans. | 0.4 | 384.00 |
| 07/13/20 | Andrew  Albertson | Attention to cap table, Registered Holder, FTT Options, FTX Option Plan and diligence items. | 1.5 | 1,440.00 |
| 07/13/20 | Andrew  Albertson | Attention to Reg S Option plan research and terms for U.S. participants in combined plan. | 1.2 | 1,152.00 |

Alameda Research LLC
Client Number: 34394

Invoice Date:    August 21, 2020
Invoice Number:    817195
Billing Attorney:    Andrew Albertson

Page 45

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 07/30/20 | Andrew Albertson | Attention to ancillary transaction agreements and process for wallets and related; confer regarding open items and open issues in the primary agreements. | 1.7 | 1,632.00 |
| 07/31/20 | Igor Voloshin | Call with Silvergate; draft follow up email. | 1.0 | 655.00 |
| | | Total Hours and Fees | 72.3 | $ 71,142.00 |

### Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Andrew Albertson | Partner | 22.6 | 960.00 | 21,696.00 |
| David L. Forst | Partner | 19.6 | 1450.00 | 28,420.00 |
| Sean McElroy | Associate | 14.9 | 740.00 | 11,026.00 |
| Can Sun | Associate | 2.9 | 860.00 | 2,494.00 |
| Igor Voloshin | Associate | 5.1 | 655.00 | 3,340.50 |
| Jacob Wittman | Associate | 6.0 | 655.00 | 3,930.00 |
| Kathleen Murray | Paralegal | 0.7 | 215.00 | 150.50 |
| Kent Suegang | Case Assistant | 0.5 | 170.00 | 85.00 |
| Total | | 72.3 | | $ 71,142.00 |

# Attachment 10



**Fenwick & West LLP**
**801 California Street**
**Mountain View, CA 94041**
**Tel  650.988.8500**
**www.fenwick.com**

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA  94704

Invoice Date:            November 18, 2020

Client Number:                    34394

Invoice Number:                  828727

Attn:    Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through October 31, 2020.

Fees:                                $ 217,925.00

Disbursements:                        48,314.26
                                    _____

CURRENT AMOUNT DUE          $ 266,239.26

CONFIDENTIAL TREATMENT REQUESTED BY FTX

FTX_000314223
SDNY_03_00208309

Alameda Research LLC                              Invoice Date:        November 18, 2020
Client Number: 34394                              Invoice Number:                 828727
                                                  Billing Attorney:     Andrew Albertson

Page 32

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 10/27/20 | David L. Forst | Discussion with s. McElroy regarding various Subpart F / GILTI, mark-to-market, and related issues; review sales contracts and consider tax alternatives. | 2.6 | 3,770.00 |
| 10/27/20 | Catherine Howell | Attend meeting regarding state registration status. | 0.5 | 170.00 |
| 10/27/20 | Sean McElroy | Attend meeting with A. Albertson et al. on coordinating Alameda matters; confer with D. Forst regarding crypto tax issues; research on crypto tax issues; review sales agreements. | 1.9 | 1,406.00 |
| 10/27/20 | Katherine Schuler | FTX-MTL group check-in. | 0.4 | 86.00 |
| 10/27/20 | Jacob E. Simmons | Update purchase agreements and distribution list to reflect corrected token amounts; confer with C. Sun regarding same. | 0.3 | 51.00 |
| 10/27/20 | Ryan J. Straus | Attention to corporate reorganization; attention to ancillary matters relating to the same. | 2.2 | 1,936.00 |
| 10/27/20 | Can Sun | Call with client regarding genesis tokens. | 0.2 | 172.00 |
| 10/27/20 | Igor Voloshin | Draft response to Silvergate; miscellaneous corporate reorganization matters. | 1.2 | 786.00 |
| 10/28/20 | Andrew Albertson | Attention to option grants. | 0.3 | 288.00 |
| 10/28/20 | Catherine Howell | Attend meeting regarding status checks; revise summary regarding state requirements; confer with K. Schuler regarding same. | 1.1 | 374.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date:     November 18, 2020
Invoice Number:            828727
Billing Attorney:   Andrew  Albertson

Page 33

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 10/28/20 | Mark  Porter | Conference with K. Schuler and C. Howell regarding status of matters, logistics and timing; email to I. Voloshin. | 0.5 | 425.00 |
| 10/28/20 | Katherine  Schuler | FTX-MTL group check-in; emails regarding deadlines. | 0.8 | 172.00 |
| 10/28/20 | Jacob E. Simmons | Update purchase agreements and distribution list to reflect corrected token amounts; confer with C. Sun regarding same. | 0.4 | 68.00 |
| 10/28/20 | Can  Sun | Compile revised genesis token grant documents. | 0.2 | 172.00 |
| 10/28/20 | Igor  Voloshin | Draft Silvergate EDD responses; miscellaneous corporate reorganization matters. | 0.7 | 458.50 |
| 10/29/20 | Andrew  Albertson | Attention to options and process. | 0.4 | 384.00 |
| 10/29/20 | Catherine  Howell | Attend meeting regarding status checks; revise summary regarding state requirements; emails regarding outstanding items. | 1.2 | 408.00 |
| 10/29/20 | Sean  McElroy | Prepare for and attend phone meting with C. Eades and M. Southwick regarding tax return issues; research on choice of entity issues. | 0.7 | 518.00 |
| 10/29/20 | Ryan J. Straus | Attention to corporate reorganization and ancillary matters. | 0.5 | 440.00 |
| 10/29/20 | Can  Sun | Call with client; update MSRM and genesis distribution tracker. | 0.3 | 258.00 |
| 10/29/20 | Jacob  Wittman | Prepare redemption agreement; review tender rules. | 2.0 | 1,310.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date:       November 18, 2020
Invoice Number:              828727
Billing Attorney:     Andrew Albertson

Page 35

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| | | Total Hours and Fees | 171.4 | $ 133,919.00 |

Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Andrew Albertson | Partner | 8.4 | 960.00 | 8,064.00 |
| David L. Forst | Partner | 23.2 | 1450.00 | 33,640.00 |
| Mark Porter | Of Counsel | 14.1 | 850.00 | 11,985.00 |
| Ryan J. Straus | Of Counsel | 34.5 | 880.00 | 30,360.00 |
| Sean McElroy | Associate | 25.1 | 740.00 | 18,574.00 |
| Can Sun | Associate | 10.8 | 860.00 | 9,288.00 |
| Igor Voloshin | Associate | 8.6 | 655.00 | 5,633.00 |
| Jacob Wittman | Associate | 3.6 | 655.00 | 2,358.00 |
| Whitney Anne Bishop | Paralegal | 1.1 | 370.00 | 407.00 |
| Miriam dela Cruz-Rice | Paralegal | 0.7 | 440.00 | 308.00 |
| Catherine Howell | Paralegal | 27.2 | 340.00 | 9,248.00 |
| Liliya McKenzie | Paralegal | 5.6 | 400.00 | 2,240.00 |
| Katherine Schuler | Paralegal | 7.7 | 215.00 | 1,655.50 |
| Jacob E. Simmons | Case Assistant | 0.7 | 170.00 | 119.00 |
| Gerald Delbarrio | Elec Info Mgmt | 0.1 | 395.00 | 39.50 |
| Total | | 171.4 | | $ 133,919.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

# Attachment 11



**Fenwick & West LLP**
**801 California Street**
**Mountain View, CA 94041**
**Tel  650.988.8500**
**www.fenwick.com**

| | | |
|---|---|---|
| Alameda Research LLC | Invoice Date: | January 26, 2021 |
| 2000 Center Street, Suite 400 | | |
| Berkeley, CA 94704 | Client Number: | 34394 |
| | Invoice Number: | 836987 |

Attn:   Sam Bankman-Fried

**(Invoice Emailed)**

_____

For professional services rendered through December 31, 2020.

