

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 20, 2023

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    *United States v. Samuel Bankman-Fried*, S5 22 Cr. 673 (LAK)

Dear Judge Kaplan:

      The Government writes regarding the defendant's recent extrajudicial statements and attempt to interfere with a fair trial by an impartial jury. Specifically, the defendant has sought to publicly discredit a government witness by sharing her personal writings with a reporter so that these private documents would be featured in a *New York Times* article published today. As such efforts have the potential to taint the jury pool, and could have a chilling effect on witnesses, the Government respectfully requests an order that limits extrajudicial statements by parties and witnesses likely to interfere with a fair trial by an impartial jury. *See* SDNY Local Rule 23.1(h).

    **A.  Factual Background**

      On July 20, 2023, the *New York Times* published an article with the headline, *Inside the Private Writings of Caroline Ellison, Star Witness in the FTX Case* (the "Article"). *See* https://www.nytimes.com/2023/07/20/technology/ftx-caroline-ellison-bankman-fried.html. The Article quoted "documents . . . [that] offer new insight into Ms. Ellison's psychology during the final months of FTX," and described the writings as "personal and raw." As described in the Article, in these writings, among other things, Ellison describes feeling overwhelmed by her job at Alameda, the pain associated with her romantic break up with the defendant, and her professional insecurities. The Article does not indicate who provided the documents to the Article's authors.

      It is apparent that documents were shared by the defendant with the Article's reporters. When the Government learned this week that this Article was forthcoming, defense counsel confirmed that the defendant had met with one of the Article's authors in person and had shared

documents with him that were not part of the Government's discovery material.[1]  Based on the excerpts in the Article, the documents do not appear to be within the discovery materials in the case, but likely came from the defendant's personal Google Drive account.[2]

B. **Applicable Law**

Rule 23.1 prohibits lawyers and their agents from releasing non-public information or opinion about a criminal case they are associated with "if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."  SDNY Local Rule 23.1(a).  The Rule further specifies certain types of statements that "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice within the meaning of this rule," including: "[t]he identity, testimony, or credibility of prospective witnesses."  Rule 23.1(d)(4); *see also* Rule 23.1(d)(6) ("Information the lawyer or law firm knows is likely to be inadmissible at trial and would if disclosed create a substantial likelihood of prejudicing an impartial trial" also presumptively prejudicial).

While Rule 23.1's proscriptions are focused on lawyers and their agents, the Supreme Court has recognized that "[t]he courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences," and "[n]either prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function."  *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966); *see Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991) (noting that "[f]ew, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right").

*Gentile* involved prejudicial statements by an attorney, but the Second Circuit and other courts have affirmed orders that restricted the speech of the parties themselves.  In *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 611-12 (2d Cir. 1988), the Second Circuit affirmed a district court order that restrained the parties from speaking with the press, where less restrictive alternatives would not be effective, and "failure to restrain the trial participants would add 'fuel to an already voracious fire of publicity' and create 'a real and substantial likelihood that some, if not all, defendants might be deprived of a fair trial."  The Fifth Circuit affirmed a similar order, where it was supported by a "'substantial likelihood' . . . that extrajudicial commentary by trial participants will undermine a fair trial" and "is also narrowly tailored and the least restrictive means available."  *United States v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000).

---

[1] Based on conversations with defense counsel, it appears that defense counsel was not aware of the defendant's conduct until contacted about it by the Government.

[2] The Government's January 9, 2023 Google search warrant included a warrant for materials within the defendant's personal Google Drive.  Due to a production error, Google did not include this material in its original search warrant returns.  The Government is in the process of loading and preparing this additional material for production to the defense but has not yet produced it.

C. **Discussion**

In light of the defendant's recent conduct less than three months before the start of trial, the Government requests that the Court enter an order, pursuant to Local Rule 23.1(h), proscribing "extrajudicial statements by parties and witnesses" that are likely to interfere with the right to a "fair trial by an impartial jury." SDNY Local Rule 23.1(h). Such an order is necessary because of a substantial likelihood that the defendant's extrajudicial comments will undermine a fair trial by tainting the jury pool and chilling the testimony of prospective trial witnesses.

