# REPORTERS COMMITTEE
## FOR FREEDOM OF THE PRESS

1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300 • www.rcfp.org

Bruce D. Brown, Executive Director
bruce.brown@rcfp.org
(202) 795-9301

**STEERING COMMITTEE CHAIR**
STEPHEN J. ADLER

**EXECUTIVE COMMITTEE MEMBERS**
MARGARET LOW
*WBUR*
MASSIMO CALABRESI
*Time Magazine*
DAVID BOARDMAN
*Temple University*
MANNY GARCIA
*Austin American-Statesman*
LAURA HANDMAN
*Davis Wright Tremaine*
NORMAN PEARLSTINE
THOMAS C. RUBIN
*OpenAI*

**STEERING COMMITTEE MEMBERS**
WOLF BLITZER
*CNN*
THEODORE J. BOUTROUS, JR.
*Gibson, Dunn & Crutcher LLP*
LYNETTE CLEMETSON
*University of Michigan*
NIKHIL DEOGUN
*Brunswick Group*
EMILIO GARCIA-RUIZ
*San Francisco Chronicle*
JOSH GERSTEIN
*POLITICO*
ALEX GIBNEY
*Jigsaw Productions*
SUSAN GOLDBERG
*GBH*
GAIL GOVE
*NBCUniversal*
JAMES GRIMALDI
*The Wall Street Journal*
DIEGO IBARGÜEN
*Hearst*
JEREMY JOJOLA
*9NEWS Colorado*
KAREN KAISER
*Associated Press*
KIMBRIELL KELLY
*The Los Angeles Times*
DAVID LAUTER
*The Los Angeles Times*
COLLEEN MCCAIN NELSON
*The McClatchy Company*
JAMES NEFF
*The Philadelphia Inquirer*
BRUCE W. SANFORD
*BakerHostetler, retired*
CHARLIE SAVAGE
*The New York Times*
JENNIFER SONDAG
*Bloomberg News*
NABIHA SYED
*The Markup*
ADAM SYMSON
*The E.W. Scripps Company*
MATT THOMPSON
*The New York Times*
VICKIE WALTON-JAMES
*NPR*
SUSAN ZIRINSKY
*CBS News*

*Affiliations appear only for purposes of identification.*

August 3, 2023

The Honorable Lewis A. Kaplan
United States District Court Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

**VIA EMAIL**

**Re:** *United States v. Samuel Bankman-Fried*, **S5 (LAK)**

Dear Judge Kaplan:

The Reporters Committee for Freedom of the Press (the "Reporters Committee") writes with respect to the Temporary Order Governing Extrajudicial Statements entered by the Court in the above-referenced case on July 26, 2023. (Dkt. No. 180 (the "Temporary Order")).

The Temporary Order prohibits "[t]he parties in this case, their attorneys, and their agents" from "publicly disseminating or discussing with any public communications media anything about the case including statements about the identity, testimony, or credibility of prospective witnesses, information that has not been deemed admissible at trial, and statements intended to influence public opinion regarding the merits of this case" and further prohibits Mr. Bankman-Fried, "from causing others . . . from making such statements on his behalf." (Temporary Order ¶ 1). The Temporary Order "remain[s] in effect to and including the determination of the Government's oral application to detain the defendant unless extended by the Court." (*Id*. ¶ 4). The Government's application to detain the defendant will be fully briefed by August 3, 2023. (*See* Minute Entry, July 26, 2023).

The Government moved the Court for an order prohibiting extrajudicial statements by the parties and their attorneys on July 20, 2023, (Dkt. No. 176), the same day that *The New York Times* published an article entitled "Inside the Private Writings of Caroline Ellison, Star Witness in the FTX Case."[1] Thereafter, at a July 26, 2023 status conference, the Government moved for Mr. Bankman-Fried to be detained; while conceding that "having contact with the press alone is not witness tampering, and [is] not a violation of the bail statute," the Government argued that by "discrediting and blaming Caroline Ellison in a national and international publication, that is read by many prospective jurors in this district," the defendant "crossed a line toward improperly influencing those prospective jurors and intimidating a witness and sending a message to other prospective

---

[1] *https://www.nytimes.com/2023/07/20/technology/ftx-caroline-ellison-bankman-fried.html*

witnesses." (Tr. 7/26/2023 at 32; *see also*, *generally*, Dkt. No. 184 ("Gov't Ltr.")).  Mr. Bankman-Fried disagrees.  He argues, *inter alia*, that he, like other criminal defendants, has a constitutional "right to talk to the press about [his] case to influence [his] public image and try to protect [his] reputation" and that "detaining [him] based on his communications with a reporter raises serious First Amendment concerns."  (Dkt. No. 185 ("Def. Ltr.") at 2).  Though Mr. Bankman-Fried opposes detention, he is willing to agree to the Court imposing its Temporary Order "as a final order," and has requested, "in fairness," that the order "be extended to witnesses as well, as provided for by Local Criminal Rule 23.1(h)."  (*Id.*)

Defendant's counsel and Professor Laurence Tribe, whose expert affidavit is before the Court, address Mr. Bankman-Fried's First Amendment right to speak publicly, including to members of the press, about the charges levied against him, as well as the potential chilling effect of revoking defendant's bail on the basis of the record before the Court. (*See* Def. Ltr. at 14–15; Affidavit of Laurence H. Tribe, Dkt. No. 185-1).  The Reporters Committee—an unincorporated nonprofit association dedicated to defending the newsgathering and First Amendment rights of the press—writes to address a separate but related constitutional consideration implicated by the Temporary Order: the First Amendment rights of the press to gather news and receive information from willing speakers.

