UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

UNITED STATES OF AMERICA

        v.

SAMUEL BANKMAN-FRIED,

                Defendant.

-------------------------------------------------------------- x

S6 22 Cr. 673 (LAK)


# MEMORANDUM OF LAW IN SUPPORT OF
# SAMUEL BANKMAN-FRIED'S MOTIONS *IN LIMINE*

Mark S. Cohen
Christian R. Everdell
Sri K. Kuehnlenz
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, NY  10022
Phone:  (212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com
skuehnlenz@cohengresser.com

*Attorneys for Samuel Bankman-Fried*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 4

I.     THE GOVERNMENT SHOULD NOT BE PERMITTED TO INTRODUCE
EVIDENCE THAT WAS PRODUCED TO THE DEFENSE AFTER JULY 1 ............... 4

II.    THE COURT SHOULD EXCLUDE EVIDENCE OF THE FTX BANKRUPTCY,
THE SOLVENCY OF FTX AND ALAMEDA, AND THEIR ABILITY TO
MAKE CUSTOMERS WHOLE .................................................................................. 8

III.   EVIDENCE OF MR. BANKMAN-FRIED'S RESIGNATION FROM FTX
SHOULD BE EXCLUDED ......................................................................................... 14

IV.   THE GOVERNMENT SHOULD NOT BE PERMITTED TO INTRODUCE
PUBLIC STATEMENTS THAT PERTAIN TO FTX.US ............................................. 16

V.    THE COURT SHOULD ORDER THE GOVERNMENT TO PRODUCE ANY
ORALLY COMMUNICATED BRADY MATERIAL IN ITS POSSESSION ............... 17

VI.   MR. BANKMAN-FRIED RESERVES HIS RIGHT TO RESPOND TO THE
GOVERNMENT'S MOTIONS *IN LIMINE* TO INTRODUCE EVIDENCE
RELATED TO THE SEVERED AND WITHDRAWN COUNTS ................................. 19

VII.  TO THE EXTENT THE GOVERNMENT SEEKS TO ADMIT DOCUMENT
METADATA, MR. BANKMAN-FRIED RESERVES HIS RIGHT TO OPPOSE
THE ADMISSIBILITY OF SUCH EVIDENCE ......................................................... 19

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arlio v. Lively*,
   474 F.3d 46 (2d Cir. 2007)..........................................................................................9

*HTC Corp. v. Tech. Properties Ltd.*,
   No. 5:08-CV-00882 (PSG), 2013 WL 4782598 (N.D. Cal. Sept. 6, 2013)...................... 10-11

*Off. Comm. of Unsecured Creditors v. CalPERS Corp. Partners LLC*,
   1:18-CV-00068 (NT), 2021 WL 3264272 (D. Me. July 30, 2021) ........................................10

*Old Chief v. United States*,
   519 U.S. 172, 117 S. Ct. 644 (1997)..........................................................................9

*United States v. Figueroa*,
   618 F. 2d 934 (2d Cir. 1980)...................................................................................9

*United States v. Garcia*,
   730 F. Supp. 2d 1159 (C.D. Cal. 2010) .....................................................................8

*United States v. Hawkins*,
   360 F. Supp. 2d 689 (E.D. Pa. 2005) ......................................................................17

*United States v. Jadusingh*,
   18-CR-257 (KAM), 2020 WL 207950 (E.D.N.Y. Jan. 14, 2020) ........................................14

*United States v. Martoma*,
   No. 12-CR-971 (PGG), 2014 WL 31700 (S.D.N.Y. Jan. 6, 2014)........................................15

*United States v. Mason*,
   No. S2 06-CR-80 (NRB), 2008 WL 281970 (S.D.N.Y. Jan. 25, 2008) ............................. 7-8

*United States v. Rodriguez*,
   496 F.3d 221 (2d Cir. 2007)............................................................................. 17-18

*United States v. Ulbricht*,
   79 F. Supp. 3d 466 (S.D.N.Y. 2015)........................................................................14

*United States v. Williams*,
   585 F. 3d 703 (2d Cir. 2009)...................................................................................9

*United States v. Yagi*,
   12-CR-0483 (EMC), 2013 WL 10570994 (N.D. Cal. Oct. 17, 2013) ...................................15

**Rules**

Fed. R. Crim. P. 16 ...............................................................................................................8

Fed. R. Evid. 401 .............................................................................................................9, 16

Fed. R. Evid. 402 .............................................................................................................9, 14

Fed. R. Evid. 403 .........................................................................................................9, 11, 17

Fed. R. Evid. 404 .................................................................................................................19

**Other Authorities**

Justice Manual § 9-5.002 ......................................................................................................18

Samuel Bankman-Fried respectfully submits this memorandum of law in support of his motions *in limine*.

