

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 29, 2023

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   ***United States v. Samuel Bankman-Fried*, S5 22 Cr. 673 (LAK)**
      **Response to Defendant's Motion *in Limine* Regarding Discovery**

Dear Judge Kaplan:

The Government respectfully submits this letter in opposition to the defendant's motion *in limine* seeking to preclude the Government from introducing any evidence produced after July 1, 2023. (Dkt. 207). The Court should reject the defendant's arguments that certain evidence should be precluded from trial based on the timing of the Government's Rule 16 discovery productions. The defendant has not identified any Rule 16 violation by the Government, nor has he made a showing of substantial prejudice from the timing of the Government's disclosures that would warrant any relief, let alone the preclusion of evidence at trial.

In his motion and in his letters dated August 25, 2023 (Dkt. 228) and August 28, 2023 (Dkt. 233), the defendant primarily relies on the volume of the Government's recent productions in the hope of obtaining advantage at trial through the exclusion at trial of relevant, competent evidence of the defendant's guilt, evidence of which he has long been aware. For instance, his August 25 letter twice refers to 4 million pages of materials produced on August 23, a number that is set forth in boldface for emphasis. Then, his August 28, 2023 letter refers to what he claims is an additional 3.7 million pages of discovery.

The defendant's representations are distorted to the point of being misleading. The 4 million pages referenced in the defendant's August 25, 2023 letter are materials that the Government obtained from Google in response to a search warrant for the defendant's own Google accounts. While the Government only recently obtained these materials due to a production error by Google that was identified for the defendant and to the Court months ago, the defendant has had his own access to these materials throughout the pendency of this case, because they come from his own Google accounts. He cannot plausibly claim to be prejudiced by the Government's production of these materials, as he had months prior to being detained to mine them for materials relevant to his defense. That the defendant has done precisely that is evidenced by the fact that, as

the Court is aware, he identified documents from his Google accounts that he believed would discredit one of the Government's cooperating witnesses and provided them to a widely read publication.

In addition to producing the entirety of the defendant's Google documents on August 23, the Government also produced the portions of the defendant's Google account that it had identified as responsive to the search warrant on August 25. That is the majority of the 3.7 million pages referenced in the Defendant's August 28 letter.[1] In the Government's production letter for these documents, the Government identified this production as the "responsive and non-privileged documents" from the defendant's Google account. These documents put the defense on notice of which documents from the defendant's Google account the Government has identified as responsive, but they do not add anything to the total volume of discovery. In other words, the vast majority of the latter production of 3.7 million pages constitutes a duplicative subset of prior productions, and the defense is literally double counting to inflate the amount of discovery the Government has produced. And, because the defendant has long had access to the entirety of his Google account, none of this material is new to the defense.

The defendant's motion *in limine* nonetheless seeks to preclude the Government from using the documents from his own Google account, which have long been in his possession, while he would be free to selectively identify and use materials from his Google accounts without limit. That would be a manifestly unfair result. The motion should be denied.

## A. Applicable Law

Rule 16 of the Federal Rules of Criminal Procedure requires the Government to permit the defense, upon request, "to inspect and to copy or photograph" any "books, papers, documents, data, photographs, [or] tangible objects" in the Government's possession, custody or control, that are "material to preparing the defense," that the "Government intends to use . . . in its case-in-chief," or that "was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E)(i)-(iii). Similarly, upon a defendant's request, the Government must "disclose to the defendant, and make available for inspection, copying, or photographing, . . . any relevant written or recorded statement by the defendant" within the Government's possession, custody or control, or that the Government knows (or could, through "due diligence," know) exists. Fed. R. Crim. P. 16(a)(1)(B)(i).

The touchstone of Rule 16 is the Government's "duty of disclosure." *United States v. Matthews*, 20 F.3d 538, 550 (2d Cir. 1994). While "[i]t is common practice for the Government to produce to defendants copies of Rule 16 material, either in digital or paper form, . . . it is not required by the terms of the rule. Rather, Rule 16 requires that the Government disclose the material and make it available for inspection, copying, or photographing." *United States v. Healey*, 860 F. Supp. 2d 262, 269 (S.D.N.Y. 2012). Indeed, the text of Rule 16 makes clear that the duty is to disclose the existence of the material rather than to produce copies of the material. *See* Fed.

