

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 29, 2023

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

     Re:   *United States v. Samuel Bankman-Fried*, S5 22 Cr. 673 (LAK)

Dear Judge Kaplan:

     The Government respectfully submits this letter in response to the defendant's letter dated August 25, 2023 (Dkt. 228). In that letter, he asserts—without any legal authority—that the current processes for the defendant's review of electronic discovery, provided by the United States Marshals Service (the "USMS") and the Bureau of Prisons (the "BOP"), after the defendant was detained earlier this month, are "plainly inadequate" and a violation of his Sixth Amendment right. As outlined below, the BOP and the USMS have adopted a number of measures to grant the defendant continued access to discovery and counsel while ensuring the defendant's personal safety and that of other inmates. These measures give the defendant more than adequate opportunity to "assist in his own defense," and thus comply with the Sixth Amendment. *United States v. Guzman Loera*, 24 F.4th 144, 154 (2d Cir. 2022). There is therefore no basis to grant the defendant the extraordinary accommodations unavailable to other inmates that he requests, let alone to grant him temporary release.

     **I.**   **Relevant Facts**

     Between December 21, 2022, and August 11, 2023, the defendant was released pending trial and resided at his parents' home. During this time period, the defendant's conditions of release permitted him to have internet access to review electronic discovery and to communicate with defense counsel through a variety of means, including in-person meetings, phone, video teleconference, and electronic document sharing applications, such as Google Drive, a cloud-based file storage system, and Google Docs, an online word processor.

     On August 11, 2023, after briefing and oral argument, the Court revoked the defendant's bail and ordered him detained pursuant to 18 U.S.C. § 3148(b), finding that there was probable cause to believe that the defendant had twice committed witness tampering while on pretrial

release. (Dkt. 200). Both of these incidents involved the defendant's improper use of the internet and electronic communication applications, including Google Docs in the second instance.

On August 18, 2023, the Government filed a letter outlining the accommodations that the USMS and the BOP had made to allow the defendant to continue his trial preparation while detained, despite the BOP's policy prohibiting the use of any internet-enabled electronic device (the "August 18 Letter"). (Dkt. 200). The procedures outlined in the August 18 Letter balanced a number of considerations, including the defendant's interest in reviewing cloud-based discovery, his personal security, and the security of other inmates. In addition to the procedures outlined in the August 18 Letter, on August 28, 2023, the BOP authorized the defendant to have daily access to an "air gapped" laptop (*i.e.*, a laptop that is incapable of connecting wirelessly or physically with other computers or network devices) during visitations with counsel at the MDC. The air-gapped laptop will enable the defendant to review materials and share work product with counsel through the exchange of hard drives—mooting one of the defendant's chief complaints.[1]

## II.   Applicable Law

The Sixth Amendment protects the right of a criminal defendant to the effective assistance of counsel. *See* U.S. CONST., amend. VI. The Sixth Amendment also "guarantees a criminal defendant is provided with 'a meaningful opportunity to present a complete defense.'" *United States v. Crandall*, 748 F.3d 476, 481 (2d Cir. 2014) (quoting *Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006)). "Yet the Sixth Amendment does not create an absolute right to the elimination of all difficulties or impairments that may hinder a criminal defendant's capacity to perfectly comprehend, and participate in, court proceedings," and while "[p]erfect participation by a criminal defendant is optimal, . . . perfection is not required by the Sixth Amendment." *Id*. Thus, the "Sixth Amendment right to participate in one's own trial encompasses the right to reasonable accommodations." *Id.* The Sixth Amendment does not, however, require that a criminal defendant—particularly one represented by able counsel—be given his own opportunity to review all discovery, let alone in whatever manner he desires. *See, e.g.*, *Guzman Loera*, 24 F.4th at 152-55 (restrictions on manner and opportunity to meet with counsel and prepare for trial not a violation of Fifth or Sixth Amendments); *United States v. Moore*, 322 F. App'x 78, 83 (2d Cir. 2009) (restrictions on use of 3500 material in prison not a violation of Fifth or Sixth Amendments); *United States v. Ahmed*, No. 10 Cr. 131 (PKC), 2011 WL 4915005, at *3-6 (S.D.N.Y. Sept. 23, 2011) (restrictions on a defendant's review of material under the Classified Information Procedures Act not a violation of Fifth or Sixth Amendments); *see also United States v. Celis*, 608 F.3d 818, 840-41 (D.C. Cir. 2010) (right to assist in own defense does not require provision of all discovery in defendant's native language).

