UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
UNITED STATES OF AMERICA :
:
- v. - :
: S6 22 Cr. 673 (LAK)
SAMUEL BANKMAN-FRIED, :
  a/k/a "SBF," :
:
                     Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO EXCLUDE TESTIMONY FROM PROFESSOR PETER EASTON

                                                                                     DAMIAN WILLIAMS
                                                                                     United States Attorney
                                                                                     Southern District of New York

Nicolas Roos
Danielle R. Sassoon
Danielle Kudla
Samuel Raymond
Thane Rehn
Assistant United States Attorneys
    - *Of Counsel* -

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1
BACKGROUND .................................................................................................................. 1
ARGUMENT ........................................................................................................................ 4
    I.    Professor Easton Will Not Testify About "What FTX Was Required or Not Permitted to Do With Customer Fiat Deposits" and His Planned Testimony About Fiat Deposits Is Permissible Expert Testimony .................................................. 4
    II.   Professor Easton's Testimony Is the Product of Specialized Knowledge and a Reliable Methodology, and Is Not Simply Narration of the Indictment ............................ 7
    III.  Testimony Based on Data From and Observations About FTX's Transaction Database and Ledger Is Admissible ................................................................................. 9
CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

Page

*Bank of New York Mellon Tr. Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd.*,
  910 F. Supp. 2d 629 (S.D.N.Y. 2012) .................................................................................. 11

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
  No. 09 Civ. 3020 (SAS), 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) ................................ 11

*Gussack Realty Co. v. Xerox Corp.*,
  224 F.3d 85 (2d Cir. 2000) ................................................................................................... 10

*Health All. Network, Inc. v. Cont'l Cas. Co.*,
  245 F.R.D. 121 (S.D.N.Y. 2007) .......................................................................................... 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  638 F. Supp. 3d 227 (E.D.N.Y. 2022) ................................................................................ 6, 7

*United States v. Brooks*,
  No. 06 Cr. 550 (JS), 2010 WL 291769 (E.D.N.Y. Jan. 11, 2010) ........................................... 6

*Wantanabe Realty Corp. v. City of New York*,
  No. 01 Civ. 10137 (LAK), 2004 WL 188088 (S.D.N.Y. Feb. 2, 2004) ................................ 11

# INTRODUCTION

At trial, the Government plans to introduce testimony and analyses from Professor Peter Easton, who will help the jury understand Alameda Research's substantial negative balances on FTX.com, the commingling and use of FTX customer funds, and the resulting deficits in FTX and Alameda Research bank accounts and cryptocurrency wallets. Such testimony is the product of financial accounting and extensive financial tracing, which has involved the use and analysis of dozens of bank accounts, data from FTX's transaction database, data from Alameda Research's lenders, cryptocurrency pricing data, and blockchain records. Expert testimony is necessary and appropriate to aid the jury in considering the financial evidence in the case.

The defendant's motion to exclude Professor Easton's testimony, which seeks total preclusion but is focused on discrete aspects of his testimony, is based on a misreading of the expert's disclosure, is inconsistent with the case law, and has largely been mooted by the Government's disclosure of draft exhibits. Professor Easton should be allowed to testify in full.

# BACKGROUND

Peter Easton is a professor of accounting at the Mendoza College of Business at the University of Notre Dame where he directs the Center for Accounting Research and Education. He is an expert in accounting, having taught the subject, authored five textbooks, edited multiple leading peer-reviewed accounting journals, and testified as an expert in depositions, at trial, and at arbitrations, including a recent cryptocurrency matter involving the application of accounting rules. He has extensive experience involving detailed analysis of complex accounting issues, scrutinizing financial statements, analyzing large financial data sets, and applying established accounting principles to financial examinations. In both his academic research and past expert work, Professor Easton has utilized assistants to obtain financial data, standardize the data, and aid

