UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

-against-

S6 22-cr-0673 (LAK)

SAMUEL BANKMAN-FRIED,

                                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-21-2023

## ORDER ON MOTIONS TO EXCLUDE
## PROPOSED EXPERT TESTIMONY

LEWIS A. KAPLAN, *District Judge.*

The following are the Court's rulings on the parties' *in limine* motions to exclude proposed expert testimony and opinions.

*Government's Motions in Limine to Exclude Proposed Expert Testimony*

1.      Defendant's expert notices for both of Messrs. Thomas E. Bishop and Brian Kim completely fail to satisfy the requirements of Fed. R. Crim. P. 16(b)(l)(C) because neither disclosure contains a "statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" nor does it contain "the bases and reasons for them."[1]  Defendant claims that the testimony of Messrs. Bishop and Kim "would principally be in the nature of rebuttal testimony, which would necessarily depend on the evidence the Government presents at trial through its own fact and expert witnesses,"[2] whom the defendant identifies as Mr. Easton and an FBI Special Agent.  In these circumstances, the government's motion to preclude these two witnesses (Dkt 236) is GRANTED.  This ruling, however, is without prejudice to the defendant seeking to call Mr. Bishop to respond to Mr. Easton and Mr. Kim in response to the FBI Agent, in each case on the assumption that the particular anticipated government witness has testified.  Should defendant seek to call either or both of Mr. Bishop or Mr. Kim for that purpose, he may do so only if he has filed a complete Rule 16 disclosure for his proposed witness or witnesses at least three days prior to the date of the relevant defense witness or witnesses.  The government shall retain the right to object to the testimony of both of these witnesses.

---

[1]      Fed. R. Crim. P. 16(b)(1)(C)(iii).

[2]      Dkt 275, at 6.

2.      The government's motion to exclude testimony from Mr. Bradley A. Smith (Dkt 236) IS GRANTED. Mr. Smith's proposed testimony, to the rather limited extent that its substance can be determined from the defendant's disclosure statement, is inadmissible on several bases. First, defendant's expert notice for Mr. Smith, under the heading "Scope and Summary of Opinions," actually contains no opinions. Rather it states that he "may testify to the following topics." All of the proposed topics are introduced with the phrase "General Background on" various subjects. Thus, while it is clear that Mr. Smith proposes to discourse on various topics, the substance of what he proposes to say is not at all clear. Nor has he articulated the bases and reasons for whatever that might be. Second, Mr. Smith's testimony is improper because he seeks to instruct the jury on issues of law.[3] Finally, the majority of Mr. Smith's proposed testimony would be irrelevant to the issues at trial and, to the limited extent it would be relevant, its probative value would be substantially outweighed by the risk of confusing the issues or misleading the jury.

3.      The government's motion to exclude testimony from Mr. Lawrence Akka (Dkt 236) IS GRANTED. Mr. Akka intends to testify regarding the meaning of FTX's terms of service and FTX's obligations thereunder. Such testimony plainly is inadmissible under Rule 702 as it invades the province of the Court to instruct the jury on the law and the province of the jury to apply the facts to that law. Experts may not offer their "legal opinions as to the meaning of the contract terms at issue."[4] "[T]he rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle.'"[5] Moreover, it makes no difference that Mr. Akka is an English barrister and that the FTX Terms of Service that he proposes to construe has an English governing law clause. Fed. R. Crim. P. 26.1, which is substantially the same as Fed. R. Civ. P. 44.1, provides in relevant part that "[i]ssues of foreign law [in federal criminal cases] are questions of law." This makes clear that any questions of foreign law that are relevant and material to a federal criminal case are to be determined by the trial judge. The opinion of an English barrister as to the meaning or legal effect of contractual language, even language in a contract governed by English law, simply is not a proper subject of a jury's attention. Accordingly, Mr. Akka's proposed testimony is excluded in its entirety from the jury's consideration.[6]

---

[3]      *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991).

[4]      *See Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977).

[5]      *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (citations omitted); *see also AU New Haven, LCC v. YKK Corp.*, No. 15 Civ. 3411 (GHW), 2019 WL 1254763, at *10 (S.D.N.Y. Mar. 19, 2019) (excluding foreign law expert testimony, noting "for the same reasons that [the expert] cannot instruct the jury on domestic patent law, he may also not instruct the jury on foreign patent law, . . . because it would improperly infringe on the Court's role of instructing the jury").

