

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 27, 2023

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *United States v. Samuel Bankman-Fried*, S5 22 Cr. 673 (LAK)

Dear Judge Kaplan:

The Government respectfully submits this letter brief in opposition to the defendant's renewed motion for temporary release (the "Renewed Motion"), pursuant to 18 U.S.C. § 3142(i). For the reasons set forth below, the defendant's Renewed Motion should be denied.

**I.    Background**

On September 8, 2023, following the filing of a joint letter to the Court, dated September 5, 2023, regarding the status of the defendant's access to discovery while detained (the "Joint Letter" (Dkt. 253)), the Government produced its initial 3500 materials and exhibits to defense counsel and provided a list of anticipated Government witnesses. On September 11, 2023, the Government delivered a hard drive to the Metropolitan Detention Center (the "MDC"), containing the Government's 3500 materials and exhibits. As detailed in prior filings, including the Joint Letter, the defendant may review these materials and any additional materials curated by defense counsel seven days per week with two air-gapped laptops[1] housed in the MDC legal visiting room and an area adjacent to the defendant's housing unit. Notably, the materials provided by defense counsel can be selected from the defendant's cloud-based document discovery database and the AWS database, which contains FTX transaction data that is extractable in the form of Microsoft Excel files and/or screenshots. In addition to the defendant's ability to independently review these

---

[1] In the Joint Letter to the Court, the parties noted that the MDC approved the use of a second air-gapped laptop, which could be stored in an area adjacent to the defendant's housing unit for added convenience. (Dkt. 253 at 2). On September 13, 2023, defense counsel notified the Government that the defendant had opted to purchase a second laptop for this purpose. On September 14, 2023, the second air-gapped laptop was provided to the defendant.

materials, he has retained the ability to meet and confer with defense counsel and his team of experts seven days per week if so desired since his August 11, 2023 detention.

On September 12, 2023, the Court denied the defendant's motion for release pending trial, pursuant to Section 3142(i), citing a number of factors, including the defendant's extensive access to electronic discovery for 7-1/2 months before his bail was revoked shortly before trial; his own request for the October 2, 2023 trial date and decision to decline to make any request for an adjournment; his representation by an experienced team of legal counsel and experts; and a lack of "any detailed showing as to specific materials that he claims he has been unable to access personally and the reasons why any such personal inability would impede his defense." (Dkt. 278 at 2-3).

On September 21, 2023, the Second Circuit denied the defendant's motion for release pending trial. *United States v. Bankman-Fried*, No. 23-6914-cr, Dkt. 32.1 (2d Cir. Sept. 21, 2023). The Court of Appeals affirmed this Court's conclusion that "there was probable cause to believe that the defendant attempted to tamper with two witnesses in violation of 18 U.S.C. § 1512(b), and specifically that he acted with unlawful intent to influence those witnesses." *Id.* at 1-2. Additionally, the Second Circuit held that this Court did not err in concluding that that there were no less restrictive alternatives to detention to assure that the defendant would not pose a danger to the safety of others or the community based on his "course of conduct over time that required the district court to repeatedly tighten the conditions of release." *Id.* at 2.

## II.     Applicable Law

When a defendant has been ordered detained pending trial, the "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of the United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).  Courts in this district and elsewhere have recognized that the determination of whether there is a "compelling reason" for a defendant's release under this provision requires the court to "balance the reasons advanced for such release against the risks [of danger to the community and/or flight] that were previously identified and resulted in an order of detention. In turn, whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case." *United States v. Chambers*, No. 20 Cr. 135 (JMF), ECF No. 70 (S.D.N.Y. Mar. 31, 2020); *see also United States v. Conley*, No. 19 Cr. 131 (PAE), ECF No. 366 (S.D.N.Y. Mar. 31, 2020).

## III.    Discussion

The defendant's simple assertion that he cannot "participate meaningfully in his own defense" absent release during trial to the custody of his attorneys and a private security guard is insufficient to establish that release is "necessary," 18 U.S.C. § 3142(i), and does not outweigh the danger posed by such release conditions in light of the defendant's prior course of conduct.

The Renewed Motion largely recycles the defendant's generalized claims regarding the manner in which he would like to assist his counsel in his defense.  These unspecified efforts, he

claims, have been curtailed or made less convenient by his detention. The defendant fails to account for the facts that he has the assistance of a sizable and experienced team of lawyers and experts preparing for trial and litigating on his behalf, and, as previously found by this Court the defendant, working with this team "had extensive access to most of the ESI 7-1/2 months before his bail was revoked shortly before trial." (Dkt. 278 at 2). During this time, he had "extensive access to telephone and the Internet," and "faced no impediments" to "explore the discovery and make whatever other investigations he wished by electronic means." (*Id.*). Following the defendant's detention on August 11, 2023, a number of accommodations were taken by the MDC and the Bureau of Prisons (the "BOP") to ensure his continued ability to review discovery and confer with defense counsel and experts seven-days per week if he so desired. Many of the accommodations provided by the MDC and the BOP—including the use of two personal air-gapped computers in different locations for added convenience and the MDC's hand-receipt and delivery of hard-drive materials to the defendant—are accommodations beyond those accorded to most detainees. In early September, the Government produced initial 3500 materials, exhibits, and its anticipated witness list in accordance with court-ordered deadlines. At least three of the Government's witnesses surely came as no surprise to the defendant in light of guilty pleas pursuant to cooperation agreements, which occurred and were unsealed prior his detention. By the start of the trial, the defendant—like his legal team—will have had three weeks to review the Government's trial materials in preparation for the October 3 trial—a date that this Court accommodated at the defendant's request. (Dkt. 278 at 2). In addition, the Government consented to the defendant's request for the use of an air-gapped laptop during trial, which will permit the defendant to continue to review any materials prepared by defense counsel during witness testimony.

