

September 30, 2023

<u>By ECF</u>

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Samuel Bankman-Fried,* S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

      The Government respectfully submits this letter motion *in limine* to permit a trial witness to testify remotely. The Government has conferred with the defense, who has stated that the defense does not consent to the remote testimony.

      The Government intends to offer testimony from several individual FTX customers about (i) why they opened and maintained FTX customer accounts, (ii) their expectations about how FTX maintained their customer deposits in those accounts, (iii) how they used the FTX exchange, and (iv) their experiences in November 2022 as they relate to the collapse of FTX. The anticipated direct testimony of these witnesses is expected to be less than 30 minutes each and will involve minimal, if any, exhibits. By the very nature of the FTX exchange—a global cryptocurrency exchange that was, for the most part, difficult to access by individual retail customers based in the United States, who primarily used a smaller sister company FTX.US—the vast majority of these witnesses are located abroad. Moreover, due to FTX's international popularity, many of the FTX customers are dispersed across the world, making the coordination of international authorizations to permit testimony in the United States and international travel arrangements exceedingly complicated.[1]

      In addition to residing abroad, one of the potential FTX customer witnesses has unique circumstances that make international travel for testimony even more problematic. In particular, one witness is a young male, located in Ukraine ("FTX Customer-1"), who lost a substantial portion of his life savings that he had entrusted to FTX when Russia invaded Ukraine in 2022. Current Ukrainian law prohibits FTX Customer-1 from leaving the country as a result of the

---

[1] The Government has and will continue to make efforts to secure in-person testimony for multiple anticipated foreign FTX customer witnesses. These efforts have included, among other things, notifying and obtaining permission from the appropriate foreign authorities where necessary.

ongoing war, unless he receives express permission from Ukrainian authorities. Even if that permission were to be granted, FTX Customer-1 would still need to travel by a combination of train and bus for several hundred miles through Ukraine during an ongoing war, cross a border to a neighboring country that has international flights to the United States, travel an additional distance to the nearest international airport, and then travel by air to the United States, a process that the Government estimates would take at least approximately three days in each direction.

The Government has submitted a MLAT request to Ukraine to permit FTX Customer-1 to testify, but the Government does not expect that FTX Customer-1 will be able to travel to New York to testify. Accordingly, the Government requests that FTX Customer-1 be permitted to testify via two-way video teleconference. While the Government has not finalized the procedures for presenting such two-way video testimony, the Government anticipates that it will seek testimony to occur at a location where a United States official is able to oversee the logistics of the testimony, such as the United States embassy or another location chosen by a United States official in coordination with Ukrainian officials.

## A. Applicable Law

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. There are several "elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 846 (1990). The Supreme Court has made clear, however, that "face-to-face confrontation is not an absolute constitutional requirement." *Id.* at 857; *see also Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) ("Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.") Rather, "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case." *Craig*, 497 U.S. at 849.

Thus, in *Craig*, the Supreme Court approved the use of one-way video testimony for a child sex abuse witness because "denial of such confrontation is necessary to further an important public interest and . . . the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850. In so holding, the Supreme Court recognized that the one-way videoconference "adequately ensure[d] that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony," because it preserved all elements of the confrontation right—"oath, cross-examination, and observation of the witness' demeanor"—other than the witness's ability to see the defendant as he or she testified. *Id.* at 851.

In *United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999), the Second Circuit addressed a confrontation challenge to the use of two-way video testimony by a witness whose "illness and concomitant infirmity" made it "medically unsafe" to travel to testify in person. *Id.* at 79. As the *Gigante* court explained, the *Craig* standard was "crafted . . . to constrain the use of one-way closed-circuit television, whereby the witness could not possibly view the defendant." *Id.* at 81. But during two-way video testimony, the witness both sees and is seen by the trial participants, including the defendant. *Id.* at 80. Two-way video testimony thus "preserve[s]" "[t]he salutary

