


Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

October 2, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:  *United States v. Samuel Bankman-Fried*, S5 22 Cr. 673 (LAK)

Dear Judge Kaplan:

    On behalf of our client, Samuel Bankman-Fried, we write to respectfully submit this letter in opposition to the Government's letter motion *in limine* requesting the Court to permit a trial witness to testify remotely. ECF No. 302.

    The Government's request to allow FTX Customer-1, a Ukrainian national located in Ukraine who reportedly has been impacted by the Russian invasion of that country, to testify via live two-way video should be denied. *First*, such testimony would inevitably violate Mr. Bankman-Fried's rights under the Confrontation Clause of the Sixth Amendment. As set forth below, the proposed video testimony would not fit within the "exceptional circumstances" in which the Second Circuit has held such testimony to be permissible. Among other things, even if the witness were to testify under oath – which is indisputably required, but the Government does not appear to have arranged – the protections required by the Sixth Amendment would still be absent, because Ukraine has no extradition treaty with the United States.

    *Second*, the proposed remote testimony of FTX Customer-1 from a country under foreign invasion should be excluded pursuant to Federal Rules of Evidence 402 and 403. As directly relevant to the alleged fraud, the Government's letter makes clear that this witness's testimony would be cumulative of that of other customers. The proposed testimony that is unique to this witness would apparently reference hardships and individual circumstances created by the Russian invasion of Ukraine. Such testimony would be irrelevant to the charged crimes and would serve only to elicit the jury's sympathy and outrage.

1. *Permitting Remote Testimony from Customer-1 Would Violate Mr. Bankman-Fried's Sixth Amendment Rights.*

The Sixth Amendment's Confrontation Clause gives Mr. Bankman-Fried the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause reflects a "preference" for face-to-face, in-court testimony, *Maryland v. Craig*, 497 U.S. 836, 845-46 (1990), but the Second Circuit has held that remote testimony via two-way video is permissible "[u]pon a finding of exceptional circumstances" provided the fundamental Sixth Amendment protections can be guaranteed. *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999). Applying the standard for depositions under Rule 15, courts in this Circuit allow remote testimony "only when (1) the witness's testimony is material; (2) the movant has made good-faith and reasonable efforts to obtain the witness's presence and is unable to do so (that is, that the witness is 'unavailable' within the meaning of the case law); and (3) allowing testimony by such means furthers the interests of justice." *United States v. v. Buck*, 271 F. Supp. 3d 619, 622–23 (S.D.N.Y. 2017).[1]

Notably, the court in *Gigante* found that remote testimony via two-way video under the circumstances of that case would preserve the most critical characteristics of in-court testimony for purposes of the Confrontation Clause, including "the giving of testimony under oath." *Gigante*, 166 F.3d at 80. As the Supreme Court has observed, the oath requirement is indispensable because it "impress[es] [the witness] with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." *Craig*, 497 U.S. at 845-46. As discussed below, this safeguard would be wholly absent here.

    *a.    FTX Customer-1's Proposed Testimony Would Cumulative, Not Material.*

Testimony is material for purposes of the Rule 15 standard applied to remote testimony via two-way video pursuant to *Gigante* if it is "highly relevant to a central issue in the case." *United States v. Vilar*, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008). Testimony that is "merely cumulative" of other witness testimony does not meet this standard. *Id.* at 442; *accord United States v. Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007) ("[A] court may properly deny the motion [under Rule 15] if the proposed testimony would be cumulative.").

Here, the Government's description of FTX Customer-1's testimony makes plain that Customer-1's testimony will be cumulative of other customers that the Government intends to call and thus will not satisfy the materiality standard under *Gigante* for remote testimony. Specifically, the Government reportedly anticipates testimony from multiple FTX customers who "will

---

[1] Except as otherwise noted, internal quotation marks, alterations, and citations have been omitted from the authorities cited in this letter.

uniformly testify" regarding their lack of awareness of certain facts and whether those facts would have been important to their decision to use FTX.  ECF No. 302 at 3.

