

COHEN & GRESSER LLP

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

October 12, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

  Re: *United States v. Samuel Bankman-Fried*, S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

  On behalf of our client, Samuel Bankman-Fried, we respectfully submit this letter motion *in limine* to address certain evidentiary issues that have emerged in the trial to date and are expected to recur with witnesses who will be testifying after Ms. Ellison, including lenders, investors, customers, and former employees. In particular, we would seek to elicit testimony from witnesses regarding (1) facts relevant to the nature of the relationship between FTX and its customers, and (2) the materiality of alleged misrepresentations or omissions. In addition, we respectfully submit that the Government should not be permitted to offer expert opinion from lay witnesses. In terms of timing, the defense does not seek a ruling until Ms. Elison has completed her testimony.

  As a preliminary matter, we respectfully submit that, in cross-examining Government witnesses, the defense should not be limited to questions relevant to the Government's theory of the case, and instead should be permitted to ask questions relevant to the defense's theories. The Government has objected to the defense's effort to ask questions of Government witnesses that strayed from the Government's conception, but the defense should not be precluded from "fleshing out" its theories through cross-examination. *Alvarez v. Ercole*, 763 F.3d 223, 231-32 (2d Cir. 2014); *see also Olden v. Kentucky*, 488 U.S. 227, 230, 109 S.Ct. 480, 482 (1988) (per curiam) (holding that lower court erred by precluding defendant from cross examining

The Honorable Lewis A. Kaplan
October 12, 2023
Page 2

prosecution witness regarding facts relevant to "[p]etitioner's theory of the case").[1] In short, the Court should permit the defense to "present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923 (1967).

> 1. *The Defense Should Be Permitted to Cross-Examine Government Witnesses and Offer Evidence to Rebut the Misappropriation Theory of Fraud the Government Is Seeking to Prove.*

The Government has made clear that it is pressing a "misappropriation theory" of wire fraud on FTX customers – that is, of theft of customer money. *See* ECF No. 301 at 3; Trial Tr. 29:9-10; *id.* at 952:11-12. A key element of the defense is that no theft occurred. Theft requires the wrongful taking of property. The Government has elicited testimony that fiat funds were deposited directly into bank accounts controlled by Alameda. The theft is alleged to have occurred not when customers sent money into Alameda bank accounts, but when Alameda subsequently used those funds for investments and other purposes. *See* Trial Tr. at 954:13-16. The Government appears to claim that those fiat deposits should either have remained untouched as cash in Alameda's bank accounts or converted to stablecoins and transferred to FTX.

The Government must therefore prove beyond a reasonable doubt, as an essential element of the charged offense, that Alameda's use of funds sent by customers to its bank accounts was improper and deprived FTX customers of a property interest. The alleged property interest had two potential sources: the property interest was defined by the FTX Terms of Service, which governed the relationship between FTX and its customers; or the property interest somehow arose in some other manner which the Government has implied may have been a result of the implicit creation of a fiduciary or other relationship. The existence of the property interest and contours of such a relationship, if they exist at all, must be found in the governing law. The governing law in this case is English law as provided by the Terms of Service as well as the fact that FTX is subject to UK law.

We understand that the Court has permitted the Government to elicit testimony in support of its theory of theft. However, we submit that the defense should be able to offer evidence and argument to rebut this theory and to support its own theory, including in its cross-examination of Government witnesses. The defense's position is as follows.

*First*, it is undisputed that the relationship between FTX and its customers was governed by the FTX Terms of Service. When customers sent fiat deposits to Alameda, they did so within the framework of the FTX customer relationship governed by the Terms of Service. The Terms of Service, in turn, were governed by foreign law, and the Terms of Service that have been the

---

[1] Except as otherwise noted, internal quotation marks, alterations, and citations have been omitted from the citations to authorities in this letter.

focus of the case so far were governed by English law. Accordingly, the question of whether Alameda's use of customer fiat deposits was permissible within the scope of that relationship – and, thus, whether a theft of property occurred – is governed by foreign law.

To date, the Government has indicated that it will seek to prove its misappropriation theory by eliciting testimony from customers regarding their "understanding and expectation" of the nature of their relationship with FTX and their how their deposits would be treated. ECF No. 301 at 3; *see* Trial Tr. 81:4-6. The Government asserts that such testimony is proof that customers had a "fiduciary or similar relationship to FTX for purposes of the misappropriation theory." ECF No. 301 at 3. The Government also elicited testimony from an investor regarding customer expectations relating to their relationships with an exchange, Trial Tr. 274:13-274:24, and from former FTX employees about their beliefs regarding whether it was proper for Alameda to use customer fiat deposits held in its bank accounts. *E.g.*, Trial Tr. 160:24-161:2; *id.* at 162:25-163:2; *id.* at 438:3-13.

