

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

October 25, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

     Re: *United States v. Samuel Bankman-Fried*, S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

     On behalf of our client, Samuel Bankman-Fried, we respectfully write in response to the Court's *sua sponte* request for the parties' positions regarding whether the jury should be provided with a special verdict form for the wire fraud on customers charged in Count One of the S6 Indictment. For the reasons set forth below, we respectfully submit that a special verdict in this case would be unnecessary, confusing, and prejudicial.

     Special verdicts "are generally disfavored in this Circuit." *United States v. Pforzheimer*, 826 F.2d 200, 205 (2d Cir. 1987); *see United States v. Ogando*, 968 F.2d 146, 148 (2d Cir. 1992) (noting "the law's traditional distaste for special interrogatories.").[1] They are primarily deemed appropriate "where the offense charged required proof of a specific number of predicate facts," *Ogando*, 956 F.2d at 148, or for sentencing. *See United States v. Jordan*, 591 F. Supp. 2d 686, 705 n.26 (S.D.N.Y. 2008) ("The Second Circuit has identified only limited circumstances in which it is not error for a district court to use jury interrogatories, and those are principally when the information sought is relevant to the sentence to be imposed, and in cases alleging multiple racketeering acts based on different statutory violations."). In determining whether to allow a special verdict, the district court's discretion should be guided by consideration of the risk of prejudice to the defendant. *United States v. Ruggiero*, 726 F.2d 913, 927 (2d Cir. 1984) (Newman, J., concurring), abrogated on other grounds by *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469 (1997); *see also Black v. United States*, 561 U.S. 465, 472, 130 S.Ct. 2963, 2969 (2010) ("the absence of a Criminal Rule authorizing special verdicts counsels caution").

---

[1] Except as otherwise noted, internal quotation marks and citations are omitted from the authorities cited in this letter.

Here, asking the jury to render separate verdicts on a misappropriation theory and a misrepresentation theory of fraud would be inconsistent with the operative indictment, with the positions the Government has taken in this case, and with the case the Government has attempted to present and the defense is working to refute. To avoid unfairness, jury confusion, and the potential need for the defense to seek leave to recall witnesses, we respectfully request that the Court ask the jury to render a single verdict for Count One.

1. *The Government Charged and Has Argued and Sought to Prove a Misappropriation Theory*

The Government has consistently and repeatedly made clear that it is pursuing a misappropriation theory of wire fraud on customers. To the extent recent Government submissions have referenced a misrepresentation theory, they have underscored that such a theory is intertwined with the legal and factual issues presented by the misappropriation theory espoused by the Government to date.

The Indictment. Count One of the S6 Indictment, after tracking the statutory language of 18 U.S.C. § 1343, alleges that Mr. Bankman-Fried "engaged in a scheme to defraud customers of FTX by misappropriating those customers' deposits and using them to pay expenses and debts of Alameda to make investments, and for other purposes." ECF No. 202 at 8, ¶ 17. The non-charging portion of the S6 Indictment spells the theory out in more detail. It alleges, among other things, that "[e]xploiting the trust of FTX customers, [Mr. Bankman-Fried] misappropriated and embezzled FTX customer deposits," *id.* ¶ 1; that he "embezzled and used billions of dollars in customer deposits," *id.* ¶ 2; and that, having publicly represented that FTX would "segregate[] customer assets" and focus on "consumer protection," he "routinely misappropriated, commingled, and embezzled FTX customer deposits." *Id.* ¶¶ 3-4. The S6 Indictment also purports to describe the "primary means" through which customer assets were allegedly "misappropriated." *Id.* ¶ 6.

The S6 Indictment also alleges that Mr. Bankman-Fried posted "false and misleading tweets" in November 2022, but does not explicitly allege that these statements were fraudulent. *Id.* ¶ 14.

Opening Statement; Recent Submissions; Trial Testimony and Evidence. The Government's opening statement explicitly alleged the fraud on customers through misappropriation. The Government alleged that Mr. Bankman-Fried "stole billions of dollars," and reiterated the allegation of "stealing" and misappropriating throughout. *See, e.g.,* Tr. 25:6-10, 32:15, 40:1-2. The Government stated that Mr. Bankman-Fried "convince[d] people to trust FTX with their money," by inducing a belief that customer assets would be safe, but then "stole th[e] money." Tr. 27:25-29:11; *see also* Tr. 38:3-7.

As recently as yesterday evening, the Government explained that its misappropriation theory is centered on the alleged creation and violation of a "fiduciary theory or similar

relationship of trust and confidence," in which another person "entrusts the fiduciary with custody over property." ECF No. 331 at 2; *see also* ECF No. 322 at 2; ECF No. 301 at 3.

The Government's attempted proofs at trial have similarly focused on customer expectations and understanding regarding what FTX could and could not do with customer deposits. *See, e.g.,* Tr. 81:14-17, 1225:18-21, 1289:9-23.

The Government did belatedly assert that it is seeking to prove that the defendant committed fraud on customers through "both misappropriating their funds and by making material misrepresentations and omissions." ECF No. 322 at 1. At the same time, the Government has made clear that there is no meaningful factual distinction between the two theories. For example, the Government has argued that alleged misrepresentations and omissions are directly and deeply intertwined with the alleged misappropriation. ECF No. 331 at 2 ("The jury may consider all the representations, omissions, and actions of the defendant and his agents to determine whether he breached" a fiduciary or similar relationship).

The Government has also taken the position that this "overall body" of representations and omissions relevant to misappropriation includes the Terms of Service. ECF No. 326 at 3; ECF No. 331 at 3. The defense also believes the Terms of Service to be centrally relevant to the misappropriation theory and moved *in limine* for leave to question witnesses on the Terms of Service and the fiduciary duty / misappropriation theory more generally. *See, e.g.,* ECF No. 321 at 2-4.

    *2.    Seeking a Special Verdict on Two Separate Fraud Theories Would be Prejudicial*

In its pretrial motions, as well as in questioning Government witnesses and in preparing its own case, the defense has focused on the offense as charged in the S6 Indictment and previewed in the Government's opening statement and elsewhere. Asking the jury at this stage to render a separate verdict on an uncharged theory of fraud would be highly prejudicial. Among other things, if a special verdict is sought, the defense believes it should be entitled to recall certain witnesses to probe the alternative fraud theory, and we would seek the Court's leave to do so.

     /s/ Mark S. Cohen
Mark S. Cohen
Christian R. Everdell
S. Gale Dick
Sharon L. Barbour
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York 10022
(212) 957-7600

The Honorable Lewis A. Kaplan
October 25, 2023
Page 4

                                          mcohen@cohengresser.com
                                        ceverdell@cohengresser.com
                                             sgdick@cohengresser.com
                                        sbarbour@cohengresser.com

cc:    All counsel of record (via ECF)