

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 25, 2023

**By ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re: *United States v. Samuel Bankman-Fried,* S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

The Government respectfully moves *in limine* to preclude extrinsic evidence of prior putatively inconsistent statements by Gary Wang and Nishad Singh, and in opposition to the defendant's motion to admit such evidence, ECF No. 332.

**A. Background**

On October 21, 2023, defense counsel sent the Government subpoenas seeking the testimony of FBI agents who had written FD-302 reports concerning meetings with Wang and Singh, and in the alternative, requested that the Government enter into a stipulation regarding statements set forth in certain FD-302 reports that the defense claims are inconsistent with the witnesses' trial testimony. On October 22, after reviewing the proposed stipulation, the Government asked defense counsel for more information to determine whether the FD-302 report excerpts outlined in the stipulation met the standard for admissibility under Federal Rule of Evidence 613(b). The Government also told defense counsel that assuming the defense could satisfy Rule 613(b), and that the prior statements were also admissible under Rule 403, the Government would enter into a stipulation about the statements instead of requiring the defendant to call the FBI agents to testify.

On October 23, defense counsel provided transcript citations from Wang's and Singh's testimony regarding the purported inconsistencies. Those transcript citations are discussed in detail below. The same day, the Government informed the defense that the Government did not believe the trial record supported admitting these witness statements under Rule 613(b), that the statements are otherwise inadmissible under Rule 403, and that the Government would move the Court to preclude this evidence.

On October 25, defense counsel moved to admit the evidence. ECF No. 332.

## B. Applicable Law

A party seeking the admission of evidence bears the burden to demonstrate "the legal basis for his proffer." *United States v. Cruz*, 894 F.2d 41, 44 (2d Cir. 1990). Federal Rule of Evidence 613(b) provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Whether "evidence is sufficiently inconsistent to be sent to the jury on the issue of credibility is ordinarily in the discretion of the trial court." *United States v. Ghailani*, 761 F. Supp. 2d 114, 118 n.6 (S.D.N.Y. 2011) (quoting *United States v. Hale*, 422 U.S. 171, 180 n.7 (2d Cir. 1975)).

As this Court recognized in *Ghailani*, the Court should consider four factors in determining admissibility under Rule 613(b): first, "whether the proffered statement in fact is inconsistent with the testimony sought to be impeached"; second, whether "the party seeking to offer extrinsic evidence of a prior inconsistent statement" has "laid a proper foundation for doing so by affording (a) the witness an opportunity to explain or deny the prior inconsistent statement and (b) the opposite party an opportunity to question the witness about it"; third, whether "the extrinsic evidence of the prior inconsistent statement" is competent and otherwise admissible,"; and fourth, whether the impeachment "relate[s] to a material rather than a collateral matter." *Ghailani*, 761 F. Supp. 2d at 117-18. A prior statement can only be admitted if it is "clearly inconsistent" with the testimony. *Id.* at 128.

A "witness's failure to recall a prior statement" only meets that standard "in certain circumstances," when it "is so incredible" that it "has a reasonable bearing on credibility." *United States v. Ashburn*, No. 11 Cr. 303 (NGG), 2015 WL 5098607, at *27 (E.D.N.Y. Aug. 31, 2015) (citation omitted), *aff'd in part, vacated in part, rev'd in part sub nom. United States v. Laurent*, 33 F.4th 63 (2d Cir. 2022); *United States v. DeSimone*, 488 F.3d 561, 572 (1st Cir. 2007) (upholding preclusion of prior statement when witness testified they could not recall because failure to recall "not necessarily inconsistent"); *United States v. Brown*, 788 F.3d 830, 834 (8th Cir. 2015) ("Where a witness in good faith asserts that she cannot remember the relevant events, the trial court may, in its discretion, exclude the allegedly prior inconsistent statement."); *United States v. Grubbs*, 776 F.2d 1281, 1287 (5th Cir. 1985) ("a claim of faulty memory does not constitute an inconsistent statement"). Even if all the requirements of Rule 613(b) have been satisfied, the evidence must be more probative than prejudicial under Rule 403. *Ghailani*, 761 F. Supp. 2d at 118.

