

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

October 25, 2023

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:  *United States v. Samuel Bankman-Fried*, S6 22 Cr. 673 (LAK)

Dear Judge Kaplan:

      On behalf of our client, Samuel Bankman-Fried, we respectfully submit this letter to give the Court notice regarding certain testimony we anticipate eliciting from Mr. Bankman-Fried on direct examination.[1] Specifically: (1) Pursuant to the Court's order of October 1, 2023, ECF No. 305 at 9-10, we respectfully request to elicit testimony regarding Mr. Bankman-Fried's knowledge of the involvement of counsel in certain matters; (2) Pursuant to the Court's order of September 26, 2023, ECF No. 289 at 8-9 ¶ 10, we respectfully request to elicit testimony regarding Mr. Bankman-Fried's knowledge of certain industry practices; and (3) We intend to elicit testimony regarding Mr. Bankman-Fried's intentions and beliefs on November 12, 2022, to rebut the inferences from Gary Wang's testimony that Mr. Bankman-Fried directed the transfer of assets to Bahamian regulators on that date, over the objections of FTX's in-house and outside legal counsel, in an effort to retain control of FTX. This would include testimony regarding Mr. Bankman-Fried's belief that the Bahamian authorities and not FTX's in-house counsel or U.S. bankruptcy counsel were acting in the best interests of FTX customers.

      1.    *Involvement of Counsel as Relevant to Mr. Bankman-Fried's Good Faith*

      The Government previously moved to preclude Mr. Bankman-Fried from offering evidence or argument regarding the involvement of attorneys. ECF No. 204 at 44. After initially

---

[1] Mr. Bankman-Fried reserves the right to decide not to testify.

deferring a ruling on this matter, ECF No. 289 at 13 ¶ 19, the Court precluded the defense from referring in its opening statement to the role of counsel and required the defense to give prior notice to the Court and the Government, outside the presence of the jury, before offering evidence on these issues at trial. ECF No. 305 at 9-10. The Court explained that whether the defense may offer such evidence will depend on the circumstances, and noted the risk of confusion if such evidence were presented "without any degree of specificity about what [attorneys] were present for or involved in, what their tasks were, what exactly they knew, and what the defendant knew about what the lawyers knew and were doing." *Id.* at 9. The Court further noted that "circumstances in which lawyer presence, involvement, or advice [is] known to the defendant at the time of his alleged misconduct might have a real bearing on whether he acted with or without fraudulent intent." *Id.*

On September 15, 2023, the defense provided additional disclosures to the Government indicating that we would seek to adduce evidence as to the involvement of counsel in, *inter alia*, the following events at FTX and Alameda, as relevant to Mr. Bankman-Fried's good faith:

- In or about mid-2021, FTX Chief Legal Officer Dan Friedberg and outside counsel Fenwick & West implemented data retention policies, including auto-deletion policies for Slack and Signal communications, at FTX and Alameda;

- In or about mid-2021, Mr. Friedberg and Fenwick & West were involved in the creation of the North Dimension entities and Mr. Friedberg supervised the opening of North Dimension's bank account with Silvergate Bank;

- In mid-2021, Mr. Friedberg and Fenwick & West were involved in drafting and approving the Payment Agent Agreement between FTX and Alameda;

- In or about late-2021 to mid-2022, Mr. Friedberg, FTX General Counsel Can Sun, and FTX US General Counsel Ryne Miller, and Fenwick & West were involved in approving and structuring loans from Alameda to Mr. Bankman-Fried, Gary Wang, and Nishad Singh, and attorneys drafted the loan documents;

- Mr. Friedberg, Fenwick & West, and later Mr. Sun were involved in drafting and approving the FTX Terms of Service, which were updated at various points in time from 2019 to May 2022; and

As discussed below, Mr. Bankman-Fried's knowledge of the involvement of counsel in these matters is directly relevant to his state of mind and good faith at the time.

First, the Government has argued and elicited testimony that the use of auto-deletion policies is evidence of Mr. Bankman-Fried's fraudulent and criminal intent. For example, the Government asserted in its opening argument that Mr. Bankman-Fried "demanded that [his

employees] set their messages to auto delete after 30 days" because "[h]e didn't want a paper trail for his crimes." Trial Tr. at 36; *see also* Trial Tr. 175:12-177:9, 448:8-20 (eliciting testimony from Adam Yedidia and Gary Wang that Mr. Bankman-Fried issued instructions regarding Signal communications and the auto-delete function). The Government recently represented that it will seek to introduce a summary chart showing numerous Signal message chats and information about the auto-delete function for each chat. Mr. Bankman-Fried's understanding that auto-deletion policies were instituted under the guidance of lawyers would be directly relevant to rebut the inference that these policies were instituted for improper purposes. *See* ECF No. 246 at 26-31.

