UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

UNITED STATES OF AMERICA,

-against-

SAMUEL BANKMAN-FRIED,

Defendant.

------------------------------------x

S6 22-cr-0673 (LAK)

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

      During the trial, the defendant moved to elicit testimony from FBI Special Agents Booth and Allain for the purpose of attempting to prove what he contended were prior inconsistent statements. Dkt 332. The order disposing of that motion (Dkt 339) stated that a memorandum would follow in the event of a conviction. Defendant was convicted on all counts. Accordingly, this memorandum sets out the bases for the rule on defendant's letter motion. As a preliminary matter, the Court applied to defendant's motion the principles summarized in *United States v. Ghailani,* 761 F. Supp.2d 114, 117-18 (S.D.N.Y. 2011).

      The following paragraphs deal with each of the four proposed subjects of extrinsic evidence of alleged prior inconsistent statements and correspond to the similarly numbered paragraphs of defendant's letter motion.

      *i-ii.* The material referred to in paragraphs *i* and *ii* (Dkt 332, at 2-3) was inadmissible for at least the following reasons.

      First, there is no material inconsistency. Mr. Wang consistently testified that the "allow negative" flag initially was added in 2019 because Alameda, then the largest market maker on FTX, on occasion needed to withdraw stablecoins from the FTX platform, convert them, and then redeposit them on FTX in order to convert between stablecoins, thus "going negative" in the withdrawn coins, and that he may have described this as part of "market making" or "for the functionality of the exchange"(Tr. 485-488; *id.* at 487:25-488:2) (Mr. Wang agreeing that "[b]eing able to go negative was necessary so that Alameda could satisfy stablecoin requests"), which amounts essentially to the same thing (*id.* at 480:4-6) (Mr. Wang agreeing that "one thing Alameda did as a market maker was it facilitated access to stablecoins"). In any case, Mr. Wang ultimately testified on redirect that Alameda's "special features," which included the "allow negative" flag,

may have been in part to facilitate market making. Tr. 611:17-612:1.

    Second, even if there were, in the relevant context, some possible tension between Mr. Wang's description of stablecoin conversion and his inability to recall whether he had characterized stablecoin conversion more than a year ago as "market making", the potential for confusion and the needless consumption of trial time occasioned by allowing this line of cross would outweigh substantially any probative value with respect to Mr. Wang's credibility.

    *iii.* The material referred to in paragraph *iii* (Dkt 332, at 3-4) was a statement reflecting a conclusion drawn by Agent Booth rather than a prior inconsistent statement by Mr. Singh. In any case, there would have been no material contradiction between the FD-302 and Mr. Singh's testimony.

    *iv.* The material referred to in paragraph *iv* (Dkt 332, at 4) was excluded for at least the following reasons. First, there was no material contradiction for the reason stated by the government (Dkt 337, at 11). In any case, the statement was entirely collateral to the issues in this lawsuit and would have had no material bearing on the assessment of Mr. Singh's credibility. Mr. Singh made clear that he knowingly purchased the home with FTX customers' money that he borrowed from FTX, that he did so after he knew that FTX was using customers' money, and that his purchase "was egregious, unnecessary, and selfish." (Tr. 1615:5-18) Whether he felt a "pit in his stomach" at the time he did so or only afterward was of no real moment.

    SO ORDERED.

Dated:  November 7, 2023

                     _____
                       Lewis A. Kaplan
                       United States District Judge