Fees:                                          $ 242,658.00

Disbursements:                                    25,297.22

                                               _____

CURRENT AMOUNT DUE                             $ 267,955.22

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date:     January 26, 2021
Invoice Number:            836987
Billing Attorney:   Andrew  Albertson

Page 22

---

Compliance and Risk Mitigation
Matter number 34394-00402

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 12/03/20 | Casey  O'Neill | Review draft document retention policy for FTX US and confer with A. Albertson and D. Friedberg re same (.8); evaluate corporate structure issues in re document retention (.3); research retention issues for ephemeral messaging and confer internally re same (.8). | 1.9 | 1,615.00 |
| 12/04/20 | Casey  O'Neill | Confer with D. Friedberg regarding records retention project (.5); prepare for call with same (.4); confer internally regarding staffing and work on matter and consider same (.4). | 1.3 | 1,105.00 |
| 12/15/20 | Casey  O'Neill | Gather templates for retention policies and confer re same. | 0.3 | 255.00 |
| 12/16/20 | James  Gregoire | Call with C. O'Neill to discuss retention policies; review draft policies; discuss the same with M. Loewenthal. | 0.7 | 574.00 |
| 12/16/20 | Casey  O'Neill | Collaborate on and draft document retention policies. | 2.7 | 2,295.00 |
| 12/17/20 | James  Gregoire | Call with K. Rincon to discuss retention policies; review templates; draft retention policy and schedule. | 3.3 | 2,706.00 |
| 12/17/20 | Casey  O'Neill | Collaborate regarding document retention policies. | 0.4 | 340.00 |
| 12/28/20 | Casey  O'Neill | Evaluate status of retention policy project. | 0.2 | 170.00 |
| | | Total Hours and Fees | 10.8 | $ 9,060.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date:                January 26, 2021
Invoice Number:                    836987
Billing Attorney:        Andrew  Albertson

Page 23

---

Compliance and Risk Mitigation
Matter number 34394-00402

### Timekeeper Summary

| **Name** | **Title** | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|
| Casey  O'Neill | Of Counsel | 6.8 | 850.00 | 5,780.00 |
| James  Gregoire | Privacy and Cybersecurity Director | 4.0 | 820.00 | 3,280.00 |
| Total | | 10.8 | | $ 9,060.00 |

### Disbursement Summary

| **Date** | **Description** | **Total** |
|---|---|---|
| 12/31/20 | Voice & Data Communications | 271.80 |
| | Total Disbursements | $ 271.80 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

# Attachment 12



**Fenwick & West LLP**
**801 California Street**
**Mountain View, CA 94041**
**Tel 650.988.8500**
**www.fenwick.com**

Alameda Research LLC                      Invoice Date:          March 31, 2021
2000 Center Street, Suite 400
Berkeley, CA 94704                        Client Number:                34394

                                         Invoice Number:              848639

Attn:    Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through February 28, 2021.

Fees:                          $ 303,734.00

Disbursements:                    26,298.33
                               _____

CURRENT AMOUNT DUE             $ 330,032.33

FOIA Confidential Treatment Requested

Alameda Research LLC
Client Number: 34394

Page 14

Invoice Date:  March 31, 2021
Invoice Number:  848639
Billing Attorney:  Andrew Albertson

---

Compliance and Risk Mitigation
Matter number 34394-00402

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 02/04/21 | Chad Richman | FTX US regulatory matters. | 0.3 | 225.00 |
| 02/07/21 | Casey O'Neill | Prepare for D. Friedberg call through review of prior draft retention policy and related comments (.5); participate in client call (.6). | 1.1 | 968.00 |
| | | Total Hours and Fees | 1.4 | $ 1,193.00 |

Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Casey O'Neill | Of Counsel | 1.1 | 880.00 | 968.00 |
| Chad Richman | Associate | 0.3 | 750.00 | 225.00 |
| Total | | 1.4 | | $ 1,193.00 |

Disbursement Summary

| Date | Description | Total |
|------|-------------|-------|
| 02/28/21 | Voice & Data Communications | 35.79 |
| | Total Disbursements | $ 35.79 |

FOIA Confidential Treatment Requested

PM-FTX-D_0029248
SDNY_03_00697069

# Attachment 13

Fenwick

**FENWICK & WEST LLP**

Silicon Valley Center
801 California Street
Mountain View, CA 94041
Tel 650.988.8500
Fax 650.938.5200

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA 94704

| | |
|---|---|
| Invoice Date: | March 31, 2020 |
| Client Number: | 34394 |
| Invoice Number: | 796256 |

Attn:   Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through February 29, 2020.

| | |
|---|---|
| Fees: | $ 215,879.50 |
| Disbursements: | 21,254.89 |
| CURRENT AMOUNT DUE | $ 237,134.39 |

Alameda Research LLC
Client Number: 34394

Invoice Date:  March 31, 2020
Invoice Number:  796256
Billing Attorney:  Andrew Albertson

Page 13

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 02/20/20 | Sean McElroy | Confer with C. Richman and J. Wittman regarding intercompany agreements; draft term sheet language for international acquisitions; review internal email memorandum by D. Forst; research on partnership tax issues. | 1.3 | 962.00 |
| 02/20/20 | Kathleen Murray | Attention to correspondence with GKL regarding West Realm Shires Services Inc. entity registration in all 47 states and fictitious name filings; review Bitcoin Manipulation closing volume, distribute same. | 0.5 | 107.50 |
| 02/20/20 | Chad Richman | Call regarding intercompany agreements; draft and revise FTX equity token documents. | 2.9 | 2,102.50 |
| 02/20/20 | Igor Voloshin | Advice to C. Richman on margin lending program. MTL Project: miscellaneous reorganization matters. | 1.0 | 655.00 |
| 02/20/20 | Jacob Wittman | Attend to Binance waivers; review waiver requirements; discuss intercompany agreements. | 3.1 | 2,030.50 |
| 02/21/20 | Andrew Albertson | Review comments to FTX offering documents; confer regarding same; prepare comments to same. | 1.4 | 1,344.00 |
| 02/21/20 | Sean McElroy | Review intercompany agreements. | 0.4 | 296.00 |
| 02/21/20 | Kathleen Murray | Attention to correspondence from registered agent regarding qualification filing. | 0.1 | 21.50 |
| 02/21/20 | Chad Richman | Draft ECP only US margin agreement; revisions to FTX equity documents. | 3.6 | 2,610.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date: March 31, 2020
Invoice Number: 796256
Billing Attorney: Andrew Albertson

Page 14

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 02/21/20 | Igor Voloshin | MTL Project: Fingerprinting and application overview to Fab. | 0.5 | 327.50 |
| 02/21/20 | Jacob Wittman | Attend to FTX terms. | 1.0 | 655.00 |
| 02/22/20 | Sean McElroy | Research on partnership issues; review intercompany agreements. | 0.8 | 592.00 |
| 02/23/20 | Andrew Albertson | Confer regarding global offering and current Reg D and Reg S compliance. | 0.4 | 384.00 |
| 02/23/20 | Sean McElroy | Research partnership contribution issues. | 0.9 | 666.00 |
| 02/23/20 | Jacob Wittman | Review online disclosures regarding equity financing. | 1.0 | 655.00 |
| 02/24/20 | Andrew Albertson | Review updated FTX sale documents; confer regarding arbitration provisions; confer regarding 506(c) verification representations and process; review and prepare comments to Reg D and Reg S global offering guidance email; confer regarding geo blocking and U.S. blocked pages; confer regarding wallet page and user flows; review SEC Internet Offering Release regarding fund exceptions and public and private offerings. | 2.1 | 2,016.00 |
| 02/24/20 | David L. Forst | Discussion with S. McElroy regarding transfer pricing and employee plan; review email from J. Bankman regarding the same; review 704(c) rules. | 2.3 | 3,335.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

| | |
|---|---|
| Alameda Research LLC | Invoice Date: March 31, 2020 |
| Client Number: 34394 | Invoice Number: 796256 |
| | Billing Attorney: Andrew Albertson |