The defendant's actions—sharing personal writings of Caroline Ellison's with a *New York Times* reporter—implicate the core concern of Rule 23.1 that disseminating material related to the "testimony or credibility of prospective witnesses" presumptively involves a substantial likelihood or prejudice to a fair trial and the due administration of justice. The defendant's purpose in sharing these materials is plain. Ellison has pleaded guilty to a cooperation agreement and is expected to testify at trial that she agreed with the defendant to defraud FTX's customers and investors, and Alameda's lenders. By selectively sharing certain private documents with the *New York Times*, the defendant is attempting to discredit a witness, cast Ellison in a poor light, and advance his defense through the press and outside the constraints of the courtroom and rules of evidence: that Ellison was a jilted lover who perpetrated these crimes alone.

While the Government expects the overwhelming evidence to give the lie to this defense, it is prejudicial and improper for the defendant to malign Ellison's credibility in advance of trial, particularly with materials that the defense has not established are admissible at trial, much less produced to the Government. *Gentile* recognized precisely that: "Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial and *ex parte* statements by counsel giving their version of the facts obviously threaten to undermine [the] basic tenet" that "[t]he outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding." *Id.* As in *Brown*, because this case has "attracted intense and extensive media attention," an order restricting extrajudicial statements is the least restrictive means to ensure a fair trial in light of the defendant's efforts to "manipulate media coverage to gain favorable attention" that might otherwise taint the jury pool. *Brown*, 218 F.3d at 428; *see also Gentile*, 501 U.S. at 1075 (noting that the "interest in fair trials" is aimed at limiting "comments that are likely to prejudice the jury venire").

Judicial intervention is especially necessary here because while the Court can restrict extrajudicial statements by the parties and witnesses under Rule 23.1(h), the prohibitions of Rule 23.1(a) appear only to limit the conduct of lawyers and their agents. But as the Fifth Circuit has explained, the "mischief" visited upon a trial by prejudicial extrajudicial statements may be "the same whether prejudicial comments [are] uttered by the parties or their lawyers." And as in *Brown*, the "problem" to be "avoid[ed]" here, "depend[s] in no way on the identity of the speaker as either a lawyer or a party." *Brown*, 218 F.3d at 428; *see also United States v. Roger Stone, Jr.*, 19 Cr. 18 (ABJ), February 21, 2019 Minute Order (modifying a previous media communications order to prohibit the defendant from publicly commenting about his case). The fact that the defendant funneled this material through the *New York Times*, rather than directly commenting on the documents himself, is particularly pernicious. Having the story appear in a reputable newspaper with a worldwide readership without identifying the defendant as the source lends a misleading

patina of legitimacy to what would otherwise be naked advocacy, compounding the risk of tainting prospective jurors.

In addition to tainting the jury pool, the effect, if not the intent, of the defendant's conduct is not only to harass Ellison, but also to deter other potential trial witnesses from testifying. As the Government prepares for trial, a common refrain from witnesses' attorneys—including attorneys for witnesses located abroad—is witness hesitation about testifying in a case that has received persistent national and international media attention. These witness concerns will only be heightened if witnesses are made to fear that a consequence of testifying against the defendant may include personal humiliation and efforts to discredit their reputation that go beyond what the rules of evidence might permit during cross examination. The Government is particularly attuned to these concerns after the defendant's improper outreach to a potential witness resulted in the modification of his bail conditions. That the defendant was nonetheless undeterred from taking steps that likewise might affect—albeit indirectly—the putative testimony of trial witnesses is all the more reason why the Government's proposed relief is the least restrictive alternative for ensuring a fair trial.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/ Danielle R. Sassoon
Danielle R. Sassoon
Nicolas Roos
Samuel Raymond
Thane Rehn
Danielle Kudla
Assistant United States Attorneys
(212) 637-1115

Cc:   Defense Counsel (by ECF)