As the Second Circuit has recognized, the First Amendment "unwaveringly protects the right to receive information and ideas."  *See In re Dow Jones & Co., Inc.*, 842 F.2d 603, 607 (2d Cir. 1988) (holding that news organizations, as potential recipients of information from willing speakers, had standing to challenge a gag order applicable to parties and their attorneys).  And, indeed, "[t]he protected right to publish the news would be of little value in the absence of sources from which to obtain it." *CBS Inc. v. Young*, 522 F.2d 234, 237–38 (6th Cir. 1975) (issuing a writ of mandamus directing the district court to vacate a gag order, finding that the order "directly impaired or curtailed" the news media's "ability to gather the news concerning the trial"); *see also Levine v. U.S. District Court*, 764 F.2d 590, 594 (9th Cir. 1985) ("By effectively denying the media access to the litigants, the district court's order raises an issue under the first amendment by impairing the media's ability to gather news." (citation omitted)).  In resolving the issues now before it, the Reporters Committee respectfully urges the Court not to unduly curtail the ability of the press—"the handmaiden of effective judicial administration, especially in the criminal field," *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966)—to gather (and therefore report) news about this ongoing criminal case of undeniable public interest.

The First Amendment permits restrictions on extrajudicial statements of attorneys only when exacting standards are met.  *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074–75 (1991) (holding that application of a "substantial likelihood of material prejudice" standard to restrictions on the extrajudicial speech of an attorney comported with First Amendment requirements); *see also United States v. Scarfo*, 263 F.3d 80, 92 (3d Cir. 2001) (noting that the Supreme Court and Courts of Appeals use "varying standards to review gag orders depending on who or what is being gagged" and

explaining that, under *Gentile*, "[a]ny limitation on [an attorney's] speech must be narrow and necessary, carefully aimed at comments likely to influence the trial or judicial determination"). Local Criminal Rule 23.1(c), which applies to attorneys and law firms, prohibits only those extrajudicial statements "relating to the trial or the parties or issues in the trial which a reasonable person would expect to be disseminated by means of public communication if there is a substantial likelihood that such dissemination will interfere with a fair trial[.]" *See also* Loc. Crim. R 23.1(d)–(e) (identifying statements about specified subject matters that do and do not "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice").

Orders restricting the speech of non-attorney trial participants, such as parties and witnesses, demand even greater constitutional scrutiny. "Unlike attorneys, trial witnesses . . . are not officers of the court and cannot, therefore, be said to have bargained away any portion of their First Amendment rights in exchange for the privilege of practicing law. It follows that a court may abridge a witness's First Amendment rights only when absolutely necessary to ensure the accused's right to a fair trial." *United States v. Gotti*, No. 04-cr-690 (SAS), 2004 U.S. Dist. LEXIS 24192, at *12–13 (S.D.N.Y. Dec. 3, 2004); *see also In re Russell*, 726 F.2d 1007, 1010 (4th Cir. 1984) (noting "weighty" First Amendment rights of trial witnesses subject to gag order). Although Local Criminal Rule 23.1(h) provides that a court "may issue a special order governing . . . extrajudicial statements by parties and witnesses" that are "likely to interfere with the rights of the accused to a fair trial by an impartial jury," it expressly requires the court to consider "whether such an order will be necessary to ensure an impartial jury and must find that other, less extreme available remedies, singly or collectively, are not feasible or would not effectively mitigate the pretrial publicity and bring about a fair trial." Loc. Crim. R 23.1(h); *see also, e.g., In re Dow Jones & Co.*, 842 F.2d at 611–12 (explaining that "before entering an injunction against speech" the district court was required "to explore whether other available remedies would effectively mitigate the prejudicial publicity").

To be sure, the seismic collapse of FTX, and the losses suffered by millions of its customers, has spurred widespread public interest in (and extensive press coverage of) the criminal prosecution of defendant. But it is well settled that media attention alone—even when "pervasive" and "concentrated," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554, 565 (1976)—does not imperil a fair trial. *See Skilling v. United States*, 561 U.S. 358, 381 (2010) ("Prominence does not necessarily produce prejudice, and juror *impartiality*, we have reiterated, does not require *ignorance*."); *see also Murphy v. Florida*, 421 U.S. 794, 800 (1975) (explaining that "[i]t is sufficient" for Sixth Amendment purposes "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court" (citation omitted)). The Court has many tools at its disposal short of a restrictive order that can ensure a fair trial by an impartial jury in this case, including, chiefly, voir dire. *See Skilling*, 561 U.S. at 373–74; *In re Charlotte Observer*, 882 F.2d 850, 855 (4th Cir. 1989) (stating that voir dire is "the preferred safeguard").

       The Reporters Committee agrees with *The New York Times* that, to the extent the Court finds it necessary on the factual record before it—after consideration of other, less extreme available remedies—to either extend or make final its Temporary Order, the Court must ensure that the order's limitations on speech are both narrow and necessary, and that they do not extend beyond the limitations permissible under the First Amendment and Local Criminal Rule 23.1(a) and (h).  (Dkt. No. 187 ("N.Y. Times Co. Ltr.")).  Specifically, the Reporters Committee urges the Court to (1) modify the order to prohibit only those extrajudicial statements substantially likely to interfere with a fair trial and (2) decline defendant's request to extend its application to other trial participants, including witnesses.

                                               Respectfully submitted,

                                               */s/Katie Townsend*
                                               Katie Townsend
                                               REPORTERS COMMITTEE FOR
                                               FREEDOM OF THE PRESS
                                               1156 15th St. NW, Suite 1020
                                               Washington, D.C. 20005
                                               202.795.9300
                                               ktownsend@rcfp.org

cc: All counsel via e-mail