## PRELIMINARY STATEMENT

Mr. Bankman-Fried moves the Court to preclude the Government from introducing certain evidence at trial because of the Government's numerous failures to meet the discovery deadlines that it represented to the Court, which has substantially prejudiced Mr. Bankman-Fried's ability to prepare his defense. Mr. Bankman-Fried further moves the Court to preclude the Government from introducing certain evidence at trial under Federal Rules of Evidence 401 and 403 because the evidence in question has little or no relevance to the offenses for which Mr. Bankman-Fried will be tried, and any arguable relevance is substantially outweighed by significant dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and wasting time. Mr. Bankman-Fried seeks to exclude the following categories of evidence:

*First*, the Government should be precluded from introducing or using at trial any evidence from Rule 16 discovery produced to the defense after July 1, 2023. As the defense has raised with the Court on numerous occasions, the Government has repeatedly failed to meet the discovery deadlines it represented to the Court and to this day continues to produce voluminous documents to the defense. This includes a production just ***three days ago*** of nearly ***three-quarters of a million*** pages of Slack messages from Gary Wang's laptop that the Government originally promised to produce by the end of March. The defense cannot be expected to review such a substantial volume of documents less than two months before trial when they should have been produced months ago, especially now that Mr. Bankman-Fried has been detained and will not have access to the discovery, by the Government's own admission, for weeks at best. The Government's repeated delays in producing discovery have already prejudiced the defense in preparing for trial; it should be precluded from using these late-produced materials at trial.

*Second*, the Government should be precluded from introducing evidence or eliciting testimony concerning the FTX bankruptcy or the solvency of FTX and Alameda Research LLC ("Alameda") or their ability to make customers whole.  The bankruptcy is irrelevant to the issues in the present case and should be excluded altogether because it poses a substantial risk of unfair prejudice.  The bankruptcy signifies only that current CEO John Ray believed the FTX Debtor Entities had more liabilities than they could satisfy at the time he filed for Chapter 11 protection as of November 11, 2022.  There is a significant risk, however, that the jury will improperly infer that the bankruptcy itself is proof that FTX and Alameda collapsed because of fraud, as opposed to outside market forces, and that Mr. Bankman-Fried committed the crimes of which he is accused.  Moreover, it is unclear at this time whether FTX or Alameda are, in fact, insolvent or that customers will not ultimately be made whole.  Any statements to the contrary would therefore be based on speculation and would be unfairly prejudicial to Mr. Bankman-Fried.  Should these topics be introduced at trial, it would force the defense to rebut these inferences by delving into the reasons for the bankruptcy, including the motives of FTX's senior management (assisted by counsel) in forcing Mr. Bankman-Fried to hand over control of FTX to Mr. Ray and pushing the company into bankruptcy, as well as the FTX Debtor Entities' mismanagement of estate assets, in order to rebut the improper but unavoidable implication that the company's current financial condition is the result of Mr. Bankman-Fried's alleged misconduct.  This would inevitably lead to numerous mini-trials on collateral issues that will distract the jury and waste time.

*Third*, the Government should be precluded from introducing evidence or eliciting testimony concerning Mr. Bankman-Fried's resignation from FTX.  The relevance, if any, of Mr. Bankman-Fried's resignation is greatly outweighed by the risk of unfair prejudice, because this

topic would invite the jury to speculate as to the reasons for his departure.  Introduction of this subject also risks distracting the jury and wasting time, because it would require Mr. Bankman-Fried to rebut the implication that his resignation is evidence of his guilt by conducting a mini-trial into the circumstances of his ouster, including the motives of FTX's senior management in forcing him out with the assistance of outside counsel.

*Fourth*, the Government should be precluded from introducing Mr. Bankman-Fried's public statements regarding FTX.US.  The S5 Indictment alleges fraud on customers and investors of FTX (the international exchange), not FTX.US (the U.S. exchange).  Statements regarding FTX.US are therefore irrelevant to the crimes charged.  Such evidence would also cause unfair prejudice and confuse the jury.  It would incorrectly suggest that statements about the functioning of the U.S. exchange are relevant to whether customers were allegedly misled about the functioning of the international exchange.  It would also suggest that U.S.-based customers of FTX.US may have been defrauded even though the S5 Indictment makes no such allegations.  To allow the Government to suggest that U.S. customers were defrauded, when its allegations involve a business that was not open to U.S. customers, is inflammatory and raises an unavoidable risk of unfair prejudice.

*Fifth*, the Court should order the Government to produce to the defense any orally communicated *Brady* material in its possession.  Under controlling Second Circuit precedent and Department of Justice policy, the Government must produce any *Brady* or *Giglio* information that it received via oral communications.  The discovery produced by the Government includes billing records from the FTX Debtor Entities' outside counsel and other documents that reference numerous oral communications between the FTX Debtor Entities and the Government since November 9, 2022.  To our knowledge, the Government's disclosures up to this point do

3

not include any *Brady* information that was communicated during those discussions, despite the defense's requests for this information.  The Court should order the Government to produce immediately any orally communicated *Brady* material in its possession.

*Sixth*, the Government has represented that it intends to raise arguments concerning the admissibility of evidence pertaining to the counts of the S5 Indictment that were severed and the additional count the Government withdrew.  Mr. Bankman-Fried reserves his right to respond to those arguments after they are made.

*Seventh*, to the extent that the Government intends to introduce document metadata as evidence—*e.g.*, data that purport to show information about, for example, who authored the document, who viewed the document, when the document was created, etc.—Mr. Bankman-Fried reserves his right to oppose such evidence on the grounds that it is incomplete, unreliable, and misleading, and any other grounds that may be warranted.