---

[1] The Government also produced some materials it had recently obtained via responses to subpoenas and voluntary requests to third parties, and made an early production of statements by certain non-testifying witnesses.

R. Crim. P. 16(a)(1)(E) (the Government "must permit the defendant to inspect and to copy" any materials covered by the rule); Fed. R. Crim. P. 16(a)(1)(B) (the Government "must disclose" and "make available for inspection, copying, or photographing" any relevant written or recorded statements by the defendant covered by the rule); Fed. R. Crim. P. 16(c) (when a party discovers any additional material subject to discovery, that party "must promptly disclose its existence to the other party").

If the Government fails to comply with its disclosure obligations under Rule 16, the district court "has broad discretion to determine what remedial action, if any, is appropriate." *United States v. Miller*, 116 F.3d 641, 681 (2d Cir. 1997); *see also* Fed. R. Crim. P. 16(d)(2). Preclusion of evidence is not a preferred remedy when there are delays in the Government's Rule 16 disclosures. *United States v. Monsanto Lopez*, 798 F. App'x 688, 690-91 (2d Cir. 2020) (affirming district court's order of a brief continuance rather than preclusion, and holding that defendant suffered no prejudice where "he received the materials he argues were untimely produced over a month before trial ultimately began"). Rather, a continuance is the preferred remedy "because it gives the defense time to alleviate any prejudice it may have suffered from the late disclosure." *United States v. Marshall*, 132 F.3d 63, 70 (D.C. Cir. 1998) (citing *United States v. Euceda-Hernandez*, 768 F.2d 1307, 1312 (11th Cir. 1985)); *see United States v. Pineros*, 532 F.2d 868, 871 (2d Cir. 1976) (the court should consider, inter alia, " 'the feasibility of rectifying [any] prejudice by a continuance' " (quoting Advisory Committee Notes on Rule 16(g))).

## B. The Defendant Has Not Demonstrated Any Rule 16 Violation or Any Prejudice From the Timing of the Government's Discovery

The Government has complied with its Rule 16 discovery obligations, producing material promptly as it has been obtained and processed, and with enough time for the defense to review it before trial. The defense has failed to identify any violation of Rule 16, and instead simply objects to the timing of the Government's productions. But the defense's presentation of these issues is misleading in multiple respects. First, the defense motion rehashes points about the Government's prior productions that have been previously addressed by the Court and that involve productions the defense has had in its possession for months that are not even the subject of the defense motion. Second, the defendant's motion and his August 25 and August 28 letters emphasize the volume of the Government's more recent productions. But the majority of that volume consists of materials from the defendant's own Google accounts, and, as noted above, the volumes cited by the defendant are misleadingly inflated. As the defense motion and letter make clear, the defendant has long had access to his Google accounts and had months to review them and identify materials relevant to his defense, prior to being detained. It is the Government that has only recently come into possession of these materials, and has promptly produced them at the same time as they have come into possession of the Government's investigative team.

First, the defense resubmits its June 5, 2023 letter regarding discovery issues as an attachment to its motion, and repeats complaints from that letter about the timing of some of the Government's prior disclosures. (Dkt. 207 at 5). For example, the defense notes that the contents of some laptops were produced on April 24, 2023, instead of in the first week of April as the Government had previously forecast, and that the contents of others were produced on May 23, 2023, instead of at the end of April. (*Id.*). Those modest delays were a product of the time it took

to process this electronic discovery, and not dilatoriness. Furthermore, these productions were made sufficiently in advance of trial to give the defense several months to review the material.

The Government previously provided the Court with an update on this discovery in its June 14, 2023 letter (Dkt. 161), and the parties discussed the status of discovery at the June 15, 2023 hearing. At that hearing, the defense did not claim that the timing of the Government's disclosures to date would impair its ability to prepare for trial, and instead pressed for voluminous new disclosures in the form of FTX's entire codebase and codebase history, materials that at the time the Government did not possess and thus had no obligation to produce. (June 15, 2023 H'g Tr., at 44). The Government has since obtained that material from the FTX Debtors and made it available to the defense. Even now, the defense does not identify any prejudice resulting from the timing of these past Government disclosures.