Indeed, the Second Circuit has recognized that, "[a]lthough pretrial detention . . . undoubtedly makes communication with counsel and preparation for trial more cumbersome, without more, those consequences do not result in an interference of constitutional significance." *United States v. Dettelis*, 372 F. App'x 105, 106 (2d Cir. 2010). While pretrial detention inevitably

---

[1] BOP informed the Government of this accommodation, and the Government has, in turn, told defense counsel that BOP has permitted the defense counsel to provide the air-gapped laptop to the defendant.

"does pose a certain degree of inconvenience to the defendant and her counsel in preparing for her defense at trial . . . . as long as the detainee receives a reasonable opportunity to seek and receive the assistance of counsel, the Sixth Amendment is not violated." *United States v. Sirianni-Navarro*, No. 10 Cr. 188A (RJA), 2010 WL 5419034, at *4 n.2 (W.D.N.Y. Dec. 23, 2010); *see also United States v. Schulte*, No. 17 Cr. 548 (JMF), 2023 WL 2614242, at *1 (S.D.N.Y. Mar. 23, 2023) ("[A]ny right of access to legal resources owed to pretrial detainees is satisfied when the presiding courts merely offer such detainees appointed counsel or standby counsel." (internal quotation marks and citation omitted)).

When evaluating whether pretrial conditions of detention impede a defendant's Sixth Amendment right to counsel, the Second Circuit has applied a four-factor test outlined in *Turner v. Safley*, 482 U.S. 78 (1987). *See Guzman Loera*, 24 F.4th at 153; *see also United States v. Ghailani*, 751 F. Supp. 2d 508, 512-13 (S.D.N.Y. 2010) (applying *Turner* factors to claim by pre-trial detainee of interference with ability to participate in own defense). Under *Turner*, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 87, 98. The four *Turner* factors used to determine the reasonableness of a prison restriction are: (1) whether there is a valid, rational connection between the prison regulation and a legitimate government interest used to justify it; (2) whether there are alternative means for the prisoner to exercise the asserted right; (3) the impact that accommodation of the asserted right would have on guards, other inmates, and prison resources; and (4) the absence of ready alternatives to the regulation at issue. *See id.* at 89-91.

**III.     Discussion**

The defendant now points to a number of ways in which the manner in which he would like to assist his counsel's preparations for trial have been curtailed or made less convenient, and, asserting, *ipse dixit*, that such inconveniences violate the Sixth Amendment of the Constitution, demands his release from detention.[2] But while the Government does not doubt that the circumstances of the defendant's pretrial detention, resulting from a probable cause determination regarding his repeated witness tampering, have made it less convenient for the defendant and for his counsel, the defendant's preferences for how to prepare for trial do not provide a basis to reevaluate the danger to the community and to the integrity of this trial that the defendant's release poses. *See United States v. Schulte*, No. 17 Cr. 548 (PAC), 2021 WL 4784306, at *3 (S.D.N.Y. Oct. 12, 2021) (impositions on *pro se* defendant's preparation for trial are "not a backdoor out of the SAMs").

While the defendant invokes the Sixth Amendment repeatedly in his letter, he cites no case or other authority standing for the proposition that the Sixth Amendment requires an opportunity for the defendant to build his own spreadsheet, have "constant access to an internet-enabled computer" (Dkt. 228 at 1-2), or use any other particular means for trial preparation, so long as reasonable accommodation is made to permit the defendant to understand and participate in his defense. *See Guzman Loera*, 24 F.4th at 152-55; *Crandall*, 748 F.3d at 481; *Dettelis*, 372 F. App'x at 106 ("[a]lthough pretrial detention . . . undoubtedly makes communication with counsel and

---

[2] The defendant does not, and could not plausibly, contend that the conditions of his confinement have interfered with his ability to consult with his attorneys.