him in conducting analyses. Some of those past projects involved large data sets stored and queried using a database management system. For many of his expert witness engagements, Professor Easton has been assisted by other financial professionals or assistants employed by consulting firms. In this case, as part of his work, Professor Easton has reviewed data that has been exported from a database management system (PostgreSQL) that contains FTX transaction and financial data. The queries in the database have been conducted by employees of The Brattle Group, which has been assisting Professor Easton, as well as by individuals working for the Government who have downloaded data and provided it to Professor Easton. In instances when data was provided to Professor Easton by the Government, personnel working for The Brattle Group and assisting Professor Easton have been able to check the data within the PostgreSQL database. Data extracted from the FTX transaction database has been provided to Professor Easton and his team in the form of Microsoft Excel files, comma-separated values text files ("csv files"), or as screenshots. Professor Easton's team also has its own direct access to the FTX database.

On August 16, 2023, the Government disclosed to the defendant a written summary of Professor Easton's anticipated testimony, including a summary of his findings based on financial analysis, and his opinions as they relate to those analyses. (Dkt. 235-1.) On September 8, 2023, the Government disclosed 69 draft exhibits to the defendant, which provided the defendant with additional notice of the findings and anticipated testimony of Professor Easton.[1] Those exhibits include, among other things, graphic representations of Professor Easton's findings about the

---

[1] Professor Easton's analysis is ongoing, and the Government anticipates that the exhibits he testifies about may be updated or supplemented in advance of his testimony. For instance, it is possible that Professor Easton and the team working with him will identify additional examples of use of FTX customer funds to pay for loans to FTX executives, political donations, venture investments, or other expenditures. In the event that exhibits are revised or added, the Government will promptly disclose them to the defendant.

balances in Alameda Research's accounts and accounts receiving customer fiat deposits; findings relating to Alameda Research's borrowing from lenders and the use of customer funds to repay those lenders; and findings about how FTX customer funds were used. On September 8, 2023, the Government also disclosed Jencks Act material for Professor Easton as well as the primary source materials used for Professor Easton's analyses, including bank records, database records, records from lenders, records from FTX and Alameda, and other publicly available information. In advance of trial, the Government will also disclose the final spreadsheets that were used to generate the exhibits.

On August 28, 2023, the defendant moved to exclude Professor Easton's trial testimony. (Dkt. 234.) While the defendant's motion appears to seek total exclusion of the expert, the defendant's objections are narrow and more limited. Specifically, the defendant claims three problems with Professor Easton's testimony. First, the defendant argues that Professor Easton should not be permitted to opine "regarding what FTX was required or not permitted to do with customer fiat deposits," including some sort of "cash management requirement." (Dkt. 234 at 3-4.) Second, the defendant argues that Professor Easton will simply narrate the facts alleged in the Indictment. (Dkt. 234 at 6-7.) Third, the defendant asserts that Professor Easton is not qualified to query and extract data from the database that houses FTX's transaction, and therefore he cannot testify about the data from that database. Notably, the defendant has not challenged Professor Easton's qualifications to testify about the analysis of FTX's and Alameda Research's bank, cryptocurrency, and lender transactions. Nor does the defendant's motion challenge the reliability of the analyses, such as financial tracing, disclosed in the Government's August 16, 2023, notice. For the reasons set forth below, the defendant's limited challenges to Professor Easton's testimony lack merit or are moot, and therefore the motion should be denied.

3

**ARGUMENT**

I. **Professor Easton Will Not Testify About "What FTX Was Required or Not Permitted to Do With Customer Fiat Deposits" and His Planned Testimony About Fiat Deposits Is Permissible Expert Testimony**

The defendant argues that Professor Easton should not be permitted to testify about "what FTX was required or not permitted to do with customer fiat deposits" because Professor Easton is purportedly not qualified to render such an opinion and the Government's disclosure does not set forth a basis for such an opinion. (Dkt. 234 at 1-4.) The Government agrees that expert testimony about what FTX was legally permitted to do, or required to do, with customer fiat deposits is inadmissible, which is one of the reasons the Government moved to preclude several of the defendant's experts. (*See* Dkt. 236 at 7-11, 20-34.) Professor Easton, on the other hand, will not testify that FTX was "required to maintain fiat currency in its accounts," had a "cash maintenance requirement," or was "not permitted" to do things with customer fiat deposits." (Dkt. 234 at 1-4.) Nor will his testimony relate to "construing FTX's terms of service" or "financial regulation." This is in contrast to the defendant's experts, whose disclosed testimony does improperly propose to wade into these topics.