[6]      Defendant requests, "[s]hould the Court [] grant the Government's motion in whole or material part, . . . an opportunity to submit a proposed jury charge to instruct the jury on the legal relationship between FTX and its customers." Dkt 275, at 42. The Court would entertain such a proposed jury charge were it submitted.

3

4.      Defendant's expert notice for Dr. Pimbley fails to satisfy the requirements of Fed. R. Crim. P. 16(b)(l)(C) because it does not set forth sufficiently the "bases and reasons" for his anticipated opinions.[7]  In all events, none of Dr. Pimbley's vague opinions would be relevant to the issues at this trial and, to the extent they would have any relevance, they would be barred under Rule 704 as "semantic camouflage"[8] intended to suggest to the jury that the defendant did not know about the purported "deficiencies in the software infrastructure."[9]   Accordingly, the government's motion to preclude the testimony of this witness (Dkt 236) is GRANTED.  This ruling, however, is without prejudice to the defendant seeking to call Dr. Pimbley to respond to a government witness. Should defendant seek to call Dr. Pimbley for that purpose, he may do so only if he has filed a complete Rule 16 disclosure for Dr. Pimbley at least three days prior to the date of his proposed testimony.  The government shall retain the right to object to the testimony of this witness.

5.      The government's motion to exclude testimony from Dr. Peter U. Vinella (Dkt 236) is GRANTED.  Sections A-C of Dr. Vinella's proposed testimony consist of background testimony on "innovation in the financial services industry, the development of the cryptocurrency markets, and FTX combining aspects of both traditional and decentralized finance in its services."[10] Such extensive background testimony would have "limited or no bearing on the issues in this case" and any probative value would be "substantially outweighed by the dangers of confusing or misleading the jury."[11]  For example, whether or not FTX was innovative or combined aspects of traditional and decentralized finance in its services is not at issue in this case.  Furthermore, much of Dr. Vinella's proposed testimony regarding FTX's history and place in the market – to the extent it were relevant at all – more appropriately would be introduced by fact witnesses capable of testifying on that subject matter.[12]

Sections D-H of Dr. Vinella's proposed testimony address "the absence of a clear legal and regulatory framework governing the cryptocurrency industry, especially outside the United States,"

---

[7]     *See* Fed. R. Crim. P. 16(b)(1)(C)(iii).

[8]     *United States v. DiDomenico*, 985 F.2d 1159, 1165 (2d Cir. 1993); *see also id.* at 1164 (experts may not state an "inference as to a defendant's actual mental state at the time of a crime" as "expert testimony concerning a defendant's mental state poses a uniquely heightened danger of intruding on the jury's function").

[9]     Dkt 236, Ex. D, at 2.

[10]    Dkt 275, at 29.

[11]    *See United States v. Chastain*, No. 22 Cr. 305 (JMF), 2023 WL 2966643, at *9 (S.D.N.Y. Apr. 17, 2023).

[12]    *See United States v. Newkirk*, 684 F. App'x 95, 97 (2d Cir. 2017); *United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 WL 6977120, at *7 (S.D.N.Y. Dec. 20, 2019).

"operational challenges this uncertainty posed to FTX," "the general purview of senior executives at fintech startups who are not software engineers," "commercially reasonable steps taken by FTX," and "FTX's use of widely-accepted practices in the financial services industry."[13] Such testimony is inadmissible under Rules 702, 704, 402, and 403. Most of Dr. Vinella's proposed testimony is irrelevant to the issues at trial and any relevant portion appropriately is excluded under Rule 403, as any probative value would be outweighed substantially by the risk of confusing the jury and waste of time. Additionally, certain of Dr. Vinella's opinions – e.g., that "many of FTX's operational problems were, in fact, predictable" and that "FTX never intended to give such a large credit line to Alameda Research" – are not the product of any scientific, technical, or specialized knowledge and thus are improper expert testimony under Rule 702. Other opinions, such as Mr. Vinella's opinion that "senior executives who are not software engineers typically do not know or direct the inner workings of their company's software," are improper under Rules 702 and 704 as thinly veiled attempts to state an inference regarding the defendant's mental state at the time of the alleged crimes.[14] Accordingly, Dr. Vinella's proposed testimony is excluded in its entirety.[15]