Against this backdrop, the Renewed Motion suffers from the same defect as the first motion—the defendant fails to identify "specific materials that he claims that he has been unable to access personally and the reasons why such personal inability actually would impede his defense." (Dkt. 278 at 3). Instead, the defendant turns to generalizations about his restricted ability to meet with counsel for extended hours during the trial weekdays[2] to discuss testimony and exhibits. He asserts without any details that such participation is "indispensable for his attorneys to prepare his defense." (Mot. at 2). These general complaints, which do nothing more than recite inconveniences common to all incarcerated defendants, do not render his release "necessary" or "compelling" as required under Section 3142(i). *See United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011) (finding that a defendant failed to show that his release was "necessary" for the preparation of his defense where he had ample time pre-detention, accommodations had been made for him to review discovery while detained, and inconveniences due to confinement were common to all incarcerated defendants). Indeed, as this Court found, the defendant "is represented by a substantial team of extremely able retained lawyers . . . [a]nd no represented defendant, much less a defendant detained pretrial in order to protect the public, has a constitutional or other right to inspect ever bit of discovery." (Dkt. 278 at 3 (collecting cases)). The defendant has failed to establish with any specificity why his presence with counsel for a limited period of time during the week is "indispensable" to preparing his defense after unfettered access to discovery, investigative leads, and trial strategy discussions with his attorneys and

---

[2] The defendant acknowledges that even detained he retains the ability to meet with counsel for extended periods on the weekends and days when the Court is not sitting for trial. (Mot. at 2).

experts for 7-1/2 months prior to detention, and most recently, three straight weeks of strategic preparation with his legal team (seven-days per week if so desired) while in possession of the Government's 3500 materials, exhibits, and witness list.[3]

Additionally, the defendant's proposed release to the custody of his attorneys and then to "a security guard in a temporary residence in New York City" does not comply with the statutory requirements of Section 3142(i) or adequately address the specific safety concerns posed by the defendant's release. Although there is little precedent construing the term "another appropriate person," as used in Section 3142(i), principles of statutory construction suggest that it should be limited to persons similar to a United States marshal—namely, other law enforcement officers or similar guards. *See Yates v. United States*, 574 U.S. 528, 544-45 (2015) (describing canons of noscitur a sociis, which provides that "a word is known by the company it keeps," and ejusdem generis, which provides that "where general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words"); *cf. United States v. Scarpa*, 815 F. Supp. 88, 89 (E.D.N.Y. 1993), supplemented (Mar. 5, 1993) (releasing terminally ill defendant "on condition that he be confined to Beekman Hospital under the 24–hour guard of the United States Marshal's Service at his own expense"). While certain courts have deemed family members "appropriate persons" where the defendant is under 24-hour home incarceration, *see United States v. Stephens*, No. 15 Cr. 95 (AJN), 2020 WL 1295155, at *2-3 (S.D.N.Y. Mar. 19, 2020), such release conditions—even if they did comply with the statutory requirements of Section 3142(i)—are plainly inadequate. Here, the defendant engaged in the conduct that resulted in his detention while under nearly the same security measures that he now proposes. Specifically, the defendant was in the custody of his parents under 24-hour home incarceration, monitored by security guards, when he engaged in witness tampering. The defendant's repeated general assertions regarding the inconveniences of his detention simply do not outweigh the dangers of his release in light of the record, as affirmed by the Circuit, regarding his course of conduct over time.

Based on the foregoing, the defendant's Renewed Motion for temporary release should be denied.

---

[3] As Judge Nardini stated during the defendant's Second Circuit oral argument when addressing the defendant's concerns regarding his ability to prepare for trial, if such an issue was going to be this important to the defendant "it would have been a very, very good consideration for him to have taken into account before he decided, as Judge Kaplan found, to intimidate or influence witnesses . . . . But like anyone else, if it is true that he has intimidated witnesses, at a certain point, he makes his own bed and sleeps in it."

```
                        Respectfully submitted,

                        DAMIAN WILLIAMS
                        United States Attorney

                    by:         /s/
                        Nicolas Roos
                        Danielle R. Sassoon
                        Samuel Raymond
                        Thane Rehn
                        Danielle Kudla
                        Assistant United States Attorneys
                        (212) 637-2403
```

Cc: Defense Counsel (by ECF)