effects of face-to-face" confrontation, including "1) the giving of testimony under oath; 2) the opportunity for cross-examination; 3) the ability of the fact-finder to observe demeanor evidence; and 4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence." *Id.* Accordingly, "it is not necessary to enforce the *Craig* standard" when a witness testifies by two-way video. *Id.* at 81. The Court instead looked to the standard applicable to depositions under Federal Rule of Criminal Procedure 15, under which "the 'exceptional circumstances' required to justify the deposition of a prospective witness are present if that witness's testimony is material to the case and if the witness is unavailable to appear at trial." *Id.* (quoting *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984)). The Court reasoned that a stricter standard should not be applied to two-way video testimony, because it "force[s] [the witness] to testify before the jury" and thus "afford[s] greater protection of [the defendant's] confrontation rights" than simply admitting the transcript of a Rule 15 deposition. *Id.* Thus, the Second Circuit held that "[u]pon a finding of exceptional circumstances," a witness may testify by two-way video "when this furthers the interests of justice." *Id.*; *see also United States v. Patterson*, No. 21-1678-CR, 2022 WL 17825627, at *4 (2d Cir. Dec. 21, 2022), *cert. denied sub nom. Weigand v. United States,* No. 22-844, 2023 WL 4065629 (U.S. June 20, 2023) (affirming use of two-way video testimony where traveling during the COVID-19 pandemic raised serious health risks for a witness with underlying health conditions, including hypertension, atrial fibrillation, and was unvaccinated); *United States v. Abu Ghayth*, No. S14 98 CRIM. 1023, 2014 WL 144653, at *2–3 (S.D.N.Y. Jan. 15, 2014) (holding witness could testify via two-way video testimony because the Government had met its burden of showing unavailability in terrorism trial where witness would have been arrested had he traveled to the United States).

## B. Discussion

FTX's popularity and widespread use by diverse customers across the world is not in dispute. Testimony from at least some FTX customers from varying locations, backgrounds, and with varying motivations for selecting and using FTX is relevant to establishing the vast reach that FTX—and by default, the defendant's promotional efforts and public statements—had on the cryptocurrency community. Despite these diverse backgrounds, the Government anticipates that the FTX customers will uniformly testify that they were unaware that FTX was taking their deposits to finance the defendant's other ventures and expenses, and such knowledge would have been important to their decision to use FTX and deposit funds with FTX. To obtain likely less than 30 minutes of testimony from overseas FTX customer witnesses, however, requires, for at least some countries, coordinating with local authorities, arranging multi-day travel itineraries to accommodate varying time changes and travel delays, and incurring significant costs associated with such arrangements. Notwithstanding those hurdles, the Government is in the process of arranging for some overseas FTX customers to travel to New York to testify. However, FTX Customer-1 in particular has additional logistical and safety concerns that make foreign travel effectively impossible even if all other conditions were met.

These circumstances lend themselves to testimony via live two-way video as a matter of law. *See, e.g., United States v. Griffin*, No. 11 Cr. 936 (RJS), 2021 WL 3188264, at *2 (S.D.N.Y. July 28, 2021) (granting government's motion for witness to testify at hearing by two-way video where witness's "doctor has advised her not to travel in light of the fact that she gave birth approximately two weeks ago and is not vaccinated against COVID-19"); *United States v.*

*Akhavan*, 523 F. Supp. 3d 443, 451-46 (S.D.N.Y. 2021) (granting witness's motion to testify at trial by two-way video where 57-year-old witness's "hypertension and atrial fibrillation (a heart condition)" "place[d] him at increased risk of serious illness or death if he were to contract COVID-19," and he would have "need[d] to travel by commercial flight [from California] to testify" in person). And although the precise procedures for FTX Customer-1's testimony have not been arranged, the Government intends to coordinate with a United States official located in Ukraine to arrange for the testimony to occur at a location, such as the United States embassy or another secure location selected in coordination with Ukrainian officials, where an American official can monitor the proceeding.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:     /s/ Thane Rehn
        Danielle R. Sassoon
        Nicolas Roos
        Danielle Kudla
        Samuel Raymond
        Thane Rehn
        Assistant United States Attorneys
        (212) 637-2354

Cc: Counsel of Record (via ECF)