In contrast, each of the authorities cited by the Government involved witnesses whose remote testimony was indispensable to central issues in the case, with no indication that their testimony would be cumulative of any other witness.  In *Gigante*, the remote testimony was from "a crucial witness against Gigante, providing direct testimony of his involvement in [a criminal] scheme," who "was in the final stages of an inoperable, fatal cancer, and was under medical supervision at an undisclosed location."  166 F.3d at 79.  In *United States v. Griffin*, the court permitted remote testimony at a violation of supervised release ("VOSR") proceeding from a witness whose "personal observation" was "highly relevant to a central issue in the VOSR proceeding before this Court."  No. 11-CR-936 (RJS), 2021 WL 3188264, at *2 (S.D.N.Y. July 28, 2021).[2]  And in *United States v. Akhavan*, 523 F. Supp. 3d 443, 451 (S.D.N.Y. 2021), which involved an alleged fraudulent credit card scheme, the remote witness testified to related policies and practices which the court characterized as "among the most critical questions in this case."  523 F. Supp. 3d 443, 451 (S.D.N.Y. 2021).  *See also United States v. Colello*, No. 20-CR-613 (JSR), 2023 WL 3584466, at *1-2 (S.D.N.Y. May 19, 2023) (holding that proffered testimony via two-way video was "material" where remoted witness was "the defendant's primary contact at a company allegedly defrauded by the defendant and that Mr. Burgoyne will testify as to key parts of the Government's case").

Because the testimony of FTX Customer-1 would be cumulative and therefore not "material" as required by Second Circuit law regarding remote trial testimony via two-way video, the proposed testimony would violate Mr. Bankman-Fried's rights under the Confrontation Clause, and the Government's motion should be denied.  *See Gigante*, 166 F.3d at 81; *Buck*, 271 F. Supp. 3d at 622–23.

> b. *FTX Customer-1's Testimony Would Lack the Safeguards of Reliability Required by the Confrontation Clause.*

As noted, and as the Government concedes, the Second Circuit held in *Gigante* that remote video testimony did not violate the Confrontation Clause under the circumstances of that case because it preserved the most important Constitutional protections "of face-to-face confrontation, including … 'the giving of testimony under oath.'"  ECF No. 302 at 3 (quoting *Gigante*, 166 F.3d at 80).

While lauding the "salutary effects" of the oath requirement, *id.*, the Government does not appear to have arranged for an oath to be administered by a duly authorized official.  The Government states that it "has not finalized" the procedures for presenting video testimony, but

---

[2] The court in *Griffin* also noted that the standard for unavailability of a proposed remoted witness applicable in a VOSR proceeding is "less stringent" than in a criminal trial. 2021 WL 3188264 at *1.

"anticipates" that it will occur at an unnamed location "where a United States official is able to oversee the logistics of the testimony." ECF No. 302 at 2. The Government does not represent that the official would – or would even be authorized to – place the witness under oath. Until the Government can show that these details have been finalized, its motion should be rejected out of hand.

Even if the Government were able to make procedurally acceptable arrangements, the proposed testimony would in all events lack the reliability required by the Sixth Amendment. Courts in this district have refused to permit remote testimony by foreign nationals to be taken abroad in countries without extradition treaties with the United States on the ground that such testimony would be insufficiently reliable to satisfy the Confrontation Clause. *See Buck*, 271 F. Supp. 3d at 624; *U.S. v. Banki*, No. 10–cr–08, 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010). Indeed, where witnesses are immune from perjury charges, "the strongest indicator of the reliability of a witness' testimony—the oath—is effectively" absent, and thus the need to conduct in-person cross-examination and directly observe the "witnesses' demeanor, body language, and interactions in order to gauge the truth of their statements becomes especially important." *Banki*, 2010 WL 1063453, at *2; *see also Craig*, 497 U.S. at 845-46 (requiring testimony under oath "impresses [the witness] with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury.").

In *Buck*, the court refused to allow Swiss nationals to testify remotely from Switzerland because they "are not subject to extradition." 271 F. Supp. 3d at 264. The court explained that, "[g]iven this legal impediment, these witnesses' testimony may essentially be free of any penalty of perjury, calling into doubt the reliability of any of the potential testimony." *Id.* Likewise, in *Banki*, the court did not allow remote testimony by Iranian citizen witnesses because they were not subject to extradition or, as a result, perjury charges. 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010). As the court in *Banki* explained, "[w]ithout the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital." *Id.*; *accord United States v. Donziger*, 19-CR-561 (LAP), 11-CV-691 (LAK), 2020 WL 5152162, *2 (S.D.N.Y. Aug. 31, 2020) (finding that two-way video testimony under oath from a federal courthouse would "assure the reliability" of the testimony for Sixth Amendment purposes).