However, it is the defense's position that the rights and obligations of parties to a commercial relationship are not established by their expectations and understandings for purposes of the misappropriation theory of the federal fraud statutes. *See, e.g.*, *United States v. Chestman,* 947 F.2d 551, 567 (2d Cir. 1991) ("a fiduciary duty cannot be imposed unilaterally by entrusting a person with confidential information"). Indeed, courts have recognized that, where allegations of fraud are predicated on violation of the terms of a contract, compliance with those terms is a defense to the charged offense. *See, e.g.*, *United States v. Race*, 632 F.2d 1114 (4th Cir. 1980) (reversing conviction of defendants for violating 18 U.S.C. § 1001 in government contracting case where, contrary to allegations in the indictment, the defendants' billing practices were permitted by the relevant contract).

Accordingly, the defense should be permitted to question the Government's witnesses as to the Terms of Service and presenting evidence regarding the relevant provisions.

By seeking to prove misappropriation through testimony from customers and others regarding their beliefs and expectations, the Government is trying to sidestep its burden to prove an essential element of its embezzlement theory beyond a reasonable doubt. Indeed, evidence of customers' belief regarding their legal relationship with FTX would only serve to distract and confuse jurors in considering the facts in light of the meaning of the Terms of Service. Fed. R. Evid. 403; *see also United States v. Litvak*, 889 F.3d 56, 69 (2d Cir. 2018) (explaining that a counterparty's indisputably erroneous claim of an agency relationship with the defendant is not relevant to prove materiality). We respectfully submit that any further evidence in this regard should be excluded or accompanied by a limiting instruction to the jury. The same is true for testimony of former FTX employees regarding their beliefs and expectations regarding the use of customer fiat deposits. *See, e.g.*, Trial Tr. 160:24-161:2; *id.* at 162:25-163:2; *id.* at 438:3-13.

*Second*, the Government has represented that it will offer into evidence one portion of the FTX Terms of Service, which relates to crypto assets in customer accounts, ECF No. 204 at 40,

The Honorable Lewis A. Kaplan
October 12, 2023
Page 4

and moved to exclude other portions, such as disclaimers of liability and damages. The Court denied that motion without prejudice. ECF No. 289 at 12 ¶ 17. The defense should be permitted to introduce other portions of the Terms of Service, including those relating to funding accounts through fiat deposits and specifying that FTX has no fiduciary relationship and does not act as a broker, agent, or advisor to its customers. *See Porter v. United States*, No. 13 CIV. 7332 NRB, 2015 WL 1004953, at *1 (S.D.N.Y. Mar. 3, 2015) (noting that a contract is "a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay"); McCormick on Evidence § 249 n.4 (8th ed.).

*Third*, the Government may seek to argue that the deposit of customer fiat to Alameda was not governed by the Terms of Service, and thus by English law, but rather that there was some form of constructive trust or other fiduciary of similar relationship between FTX customers and Alameda. The defense should be permitted to rebut any such argument and evidence offered to support it. The defense would also request the opportunity to submit a proposed jury charge on the relevant law and its application to the evidence in this case.

*Finally*, the defense previously offered expert testimony of Lawrence Akka KC to provide background and applicable English legal principles to assist the jury in evaluating the lawfulness of alleged actions implicated by the Terms of Service. ECF No. 275 at 37-42; ECF No. 276-9. In excluding Mr. Akka's proposed testimony, the Court stated that questions of foreign law are to be determined by the Court and that it would entertain a proposed jury charge on the "legal relationship between FTX and its customers." ECF No. 287 at 2 ¶ 3 & n.6. Since that ruling, the contours Government's misappropriation or embezzlement theory of fraud have become clear, as has the central importance of English law to this theory. Respectfully, we ask the Court to permit the defense at the appropriate time to submit a revised and narrower Rule 16 disclosure for Mr. Akka for the Court to consider.