## C. Discussion

The defense has asserted that Wang and Singh provided testimony that was inconsistent with prior statements they made during interviews with the Government. The witnesses' trial testimony, however, is not inconsistent with the statements in the FD-302 reports, and the defense failed to lay a proper foundation at trial to admit the report excerpts under Rule 613. The report excerpts are also inadmissible because of their limited probative value as to any variance that has a reasonable bearing on credibility or to a material matter in dispute.

1. <u>Wang's November 17, 2022 Statements</u>

The defense seeks to admit excerpts from an FD-302 report concerning a November 17, 2022 interview with Wang. The defense has identified portions of Wang's testimony that they assert are inconsistent with those excerpts. The relevant portion of the report and testimony are listed below, in further detail than in the defendant's motion.

| Testimony of Gary Wang (Tr. 485:4-25) | November 17, 2022 FD-302 |
|---|---|
| Q. Isn't it true, Mr. Wang, that at that meeting you told the prosecutors that the allow-negative flag was added to Alameda as part of their role as a market maker?<br>A. I don't remember exactly what words I said.<br>Q. Let's see if we can refresh your recollection.<br>MR. EVERDELL: Let's put up on the screen, if we could, what's been marked for identification as 3585-009 [the FD-302 report of the November 17, 2022 meeting]. This is just for the witness. Go to page 3 and blow up the last paragraph.<br>Q. If we could read the first sentence, Mr. Wang.<br>…<br>A. OK.<br>Q. You've read it?<br>A. Yes.<br>Q. Does that refresh your recollection about whether you told the prosecutors at your meeting on November 17 that the allow-negative flag was added to Alameda as part of their role as a market maker?<br>A. I mean -- I don't remember if I said exactly this or not.<br>Q. You don't remember whether you said it or not?<br>A. No. | The allow negative flag was added to ALAMEDA as part of their role as a market maker. FTX treated stablecoins as equivalent, and FTX hot wallets needed to have a mix of coins to handle customer withdrawals. The allow negative flag allowed FTX to satisfy customer withdrawals even if the FTX hot wallet did not have the right types of coins. |

| **Testimony of Gary Wang (Tr. 564:1-565:23)** | **November 17, 2022 FD-302** |
|---|---|
| Q. Okay. Well, isn't it true that you thought that from a technical perspective, it would take a lot of work to replace Alameda on the exchange, right?<br>A. Yes.<br>Q. Among other reasons, it would take a lot of work to replace it as a market maker.<br>A. Well, as a market——there were other market makers on the exchange, so that part was mostly fine.<br>Q. Well——<br>A. But this was the other thing that Alameda was doing on FTX that made things——made it difficult.<br>Q. Well, didn't you tell the FBI and the prosecutors that from a technical perspective, it would take a lot of work to replace Alameda as a market maker?<br>A. As a——I mean, I don't know if it would affect the market maker——I mean, I might have said market makers.<br>Q. Okay. Well, let me see if this refreshes your recollection.<br>MR. EVERDELL: If we could pull up 3585-009, just for the witness, at page 5. And it's the third paragraph from the bottom. Sorry, if you could re-highlight it so it gets all of it.<br>Q. All right. Now if you take a look at that. And just look at the last sentence there, Mr. Wang, see if that refreshes your recollection.<br>A. I mean, it's possible that——<br>Q. Just take a look at the document and see if that refreshes your recollection.<br>A. I mean, not——<br>THE COURT: Does it refresh your recollection is the question.<br>THE WITNESS: Not in particular.<br>MR. EVERDELL: All right. Take it down.<br>Q. So you do not recall telling the FBI that from a technical perspective, it would take a lot of work to replace Alameda as a market maker?<br>A. I mean, definitely said that would take a lot of work on a technical level to replace | In the #-Organization Signal chat, ELLISON, SINGH, and others discussed how FTX would function if ALAMEDA wasn't trading. From a technical perspective, it would take a lot of work to replace ALAMEDA as a market maker. |

| | |
|---|---|
| Alameda on FTX, and I might have said market maker, I might not have said market maker. Still depends on what the definition of market maker is, like if you——like, last time you said that market making was placing the order——<br>Q. Mr. Wang, I'm simply asking you whether or not you said that to the FBI. I think your answer was you don't specifically recall, right?<br>A. Yes.<br>Q. Okay. All right. Let's move on. | |

Neither of the proposed FD-302 excerpts from November 17, 2022 are admissible because they are not clearly inconsistent with the witness's testimony. Starting with the first excerpt, the defense has failed to establish inconsistency. When the defense asked the witness whether "the allow-negative flag was added to Alameda as part of their role as a market maker," the witness did not deny the statement, but instead testified that he did not "remember exactly what words [he] said" when he met with prosecutors. After he was shown the portion of the FD-302 that the defense now seeks to admit in order to refresh his recollection, the witness's testimony was simply that he did not "remember if [he] said exactly this or not."