Second, the Government alleged that Mr. Bankman-Fried "misappropriated and embezzled FTX customer deposits" by directing FTX to "[tell] customers to deposit funds into bank accounts controlled by Alameda" and thereafter using customer funds for impermissible purposes. S6 Indictment ¶¶ 1, 6; *see also* Trial Tr. 151:14-18, 155:8-13, 156:9-158:25, 159:15-160:12 (eliciting testimony from Mr. Yedidia that Alameda was receiving FTX customer deposits through a bank account labeled the "North Dimension" bank account and regarding what he was told by Mr. Bankman-Fried or his alleged co-conspirators regarding the reason for using that account). Mr. Bankman-Fried's understanding as to the involvement of counsel in the formation of the North Dimension entities and opening of its bank account at Silvergate bank, and in the creation of the Payment Agent Agreement between FTX and Alameda, would be directly relevant to his good faith belief that there was nothing improper about using Alameda-controlled entities to accept FTX customer deposits.

Third, the Government has alleged that Mr. Bankman-Fried "took steps to conceal that [] investments and expenditures were funded by transfers originating with Alameda, and therefore funded with FTX customer funds" and that Mr. Bankman-Fried accomplished this by borrowing over $1 billion from Alameda and overseeing "similar borrowing by other FTX executives." S6 Indictment ¶ 8; *see also* Trial Tr. 324:24-325:18, 1460:1-6; 1515:5-12 (testimony from Mr. Wang and Nishad Singh regarding personal loans they received from Alameda and the involvement of counsel in preparing documentation for those loans). Mr. Bankman-Fried's knowledge that lawyers were involved in structuring and documenting the loans would be probative of his good faith belief that there was nothing inappropriate about the loans.

Fourth, the FTX Terms of Service govern the contractual relationship between FTX and its customers and therefore inform the scope of permissible conduct with respect to FTX customer assets. *See* ECF No. 321 at 2-4; ECF No. 329 at 2; *see also* ECF No. 322 at 3 (Government noting that the Terms of Service are one piece of evidence of whether FTX had a fiduciary or similar relationship of trust and confidence with its customers). The Government elicited testimony from customer witnesses regarding their expectations concerning assets deposited on FTX. Trial Tr. at 81, 1289. Can Sun, former FTX General Counsel, also testified that the Terms of Service were updated from time to time, and that the purpose of the Terms of

Service "was to lay out the obligations of FTX and its customers." *E.g.,* Trial Tr. 1979:10-1980:18. Accordingly, Mr. Bankman-Fried's understanding of the involvement of counsel in drafting the Terms of Service in light of FTX's practices would be relevant to his good faith belief that FTX's practices were consistent with the Terms of Service. *See also* ECF No. 289 at 12 ¶ 16 (denying Government's motion *in limine* to preclude evidence of the Terms of Service "to the extent that the defendant seeks to introduce evidence and argument probative of his alleged good-faith belief that FTX and Alameda's handling of customer assets was permitted by law and under the Terms of Service").

We therefore respectfully request to elicit testimony from Mr. Bankman-Fried concerning the involvement of counsel in the above events. The topics for which we have provided notice are sufficiently specific and relevant along the lines suggested by the Court's order. Among other things, we anticipate asking Mr. Bankman-Fried about his understanding as to what the attorneys were present for, what their tasks were, what information they were provided, and the impact of his knowledge of their involvement on his belief that his conduct was at all times proper and lawful. At a minimum, Mr. Bankman-Fried should be permitted testify in his defense regarding the involvement of counsel on these topics to counter any implication from the testimony elicited to date that he failed to act in good faith with respect to these matters.

### 2. Industry Practices as Relevant to Mr. Bankman-Fried's Good Faith

The Government sought in its pretrial motions *in limine* to preclude Mr. Bankman-Fried from offering evidence or argument "that other companies or individuals were using customers' assets or otherwise engaging in misconduct." ECF No. 204 at 38-39. The Court declined to rule on this portion of the Government's motion, explaining that "any relevance of the actions of others in any event would seem to depend upon the defendant's knowledge of those actions at the relevant time or times." ECF No. 289 at 8-9 ¶ 10.

The Government argued in its case-in-chief that FTX's use of omnibus wallets is relevant to this case. For example, the Government elicited testimony from Mr. Sun that he did not believe that FTX customer deposits could permissibly be commingled with other funds of the business, Trial Tr. 1904:9-14, and that FTX utilized an omnibus wallet for all customer digital assets. Trial Tr. 1900:1-3.

We respectfully submit that Mr. Bankman-Fried's knowledge of industry practices regarding the use of omnibus wallets is relevant to his good faith belief that his conduct was permissible. *See* ECF No. 246 at 26 (citing *United States v. Litvak*, 808 F.3d 160, 189-90 (2d Cir. 2015) (explaining that evidence that the defendant's supervisors "regularly approved of conduct identical to that with which [the defendant] was charged" would support the defendant's "attempt to introduce a reasonable doubt as to his intent to defraud, i.e., that he held an honest belief that his conduct was not improper or unlawful"); *see also United States v. Brandt*, 196

F.2d 653, 657 (2d Cir. 1952) (finding reversible error where trial court excluded evidence that defendants were familiar with generally accepted operational practices in their industry because this evidence, even though "perhaps not entitled to much weight," was probative of defendants' intent). As in *Litvak* and *Brandt*, Mr. Bankman-Fried's understanding of whether FTX's actions were consistent with the crypto industry practices with regard to use of omnibus wallets is probative of his good faith belief that FTX's (and his own) actions were proper.