Page 17

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|---|---|---|---|---|
| | | Total Hours and Fees | 200.5 | $ 171,268.00 |

### Timekeeper Summary

| **Name** | **Title** | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|
| Andrew Albertson | Partner | 17.5 | 960.00 | 16,800.00 |
| David L. Forst | Partner | 36.7 | 1450.00 | 53,215.00 |
| Sean McElroy | Associate | 43.5 | 740.00 | 32,190.00 |
| Chad Richman | Associate | 42.2 | 725.00 | 30,595.00 |
| Can Sun | Associate | 1.2 | 860.00 | 1,032.00 |
| Igor Voloshin | Associate | 22.3 | 655.00 | 14,606.50 |
| Jacob Wittman | Associate | 32.9 | 655.00 | 21,549.50 |
| Jennifer R. Wu | Associate | 0.7 | 485.00 | 339.50 |
| Kathleen Murray | Paralegal | 2.7 | 215.00 | 580.50 |
| Jana Lay | Elec Info Mgmt | 0.4 | 450.00 | 180.00 |
| Bao Nguyen | Elec Info Mgmt | 0.4 | 450.00 | 180.00 |
| Total | | 200.5 | | $ 171,268.00 |

### Disbursement Summary

| **Date** | **Description** | **Total** |
|---|---|---|
| 02/11/20 | 2020 Renewal Fees. - VENDOR: Sterling Trust & Fiduciary Limited | 982.50 |
| 02/13/20 | Professional Services: Change of Company Name; Company Share Transfer. - VENDOR: Sterling Trust & Fiduciary Limited | 900.00 |
| 02/24/20 | Extraction of Certificate of Good Standing, Courier Costs, Legal Fees. - VENDOR: Corporate & Trust Services (Caribbean) | 402.00 |
| 02/24/20 | Incorporation of five (5) companies. - VENDOR: Corporate & Trust Services (Caribbean) | 9,085.00 |
| 02/24/20 | Change of Director, Legal and Government Fees. - VENDOR: Corporate & Trust Services (Caribbean) | 550.00 |
| 02/24/20 | Incorporation of International Business Company, Fees. - VENDOR: Corporate & Trust Services (Caribbean) | 1,852.00 |
| 02/29/20 | Voice & Data Communications | 5,138.04 |

Total Disbursements   $ 18,909.54

CONFIDENTIAL TREATMENT REQUESTED BY FTX

FTX_000313985
SDNY_03_00208071

# Attachment 14

| | Silicon Valley Center |
|---|---|
| **Fenwick**<br>**FENWICK & WEST LLP** | 801 California Street<br>Mountain View, CA 94041<br>Tel 650.988.8500<br>Fax 650.938.5200 |

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA 94704

Invoice Date:               April 15, 2020

Client Number:                    34394

Invoice Number:                  798633

Attn:   Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through March 31, 2020.

Fees:                         $ 101,568.00

Disbursements:                  24,370.47
                          _____

CURRENT AMOUNT DUE              $ 125,938.47

FTX_000314001
SDNY_03_00208087

Alameda Research LLC                          Invoice Date:          April 15, 2020
Client Number: 34394                          Invoice Number:              798633
                                              Billing Attorney:   Andrew  Albertson

Page 13

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 03/27/20 | Kathleen  Murray | Prepare CA statement of information; attention to execution of same. | 0.5 | 107.50 |
| 03/27/20 | Jacob  Wittman | Attend to general financing matters; call with client. | 1.0 | 655.00 |
| 03/27/20 | Jennifer R. Wu | Team check in. | 0.2 | 97.00 |
| 03/29/20 | Sean  McElroy | Research on foreign acquisition; review notes and loan documents; research Subpart F issues. | 0.9 | 666.00 |
| 03/30/20 | David L. Forst | Review emails regarding MVR; discussion with Mr. McElroy regarding same and outstanding tax issues. | 1.9 | 2,755.00 |
| 03/30/20 | Sean  McElroy | Confer with D. Forst regarding tax issues; research on procedural questions for mark-to-market elections; research on structuring issues; review notes and prepare for call with D. Forst. | 3.2 | 2,368.00 |
| 03/30/20 | Chad  Richman | Review new CFTC guidance on actual delivery for FTX margin program. | 0.8 | 580.00 |
| 03/31/20 | David L. Forst | Discussion with Mr. McElroy regarding MVR; emails regarding same; review email from Mr. Miyatake. | 0.6 | 870.00 |
| 03/31/20 | Sean  McElroy | Review intercompanies; call with D. Forst regarding tax issues; call with R. Williams and J. Wittman regarding tax issues with financing; draft loan agreement. | 1.2 | 888.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date: April 15, 2020
Invoice Number: 798633
Billing Attorney: Andrew Albertson

Page 14

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 03/31/20 | Chad Richman | Review new CFTC guidance on actual delivery for FTX margin program. | 0.4 | 290.00 |
| | | Total Hours and Fees | 87.2 | $ 84,831.00 |

Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Andrew Albertson | Partner | 6.5 | 960.00 | 6,240.00 |
| David L. Forst | Partner | 29.4 | 1450.00 | 42,630.00 |
| Sean McElroy | Associate | 38.9 | 740.00 | 28,786.00 |
| Chad Richman | Associate | 1.9 | 725.00 | 1,377.50 |
| Igor Voloshin | Associate | 5.4 | 655.00 | 3,537.00 |
| Jacob Wittman | Associate | 2.4 | 655.00 | 1,572.00 |
| Jennifer R. Wu | Associate | 0.4 | 485.00 | 194.00 |
| Kathleen Murray | Paralegal | 2.3 | 215.00 | 494.50 |
| Total | | 87.2 | | $ 84,831.00 |

Disbursement Summary

| Date | Description | Total |
|------|-------------|-------|
| 03/02/20 | West Realm Shires Services Inc qualifications. - VENDOR: GKL Register Agents Inc. / TIN 81-223632 | 20,824.42 |
| 03/16/20 | Obtain Certificate of Good Standing from Delaware. - VENDOR: GKL Register Agents Inc./TIN 81-2236321 | 112.00 |
| 03/16/20 | Obtain Certificate of Good Standing from Delaware. - Vendor: GKL Register Agents Inc./TIN 81-2236321 | 112.00 |
| 03/31/20 | Voice & Data Communications | 2,544.93 |
| | Total Disbursements | $ 23,593.35 |

# Attachment 15

Fenwick
**FENWICK & WEST LLP**

Silicon Valley Center
801 California Street
Mountain View, CA 94041
Tel  650.988.8500
Fax  650.938.5200

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA  94704

| | |
|---|---|
| Invoice Date: | May 31, 2019 |
| Client Number: | 34394 |
| Invoice Number: | 755670 |

Attn:   Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through April 30, 2019.