## **ARGUMENT**

## I.    **THE GOVERNMENT SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE THAT WAS PRODUCED TO THE DEFENSE AFTER JULY 1**

The Government made a decision to rush to charge Mr. Bankman-Fried, and it did so knowing that it had not even received (and in some cases, had not even requested) the vast majority of the discovery in this case.  That was the Government's choice.  As a result, the Government was not prepared to produce the discovery to the defense on a timely basis and continues to make untimely and voluminous productions of Rule 16 discovery materials that it represented to the Court it would provide to the defense months ago.  According to the scheduling order set by this Court on July 1, 2023 (ECF No. 173), the only remaining documents the Government should be producing at this point are materials covered by 18 U.S.C. § 3500 and *Giglio* materials.  *See* ECF No. 173 at 2.  Yet with trial rapidly approaching, the Government

continues to produce hundreds of thousands of pages of additional documents, and still other documents that the Government agreed to produce months ago remain outstanding.  These delayed productions—the most recent of which was three days ago—are just the latest examples of a persistent pattern of unmet deadlines which have severely prejudiced the defense in preparing for trial.  Now that Mr. Bankman-Fried has been detained with no access to discovery for the foreseeable future, there is no chance of him being able to review these late-produced documents before trial to assist in preparing his defense.  The Court should therefore preclude the Government from introducing any evidence produced to the defense after July 1.

The Court is certainly familiar with the Government's repeated failure to abide by its discovery deadlines.  As set forth in our letter to the Court, dated June 5, 2023:

- On March 10, 2023, the Government represented to the Court that it would produce **by the end of March** the contents of the five remaining electronic devices:  Caroline Ellison's laptop and iPhone, Gary Wang's laptop, and the contents of two laptops provided by two FTX software developers.  The Government did not meet this deadline.

- On March 30, 2023, the Government represented to the Court that these materials would be produced **by the first week of April**, except for the contents of Gary Wang's laptop, which would be produced **at the end of April**.  Again, the Government failed to meet this deadline.

- On April 24, 2023, the Government produced some of the promised documents.  But the contents of Caroline Ellison's laptop and the full contents of the two software developers' laptops were not produced until May 23, 2023, one month later.  And the remaining contents of Gary Wang's laptop were only produced **three days ago** on August 11, 2023, **over four months** after the Government originally agreed to deliver them.

- On both March 10, 2023 and March 30, 2023, the Government represented to the Court that it would produce the voluminous documents obtained from a search warrant for 30 different Google accounts **by the end of April**. Once again, the Government failed to meet this deadline as well.  The defense did not receive the bulk of these documents until May 23, 2023, one month later.  But the Government is still producing additional materials from the Google search warrant—including a production **just four days ago** on August 10, 2023—**and still has not completed its production**.

*See* Ex. A (June 5, 2023 Letter from Sam Bankman-Fried to the Hon. Lewis A. Kaplan, ECF No. 153)).[1]

Instead of abiding by its discovery deadlines, the Government made partial productions in the form of massive document dumps over the last few months: 2.48 million documents (totaling nearly 7 million pages) received by the defense on May 25, another 485,000 documents (totaling 1.38 million pages) received on June 13, another 222,000 documents (totaling 1.5 million pages) received on July 13, and an additional 162,000 documents (totaling 547,925 pages and excel spreadsheets containing thousands of lines of text and data) received on August 1. These months-late productions amount to over three terabytes of data and account for ***more than three-quarters*** of the total volume of discovery—and they still do not include everything the Government promised to provide.

Most recently, the Government made two back-to-back productions on August 10, 2023, and August 11, 2023.  In the August 10 production, the Government produced another 6,800 Google Documents (totaling over 16,000 pages) from Mr. Bankman-Fried's personal Gmail account that were obtained as part of the Government's January 9, 2023 search warrant, which was served on Google over seven months ago.  The Government stated that Google had originally failed to produce Google Documents for Mr. Bankman-Fried's account and had only recently provided the missing documents to the Government.  The 6,800 documents are a partial production from the Government's filter team of potentially privileged documents, broken into two categories.  The Government has requested that the defense spend the limited time it has left before trial reviewing these documents and creating privilege logs by September 21.  The

---

[1] Citations to "Ex. _" refer to exhibits attached to the Declaration of Christian R. Everdell in Support of Samuel Bankman-Fried's Motions *in Limine* dated August 14, 2023.

Government further indicated that it intended to produce additional materials from Google at an unspecified future date.  The very next day, on August 11, the Government dumped an additional 227,350 documents (totaling more than 752,000 pages) on the defense, which consist almost entirely of Slack messages recovered from Gary Wang's laptop—in other words, a portion of the materials the Government originally represented to the Court that it would produce at the end of March.  *See* Tr. of Mar. 10, 2023 Conf. at 5:13-9:10.