In his motion *in limine*, the defendant argues that materials produced after July 1 should be precluded from trial. But he provides no basis for that arbitrary cutoff. The defendant argues that the Court's pretrial scheduling order dated July 1, 2023 did not contemplate additional discovery, but that scheduling order says nothing about the timing of additional Rule 16 disclosures by the Government. (Dkt. 173). And at the June 15, 2023 hearing, the Government described the nature of its ongoing productions, including the very categories of documents that the defendant is now complaining about. (June 15, 2023 H'g Tr., at 42-43).

The subsequent productions raised in the defendant's motion are primarily in the categories that were described in the Government's June 14, 2023 letter and discussed at the June 15 hearing. (*See* Dkt. 161).

1. *Slack Archives from Gary Wang's laptop.* On August 11, the Government made a production of Slack messages recovered from Gary Wang's laptop. These materials had to be extracted from the laptop, converted to a file format that was viewable (which itself was a resource-intensive and time-consuming process) and then reviewed for potential privilege, which delayed their disclosure, but that meant that they were also not in the possession of the investigative team during the privilege review process. The Government previously explained this process in its June 14 letter. (*See* Dkt. 161 at 2). These Slack messages appear to primarily be messages that Wang backed up to his laptop in November 2022 from the FTX servers. Based on the Government's initial review, many of the Slack messages—particularly those involving the defendant—appear to be duplicative of materials produced to the Government by the FTX Debtors that the Government produced months ago. Thus, the aggregate number of pages of material referenced in the defendant's motion—750,000 pages, which is a small fraction of the total discovery—is not a reliable indicator of the burden of reviewing these materials. Furthermore, these materials were produced more than seven weeks before the trial date, and the defendant's motion offers no explanation for why he cannot review this text-searchable discovery for any new materials that may be relevant to trial, especially when he is receiving the materials on approximately the same timeframe as the Government's investigative team. Notably, the defendant now complains about something he previously requested: on April 22, 2023, in a letter demand the defendant asked for a copy of all Slack messages, and his counsel reiterated

that request on a telephone call four days later. It cannot be that the defendant can strategically make a record of discovery he claims he is entitled to but is not getting, and then when he gets it, move to preclude its use.

2. *Materials from the defendant's Google accounts.* The Government also produced materials from the defendant's Google accounts on August 10 and August 23, and produced a responsive subset of materials on August 25, 2023. The Government's June 14 letter provided notice to the Court and the defense that it was expecting additional production from Google of these materials. (Dkt. 161, at 2). As noted in the Government's June 14 letter, the delay in this production was due to an error by Google in failing to produce certain materials responsive to a search warrant in the first instance. Because these materials come from the defendant's Google documents, they are materials that the defendant has had access to throughout the pendency of this case—as recent litigation in this case has made plain. The defendant cannot plausibly claim now that the Government's production of materials from his Google account that have long been in his possession will impair his ability to prepare for trial. Moreover, the August 10 production consisted of documents that had not yet been reviewed for privilege by the Government's filter team, meaning that the defendant received them before the prosecution team was able to begin its own review.

3. *Subpoena and other third-party returns.* The Government made productions on July 12, July 28, and August 8, 2023, and the defense motion cites the volume of those productions. (Dkt. 207 at 6). In fact, almost the entirety of those productions consisted of materials produced to the Government from third parties in response to grand jury subpoenas or document requests. The Government's June 14 letter provided notice to the Court and the defense that the Government was continuing to receive such materials and would produce them on a rolling basis. These materials were produced by the Government promptly after they were received, so the parties are similarly situated in their ability to review them. The Government has also produced these materials in text-searchable formats and with a detailed index listing the sources of the documents so that the defense can review them quickly through targeted searches and electronic sorting. The defendant's motion makes no effort to explain why the defense would be unable to review these materials in the more than two months between their production and the trial date.

The volume of these third-party productions cited by the defense is additionally misleading, because the largest single item in the recent productions is the FTX codebase, which the Government obtained from the FTX Debtors and produced at the defendant's request, a request which the defense made with full knowledge of the volume of these materials.