preparation for trial more cumbersome, without more, those consequences do not result in an interference of constitutional significance"). This is all the more so here, where the defendant is represented by a team of experienced and able attorneys and supported by no less than seven consulting experts (only to count those for whom the defense has provided notice to the Government), and was on pretrial release for approximately seven months, with unfettered access to discovery and counsel. The defendant's unlimited access to these resources was curtailed solely as a consequence of his own criminal actions while on bail, despite repeated chances to demonstrate that pretrial release was the least restrictive means to assure the safety of the community. In short, notwithstanding the inconveniences, serious as they may be, incident to his detention, the defendant has ample means for working with his attorneys to prepare his case and certainly has "a meaningful opportunity to present a complete defense." *Crandall*, 748 F.3d at 481 (internal quotation marks and citation omitted).

Indeed, the accommodations quickly enacted by the USMS and the BOP—accommodations that are resource intensive and go beyond the discovery access and review generally available to pretrial detainees—represent a reasonable and balanced approach to ensuring the defendant's continued access to counsel and discovery while protecting the security of the defendant and other inmates. Each of the four *Turner* factors support the reasonableness of and need for the current discovery protocols.

*First*, there is a valid connection between the discovery limitations and accommodations and the Government's legitimate interests. *Turner*, 482 U.S. at 89. The BOP's nationwide security policies prohibit the use of any internet-enabled electronic device within the prison and significantly restrict the use of personal air-gapped laptops. These policies are designed to ensure that the BOP has maximum control over the means of communication in and out of BOP facilities that each house hundreds of inmates. *See Bell v. Wolfish*, 441 U.S. 520, 546-57 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. Central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."). These general restrictions are reasonable, particularly here, where the defendant's detention is predicated on multiple instances of using internet access and electronic communications for improper purposes, and where the defendant's computer skills are more sophisticated than those of an average inmate.

*Second,* the BOP and the USMS have proposed a number of alternative options for the defendant to review discovery and communicate with counsel. For instance, as a threshold matter, the defendant, like all other MDC detainees, is permitted to receive and review selected materials on hard drives provided by counsel at the MDC. While the defendant complains that he is unable to review these materials because he does not have a laptop, he cites no reason why he is unable to review the contents of the hard drives using the computers available to all inmates throughout the day for discovery review. The defendant also cites no reason why his prior "extensive work product"—which itself demonstrates the substantial trial preparation the defendant has completed to date—cannot be saved to a hard drive and shared with him at the MDC to continue his review.

The defendant's request for a *personal* laptop, however, is moot in light of the BOP's recent authorization for an air-gapped laptop to be maintained at the MDC. Such a laptop will be equipped

with an active USB port, along with Microsoft Office, Excel, and PowerPoint, and Adobe Acrobat. The air-gapped laptop will be accessible to the defendant seven days per week during legal visiting hours: 8:00 a.m. to 7:00 p.m., Monday through Friday, and 8:00 a.m. to 3:00 p.m. Saturday and Sunday. The defendant may use the air-gapped laptop in the legal visiting room with an attorney present, where it will be stored when not in use. The air-gapped laptop will also enable the defendant to share electronically recorded work product with counsel through the exchange of hard drives. The BOP has also confirmed that it has approved six attorneys for legal visitations and provided counsel with the procedures for approving five additional non-legal staff members for the same.

To further assist the defendant's discovery review and counsel communications, the USMS has also offered to transport the defendant two days per week to the 500 Pearl Street cellblock where he has access to an internet-enabled laptop, which permits him to review his cloud-based discovery, and to use Microsoft Office, Excel, and PowerPoint, and Adobe Acrobat. In response to the defendant's request, this laptop will have an active USB port that will permit him to "view, build, edit, or share work product with his attorneys" (Dkt. 228 at 2) through the exchange of hard drives. During this time, the defendant has also been provided with paper and a BOP-approved writing instrument to record his work product. The defendant also has access through this internet-enabled laptop to his counsel's Relativity database, which hosts a substantial portion of his discovery. This database permits all those with access to create and save document searches; tag documents according to relevancy and subject matter; and provide comments on reviewed documents, all of which can be shared with and seen by other members of the defense team. These procedures will permit the defendant's attorneys to provide the defendant with hard drives for use at the MDC so that the defendant can indeed "take back with him to the MDC any of the work product he creates at the cell block" (Dkt. 228 at 2). Additionally, counsel is permitted to communicate with the defendant on the days that he is at the cellblock through a glass panel, which permits counsel to review the defendant's laptop in real-time with the defendant's consultation, as well as material on laptops that counsel brings into the courthouse. *See Morris v. Slappy,* 461 U.S. 1, 11 (1983) ("[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel").