Professor Easton's testimony about customer fiat deposits will be descriptive, not prescriptive. He will describe, for instance, whether customer fiat deposits were kept in segregated bank accounts; not whether it was improper to commingle customers' funds. He will describe whether balances in bank accounts receiving customer funds matched the balances in FTX's transaction database and ledger; not whether it was improper if they did not match. He will describe how customer fiat deposits were used; not how they should have been used. Each of the opinions that Professor Easton intends to discuss during his testimony are the product of rigorous financial accounting and reliable methodologies, all grounded in data, and based on Professor Easton's expertise and experience analyzing information and financial reporting.

4

Professor Easton's testimony will include some limited background information about how FTX received customer fiat deposits and how those deposits were recorded in FTX's transaction database. FTX's website—which Professor Easton reviewed—explained to its customers how to deposit fiat currency. Bank account and transaction records—which, again, Professor Easton reviewed—establish that customer deposits were received through bank accounts belonging to Alameda Research and recorded in FTX's database as customer deposits. The defendant himself has acknowledged that process on several occasions, and the Government does not expect that basic description to be in dispute at trial. *See* The Block, *Sam Bankman-Fried on the FTX Scandal* (Dec. 5, 2022), https://www.youtube.com/watch?v=zGNiYt1GN_4 (the defendant stating that originally "FTX did not have its own bank accounts" so "clients … would wire money to Alameda's bank account" and "then Alameda effectively ledger transfers" the client's funds "on FTX"). Professor Easton is expected to testify that the FTX transaction database and other documents indicate that FTX used double-entry bookkeeping, which is a method of accounting for transactions where, for every transaction, an entry is recorded in one account as a credit and an equal and offsetting entry is recorded as a debit in at least one other account. Within the FTX ledger, customer deposits were recorded as a debit in a bookkeeping account labeled fiat@ftx.com and as a credit in a customer's account on FTX. The fiat@ftx.com bookkeeping account balance reflects, as a negative entry, the amount of fiat deposits that have been recorded as on the FTX exchange.

Professor Easton's description of how customer fiat deposits were received and how FTX's double-entry bookkeeping worked is proper expert testimony. First, given what the defendant describes as the "enormous and complex" nature of FTX's ledger and accounting system (*see* Dkt. 234 at 9), expert testimony is appropriate to explain the setup of FTX's accounting system and

ledger. Professor Easton can, for instance, aid the trier of fact by describing the system's setup and what he observed about how deposits were recorded, and explaining accounting concepts like double-entry bookkeeping. *See United States v. Brooks*, No. 06 Cr. 550 (JS), 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010) (admitting expert witness testimony addressing "background and explanatory information concerning … accounting concepts"). Second, Professor Easton's description of the process for receiving and ledgering customer deposits is appropriate and necessary testimony so that the jury can understand the opinions he will offer about the change in the balance of the fiat@ftx.com bookkeeping account over time, and how it compared to the balances in bank accounts. Professor Easton's testimony will be based, in part, on his own observations about the accounting setup. But to the extent his description of the system for onboarding customer fiat deposits is based on materials he has reviewed, such testimony is not improper narration, and is admissible as "necessary background for [an expert's] later opinion." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 299 (E.D.N.Y. 2022).

Accordingly, because Professor Easton does not intend to testify about how customer fiat deposits should have been used (or how regulations or terms of service applied), and his testimony about fiat deposits and the bookkeeping system for ledgering them is admissible, this motion should be denied as moot or without merit.[2]

---

[2] The defendant also suggests that Professor Easton's testimony on this subject should be precluded because there is "no basis for the claimed opinion contained anywhere in the Government's disclosure." (Dkt. 234 at 6.) Contrary to that claim, the bases for the opinions Professor Easton intends to offer regarding how fiat deposits were received and accounted for are well explained in the Government's disclosure and exhibits, which are far more detailed than the defendant's own defective disclosures (*see* Dkt. 236 at 12-14).