      6.      Defendant's expert notice for Mr. Wu says that he would testify primarily to give "background testimony" that is irrelevant to the issues on trial.[16] Much of Mr. Wu's proposed testimony is "mere narration," which "fails to fulfill *Daubert*'s most basic requirements."[17] Furthermore, to the extent that any of Mr. Wu's proposed testimony would be relevant to the issues at trial, it is not proper expert testimony and is excluded under Rule 403, due to the substantial risk of confusing the issues and

---

13

    Dkt 275, at 32.

14

    *See DiDomenico*, 985 F.2d at 1164-65.

15

    The Court harbors serious doubts regarding Dr. Vinella's qualifications as an expert in the subject matter of his proffered testimony. Fed. R. Evid. 702; *see also United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). However, the Court need not, and does not, decide that issue because the Court excludes the entirety of Dr. Vinella's testimony on other bases.

16

    *See Newkirk*, 684 F. App'x at 97; *see also United States v. Sanders*, No. 12 Cr. 0574 (LAK), 2013 WL 1421487, at *2 (S.D.N.Y. Mar. 27, 2013) (precluding proposed expert testimony as to "custom and usage in the insurance industry" as irrelevant to the question of whether "inaccurate information allegedly supplied by the defendant was not material to the insurance carriers" and unhelpful to the jury "given the abundant evidence thus far offered by percipient witnesses"); *Mendlowitz*, 2019 WL 6977120, at *5 (precluding expert testimony on the "general industry practices in the payment processing industry" as not relevant to whether the defendant violated the wire fraud statute).

17

    *United States v. Kaufman*, No. 19 Cr. 504 (LAK), 2021 WL 4084523, at *21 n.226 (S.D.N.Y. Sept. 8, 2021) (quoting *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013)); *see also id.* ("Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise, nor is such a narration traceable to a reliable methodology.").

misleading the jury. Accordingly, the government's motion to preclude the testimony of this witness (Dkt 236) is GRANTED. This ruling, however, is without prejudice to the defendant seeking to call Mr. Wu to respond to Dr. Van der Merwe, on the assumption that the anticipated government witness has testified. Should defendant seek to call Mr. Wu for that purpose, he may do so only if he has filed a complete Rule 16 disclosure for Mr. Wu at least three days prior to the date of the defense witness's proposed testimony. The government shall retain the right to object to the testimony of this witness.

*Defendant's Motion in Limine to Exclude Proposed Expert Testimony*

1.    Defendant's motion to exclude testimony from Mr. Peter Easton (Dkt 232) is DENIED. Although defendant's motion seeks the total exclusion of Mr. Easton's testimony, his objections, all of which are meritless or moot, are significantly more narrow. Mr. Easton appropriately may testify about customer fiat deposits as described in his Rule 16 disclosure and the government's papers.[18] Mr. Easton's anticipated testimony is the product of specialized knowledge and reliable methodology and does not constitute improper narration.[19] Finally, Mr. Easton is permitted to "rely on data that [he] did not personally collect."[20] Defendant's motion is denied in its entirety.

*Conclusion*

Accordingly, the government's motions *in limine* (Dkt 236) are GRANTED to the extent set forth above and otherwise DENIED. The defendant's motion *in limine* to exclude the testimony of Mr. Easton (Dkt 232) is DENIED.

SO ORDERED.

Dated:        September 21, 2023

Lewis A. Kaplan
United States District Judge

---

[18]
    *See* Dkt 272, at 4-6.

[19]
    *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 299 (E.D.N.Y. 2022).

[20]
    *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000); *see also Wantanabe Realty Corp. v. City of New York*, No. 01 Civ. 10137 (LAK), 2004 WL 188088, at *2 (S.D.N.Y. Feb. 2, 2004) ("Rule 703 allows an expert to rely upon information supplied by another in forming an opinion where the material relied upon is of a type reasonably relied upon by experts in the field.").