Here, as in *Buck*, "not only has [the Government] failed to demonstrate that [Ukrainian] officials would assist in administering the oath to the witnesses, but any testimony may not be subject to perjury charges, rendering it unreliable." 271 F. Supp. 3d at 264. Accordingly, the Government's request to permit FTX Customer-1 to testify remotely from Ukraine should be denied.

2.  *Remote Testimony by FTX Customer-1 Would Be Irrelevant and Highly Prejudicial, as Would the Circumstances under Which He Would Testify.*

The Government asserts that FTX Customer-1 is among the "vast majority" of FTX customers – of which there were more than one million – located abroad, and that the salient portions of his testimony will be substantially the same as other customers the Government plans to call as witnesses. ECF No. 302 at 1, 3. Of all these potential witnesses, the Government insists on calling a customer from a war-torn country whose in-person testimony is barred by purportedly insurmountable challenges and whose remote testimony would violate Mr. Bankman-Fried's Constitutional rights. *Id.* at 1-2.[3] Indeed, the Government plainly wishes to call this particular witness not despite these challenges and risks but because of them. What sets FTX Customer-1 apart from other customer witnesses the Government intends to or could call is not the substance of his testimony but the tragic nature of his circumstances. It is an obvious effort to appeal unfairly to the jury's sympathy. As such, the Court should deny the motion pursuant to Rules 402 and 403.

As noted, the Government represents that FTX Customer-1's testimony will be "uniform[]" with that of other customer witness with respect to the nature of the alleged fraud. ECF No. 302 at 3. The Court should exclude such cumulative testimony to safeguard Mr. Bankman-Fried's rights under the Sixth Amendment for the reasons set forth in 1(a), above. Beyond this duplicative testimony, the Government apparently hopes to elicit testimony that FTX Customer-1 "lost a substantial portion of his life savings that he had entrusted to FTX when Russia invaded Ukraine in 2022." *Id.* at 1. Evidence regarding the Russian invasion of Ukraine and its impact upon FTX Customer-1 would be irrelevant to the crimes charged and any probative value would be easily outweighed by the near certainty that the testimony would evoke sympathy and outrage among the jurors. Indeed, the jury could hardly be expected to disentangle its compassion for the witness and revulsion at the Russian invasion from its view of FTX and Mr. Bankman-Fried.

Courts routinely exclude relevant evidence that might elicit sympathy among jurors unrelated to the facts of the case. *See, e.g., United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming exclusion of evidence that defendant's son had cerebral palsy because such evidence "could well cause the jury to be influenced by sympathies having no bearing on the merits of the case"); *United States v. Crown*, No. 99-CR-1044 (AGS), 2000 WL 709003, at *3 (S.D.N.Y. May 31, 2000) (precluding evidence regarding defendant's medical condition as irrelevant and holding that even if the evidence were relevant, "its probative value would be outweighed by its

---

[3] While the Government represents that it has gone to great lengths to overcome the "hurdles" faced by other witnesses, *id.* at 3, as to FTX Customer-1 it appears only to have "submitted an MLAT request to Ukraine to permit Customer-1 to testify. *Id.* at 2. Notably, the Government states that FTX Customer-1 could only leave Ukraine to testify with "express permission from Ukrainian authorities," *id.*, but does state that it has sought such permission. To the extent the Court is inclined to consider the Government's motion, it should require a more concrete, detailed showing of unavailability. *See Colello*, 2023 WL 3584466, at *1–2 (requiring a concrete showing of unavailability for two-way video testimony to avoid violation of the Confrontation Clause).

potential prejudicial effect on the jury" because it "would likely appeal to the jury's sympathy, and thus constitute an improper influence on the jury members' consideration of the factual and legal issues bearing on the merits of the case").

Further, the circumstances under which FTX Customer-1 would testify and the reason for his absence from the courtroom would themselves be prejudicial. This would be true even if the Court excludes testimony on these topics. Jurors would inevitably speculate about why a Ukrainian national (and no other witness) is testifying by video, and the most obvious answers would almost certainly provoke "sympathies having no bearing on the merits of the case." *Paccione*, 949 F.2d at 1201.

\*　　\*　　\*

For the reasons set forth above, the defense respectfully urges the Court to deny the Government's motion to permit remote testimony pursuant to the Sixth Amendment and Federal Rules of Evidence 402 and 403.

Respectfully submitted,

　/s/ Mark S. Cohen　
Mark S. Cohen
Christian R. Everdell
S. Gale Dick
Sharon L. Barbour
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York 10022
(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com
sgdick@cohengresser.com
sbarbour@cohengresser.com

cc: All counsel of record (via ECF)