2. *The Defense Should Be Permitted to Offer Evidence and Argument Regarding the Materiality of Alleged Misrepresentations or Omissions.*

The defense anticipates asking witnesses who were customers and investors of FTX and lenders to Alameda questions designed to elicit testimony about the factors they considered material in entering the arrangements and transactions at issue in this trial.

The Court's Memorandum and Order on the Government's *In Limine* Motions granted the Government's motion *in limine* to exclude evidence that FTX's customers and investors or Alameda's lenders were "negligent, gullible, or insufficiently vigilant." ECF No. 289 at 7-8 ¶ 9. The Court noted that "reliance is not an element of criminal fraud." *Id.* However, there is no dispute that *materiality* – as distinct from reliance – is an essential element of such a charge. *See* ECF No. 246 at 32 (citing cases). As we understand it, the Court's ruling on this issue does not preclude evidence regarding the materiality of various factors that were considered in customer, investor, and lender decisions.

Indeed, the Government asked Marc-Antoine Julliard (a former FTX customer) about information that he considered to be "important." Trial Tr. 68:16-69:7. Likewise, Mr. Huang (an FTX investor) testified on direct regarding factors and statements that Paradigm considered in its investment decision. *See, e.g.*, Trial Tr. 269:12-270:3, 277:14-278:12, 279:23-279:25, 280:24-281:11, 287:11-288:6.[2] In essence, the Government was positioning Mr. Huang as a *sophisticated* investor – the opposite of the gullible investor that would implicate the Court's prior ruling.

The Government's witness list includes several other investors as well as Alameda lenders and FTX customers. Respectfully, we submit that the defense should be entitled to ask appropriately focused questions that relate to the materiality of certain factors these witnesses considered or decided not to consider in entering transactions with FTX or Alameda to the same extent the Government has done so. The goal will be to establish what factors these witnesses – including sophisticated investors and lenders conducting appropriate due diligence and making informed decisions – considered to be material.

    3.    *The Government Should Not Be Permitted to Offer Expert Opinions from Lay Witnesses.*

We respectfully ask the Court to preclude the Government from eliciting expert testimony from lay fact witnesses. Fed. R. Evid. 701, 702; Fed. R. Crim. P. 16(a)(1)(G)(i). A lay witness is permitted to testify in the form of an opinion only if the opinion is "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(a); *see id.*, Advisory Committee's notes, 2000 Amendments ("[L]ay testimony results from a process of reasoning familiar in everyday life."). In his direct examination, Mr. Huang provided opinions about, among other things, the "general expectation by customers in the crypto industry" and how crypto exchanges operate. *E.g.*, Trial Tr. 274:18-21; *id.* at 282:18-22. Because this testimony was purportedly based on Mr. Huang's "knowledge and experience of digital assets in the companies in the cryptocurrency ecosystem," Trial Tr. 266:22-24; *see also id.* at 275:3-5, 282:18-19, and not on Mr. Huang's own perception or everyday lay experience, it was expert opinion.

Going forward, the Government should be precluded from eliciting similar expert testimony from lay witnesses. The only experts for which the Government provided Rule 16 disclosures are Prof. Peter Easton and Dr. Andria van der Merwe, and only those witnesses should be permitted to offer opinions that do not conform to Rule 701. To the extent the Court permits non-expert witnesses to offer opinions pursuant to either Rule 701 or Rule 702, we

---

[2] Similarly, FTX customer Marc-Antoine Julliard testified about various factors, other than alleged misrepresentations by Mr. Bankman-Fried, that influenced his decision to open an FTX account. *See, e.g.*, Trial Tr. 68:16-22 (FTX's size and number of customers); *id.* at 69:11-20 (that major venture capital firms had invested in FTX).

The Honorable Lewis A. Kaplan
October 12, 2023
Page 6

respectfully submit that the defense should be permitted to cross-examine the witness to discern the basis for the opinion and, in the event of expert opinion, to explore the supporting facts and the reliability of the expert's methodology.  *See* Fed. R. Evid. 702.

                        Respectfully submitted,

                          /s/ Mark S. Cohen
                        Mark S. Cohen
                        Christian R. Everdell
                        S. Gale Dick
                        Sharon L. Barbour
                        **COHEN & GRESSER LLP**
                        800 Third Avenue, 21st Floor
                        New York, New York  10022
                        (212) 957-7600
                        mcohen@cohengresser.com
                        ceverdell@cohengresser.com
                        sgdick@cohengresser.com
                        sbarbour@cohengresser.com

cc:    All counsel of record (via ECF)