During the second day of his cross-examination, defense counsel asked Wang about the second excerpt from the November 17 FD-302. Wang said that he "might have said market makers" and did not deny a prior answer. After being shown a portion of the FD-302 to refresh his recollection, Wang again testified that he "might have said market maker," that his answer "depends on what the definition of market marker is," and then confirmed he did not "specifically recall" his past statement. Defense counsel then moved on from the topic.

The lines of questioning relating to the November 17 statements are insufficient to establish past inconsistency, because a failure of recollection is not equivalent to a denial. *See Ghailani*, 761 F. Supp. 2d at 128; *Ashburn*, 2015 WL 5098607, at *27 ("witness's failure to recall a prior statement" only inconsistent when "so incredible" it "has a reasonable bearing on credibility"). Indeed, Wang admitted that he "might have said market maker" in his prior interview with the Government, rather than saying he failed to recall the conversation on this topic entirely.

Defense counsel argues that Wang's inability to recall these details amount to an inconsistency, but the cases he cites are inapposite. Both deal with circumstances in which a witness claimed not to recall certain facts *in toto* during his trial testimony. For instance, in *United States v. Insana*, 423 F.2d 1165, 1168 (2d Cir. 1970), a witness had previously provided detailed testimony about a transaction before the grand jury and in an interview with prosecutors, and then on the stand at trial denied any memory of the transaction. Thus, his prior statement was inconsistent with his claimed lack of memory about the transaction. *Id.*; *see also United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987) (allowing impeachment of witness who claimed not to remember being told by her husband that the defendant had acknowledged committing robbery). Here, by contrast, the defendant offers nothing but *ipse dixit* to suggest that the witness, who

testified and was cross-examined for hours, was "feign[ing] a lack of recollection," ECF No. 332 at 4, and instead all indications are that he was "in good faith assert[ing] that he cannot remember the relevant events" – circumstances in which the trial court "may, in its discretion, exclude the prior testimony." *Insana*, 423 F.2d at 1170.

Perhaps most importantly, the defendant seeks to offer the interview notes indicating that Mr. Wang described the allow negative flag as being part of Alameda's market making function, but Mr. Wang never denied, in substance, that the allow negative flag was added as part of Alameda's market making function. Instead, he acknowledged repeatedly during his testimony that the allow negative flag was initially added to arguably facilitate the functionality of the exchange, including in particular to facilitate stablecoin conversions, which is fully consistent with the report offered by the defense. Wang stated that he did not remember the exact words he used when explaining this to the FBI, but did not deny that he might have characterized this as part of the market making function. There is thus nothing inconsistent between Wang's trial testimony and his inability to recollect the precise words he used when describing the allow negative feature during an earlier interview. Further, Wang ultimately testified on redirect that Alameda's special features may have been in part to facilitate market making. Tr. 611:21-23 ("Q. So let me ask you, was market making *the only purpose* that these special features were used for? A. No.") (emphasis added). There is thus no basis for the defendant's assertion that the jury would conclude that Wang "never viewed the allow negative code as connected to Alameda's market making function." ECF No. 332 at 5.

Defense counsel also failed to lay an appropriate foundation for admission of the excerpts of the November 17 FD-302 under Rule 613(b). Specifically, while the defense showed Wang "the relevant part of the 302 for the purpose of determining whether it refreshed his recollection," the questioning at best left unclear "whether he was denying that he made the statements attributed to him in the 302, or whether he was denying that the statements attributed to him were correct," or whether he was simply denying recollection. *Ghailani*, 761 F. Supp. 2d at 124 n.36. In any case, because defense counsel then "dropped the point on cross-examination and failed to notify the Court or the government that he would seek to impeach [the witness] on this point by extrinsic evidence," it "deprived the government of an opportunity to question [the witness] on the point before the jury, as was its right." *Id.* Once again, the cases the defendant cites are inapposite. In *United States v. Amato*, upon questioning the witness "denied making these statements, and, after examining the notes, testified that the statements are incorrect reflections of his statements." No. 03 Cr. 1382 (NGG), 2006 WL 1891113, at *5 (E.D.N.Y. June 27, 2006). Here by contrast, Wang's testimony leaves unclear whether he denied he made the statements, whether the statements were correct, or whether he was denying recollection.[1]