Accordingly, should Mr. Bankman-Fried decide to testify in his defense, he should be permitted to testify as to his understanding of industry practices regarding use of omnibus wallets to show his good faith and lack of criminal intent.

       3.     *Mr. Bankman-Fried's State of Mind with respect to Compliance with Bahamian Authorities on November 12, 2022*

We anticipate eliciting testimony from Mr. Bankman-Fried regarding his good faith intentions on November 12, 2022 with respect to compliance with orders by Bahamian authorities to transfer assets from FTX to the Securities Commission of The Bahamas over the objections of FTX's in-house counsel and U.S. bankruptcy counsel. Such testimony would require Mr. Bankman-Fried to discuss his belief that the Bahamian authorities were acting in the best interests of FTX customers, whereas FTX's in-house counsel and outside bankruptcy counsel in the United States had conflicts of interest.[2] This testimony is necessary to rebut the inferences from Mr. Wang's testimony concerning the events of November 12, 2022 and his assertions as to Mr. Bankman-Fried's state of mind.

Mr. Wang testified about meetings that Mr. Bankman-Fried had with Bahamian liquidators and the Bahamian Securities Commission on November 12, after which Mr. Wang transferred assets to Bahamian authorities. Trial Tr. 464:19-466:24. Mr. Wang testified that he was told to do this by "government officials" and "Sam." Trial Tr. 465:1-3. He further testified that Mr. Bankman-Fried told him to do this because the Bahamian liquidators "seemed friendly and seemed willing to let him stay in control of the company," and that the Bahamian Securities Commissioner "believed the things [Mr. Bankman-Fried] told her" and was going to "order us to transfer . . . the remaining assets to the Bahamas." Trial Tr. 465:15-466:1, 466:17-24. Mr. Wang also testified that Mr. Bankman-Fried directed him to effectuate the asset transfer over objections by FTX's in-house counsel and U.S. bankruptcy counsel, because the Bahamian authorities "seemed more friendly to him, and they seemed more likely to let him stay in control of the company, compared to the U.S." Trial Tr. 467:4-19, 470:1-471:3.

---

[2] Consistent with this Court's order, Mr. Bankman-Fried will not "offer[] evidence that the amount of assets that have been recovered through FTX's bankruptcy for purposes of suggesting to the jury that victims will be made whole, that the FTX Debtors' progress in securing and recovering estate assets somehow diminishes the scale of the fraud, or that, with more time, FTX could have satisfied customer withdrawals." ECF No. 289 at 12 ¶ 16.

The Government argued in its pretrial motions *in limine* that evidence on this subject is "relevant to demonstrate [Mr. Bankman-Fried's] criminal intent and the false nature of his representations" that he wanted to "do right by customers." ECF No. 204 at 16. The Court agreed and granted the Government's pretrial motion *in limine* to admit such evidence. *See* ECF No. 289 at 5 ¶ 5 (ruling that "[e]vidence that defendant selectively prioritized payments to certain creditors in the aftermath of FTX's collapse goes to defendant's consciousness of guilt and criminal intent, and therefore is direct evidence of the charged crimes."). The relevance of testimony on this subject has therefore already been established.

Moreover, a defendant "has the right to prove through witnesses his statements of then-existing states of mind which tend to rebut the government's characterizations of his conduct." *United States v. Shakur*, No. 84 CR. 220 (CSH), 1988 WL 34828, at *11 (S.D.N.Y. Apr. 6, 1988) (rejecting government's argument that "defense witnesses may testify that [defendant] said he was afraid, but they may not testify as to why [defendant] said he was afraid"). "The right to offer the testimony of witnesses . . . is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). "This right is a fundamental element of due process of law." *Id.*

Mr. Bankman-Fried's testimony contradicting the Government's evidence as to his motivations and intent behind these actions is plainly relevant. Mr. Bankman-Fried should therefore be permitted to rebut the inferences from Mr. Wang's testimony by testifying as to why, in good faith, he wanted to comply with the orders of the Bahamian authorities over the objections of FTX's in-house counsel and U.S. bankruptcy counsel.

Respectfully submitted,

   */s/ Mark S. Cohen*
Mark S. Cohen
Christian R. Everdell
**COHEN & GRESSER LLP**
800 Third Avenue, 21st Floor
New York, New York 10022
(212) 957-7600
mcohen@cohengresser.com
ceverdell@cohengresser.com

cc: All counsel of record (via ECF)