Fees:                                          $ 107,844.50

Disbursements:                                      3,235.34

CURRENT AMOUNT DUE                    $ 111,079.84

FOIA Confidential Treatment Requested

Alameda Research LLC
Client Number: 34394

Page 4

Invoice Date:           May 31, 2019
Invoice Number:              755670
Billing Attorney:     Daniel Friedberg

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|------------|-------------|-------|--------|
| 04/01/19 | Daniel Friedberg | Conference with Antigua counsel; review issues regarding futures exchange. | 1.4 | 1,001.00 |
| 04/01/19 | Chad Richman | Call with Antigua counsel regarding exchange entity; review exchange and leveraged token models and websites, review FTX deck, plan structuring for exchange and leveraged tokens. | 3.4 | 1,683.00 |
| 04/01/19 | Igor Voloshin | Call with Antigua law firm; discuss workflow with D. Friedberg and C. Richman; confer with C. Richman on user agreement/liquidity provider agreement; identify precedent for leveraged token agreement; and review FX site for compliance flags. Begin drafting AML checklist for stablecoin specific transaction flags. | 2.1 | 1,039.50 |
| 04/02/19 | Isaiah Deporto-Plick | Discussion with C. Richman regarding outstanding corporate matters for Alameda. | 0.3 | 148.50 |
| 04/02/19 | Daniel Friedberg | Review futures exchange issues. | 1.8 | 1,287.00 |
| 04/02/19 | Chad Richman | Develop structure for exchange and leverage tokens;  research entity for leverage tokens. | 1.0 | 495.00 |
| 04/02/19 | Igor Voloshin | Discuss leveraged token structure with C. Richman; being drafting privacy policy. | 1.0 | 495.00 |
| 04/03/19 | Andrew Albertson | Confer regarding security token design and approach. | 0.4 | 310.00 |

PM-FTX-D_0026605
SDNY_03_00694426

Alameda Research LLC
Client Number: 34394

Invoice Date: May 31, 2019
Invoice Number: 755670
Billing Attorney: Daniel Friedberg

Page 6

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 04/08/19 | Chad Richman | Call with Seychelles counsel regarding entity choice for leveraged tokens; call with Allen Overy regarding global regulatory survey; revisions to FTX slide deck; emails with J.Bankman regarding slide deck and revisions for his comments; further drafting of exchange agreements. | 5.3 | 2,623.50 |
| 04/09/19 | David L. Forst | Discussion with Mr. Richman and Mr. Hatch regarding various tax issues; review email regarding same. | 1.1 | 1,457.50 |
| 04/09/19 | Daniel Friedberg | Review financing proposals; attention to corporate issues. | 1.5 | 1,072.50 |
| 04/09/19 | Kristofer Hatch | Review tax issues flagged for call; Call with Mr. Forst and Mr. Richman regarding same. | 1.4 | 756.00 |
| 04/09/19 | Chad Richman | Revise FTX deck; call with D.Forst regarding FTX tax issues, emails with W.Skinner, Bob Lee, J.Bankman regarding FTX tax issues; revisions to exchange documents. | 2.9 | 1,435.50 |
| 04/09/19 | William Skinner | Call with Bob Lee CPA regarding C Corporation election and pros and cons. | 0.4 | 390.00 |
| 04/09/19 | Igor Voloshin | Discuss token raise structure with C. Richman; continue drafting terms of use. | 1.2 | 594.00 |
| 04/10/19 | Isaiah Deporto-Plick | Email communication with C. Richman regarding outstanding matters for Alameda. | 0.1 | 49.50 |

PM-FTX-D_0026607
SDNY_03_00694428

Alameda Research LLC
Client Number: 34394

Page 7

| | Invoice Date: | May 31, 2019 |
| --- | --- | --- |
| | Invoice Number: | 755670 |
| | Billing Attorney: | Daniel Friedberg |

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
| --- | --- | --- | --- | --- |
| 04/10/19 | David L. Forst | Emails and review authorities regarding prep of 2018 tax returns; conference call regarding same. | 1.4 | 1,855.00 |
| 04/10/19 | Chad Richman | Call with Bob Lee regarding Alameda tax issues; email with team to coordinate for exchange launch and leveraged token creation; call with M.Porter regarding leveraged tokens, call with S.Zhang regarding leveraged tokens; draft collateral agreement for exchange. | 7.2 | 3,564.00 |
| 04/10/19 | Igor Voloshin | Draft terms of use for FTX Exchange. | 2.1 | 1,039.50 |
| 04/11/19 | Andrew Albertson | Confer regarding security token design and related matters. | 0.6 | 465.00 |
| 04/11/19 | Isaiah Deporto-Plick | Begin drafting workstream checklist; attention to corporate matters. | 0.4 | 198.00 |
| 04/11/19 | Kristofer Hatch | Research tax issues regarding leveraged tokens project. | 0.8 | 432.00 |
| 04/11/19 | Chad Richman | Emails with S. and J. Bankman regarding FTT. Call with S.Bankman regarding FTT STO; review FTT terms; call with A.Albertson regarding FTT structuring considerations, develop structure for FTT token offering. | 6.8 | 3,366.00 |
| 04/11/19 | Igor Voloshin | Edits to terms of use. | 0.5 | 247.50 |
| 04/12/19 | Andrew Albertson | Review and prepare comments to term sheet; confer regarding structuring and related matters. | 2.2 | 1,705.00 |
| 04/12/19 | Kristofer Hatch | Research tax issues regarding leveraged tokens project. | 2.4 | 1,296.00 |

PM-FTX-D_0026608
SDNY_03_00694429

Alameda Research LLC
Client Number: 34394

Invoice Date:        May 31, 2019
Invoice Number:           755670
Billing Attorney:   Daniel Friedberg

Page 8

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 04/12/19 | Chad Richman | Draft FTT token issuance term sheet and allocation request; emails with S.Bankman regarding same; discussions and emails with A.Albertson, I.Voloshin regarding same; draft FTT token issuance documents. | 8.4 | 4,158.00 |
| 04/12/19 | Igor Voloshin | Continue drafting terms of use/service and privacy policy. | 2.2 | 1,089.00 |
| 04/13/19 | Chad Richman | Draft FTT token issuance documents including TSA and Token agreement; call with S.Bankman regarding token terms. | 3.1 | 1,534.50 |
| 04/14/19 | Daniel Friedberg | Analyze offering issues. | 1.0 | 715.00 |
| 04/14/19 | Chad Richman | Draft FTT token issuance documents. | 1.4 | 693.00 |
| 04/15/19 | Andrew Albertson | Review and prepare comments to transaction agreements; confer regarding same. | 2.8 | 2,170.00 |
| 04/15/19 | Isaiah Deporto-Plick | Finalize checklist for Alameda corporate matters and projects. | 0.8 | 396.00 |
| 04/15/19 | David L. Forst | Review and consider business structuring alternatives; discussions with Mr. Bankman and Mr. Hatch regarding same; emails regarding same. | 2.3 | 3,047.50 |
| 04/15/19 | Daniel Friedberg | Attention to token sale; conference. | 1.4 | 1,001.00 |
| 04/15/19 | Kristofer Hatch | Research tax issues regarding royalty token project. | 1.6 | 864.00 |
| 04/15/19 | Chad Richman | Call with S.Bankman regarding Bithumb deal; revisions to TSA and Token Agreement. | 0.9 | 445.50 |

PM-FTX-D_0026609
SDNY_03_00694430

Alameda Research LLC
Client Number: 34394

Invoice Date:             May 31, 2019
Invoice Number:               755670
Billing Attorney:      Daniel Friedberg

Page 14

---

General Corporate
Matter number 34394-00600

### Timekeeper Summary

| **Name** | **Title** | **Hours** | **Rate** | **Amount** |
|----------|-----------|-----------|----------|------------|
| Andrew  Albertson | Partner | 6.0 | 775.00 | 4,650.00 |
| David L. Forst | Partner | 7.5 | 1325.00 | 9,937.50 |
| William  Skinner | Partner | 0.4 | 975.00 | 390.00 |
| Daniel  Friedberg | Of Counsel | 34.6 | 715.00 | 24,739.00 |
| Casey  O'Neill | Of Counsel | 9.2 | 730.00 | 6,716.00 |
| Isaiah  Deporto-Plick | Associate | 1.6 | 495.00 | 792.00 |
| Kristofer  Hatch | Associate | 13.7 | 540.00 | 7,398.00 |
| Chad  Richman | Associate | 87.0 | 495.00 | 43,065.00 |
| Igor  Voloshin | Associate | 17.0 | 495.00 | 8,415.00 |
| Total | | 177.0 | | $ 106,102.50 |

### Disbursement Summary

| **Date** | **Description** | **Total** |
|----------|-----------------|-----------|
| 04/30/19 | Voice & Data Communications | 3,183.08 |
| | Total Disbursements | $ 3,183.08 |

FOIA Confidential Treatment Requested

PM-FTX-D_0026615
SDNY_03_00694436

# Attachment 16

| | |
|---|---|
| **FENWICK & WEST LLP** | Silicon Valley Center<br>801 California Street<br>Mountain View, CA 94041<br>Tel  650.988.8500<br>Fax  650.938.5200 |

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA 94704

Invoice Date:                January 22, 2019

Client Number:                          34394

Invoice Number:                       737203

Attn:    Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through December 31, 2018.