The time for these productions has long since passed.  The defense does not have unlimited resources and must spend the limited time left before trial preparing its defense rather than reviewing eleventh-hour productions and creating privilege logs.  The Government cannot be permitted to unload three-quarters of a million pages of Rule 16 discovery material less than eight weeks before trial and expect the defense to be able to review it, especially when it represented to the Court that it would produce this material almost five months earlier.  Nor should the Government be permitted to force the defense to waste time creating privilege logs for documents that should have been produced months ago while the defense is working full-time to meet the Court's disclosure schedule and prepare for trial.  The Government's backloading of productions to dump the vast majority of the discovery on the defense months behind schedule in the weeks before trial has already prejudiced the defense in preparing for trial.  The defense will not be able to review this material in time to make use of it for trial, especially now that Mr. Bankman-Fried has been detained and has no access to discovery.

The defense should not be penalized for the Government's rush to charge and its persistent failure to meet its discovery deadlines.  To the contrary, it is the Government who should bear the consequences.  Courts recognize that late production of voluminous material is prejudicial to the defendant and have excluded late-produced evidence on this basis.  *See United*

*States v. Mason*, No. S2 06-CR-80 (NRB), 2008 WL 281970, at *4 (S.D.N.Y. Jan. 25, 2008)

(excluding evidence not timely produced); *see also United States v. Garcia*, 730 F. Supp. 2d

1159, 1169 (C.D. Cal. 2010) (granting defendant's motion *in limine* to exclude evidence not

produced to the defendant by the time set in the court-ordered discovery schedule); *see also* Fed.

R. Crim. P. 16(d)(2)(C) & (D) ("If a party fails to comply with [Rule 16], the court may . . .

prohibit that party from introducing the undisclosed evidence; or . . . enter any other order that is

just under the circumstances.").  As we previewed in our June 5, 2023 letter (Ex. A at 3), the

time has come to hold the Government accountable for its total failure to abide by its

representations to the Court concerning discovery deadlines and prohibit the Government from

making use of any materials produced to the defense after July 1.

## II.    THE COURT SHOULD EXCLUDE EVIDENCE OF THE FTX BANKRUPTCY, THE SOLVENCY OF FTX AND ALAMEDA, AND THEIR ABILITY TO MAKE CUSTOMERS WHOLE

The Court should exclude evidence that FTX and Alameda filed for bankruptcy and

should preclude the Government from arguing or presenting evidence suggesting that FTX and

Alameda are insolvent and that their customers will not be made whole, as proof of the offenses

charged.  The S5 Indictment alleges that "[i]n November 2022, FTX halted trading and entered

bankruptcy along with Alameda, FTX.US, and dozens of related entities," and "thousands of

customers who had trusted BANKMAN-FRIED, FTX, and FTX.US with billions of dollars in

savings and investment capital . . . found themselves overnight unable to withdraw their funds

and unsure about whether they would ever be repaid."  S5 Indictment ¶ 9.[2]  The allegation

suggests that the Government intends to elicit the fact that FTX filed for bankruptcy protection

---

[2] These allegations were in substance repeated in the S6 Indictment, which the Government filed at approximately 4 p.m. today, August 14, 2023.  *See* S6 Indictment, ECF No. 202 at ¶ 15 ("On November 11, 2022, . . . the defendant, resigned from FTX.  FTX and approximately one hundred affiliated entities, including Alameda, filed for Chapter 11 bankruptcy protection.").

and to improperly insinuate that the FTX Debtor Entities are unable to make their customers whole and their current financial condition implies Mr. Bankman-Fried's guilt. This evidence is irrelevant, speculative, and unduly prejudicial. It should therefore be excluded under Rules 401/402 and Rule 403 of the Federal Rules of Evidence.

Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Evidence that is probative solely of non-material issues should therefore be excluded. *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007). Further, Rule 403 provides that courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[U]nfair prejudice" in the context of criminal defendants "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 650 (1997). Evidence is prejudicial if it has a tendency "to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States v. Figueroa*, 618 F. 2d 934, 943 (2d Cir. 1980); *see also United States v. Williams*, 585 F. 3d 703, 708 (2d Cir. 2009) (the Government should not be permitted to introduce into evidence "unsavory details which go beyond what is necessary to make the point") (citation omitted).

The FTX bankruptcy has no relevance to the issues at trial. The fact that FTX and Alameda filed for bankruptcy protection after the events described in the S5 Indictment is not proof of whether Mr. Bankman-Fried committed or conspired to commit wire fraud on FTX

customers or Alameda's lenders, conspired to commit securities fraud on FTX investors, or conspired to commit money laundering.  It is proof of nothing other than the fact that John Ray, the CEO of the FTX Debtor Entities, believed on November 11, 2022, that the FTX Debtor Entities had more liabilities than they could satisfy.  Businesses seek bankruptcy protection for a number of reasons, and the fact that an entity availed itself of the protections of bankruptcy tells the jury nothing about whether a defendant committed an unlawful act prior to that bankruptcy.  Nevertheless, because of the real-world stigma attached to bankruptcy, there is a significant risk that the jury will improperly infer that the bankruptcy itself is proof that Mr. Bankman-Fried committed fraud.