In summary, the defendant recounts prior complaints about discovery that he has now had for months, and mischaracterizes the nature of the more recent discovery produced in this case. He focuses on page counts[2] and does not provide any specificity about whether the timing of the

---

[2] The focus on page counts, in particular, exaggerates the magnitude of the new materials since page counts reflect the amount of pages if all the documents were printed, but the documents

production of these materials will actually prevent the defense from preparing for a trial date that is still more than a month away. There has been no Rule 16 violation, and regardless, preclusion of the evidence is unwarranted "unless the violation caused the defendant substantial prejudice." *United States v. Thai*, 29 F.3d 785, 804 (2d Cir. 1994). The defense has not made the required "specific showing of prejudice" that would warrant any relief. *United States v. Dupree*, No. 10 Cr. 627 (KAM), 2011 WL 5976006, at *10 (E.D.N.Y. Nov. 21, 2011); *see also Monsanto Lopez*, 798 F. App'x at 690 (finding the government's disclosure of new discovery one month before trial did not violate Rule 16 because the "evidence was promptly produced to defense counsel" and the defendant had sufficient time to review the material).

Even if relief were warranted, however, the appropriate remedy would not be to preclude evidence from trial, particularly here where the Government has produced evidence promptly as it has been extracted, processed, and—where applicable—screened for privileged material and reviewed for evidence responsive to search warrants. This is especially true with respect to the materials from the defendant's Google accounts. The effect of granting the defendant's motion would be to create a category of materials that the defense has had throughout the pendency of this case and has never produced, but is free to use at trial. Meanwhile, the Government would be precluded from using those same materials because of the time it took for the Government to obtain them from a third party via a search warrant and filter them to protect the defendant's privilege. Needless to say, the defense does not cite any legal authority that would countenance such a perverse result.

The defendant cites two cases in which a court ordered preclusion of certain materials, but each of those cases contained unusual facts not present here. In *United States v. Mason*, the court found that the government had offered no reason for its failure to disclose a fingerprint report that had "sat in the government's file undisclosed for eleven months," and that the government had additionally "selectively failed to produce" certain documents from a search for months, despite requests for those documents by the defense. No. 06 Cr. 80 (NRB), 2008 WL 281970, at *3-4 (S.D.N.Y. Jan. 25, 2008). The court acknowledged that its usual remedy would be to "adjourn[] the trial date," but held that in the unusual circumstances of that case, preclusion was warranted. *Id.* Here, by contrast, there is no suggestion that the Government has been sitting on undisclosed materials. Rather, the Government has been processing data from multiple sources, passing it through privilege review where required, and producing it to the defense as soon as it becomes available to the Government (and at times even before).

The defense also cites *United States v. Garcia*, 730 F. Supp. 2d 1159, 1170 (C.D. Cal. 2010), but that out-of-district case is even farther afield. There, the court had entered a specific order that any discovery produced after a particular date would "not be admissible at trial," and the court found that the government had failed to show any reason why it had not produced readily accessible discovery prior to that date. *Id.* at 1168. Neither of those circumstances is present here, where the Government has regularly provided the Court and the defense with updates on its

---

are reviewed electronically, and thus document count is a more accurate metric for determining the relative size of the productions. For example, while the defendant describes the production of his own Google account as being 4 million pages, the number of documents is under a million.

ongoing discovery, and has acted diligently to produce discovery on a rolling basis as documents are received. There is no basis for preclusion of evidence on these facts.

Even if the defense could establish a late disclosure that the defense was unable to effectively review in advance of trial—which it has not—the appropriate remedy, as numerous courts in this circuit have recognized, would be a brief adjournment of the trial, not the preclusion of evidence. *See, e.g., United States v. Reichberg*, No. 16 Cr. 468 (GHW), 2018 WL 6599465, at *15 (S.D.N.Y. Dec. 14, 2018) ("Under current practice, the usual remedy for late *Brady* disclosure is a continuance to permit the defendants time to prepare to meet it."); *United States v. Tomasetta*, No. 10 Cr. 1205 (PAC), 2012 WL 896152, at *7 (S.D.N.Y. Mar. 16, 2012) (two-month adjournment of trial was a sufficient remedy for the government's late production of 43 boxes of materials); *see also United States v. Steiner*, No. 19 Cr. 295 (HG), 2022 WL 2390943, at *2 (E.D.N.Y. July 1, 2022) ("Where the issue is late disclosure, a continuance is sufficient to cure any prejudice, even if a Rule 16 violation occurred."); *Dupree*, 2011 WL 5976006, at *10 (denying defendant's motion to preclude evidence due to late production of multiple hard drives in possession of government witness). Notably, the defense has not even suggested such a remedy, and no adjournment is warranted under these circumstances.