Remarkably, after only two prior sessions, the defendant declined this week to take advantage of this accommodation, citing dissatisfaction with the conditions that it comes with. The defendant's complaints, which are outlined in his August 25 letter to the Court (Dkt. 228), are either already being addressed without the Court's intervention or are altogether meritless.

In the first category, the defendant complains that "Mr. Bankman-Fried does not have a laptop at the MDC," but as explained above, the BOP has now authorized the defendant to have access to an air-gapped laptop at the MDC that is capable of accessing external storage media, which permits him to view, build, edit, and share electronic work product with his attorneys. The defendant also complains that the internet-enabled laptop that he can use in the cellblock, which is in addition to the air-gapped laptop at the MDC, has limited battery power. The Government, however, is taking steps to provide a new battery through defense counsel, which will have approximately four hours of battery life. Permitting the defendant to use a power cord in the cellblock, however, raises significant safety issues. In an effort to address this issue, the

Government has assigned a staff member to collect the laptop on a daily basis as required to ensure that it is fully charged upon the defendant's arrival.

As for the defendant's complaint that he no longer has access to Google Docs, it is plainly reasonable that this means of preparation is no longer available to him. The Court was reluctant to give the defendant access to Google Docs even on pretrial release (Feb. 17, 2023 Tr. at 15-17), but permitted access after defense counsel insisted it was necessary for trial preparation. It was this very access that the defendant exploited to curate what he considered embarrassing material about Caroline Ellison that he leaked to the *New York Times*. (Aug. 11, 2023 Tr. at 7). It defies logic and common sense that such access would be granted a second time, where BOP policy does not permit it generally, and where the defendant has abused this tool specifically. While the defendant may prefer to create and relay his work product by other methods that were available to him on pretrial release, he has not established that he would be unable to communicate through a combination of more than ten legal and non-legal staff members.

Rather than taking advantage of every avenue available to review discovery on the eve of trial after having seven months to prepare without restrictions, the defendant appears uninterested in participating in any form of review unless it meets his precise requests, including access to the very application he previously exploited. Contrary to counsel's baseless assertion, the failure for the BOP and the USMS to accommodate the defendant's most preferred means of discovery review is not the standard for which compliance with the Sixth Amendment is measured. *See Crandall*, 748 F.3d at 482 ("[T]he Sixth Amendment does not create an absolute right to the elimination of all difficulties or impairments that may hinder a criminal defendant's capacity to perfectly comprehend, and participate in, court proceedings. Perfect participation by a criminal defendant is optimal, but perfection is not required by the Sixth Amendment. The Supreme Court 'has long held that a litigant is entitled to a fair trial but not a perfect one, for there are not perfect trials.'").

As outlined above, the BOP and the USMS continue to modify procedures that have only been in place for one week to ensure that the defendant has continued and reasonable access to discovery. Under the procedures—should the defendant choose to use them—the defendant has the ability to review discovery materials provided by counsel to the MDC on his personal laptop, which BOP estimates he will have access to seven-days per week, 11 hours per day on weekdays and 7 hours per day on weekends; share electronically recorded work product with counsel through the exchange of external hard drives; communicate with counsel and legal staff during MDC visiting hours; review cloud-based discovery for multiple hours, two days per week at the 500 Pearl Street cellblock; and communicate with counsel at the cellblock with the internet-enabled laptop present. Such procedures do not infringe his constitutional right to effective counsel. *Compare Guzman Loera*, 24 F.4th at 153-55 (holding district did not err in concluding that defendant was able to assist in his own defense and receive a fair trial despite conditions of his pretrial confinement, which included solitary confinement with highly restricted access to mail, media, telephone, and visitors).