## II. Professor Easton's Testimony Is the Product of Specialized Knowledge and a Reliable Methodology, and Is Not Simply Narration of the Indictment

The defendant also argues that Professor Easton's opinions are impermissible factual narrative that are not based on any admissible analysis. (Dkt. 234 at 5.) Since the defendant filed his motion, the Government has disclosed nearly seventy exhibits that show the analyses that support the opinions disclosed in Professor Easton's August 16 expert disclosure. Those exhibits, which are the product of specialized knowledge and financial analysis, are proper subjects for expert testimony and not impermissible narration. This objection by the defendant should be denied.

Each of the examples cited in the defendant's motion of purported improper narration is actually the result of reliable expert testimony. Starting with the first example cited by the defendant, he complains about Professor Easton explaining to the jury the two principal ways in which customer deposits were received by FTX. (Dkt. 234 at 6-7.) But any such limited testimony is necessary background for Professor Easton's opinions relating to the use of customer deposits. *In re Payment Card Interchange Fee*, 638 F. Supp. 3d at 299.

Next, the defendant suggests that Professor Easton's testimony that "funds deposited in the form of fiat were not held in segregated bank accounts" but "were commingled" is improper narration and could be explained by percipient witnesses. (Dkt. 234 at 7.) But that conclusion is actually the product of complicated tracing of the movement of funds between dozens of bank accounts. It required scheduling of bank records, identification of customer deposits, and tracing of funds from accounts receiving customer funds to other accounts in the names of Alameda Research and FTX. And it required specialized knowledge and expertise relating to the appropriate methodologies used in financial accounting. For example, Government Exhibit 1050 displays the

results of analysis of the movement and commingling of funds that were received from FTX customers:



Thus, the defendant is incorrect that Professor Easton is simply narrating the allegations in the Indictment, or describing a fact that could be left to a percipient witness.

The third example cited by the defendant is also plainly the product of expert analysis, not impermissible narration. Professor Easton will opine that Alameda Research accrued a large negative balance on FTX.com, through particular accounts, by withdrawing billions of dollars from the exchange. The defendant decries that this opinion is similar to a fact alleged in the Indictment, as though this makes the opinion suspect. (Dkt. 234 at 7.) But that is hardly a surprise: the narrative portions of the Indictment describe facts that support the charges against the defendant, and the Government intends to prove those same facts at trial, including through financial tracing and expert testimony. The expert disclosure and exhibits further make plain that Professor Easton is not merely parroting the Indictment's allegations—his opinion is the result of

expert analysis compiling historical balance data for dozens of Alameda Research accounts, across multiple different cryptocurrencies, over an extended period of time. The results of that analysis are depicted, for example, in Government Exhibit 1005, which is displayed below:



Indeed, all of the opinions set forth in Professor Easton's disclosure are the result of expert analysis, now displayed in draft exhibits, and not improper narration. Accordingly, the defendant's motion should be denied.

### III. Testimony Based on Data From and Observations About FTX's Transaction Database and Ledger Is Admissible

Professor Easton intends to testify about certain Government exhibits that are based on data from a database maintained by FTX that contained ledgers of transaction information, detailed

transaction data, customer information, and tables setting forth raw data and summary statistics derived from the transaction data in the database. The defendant argues that Professor Easton cannot be permitted to testify based on any data from FTX's database because he lacks "expertise concerning financial databases or Python coding." (Dkt. 234 at 9.) That objection is meritless, inconsistent with Professor Easton's qualifications, and unsupported by precedent.

Early in this case, the FTX Debtors provided the Government and the defendant with access to FTX's database, which at various times has been described to the Court as the FTX transaction database, FTX's accounting database, the AWS database (a reference to the database being hosted by Amazon Web Service), the Postgres database, or the PostgreSQL database. The Government subsequently arranged for The Brattle Group, a consulting firm that has been assisting Professor Easton, to obtain access to a copy of the database. Searching the database and navigating to the data about Alameda Research's accounts requires some experience using a relational database and structured query language (SQL), much in the same way writing formulas in Microsoft Excel or running a search in Relativity requires some specialized knowledge. As a result, individuals working for the Government and The Brattle Group have assisted in exporting data from the FTX database for use in financial analysis. That data has been exported and analyzed by Professor Easton and his team in Excel or .csv spreadsheets, and has been incorporated into financial analyses about which he will testify.