---

[1] Defense counsel also has asserted that the following portion of Wang's testimony at page 486 of the transcript is inconsistent with one or more of the FD-302 reports. Besides the fact that the following questioning did not establish inconsistency with any prior statement by Wang, defense counsel also failed to give Wang an opportunity to explain any past statement, meaning defense counsel failed to lay a foundation for a Rule 613(b) admission.

Q. You also, I think, spoke to the prosecutors again on August 31, isn't that right?

2. <u>Wang's December 7, 2022 Statement</u>

The defense seeks to admit an excerpt from a FD-302 report concerning a December 7, 2022 interview with Wang. The defense has identified a portion of Wang's testimony that they believe is inconsistent. The relevant portion of the report and testimony are listed below.

| **Testimony of Gary Wang (487:5-23)** | **December 7, 2022 FD-302** |
|---|---|
| Q. Does that refresh your recollection about whether or not you told the prosecutors, on August 31 of 2023, that in order to do a stablecoin conversion that it was -- that the allow-negative flag was necessary for that and that this was part of Alameda's market-making function?<br>MR. ROOS: Objection. Compound.<br>THE COURT: Sustained. Form.<br>MR. EVERDELL: I'll break it up.<br>Q. Do you recall saying to the government -- does it refresh your recollection that you told the government that the allow-negative flag was necessary for converting between stablecoins?<br>A. Yes.<br>Q. And does it refresh your recollection that you also told the government that this was part of Alameda's market-making function?<br>A. I don't know if I used those exact words or not. I may have said market making. I may have also said for the functionality of the exchange. | ALAMEDA needed to withdraw stablecoins from the FTX platform, convert them, then re-deposit them back on FTX. This was part of ALAMEDA's market making function. |

---

    A. Yes.
    Q. And were you -- I believe you were again asked about the allow-negative flag at that meeting as well?
    A. Yes.
    Q. And isn't it true that at that meeting you also told the prosecutors that the allow-negative flag was there because it was necessary from when you converted between stablecoins and that this was a part of Alameda's market-making functions?
    A. I don't remember if I used the words market-making functions or not, but I definitely did say the first parts.
    Q. You said the first part, but you don't recall saying that it was part of their market-making functions?
    A. I may well have, but I don't remember.

The excerpt that the defense seeks to offer from a December 7, 2022 interview report fails to meet the requirements of Rule 613. The statement is not inconsistent with his trial testimony. Indeed, the proposed excerpt omits the full sentence from the FD-302, which when included, is entirely consistent with Wang's testimony. Specifically, the December 7, 2022 interview, as documented by an FBI agent, stated the following (with the portion omitted by the defense in bold):

> **BANKMAN-FRIED implemented the allow negative flag in August 2019. He did this because when converting between stablecoins** ALAMEDA needed to withdraw stablecoins from the FTX platform, convert them, then re-deposit them back on FTX. This was part of Alameda's market making function.

There is nothing inconsistent about Wang's testimony and this past statement, much less an inconsistency that bears on Wang's credibility. *See United States v. Trzaska,* 111 F.3d 1019, 1025 (2d Cir. 1997) ("statements are inconsistent if there is "[a]ny variance between the statement and the testimony that has a *reasonable bearing on credibility*" (emphasis added)). Wang did not deny telling the Government that part of the motive behind the "allow negative flag" was Alameda's market-making activities. Instead, he testified he could not recall whether he had so told the Government. That is not "clearly inconsistent" with the prior statement. *Ghailani*, 761 F. Supp. 2d at 128; *Ashburn*, 2015 WL 5098607, at *27.

The defense also cannot establish the foundational requirements of Rule 613(b) for the admission of the December 7 report excerpt. Wang was never plainly asked about the statement from the December 7 FD-302, since defense counsel instead referred to his meeting on August 31, 2023, and as a result, Wang was never given an opportunity to explain or deny the prior statement, as the Rule requires.[2] Likewise, the Government was not given notice of the defendant's intention to offer a portion of the December 7 FD-302 as extrinsic evidence, and therefore did not have an opportunity to question the witness about it. Defense counsel's repeated questioning about notes taken of interviews on different dates is insufficient to meet the foundational requirements of the Rule.