Fees:                                      $ 27,604.00

Disbursements:                              828.12
                                    _____

CURRENT AMOUNT DUE                    $ 28,432.12

SBF_GOOGLE_SW_00199432

Alameda Research LLC  
Client Number: 34394

Invoice Date:     January 22, 2019  
Invoice Number:          737203  
Billing Attorney:   Daniel Friedberg

Page 6

---

General Corporate  
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 12/26/18 | Chad Richman | Draft cryptocurrency exchange master agreement. | 3.5 | 1,627.50 |
| 12/27/18 | Chad Richman | Draft cryptocurrency exchange master agreement. | 2.8 | 1,302.00 |
| 12/28/18 | Daniel Friedberg | Draft LOI; attend to corporate matters. | 1.4 | 973.00 |
| 12/28/18 | Chad Richman | Draft letter of intent for OTC trade; draft OTC trading master agreement. | 3.9 | 1,813.50 |
| | | Total Hours and Fees | 39.5 | $ 25,033.00 |

### Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| David L. Forst | Partner | 4.7 | 1200.00 | 5,640.00 |
| Daniel Friedberg | Of Counsel | 13.5 | 695.00 | 9,382.50 |
| Michael Knobler | Associate | 0.6 | 750.00 | 450.00 |
| Chad Richman | Associate | 18.6 | 465.00 | 8,649.00 |
| Igor Voloshin | Associate | 1.9 | 465.00 | 883.50 |
| Kathleen Murray | Paralegal | 0.2 | 140.00 | 28.00 |
| Total | | 39.5 | | $ 25,033.00 |

### Disbursement Summary

| Date | Description | Total |
|------|-------------|-------|
| 12/31/18 | Voice & Data Communications | 750.99 |
| | Total Disbursements | $ 750.99 |

SBF_GOOGLE_SW_00199438

# Attachment 17



Silicon Valley Center
801 California Street
Mountain View, CA 94041
Tel  650.988.8500
Fax  650.938.5200

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley,  CA  94704

Invoice Date:              June 30, 2019

Client Number:                    34394

Invoice Number:                  759331

Attn:    Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through May 31, 2019.

Fees:                              $ 164,399.50

Disbursements:                        16,155.32

CURRENT AMOUNT DUE              $ 180,554.82

PM-FTX-D_0026617
SDNY_03_00694438

Alameda Research LLC                                    Invoice Date:           June 30, 2019
Client Number: 34394                                   Invoice Number:             759331
                                                       Billing Attorney:    Daniel Friedberg

Page 18

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 05/17/19 | Lise Berichel | Pursue drafting of software license agreement to be entered into between Alameda Research Ltd. and FTX Trading Ltd; forward draft to D. Friedberg for review. | 1.7 | 1,122.00 |
| 05/17/19 | Casey O'Neill | Collaborate internally regarding and supervise ongoing document collection and review work. | 0.5 | 365.00 |
| 05/17/19 | Chad Richman | Discuss open items on FTX formation with D.Friedberg; provide guidance on entity formation for I.Voloshin. | 0.6 | 297.00 |
| 05/17/19 | Igor Voloshin | Seychelles entity formation. | 1.0 | 495.00 |
| 05/19/19 | Igor Voloshin | Seychelles entity formation. | 1.8 | 891.00 |
| 05/20/19 | Daniel Friedberg | Review corporate issues; conferences. | 2.3 | 1,644.50 |
| 05/20/19 | Kristofer Hatch | Research regarding joint venture. | 1.5 | 810.00 |
| 05/20/19 | Casey O'Neill | Review and edit document review protocol memo (1.3); manage team with respect to the same (.2). | 1.5 | 1,095.00 |
| 05/20/19 | Igor Voloshin | Seychelles entity formation. | 0.4 | 198.00 |
| 05/21/19 | Daniel Friedberg | Address corporate issues. | 0.9 | 643.50 |
| 05/22/19 | Daniel Friedberg | Draft prospectus. | 3.0 | 2,145.00 |
| 05/22/19 | Casey O'Neill | Draft, revise and circulate subpoena response tracking sheet (1.6); analyze next steps in subpoena response (.9). | 2.5 | 1,825.00 |
| 05/22/19 | Chad Richman | Review revised bithumb proposal. | 0.3 | 165.00 |
| 05/23/19 | Daniel Friedberg | Revisions to documents. | 2.0 | 1,430.00 |

PM-FTX-D_0026635
SDNY_03_00694456

Alameda Research LLC
Client Number: 34394

Invoice Date:   June 30, 2019
Invoice Number:   759331
Billing Attorney:   Daniel Friedberg

Page 19

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 05/23/19 | Casey O'Neill | Supervise ongoing document review and consider strategy for the same (.8); consider and communicate with client and team about further document collections for subpoena response (.9). | 1.7 | 1,241.00 |
| 05/24/19 | Daniel Friedberg | Draft user agreements. | 1.8 | 1,287.00 |
| 05/24/19 | Chad Richman | Review leverage token prospectus. | 0.1 | 55.00 |
| 05/26/19 | Daniel Friedberg | Revisions to documents. | 1.3 | 929.50 |
| 05/28/19 | Daniel Friedberg | Attention to formation issues; contract review. | 2.2 | 1,573.00 |
| 05/28/19 | Casey O'Neill | Review and analyze arguments made in Bitfinex and Tether brief concerning lack of NYAG jurisdiction (1.8); re-review production of onboarding documents already made for alignment with Bitfinex and Tether arguments in briefing and public terms of service (1.2); supervise team document review and assess status of same (.3); consider and collaborate internally regarding strategy for further production or response to NYAG (.6). | 3.9 | 2,847.00 |
| 05/28/19 | Chad Richman | Review and comment on draft of leverage token ppm. | 1.2 | 660.00 |
| 05/28/19 | Igor Voloshin | Review PCC regulatory issues provided by Seychelles counterparty; begin drafting application. | 0.3 | 148.50 |
| 05/29/19 | Chad Richman | Discuss leverage token ppm with D.Friedberg; review PPM. | 0.3 | 165.00 |
| 05/29/19 | Igor Voloshin | Draft Certificate of Incumbency. | 0.3 | 148.50 |

PM-FTX-D_0026636
SDNY_03_00694457

Alameda Research LLC
Client Number: 34394

Invoice Date:      June 30, 2019
Invoice Number:      759331
Billing Attorney:      Daniel Friedberg

Page 20

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 05/30/19 | Daniel Friedberg | Revisions to documents. | 3.0 | 2,145.00 |
| 05/30/19 | Chad Richman | Review and revise Leverage Token PPM. | 0.9 | 495.00 |
| 05/30/19 | Igor Voloshin | Draft Corporate documents. | 0.4 | 198.00 |
| 05/31/19 | David L. Forst | Discussion with Mr. Bankman et al., regarding tax structuring issues; review emails regarding same. | 1.6 | 2,120.00 |
| 05/31/19 | Daniel Friedberg | Draft documents; conference. | 4.0 | 2,860.00 |
| | | Total Hours and Fees | 99.7 | $ 68,071.50 |

### Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Andrew Albertson | Partner | 1.2 | 775.00 | 930.00 |
| David L. Forst | Partner | 6.7 | 1325.00 | 8,877.50 |
| Daniel Friedberg | Of Counsel | 36.2 | 715.00 | 25,883.00 |
| Casey O'Neill | Of Counsel | 13.4 | 730.00 | 9,782.00 |
| Lise Berichel | Associate | 4.7 | 660.00 | 3,102.00 |
| Kristofer Hatch | Associate | 18.9 | 540.00 | 10,206.00 |
| Chad Richman | Associate | 11.2 | 508.75 | 5,698.00 |
| Igor Voloshin | Associate | 7.2 | 495.00 | 3,564.00 |
| Kathleen Murray | Paralegal | 0.2 | 145.00 | 29.00 |
| Total | | 99.7 | | $ 68,071.50 |

PM-FTX-D_0026637
SDNY_03_00694458

# Attachment 18

| | Silicon Valley Center |
|---|---|
| **FENWICK & WEST LLP** | 801 California Street<br>Mountain View, CA 94041<br>Tel 650.988.8500<br>Fax 650.938.5200 |

Alameda Research LLC  
2000 Center Street, Suite 400  
Berkeley, CA 94704  

Invoice Date:  August 28, 2019  

Client Number:  34394  

Invoice Number:  766457  

Attn:   Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through July 31, 2019.

Fees:                                        $ 71,225.00

Disbursements:                              2,636.76
                                        _____

CURRENT AMOUNT DUE                          $ 73,861.76

SBF_GOOGLE_SW_00180328

Alameda Research LLC
Client Number: 34394

Invoice Date:      August 28, 2019
Invoice Number:      766457
Billing Attorney:    Daniel Friedberg

Page 8

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 07/26/19 | Chad Richman | Draft intercompany agreements between FTX/Alameda/Cottonwood; draft revised FTT sale documents. | 4.5 | 2,475.00 |
| 07/28/19 | Daniel Friedberg | Attention to regulatory issues. | 0.4 | 286.00 |
| 07/29/19 | Daniel Friedberg | Attend to documents; correspondence with outside counsel; attend to corporate matters. | 4.0 | 2,860.00 |
| 07/29/19 | Chad Richman | Discuss outstanding items for FTT/FTX with D.Friedberg; investigate securities law issues related to FTT listing and roll out. | 0.9 | 495.00 |
| 07/31/19 | Daniel Friedberg | Draft FTX customer agreement. | 4.0 | 2,860.00 |
| | | Total Hours and Fees | 90.7 | $ 66,090.50 |

### Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| David L. Forst | Partner | 10.4 | 1325.00 | 13,780.00 |
| Daniel Friedberg | Of Counsel | 50.2 | 715.00 | 35,893.00 |
| Chad Richman | Associate | 27.6 | 550.00 | 15,180.00 |
| Igor Voloshin | Associate | 2.5 | 495.00 | 1,237.50 |
| Total | | 90.7 | | $ 66,090.50 |

### Disbursement Summary

| Date | Description | Total |
|------|-------------|-------|
| 07/31/19 | Voice & Data Communications | 1,982.72 |
| | Total Disbursements | $ 1,982.72 |

SBF_GOOGLE_SW_00180336

# Attachment 19



**Fenwick & West LLP**
**801 California Street**
**Mountain View, CA 94041**
**Tel  650.988.8500**
**www.fenwick.com**

West Realm Shires Services Inc.
2000 Center Street
Suite 400
Berkeley,  CA  94704

| | |
|---|---|
| Invoice Date: | January 27, 2022 |
| Client Number: | 38608 |
| Invoice Number: | 893087 |

Attn:   Dan Friedberg

**(Invoice Emailed)**

---

For professional services rendered through December 31, 2021.

| | |
|---|---|
| Fees: | $ 67,252.00 |
| Disbursements: | 2,648.03 |
| | _____ |
| CURRENT AMOUNT DUE | $ 69,900.03 |

Armanino-FTX-003920
SDNY_03_00056230

West Realm Shires Services Inc.
Client Number: 38608

Invoice Date:           January 27, 2022
Invoice Number:               893087
Billing Attorney:       Andrew  Albertson

Page 10

---

General Corporate
Matter number 38608-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 12/01/21 | Igor  Voloshin | Prepare AML memo/analysis. | 1.5 | 1,290.00 |
| 12/02/21 | Whitney Anne Bishop | Correspondence to M. Mort regarding option exercises. | 3.4 | 1,377.00 |
| 12/03/21 | Igor  Voloshin | Prepare email overview of MT reporting; updates to legal analysis on BSA compliance. | 1.0 | 860.00 |
| 12/06/21 | Sean  McElroy | Attend virtual meeting with FTX.US regarding tax matters. | 0.5 | 407.50 |
| 12/06/21 | Igor  Voloshin | Miscellaneous regulatory advice. | 2.3 | 1,978.00 |
| 12/07/21 | Sean  McElroy | Draft intercompany services agreement. | 0.3 | 244.50 |
| 12/08/21 | Whitney Anne Bishop | Review of option records. | 0.9 | 364.50 |
| 12/15/21 | Sean  McElroy | Review potential acquisition transaction; attend phone conference with S. Bankman-Fried et al. regarding potential acquisition. | 0.4 | 326.00 |
| 12/15/21 | Igor  Voloshin | Confer with regulators on no-names basis on ADTL filings. | 1.0 | 860.00 |
| 12/16/21 | Whitney Anne Bishop | Correspondence with T. Levine regarding WRS Financial Services; update capitalization table. | 2.5 | 1,012.50 |
| 12/17/21 | Whitney Anne Bishop | Continue reconciliation of cap table. | 1.1 | 445.50 |

West Realm Shires Services Inc.  
Client Number: 38608

Invoice Date:  January 27, 2022  
Invoice Number:  893087  
Billing Attorney:  Andrew Albertson

Page 12

---

General Corporate  
Matter number 38608-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 12/28/21 | Igor Voloshin | Confer with Minn. Dept of Commerce; discuss with WRSS. | 2.7 | 2,322.00 |
| 12/29/21 | Hector Velez | Review and revise capitalization table. | 1.0 | 685.00 |
| 12/29/21 | Igor Voloshin | Prepare response to Minn. Dept of Commerce. | 2.0 | 1,720.00 |
| 12/30/21 | Sean McElroy | Attend to tax matters relating to Storybook acquisition. | 0.3 | 244.50 |
| 12/30/21 | Hector Velez | Review and revise capitalization table; provide tables to client. | 0.5 | 342.50 |
| | | Total Hours and Fees | 36.6 | $ 26,573.50 |

Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Sean McElroy | Associate | 8.0 | 815.00 | 6,520.00 |
| Hector Velez | Associate | 2.9 | 685.00 | 1,986.50 |
| Igor Voloshin | Associate | 16.7 | 860.00 | 14,362.00 |
| Whitney Anne Bishop | Paralegal | 8.2 | 405.00 | 3,321.00 |
| Anita Marie Crowther | Paralegal | 0.8 | 480.00 | 384.00 |
| Total | | 36.6 | | $ 26,573.50 |

Disbursement Summary

| Date | Description | Total |
|------|-------------|-------|
| 12/31/21 | Voice & Data Communications | 797.21 |
| | Total Disbursements | $ 797.21 |

# Attachment 20

| | Silicon Valley Center |
|---|---|
| Fenwick<br>**FENWICK & WEST LLP** | 801 California Street<br>Mountain View, CA 94041<br>Tel  650.988.8500<br>Fax  650.938.5200 |

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA  94704

Invoice Date:          January 28, 2020

Client Number:               34394

Invoice Number:            787532

Attn:    Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through December 31, 2019.