Courts recognize that "[a] reference to bankruptcy may trigger visceral reactions among jurors," and "such a reaction carries a risk of substantial unfair prejudice."  *HTC Corp. v. Tech. Properties Ltd.*, No. 5:08-CV-00882 (PSG), 2013 WL 4782598, at *2 (N.D. Cal. Sept. 6, 2013).  In *HTC*, a patent licensing dispute, the court excluded evidence of TPL's bankruptcy under Rule 403 despite HTC's claims that it was relevant to showing that TPL's licensing program was unsuccessful, because "evidence of the bankruptcy proceeding might unduly taint the jury's opinion of TPL."  *Id.* (holding that any relevance was outweighed by risk of unfair prejudice).  Even in cases where the fact of a party's bankruptcy is integral to the issues at trial, courts have prohibited arguments that the bankruptcy is proof of a causal link between business practices at issue at trial and the entity's financial condition.  *See Off. Comm. of Unsecured Creditors v. CalPERS Corp. Partners LLC*, 1:18-CV-00068 (NT), 2021 WL 3264272, at *5 (D. Me. July 30, 2021) (in avoidance action, excluding plaintiff's argument that "1) [debtor's] bankruptcy filing necessitates the conclusion that [debtor] was insolvent, undercapitalized, or unable to pay its debts as they came due at the time of the Distributions, or 2) that the bankruptcy filing

necessitates the conclusion that [debtor's] financial projections, assumptions, or decisions at the time of the Distributions were unreasonable.").  Accordingly, any relevance of the bankruptcy would be substantially outweighed by the risk that the jury would infer that the FTX Debtor Entities were illegitimate and imply Mr. Bankman-Fried's guilt.

Moreover, it also cannot be said at this time that FTX customers will, in fact, lose money and not be made whole.  On April 12, 2023, the FTX Debtor Entities announced that they had $7.3 billion in liquid assets.  *See* Ex. B (Excerpts of Apr. 12, 2023 Hear'g Tr., *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD) (Bankr. D. Del.)) at 7:17-18.  That is almost enough to cover the full liability to customers, which John Ray estimated at $8.7 billion as of the petition date.  *See* Bankr. Dkt. 1704-1 at 35.  The balance could easily come from some combination of the FTX Debtor Entities' illiquid assets, new investors, and operating profits of the exchange if it is rebooted.[3]  In fact, on the same day, the FTX Debtor Entities disclosed that they are considering reopening the exchange at some time in the future and compensating customers with a combination of cash and an interest in the reopened exchange.  *See* Ex. B at 17:14-18:3.  Hence, any argument or evidence to the contrary would be unfairly prejudicial speculation and serve solely to inflame the jury by suggesting losses that are not yet known to be permanent.  *See* Fed. R. Evid. 403, advisory committee notes ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

Furthermore, should the Government be allowed to introduce these topics at trial, it would lead to extraneous detours and "mini-trials" on these issues, because the defense would be

---

[3] If one were to include the over $1 billion in proceeds that the FTX Debtor Entities should have recovered from the sale of 890 million token warrants for the SUI cryptocurrency (*see* discussion *infra*), the assets would be almost equivalent to the customer liability.

forced to rebut these inferences by eliciting evidence of the reasons for the bankruptcy and the motives of FTX's senior management, assisted by counsel, who forced out Mr. Bankman-Fried and filed the bankruptcy petition.  Indeed, some of the parties leaning hardest on Mr. Bankman-Fried to sign over control of FTX and its affiliates to Mr. Ray, so that he and FTX's outside counsel could steer the companies into bankruptcy, apparently stood to gain significantly from these events.

For example, it appears that the General Counsel of FTX.US, Ryne Miller, may have sought to secure his future by ensuring a lucrative role for FTX's outside counsel in shepherding FTX and the related entities into bankruptcy proceedings.  Mr. Miller had been a partner at that law firm as recently as 2021, immediately prior to serving as in-house counsel to FTX.US, Alameda, and FTX International.  *See* Bankr. Dkt. 530 at ¶¶ 12-13.  He also made it known that he intended to rejoin that firm after he left FTX.  *Id*. ¶ 15.  According to a sworn affidavit submitted in the bankruptcy proceedings by Dan Friedberg, former in-house counsel at FTX.US, FTX International, and Alameda, Mr. Miller was open about the fact "that it was very important for him personally to channel a lot of business to [the law firm] as he wanted to return there as a partner after his stint at the [FTX companies]."  *Id*.  Mr. Friedberg has further disclosed that he raised concerns about pushing the FTX companies into bankruptcy in the United States as opposed to a more appropriate jurisdiction like The Bahamas, in part due to "the unnecessary expense of the US bankruptcy system, the situs of the primary regulator, as well as the fact that creditors of the FTX International Group were outside the United States… amongst other legal issues."  *Id*. ¶ 34.  But, according to Mr. Friedberg, "Mr. Miller told [him] that the bankruptcy filings of FTX International Group, the Alameda Group, and the FTX.US Group had to be in the United States because otherwise [Mr. Miller's former law firm] couldn't do the job."  *Id*. ¶ 35.