## C. If Anything, It Is the Government That Has Been Prejudiced by the Defense's Strategic Behavior Regarding Discovery

The defendant's motion *in limine* also complains that the Government's August 10, 2023 letter requested that the defense produce a privilege log for certain documents from the defendant's Google documents. (Dkt. 207 at 6). The Government has walled these documents off from review by its investigative team at the defense's request, even though the information the Government has about these documents strongly suggests that at least many of them are not privileged.

By way of background, defense counsel informed the Government early in this case that some of the defendant's Google documents may be privileged but do not contain defense counsel's names, and indicated that the defense would object to the Government's review of any Google documents produced or modified after defense counsel was retained. Defense counsel further suggested to the Government that the defendant may have received legal advice from his parents. With respect to the question of legal advice from the defendant's parents, the Government notes that the defendant's father worked for FTX, but has not been identified by the company as one of its lawyers. Additionally, the defendant's parents received millions of dollars in property paid for by the company, and the defendant's father was present with the defendant in the final days of the company, while it was collapsing. There is thus strong reason to believe that documents shared with the defendant's parents in particular contain evidence relevant to the charged offenses.

Nonetheless, to accommodate the defense request, the Government's filter team identified two batches of documents, one consisting of Google Documents—specifically word processing documents and spreadsheets—created or modified after November 12, 2022, and one consisting of documents that hit on the names of the defendant's parents. The Government's August 10, 2023 letter notified the defense of these two sets of documents and asked the defense to indicate whether the defendant is asserting privilege over these materials. With respect to the first, smaller set (totaling approximately 2,000 pages), the Government requested a response by September 5, and

with respect to the second set (totaling approximately 13,000 pages), the Government requested a response by September 21, 2023.

The Government's request to the defense is an entirely reasonable one given the nature of the defendant's privilege assertion. Based on information available to the investigative team, it appears that there are relevant and non-privileged materials that are currently being withheld from the Government due to the broad nature of the defense's request. To take just one example, Google header data indicates that the defendant created a document titled "Where did the money go," on or about December 31, 2022. The defendant emailed this document to a political consultant who formerly worked for the defendant, copying the defendant's father and two other individuals, on January 1, 2023. Given the title of the document, it almost certainly contains statements of the defendant relating to the crimes alleged in the Indictment. Ordinarily, a document like this would not appear to be privileged, and even if it were, the privilege would be waived by the defendant's sharing the document with third parties. In an abundance of caution, however, and due to defense counsel's representations, the Government's filter team has withheld this document from the investigative team.

In short, there is a real risk that the defense's ambiguous assertions of potential privilege are being used to improperly shield relevant evidence from the Government. The proper way to address that concern is for the defense to identify what materials it intends to actually assert privilege in, and the basis for that privilege, which would allow the Government to challenge the assertion of privilege. Otherwise, the defense could shield these documents without taking a position on them, and then selectively disclose and use particular documents at trial without any prior opportunity for the Government to review them in context. That result would compromise the fairness of the trial, and would be contrary to well-established law. *E.g., In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) ("[A] party cannot partially disclose privileged communications or

affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.")

Accordingly, the Government respectfully requests that the Court order the defense to produce a privilege log regarding the first set of documents by September 5, 2023, and the second set of documents by September 21, 2023.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/ Thane Rehn
Nicolas Roos
Danielle R. Sassoon
Samuel Raymond
Thane Rehn
Danielle Kudla
Assistant United States Attorneys
(212) 637-2354

Cc:    Defense Counsel (by ECF)