*Third*, the defendant's alternative proposal—that he be produced by the USMS five days a week to the proffer rooms at 500 Pearl Street, is untenable given its effect on "guards and other prisoners." *Turner*, 482 U.S. at 92. The prospect of a detained defendant being permitted to remain

unsupervised in a room with various internet-enabled electronic devices, various exposed cords that could be used to harm himself or others, and monitored only by counsel that could be momentarily distracted for any number of reasons raises obvious security concerns. Even if such security concerns could be allayed, the proposal raises concerns regarding the appropriate disbursement of manpower and resources intended to be dedicated to all pretrial detainees, not simply the defendant.

*Fourth*, as the Supreme Court recognized in *Turner*, "the absence of ready alternatives [to accommodate the asserted right] is evidence of the reasonableness of a prison regulation." 482 U.S. at 90. The BOP and USMS procedures outlined above permit the defendant to review discovery and privately consult with counsel through a number of different options reflecting significant accommodations. Such reasonable procedures do not infringe his constitutional right to effective counsel or to participate in his defense. *See United States v. El-Hage*, 213 F.3d 74, 81-82 (2d Cir. 2000) (holding pretrial detention conditions, which included solitary confinement, restricted phone access, and a chair to review discovery more comfortably were reasonably related to defendant's specific security concerns and did not impermissibly infringe the defendant's ability to prepare his own defense); *United States v. Mohamed*, 103 F. Supp. 3d 281, 289-95 (E.D.N.Y. 2015) (same); *United States v. Hashmi*, 621 F. Supp. 2d 76, 86-87 (S.D.N.Y. 2008) (same); *United States v. Kassir*, No. S2 04 Cr. 356 (JFK), 2008 WL 2695307, at *2-5 (S.D.N.Y. July 8, 2008) (same); *United States v. Argraves*, No. 09 Cr. 117 (MRK), 2010 WL 283064, at *6 (D. Conn. Jan. 22, 2010) ("Pre-trial detention will always interfere with preparation for trial to some extent, but the Bail Reform Act clearly contemplates this problem and allows for detention provided that the defendant is 'afforded reasonable opportunity for private consultation with counsel.'" (quoting 18 U.S.C. § 3142(i)(3))).

Finally, counsel's proposal that nothing short of temporary release will properly address these problems is inconsistent with this Court's determination that the defendant poses a danger to others and the community when released. The defendant has still not moved for temporary release under the appropriate provision, 18 U.S.C. § 3142(i), and were he to do so, such a motion would be meritless. *United States v. Dupree*, 833 F. Supp. 2d 241, 248-50 (E.D.N.Y. 2011) (holding that even where "release would certainly make it more convenient for him and his counsel to prepare his defense," release not "necessary" given substantial accommodations for discovery review). The mere fact that discovery is voluminous is not a basis to determine that nothing short of full-day, uninterrupted access with attorneys is required under the Sixth Amendment or the Bail Reform Act. *Id.* ("While this [fraud] case may, in fact, be complicated and require Defendant to review hundreds if not thousands of documents and meet with his lawyers for dozens of hours, that fact, standing alone, simply does not justify Defendant's release . . . . Indeed, accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial. This is clearly an absurd result." (citing *United States v. Petters*, No. 08–364 (RHK/AJB), 2009 WL 205188, at *2, (D.Minn. Jan. 28, 2009))); *cf. United States v. Budovsky*, No. 13 Cr. 368 (DLC), 2016 WL 386133, at *12 (S.D.N.Y. Jan. 28, 2016) (denying adjournment request noting, among other things, that "[g]iven the fact that the discovery contains so many pages and lines of data, no attorney or team of attorneys could meaningfully review all of it even with years to prepare for trial").

   Based on the foregoing, including the accommodations provided by the USMS and the BOP, there is no basis to find that the defendant's detention impermissibly infringes his Sixth Amendment right.

            Respectfully submitted,

            DAMIAN WILLIAMS
            United States Attorney

       by: /s/  Danielle Kudla
            Nicolas Roos
            Danielle R. Sassoon
            Samuel Raymond
            Thane Rehn
            Danielle Kudla
            Assistant United States Attorneys
            (212) 637-2403

Cc:  Defense Counsel (by ECF)