The defendant's motion does not cite a single precedent suggesting that this process is improper, or holding that an expert may not rely on data provided to him, including by assistants working at his direction. That is because precedents hold otherwise. "[A]n expert may rely on data that she [or he] did not personally collect." *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000). As this Court noted previously, "Rule 703 allows an expert to rely upon

information supplied by another in forming an opinion where the material relied upon is of a type reasonably relied upon by experts in the field." *Wantanabe Realty Corp. v. City of New York*, No. 01 Civ. 10137 (LAK), 2004 WL 188088, at *2 (S.D.N.Y. Feb. 2, 2004). An expert is also "permitted to rely on assistance from others who work for him." *Bank of New York Mellon Tr. Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629, 644 (S.D.N.Y. 2012). Thus, it is not uncommon for expert witnesses working on large data projects to by aided by assistants or support teams that "provided the underlying data." *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 3020 (SAS), 2011 WL 6288415, at *10-11 (S.D.N.Y. Dec. 15, 2011) (permitting expert testimony where consulting firm "gathered data and provided research" under the expert's supervision).

Consistent with those precedents, it is entirely appropriate for Professor Easton to use data provided to him by the Government or The Brattle Group, and to be aided by employees of The Brattle Group in analyzing and extracting data from the FTX database. Indeed, throughout Professor Easton's forty-year career analyzing financial data, he has routinely performed coding of information in large databases, is familiar with viewing data in a large relational database, and has previously used data extracted from such a database. While other individuals have been tasked with running queries in and extracting data from the database (a process Professor Easton is familiar with), the data itself is viewable to a person who is otherwise unfamiliar with database management, using PostgreSQL, or using computer code. Take for example Government Exhibit 643, depicted below, which is a screenshot of the database displaying data about certain Alameda Research accounts:



The exhibit shows that the data in the FTX database is viewable to Professor Easton and the individuals assisting him in the same format it would appear in Excel. Indeed, the Government and The Brattle Group have extracted data from the FTX database into an Excel format and provided it to Professor Easton (and since produced it to the defendant as trial exhibits). Given Professor Easton's own experience in computer coding and use of databases, and because the relevant data has been extracted at his direction, there is no impediment to him interpreting the data and testifying about it.

Moreover, it bears noting that experts in financial analysis—and, indeed, courts, litigants, and juries—routinely rely on data no different than the data Professor Easton is using here. While the parties to litigation in many cases receive spreadsheets containing transaction-level data from banks, brokerages, telephone companies, and internet service providers, the parties that produce those spreadsheets typically maintain the underlying data in large databases, including relational databases like the one used here. The law does not require a party who wishes to rely on such records to call a witness familiar with the manner in which they were extracted from the source

database, and the defendant has not and cannot argue otherwise. *See Health All. Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 129-30 (S.D.N.Y. 2007) (noting that "many business records are kept in databases, and parties query these databases in order to provide responses to discovery requests," but data extracted from such a database is still admissible at trial). In this case, if the parties had not been given extraordinary, direct access to the FTX database, they would have (and in some cases, did) receive extracted data in spreadsheets from the FTX Debtors. And it would have been reasonable to use those spreadsheets just as experts rely on spreadsheets from a bank or a telephone company. The parties' direct access to the data is not a reason to introduce an additional bar to expert testimony. This objection to Professor Easton's testimony should be denied.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should deny the defendant's motion to exclude Professor Easton's testimony.

Dated: New York, New York
September 11, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By:  /s/ Nicolas Roos
Nicolas Roos
Danielle R. Sassoon
Thane Rehn
Danielle Kudla
Samuel Raymond
Assistant United States Attorneys
Southern District of New York