Even if the inadequate foundation points were set aside, the proposed prior statements do not bear on Wang's credibility as a witness or relate to a material matter in light of his testimony. Wang confirmed on multiple occasions that the allow negative flag was initially added to arguably facilitate the functionality of the exchange. Tr. 364 (Wang testified that Bankman-Fried initially directed him to add the allow negative to pay for FTT-related expenses and for conversions between USD and stablecoin); Tr. 488 (same). The description of such functions as "market making" or "functionality of the exchange" (*see* Tr. 487:18-23) does not bear on Wang's credibility—particularly where Wang was not afforded an opportunity to explain if there was any material difference. Also on redirect, Wang testified that Alameda's special features may have been in part to facilitate to market making. Tr. 611:21-23 ("Q. So let me ask you, was market

---

[2] It appears that defense counsel may have attempted to show Wang excerpts from the December 7, 2022 FD-302, *see* 3585-025, Tr. 486:24-487:4, but his question asked the witness about a meeting on an entirely different date, and therefore cannot be a basis for admission under Rule 613.

making *the only purpose* that these special features were used for? A. No." (emphasis added)). Based on the entirety of the record, the statements that the defendant seeks to introduce are not inconsistent with Wang's trial testimony, let alone inconsistent on a point that bears on his credibility, and are, at best, collateral to the material issues at trial, namely whether the defendant falsely told FTX's investors and customers that Alameda had no special privileges. There is thus more than enough record evidence for the defendant to argue that "there were legitimate business for implementing the allow negative function." ECF No. 332 at 7.

### 3. Singh's January 4, 2023 Statement

The defense seeks to offer the following portion of a FD-302 report for a January 4, 2023, interview with Nishad Singh, which the defense claims is inconsistent with his testimony, set forth below.

| Testimony of Nishad Singh (Tr. 1531:18-1532:24) | January 4, 2023 FD-302 |
|---|---|
| Q. Isn't it fair to say that you told the prosecutors that you had a surprising amount of haziness when trying to recall events in June and July of 2022?<br>A. I don't remember saying those exact words, but I did acknowledge that there was a lot that I -- there was a lot that I didn't remember the details around from that time.<br>Q. In particular as to June and July of 2022.<br>A. I don't know if I said specifically those dates or months.<br>MR. COHEN: Why don't we call up for the witness only 3501-021 [the January 4, 2023 FD-302], page 17.<br>Brian, if you could go to the second-to-last paragraph and call it out, pull it up.<br>Q. Mr. Singh, take a moment and read this to yourself. The question is whether it refreshes your recollection as to what you told the prosecutors about your haziness in the meeting with them on January 4, 2023.<br>A. Sorry. Could you repeat the ask again?<br>Q. Sure. This is whether or not it refreshes your recollection as to what you told prosecutors about your surprising amount of haziness in 2020 in June and July of 2022. Yes or no, does it refresh your recollection?<br>A. I still don't remember having said it specifically about June or July of 2022, but I could believe that I did. | SINGH had a surprising amount of haziness when trying to recall events in June and July of 2022, and sometimes could not come up with a specific memory to support the things he understood to have happened. |

| | |
|---|---|
| MR. COHEN: We can take that down.<br>THE COURT: The question was, does it refresh your recollection, not whether you could believe that you did.<br>THE WITNESS: Fair point. The transcript or, I guess the notes themselves don't actually refresh my recollection. I do separately remember –<br>THE COURT: You've answered the question. Could we move on.<br>MR. COHEN: Yes, your Honor. | |

There is nothing inconsistent between the statement in the January 4 FD-302 and the witness's testimony. Singh repeatedly testified that he did not "remember saying those exact words" but acknowledged not remembering some of "the details." And instead of asking Singh directly whether it was true or not that he was hazy when trying to recall events from June 2022, the defense posed their questions exclusively as whether the notes refreshed the witness's recollection. As described above, a failure of recollection does not establish clear inconsistency. *Ghailani*, 761 F. Supp. 2d at 128; *Ashburn*, 2015 WL 5098607, at *27. The defense also failed to establish a foundation for the admission of this report excerpt as extrinsic evidence because they never gave the witness an opportunity to explain the statement in the FD-302, and they never gave the Government notice of an intention to offer the report excerpt as extrinsic evidence of a prior inconsistent statement. Finally, this issue is wholly collateral: Singh testified that he could not remember some "details." Whether this occurred in June and July of 2022 or at some other point, Singh's testimony on its face provides ample basis for the defendant to argue to the jury that Singh "may feel obliged to support the Government's narrative." ECF No. 332 at 5.