Fees:                                $ 169,080.50

Disbursements:                    19,282.79

                                  _____

CURRENT AMOUNT DUE        $ 188,363.29

CONFIDENTIAL TREATMENT REQUESTED BY FTX

FTX_000313938<br>SDNY_03_00208024

Alameda Research LLC
Client Number: 34394

Invoice Date:                 January 28, 2020
Invoice Number:                      787532
Billing Attorney:         Daniel Friedberg

Page 18

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 12/17/19 | David L. Forst | Discussion with Mr. McElroy regarding charitable contribution issue; emails regarding HK residency issue; conference call regarding outstanding tax issues. | 1.6 | 2,120.00 |
| 12/17/19 | Daniel Friedberg | Attention to acquisitions; address corporate issues. | 2.4 | 1,716.00 |
| 12/17/19 | Sean McElroy | Prepare for and attend phone conference with Joe Bankman et al. regarding year-end tax issues; draft internal email regarding tax issues; research on tax deduction issue and confer with D. Forst regarding same. | 2.4 | 1,512.00 |
| 12/17/19 | Kathleen Murray | Review and update corporate records with evidence of Paper Bird Transfer. | 0.1 | 14.50 |
| 12/17/19 | Chad Richman | Discuss vc investment structure with D.Friedberg. | 0.2 | 110.00 |
| 12/17/19 | Igor Voloshin | Misc. corporate reorganization matters. | 0.6 | 297.00 |
| 12/17/19 | Jennifer R. Wu | Review exchange agreement. | 0.5 | 200.00 |
| 12/18/19 | David L. Forst | Discussion with Mr. McElroy regarding follow up regarding tax issues; review email regarding BVI. | 0.7 | 927.50 |
| 12/18/19 | Daniel Friedberg | Attention to corporate issues; conference with acquisition target; conferences. | 3.3 | 2,359.50 |
| 12/18/19 | Sean McElroy | Research on tax deduction issues; confer with D. Forst regarding same; draft internal email regarding same. | 2.2 | 1,386.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date:     January 28, 2020
Invoice Number:     787532
Billing Attorney:     Daniel Friedberg

Page 22

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 12/30/19 | Jennifer R. Wu | Review, edit, and discuss data room for FTX. | 1.6 | 640.00 |
| 12/30/19 | Jennifer R. Wu | Update legal workflows. | 0.2 | 80.00 |
| 12/31/19 | David L. Forst | Emails regarding FTX issues. | 0.2 | 265.00 |
| 12/31/19 | Daniel Friedberg | Attend to intercompany agreements; conferences and correspondence. | 3.3 | 2,359.50 |
| 12/31/19 | Sean McElroy | Review outstanding tax issues; draft emails regarding same. | 0.3 | 189.00 |
| 12/31/19 | Can Sun | Attend to client emails. | 0.1 | 71.00 |
| 12/31/19 | Igor Voloshin | Misc. corporate reorganization matters. | 2.8 | 1,386.00 |
| 12/31/19 | Jennifer R. Wu | Update legal workflows. | 0.1 | 40.00 |
| 12/31/19 | Jennifer R. Wu | Edit token exchange documents. | 0.3 | 120.00 |
| | | Total Hours and Fees | 149.1 | $ 101,168.00 |

### Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| David L. Forst | Partner | 16.7 | 1325.00 | 22,127.50 |
| Daniel Friedberg | Partner | 35.4 | 715.00 | 25,311.00 |
| Sean McElroy | Associate | 35.6 | 630.00 | 22,428.00 |
| Chad Richman | Associate | 15.1 | 550.00 | 8,305.00 |
| Joseph Schenck | Associate | 1.6 | 715.00 | 1,144.00 |
| Can Sun | Associate | 4.4 | 710.00 | 3,124.00 |
| Igor Voloshin | Associate | 13.5 | 495.00 | 6,682.50 |
| Jacob Wittman | Associate | 15.3 | 495.00 | 7,573.50 |
| Jennifer R. Wu | Associate | 11.0 | 400.00 | 4,400.00 |
| Kathleen Murray | Paralegal | 0.5 | 145.00 | 72.50 |
| Total | | 149.1 | | $ 101,168.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

# Attachment 21

| | Silicon Valley Center |
|---|---|
| F f | 801 California Street |
| | Mountain View, CA 94041 |
| | Tel  650.988.8500 |
| | Fax  650.938.5200 |

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley, CA  94704

| Invoice Date: | July 13, 2020 |
|---|---|
| Client Number: | 34394 |
| Invoice Number: | 811396 |

Attn:   Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through June 30, 2020.

Fees:                            $ 225,752.00

Disbursements:                     19,419.70

CURRENT AMOUNT DUE      $ 245,171.70

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date:    July 13, 2020
Invoice Number:    811396
Billing Attorney:    Andrew  Albertson

Page 12

---

Response to Regulatory Inquiries
Matter number 34394-00401

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 06/05/20 | Casey  O'Neill | Attend to client email traffic regarding bank request; review screenshot of same. | 0.3 | 255.00 |
| 06/06/20 | Casey  O'Neill | Attend to client email traffic regarding bank dialogue and need for law enforcement response policy. | 0.2 | 170.00 |
| 06/07/20 | Casey  O'Neill | Coordinate client call regarding law enforcement response policy. | 0.2 | 170.00 |
| 06/09/20 | Casey  O'Neill | Prepare for client call regarding law enforcement response policy and consider form for same; review FTX website for terms of service; lead client call regarding law enforcement response policy and review notes from same. | 1.2 | 1,020.00 |
| 06/12/20 | Casey  O'Neill | Consider next steps in law enforcement response development and follow up with D. Friedberg regarding user agreements and privacy policies. | 0.3 | 255.00 |
| | | Total Hours and Fees | 2.2 | $ 1,870.00 |

Timekeeper Summary

| Name | Title | Hours | Rate | Amount |
|------|-------|-------|------|--------|
| Casey  O'Neill | Of Counsel | 2.2 | 850.00 | 1,870.00 |
| Total | | 2.2 | | $ 1,870.00 |

# Attachment 22



**Fenwick & West LLP**
**801 California Street**
**Mountain View, CA 94041**
**Tel  650.988.8500**
**www.fenwick.com**

West Realm Shires Services Inc.
2000 Center Street
Suite 400
Berkeley,  CA  94704

| | |
|---|---|
| Invoice Date: | October 19, 2021 |
| Client Number: | 38608 |
| Invoice Number: | 877666 |

Attn:   Dan Friedberg

**(Invoice Emailed)**

_____

For professional services rendered through September 30, 2021.


Fees:                                  $ 89,087.00

Disbursements:                          2,672.61
                                    _____

CURRENT AMOUNT DUE               $ 91,759.61

Confidential Treatment Requested by Armanino LLP

Armanino-FTX-003766
SDNY_03_00056076

West Realm Shires Services Inc.                                    Invoice Date:        October 19, 2021
Client Number: 38608                                               Invoice Number:              877666
                                                                   Billing Attorney:    Andrew Albertson

Page 10

---

General Corporate
Matter number 38608-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 09/03/21 | Hector Velez | Correspond with investors on data room access and questions regarding investments; prepare closing documents; draft summary capitalization slide; send financing documents for signature. | 4.7 | 3,219.50 |
| 09/05/21 | Joseph B. Doll | Edit Series B-1 financing documents, address due diligence questions, and related correspondence. | 1.7 | 1,275.00 |
| 09/05/21 | David L. Forst | Review information statement regarding Project Main. | 0.5 | 762.50 |
| 09/05/21 | Hector Velez | Draft option grant agreements. | 3.5 | 2,397.50 |
| 09/06/21 | Whitney Anne Bishop | Prepare option award agreements for WRS; prepare documents forming subsidiaries. | 1.5 | 607.50 |
| 09/06/21 | Joseph B. Doll | Edit Series B-1 financing documents, address due diligence questions, and related correspondence. | 2.2 | 1,650.00 |
| 09/06/21 | Hector Velez | Revise option grant agreements. | 4.5 | 3,082.50 |
| 09/06/21 | Igor Voloshin | Miscellaneous regulatory items: Chartwell report; updated risk assessment; updates to AML policy; response to FinCEN audit. | 3.1 | 2,666.00 |
| 09/07/21 | Whitney Anne Bishop | Review and respond to email communication regarding WRS records; continue preparation of subsidiary documents. | 2.2 | 891.00 |
| 09/07/21 | Hector Velez | Correspond with investors on data room access and questions regarding investments; update side letters signature tracker; send common stock purchase agreement for signature. | 3.2 | 2,192.00 |