Mr. Friedberg further disclosed that he "then told Mr. Miller that FTX.US should not file bankruptcy at all until it was certain that there were insufficient assets at FTX.US," but that, in response, "Mr. Miller stated that he needed to include FTX.US as part of the bankruptcy because FTX.US had the cash to pay [the law firm] its retainer." *Id*. ¶ 36.

Similarly, the defense would seek to elicit evidence of the extraordinary pressure that FTX senior management and outside counsel put on Mr. Bankman-Fried to relinquish control of FTX to protect themselves, install John Ray as the new CEO, and push the companies into Chapter 11 proceedings. *See* Ex. C (Slack Messages dated Nov. 10, 2022) at SDNY_02_00411762 (Zach Dexter, head of FTX U.S. Derivatives, agreeing that, in wresting control from Mr. Bankman-Fried, the "[g]oal is speed, protecting [Dexter] and the team"); Ex. D (Slack Messages dated Nov. 11, 2022) at SDNY_02_00412001 ("[I]t was not easy to get [Mr. Bankman-Fried] to do this . . . but eventually we were able to convince his personal counsel to convince him to do it.").

Finally, should the Government claim that FTX customers will not be made whole, the defense would have to delve into the FTX Debtor Entities' mismanagement of the bankruptcy estate and selling off assets at a fraction of what they are worth, in order to rebut the improper but unavoidable inference that the company's current financial condition is the result of Mr. Bankman-Fried's prior conduct. For example, the defense would seek to elicit that in March 2023, the FTX Debtor Entities sold off warrants for 890 million tokens of the SUI cryptocurrency, which FTX had acquired for $101 million. When FTX Ventures purchased the SUI token warrants in 2022, Mr. Bankman-Fried understood that this would be a longer-term investment and planned to hold the token warrants until the Sui network was operational, at which time he anticipated that the value of the tokens would dramatically increase in value. Mr.

Ray and the FTX Debtor Entities apparently did not understand this and approved the sale of the warrants for $96 million in March 2023, locking in a $5 million loss.  Less than two months later, the Sui network went live and the SUI tokens began trading at $1.13—putting the value of FTX's erstwhile holdings at over $1 billion.[4]

To avoid substantial prejudice and the unnecessary detours that would inevitably result from these mini-trials on collateral issues, the Court should preclude the Government from introducing evidence and arguments about the bankruptcy, or the solvency of FTX and Alameda, or their ability to make customers whole.  *See United States v. Ulbricht*, 79 F. Supp. 3d 466, 492–93 (S.D.N.Y. 2015) (in prosecution relating to the defendant's alleged operation of an online marketplace for illicit goods and services, excluding evidence that the marketplace sold illicit goods and services not mentioned in the indictment because such evidence "may mislead the jury and lead it to convict [the] defendant for uncharged conduct," and "may lead to a mini-trial on collateral issues, such as whether or not" the goods in question were in fact contraband); *United States v. Jadusingh*, 18-CR-257 (KAM), 2020 WL 207950, at *4 (E.D.N.Y. Jan. 14, 2020) (precluding government from introducing evidence that "runs the risk of confusing the jury and leading to a mini-trial").

## III.   EVIDENCE OF MR. BANKMAN-FRIED'S RESIGNATION FROM FTX SHOULD BE EXCLUDED

For the same reasons discussed above, the Court should exclude evidence of Mr. Bankman-Fried's forced resignation from FTX under Rules 401/402 and Rule 403.  The fact that FTX's senior leadership, assisted by outside counsel, strongarmed Mr. Bankman-Fried into

---

[4] *See, e.g.*, cryptopotato.com, "How FTX Missed a Potential 1 Billion Windfall from SUI Due to Bankruptcy" (May 6, 2023), *available at* https://cryptopotato.com/how-ftx-missed-a-potential-1-billion-windfall-from-sui-due-to-bankruptcy; *see also* N.Y. Times, "How FTX Missed a Lucrative Opportunity" (May 11, 2023), *available at* https://www.nytimes.com/2023/05/11/business/dealbook/ftx-sam-bankman-fried.html.

resigning and signing over control of the company is not a proper matter for this trial.  Relying

on "termination of employment" as evidence of acts committed in prior years "is inherently

suspect."  *United States v. Martoma*, No. 12-CR-971 (PGG), 2014 WL 31700, at *3 (S.D.N.Y.

Jan. 6, 2014).  As in *Martoma*, Mr. Bankman-Fried's separation "and the reasons for it are not at

issue here."  *Id.* at *4.  Permitting these issues to come before the jury "presents a serious risk of

misleading and distracting the jury," whose sole focus should be on whether Mr. Bankman-Fried

committed and conspired to commit the offenses for which he is being tried.  *Id.* at *3.

      In *Martoma*, the court recognized that "evidence that the Defendant was fired… carries

with it some level of prejudicial taint, and invites the jury to speculate as to the reasons why."

*Id.* at *4.  The same is true here, where the jury would undoubtedly speculate as to the reasons

for Mr. Bankman-Fried's forced resignation.  As a result, if his resignation were to become an

issue at trial, Mr. Bankman-Fried would be forced to explain the circumstances of his ouster

from FTX.  The defense would have to delve into the motives of FTX's leadership to move

precipitously into bankruptcy and their efforts to scapegoat Mr. Bankman-Fried and appease the

government and regulators by offering him up for prosecution.  *See, e.g.*, Ex. C at

SDNY_02_00411762 (reflecting that senior managers at FTX-related entities wanted to move

quickly to protect themselves).