   4. Singh's January 19, 2023 Statement

The defense seeks to offer the following portion of a FD-302 report for a January 19, 2023, interview with Nishad Singh, which the defense claims is inconsistent with his testimony, set forth below.

| Testimony of Nishad Singh (Tr. 1611:18 to 1612:14; Tr. 1613:5-10) | January 19, 2023 FD-302 |
|---|---|
| Q. Isn't it true that you told them that you thought that there were points along the way when you had a pit in your stomach and felt things were wrong, but the purchase of the house was not one of those times?<br>A. I don't remember if those were my exact words.<br>Q. Words to that effect?<br>A. I don't remember.<br>MR. COHEN: Why don't we pull up 3501-28 [the January 19, 2023 FD-302] at page 9. If | There were points along the way when SINGH had pit in his stomach and felt things were wrong, but the purchase of the home was not one of those times. SINGH also did not feel like that when he treated the transfers from ALAMEDA as loans without questioning further. |

| |
|---|
| we can go to page 9 just for the witness, bottom of 9. Go back. I think we might have to go to page 10. Go back to 9. I'm sorry, Brian. Top of 9. I got it. Pull out the paragraph at the top of 9.<br>Q. Read the first paragraph to yourself. My question is simply whether it refreshes your recollection of you telling the prosecutors there are points along the way when you had a pit in your stomach and felt things were wrong, but the purchase of the home was not one of those times.<br>A. Sorry. I don't see an exhibit in front of me.<br>\* \* \*<br>Q. Again, Mr. Singh, yes or no: Does the passage at the top of that page, page 9, refresh your recollection about whether you told the prosecutors there were points along the way when you had a pit in your stomach and felt things were wrong but the purchase of the home was not one of those times?<br>A. Not really.<br>Q. Okay. Do you recall in that same meeting being asked about the political donations——<br>MR. ROOS: Can we take down the document.<br>MR. COHEN: Yes, please. |

There are several problems with the defense's proposal to admit the January 19 excerpt as a prior inconsistent statement. First, defense counsel never established inconsistency. Defense counsel never asked the witness whether it was in fact true that he "had a pit in his stomach and felt things were wrong, but the purchase of the home was not one of those times." As a result, the witness was never asked to admit or deny the statement. Defense counsel, instead, asked a different question: whether the witness recalled making the statement to prosecutors. In response to that question, the witness said he did not recall, which is a failure of recollection, not a denial. When defense counsel showed the witness the excerpt from the report, he again did no more than ask the witness whether it refreshed his recollection that he made a statement to prosecutors. The question and answer did not establish an admission or denial of the substance of the statement. For that reason, the defense cannot now offer the prior statement. Moreover, this statement once again fails to satisfy the foundational requirements of Rule 613(b), as described earlier in this letter, because the witness was never given the actual opportunity to explain or deny the statement. Finally, the statement is collateral and inadmissible under Rule 403, because whether Singh felt any emotions about the purchase of the home at a time when he consistently testified that he knew it was paid for with customer money is immaterial to the issues in dispute at this trial.

**D. Conclusion**

All of the excerpts from the FD-302 reports are inadmissible. However, if the Court determines otherwise, the Government intends to confer with defense counsel on an appropriate stipulation rather than require the defendant to call the FBI agents who wrote the reports of the meetings. In such circumstances, the Government intends to offer additional statements from FD-302 reports as prior consistent statements to rebut the defense's suggestion on inconsistency, or under the rule of completeness to prevent the jury from being misled about the meaning of certain statements in FD-302 reports.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: *Samuel Raymond*
Danielle R. Sassoon
Nicolas Roos
Danielle Kudla
Samuel Raymond
Thane Rehn
Assistant United States Attorneys
(212) 637-6519

Cc: Counsel of Record (via ECF)