West Realm Shires Services Inc.  
Client Number: 38608  

Invoice Date:       October 19, 2021  
Invoice Number:      877666  
Billing Attorney:    Andrew  Albertson  

Page 15

---

General Corporate  
Matter number 38608-00600

### Timekeeper Summary

| **Name** | **Title** | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|
| David L. Forst | Partner | 0.5 | 1525.00 | 762.50 |
| Joseph B. Doll | Associate | 9.8 | 750.00 | 7,350.00 |
| Andrea King-Lock Louie | Associate | 0.5 | 685.00 | 342.50 |
| Sean  McElroy | Associate | 1.3 | 815.00 | 1,059.50 |
| Hector  Velez | Associate | 64.6 | 685.00 | 44,251.00 |
| Igor  Voloshin | Associate | 13.1 | 860.00 | 11,266.00 |
| Jacob  Wittman | Associate | 0.4 | 750.00 | 300.00 |
| Whitney Anne Bishop | Paralegal | 9.1 | 405.00 | 3,685.50 |
| Katherine  Schuler | Paralegal | 0.5 | 235.00 | 117.50 |
| Katie  Wagner | Paralegal | 0.4 | 355.00 | 142.00 |
| Ellen  Welichko | Paralegal | 0.3 | 480.00 | 144.00 |
| Total | | 100.5 | | $ 69,420.50 |

### Disbursement Summary

| **Date** | **Description** | **Total** |
|---|---|---|
| 09/30/21 | Voice & Data Communications | 2,082.61 |
| | Total Disbursements | $ 2,082.61 |

Confidential Treatment Requested by Armanino LLP

Armanino-FTX-003781  
SDNY_03_00056091

# Attachment 23

| | Silicon Valley Center |
|---|---|
| Fenwick<br>**FENWICK & WEST LLP** | 801 California Street<br>Mountain View, CA 94041<br>Tel  650.988.8500<br>Fax  650.938.5200 |

Alameda Research LLC
2000 Center Street, Suite 400
Berkeley,  CA  94704

Invoice Date:                May 12, 2020

Client Number:                      34394

Invoice Number:                    802382

Attn:    Sam Bankman-Fried

**(Invoice Emailed)**

For professional services rendered through April 30, 2020.

Fees:                                        $ 96,355.50

Disbursements:                            2,778.67

CURRENT AMOUNT DUE              $ 99,134.17

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date: May 12, 2020
Invoice Number: 802382
Billing Attorney: Andrew Albertson

Page 2

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 04/01/20 | Sean McElroy | Draft loan agreement; revise intercompany agreements; research on mark to market issue; draft internal email regarding same. | 1.4 | 1,036.00 |
| 04/01/20 | Igor Voloshin | MTL Project; call Washington DFI for update on Phase I; draft regulatory notices to Colorado, Indian, Kentucky, Maryland. | 1.8 | 1,179.00 |
| 04/02/20 | Andrew Albertson | Standing tax/update call and follow-up. | 0.8 | 768.00 |
| 04/02/20 | David L. Forst | Review emails and research from Mr. McElroy regarding investments, tokenization and various other tax issues; discussion with Mr. McElroy regarding same; conference call with Mr. Bankman, Mr. Friedberg, Mr. McElroy et al regarding same; discussion with Ms. Eades and Mr. McElroy regarding CARES issues; review email from Ms. Eades regarding same. | 2.8 | 4,060.00 |
| 04/02/20 | Sean McElroy | Confer with D. Forst regarding tax issues; confer with D. Friedberg et al. regarding tax issues; research partnership tax issues; draft intercompany loan agreement and intercompany tokenization exhibit; confer with D. Forst and C. Eades regarding CARES Act issue; review CARES Act. | 3.8 | 2,812.00 |
| 04/02/20 | Igor Voloshin | MTL Project: call with WRS team on Phase I; NMLS & Fieldprint. Update Phase I docs. | 2.0 | 1,310.00 |

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Alameda Research LLC
Client Number: 34394

Invoice Date:          May 12, 2020
Invoice Number:              802382
Billing Attorney:   Andrew Albertson

Page 3

---

General Corporate
Matter number 34394-00600

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 04/03/20 | David L. Forst | Follow up review on tokenization. | 0.5 | 725.00 |
| 04/03/20 | Igor Voloshin | Misc. corporate reorganization matters. | 1.4 | 917.00 |
| 04/06/20 | Andrew Albertson | Review omnibus consent, charter and existing governance agreementss; aanalyze stock split in context; confer regarding EIP and open ancillary transaction agreements. | 1.5 | 1,440.00 |
| 04/06/20 | Sean McElroy | Internal email; revise intercompany agreement. | 0.4 | 296.00 |
| 04/06/20 | Can Sun | Research seed round docs. | 0.2 | 172.00 |
| 04/06/20 | Jacob Wittman | Attend to record keeping matters. | 0.5 | 327.50 |
| 04/07/20 | Andrew Albertson | Review omnibus consent and model; call regarding consents and EIP; confer regarding documents and process. | 1.1 | 1,056.00 |
| 04/07/20 | David L. Forst | Review and comment on intercompany agreement; discussion with Mr. McElroy; email from Ms. Eades. | 1.1 | 1,595.00 |
| 04/07/20 | Sean McElroy | Confer with D. Forst regarding intercompany agreements and related tax issues; draft internal emails regarding same; draft email to A. Sarin regarding same; research on partnership tax issue. | 0.8 | 592.00 |
| 04/07/20 | Chad Richman | Emails with D.Friedberg regarding FTT employee grants. | 0.4 | 290.00 |
| 04/07/20 | Jacob Wittman | Call with client; attend to records; draft consents. | 2.7 | 1,768.50 |

FTX_000314025
SDNY_03_00208111

Alameda Research LLC
Client Number: 34394

Invoice Date:            May 12, 2020
Invoice Number:              802382
Billing Attorney:     Andrew  Albertson

Page 10

---

General Corporate
Matter number 34394-00600

Timekeeper Summary

| **Name** | **Title** | **Hours** | **Rate** | **Amount** |
|----------|-----------|----------:|---------:|-----------:|
| Andrew  Albertson | Partner   | 8.5  | 960.00  | 8,160.00  |
| Michael  Dicke    | Partner   | 0.6  | 1110.00 | 666.00    |
| David L. Forst    | Partner   | 19.0 | 1450.00 | 27,550.00 |
| Sean  McElroy     | Associate | 28.4 | 740.00  | 21,016.00 |
| Chad  Richman     | Associate | 9.0  | 725.00  | 6,525.00  |
| Can  Sun          | Associate | 1.7  | 860.00  | 1,462.00  |
| Igor  Voloshin    | Associate | 13.9 | 655.00  | 9,104.50  |
| Jacob  Wittman    | Associate | 7.1  | 655.00  | 4,650.50  |
| Jennifer R. Wu    | Associate | 0.4  | 485.00  | 194.00    |
| Total             |           | 88.6 |         | $ 79,328.00 |

Disbursement Summary

| **Date** | **Description** | **Total** |
|----------|-----------------|----------:|
| 04/06/20 | Cancellation of: Obtain Certificate of Good Standing from Delaware. - VENDOR: GKL Register Agents Inc./TIN 81-2236321 | -112.00 |
| 04/30/20 | Voice & Data Communications | 2,379.84 |
| | Total Disbursements | $ 2,267.84 |