      This is ultimately a sideshow that has little relevance to the charges to be tried, but it

would undoubtedly be required to rebut the improper implication that Mr. Bankman-Fried's

forced resignation is evidence of his guilt.  *See United States v. Yagi*, 12-CR-0483 (EMC), 2013

WL 10570994, at *6 (N.D. Cal. Oct. 17, 2013) (allowing evidence that was "relevant to rebut the

government's inference that [defendant's] 'abrupt' resignation is a sign of a consciousness of

guilt").  The Court should exclude this topic entirely so that the trial does not get sidetracked.

IV.     **THE GOVERNMENT SHOULD NOT BE PERMITTED TO INTRODUCE PUBLIC STATEMENTS THAT PERTAIN TO FTX.US**

The Government should be precluded from introducing public statements regarding FTX.US under Rule 401 and Rule 403.  The references to "FTX" throughout the S5 Indictment refer to FTX.com, a foreign digital exchange that was organized in Antigua and headquartered in The Bahamas, did not accept U.S. customers, and generally operated abroad.  *See* S5 Indictment ¶¶ 2, 11, 17 (describing FTX Trading Ltd. dba FTX.com as a "global cryptocurrency exchange" and "an international platform").  The Government expressly distinguishes FTX from its "smaller sister company," FTX.US.  S5 Indictment ¶ 2; *see also id.* ¶ 17 (differentiating FTX.US as "FTX's business in the United States").  The charges in the S5 Indictment concern alleged fraud on lenders to Alameda Research and customers and investors of FTX—not FTX.US. Nonetheless, the S5 Indictment refers to representations that FTX.US was focused on "investor and client protection" and advertisements describing FTX.US as the "safest and easiest way to buy and sell crypto" and "the most trusted way to buy and sell" digital assets.  *Id.* ¶ 2.[5]

Public statements and advertisements about FTX.US are not relevant to whether investors or customers of FTX were defrauded.  Statements about FTX.US refer to the U.S. exchange and are not probative of whether customers of FTX, the international exchange, were led to believe anything at all about FTX.  It is simply illogical to claim that investors and customers of FTX were defrauded as a result of statements made not about FTX, but about an entirely separate platform.  These statements are therefore irrelevant and should be excluded under Rule 401.

---

[5] The S6 Indictment likewise repeats these allegations in substance.  *See* S6 Indictment, ECF No. 202 at ¶ 3 ("BANKMAN-FRIED further burnished his image by spending millions of dollars to promote FTX, and its sister company FTX.US, as safe places to invest in cryptocurrency, through celebrity endorsement deals, television advertisements, and other high-profile promotions.").

Even if these statements had some relevance, it would be substantially outweighed by the risk of unfair prejudice, confusion of the issues, and waste of time. *See* Fed. R. Evid. 403. Introducing purported misstatements about FTX.US would be highly prejudicial and confusing to the jury because it would give the incorrect impression that the Government is charging Mr. Bankman-Fried with defrauding U.S.-based customers of FTX.US. As noted above, the only customers at issue in the S5 Indictment are those of FTX, not FTX.US—there is no allegation in the S5 Indictment that customers of FTX.US were defrauded. This is a crucial distinction because, unlike FTX.US, FTX was not available to U.S. customers. Suggesting that U.S. customers were defrauded, when the allegations involve customers of FTX, a business that was not open to U.S. customers, is inflammatory and raises an unavoidable risk of unfair prejudice.

Admitting public statements about FTX.US would also result in wasting time, as the defense would be required to put on additional evidence to rebut the Government's contention that the statements were in fact false. Delving into such matters on a collateral issue is an unnecessary distraction and should be avoided by excluding the statements. *See United States v. Hawkins*, 360 F. Supp. 2d 689, 696 (E.D. Pa. 2005) (holding defendant's alleged misstatement to grand jury about his wealth were not admissible in perjury prosecution, where statement was collateral to actual charge of perjury, and government's evidence rebutting statement would open a line of collateral evidence). The Court should therefore exclude evidence of public statements about FTX.US that the Government contends were misstatements.

## V.     THE COURT SHOULD ORDER THE GOVERNMENT TO PRODUCE ANY ORALLY COMMUNICATED *BRADY* MATERIAL IN ITS POSSESSION

Under controlling Second Circuit precedent, the Government must produce any *Brady* or *Giglio* information that it received via oral communications, regardless of whether it was written down or recorded. *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) ("The

17

obligation to disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form.").  This rule is consistent with Department of Justice policy, which requires the Government to review "Substantive Case-Related Communications" for *Brady* material.  *See* Justice Manual § 9-5.002.  Such communications include "factual reports about investigative activity, factual discussions of the relative merits of evidence, factual information obtained during interviews or interactions with witnesses/victims, and factual issues relating to credibility."  *Id*.; *see also id*. ("[M]aterial exculpatory information that the prosecutor receives during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email.").

All of the *Brady* material that the Government has turned over to the defense to date is in written form.  But the discovery produced by the Government includes emails between the Government and outside counsel for the FTX Debtors and billing records from the FTX Debtors' outside counsel, which reference frequent phone calls between the Government and the FTX Debtors and numerous oral presentations the FTX Debtors have given to the Government since November 9, 2023.  These presentations have been about a wide range of topics that are central to the case.  To our knowledge, the Government's disclosures up to this point do not include any *Brady* information that was communicated during those discussions.  On July 9, 2023, the defense wrote to the Government requesting that it acknowledge its obligation to produce any *Brady* material that was communicated during these oral discussions with the FTX Debtors or their outside counsel, and that the Government immediately produce any such *Brady* material to the defense.  The Government has not responded to this letter.  Accordingly, we respectfully request that the Court order the Government to produce immediately any orally communicated *Brady* material in its possession.

## VI.   MR. BANKMAN-FRIED RESERVES HIS RIGHT TO RESPOND TO THE GOVERNMENT'S MOTIONS *IN LIMINE* TO INTRODUCE EVIDENCE RELATED TO THE SEVERED AND WITHDRAWN COUNTS

By letter to the Court dated August 8, 2023, the Government gave notice of its intention to file a superseding indictment containing "the seven counts that the Government intends to prove at trial in October" (the "Trial Charges").  ECF No. 195.  These counts charge Mr. Bankman-Fried with wire fraud and conspiracy to commit wire fraud against FTX's customers, wire fraud and conspiracy to commit wire fraud against Alameda's lenders, and conspiracies to commit commodities fraud, securities fraud, and money laundering.  The Government also asserted that "[t]he superseding indictment will make clear that Mr. Bankman-Fried remains charged with conducting an illegal campaign finance scheme as part of the fraud and money laundering schemes originally charged," and that, "as [it] will outline in its forthcoming motions *in limine*, the evidence of the defendant's campaign finance conduct is admissible at trial as direct proof of the Trial Charges" or, in the alternative, as Rule 404(b) evidence.  *Id.*

Accordingly, to the extent that the Government seeks to introduce evidence of the withdrawn campaign finance charge as either direct proof of the remaining charges or under Rule 404(b) as indicated in the Government's letter, the defense reserves the right to respond to the Government's arguments in support of its position after they are made.  The Government has also represented to the defense that it will include in its motions *in limine* argument concerning the admissibility of evidence relating to the severed counts, and the defense will likewise respond to those arguments after they are made.

## VII.  TO THE EXTENT THE GOVERNMENT SEEKS TO ADMIT DOCUMENT METADATA, MR. BANKMAN-FRIED RESERVES HIS RIGHT TO OPPOSE THE ADMISSIBILITY OF SUCH EVIDENCE

Document metadata, as relevant here, refers to the set of data associated with a document that purports to describe certain attributes of that document.  Typical examples of metadata

include information about who authored the document, who accessed the document, when the document was first created, when the document was last edited and by whom, and other descriptive information.  But metadata is not necessarily accurate or intrinsic to a particular document.  For example, it is possible to overwrite metadata and manually input it into data fields on certain electronic document review platforms; this in turn encodes the document with the manually input metadata in subsequent productions.  Metadata can also be altered as a result of user error in loading metadata files into an electronic database.  Metadata may also be altered as a result of how documents are stored before they are migrated to an electronic database or review platform.  The defense has reason to believe that the metadata for certain documents produced in discovery is incomplete, unreliable, and may be misleading.

Should the Government seek to introduce metadata as evidence, for example to prove that Mr. Bankman-Fried authored, accessed, edited, or reviewed a particular document, Mr. Bankman-Fried reserves his right to oppose such evidence on the grounds that it is incomplete, unreliable, and misleading, and any other grounds that may be warranted.

## **CONCLUSION**

For the foregoing reasons, the Government should be precluded from (i) introducing any evidence produced to the defense on or after July 1, 2023; (ii) introducing evidence or eliciting testimony that FTX or Alameda Research filed for bankruptcy protection or concerning whether those entities were solvent or able to make customers whole, (iii) introducing evidence or eliciting testimony concerning Mr. Bankman-Fried's resignation from FTX, and (iv) introducing evidence or eliciting testimony concerning public statements that pertain to FTX.US.  The Court should also order the Government to produce immediately to the defense any orally communicated *Brady* material in its possession.  The defense further reserves its right to oppose

the admission of evidence related to the severed and withdrawn counts and the admission of

document metadata that it deems incomplete, unreliable, or misleading.

Dated:  August 14, 2023
        New York, New York

                                    Respectfully submitted,


                                    _/s/ Mark S. Cohen_____
                                    Mark S. Cohen
                                    Christian R. Everdell
                                    Sri K. Kuehnlenz
                                    **COHEN & GRESSER LLP**
                                    800 Third Avenue, 21st Floor
                                    New York, NY  10022
                                    Phone:  (212) 957-7600
                                    mcohen@cohengresser.com
                                    ceverdell@cohengresser.com
                                    skuehnlenz@cohengresser.com

                                    *Attorneys for Samuel Bankman-Fried*