```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        22 CR 673 (LAK)

5    SAMUEL BANKMAN-FRIED,

6              Defendant.                Trial
     ------------------------------x

7
                                        New York, N.Y.
8                                       November 2, 2023
                                        9:52 a.m.
9

10   Before:

11
                     HON. LEWIS A. KAPLAN,
12
                                        District Judge
13
                          APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  DANIELLE R. SASSOON
          NICOLAS ROOS
17        DANIELLE KUDLA
          SAMUEL RAYMOND
18        THANE REHN
          Assistant United States Attorneys
19
     COHEN & GRESSER, LLP
20        Attorneys for Defendant
     BY:  MARK S. COHEN
21        CHRISTIAN R. EVERDELL
          SRI K. KUEHNLENZ
22        DAVID F. LISNER

23   Also Present:
     Luke Booth, FBI
24   Kristin Allain, FBI
     Arjun Ahuja, USAO Paralegal Specialist
25   Grant Bianco, USAO Paralegal Specialist
```

1                    (In open court; jury not present)

2          THE COURT:  Good morning, everyone.

3          First of all, before we bring in the jury, if anyone

4    wants to be heard one way or the other on the issue of sitting

5    tomorrow which wouldn't necessitate excusing one juror and

6    substituting an alternate, I'll hear you briefly now.

7          MR. COHEN:  Your Honor, we would be in favor of having

8    the jury deliberate tomorrow.

9          THE COURT:  So to get to the bottom line, you're

10   asking me to excuse the juror who has plane tickets tomorrow

11   morning and substitute an alternate.

12         MR. COHEN:  Yes, your Honor.

13         THE COURT:  And on what ground and what's the showing?

14         MR. COHEN:  Your Honor, we think that given the way

15   the schedule has gone——and it's certainly no one's fault——that

16   we're going to have more summation today and then of course

17   your Honor has to take the time for the charge, and that will

18   leave the jury with, you know, some limited time tonight, and

19   then we think a delay of an extra day could impact their

20   ability to deliberate about the evidence, and we would ask that

21   we continue the process by seating one of the alternates.

22         THE COURT:  Government's position?

23         MR. ROOS:  Your Honor, I think the jury will have a

24   good amount of time today and so first of all, we still think

25   it's premature, as Ms. Sassoon said yesterday and the day

1    before, and so at this time we would oppose replacing Juror

2    No. 3.

3              THE COURT:  The application is denied.  The likelihood

4    is there is going to be a weekend break in any event, and the

5    difference of a two-day weekend or a three-day weekend, in my

6    view, is immaterial.  And it's just not sufficient to warrant

7    replacing the juror in question.

8              That said, let me tell you the schedule I have in mind

9    here, and then we'll go get the jury.  I understand from what's

10   been said previously and publicly, the government expects to be

11   about three quarters of an hour.  Is that still true?

12             MS. SASSOON:  Yes, your Honor.

13             THE COURT:  Okay.  So that suggests that we'll be done

14   with that around 10:45.  We'll take a break.  We'll come back

15   and I'll start the charge.  I will go for what I'm

16   guesstimating will probably be two hours or less.  We'll then

17   take a 30-minute lunch break.  The jury has lunch ordered.

18   Everyone else can happily consume cafeteria food.  I'll

19   complete the charge after lunch, and I expect the jury will

20   have the case by somewhere between 2 and 2:30.  That's, of

21   course, a rough estimate.  I have no idea how long the jury is

22   going to take or whether they're going to finish today.  I will

23   not keep them longer than 8:15.  And transportation

24   arrangements will be ordered against the possibility they stay

25   that late, and nobody knows whether they will.

1          Okay.  Let's get the jury.

2          MR. EVERDELL:  Your Honor, sorry.  We don't have to

3    address this now, we could do it at the break, but the defense

4    has an application with respect to the indictment that is going

5    to be provided to the jury for their deliberations.  We had

6    mentioned to the Court, I think it was the day before

7    yesterday, about redactions to the indictment that we would

8    propose.  We can take this up at the break.  I don't think it

9    will be a long——

10         THE COURT:  We'll take it up at the break, but there's

11   nothing like waiting till the last second, is there.

12         Okay.  Let's get the jury.

13         MR. ROOS:  Your Honor, for what it's worth, we won't

14   oppose the application, and we can prepare a redacted or

15   cleaned-up indictment.

16         THE COURT:  Okay.  Then it's not going to be a matter

17   of controversy.

18         (Jury present)

19         THE COURT:  Good morning, everyone.

20         THE JURORS:  Good morning.

21         THE COURT:  The defendant and the jurors all are

22   present.

23         Let me just say a word to the jury about the schedule.

24   We're going to hear in a moment from the government on the

25   rebuttal summation.  We will then have a 15-minute break.  I'll

1   begin charging you on the law when that break is over.  I won't

2   do it all in one fell swoop.  Sadly to say, it's going to take

3   some time.  So we will break for lunch at some convenient point

4   in the course of my reading the charge.  You know that your

5   lunches have been ordered, and it will be a 30-minute lunch

6   break in order to finish up and get the case to you.  After

7   lunch, I'll finish charging you.  And I will not keep you later

8   than 8:15, if you get that far.  I'm not suggesting anything,

9   of course, about whether you should or shouldn't or will need

10  that much time or more or less.  If you stay as late as 8:15,

11  there will be transportation for those who need it, and we will

12  order that up somewhere along the line.  And as you may have

13  learned from Andy already, Andy, who is a magician around here,

14  has managed to accomplish the feat that if you do wind up

15  having supper here, you have a choice of more than pizza.  And

16  you can thank Andy for that.

17          Okay.  With that, Ms. Sassoon, we'll hear your

18  rebuttal argument.

19          MS. SASSOON:  Thank you, your Honor.

20          Telling your customers to trust you with their money,

21  telling your customers that their assets are safe, segregated,

22  safeguarded, held in custody, and then taking that money and

23  spending it on yourself, on your business, on the same business

24  that you've told your customers is separate, walled off,

25  treated no differently from any other account, that is not a

1    reasonable business decision.  That is fraud.

2            You've heard time and again——and it's true——that the

3    government is the only party with a burden in this case.  We

4    have to prove the charges beyond a reasonable doubt.  We've

5    embraced that burden, and we've met that burden.

6            But when the defense comes up and makes arguments,

7    it's your duty to scrutinize them, to examine whether they

8    match up to the evidence, to the testimony that you've learned

9    in this trial.  They don't.  The defendant has no obligation to

10   testify.  He has a constitutional right not to.  But if he

11   takes that stand, it's your duty to scrutinize what he said, to

12   consider whether it matched up with the evidence and the

13   testimony.  It didn't.

14           Now I'm not going to address everything that Mr. Cohen

15   said.  You've spent a long time listening to closing arguments,

16   and I know you've paid close attention to the evidence, and I

17   know that when you go to deliberate, you have the tools to

18   consider these arguments and to reject them.  And so there are

19   some that I won't spend a lot of time on, like this argument

20   that there was no customer fraud because there were only two

21   customer victim witnesses.  I expect Judge Kaplan will instruct

22   you that it's for you to consider what a reasonable customer, a

23   reasonable investor, would have believed based on the false

24   representations by the defendant.

25           Now Tareq Morad got up there and he told you that when

he looked at his account balance, he thought that meant the
money was there, that it was being held for him, that it was
custodied for him, and of course that was reasonable.  You know
that from the terms of service, which told customers that their
assets belonged to them, but this case doesn't rise and fall on
the terms of service.  Judge Kaplan is going to instruct you to
consider the full slate of representations made to customers.
And you've seen them.  I'm not going to pull them back up—the
tweets, the policy documents, the congressional testimony that
was publicized.  The defendant himself told you that he knew
his customers were reading his tweets, reading the news
articles, he was publicizing his testimony on Twitter.  And so
take a look at the terms of service, but look at exhibits like
Government Exhibit 340.  This was the asset management policy
of the business that applied to fiat and crypto.  And it said:
We're holding your assets, they're ring-fenced, they don't
belong to FTX.  And witness after witness got on that stand and
told you, this was a sacred, unbreakable rule.  Your money is
your own.  It's not for FTX to use.  And that's what the
defendant himself said time and again to his customers.

        And so you know, without hearing from Tareq Morad or
Marc-Antoine Julliard, that a reasonable customer would see and
hear those statements and be given the false impression that
their money was safe with FTX and that Alameda did not have
unlimited access to customer funds without playing by the rules

1    of the exchange.

2            Another argument that you can reject quickly:

3    Mr. Cohen said, well, if the defendant were a fraudster, why

4    would he repay the lenders instead of taking the money and

5    running?  This isn't a crime like robbing a bank in broad

6    daylight, where the defendant committed the crime in broad

7    daylight and then went on the run.  He didn't want to be a

8    criminal on the run.  You heard about his ambitions.  This is

9    somebody who wanted to be president of the United States, who

10   thought he could and should be president of the United States.

11   This is someone who wasn't satisfied starting a crypto trading

12   forum; he wanted to start a crypto exchange.  And when he

13   started that exchange, that wasn't enough; he wanted to be the

14   biggest exchange in the world.  He wanted to crush his rival

15   Binance.  And when his exchange was making a billion dollars in

16   revenue, that wasn't enough to satisfy his spending; he wanted

17   billions and billions of dollars more from his customers, to

18   spend on gaining influence and power.

19            He wasn't going to take the money and run.  It's the

20   same reason that he testified before Congress and spoke to the

21   media.  It was part of an effort to present himself as

22   legitimate, as trustworthy, as running an exchange that was

23   reliable and safe, where customers should deposit their money.

24   And when it came to lenders, he had the arrogance that he could

25   get away with the fraud, that if he sent lenders a false

1   balance sheet, that he wouldn't be exposed, and not only would

2   he not be exposed, he would get more money.  And that's exactly

3   what happened.  You heard that after he sent the false balance

4   sheets, he received more than a billion dollars more in loans

5   to continue his scheme.

6          Investor fraud.  Mr. Cohen said that the timing

7   doesn't match up, that the episodes in 2022 took place after

8   the defendant raised money.  That's just wrong.  First of all,

9   you heard about how the defendant and Ms. Ellison took FTX

10  customer money to buy out Binance.  That was before the

11  fundraising.  And you also heard about the countless

12  misrepresentations to FTX investors—the inflating of revenue;

13  the secret transferring of investor funds over to Alameda; the

14  deceptions on the balance sheet by moving the MobileCoin loss

15  over to Alameda so the investors wouldn't know about it; the

16  lies to auditors that kept investors from learning about

17  problems at FTX; and the lack of separation between Alameda and

18  FTX.  And you heard from the two investor witnesses that that

19  type of information would have been important to them and would

20  have affected their investment decision.

21          I'm going to spend a little more time talking about

22  some of the arguments you heard, but when you go and

23  deliberate, I want you to also think about what you didn't

24  hear, what Mr. Cohen didn't say, the evidence to which he had

25  no answer.  For example, Government Exhibit 5.  This is a

spreadsheet created by the defendant where he listed the lines

of credit on the exchange starting with Alameda's $65 billion

line of credit.  Now if the defendant didn't know about

Alameda's $10 billion liability to FTX until October and didn't

know about its giant line of credit, or how to use the

database, how do you explain Government Exhibit 5, a

spreadsheet he made that lists dozens of lines of credit coming

out of the database and that have the defendant's own

calculations showing that Alameda owed $10 billion to the

exchange.  The defendant has no answer, and so they said

nothing about it.

       Government Exhibit 36.  If the defendant didn't know

that Alameda was repaying its lenders with customer money, how

do you explain Government Exhibit 36?  NAV Minus Sam Coins.

This is a spreadsheet from 2021 that shows that Caroline and

the defendant agreed in late 2021 that in the event of a market

crash, the only way to repay lenders would be to treat FTX

customer funds as their personal piggy bank.  The defense has

no answer to Government Exhibit 36.

       And I'll mention one more, but there are many others.

       Government Exhibit 50.  This is the spreadsheet from

mid-June 2022, and if the defendant didn't know about the fiat

liability until later and Alameda's $10 billion negative

balance, how do you explain Government Exhibit 50?  This is the

spreadsheet that Gary, Caroline, and Nishad all testified they

1   prepared at the defendant's direction and that they discussed

2   with him, and that shows in black and white that Alameda owed

3   $10 billion.  The defense has no answer.

4           So without answers to these devastating pieces of

5   evidence, the defense fell back on unsupported and increasingly

6   desperate accusations:  The government is painting the

7   defendant as a monster, as a movie villain.  I didn't hear

8   those words at this trial.  The first time I heard them were

9   out of Mr. Cohen's mouth.  The evidence about the defendant's

10  image showed you that he was a different person in public and

11  in private and that it was a performance.  His romantic

12  relationship with Caroline Ellison, that was important for you

13  to understand why he chose her as his front and as his deputy.

14  His girlfriend, the person who deferred to him, a person whose

15  relationship——in that relationship, the defendant had all the

16  power.

17          And most outlandish of all was this accusation that

18  three cooperators got on that stand, that they were pressured

19  to lie, that they pled guilty to crimes they didn't commit, and

20  that they were told to falsely point the finger at the

21  defendant.  That's outrageous.  Each of those witnesses got on

22  that stand and they told you what they were told by the

23  government from day one——to tell the truth.  And you know that

24  that's what they did.

25          Now this desperate and unsupported accusation, the

1    defense has to make it, because if you believe Caroline, the

2    defendant is guilty; and if you believe Gary, the defendant is

3    guilty; and if you believe Nishad, the defendant is guilty.

4    The cooperator testimony tells you flat out that the defendant

5    oversaw the stealing of FTX customer funds, that he knew it was

6    wrong, that he lied about it, and he took steps to hide it.

7         And I want to tell you three reasons that you know

8    those cooperators were telling the truth.  Let's start with

9    their incentive.  Their incentives weren't to lie.  And take a

10   look at their cooperation agreements.  They're in evidence.

11   This is the 3500 series.  And they explain to you how these

12   cooperation agreements work.  Under that agreement, they're

13   required to tell the truth.  And if they don't, they're stuck

14   with their guilty pleas and facing decades in prison.  They get

15   a letter from the government explaining their cooperation to

16   the judge if they tell the truth.  And it's the judge who will

17   decide their sentence.  And if a cooperator is caught in a lie,

18   any lie, that agreement gets ripped up.

19        I wrote this down because I was puzzled by it.

20   Mr. Cohen said that the government is treating the cooperators

21   like they had no free will.  No free will?  Those three

22   witnesses all pled guilty to federal felonies.  They took

23   responsibility for what they did.  These are not people who

24   came in and said, "I did nothing wrong, it was all Sam

25   Bankman-Fried."  From their first meetings with the government,

they admitted to serious federal crimes, and they described how
they did it and who they did it with.

On the other hand, the defense wants you to believe
that none of these cooperators helped the defendant commit
crimes and that they all pleaded guilty even though none of
them actually thought they were doing anything wrong at the
time.  Now think about that.  And let's take Gary Wang as an
example.  By this argument, Gary Wang leaves the Bahamas days
after FTX declares bankruptcy, less than a week later comes to
meet with the government, no one at that point has been charged
with any crimes, and he confesses to all sorts of things that
he didn't do.  In that very first meeting, he pleads guilty to
a host of crimes he didn't commit, he exposes himself to
penalties for things he never did, and then he comes up here
and he lies to you.  That makes no sense.

And you know that this is not a case of crimes in
hindsight.  And let's just take Caroline Ellison as one
example.  The defense said if she really thought something was
wrong, wouldn't she have resigned, cashed out, blown the
whistle?  Well, she didn't do those things, and that's why
she's guilty of participating in a conspiracy.  And she told
you that during the conspiracy, she did think she was doing
something wrong and she expressed it to the defendant.  She
went to him as far back as 2020 and said, *What about these*
*auditors?  Are they going to see that we're taking customer*

*money?  That would be bad.*  And he said, *Don't worry.  The*
*auditors won't see it.*  When he wanted to buy out Binance, she
said, *Well, we can't do that without taking customer money.*
And he said, *Well, do it anyway.*  And in 2022, when he told her
to lie to the lenders, she told you the effect that that had on
her.  She spent a year in dread and fear, waiting for her
crimes to be exposed.  She cried on that stand and she told you
about the worst months of her life, when she knew she was
committing crimes and was waiting to get caught, waiting for
customers to realize that their money was gone.

        And let's talk about Nishad.  The defense made a big
deal out of the fact that he learned of the conspiracy and
joined it a little later.  I expect Judge Kaplan is going to
instruct you that different people can play different roles in
a conspiracy.  You can play a minor role, you can play a major
role, you can join at a different time.  You're still part of
the conspiracy.  And so it's no surprise that Nishad, who
didn't work at Alameda, didn't have visibility into all the
spending and all the use of customer money, but when he did,
when it sunk in, he didn't say, oh, nothing wrong going on
here.  He confronted the defendant on that balcony.  He was
shocked, he was blindsided, and eventually he was suicidal.
That is not somebody who didn't think he was doing anything
wrong.

        But you don't need to take the cooperators' words for

it, because they were corroborated by every single other piece

of evidence in this case, by the testimony of other witnesses,

by each other's testimony.  Yes, they had different lenses into

what was going on and different roles, but they were consistent

in the most important respects, that they were acting at the

defendant's direction, that this was his scheme, his spending,

his vision, and that they did what he told them.

And Caroline, think about her testimony.  She

described to you what happened with the seven alternative

balance sheets, that she prepared that for the defendant and

that they discussed how to hide the borrowing from FTX

customers, and the metadata shows you that she was telling the

truth.  He accessed it shortly before she sent that balance

sheet off to Genesis.  Her contemporaneous notes matched what

she said, her journal entries, her Signal chats.  And remember

the all hands meeting.  That wasn't hindsight; that was before

she had ever met with the government, before she knew there was

an investigation.  And go back and listen to those recordings

because they're consistent with what she said on the stand.

When she told her employees that she did this with Sam, Gary,

and Nishad, and that Sam directed it, she didn't think the

government was listening.  And it's consistent with what she

told you in court.

The last thing I want you to think about when it comes

to the cooperators is their demeanor.  I know it's been a

1    little while, but each of them got up on that stand and they

2    were the same person during their direct examination and their

3    cross.  They tried to answer the questions in detailed fashion,

4    directly, in a straightforward way.  They remembered specifics,

5    like where conversations happened, and documents.  And then

6    think about the defendant.  He was a different person on his

7    cross-examination than his direct, where he was polished and

8    knowledgeable and defining 50 terms, and suddenly on cross, he

9    couldn't remember a thing.  Not only that, his story, it's

10   changed so many times, it's hard to keep track.  And then think

11   about Caroline, who's been the same from that all hands meeting

12   to today.

13          Now I want you to think about what it means to accept

14   the defense's argument and what you would have to believe to

15   accept what the defense has said.  You've learned in this trial

16   that Sam Bankman-Fried was a talented CEO, he was smart, he

17   went to MIT, he was ambitious, he is good at explaining things,

18   he dazzled investors and Congress and the media, and he worked

19   around the clock to build a successful business.  But the

20   defense wants you to believe that this same person was clueless

21   when it came to the most fundamental, important things going on

22   at his business.  He didn't know the code; he never looked at

23   the database; he knew that Alameda was accepting customer

24   deposits but he didn't bother to check where they were going;

25   he was authorizing ginormous expenditures but didn't know where

the money was coming from; Nishad and Gary were making dramatic

changes to the code and he had no clue how those features

really worked, even though they were his friends, his

roommates, and his employees; Caroline, who was just a trader,

when fiat deposits started going to Alameda, well, she knew

that Alameda was spending those deposits, but the defendant

dated her, he supervised her, he lived with her, but he just

had no idea.

And then think about June.  The crypto markets are

crashing, Alameda's assets are plunging in value, Alameda maybe

is going bankrupt, lenders are asking for billions of dollars.

The defendant is trying to manage this crisis, but all the

while he's asking no questions.  He didn't really look at the

spreadsheets that metadata shows he received.  He didn't bother

asking Caroline why there were seven versions of the balance

sheet.  He overheard that there was an $8 billion bug in a fiat

account, but he didn't say, "Hey, what's that and how did it

get to $8 billion?"  That makes no sense.  It's absurd.  It's

inconsistent with the documentary evidence.

And it doesn't stop there.  They want you to believe

that in September-October he finally just decided to run a

query, the first time he's ever using the database, and he sees

a $10 billion liability, and this raises no alarm bells.  He

has no real reaction.  He doesn't demand answers.  He doesn't

try to repay FTX even though he never knew about this.  And he

1    just goes about his business.

2           This story not only makes no sense, it's inconsistent

3    with the testimony of every witness in this case, and you know

4    that it's a made-up story.  You should reject it.

5           The defense threw around these terms, "liquidity,"

6    "solvency," and Mr. Cohen told you that the defendant acted in

7    good faith because "he always thought Alameda had sufficient

8    assets on the exchange and off the exchange to cover its

9    liabilities."  That's not good faith.  First of all, you saw

10   the balance sheets, and these were the same balance sheets that

11   were sent to the defendant in June, in September, in October.

12   There isn't $40 billion of NAV; there isn't even $10 billion of

13   NAV.  And you saw the liquid assets, the same liquid assets the

14   defendant was looking at at the time.  Alameda had about

15   $500 million in its bank account and owed FTX $13 billion.  And

16   the other liquid assets, they were coins like FTT and Serum and

17   Solana.  And the government's not claiming, like Mr. Cohen

18   said, that FTT is a fake coin.  What you learned in this trial

19   is that it was an illiquid coin, which the defendant and

20   everybody else knew meant that you couldn't sell all those

21   coins and recover the full value on the balance sheet.

22          So the defendant saw these balance sheets and he knew

23   that Alameda did not have the assets to cover this giant debt

24   to FTX customers.  But let me be clear about this.  Whether

25   Alameda was liquid, solvent, had $40 billion of coins or gold

bars, or just a worthless pile of junk, it doesn't matter.

It's a distraction. Because even if the defendant thought that Alameda could sell all its assets and investments that were not on the FTX exchange to repay a $14 billion debt——which it couldn't and it didn't——that wouldn't be good faith. And I'll tell you why. Because when the defendant told his customers that their assets were safe, that a customer had to deposit collateral on to FTX to trade or borrow, that negative accounts would be liquidated and that Alameda's account was just like everybody else, he lied. Unlike every other customer, Alameda did not post collateral, it couldn't be liquidated, and they were not being evaluated by the supposedly automatic computer risk engine. He lied to gain customers' trust, to get their money, and then he decided the rules didn't apply to him and his business. Whether or not he made good investment decisions after that or it was a good business judgment to pay $300 million to meet celebrities doesn't matter, because he embezzled that money in the first place after his customers trusted him with it. The customers did not sign up for that. They told you that. And they would not have put their money on the exchange if they knew what was going on. So whether or not the defendant thought he could get away with it by selling assets or raising money from other investors, he thought he could one day put that money back, doesn't matter. He still took his customers' property based on false misrepresentations,

1    and that is fraud.

2           I want to say a quick word about Pimbley's chart,

3    Mr. Pimbley.  The defense talked about that in their closing

4    statement.  You should disregard that chart.  You remember

5    cross-examination.  Mr. Pimbley couldn't tell you why he looked

6    at certain numbers, what the significance of the numbers were,

7    what the relevance was to this case.  He just ran a query in a

8    database and did no analysis whatsoever.  And when he was

9    cross-examined, he admitted that those numbers he used made

10   Alameda's debts look lower because he did not include the fiat

11   liability and he had included some accounts that were full of

12   Sam coins, like FTT.

13          If you want to know the full story, look at Government

14   Exhibit 1002.  That chart shows all of Alameda's balances and

15   gives you a better picture of the defendant's actual use of

16   customer money.  And look at Government Exhibit 5 if you want

17   to know what the defendant knew, because that's the defendant's

18   own chart showing that Alameda owed negative $5 billion to FTX

19   and owed $10 billion if you excluded the FTT and venture

20   accounts.

21          One quick thing on this risk officer point.  The

22   defense made a big deal that FTX did not have a chief risk

23   officer.  That's not a defense.  That was a strategy.  If

24   you're deleting messages and backdating documents and

25   embezzling customer money, of course you're not going to hire a

risk officer.  And the defendant didn't need a chief risk

officer to tell him that stealing customer money was wrong.

You can't go into a jewelry store, steal a diamond necklace,

walk out, and then say, there was no security guard.  The

defendant knew what he was doing was wrong, and that's why he

never hired a risk officer.

Before I conclude, I want to make something else very

clear, and leave you with this thought.  Even if you accept

everything the defendant said on the stand, which you

shouldn't, he is still guilty of fraud.  The defense doesn't

dispute that by September or October, the defendant knows about

Alameda's massive liability to FTX customers; he knows that

they've spent customer fiat funds; he knows they have borrowed

billions of dollars from customers, outside the normal rules of

the exchange; he knows the state of Alameda's balance sheet,

he's been reviewing it; he knows that they have barely any

money in bank accounts and a bunch of illiquid tokens and

investments that are not on the FTX exchange.  And so you know

that he directed this fraud, that he was the hub.  But even if

you accept what he is saying, he wasn't a member of the

conspiracy before then, he became a member of the conspiracy at

that point in time.  The defense wants you to think that the

government has to prove that this was a giant fraud from day

one and that this was the defendant's plan all along.  We

don't.  Now the evidence shows that——the evidence shows that

over time, the defendant exploited FTX to take more and more

customer funds for his own spending, that he directed the

features in the code, that he directed the use of fiat

deposits, but even if you find that it wasn't until September

or October that he had the full picture, at that point he knows

what's going on and he agrees to help the plan succeed, by

covering it up, by trying to raise money in the Middle East to

fill the hole, and conceal what's going on, and by lying to

customers throughout September and October, publicly, in the

media, on Twitter, about the safety of the exchange and the

safety of their assets, all while he knows that there's this

giant, massive, unrepayable hole.

        I expect Judge Kaplan is going to instruct you about a

concept called conscious avoidance.  And that means if the

defendant deliberately closes his eyes to what otherwise would

have been obvious, or if he's aware of a high probability of a

fact but intentionally avoids confirming it, he is still acting

knowingly under the law.  And according to the defendant's own

testimony, that's what he did here.  He knew Alameda was

receiving customer deposits.  He was CEO at the time, and he

permitted employees to use that money.  He put in place no

restrictions, no policies to safeguard that money, to prevent

stealing, and he turned the other way and spent billions of

dollars without really asking where that money was coming from.

He directed changes to the code that he knew would treat

Alameda differently from everybody else, but then he didn't

really ask any questions.  And when he overheard in June,

according to him, that there was an $8 billion bug in the fiat

account, he didn't say, "Hey, what's that?"  Instead of getting

to the bottom of why Alameda owed billions of dollars in an

account called fiat, that's conscious avoidance.  Even if you

believe every word of that unbelievable story, that is

conscious avoidance and he is guilty.

Let's talk about November, because at that point in

time, the defendant indisputably demonstrated that he was a

member of an illegal conspiracy and he had wrongful intent.  I

expect Judge Kaplan is going to instruct you that a single

act—one act—may be sufficient to draw a person into a

criminal conspiracy.  Now the defendant, he committed countless

acts—false statements, deception, embezzlement, use of

customer funds, directing changes to the code, directing false

balance sheets—but one act in furtherance of the conspiracy is

enough.

And so when November rolls around, and the defense

admits the defendant at this time knew the state of affairs—he

knew about the borrowing; he knew that Alameda had not been

liquidated; he knew that Alameda had spent the customer fiat

deposits; he didn't tell customers the truth; he took steps to

continue the scheme; he lied to customers; he lied to keep

their money, to prevent withdrawals, to hide what happened.  He

1   helped Caroline, for example, write a misleading tweet——that's

2   Government Exhibit 875——saying that Alameda's balance sheet was

3   secure because they had repaid all their loans.  Repaid all

4   their loans?  They owed FTX $10 billion.

5       And then he tweeted himself.  This is not the

6   government's favorite piece of evidence.  I don't know if that

7   joke was meant to distract, but this is a significant piece of

8   evidence, and you should take it seriously, because when the

9   defendant said FTX had enough to cover all client holdings,

10  that was a lie.  And the defendant himself admitted that that

11  statement, he was taking into account Alameda's balance sheet,

12  the company he told the public was walled off and separate, and

13  he was taking into account assets that were illiquid and that

14  were not on the FTX exchange.  FTX did not have enough to cover

15  all client holdings.

16      And just look at Government Exhibit 21, where at the

17  same time in private he's saying, *We have one third of the*

18  *money to cover what client assets should be.*

19      So that tweet alone shows that he joined the

20  conspiracy, he took an act in furtherance of it, to prevent

21  customer withdrawals, and he lied over and over again.

22      The defense said that the fact that he deleted this

23  tweet somehow shows that he had good faith.  Give me a break.

24  On November 7 he thought he could still fool the world.  He

25  thought that if he lied to customers, maybe they wouldn't

1    withdraw their money.  And when he deletes the tweet, it's

2    because the curtain has been pulled back.  The world at that

3    point knows the money's not there.  He's destroying evidence.

4    He's deleting evidence of his lies.

5            And then the defendant went and made false statements

6    to the press, and that's when he thought he would never be

7    caught, that his messages had been deleted, that his

8    fingerprints were not on the code, and that his deniability was

9    airtight.

10           (Continued on next page)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    MS. SASSOON:  He went on Good Morning America for the

2    same reason he sent a confident tweet thread, because he

3    thought he could fool his customers, reporters, the public, and

4    now you.  Don't fall for it.  You know better.

5        When the defendant sent that false tweet, when he lied

6    to the public, he didn't bargain for the metadata or Caroline's

7    journals or the complicated tracing of crypto and dollar money

8    movements that show when and how he took the money and where he

9    spent it.  He didn't bargain for his three loyal deputies

10   taking that stand and telling you the truth, that he was the

11   one with the plan, the motive, and the greed to raid FTX

12   customer deposits, billions and billions of dollars to give

13   himself money, power, influence.  He thought the rules did not

14   apply to him.  He thought that he could get away with it.  But

15   his crimes caught up to him.  His crimes have been exposed.

16       It's time to deliberate without fear, favor, sympathy,

17   or prejudice.  You sat through this trial.  You know what

18   happened.  Find him guilty.

19       THE COURT:  Thank you, counsel.  We will take 15

20   minutes.

21       (Recess)

22       (Pages 3139-3141 SEALED)

23

24

25

1      THE DEPUTY CLERK:  An announcement to the spectators.

2  The Court is about to charge the jury.  All spectators must

3  either remain seated throughout the duration of the charge or

4  leave at this time.

5      Marshal, please lock the door.

6      (Jury present)

7      THE COURT:  The defendant and the jurors all are

8  present.

9      Members of the jury, you are about to perform your

10  final function as jurors.  My instructions to you are going to

11  be in four parts.  I will start by describing the law to be

12  applied to the facts as you find the facts to have been

13  established by the proof.  I will then instruct you about the

14  trial process, give you instructions concerning your evaluation

15  of the evidence, and, finally, talk to you about the conduct of

16  your deliberations.

17      Now, you are free to take notes, but I want you to

18  understand that the charge will be given to each of you in

19  writing when you retire to deliberate, so that you will have it

20  for reference during your deliberations, and the law simply

21  requires that I deliver it orally as well.

22      The defendant, as you now know, is Samuel

23  Bankman-Fried.  He has been formally charged in a document

24  called an indictment.  The indictment is, as I told you at the

25  beginning of the trial, simply an accusation.  It's not

evidence.  It's not proof of the defendant's guilt.  It doesn't

create any presumption or permit any inference that the

defendant is guilty of any of the charges.

You will have a copy of the relevant parts of the

indictment in the jury room for your reference.

Each part of the indictment or, to be more precise,

each count of the indictment charges a different crime.  You

must consider each count separately and return a separate

verdict of guilty or not guilty for each of the counts.  Except

in one respect that I'll explain to you a little bit later on

when I discuss Count Seven, your verdict on one count should

not control your decision as to any other count.

I am now going to describe the counts in the

indictment.

Count One charges the defendant with committing wire

fraud on customers of FTX by misappropriating customer

deposits.

Count Two charges the defendant with conspiring to

commit wire fraud on customers of FTX by misappropriating

customer deposits.

Count Three charges the defendant with committing wire

fraud on lenders to Alameda Research by providing false and

misleading information to those lenders.  For convenience, I am

going to refer to Alameda Research from time to time simply as

Alameda, but you should understand that when I say Alameda or

1   Alameda Research, I am talking about the same thing, and they

2   are the entity or entities as to which you heard evidence -- I

3   guess it's one entity, I want to be clear -- that was owned 90

4   percent by the defendant.

5          Count Four charges the defendant with conspiring to

6   commit wire fraud on lenders to Alameda by providing false and

7   misleading information to those lenders.

8          Count Five charges the defendant with conspiring to

9   commit securities fraud by providing false and misleading

10  information to FTX's investors.

11         Count Six charges the defendant with conspiring to

12  commit fraud on customers of FTX in connection with the

13  purchase and sale of cryptocurrency and cryptocurrency swaps by

14  misappropriating those customers' deposits.

15         Count Seven charges the defendant with conspiring to

16  commit money laundering in order to conceal and disguise the

17  nature, location, source, ownership, and control of proceeds of

18  the alleged fraud on FTX's customers.

19         Now, the defendant has pleaded not guilty to all the

20  charges in the indictment.  The burden is on the prosecution to

21  prove guilt beyond a reasonable doubt.  That burden never

22  shifts to the defendant.  He is presumed innocent of the

23  charges against him, and I therefore instruct you that he is

24  presumed innocent throughout your deliberations unless and

25  until such time, if such a time ever occurs, that you as a jury

are satisfied that the government has proved him guilty beyond

a reasonable doubt.  If the government fails to sustain its

burden of proof on one or more counts, you must find the

defendant not guilty on that count or counts.

I have said that the government must prove guilt

beyond a reasonable doubt.  What's a reasonable doubt?  It's a

doubt based on reason and common sense.  It's a doubt that a

reasonable person has after carefully weighing all of the

evidence or lack of evidence.  It is a doubt that would cause a

reasonable person to hesitate to act in a matter of importance

in his or her personal life.  Proof beyond a reasonable doubt,

therefore, is proof of such a convincing character that a

reasonable person would not hesitate to rely and act upon it in

the most important of his or her own affairs.

If, after a fair and impartial consideration of all of

the evidence, you have a reasonable doubt about the defendant's

guilt with respect to a charge in the indictment, it is your

duty to find him not guilty on that charge.  On the other hand,

if after fair and impartial consideration of all the evidence

or lack of evidence, you are satisfied of the defendant's guilt

on a particular charge beyond a reasonable doubt, you should

vote to convict on that charge.

Let me talk in a little bit more detail about the

indictment.  As I have told you, Counts Two, Four, Five, Six,

and Seven each charge the defendant with a different crime of

conspiracy.  The other two counts, Counts One and Three, charge

what we call substantive crimes.  I talked about that a little

bit before we finished jury selection, but now I'll give you

the full and dispositive and binding explanation of the

difference.

A conspiracy count is different from a substantive

count.  A conspiracy charge, generally speaking, alleges that

two or more persons agreed together to accomplish an unlawful

objective.  The focus of a conspiracy count, therefore, is on

whether there was an unlawful agreement.  A substantive count,

on the other hand, charges a defendant with the responsibility

of the actual commission of a crime or an offense.  A

substantive offense therefore may be committed by a single

person, and it need not involve an agreement with a second or

more other persons.

A conspiracy to commit a crime is an entirely separate

and different offense from a substantive crime, the commission

of which may be an object or a purpose of the conspiracy.  And

since the essence of the crime of conspiracy is an agreement or

an understanding to commit a crime, it doesn't matter if the

crime, the commission of which was an objective or a purpose of

the conspiracy, ever in fact was committed.  In other words, if

a conspiracy exists and certain other requirements are met, it

is punishable as a crime even if its purpose was not

accomplished.  Consequently, in a conspiracy charge there is no

need to prove that the crime or crimes that were the objective

or the objectives of the conspiracy actually were committed.

By contrast, conviction on a substantive count

requires proof that the crime charged actually was committed,

and it doesn't require proof of an agreement.

Now, with respect to the two substantive counts,

Counts One and Three, you should be aware also that there are

three alternative theories on the basis of which you may find a

defendant guilty.  I am going to explain all three theories in

more detail, but I want to just outline them briefly before I

get into the more detailed explanation.

The first theory is that the defendant himself

committed a substantive crime charged in one of those two

substantive counts.  The second theory is that the defendant,

with criminal intent, willfully caused some somebody else to

engage in certain actions that result in the commission of a

substantive crime charged in the indictment by that other

person.  I am going to refer, just for the sake of having a

shorthand for those two theories that I just outlined for you,

as it involving a claim that a defendant is guilty of a crime

as a principal.

The third theory is that somebody other than the

defendant committed a crime charged in the indictment as a

substantive offense, and that the defendant aided and abetted

in the commission of that crime.  I am going to refer to that

theory as a claim that the defendant is guilty as an aider and

abettor.

For the sake of organizing my instructions to you in a

convenient way, I am going to instruct you first with respect

to Counts One and Three, which are the two counts that charge

substantive crimes.  I will then instruct you on the first two

theories of liability, namely, that the defendant is guilty as

a principal of those crimes charged, either because he

committed those crimes himself or because with criminal intent

he caused somebody else to commit those crimes.  I then will

instruct you on the aiding and abetting theory.  Then I'll turn

to the conspiracy counts, which don't involve these three

alternative theories.

Now, Count One charges that:  From at least in or

about 2019, up to and including in or about November 2022, the

defendant participated in a scheme to defraud customers of FTX

of money and property by making, or causing to be made,

material false representations, using interstate or

international wires, for the purpose of paying expenses and

debts of Alameda or to make investments and for other reasons.

When I pause like this, I'm fixing typos.

Count Three charges that:  From at least in or about

June 2022, up to and including in or about November 2022, the

defendant participated in a scheme to defraud lenders to

Alameda of money and property by making, or causing to be made,

1   material misrepresentations regarding Alameda's financial

2   conditions, using interstate or international wires, so that

3   those lenders would not recall existing loans or would extend

4   new loans to Alameda.

5          With any criminal charge there are certain basic facts

6   that the government must prove beyond a reasonable doubt before

7   a defendant may be found guilty.  Those basic, necessary facts

8   are called the essential elements of the charge.

9          For each of Count One and Count Three, the government

10  must prove the following three elements beyond a reasonable

11  doubt:

12         First, that the defendant employed a scheme, device,

13  or artifice to defraud or obtained money or property by false

14  pretenses, representations or promises.

15         Second, that the defendant knowingly and willfully

16  participated in the scheme, device, or artifice was to defraud

17  with knowledge of its fraudulent nature and with specific

18  intent to defraud; and

19         Third, in the discussion of that device, scheme or

20  artifice to defraud, the defendant used, or caused to be used,

21  interstate or international wires (for example, phone calls,

22  email communications, or electronic trades).

23         The first element that the government has to prove

24  beyond a reasonable doubt, and this is true of both Counts One

25  and Three -- excuse me.  Strike "this is true of Counts One and

1    Three" and disregard that.

2          The first element that the government must prove

3    beyond a reasonable doubt is the existence of a device, scheme

4    or artifice to defraud the alleged victims of money or property

5    by false or fraudulent pretenses, representations, or promises.

6    In Count One, the victims alleged are the customers of FTX.  In

7    Count Three, the alleged victims are lenders to Alameda.

8    Unless I instruct you otherwise, the instructions on the

9    elements that the government has to prove beyond a reasonable

10   doubt to establish wire fraud are exactly the same on Count One

11   and Count Three.  What's different is the alleged victims.

12   Count One the victims are FTX customers; Count Three, Alameda

13   lenders.

14         Now let me define some of the terms relating to wire

15   fraud that I've already used.

16         Fraud is a general term.  It is a term that includes

17   all the possible means by which a person seeks to gain some

18   unfair advantage over a victim by intentional misrepresentation

19   or false pretenses.

20         A device, scheme, or artifice to defraud is any plan,

21   device, or course of action to deprive another of money or

22   property by means of false or fraudulent pretenses,

23   representations, or promises.  It is, in other words, a plan to

24   deprive another person of money or property by trick, deceit,

25   deception, swindle, or overreaching.

1          Money or property includes fiat currency, such as U.S.

2    dollars or British pounds or other foreign currency.  It also

3    includes cryptocurrencies.

4          A statement or representation is false if it's untrue

5    when it's made.  A statement may be false also if it is

6    ambiguous or incomplete in a manner that makes what is said or

7    represented misleading or deceptive.  A representation is

8    fraudulent if it was made falsely and with intent to deceive.

9          A false or fraudulent statement, representation,

10   promise, or pretense must relate to a material fact or matter.

11   A material fact is one that would be expected to influence, or

12   that is capable of influencing, the decision of a reasonable

13   person.  The same principle applies to fraudulent

14   misappropriation, which I am going to discuss in just a moment.

15         Now, as is pertinent here with respect to the alleged

16   wire fraud on customers of FTX, a scheme to defraud existed if

17   the government has proved beyond a reasonable doubt that the

18   defendant fraudulently embezzled or misappropriated property

19   belonging to another.  The words embezzle and misappropriate

20   mean the fraudulent misappropriation to one's use of money or

21   property that was entrusted to one's care by someone else and

22   with whom that person stood in a relation, implying and

23   necessitating great confidence and trust.  Money or property is

24   entrusted to the defendant's care when the business that the

25   defendant transacted or the money or property that the

1    defendant handled was not the defendant's own or for the

2    defendant's own benefit, but for the benefit of another person

3    as to whom the defendant stood in a relation implying and

4    necessitating great confidence and trust.

5           Now, such a relationship cannot be based solely on

6    unilateral, subjective expectations of FTX customers.  Rather,

7    your judgment as to whether the government has proved such a

8    relationship should take into account all of the evidence

9    concerning the relationships between and among the defendant,

10   FTX, and FTX's customers.  That evidence may include public FTX

11   policies, public statements and representations by the company,

12   or by the defendant, tweets and other electronic

13   communications, the FTX terms of service, and any other

14   circumstances pertinent to whether the government has proved

15   such a relationship.

16          As far as the terms of service are concerned, I need

17   to make a number of points about them.

18          If you don't mind, I am going to stand, not because of

19   any special emphasis, but because I need to stand once in a

20   while.  If you feel likewise, feel free.

21          Let me make sure I can be heard.

22          First of all, my recollection is that there is only

23   one version of the FTX terms of service in evidence.  It's

24   Government Exhibit 558.  And the evidence, as I recall it, is

25   that it went into effect in May 2022.  While there was

reference in the testimony to earlier versions of FTX terms of

service, none of those was received in evidence.  There is

evidence also that a prospective customer had to click a box

that said, and I think I quoted accurately, I agree to the FTX

terms of service in order to open an account.  Government

Exhibit 587 is said to be a screenshot of the web page on which

a prospective customer was presented with the check box next to

the statement, I agree to the FTX terms of service.  Now,

mechanisms like this, in other words, where a customer has to

click a box on a website stating something to the effect of, I

agree to the terms of service in order to get access to

services or goods and does click the box, are often called

clickwrap agreements.

        The second point I need to make about the terms of

service is that a clickwrap agreement is a civilly enforceable

contract of the terms of service that were reasonably

conspicuous to the prospective customer, which is often a

function of the design and the content of the relevant computer

interface.  If the terms of service were reasonably

conspicuous, the prospective customer, as a matter of the civil

law of contracts, is bound by those terms of service -- excuse

me -- terms and conditions, terms of service, when he or she

clicks I agree, regardless of whether he or she ever read the

terms of service, as long as a reasonably prudent user would

see that next to the box appears text saying I agree in the

check box, and there is highlighted and underlined indications

that I suspect everybody is familiar with and that a reasonably

prudent user would understand that the page is hyperlinked to

another web page where the terms of service would be found.  In

considering whether a statement or omission is material, let me

caution you that a clause in a contract or a disclaimer cannot

render any misrepresentation, including any oral

misrepresentation, immaterial as a matter of law.

          The third point is that, insofar as Count One is

concerned, this, of course, is a criminal wire fraud case.  It

is not a civil case for breach of contract.  In order to decide

whether the defendant misappropriated or embezzled to his own

use money or property of FTX customers, you first need to

determine whether the relationship between the defendant and

those customers was one implying and necessitating great

confidence and trust.  In doing so, you should, as I have said,

consider all of the evidence concerning the relationships

between and among the defendant, FTX, and FTX's customers, not

simply the terms of service alone.  And if the government has

proved such a relationship of trust and confidence, you must

determine whether or not the government has proved beyond a

reasonable doubt that FTX customers were materially deceived or

misled to entrust their money and property to FTX whenever they

did so or to leave it there.  Misappropriation of property is

material if the disclosure of the misappropriation would be

1    expected to influence or is capable of influencing the decision

2    of a reasonable person.

3            Now, you have heard evidence that after customers and

4    lenders transferred money to FTX and Alameda Research, the

5    defendant engaged in conduct, made tweets and other public

6    statements and provided financial information, which the

7    government claims were false or misleading.  It is not

8    necessary for the government to prove that a false or

9    misleading -- excuse me -- false or fraudulent representation

10   or statement was made prior to a customer's or lender's

11   decision to part with money or property.  Rather, if after

12   having obtained money or property, the defendant devised or

13   participated in a fraudulent scheme to deprive the alleged

14   victim of that money or property by keeping the money or

15   property through making a subsequent false or fraudulent

16   misrepresentation as to a material fact, that is sufficient to

17   establish the existence of a scheme to defraud.  It is not

18   necessary for the government to prove that the scheme to

19   defraud actually succeeded, that any particular person actually

20   relied on a statement or representation, or that any victim

21   actually suffered damages as a consequence of any false or

22   fraudulent representations, promises, or pretenses.  Nor do you

23   need to find that the defendant profited from the fraud or

24   realized any gain.  You must concentrate on whether there was

25   such a scheme, not the consequences of the scheme, although

proof concerning accomplishment of the goals of the scheme may

be persuasive evidence of the existence of the scheme itself.

In determining whether a scheme to defraud existed, it

is irrelevant whether a victim might have discovered the fraud

if the victim had looked more closely or probed more

extensively.  A victim's negligence or gullibility in failing

to discover a fraudulent scheme is not a defense to wire fraud.

On the other hand, a finding that a victim intentionally turned

a blind eye to certain types of representations when making

decisions about the victim's money or property may be relevant

to the materiality of the representations.

Finally, the government, in order to satisfy this

first element of substantive wire fraud, must prove beyond a

reasonable doubt that the alleged scheme contemplated depriving

the victims, that is, the customers of FTX, in the case of

Count One, and the lenders to Alameda, in the case of Count

Three, of money or property.

A scheme to defraud need not be shown by direct

evidence.  It may be established by all the circumstances and

facts of the case.

The second element that the government must prove

beyond a reasonable doubt to establish the substantive crime of

wire fraud is that the defendant knowingly and willfully

participated in the device, scheme, or artifice to defraud,

with knowledge of its fraudulent nature and with specific

1    intent to defraud.

2           To act knowingly means to act intentionally and

3    voluntarily, and not because of ignorance, mistake, accident,

4    or carelessness.

5           To act willfully means to act voluntarily and with

6    wrongful purpose.

7           Unlawfully means simply contrary to law.  In order to

8    know of an unlawful purpose, the defendant does not had to have

9    known that he was breaking any particular law or any particular

10   rule.  He need to have been aware only of the generally

11   unlawful nature of his actions.

12          To prove that the defendant acted with specific intent

13   and defraud, the government must prove that he acted with

14   intent to deceive for the purpose of depriving the relevant

15   victim of money or property.  The government need not prove

16   that the victim actually was harmed, only that the defendant

17   contemplated some actual harm or injury to the victim in

18   question.  In addition, the government doesn't need to prove

19   that the intent to defraud was the only intent of the

20   defendant.  A defendant may have the requisite intent to

21   defraud even if the defendant was motivated by other lawful

22   purposes as well.

23          To participate in a scheme means to engage in it by

24   taking some affirmative step to help it succeed.  Merely

25   associating with people who were participating in a scheme,

1    even if the defendant knew what they were doing, is not

2    participation.

3            It is not necessary for the government to establish

4    that the defendant originated the scheme to defraud.  It is

5    sufficient if you find that there was a scheme to defraud, even

6    if somebody else originated it, and that the defendant, while

7    aware of the existence of the scheme, knowingly and willfully

8    participated in it with the intent to defraud.

9            Nor is it required that the defendant have

10   participated in or have had knowledge of all of the operations

11   of the scheme.  The responsibility of the defendant is not

12   governed by the extent of his participation.  For example, it

13   is not necessary that the defendant have participated in the

14   alleged scheme from the beginning.  A person who comes in at a

15   later point with knowledge of the scheme's general operation,

16   although not necessarily all of its details, and intentionally

17   acts in a way to further the unlawful goals, becomes a

18   participant in the scheme and is legally responsible for all

19   that may have been done in the past in furtherance of the

20   criminal objective and all that is done thereafter.

21           Even if the defendant participated in the scheme to a

22   lesser degree than others, he nevertheless is equally guilty as

23   long as he knowingly and willfully participated in the alleged

24   scheme to defraud with knowledge of its general scope and

25   purpose and with specific intent to defraud.

1          Because an essential element of the crime charged is

2     intent to defraud, it follows that good faith on the part of a

3     defendant is a complete defense to the charge of wire fraud.

4     Good faith is an honest belief by the defendant that his

5     conduct was not wrongfully intended.  An honest belief in the

6     truth of the representations made or caused to be made by a

7     defendant is a complete defense, however inaccurate the

8     statements may turn out to be.  Similarly, it is a complete

9     defense if a defendant held an honest belief that the victims

10    were not being deprived of money or property.  Moreover, a

11    defendant that doesn't have any burden to establish a defense

12    of good faith, it's always the government's burden to prove

13    fraudulent intent and the consequent lack of good faith beyond

14    a reasonable doubt.  However, in considering whether or not a

15    defendant acted in good faith, you are instructed that an

16    honest belief on the part of the defendant, if such a belief

17    existed, that ultimately everything would work out to the

18    benefit of the alleged victims does not necessarily mean that

19    the defendant acted in good faith.  If the defendant knowingly

20    and willfully participated in the scheme with the intent to

21    deceive the victim or victims in question for the purpose of

22    depriving the victim or victims of money or property, even if

23    only for a period of time, then no amount of honest belief on

24    the part of the defendant that the victim ultimately would be

25    benefited will excuse false representations that a defendant

willfully made or caused to be made.

As I instructed you previously, it is the government's burden to prove beyond a reasonable doubt that the defendant had a fraudulent intent and that he engaged in a fraudulent scheme for the purpose of causing some loss to another.

All of that said, you have heard evidence that FTX and Alameda had lawyers. A lawyer's involvement with an individual, entity -- an individual or entity or transaction doesn't itself constitute a defense to any charge in this case. The defense has not claimed, and it cannot claim, that the defendant's allegedly unlawful conduct, assuming he committed any unlawful conduct, was lawful because he engaged in such conduct in good-faith reliance on the advice of a lawyer.

In the last analysis, whether a person acted knowingly, willfully, and with intent to defraud is a question of fact. It is for you to determine, like any other fact question. Direct proof of knowledge and fraudulent intent is never or almost never available, nor is it required. It would be a very rare case where it could be shown that a person wrote or stated that as of a given time in the past he or she committed an act with fraudulent intent.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his or her words, his or her conduct, his or her acts, and all the

surrounding circumstances disclosed by the evidence and the

rational or logical inferences that may be drawn from that

evidence.  You may, but you are not required, to infer that

people intend the natural and probable consequences of their

actions.  Accordingly, when the necessary result of a scheme is

to injure others, fraudulent intent may be inferred from the

scheme itself.  As I instructed earlier, circumstantial

evidence, if believed, and I'll talk about circumstantial

evidence later on, is of no less value than direct evidence.

The third and final element that the government must

prove beyond a reasonable doubt is that one or more foreign

wires, which I have also referred to as international wires,

same thing, were used in furtherance of the scheme to defraud.

An interstate wire means a wire that passes between two or more

states.  A foreign wire means a wire that travels between the

United States and another country.  Examples of wires include

telephone calls, text messages, communications over the

Internet, commercials on television, and financial wires

between bank accounts, among other things.

A wire communication need not be fraudulent.  It must,

however, further or assist in some way in carrying out the

scheme to defraud in order to satisfy this third element.  A

wire communication can also include a communication made after

an alleged victim's funds were obtained if the communication

was designed to lull the victim into a false sense of security,

1    to postpone the victim from complaining to the authorities, or

2    to keep money obtained in the scheme.

3         It is not necessary for the defendant to have been

4    directly or personally involved in a wire communication, as

5    long as the wire was reasonably foreseeable in the execution of

6    the alleged scheme to defraud in which the defendant is accused

7    of participating.  In this regard, it is sufficient to

8    establish this third element of the crime if the evidence

9    justifies a finding that the defendant caused a wire to be used

10   by another.  This does not mean that the defendant must

11   specifically have authorized others to make the communication

12   or communications.  When one does an act with knowledge that

13   the use of the wires will follow in the ordinary course of

14   business or where such use of wires reasonably can be foreseen,

15   even if not specifically or actually intended, then a person

16   causes the wires to be used.

17        Finally, if you find that a wire communication was

18   reasonably foreseeable and that the interstate or foreign wire

19   communication charged in the indictment took place, then this

20   element is satisfied even if it was not foreseeable that the

21   communication would cross state lines or the United States

22   border.

23        That takes care of the first of the three theories on

24   which the government could theoretically convict the defendant

25   on Count One and/or Count Three.

1          Now, if you unanimously find that the government has

2    proved the defendant guilty of both Counts One and Three under

3    that first theory of liability that I just finished explaining,

4    in other words, if you find that the government has proved that

5    the defendant himself committed the substantive crimes charged

6    in Counts One and Three, then you don't need to consider the

7    government's second and third theories of liability on either

8    one of those counts.

9          I have to tell you about them anyway.

10          If, on the other hand, you do not so find as to either

11    or both of Count One or Count Three, then you will consider the

12    government's second alternative theory of liability, namely,

13    that the defendant is guilty of the relevant conduct or counts

14    because he allegedly possessed the requisite criminal intent

15    and he willfully caused someone else to engage in actions

16    necessary to commit the crime or crimes.  I am now going to

17    take a moment, I promise, to discuss what it means for a

18    defendant to be guilty as a principal through willful causation

19    in the context of this case.

20          Whoever willfully causes an act to be done which, if

21    directly done by the defendant, would be an offense against the

22    United States, it is punishable as a principal.

23          What does the term willfully caused mean?  It doesn't

24    mean that the defendant need physically have committed the

25    crime or supervised or participated in the actual criminal

conduct charged in the indictment.  Rather, anybody who causes

the doing of an act, which that person, had he done so directly

himself, would render him guilty of an offense against the

United States, is guilty as a principal.  Accordingly, one who

intentionally causes another person to make a material false

statement in connection with depriving a victim of money or

property is guilty as a principal if the government proves that

the person who causes the making of the false statement acted

knowingly, willfully, and with the specific intent to defraud

the victim in question and satisfies the other elements of wire

fraud that I have described to you.  That is so even if the

individual who was caused to make the false statement did so

without criminal intent.

          Now, if you unanimously find that the government has

proved the defendant guilty beyond a reasonable doubt of both

of Count One and Count Three, under either of the first or the

second theory of liability that I have just finished explaining

to you, then you don't need to consider the government's third

theory of liability, but I need to tell you about it anyway,

just in case.  And I don't mean anything by just in case.  It's

just a note of humor.  At least I hope so.

          If you do not convict the defendant of Count One or

Count Three or both counts under either of the first two

theories of liability, then you must consider whether the

government has proved him guilty on the third theory, which is

called aiding and abetting.

I will explain that to you in a little more detail.

It is unlawful for someone to aid, abet, counsel, command, induce, or procure someone else to commit an offense. A person who does that is just as guilty of the offense as someone who actually commits the offense himself or herself. Accordingly, for either of the two substantive counts in the indictment, you may find the defendant guilty if you find that the government has proved on that count beyond a reasonable doubt that someone else actually committed the crime and that the defendant aided, abetted, counseled, commanded, induced, or procured the commission of that crime.

In order to convict the defendant as an aider and abettor, the government must prove beyond a reasonable doubt two elements.

First, it must prove that someone other than the defendant (and other than a person that the defendant willfully caused to commit the crime, as I described that to you previously) committed the crime charged. The reason is obviously this. No one can be convicted of aiding or abetting the criminal act of some other person if nobody committed the crime in the first place. Accordingly, if the government has not proved beyond a reasonable doubt that someone other than the defendant committed the substantive crime or crimes in the indictment, then you don't have to consider the second element

of aiding and abetting.  But if you do find that a crime was

committed by someone other than the defendant, or someone he

willfully caused to take the actions necessary for the

commission of the crime, then you must consider whether the

defendant aided or abetted the commission of that crime and,

therefore, whether the government has proved the second element

of aiding and abetting, which requires the government to prove

that the defendant willfully and knowingly associated himself

in some way with the crime and that he willfully and knowingly

engaged in some affirmative conduct or some overt act for the

specific purpose of bringing about the crime.  Participation in

a crime is willful if it is done voluntarily and intentionally,

with the specific intent to do something that the law

prohibits.

        The mere presence of the defendant in a place where a

crime is being committed, even with knowledge that a crime is

being committed, is not enough to make the defendant an aider

and abettor.  Similarly, a defendant's acquiescence in criminal

conduct of others, even with guilty knowledge, is not enough to

establish aiding and abetting.  An aider or abettor must know

that the crime is being committed and act in a way which is

intended to bring about the success of the criminal venture.

        To determine whether a defendant aided and abetted in

the commission of a crime, ask yourself these questions:

        Did the defendant knowingly associate himself with the

criminal venture?  Did he by his actions make the crime or the

criminal venture succeed?  And did the defendant participate in

the crime charged as something he wished to bring about?  And

if he did, then he's an aider and abettor.  If, on the other

hand, your answer to any one of those three questions I just

posed is no, the defendant is not an aider or abettor.  I

certainly understand, depending on your view of the evidence,

that there may be a very subtle distinction with respect to

whether a defendant is guilty, if he's guilty at all, as a

principal or as an aider and abettor.  The question is what is

the difference between a defendant willfully causing someone

else to take actions necessary for the commission of a crime,

as opposed to aiding and abetting someone else in committing

the crime.

        If this question should come up in your deliberations,

you should think of it in terms of the difference between

causing someone to do something versus facilitating or helping

someone to do it.  If you are persuaded beyond a reasonable

doubt that the defendant willfully caused someone else to take

actions necessary for the commission of either of the

substantive counts charged in the indictment, you should

convict him as a principal on that count.  If, on the other

hand, you are persuaded beyond a reasonable doubt that the

defendant, with knowledge and intent, as I have described as

necessary, sought by his actions to facilitate and assist that

other person in committing the crime, then he's guilty as an

aider and abettor.  One important difference between willfully

causing and aiding another person and abetting another person

to commit a crime is that with respect to willful causation,

the government need not prove that the defendant acted through

a guilty person.

　　　　　With respect to aiding and abetting, however, the

government must prove beyond a reasonable doubt that someone

else actually committed the crime charged with the requisite

criminal intent.

　　　　　If you find that the government has proved beyond a

reasonable doubt that another person actually committed one or

more of the substantive crimes charged in the indictment, just

a reminder, Count One or Count Three, and that the defendant

aided or betted that person in the commission of the offense,

you should find the defendant guilty of that substantive crime

on an aiding-and-abetting theory.  If, however, you do not so

find, then you may not find the defendant guilty of that

substantive crime on an aiding-and-abetting theory.

　　　　　That takes care of Counts One and Three.  I will say

no more about them, I believe.

　　　　　(Continued on next page)

1          THE COURT:  So let's go on to the conspiracy counts.

2   And let's see.  I think I've been going for quite awhile.  But

3   I'm going to push on a little further and take up Counts Two

4   and Four, the charge of conspiracy to commit wire fraud.

5          I've already explained to you that a conspiracy to

6   commit a crime is a separate and different offense from the

7   substantive crime that may have been the object of the

8   conspiracy.  Now that I have discussed the substantive counts

9   charged in the indictment, I'm going to discuss the elements of

10  the conspiracy counts.  And I'm starting with Counts Two and

11  Four.

12         Count Two charges that from at least in or about 2019,

13  up to and including in or about November 2022, the defendant

14  conspired with others to commit wire fraud—-the crime I have

15  just described to you—-against customers of FTX.

16         Count Four charges that from at least June of 2022 up

17  to and including in or about November of '22, the defendant

18  conspired with others to commit wire fraud against lenders to

19  Alameda.

20         In order to sustain its burden of proof with respect

21  to the conspiracy charged in each of Counts Two and Four, the

22  government must prove each of two elements——on each count, of

23  course.

24         First, it must prove the existence of a conspiracy,

25  the conspiracy charged in the count you're considering;

1          Second, it must prove that the defendant knowingly and

2    willfully became a member of, and joined in, that conspiracy.

3          Starting with the first element, a conspiracy, as I've

4    told you, is an agreement or understanding of two or more

5    people to accomplish by concerted action a criminal or unlawful

6    purpose.  In this instance, Counts Two and Four charge that the

7    criminal or unlawful purpose was to commit wire fraud.

8          To establish a conspiracy, the government is not

9    required to show that two or more people sat down at a table

10   and entered into a solemn compact stating that they have formed

11   a conspiracy to violate the law and setting forth details of

12   the plans and the means by which the project, the unlawful

13   project, is to be carried out, or the roles that everyone is

14   going to play.  Since conspiracy by its very nature is

15   characterized by secrecy, it is rare that a conspiracy can be

16   proved by direct evidence of an explicit agreement.  You may

17   infer the existence of a conspiracy from the circumstances of

18   this case and the conduct of the parties involved.

19         The adage "actions speak louder than words" may apply

20   here.  Usually, the only evidence available with respect to the

21   existence of a conspiracy is that of disconnected acts on the

22   part of the alleged individual co-conspirators.  When taken

23   together and considered as a whole, however, such acts may show

24   a conspiracy or an agreement as conclusively as would direct

25   proof.  In determining whether the conspiracy charged in Counts

1    Two and Four actually existed, you may consider all of the

2    acts, conduct, and statements of the alleged co-conspirators

3    and the reasonable inferences to be drawn therefrom.

4         In order to prove the necessary agreement, it is

5    sufficient if two or more persons came to a common

6    understanding to violate the law.

7         As I told you earlier, since the essence of the crime

8    of conspiracy is an agreement or understanding to commit a

9    crime, it does not matter if the crime, the commission of which

10   was an objective or a goal of the conspiracy, ever was

11   committed.  A conspiracy to commit a crime, I've told you, is

12   an entirely separate and distinct offense from the actual

13   commission of the illegal act that is the object of the

14   conspiracy.  The success or failure of a conspiracy is not

15   material to the question of guilt or innocence of an alleged

16   conspirator.

17        Now each of the conspiracies charged in Counts Two and

18   Four allegedly had one object—in other words, each of the

19   conspiracies in those two counts had a single illegal purpose

20   that the co-conspirators alleged to accomplish—which was to

21   commit wire fraud against customers of FTX in the case of Count

22   Two and against lenders to Alameda in the case of Count Four.

23   I've already explained the elements of wire fraud to you when I

24   instructed you on Counts One and Three.  You will apply those

25   instructions when you consider whether the government has

proved beyond a reasonable doubt that the conspiracies charged

in Count Two and Count Four existed.  However, because Counts

Two and Four each charge a conspiracy, the government does not

have to prove that anyone committed the substantive crime of

wire fraud.  It need prove beyond a reasonable doubt only that

there was an agreement or understanding to try to accomplish

that.

         The indictment charges that the conspiracy alleged in

Count Two lasted from at least in or about 2019 through at

least in or about 2022; the conspiracy charged in Count Four

allegedly lasted from at least in or about June 2022 through at

least in or about November of that year.  It is not necessary

for the government to prove that the conspiracy in either count

lasted through the entire period alleged in the indictment.  It

is sufficient if the government proved only that it existed for

some period within those time frames.

         In sum, in order to find that the conspiracies charged

in Count Two and in Count Four existed, the government must

prove beyond a reasonable doubt that there was a material

understanding, either spoken or unspoken, between two or more

people to commit the wire fraud alleged in the relevant count,

Two or Four.

         The second element that the government must prove in

order to convict on Count Two or on Count Four is that the

defendant willfully joined and participated in the conspiracy

you are considering, with knowledge of its unlawful purpose,

and with an intent to aid in the accomplishment of its illegal

objective—-assuming, of course, that the government has proved

that there was such a conspiracy in the first place.  In other

words, it must prove that the defendant willfully joined and

participated in the conspiracy to commit the wire fraud that is

the subject of the count that you are considering.

          The government must prove beyond a reasonable doubt

that the defendant unlawfully, willfully, knowingly, and with

specific intent to defraud entered into the conspiracy that's

relevant on each count.

          "Knowingly" and "willfully" have the same meanings

here that I described earlier with respect to the second

element of substantive wire fraud.

          The defendant's participation in the conspiracy, if

there was a conspiracy, must be established by independent

evidence of his own acts or statements, as well as those of the

other alleged co-conspirators, and the reasonable inferences

that may be drawn from them.

          Now obviously science has not yet devised a manner of

looking into a person's mind and knowing what the person is or

was thinking.  To make that determination, you may look to the

evidence of certain acts that are alleged to have taken place

by or with the defendant or in his presence.  As I instructed

you earlier with respect to determining a defendant's knowledge

and intent, you may consider circumstantial evidence based on

the defendant's outward manifestation, his words, his conduct,

his acts, and all of the surrounding circumstances of which you

have heard evidence, and the rational and logical inferences

that may be drawn therefrom.

To become a member of the conspiracy, the defendant

need not have known the identities of each and every other

member, nor need he have known of all of their activities.  In

fact, a defendant may know only one other member of a

conspiracy and still be a co-conspirator.

Moreover, the defendant need not have been fully

informed as to all of the details, or the scope, of an alleged

conspiracy in order to justify an inference of knowledge on his

part.  Proof of a financial interest in the outcome or another

motive is not essential, but if you find that the defendant had

such an interest or such another motive, that is a factor that

you may consider in determining whether the defendant was a

member of a conspiracy, alleged conspiracy that you're

considering.  The presence or absence of motive, however, is a

circumstance that you may consider as bearing on the

defendant's intent.

The duration and extent of a defendant's participation

has no bearing on the issue of a defendant's guilt.  Each

member of a conspiracy may perform separate and distinct acts

and may perform them at different times.  Some conspirators

1    play major roles, others play only minor parts.  An equal role

2    is not what the law requires.  In fact, even a single act may

3    be sufficient to draw a defendant within the ambit of the

4    conspiracy.  Moreover, a defendant need not have joined the

5    conspiracy at the outset.  He may have joined at any time, and

6    if he joined, he——or she, as may be applicable in other

7    cases——will still be held responsible for the acts done after

8    joining.

9            I do want to caution you, however, that mere

10   association by one person with another does not make that

11   person a member of a conspiracy even when coupled with

12   knowledge that a conspiracy is taking place.  Similarly, mere

13   presence at the scene of a crime, even coupled with knowledge

14   that a crime is taking place, is not sufficient to support a

15   conviction.  A person may know, or be friendly with, a

16   criminal, without being a criminal himself.  Mere similarity of

17   conduct or the fact that people may have assembled together and

18   discussed common aims and interests does not necessarily

19   establish membership in a conspiracy.

20           I further instruct you that mere knowledge or

21   acquiescence without participation in an unlawful plan is also

22   not sufficient.  The fact that the acts of a defendant, without

23   knowledge, merely happen to further the purpose or objective of

24   a conspiracy doesn't make the defendant a member.

25           What is necessary is that the defendant must have

participated with knowledge of the unlawful purpose of the

conspiracy—-in this case, to commit wire fraud.  The

instructions that I previously gave you with respect to good

faith apply to these counts as well.  If you find that the

defendant acted in good faith, he can't be convicted on Counts

Two or Four.

In sum, the government must prove beyond a reasonable

doubt that the defendant, with an understanding of the unlawful

nature of the conspiracy you're considering, intentionally

engaged, advised, or assisted the conspiracy in order,

knowingly and willfully, to promote its unlawful goal.  The

defendant thereby becomes a conspirator.

A conspiracy, once formed, is presumed to continue

until its objectives are accomplished or there is some

affirmative act of termination by its members.  So too, once a

person is found to be a member of a conspiracy, that person is

presumed to continue being a member in the venture until the

venture is terminated, unless it is shown by some affirmative

proof that the defendant or the person concerned withdrew and

disassociated him or herself from it.

In sum, if you find the government has met its burden

of proof on both elements as to the count you are considering,

then you should find the defendant guilty on that count.  If

you find that the government has not met that burden with

respect to any of the elements as to the count you are

1    considering, then you must find the defendant not guilty on

2    that count.

3          Now let's all take a break and stand up for a minute

4    and catch our breath.

5          (Pause)

6          THE COURT:  In fact, we'll take a ten-minute recess.

7          THE DEPUTY CLERK:  All rise.  Will the jury please

8    come this way.

9          (Recess)

10         (In open court; jury present)

11         THE COURT:  The record will reflect that the defendant

12   and the jurors all are present, as they have been throughout.

13         Okay.  We are up to Count Five.  And just so everybody

14   has an idea of schedule, I'll probably take our lunch break at

15   1, or thereabouts.  I'll get to a good stopping point, we'll

16   take our half hour, and come back and finish.

17         Okay.  Count Five charges the defendant with

18   conspiring to commit securities fraud.  Specifically, it

19   charges that from at least in or about 2019, up to and

20   including in or about November 2022, the defendant conspired

21   with others to commit securities fraud against investors in

22   FTX.

23         Now let me just back up for a minute.  My

24   ever-detail-oriented and brilliant law clerks invited my

25   attention to the fact that as I was winding up the instruction

1    with respect to the last two counts, the conspiracy counts, Two

2    and Four, I left a word out that I should have read.  The

3    sentence I read to you said, they tell me, he may have joined,

4    referring to the defendant, and to the alleged conspiracy, at

5    any time, and if he joined still would be held responsible for

6    acts done before he joined.  I think that's what they tell me I

7    read, but if that's what I read, doesn't matter.  It should

8    have said before or after.  Everybody got it?  Okay.

9            Now back to Count Five.

10           In order to sustain its burden of proof with respect

11   to the conspiracy alleged in Count Five, the government must

12   prove beyond a reasonable doubt each of the three elements:

13           First, that there was an agreement or understanding to

14   accomplish the unlawful objective alleged in Count Five of the

15   indictment——specifically, securities fraud——by providing false

16   information to FTX investors;

17           Second, that the defendant knowingly and willfully

18   became a member of and joined that conspiracy;

19           Third, that at least one person who was a member of

20   that conspiracy committed some overt act in furtherance of the

21   conspiracy.

22           Now the first element, as I said, that the government

23   has to prove was that there was a conspiracy that has as its

24   object the commission of securities fraud.  I have already told

25   you probably more than you ever wanted to hear about the

1    definition of a conspiracy and what it takes to prove a

2    conspiracy, and you will apply all of those instructions to

3    Count Five.  So what remains is to talk to you about the

4    alleged objective of the conspiracy charged in Count Five,

5    which is securities fraud.  So let me tell you about securities

6    fraud, the alleged object of this alleged conspiracy.

7            Now harkening back to something I said before, the

8    government doesn't have to prove that a securities fraud

9    actually was committed.  It simply has to prove that that was

10   an objective of an alleged conspiracy that you find to have

11   existed.  Securities fraud, in turn, has three elements:

12           The first element is that in connection with the

13   purchase or sale of securities, the defendant did any one or

14   more of the following: (1) employed a scheme, device, or

15   artifice to defraud—you've already heard a lot about that;

16   second, made an untrue statement of a material fact or omitted

17   to state a material fact which made what was said, in the

18   circumstances, misleading; or (3) engaged in an act, practice,

19   or course of business that operated, or would operate, as a

20   fraud or deceit upon a purchaser of the securities.

21           That's the first element of securities fraud.

22           The second element of securities fraud is that the

23   defendant, when the defendant engaged in that scheme, if the

24   defendant did so, acted knowingly, willfully, and with an

25   intent to defraud.

1          The third element of securities fraud is that in

2    furtherance of the fraudulent conduct, there occurred at least

3    one use of any means or instruments of transportation or

4    communication in interstate or foreign commerce, or the use of

5    the mails, or the use of any facility of a national securities

6    exchange.

7          So I'm going to talk about those three elements of

8    securities fraud in order that you can evaluate whether there

9    was an agreement or an understanding to attempt to accomplish

10   securities fraud.

11         The first element of securities fraud which I

12   mentioned is that the defendant did one or more of the three

13   things that I just outlined to you.  In proving a fraudulent

14   act, it is not necessary for the government to prove all three

15   of those types of unlawful conduct that I just read out to you

16   a moment ago were part of the objective of the conspiracy.  Any

17   one would be sufficient to satisfy that element.  You must,

18   however, be unanimous as to which type of unlawful conduct was

19   the alleged object of the conspiracy.

20         Now earlier, in the context of the wire fraud charges,

21   I explained what "fraud" means, and I explained device, scheme,

22   or artifice to defraud, and you will apply those definitions

23   here.

24         Material information, in the context of securities

25   fraud, is information that a reasonable investor would have

considered important in making an investment decision in light

of the total mix of information publicly available.

Materiality of the information is judged as of the time the

information was disclosed.

The government must prove also beyond a reasonable

doubt that the defendant's alleged fraudulent conduct was in

connection with the purchase or sale of a security.  That

requirement would be satisfied if you find that there was some

nexus or relationship between the allegedly fraudulent conduct

and the sale or purchase of securities.  On the other hand, if

you are not persuaded that any fraudulent conduct that may have

occurred was in connection with the purchase or sale of a

security, you cannot convict the defendant on Count Five.

The second element of securities fraud is that the

defendant in question participated in the scheme knowingly,

willfully, and with intent to defraud.

I have already defined "knowingly" and "willfully,"

and you will apply those definitions here.

In the context of the securities laws, intent to

defraud means to act knowingly and with the intent to deceive.

Since an essential element of securities fraud is intent to

defraud, good faith, as I have previously defined that term, is

a complete defense to a charge of securities fraud.  And you'll

apply what I've said already about good faith with respect to

Count Five.

1        And the final element of securities fraud is that the

2   defendant knowingly used or caused to be used at least one

3   instrumentality of interstate or foreign commerce, such as an

4   interstate or international telephone call, a use of the mails,

5   or an interstate transaction in furtherance of the scheme to

6   defraud or the fraudulent conduct.

7        The government does not have to prove that a defendant

8   was directly or personally involved in the use of an

9   instrumentality of interstate or foreign commerce.  If the

10  defendant was an active participant in the scheme and took

11  steps or engaged in conduct that he knew or reasonably could

12  have foreseen would naturally and probably result in the use of

13  an instrumentality of interstate or foreign commerce, this

14  element would be satisfied.  Nor is it necessary that the

15  communication did or would contain a fraudulent representation.

16  The use of the mails or instrumentality of interstate or

17  foreign commerce need not be central to the execution of the

18  scheme or even incidental to it.  All that is required is that

19  the use of the mails or instrumentality of interstate or

20  foreign commerce bear some relation to the object of the scheme

21  or fraudulent commerce.

22        Moreover, the actual purchase or sale of a security

23  need not be accomplished by the use of the mails or an

24  instrumentality of interstate or foreign commerce, as long as

25  the mails or instrumentality of interstate or foreign commerce

are used in furtherance of the scheme and the defendant is
still engaged in actions that are part of the fraudulent scheme
when the mails or the instrumentalities of interstate or
foreign commerce are used.

I've now defined for you the elements of securities
fraud, the commission of which allegedly was the purpose, the
object, of the conspiracy found in Count Five.  Again, not
necessary that it be proven that that purpose was achieved in
order to convict on Count Five.

The second element of the conspiracy charged in Count
Five is that the defendant knowingly and willfully joined and
participated in the conspiracy to commit securities
fraud——assuming, of course, that there was such a conspiracy.
I've already instructed you on the terms "knowingly" and
"willfully," and what it means for a defendant to knowingly and
willfully become a member of and join a conspiracy.  You will
apply all of those instructions here.

The third and last element with respect to Count Five
that the government must prove beyond a reasonable doubt is
that at least one of the conspirators, not necessarily the
defendant, committed at least one overt act in furtherance of
the conspiracy.  Now this is different from Counts Two and
Four.  No overt act requirement there.  Some day we'll all ask
congressmen why, but that's the way it is.  In other words, the
overt act requirement requires that there have been something

1    more than an agreement—-some overt step or action must have

2    been taken by at least one of the conspirators in furtherance

3    of the conspiracy.  The overt act element, to put it another

4    way, is a requirement that the agreement that's charged in

5    Count Five have gone beyond merely the talking stage.

6            The government may satisfy the overt act element by

7    proving one of the overt acts that you'll find listed in the

8    indictment, but it doesn't have to prove one of the overt acts

9    listed in the indictment.  It is enough if the government

10   proves one overt act committed in the furtherance of the

11   conspiracy whether or not that overt act is listed in the

12   indictment.  As long as you all agree that at least one overt

13   act was committed, that element of an overt act is satisfied.

14   But you must agree on at least one act, all 12 of you.

15           Similarly, it is not necessary for the government to

16   prove that each member of the alleged conspiracy committed or

17   participated in an overt act.  It's enough if you find that at

18   least one overt act was committed and performed by at least one

19   member of the conspiracy, whether the defendant or someone

20   else, and that it have furthered the conspiracy within the time

21   frame of the conspiracy.  Remember, the act of any one of the

22   members of the conspiracy done in furtherance of the

23   conspiracy, effectively, in law, becomes the act of all of

24   them.  To be a member of the conspiracy, it is not necessary

25   for a defendant to have committed an overt act.

1          The overt act, as I have suggested already, must have

2    been done knowingly and it must be in furtherance of one of the

3    objects of the conspiracy charged in the indictment, and in

4    fact I believe this is another count where there's one object

5    of the conspiracy——the commission of securities fraud.

6          You should be aware that an apparently innocent act

7    sheds its harmless character if it is a step in carrying out,

8    promoting, aiding, or assisting an alleged conspiratorial

9    scheme.  The overt act does not have to have been an act which

10   in and of itself was criminal, or that its occurrence have been

11   an objective of the conspiracy.  It's just one overt act that

12   you all agree upon and that it be in furtherance of the

13   conspiracy, regardless of what it is.

14         If you find that the government has met its burden on

15   all three elements of this conspiracy claim, Count Five, you

16   should find the defendant guilty of Count Five.  If the

17   government has not met its burden with respect to any of the

18   three elements of this conspiracy claim, then you must find the

19   defendant not guilty on Count Five.

20         That brings me to Count Six, which should give you

21   confidence that some day this too will end, because there are

22   only seven.  And I once charged a case with 283 counts, many

23   years ago.

24         Count Six charges that the defendant, from at least in

25   or about 2019, up to and including in or about November 2022,

conspired with others to commit commodities fraud against

customers of FTX.

In order to sustain its burden of proof with respect
to the conspiracy alleged in Count Six, the government must
prove beyond a reasonable doubt each of the three elements:

First, that there was an agreement or understanding to
accomplish the illegal or unlawful objective alleged in Count
Six—namely, commodities fraud;

Second, that the defendant knowingly and willfully
became a member of and joined that conspiracy; and

Thirdly, that at least one person who was a member of
the conspiracy committed some overt act in furtherance of that
conspiracy.

Now the elements of the conspiracy charged in Count
Six are exactly the same as those in Count Four, except the
object of Count Six is different.  Count Six says the object
was commodities fraud, whereas Count Five alleges that the
object was securities fraud.

Once again, in order to convict on Count Six, the
government does not have to prove that commodities fraud was
actually committed, only that doing so was the objective of the
conspiracy.  So as I did with Count Five, now I'm going to tell
you about commodities fraud for a similar purpose, so that you
understand what the object is said to have been.

Commodities fraud has three elements:

1          First, that the defendant did any one or more of three

2     things: thing (1) employed a manipulative device, scheme, or

3     artifice to defraud; thing (2) made an untrue statement of a

4     material fact or omitted to state a material fact which made

5     what was said, under the circumstances, misleading; and thing

6     (3) engaged in an act, practice, or course of business that

7     operated, or would operate, as a fraud or deceit.  That's the

8     first element.

9          Second element:  The scheme, untrue statement, act,

10    practice, or course of conduct was in connection with a swap,

11    or a contract of sale of any commodity in interstate or foreign

12    commerce.

13         Third, that the defendant acted knowingly, willfully,

14    and with an intent to defraud.

15         Now as respects the first element of commodities

16    fraud, I described that as involving doing one of three things,

17    remember?  Manipulative scheme or artifice to defraud, untrue

18    statement, or omission, act, practice, or course of business

19    that operated or would operate as a fraud.

20         The government doesn't have to prove all three.  Proof

21    of one is enough.  But you must be unanimous as to which one.

22         Now the terms I used with respect to that first

23    element are exactly the same terms I defined with respect to

24    Count Five, and earlier counts in some cases.  You will apply

25    them all here, as you will also apply what I said about good

1  faith on Count Six.

2        The second element of commodities fraud is that the

3  defendant and his co-conspirators, if there were more than one,

4  committed their conduct in connection with a swap, or a

5  contract of sale of a commodity in interstate or foreign

6  commerce.  So let me tell you what those terms are.

7        A commodity is a good, article, service, right, or

8  interest in which contracts for future delivery are dealt.  A

9  "contract for future delivery," which is also called a "futures

10  contract," is an agreement to buy or sell a particular

11  commodity at a specific price in the future.  A virtual

12  currency or cryptocurrency may qualify as a commodity.

13        A swap is an agreement between two parties to exchange

14  payments with each other based on the value of one or more

15  rates, commodities, indices, or other financial or economic

16  interests.  A swap transfers between the two parties, in whole

17  or in part, the risk of changes in value of the things

18  underlying the swap, without actually exchanging those things.

19  In determining whether a financial contract, agreement, or

20  transaction qualifies as a swap, you may consider whether the

21  arrangement is commonly known as or referred to as a swap.

22        The requirement that the fraudulent conduct, if there

23  is any, be in connection with a swap or contract of sale off of

24  a commodity is satisfied so long as there was some nexus or

25  relation between the alleged fraudulent conduct and the swap or

contract of sale of a commodity.  Fraudulent conduct may

satisfy the "in connection with" requirement if you find that

the fraudulent conduct touched upon a swap or contract of sale

of a commodity.  Statements directed to the general public

which affect the public's interest in these products are made

in connection with them.  The fraudulent or deceitful conduct

need not relate to the value of the swap or contract of sale of

a commodity.  It is also not necessary for you to find the

defendant was or would be the actual seller of the swap or

commodity.

        Now the third element of commodities fraud is that the

defendant participated in the scheme to defraud, false

statement, misleading omission, or deceptive act, practice, or

course of conduct knowingly, willfully, and with intent to

defraud.

        I've already instructed you about the meaning of the

terms "knowingly" and "willfully," and you will apply those

instructions here.  So too with the term "intent to defraud,"

which I defined in connection with Count Five, and you will

apply those instructions here.

        Additionally, as to Count Six, the government must

prove beyond a reasonable doubt a sufficient relationship

between the commodities fraud, which was the object of the

conspiracy, and the United States.  And there are two ways the

government could do that—that is to say, satisfy that burden.

1          One way the government could prove a sufficient

2     connection to the United States is by showing that some conduct

3     relevant to the offense charged in Count Six occurred in the

4     United States and that the fraudulent conduct that was the

5     object of the alleged conspiracy would not have been

6     predominantly foreign.  It is not necessary that all or most of

7     the conduct relevant to those crimes happened in the United

8     States, although the conduct in the United States must be more

9     than incidental to the scheme.  Nor does the government have to

10    prove that the defendant ever was in the United States, just

11    that conduct relevant to the offenses occurred in this country.

12    In assessing that issue, you may consider also whether conduct

13    in furtherance of the crime charged in Count Six caused

14    trading, money transfers, and communications to occur in the

15    United States, or otherwise affected commerce in this country.

16    In proving the existence of a connection to the United States,

17    it is not necessary to prove both conduct in, and an effect on,

18    the United States.  Either would be enough to satisfy the

19    government's burden.

20          A second way the government may prove a sufficient

21    connection to the United States is by showing that some conduct

22    relating to swaps had a direct and significant effect on, or

23    connection with, commerce in the United States.  Here, there is

24    no need for any conduct to have occurred in the United States.

25    All the government has to prove is that the offense involved

1    conduct that had an effect on or a connection with commerce in

2    the United States and that the effect or connection was direct

3    and significant.

4           If you find that the government has met its burden on

5    all three elements of this conspiracy claim, Count Six——that

6    is, it proved beyond a reasonable doubt that there was an

7    agreement to commit securities fraud, the defendant became a

8    member of that conspiracy, or at least one co-conspirator

9    committed an overt act in furtherance of that conspiracy, and

10   it has proved also beyond a reasonable doubt a sufficient

11   connection to the United States——then you should find the

12   defendant guilty on Count Six.  If you find that the government

13   has not met its burden with respect to any of those three

14   elements of Count Six or that it has not done so with respect

15   to a sufficient connection to the United States, then you must

16   find the defendant not guilty on Count Six.

17          Now, lunchtime?

18          I misspoke, again.

19          The last paragraph should have begun:  If you find

20   that the government has met its burden on all three elements of

21   its conspiracy claim in Count Six——that is, that it has proved

22   beyond a reasonable doubt that there was an agreement to commit

23   commodities fraud, that the defendant became a member of that

24   conspiracy, or at least one co-conspirator committed an overt

25   act, etc.  That's how it should have gone.  You forgive me for

1    my misstatement.

2            But it is now lunchtime.  I will see you back at 1:30.

3    I hope you enjoy the canteen food and that you've left some for

4    others.  And we'll resume with Count Seven at 1:30.

5            THE DEPUTY CLERK:  Will the jury please come this way.

6            (Luncheon recess)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        AFTERNOON SESSION

2             1:40 p.m.

3             (Jury present)

4             THE COURT:  Defendant and the jurors all are present,

5   as they have been throughout.

6             I hope you enjoyed your lunch, folks.

7             We are up to Count Seven, which is the last count on

8   which I need to instruct you.

9             The defendant is charged in Count Seven with

10  conspiracy to launder the proceeds of the wire fraud charged in

11  Count One.  You will consider Count Seven if and only if you

12  find the defendant guilty on Count One.  If you have found the

13  defendant not guilty on Count One, you must enter a verdict of

14  not guilty on Count Seven.

15            Count Seven charges the defendant with conspiring to

16  commit money laundering from in or about 2020, up to and

17  including in or about November 2022, by agreeing to launder the

18  proceeds of the wire fraud charged in Count One.

19            To sustain its burden with respect to the offense

20  charged in Count Seven; the government must prove beyond a

21  reasonable doubt two elements:

22            First, that two or more persons entered into an

23  unlawful agreement or understanding to seek to accomplish money

24  laundering; and

25            Second, that the defendant knowingly and willfully

1    entered into the agreement.

2          In other words, the elements of the conspiracy charged

3    in Count Seven are the same elements that the government must

4    prove with respect to the conspiracies alleged in Counts Two

5    and Four, namely, the existence of an agreement or

6    understanding to violate the law and knowing and willful entry

7    of the defendant into the agreement.  The difference between

8    Counts Two and Four and Count Seven is that Counts Two and Four

9    alleged conspiracies to commit wired fraud.  Count Seven is an

10   alleged conspiracy to commit money laundering.

11         Now, Count Seven actually charges that there were two

12   objects of the conspiracy charged in that count.  As I told you

13   before, you don't need to find that the defendant actually or

14   anyone else actually achieved the object or objects of the

15   charged conspiracy, but only that he agreed with others or that

16   the conspirators agreed with others, putting aside the

17   defendant for the moment.  I frankly lost my place, folks.

18         But the short answer is, the short principle is, you

19   don't have to find that the object of the conspiracy was

20   achieved, only that there was an agreement to do so.

21         Now, let's talk about the agreement.

22         The first object of the two objects charged in Count

23   Seven is that the defendant agreed with at least one other

24   person to commit money laundering by engaging in financial

25   transactions that involved the proceeds of the wire fraud in

1    order to conceal or disguise the nature, location, source,

2    ownership, or control of proceeds of the wire fraud.  Now, the

3    wire fraud we are talking there, remember, is Count One.  I am

4    going to refer to this object, this first object of the

5    conspiracy charged in Count Seven, as concealment money

6    laundering, which is a shorthand way of saying to conceal or

7    disguise the nature, location, source, ownership or control of

8    proceeds of the Count One wire fraud.  That's what it is.

9         The second object of the conspiracy is that the

10   conspirators agreed to engage in money laundering by engaging

11   in monetary transactions greater than $10,000 involving the

12   proceeds of the wire fraud.  I am going to call that object

13   wire fraud proceeds money laundering.

14        So we have concealment money laundering and wire fraud

15   proceeds money laundering.  In each case what we are talking

16   about is concealment of or proceeds of the money laundering

17   charged in Count One and, again, you are going to consider

18   Count Seven if and only if you found him guilty on Count One.

19        Now, John Hammel is going to distribute to you the

20   proposed verdict form which I am going to talk about very

21   briefly now.

22        The part we are interested in for now is Count Seven,

23   so it's on the second page.  Everything that comes before this

24   just asks you, as you normally expect:  Do you find the

25   defendant guilty or not guilty on Counts One, Two, Three, Four,

Five and Six?  But we are going to talk about Seven because
it's a little different.

You were asked, to be sure, on Count Seven:  Do you
find the defendant guilty or not guilty of conspiracy to commit
money laundering?  If you find him guilty, there is another
line on the verdict form that you will have to fill out and it
asks you:  In the event there is a conviction on Count Seven,
whether you unanimously have concluded that it was concealment
money laundering or wire fraud proceeds money laundering, or
both -- that's what's different -- and in order to answer yes
to those questions, each question, one, two, or both, you got
to be unanimous.  That's the verdict form.

Now I am going to explain the two types of money
laundering.

I am going to start with concealment money laundering,
and it has four elements.

The first element of concealment money laundering that
the government must prove beyond a reasonable doubt is that a
person, that is to say, a person who is part of the conspiracy
would have conducted a financial transaction that would have
affected interstate or foreign commerce.

That is to say, if the conspiracy had had its
objective achieved, would a person who did that, and so forth.

The term conducted includes the action of initiating,
concluding, or participating in, initiating, or concluding a

1    transaction.

2          The term financial transaction means (1) a transaction

3    involving a financial institution, including a bank, that is

4    engaged in, or the activities of which affect, interstate or

5    foreign commerce in any way or degree, or (2) a transaction

6    that involves the movement of funds by wire or other means and

7    in any way or degree affects interstate or foreign commerce.

8          A transaction involving a financial institution

9    includes a deposit, a withdrawal, a transfer between or among

10    accounts, an exchange of currency, a loan, extension of credit,

11    purchase or sale of any stock, or any other payment, transfer,

12    or delivery by, through, or to a financial institution by

13    whatever means.

14          The term funds includes any currency, money, or other

15    medium of exchange that can be used to pay for goods and

16    services, including digital or cryptocurrency.

17          Interstate commerce, for purposes of Count Seven,

18    includes any transmission or transfer between persons or

19    entities located in different states, and foreign commerce

20    means the same thing, except that it involves somebody in the

21    United States and somebody in a foreign country.  The

22    involvement of interstate or foreign commerce can be minimal.

23    The government satisfies its burden if it proves any effect or

24    involvement, regardless of whether it was beneficial or

25    harmful.  It is also not necessary for the government to show

1    that the defendant actually would have intended or anticipated

2    an effect on interstate or foreign commerce by his actions or

3    that commerce actually would have been affected.  All that is

4    necessary is that the natural and probable consequences of the

5    acts the defendant would have agreed to take, assuming he

6    agreed at all, would affect interstate or foreign commerce.

7            The second element of concealment money laundering is

8    that the financial transactions would have involved the

9    proceeds of specified unlawful activity.  As I have said

10   already, the specified unlawful activity here is the wire fraud

11   charged in Count One, and I instruct you, therefore, that if

12   you've convicted on Count One, this element is satisfied here.

13           The term proceeds means any property or any interest

14   in property that someone would have acquired or retained as

15   profits resulting from the commission of the specified unlawful

16   activity, which I have already defined.

17           The third element of concealment money laundering is

18   that the person would have known that the financial

19   transactions at issue involved the proceeds of some form,

20   though not necessarily which form, of unlawful activity.

21           If you find beyond a reasonable doubt that the

22   defendant committed the wire fraud offense I have instructed

23   you on in Count One, and he knew that the proceeds came from

24   that activity, that is sufficient for you to find that the

25   defendant knew that the proceeds came from unlawful activity.

However, keep in mind that it is not necessary for the
defendant to know that the proceeds came from the wire fraud
offense alleged in Count One or that the defendant personally
participated in the wire fraud.  It is sufficient that the
defendant knew that the proceeds would come from some unlawful
activity.

The fourth element of concealment money laundering
that the government must prove beyond a reasonable doubt
concerns the purpose of the transaction.  Specifically, the
government must prove beyond a reasonable doubt an agreement to
conduct financial transactions with knowledge that the
transactions were designed in whole or in part to conceal or
disguise the nature, location, source, ownership, or control of
the proceeds of the specified unlawful activity.  The
government need not prove that the intent to conceal or
disguise would have been the only or even the primary purpose
of the person, as long as it was an intent of that individual.

I previously instructed you that to act knowingly
means to act purposely and voluntarily and not because of
mistake, accident, or other innocent reason.  The acts must
have been the product of the actor's conscious objective.  To
prove that than act is done knowingly for the purpose of this
element, the government is not required to prove that the
person would have known that his acts were unlawful.  If you
find that the evidence establishes beyond a reasonable doubt

1    that the person would have known of the purpose of the

2    particular transaction in issue and that he would have known

3    that the transaction was either designed to conceal or disguise

4    the true origin or ownership of the property in question, then

5    this element would be satisfied.  However, if you find that the

6    person would have known of the transaction, but that the

7    government failed to prove beyond a reasonable doubt that the

8    person would have known that it was designed either to conceal

9    or disguise the true original of the property in question, but

10   instead throughout that the transaction was intended to further

11   the innocent transaction, you must find that this element has

12   not been satisfied.

13        For the fourth element to be satisfied, the person

14   whose actions you are considering need not have known which

15   specified unlawful activity he or she was agreeing to help

16   conceal.  Such person need have known only that a purpose of

17   the financial transaction would have been concealing the

18   nature, location, source, ownership, or control of the funds.

19   Furthermore, intent to disguise or conceal the true origin of

20   the property need not have been the sole motivating factor for

21   the transaction.

22        That covers the elements of the first object of the

23   money laundering conspiracy alleged in Count Seven.  Now I am

24   going to go on to the second object, wire fraud proceeds money

25   laundering.

1          The elements of wire fraud proceeds money laundering

2     are these:

3          First, that a person would have engaged in a monetary

4     transaction in or affecting interstate or foreign commerce;

5          Second, that the monetary transaction would have

6     involved criminally-derived property of a value greater than

7     $10,000;

8          Third, that the property would have been derived from

9     specified unlawful activity;

10         Fourth, that the person in question would have acted

11    knowingly, that is, with knowledge that the transaction

12    involved proceeds of a criminal offense; and

13         Fifth, and last, that the transaction would have taken

14    place in the United States.

15         A bit more about the five elements individually.  I

16    remind you again that you will get to Count Seven only if there

17    was a guilty verdict on Count One.

18         If there is such a guilty verdict, however, and you

19    get to Count Seven, it's sufficient to convict on Count Seven

20    if you all agree that the defendant committed either

21    concealment money laundering or financial transaction wire

22    proceeds money laundering.

23         The first element of wire fraud proceeds money

24    laundering is that the person would have conducted a financial

25    transaction that affected interstate or foreign commerce.  You

1    know what that means already.  I have told you.

2           The second element is that the transactions would have

3    involved criminally derived property having a value in excess

4    of $10,000.

5           Criminally derived property means any property

6    constituting or derived from proceeds obtained from a criminal

7    offense.  I already instructed you about proceeds.  You will

8    apply those instructions here.  Wire fraud, of course, is a

9    criminal offense.

10          The government is not required to prove that all of

11   the property involved in the transaction would have been

12   criminally derived property.  However, the government must

13   prove that more than $10,000 of the property involved would

14   have been criminally-derived property.

15          The third and fourth elements of wire fraud proceeds

16   money laundering are that the property would have been derived

17   from the specified unlawful activity and that the person would

18   have acted knowingly, that is, with knowledge that the

19   transaction involved proceeds of a criminal offense.

20          The term specified unlawful activity has been defined

21   previously.  That definition applies equally to the second

22   object of the conspiracy charged in Count Seven.  I have also

23   defined knowingly, and you will apply that definition here too.

24          I instruct you that the government is not required to

25   prove that the person in question knew the particular offense

1    which the criminally derived property was derived from.

2    However, the government is required to prove beyond a

3    reasonable doubt that the person in question knew that the

4    transaction involved criminally derived property, which means

5    any property constituting or derived from proceeds obtained

6    from a criminal offense.  This element would be satisfied by

7    proof that the person you are considering knew that the

8    transaction involved such property, property derived from a

9    criminal offense.

10          The final element of wire fraud proceeds money

11   laundering is that the agreed-upon transaction, that is, the

12   transaction that was the object of the conspiracy, would have

13   taken place in the United States if it had been achieved.

14          If you prove that the government has -- excuse me.  If

15   you find that the government has proved beyond a reasonable

16   doubt that there was an agreement or understanding by two or

17   more persons to act together to accomplish one or both of the

18   objects of the money laundering conspiracy, the first element

19   of the money laundering conspiracy charged in Count Seven will

20   have been satisfied.  You then would go on to consider the

21   second element.  If, on the other hand, the government has not

22   proved the existence of such an agreement or understanding, you

23   must find the defendant not guilty on Count Seven.

24          The second element of Count Seven is that the

25   government -- the defendant knowingly and willfully have joined

1    and participated in the conspiracy to commit money laundering.

2    I already have instructed you on knowingly and willfully and

3    what it means to join a conspiracy.  You will apply those

4    instructions here, including the instruction concerning good

5    faith.

6             If, after conscientious and deliberate consideration

7    of the evidence, you conclude that the defendant has proved

8    each of the two elements of the charge of conspiracy to commit

9    money laundering, that is, it has proved beyond a reasonable

10   doubt that there was a conspiracy to commit money laundering

11   for the purpose of achieving either or both of the two

12   objectives I was just described and that the defendant

13   knowingly and willfully joined in that conspiracy, then you

14   should find the defendant guilty on Count Seven, and mark the

15   appropriate space on the verdict form to indicate whether you

16   found him guilty as to either or both of the concealment or

17   money wire proceeds money laundering bases.  If the government

18   has failed to prove any of the elements of the conspiracy

19   charged in Count Seven with respect to both the concealment and

20   the wire fraud proceeds money laundering bases, then you must

21   find the defendant not guilty on Count Seven.

22            Now, there are three other very small points, and I'm

23   finished instructing you on the law.  These will be brief.

24            First of all, as I explained with respect to every

25   count in this indictment, the government is obliged to prove

1    that the defendant, usually among other elements, acted

2    knowingly.  In determining whether the defendant had knowledge

3    of a fact, you may consider whether that defendant deliberately

4    closed his eyes to what otherwise would have been obvious.  As

5    you all know, if someone is actually aware of a fact, then he

6    knows it.  He knows the fact.  But the law allows you also to

7    find that a defendant had knowledge of a fact when the evidence

8    shows you that the defendant was aware of a high probability of

9    that fact, but intentionally avoided confirming the fact.  We

10   refer to this concept, this notion of blinding yourself to what

11   is staring you in the face, as conscious avoidance or willful

12   blindness.

13          Although I told you before that acts done knowingly

14   must be a product of a defendant's conscious intention, not

15   simply the product of carelessness or negligence, a person

16   cannot willfully blind himself to what is obvious and disregard

17   what is plainly in front of him.  When one consciously avoids

18   learning a fact, the law treats that person as knowing that

19   fact.  An argument of conscious avoidance or willful blindness,

20   however, isn't a substitute for proof.  It's simply another

21   fact you may consider in deciding what the defendant knew.

22          With respect to the substantive wire fraud charges in

23   Counts One and Three, in determining whether the government has

24   proved beyond a reasonable doubt that the defendant had

25   knowledge or acted knowingly or acted knowing that something

 1    was intended or would occur, you may consider whether the

 2    defendant deliberately closed his eyes to what would otherwise

 3    have been obvious to him.  One may not willfully and

 4    intentionally remain ignorant of a fact important to his

 5    conduct in order to escape the consequences of criminal law,

 6    and a person cannot look at all sorts of things that make it

 7    obvious to any reasonable person what is going on and then

 8    claim in court that because he deliberately avoided learning,

 9    explicitly what was obvious anyway, he did not actually know

10    the incriminating fact.

11          Accordingly, if you find that the defendant was aware

12    of a high probability of a fact, and that the defendant acted

13    with deliberate disregard of the facts, you may find that the

14    defendant knew that fact.  However, if you find the defendant

15    actually believed that the fact was true, then you may not find

16    that he knew that fact.  You must remember also that guilty

17    knowledge may not be established by demonstrating that a

18    defendant was merely negligent, or reckless or foolish or

19    mistaken.

20          Now, with respect to the conspiracy charges, that is,

21    Counts Two, Four, Five, Six, and Seven, conscious avoidance or

22    willful blindness cannot be used as a basis for finding that a

23    defendant knowingly joined a conspiracy.  If you think about it

24    for a minute, you will see why.  To join a conspiracy a

25    defendant needs to know that there is an agreement among one or

1    more persons to act together to achieve some unlawful purpose.

2    If the defendant doesn't know of the agreement, he can't join

3    it.  It's logically impossible.  But if you find that the

4    defendant entered into such an agreement, you are entitled to

5    consider conscious avoidance or willful blindness in

6    considering whether he knew the illegal object of the

7    conspiracy.  You may consider, in other words, whether the

8    defendant was aware of a high probability that the facts were

9    so, in other words, that there was an unlawful object and what

10   it was, but took deliberate and conscious action to avoid

11   confirming those facts.  In other words, if you find beyond a

12   reasonable doubt that the defendant deliberately avoided

13   learning or confirming the illegal object of the conspiracy,

14   such as by purposely closing his eyes to it or intentionally

15   failing to investigate it, then you may treat this deliberate

16   avoidance of learning a fact as the equivalent of knowledge.

17   If, however, the defendant actually believed he wasn't a party

18   to an illegal agreement, or if the defendant was merely

19   negligent or careless with regard to what knowledge he had,

20   then he lacked the knowledge necessary to become a member of

21   the conspiracy.

22            Two to go.

23            Now, in addition to all the elements I have described

24   to you, you must separately decide whether an act in

25   furtherance of each alleged crime occurred within the Southern

District of New York.  The Southern District of New York

includes the Manhattan, Bronx -- I am not insulting anybody who

may live there, but some other counties upstate, none of which

was mentioned in this trial.  This requirement is called venue

and that word refers in this context to the fact that the

government must prove that this case as to these various counts

was brought properly in this court rather than in a different

federal court.  You will determine the satisfaction of the

venue requirement separately for each count.

        For the wire fraud charges in Counts One and Two, it

is sufficient for the government to establish -- I'll talk

about the standard of proof in a minute -- venue if the

defendant caused any interstate or international wire, such as

an email, a phone call, television, Internet broadcast, or

financial transaction to be transmitted into or out of this

district.

        What did I forget to read?  Did I say Counts One and

Two.  Never mind.  I mean to say Counts One and Three.  Thank

you, Aditi.  Where would I be without them.  Let me tell you,

it wouldn't be pretty.

        The wire need not itself have been criminal, as long

as it was transmitted or caused to be transmitted as part of

the scheme.  The act need not have been taken by the defendant,

so long as the act was any part of any crime you otherwise find

he has committed.

1          With respect to all the conspiracy counts, Counts Two,

2    Four, Five, Six, and Seven, it is sufficient for the government

3    to prove that some act in furtherance of the conspiracy

4    occurred within the Southern District of New York.  In that

5    regard, the government does not have to prove that the crime

6    itself was committed in this district or that the defendant

7    himself was even present here.

8          Now, what's the government's burden on venue?  It is

9    not beyond a reasonable doubt.  It is to show that venue was

10   proper count by count.  Of course you don't have to consider

11   venue if you have otherwise concluded the defendant is not

12   guilty on a particular count.  Then it becomes irrelevant.  But

13   if you are considering a guilty verdict on any count, you also

14   have to find venue is satisfied as to that count.  And now as

15   to the government's burden to establish proper venue, it is

16   simply that the government must prove it by a preponderance of

17   the evidence; in other words, that it is more likely that the

18   requirements of venue in this district are satisfied as to that

19   count than not.

20         All of the elements of the offense that I talked about

21   before, everything other than venue, the standard is proof

22   beyond a reasonable doubt, as I told you.  Venue is different.

23         Regardless of what you think about the elements on any

24   given count as to which the government is required to prove

25   guilt beyond a reasonable doubt, if you conclude that the

government hasn't established proper venue by a preponderance

of the evidence, you must acquit on that count.

Lastly, you have heard various references, and you

will see in the indictment that goes into the jury room various

references to dates.  It does not matter if the evidence you

heard at trial indicates that a particular act occurred on a

different date, and the government is not -- it is not

essential that the government prove that the charged offenses

started on the dates that may be alleged, either in court or in

the indictment, or ended on any specific dates.  The law

requires only a substantial similarity between the dates in the

indictment, to the extent there are any dates in the

indictment, and the dates established in the evidence.

Now, those, folks, are my substantive legal

instructions.  The rest of this is all downhill.  Not that it

isn't important, but it is neither as long nor as technical.

I'll start out with the trial process.  As I told you

all about the time you were selected, you are the sole and

exclusive judges of the facts.  Please understand that I do not

now, and I never during this trial have meant to indicate any

opinion as to what the facts are or what your verdict should

be.  The rulings I have made during the trial, the questions I

asked, any comments I have made in managing the trial or in

attempting to clarify the evidence or get it into evidence more

efficiently and quickly are no indication of any views that I

might have as to what your decision ought to be or as to

whether or not the government has proved its case.

I remind you that it is your duty to accept my

instructions on the law and to apply them to the facts as you

determine those facts to be, regardless of whether or not you

agree with my instructions.  You are to show no prejudice

against an attorney or the attorney's client because the

attorney made objections to evidence, asked for sidebars, asked

me to rule on questions of law.  They were doing their jobs,

and I was doing mine, and that's all there is to it.

In addition, I want to reemphasize the fact that I may

have asked questions of witnesses and may have made comments to

counsel or to a witness or witnesses.  It was never intended to

suggest that I believed or disbelieved any witness or have any

view about how this case should be decided.  You are to

disregard entirely the fact that I have asked a few questions,

though of course you may consider the answers, and you are to

disregard entirely any comments that I may have made during the

course of the last several weeks.

You should find the facts in this case without

prejudice as to any party.  The case is brought, of course,

formally in the name of the United States.  That doesn't

entitle the government to any greater consideration than the

defendant.  By the same token, the government is entitled to no

less consideration.  We stand for equal justice before the law.

1      It applies to both sides in court.

2             Let's talk about the evidence a little bit.

3             The evidence is the sworn testimony of the witnesses,

4      the exhibits received in evidence, and the stipulations between

5      the lawyers.

6             The indictment is not evidence.  The questions,

7      arguments, or objections are not evidence.  You are not to

8      consider any statements that I told you to disregard or said

9      were stricken or struck or whatever formulation I may have

10     used.

11            It is for you alone to decide the weight, if any, to

12     be given all the testimony you have heard and the exhibits you

13     have seen.

14            I have already referred a bit to direct and

15     circumstantial evidence, or at least circumstantial evidence.

16     Direct evidence is really pretty obvious.  It is evidence that

17     you can observe with your own senses and evidence that a

18     witness came in and swore on the witness stand.  The witness

19     personally perceived, the witness heard it, saw it, touched it.

20     You got the idea.

21            And in a case I tried earlier this year, which

22     involved the question of the meaning of the word beer, I would

23     have said taste it, but this isn't that kind of case.

24            Circumstantial evidence.  Believe it or not, my idea

25     of a good time is a trial movie or a Law & Order episode or

whatever.  I have been watching trials my entire life, many of

them dramatic performances of Hollywood, and I have heard on

television and on streaming and everywhere else more nonsense

about circumstantial evidence than one could possibly imagine.

Let me tell you the simple answer to this.

Circumstantial evidence is simply evidence that tends to prove

a fact that is in dispute by proving some other fact and

logically reasoning from the one you can prove to the one

that's maybe not so certain.  That's what it's all about.  The

circumstantial evidence is the direct evidence and it refers to

the process of logic.  The law is that circumstantial evidence

is of no lesser value than direct evidence.  You are simply

required to base your verdict on your conscientious evaluation

of all the evidence and come to the conclusion that you think

is consistent with the facts.

I told you during the trial that whatever the lawyers

stipulated to you are bound by.  You must accept whatever they

stipulated to as being fact for purposes of this case.  We have

heard a fair amount of credibility in the last day and a half.

Now it's your job to decide who you believe and how important

each witness was, and you're the sole judges of credibility of

each witness and of the importance of each witness' testimony.

I urge you to use your common sense and apply all of the tests

that you would apply in everyday life with respect to important

matters in determining the truthfulness and accuracy of what

1    testimony you have heard.

2           Your decision whether or not to believe a witness may

3    depend on how the witness impressed you.  Was the witness

4    candid and frank and forthright?  Or did the witness seem as if

5    the witness was hiding something, being evasive or suspect in

6    some way?  How did the way the witness testified on direct

7    examination compare with how the witness testified on

8    cross-examination?  Was the witness consistent in the witness'

9    testimony, or did the witness contradict what he had said on

10   another occasion?  Did a witness appear to know what he or she

11   was talking about, and did the witness strike you as someone

12   who was trying to report his or her knowledge accurately?

13          If you find that a witness willfully lied to you about

14   any material matter, you may either disregard everything that

15   witness said or you may accept whatever part of it you think

16   deserves to be believed.  In other words, if you find that a

17   witness lied under oath about a material fact, you may treat it

18   like a slice of toast that has been partially burned.  You can

19   either throw the whole piece in the trash or you can scrape the

20   black parts off and eat the rest.

21          Ultimately, the determination of whether and to what

22   extent you accept the testimony of any witness is entirely up

23   to you.

24          In evaluating the credibility of the witnesses, you

25   should take into account any evidence that a witness may

benefit in some way from the outcome of the case.  Keep in

mind, though, that it doesn't automatically follow that

testimony given by an interested witness is to be disbelieved.

It is for you to decide, based on your own perceptions and your

common sense, the extent to which a witness' interest has

affected whatever the witness testified to, if it affected it

at all.

Now, you have heard the testimony of at least two, but

there may have been another, law enforcement officers.  The

fact that a witness may be, or may previously have been,

employed by the government in law enforcement does not mean

that the witness' testimony is deserving of any more

consideration or any less consideration, or in each case

weight, of an ordinary witness.  At the same time, in

considering the credibility of such a witness, you are entitled

to consider whether the testimony may have been colored by a

personal or a professional interest in the outcome of the case.

It is your decision, after reviewing all of the

evidence, whether to accept the testimony of law enforcement

witnesses and to give that testimony whatever weight you find

it deserves.

You have heard testimony from a number of government

witnesses that they actually were involved in planning and

carrying out some of the crimes charged in the indictment.

You should be aware that it is not unusual for the

government to rely on the testimony of witnesses who admit to
having participated in criminal activity.  The government has
to take its witnesses as it finds them, and frequently the
government must use such testimony in criminal prosecutions
because it otherwise would be difficult and sometimes
impossible to detect and prosecute wrongdoers.  Accordingly,
the law allows the use of cooperating witness testimony, and
you may consider the testimony of these witnesses in
determining whether the government has met its burden of
proving guilt beyond a reasonable doubt.

However, the testimony of an accomplice witness should
be scrutinized with special care and caution because such
witnesses may believe that it is in their interest to give
testimony favorable to the government.  The fact that a witness
is an accomplice can be considered by you as bearing on the
witness' credibility.  It doesn't follow, however, that simply
because a person has admitted to participating in one or more
crimes that he or she is incapable of giving a truthful version
of what happened.

Like the testimony of any other witness, accomplice
witness testimony should be given the weight you think it
deserves in light of the facts and circumstances before you,
taking into account the witness' demeanor, candor, the strength
and accuracy of the witness' recollection, their background,
and the extent to which their testimony is or is not

corroborated by other evidence.  You may consider whether an

accomplice witness, like any other witness in this case, has an

interest in the outcome and, if so, whether and to what extent

it may have affected the witness' testimony.

You certainly heard testimony, and probably have in

evidence before you, though I don't offhand remember, certain

agreements between the government and accomplice witnesses.  I

must caution you that it is of no concern to you why the

government made agreements with any particular witness.  Your

sole concern is whether a witness has given truthful and

accurate testimony here in this courtroom before you.

In evaluating the testimony of accomplice witnesses,

you should ask yourself whether these witnesses would benefit

more by lying or by telling the truth.  Was their testimony

made up in any way because they believed or hoped that it would

somehow result in favorable treatment if they testified

falsely, or did they think their interests would best be served

by testifying truthfully and accurately?  You believe if that a

witness was motivated by hopes of personal gain, was that the

motivation one that would cause him to lie, or was it one that

would cause the witness to tell the truth?  Did the motivation

color the witness' testimony?

If you find that the testimony was false, you should

reject it.  If, however, after carefully and cautiously

examining an accomplice witness' testimony and demeanor, and

1    you are satisfied that the witness told you the truth, you

2    should accept it as credible and act on it accordingly.

3         As with any witness, let me emphasize that this issue

4    of credibility doesn't have to be an all-or-nothing decision on

5    your part.  Even if you find that a witness testified falsely

6    in one part, you still may accept their testimony in other

7    parts, or you may disregard all of it.  That's up to you.  It

8    is not an all-or-nothing decision necessarily.  It may be, but

9    that's your job.

10        You have also heard testimony from, I believe, three

11   government witnesses who have pleaded guilty to charges arising

12   out of the same facts that are at issue in this case.  I

13   instruct you that you are to draw no conclusions or inferences

14   of any kind about the guilt of Mr. Bankman-Fried from the fact

15   that one or more prosecution witnesses pled guilty to similar

16   charges.  The decision of those witnesses to plead guilty were

17   personal decisions that those individuals made about their own

18   guilt, and it may not be used by you in any way as evidence

19   against or unfavorable to the defendant in this case.

20        You also heard testimony from one witness who entered

21   into a nonprosecution agreement with the government arising out

22   of at least some of the same facts that are at issue in this

23   case.  I instruct you that you are to draw no conclusions or

24   inferences of any kind about the guilt of the defendant here in

25   this case from the fact that a prosecution witness entered into

1   such an agreement.  Again, that was a personal decision and it

2   may not be used by you in any way as evidence against the

3   defendant.

4          The same is true with respect to the testimony of the

5   one witness who testified under a grant of immunity, formal

6   immunity issued by the Court.  The testimony of such a witness

7   cannot be used against the witness in a criminal case except

8   for prosecutions for perjury or giving false statements to the

9   Court while he was immunized.  I instruct you that the

10  government is entitled to call such a witness as a person who

11  has been granted immunity by an order of this Court.  You

12  should examine the testimony of such a witness to determine

13  whether or not it's colored in any way by the witness' own

14  interests.  If you believe the testimony, you may give it

15  whatever weight you think it deserves.

16         You heard a couple of expert witnesses in this case,

17  and I'm using a couple as an approximation.  I don't remember

18  the count.  Why are they here?  Ordinarily, witnesses are

19  restricted to testify about facts, facts that they have

20  personal knowledge of.

21             (Continued on next page)

22

23

24

25

1            THE COURT:  There are occasions when there are people,

2     however, who have technical or specialized knowledge in some

3     area that would assist you, the jurors, in deciding a disputed

4     fact.  And when that occurs, a witness who has those

5     qualifications can be called to testify about some evidence or

6     facts at issue in the form of opinions.

7            In weighing expert testimony, of course you may

8     consider the expert's qualifications, the opinions given, the

9     reasons the witness is here and why they're testifying, and

10    everything else I talked to you about relating to credibility.

11    You can give the expert testimony whatever weight you think it

12    deserves in light of the whole record in this case.  What you

13    should not do is accept a witness's testimony because the

14    witness in some sense is regarded as an expert.  It's not a

15    substitute for your own common sense, judgment, and reason.

16    The determination of the facts is up to you, not expert

17    witnesses.

18            Now you have heard some evidence that the defendant

19    was involved in conduct that is not charged in the indictment

20    in this case, and you probably all remember what that is.

21    You've heard some evidence about an alleged bribe involving one

22    or more Chinese government officials and alleged campaign

23    finance law issues.  Mr. Bankman-Fried is not on trial for any

24    such offenses here.  You can't consider the evidence of those

25    uncharged bad acts as a substitute for proof that he committed

1   the crimes of which he is accused in this case, nor may you

2   consider that evidence as proving that the defendant is a

3   person with a propensity to commit crimes or a man of bad

4   character.  The evidence was admitted for limited purposes, and

5   you may consider it only for those purposes.

6         You may consider the evidence you heard regarding the

7   alleged bribe to someone in China as bearing on the

8   relationship of trust and confidence between the defendant and

9   Ms. Ellison and as to the defendant's motives.  You may

10  consider the evidence you heard regarding the campaign finance

11  matters as relevant to the defendant's criminal intent and

12  knowledge and as to his relationship of mutual trust with

13  Mr. Singh.  You may also consider that evidence as direct

14  evidence of the charged wire fraud scheme on FTX customers, as

15  it pertains to allegations about how the defendant spent

16  alleged misappropriated customer funds, and as direct evidence

17  of the charged money laundering conspiracy, as it pertains to

18  the allegation that the defendant engaged in financial

19  transactions that it is alleged were designed to conceal the

20  nature, location, source, ownership, or control of criminal

21  proceeds.  And I remind you that this is not to be considered

22  as evidence of a criminal propensity and that the defendant is

23  not charged with crimes on the basis of those two categories of

24  evidence.

25        Certain evidence that came in concerned the acts and

1    statements of others because the acts were committed and the

2    statements were made by individuals whom the government claims

3    conspired with the defendant.

4         The reason for allowing that evidence has to do with

5    the nature of the crime of conspiracy.  A conspiracy is often

6    referred to as a partnership in crime.  Thus, as in other types

7    of partnerships, when people enter into a conspiracy to

8    accomplish an unlawful end, each and every member of the

9    conspiracy becomes an agent for the other conspirators in

10   carrying out the conspiracy.

11        In determining the factual issues before you, you may

12   consider against the defendant any acts or statements made by

13   any of the people that you find, under the standards I have

14   already described, to have been his co-conspirators, even

15   though such acts or statements were not made in his presence,

16   or were made without his knowledge.

17        You have heard some evidence during the trial that at

18   least one witness——and possibly more than one, although I don't

19   remember, it's your memory that counts, folks——prior to the

20   trial, made statements that were the same as, or similar to,

21   the testimony the witness gave in court.  As I instructed you

22   then, I believe, and in any case instruct you now, you may

23   consider evidence of such statements——that is, pretrial

24   statements consistent with what was said at trial——in

25   determining the facts of the case.  Evidence like that may help

1    you decide whether you believe the witness's testimony in

2    court.  If the witness made statements before trial, and before

3    the witness was aware of anything that would have given him or

4    her a motive to give a false account, in other words, that were

5    the same as or similar to what the witness said at trial, that

6    may be reason for you to believe his or her trial testimony on

7    the same subject.

8            You have certainly heard evidence during the trial

9    that some witnesses have discussed the facts of the case and

10   their testimony with lawyers before they appeared in court.

11           You're entitled to consider that fact in evaluating

12   credibility, but I do tell you that there is nothing unusual or

13   improper about a witness meeting with lawyers before testifying

14   so that the witness can be aware of the subjects he or she will

15   be questioned about, focus on those subjects, and have the

16   opportunity to review relevant evidence before being questioned

17   about them in court.  Such consultation helps conserve your

18   time and, frankly, the Court's time.  In fact, it would be

19   unusual for a lawyer to call a witness without such

20   consultation.

21           But again, the weight you give to the fact or nature

22   of a witness's preparation for testimony and what conclusions

23   or inferences you draw from preparation like that are

24   completely up to you.

25           Now I'm about to make a vast understatement.

1          There is evidence before you in the form of charts and

2     summaries.  These exhibits purport to summarize some of the

3     underlying evidence that was used to prepare them, and they

4     were shown to you to make the other evidence more meaningful

5     and to aid you in considering the evidence.  They are no better

6     than the documents they're based on, and they're not themselves

7     independent evidence.  You are therefore to give no greater

8     weight to the charts and summaries than you would give to the

9     evidence on which they are based.

10         It is for you to decide whether the charts and

11     summaries correctly present the information contained in the

12     exhibits on which they were based.  You are entitled to

13     consider them if they help you in analyzing and understanding

14     the evidence.

15         I have instructed you previously during the trial

16     about the audio and video recordings and, in those cases where

17     there are transcripts, that it's the recordings that are the

18     ultimate determinative evidence, not the transcripts.  I'm

19     going to spare you repeating it.

20         There are some documents and exhibits received in

21     evidence that are marked redacted and probably a few that

22     simply have big black blotches on them in some of the original

23     content.  You are only to concern yourself with the parts that

24     have not been redacted.  You are not to speculate about what's

25     under the black markings and what was redacted.  There were

1    sufficient reasons for doing all of that, to the extent it was

2    done, and you are not to concern yourself with what those

3    reasons might have been.  You are to decide the case on the

4    basis of what's actually in front of you.

5           Now you have certainly heard a lot of people's names

6    during the course of this trial who were not called as

7    witnesses.  I instruct you that both sides had an equal

8    opportunity or lack of opportunity to call as a witness any of

9    them.  Therefore, you should not draw any inferences or reach

10   any conclusions as to what those people might have testified to

11   had they been called.  Their absence should not affect your

12   judgment at all.

13          But you should remember that the law does not impose

14   on the defendant in a criminal case the burden of calling any

15   witnesses or producing any evidence.  The burden of proof is

16   always with the government.

17          Now you have heard recordings or seen statements by

18   the defendant, which are in evidence, in which he claimed that

19   his conduct was consistent with innocence and not guilt.  The

20   government claims that these statements, or at least some of

21   them, in which he exonerated or exculpated himself are false.

22          If you find that the defendant gave one or more false

23   statements in order to divert suspicion from himself, you may,

24   but you are not required to, infer that he believed he was

25   guilty.  You may not, however, infer on the basis of that

1   evidence alone that the defendant in fact is guilty of any of

2   the crimes with which he is charged.

3           Whether or not the evidence as to the defendant's

4   statements shows that he believed he was guilty and the

5   significance, if any, to be attached to any such evidence, are

6   matters for you to decide.

7           Now let's talk about auto-deletion for a minute.

8           And we truly are in the home stretch.

9           If you find that the defendant deleted or caused the

10  deletion of communications, you may, but you need not, infer

11  that he believed that he was guilty.  You may not, however,

12  infer on the basis of this alone that the defendant is in fact

13  guilty of any of the crimes with which he is charged.

14          Whether or not the evidence as to a defendant's

15  deletion of evidence, or his having caused evidence to be

16  deleted, shows that the defendant believed he was guilty, and

17  the significance, if any, to be attached to any such deletions,

18  are for you to decide.

19          You have heard some testimony about evidence that was

20  seized pursuant to one or more search warrants signed by a

21  judge, from email accounts, Twitter accounts, electronic

22  devices, and conceivably other things, but I don't remember.

23  Evidence obtained from such searches were properly admitted in

24  this case and are properly considered by you.  Indeed, searches

25  of online accounts and electronic devices are entirely

appropriate law enforcement actions.  Whether you approve or

disapprove of how that evidence was obtained should not enter

into your deliberations because I now instruct you that the

government's use of that evidence is entirely lawful.

You must give that evidence, regardless of personal

opinions, full consideration along with all other evidence in

deciding whether the government has proved the defendant's

guilt beyond a reasonable doubt.

Now in a criminal case, of course, a defendant never

has a duty to testify or to come forward with any evidence.

The reason, as I've told you, is that he is presumed innocent

and the government at all times has the burden of proof beyond

a reasonable doubt.  Except of course on venue, where it's by a

preponderance of the evidence.  But if the defendant takes the

stand and testifies on his own behalf, he has the right to do

that.

In this case, Mr. Bankman-Fried decided to testify,

like any other witness, and he was subject to

cross-examination.  You should examine and evaluate the

testimony of the defendant just as you would the testimony of

any other defendant.

Some of the people who may have been involved in the

events leading to this trial are not on trial here.  You may

draw no inference, favorable or unfavorable, toward the

government or the defendant from the fact that any person other

1    than defendant is not on trial here.  Nor may you speculate as

2    to the reasons why that is so.  Those matters are wholly

3    outside your concern, and you may not consider them in reaching

4    your verdict.  Your task is limited to considering the charges

5    in the indictment and the defendant before you.

6            Now John Hammel points out to me that I made a mistake

7    a moment ago.  I mistakenly said you should examine and

8    evaluate the testimony of the defendant just as you would the

9    testimony of any other defendant.  If in fact I said that, it

10   was wrong.  And I will read it to you the way I typed it.  The

11   hour draws late.  You should examine and evaluate the testimony

12   of the defendant just as you would the testimony of any other

13   witness.

14           The question of possible punishment of the defendant

15   is of no concern to the jury, and it should not enter into or

16   influence your deliberations.  The duty of sentencing in the

17   event of a conviction rests entirely with the Court.  Under

18   your oath, you cannot allow consideration of punishment that

19   may be imposed in the event of conviction to influence your

20   judgment.

21           Last words.  Your deliberations.  You're going to

22   retire to decide this case in just a couple of minutes.  You

23   must consult with each other and deliberate with a view to

24   reaching an agreement.  Each of you must decide the case for

25   yourself, but you should do so only after considering the case

1   with your fellow jurors.  You should not hesitate to change an

2   opinion if you're convinced it's erroneous.

3        Your verdict, whether it's guilty or not guilty, must

4   be unanimous, but you are not bound to surrender your honest

5   convictions concerning the weight or the effect of the evidence

6   merely for the purpose of returning a verdict or solely because

7   of the views of other jurors.  Discuss and weigh your

8   respective opinions dispassionately, without regard to

9   sympathy, without regard to prejudice or favor for either

10  party, and come to the conclusion which in your good conscience

11  appears from the evidence to be in accordance with the truth.

12       I need to say a word about your notes.  I remind you

13  that any notes you may have taken are for your personal use

14  only.  Each of you may consult your own notes during

15  deliberations, but any notes you may have taken are not to be

16  regarded during deliberations as a substitute for the

17  collective memory of all of you.  Your notes should be used as

18  memory aids but shouldn't be given precedence over your

19  independent recollection of the evidence.  If you did not take

20  notes, you should rely on your own independent recollection of

21  the evidence, and you should not be influenced by the notes of

22  others.  The notes are entitled to no greater weight than the

23  recollection or impression of each juror as to what the

24  evidence showed.

25       You are all, as I told you right at the beginning,

1    going to get a typewritten copy of my instructions in the jury

2    room.  Two things about that.  The copies you get will have a

3    handful of handwritten interlineations, which are my chicken

4    scratchings making little tiny corrections that I made as I

5    went along.  And the little tiny corrections are part of the

6    instructions.  They are binding on you.

7           You are also going to find scattered among the

8    instructions legal citations.  They are probably going to be

9    incomprehensible because—and here I'm being facetious again,

10   but—they're in lawyer code.  They indicate which books, on

11   what volume and what page things come from.  You are not going

12   to understand them, I think, and even if you do, disregard them

13   entirely.  They are my audit trail and the lawyers' audit trail

14   about what we are relying on in formulating the instructions

15   I've given you.

16          You are not to discuss the case unless all 12 jurors

17   are there.  When there are less than 12 of you, you are not a

18   jury.  You are 10 or 11 or six what I imagine by now are pretty

19   good friends; at least I hope so.

20          When you retire, you will select one of your number as

21   the foreperson.  That person will preside over the

22   deliberations and speak for you here in open court.  The

23   foreperson will send out any notes and, when you've reached a

24   verdict, the foreperson will notify the court officer that you

25   have a verdict, and I'll talk more about how.

1            And now is the best time.  You have the verdict form

2    already.  If you need more, you'll send out a note and ask for

3    more.  But they're all the same.  When you've reached a

4    verdict, the foreperson should record the verdict on a copy of

5    the verdict form, and that's of course when you have a

6    unanimous verdict.  Please don't add any commentary or any

7    suggestions or thoughts to the verdict form.  They're basically

8    yes/no questions.  I can tell you from prior experience, no

9    good will come of it.  Maybe no bad, but no good will come of

10   it, and it will take time.

11           When you have a verdict form filled out, each of you

12   should sign it.  The foreperson will send in a note with the

13   court officer in a sealed envelope that says, "We have a

14   verdict."  Don't give the verdict form to the court officer.

15   Put it in an envelope.  The foreperson will bring it into the

16   courtroom.  Clutch it tightly to your breast.  And I will ask

17   for it at the appropriate moment.  I stress that you each

18   should be in agreement when it's announced in court.  Once it's

19   announced by the foreperson and officially recorded, it

20   ordinarily cannot be revoked.

21           If during your deliberations you want me to discuss

22   any of my instructions further or you have any questions about

23   my instructions, you should formulate a note.  The foreperson

24   should put the note in a sealed envelope, give it to the court

25   officer, tell the court officer there's a note.  Every page and

1      line of these instructions is numbered.  If it's a question

2      about something in the instructions, give the page numbers and

3      lines so that I know for sure what you're talking about.  The

4      procedure we go through when we get a note is I give the note

5      to the lawyers, the lawyers each decide what they think it

6      means and what they think the answer should be.  If everybody's

7      in agreement, I'll bring you into the courtroom and answer the

8      question.  If there's disagreement, I'll decide the answer and

9      bring you back and give you the answer.  And that process is

10     facilitated and speeded up the faster we can understand the

11     note.  So that's the reason for being specific.

12             We will respond to any requests as fast as we can.

13             Now if you need any testimony read back, the procedure

14     is exactly the same.  Send in a note, sealed envelope, and

15     exactly what you want to hear.  With the witnesses, if you can

16     remember whether it's direct or cross, what the subject is,

17     just be as specific as you possibly can.  We go through the

18     same procedure.  We try to understand what you're really asking

19     for, and then we have to search through the transcript, which

20     is now over 3,000 pages——there are some automated ways of

21     searching, but they're not perfect——and get you exactly what

22     you want, and we will do that.  But first of all, be sure you

23     need it, and second of all, be as clear as you can be.

24             I remind you that you took an oath to render judgment

25     impartially and fairly, without prejudice or sympathy and

1    without fear, based solely on the evidence in the case and the

2    applicable law.  It would be improper for you to consider, in

3    reaching your decision as to whether or not the government

4    sustained its burden of proof, any personal feelings you may

5    have about the race, religion, national origin, sex, or age of

6    the defendant.

7         If you let prejudice or sympathy enter into your

8    thinking, it could interfere with clarity of judgment, and

9    there's a risk that you would not arrive at a just verdict.

10        Both parties are entitled to a fair trial.  You must

11   make a fair and impartial decision to come to a just verdict.

12   If you have a reasonable doubt as to the defendant's guilt on

13   one or more counts, you should not hesitate to find him not

14   guilty.  On the other hand, if you find the government has met

15   its burden of proving the defendant's guilt beyond a reasonable

16   doubt on one or more counts, you should not hesitate, because

17   of sympathy or anything else, to find him guilty.

18        Finally, on a related point that I suspect crossed

19   somebody's mind at some point, in the federal system, we have

20   crimes only that are defined by statutes—laws passed by

21   Congress and signed by the president.  I have instructed you as

22   to the law under those statutes, and it's your job to apply

23   those instructions to the facts that you find.  In the event

24   that you conscientiously conclude that the government has not

25   proved every required element necessary to convict, but you

1   necessarily think that something was morally wrong or unfair,

2   you may not allow your feelings to substitute for your

3   conscientious determination as to the facts or following the

4   law that I have given you.  You are obliged to return a verdict

5   consistent with the law and the facts as you find them,

6   regardless of personal feelings.

7          Now a couple of other——oh, yes.  If you need any

8   exhibits, you will tell us.

9          Now you're going to get a laptop, and I think it's

10  going to have either all of one party's exhibits or all of the

11  exhibits.  And use it to your heart's content.  But if there's

12  something in evidence that you need that you don't have in

13  there and that we haven't sent in to you and you want it, send

14  us a note, we'll get it for you.

15         Thank you, Aditi.

16         Now let me come to our stalwart alternates.

17         You are not going to deliberate, at least now.  But I

18  am not discharging you.  You remain alternates in this case,

19  though I'm going to send you off home or wherever you go next.

20  You may not discuss the case or read about the case or any of

21  the other things about the case that I told you at the

22  beginning not to do, and the reason for that is that if, god

23  forbid, something happens to a juror, you may be re-called to

24  serve as a juror in this case, in which case deliberations will

25  begin anew and you will be one of the 12 jurors just as if you

1    were one of the first 12 now.  It is very important that you

2    adhere to that instruction.  Now believe me when I say that

3    everybody appreciates your time here, your close attention

4    here.  It was essential—particularly in this era, when all

5    sorts of things happen, not least of which a pandemic that we

6    hope is nearly all gone—that we have alternates, and we thank

7    you.  So you now will go with the court officer into the

8    jury—sorry.

9            MS. SASSOON:  Your Honor, there are a couple things to

10   raise at sidebar with regards to the instructions before the

11   alternates are discharged.

12           THE COURT:  All right.  Just give us a moment.

13           (At the sidebar)

14           THE COURT:  Quickly.

15           MS. SASSOON:  Page 43.  I'm going in reverse order.

16   We didn't catch this typo before, but on lines 18-19, on

17   page 43, it says, "However, if you find that the defendant

18   actually believed the fact was true, then you may not find he

19   knew the facts," and it should say "believed that the fact was

20   not true."  And I think it's important just to get the context

21   of the instruction correctly.

22           THE COURT:  I'm just showing you that I marked that on

23   here.  Do you agree with that?

24           MR. COHEN:  Yes.

25           THE COURT:  Next.

1          MS. SASSOON:  The other one I have is on page 37, with

2     regard to concealment money laundering.  The second element.

3     So we're at lines 16-21.

4          THE COURT:  Just give me a minute to wrestle with the

5     staples.

6          Go ahead.

7          MS. SASSOON:  So this is not reflected in the

8     language.  I think your Honor went slightly off script and said

9     something along the lines of, "If you find he's guilty of wire

10    fraud, this element is satisfied."  And I believe it's that

11    that meets the definition of "specified unlawful activity," but

12    your Honor I don't think read lines 20-21.

13         THE COURT:  I think you're right.  So I'll read that

14    whole paragraph to the jury then.  Yes?

15         MR. REHN:  One more.

16         MR. COHEN:  Your Honor?

17         MR. REHN:  Sorry.  We have one more from the

18    government first.

19         On page 63, you did not read the sentence telling them

20    that they should not indicate in a note to the Court how they

21    were divided.

22         THE COURT:  Yes, okay.

23         MR. REHN:  Which is on lines 18-20.

24         MR. COHEN:  And your Honor, on page 35, lines 5-6, the

25    Court read "must prove beyond a reasonable doubt."

```
 1              THE COURT:  Yes, I did.
 2              MR. COHEN:  The text——the wording has to be added to
 3    the text.
 4              THE COURT:  Well, I gave it orally so I'm just going
 5    to interlineate.
 6              MR. COHEN:  Okay.  And then several times——and I think
 7    this can probably be just addressed by one more repetition, but
 8    several times, starting with page 19, lines 24-26, the Court
 9    read——
10              THE COURT:  You're going too fast for me.  Let me get
11    to page 19.
12              MR. COHEN:  Sorry, your Honor.
13              THE COURT:  Yes.  What lines?
14              MR. COHEN:  24-26.  And the way it came out in the
15    reading was the Court left out the phrase "the government must
16    prove beyond a reasonable doubt."
17              THE COURT:  That entire phrase?
18              MR. COHEN:  Yes, just that.  The rest of it was read
19    except for the clause "the government must prove"——the "beyond
20    a reasonable doubt" part.
21              THE COURT:  So you're telling me that I charged that,
22    and I'm quoting now, charged in Counts Two and Four each of the
23    following elements?
24              MR. COHEN:  Yes, yes.
25              MR. REHN:  I only had it as omitted "beyond a
```

1    reasonable doubt."

2              MR. COHEN:  That's what I said, yeah.

3              MR. REHN:  I think you read "the government must

4    prove."

5              MR. COHEN:  No.  I had it the same as Mr. Rehn.  And I

6    think that happened again.

7              THE COURT:  Yes.  Look, I understand, and you may well

8    be right that I omitted it, but I think I probably said a

9    hundred times in this that they have to prove every element

10   beyond a reasonable doubt.

11             MR. COHEN:  Right, and where I was getting to was we

12   would ask that you just repeat that one, because it happened a

13   few other times.  Rather than——

14             THE COURT:  It's quite possible.  All right.  So I'll

15   start with that one.

16             MR. COHEN:  Okay.

17             THE COURT:  And then somebody's going to prompt me

18   page by page.  And I'll start with you if there's another page

19   that you made a point about——

20             MR. COHEN:  That's it, your Honor.

21             THE COURT:  ——and then go to the government.

22             MR. COHEN:  Your Honor, before we go back, a couple

23   other things.  Obviously for record purposes, we continue any

24   objections we made at the charge conference and before about

25   the charges, the charges we had asked for.  And also, we would

 1    ask that the Court——

 2             THE COURT:  I didn't hear your whole statement.

 3             MR. COHEN:  I'm sorry.  For record purposes——

 4             THE COURT:  Obviously you need not renew objections

 5    you made at the charge conference.

 6             MR. COHEN:  Okay.  And lastly, your Honor, we would

 7    ask that you instruct the jury that while they certainly can

 8    stay to 8:15 tonight, they're not required to, and if they feel

 9    it would be more productive for them to pick up on Monday, that

10    they may do so.

11             THE COURT:  Yeah, I'll do that.

12             Okay.

13             MR. EVERDELL:  Your Honor, one last thing.  This is

14    the indictment that the government prepared to pass back to the

15    jury.

16             THE COURT:  I'll deal with that when the jury is out.

17             MR. EVERDELL:  Okay.

18             (In open court)

19             THE COURT:  Okay.  During the course of my reading of

20    the typewritten instructions, counsel have brought to my

21    attention that in one place or another, I left out a phrase or

22    a word, and we're going to go through about a half a dozen of

23    these corrections now.

24             First of all, before we even do that, I remind you

25    that as I said many, many times during the course of the

1    instructions, it is the government's burden to prove each of

2    the essential elements of the offense beyond a reasonable

3    doubt, and if anywhere in the typescript or in my oral

4    rendition of the typescript I left out any of those words, you

5    are to understand that they belong there, "beyond a reasonable

6    doubt."

7              Okay.  Now——

8              MS. SASSOON:  Page 37.

9              THE COURT:  Okay.  See, I have very able prompters.

10             Oh, you're now going in ascending order rather than

11   descending order?

12             MS. SASSOON:  I started with the earliest, but I can——

13             THE COURT:  Listen, I'll go either way.  I'm very

14   versatile on that, backwards and forwards.

15             Okay.  In the course of charging you on the second

16   element of concealment money laundering, I am told that I

17   orally may have gone off script, so I'm going to read you that

18   paragraph again.  But it is accurate in the typescript.  And

19   that paragraph reads:

20             The second element of concealment money laundering is

21   that the financial transactions would have involved the

22   proceeds of specified unlawful activity.  Here, the specified

23   unlawful activity is the wire fraud offense charged in Count

24   One, and I instruct you as a matter of law that the wire fraud

25   charged in Count One of the indictment, if proven beyond a

reasonable doubt, meets the definition of "specified unlawful

activity."  You must determine whether the funds involved in

the financial transactions would have been proceeds of that

unlawful activity.

Next.

MS. SASSOON:  Page 43, lines 18-19.  But perhaps some

context is necessary.

THE COURT:  Don't worry.  I think I can handle it.

I'll read you this whole paragraph.  We were talking

here about conscious avoidance and willful blindness, and in

summing up part of that, I left a "not" out somewhere.  So I'm

now going to read it to you accurately, and this will be

reflected in an interlineation in my handwriting, which I

promise to make arguably readable.

Accordingly, if you find that the defendant was aware

of a high probability of a fact and that defendant acted with

deliberate disregard of the facts, you may find that the

defendant knew that fact.  However, if you find that the

defendant actually believed that the fact was not true, then

you may not find that he knew that fact.

Next.

MS. SASSOON:  Page 63, lines 18-20.

THE COURT:  Yes.  I neglected to tell you that if you

communicate with the Court before you reach a verdict, either

by a note or in the courtroom, you are not ever to indicate how

1  you are divided on the defendant's guilt or lack of guilt,

2  unless I specifically ask you for it.

3              And?

4              MS. SASSOON:  Nothing further.

5              MR. COHEN:  You've already addressed our point, your

6  Honor.  Thank you.

7              THE COURT:  There was a place on page 28 where I was

8  talking about securities fraud and I mistakenly said

9  "fraudulent commerce" instead of "fraudulent conduct."  But

10 we'll fix that one too.  Thank you, Aditi.

11             Okay.  Now back to the alternates.

12             You folks are temporarily excused, but you are subject

13 to re-call.  I imagine Andy will tell you how to find out when

14 the case is finally over and you're done.  You can always call

15 Andy.  So if the five of you would kindly go with Andy, collect

16 your stuff, leave your notes with Andy, and we'll proceed from

17 there.

18             (Alternates excused)

19             THE COURT:  Please be seated.

20             Now, members of the jury, it is ten after 3.  Let's

21 talk about the rest of the day.

22             First of all, although I'm willing to stay till 8:15

23 if you want to stay till 8:15—car service, cafeteria,

24 dinner—but you're not obliged to.  And it would be extremely

25 helpful if you could send us a note in the next half hour

1     about——I have to be careful how I phrase this to get it exactly

2     right——should we order supper, should we order car service.

3     Two different questions.  You could do one without the other.

4     And it's a question of what you want.  And if you want to order

5     both against the possibility that you'll use it, that's okay

6     too.  The government can afford it.  I don't mean to say the

7     government's money should be wasted.  Obviously not.  But we

8     have to give advance notice to the vendors in order to make

9     sure it's available should you need it, and that's a legitimate

10    purpose.

11           So as soon as Andy gets back, we will send you out to

12    deliberate.

13           First thing he's going to do is swear the officer, of

14    which these two were going to remind me.

15           Oh, yes.  I'm reminded that I committed to the court

16    staff that we would not keep you past 8.  Somebody has a train

17    to catch.

18           Swear the Marshal, please.

19           THE DEPUTY CLERK:  Okay.  Would the Marshal please

20    come forward and raise his right hand.

21           (Marshal sworn)

22           THE DEPUTY CLERK:  Thank you.

23           THE COURT:  Ladies and gentlemen, thank you for your

24    attention.  You will get the charge in writing as soon as we

25    can Xerox enough copies.  And we'll wrestle with the exhibit

1    issues.

2              Thank you.  Please deliberate on your verdict.

3              (At 3:13 p.m., the jury retired to deliberate)

4              THE COURT:  Please be seated.

5              Andy, how are we going to handle the exhibits?

6              THE DEPUTY CLERK:  The parties have their exhibits

7    that were admitted that I have checked their admission and

8    where Aditi and I have marked so they have hard copies of

9    nonmedia exhibits.  They have those originals ready to go in to

10   the jury room, and they also have supplied us with a clean

11   laptop that each side has a thumb drive with the admitted

12   exhibits on them, including the media exhibits and the

13   spreadsheets, if I'm correct.  Right?

14             THE COURT:  Okay.  Now first of all, I assume they are

15   secure.  Nobody can delete one or whatever by accident; is that

16   right?

17             THE DEPUTY CLERK:  That is beyond my knowledge.

18             THE COURT:  Counsel?  Yes?

19             MR. ROOS:  Yes.

20             THE COURT:  Read only, read only.  That's the phrase

21   I'm looking for.

22             Okay.  Now is that procedure satisfactory to both

23   sides?

24             MR. ROOS:  Yes.

25             MR. EVERDELL:  Yes, your Honor.

 1              THE COURT:  Okay.  And Andy will be the one to deliver

 2    the exhibits, without any further proceedings in open court,

 3    yes?

 4              MR. ROOS:  That's fine.

 5              MR. EVERDELL:  Yes, your Honor.

 6              THE COURT:  Okay.  I guess we will reconvene very

 7    briefly around a quarter to 4, ten to 4, whenever we get notice

 8    about what they're going to do, and we'll take it from there.

 9              Anything else we need to do before we break?

10              MR. EVERDELL:  Your Honor, do you want to talk about

11    the indictment to go back to the jury?

12              THE COURT:  Oh, yes, yes.  Let's just make a record of

13    that.

14              I've been given a proposed redacted indictment, which

15    is undoubtedly somewhere in the cloud of paper on my desk.

16    Let's mark this Court Exhibit W.  And we'll send that in to the

17    jury room.  And that's satisfactory to both sides, I

18    understand.

19              MR. RAYMOND:  Yes, your Honor, for the government.

20              MR. EVERDELL:  Yes, your Honor.  Just to be clear,

21    it's not redacted.  It's had the portions removed.  So to be

22    clear about that.

23              THE COURT:  Okay with me.

24              MR. EVERDELL:  Okay.  Thank you, your Honor.  It's

25    satisfactory.

1            THE COURT:  If it's okay with both of you, it's okay

2    with me.

3            Okay.  Anything else?

4            Okay.  We'll designate a dinner hour if they decide to

5    stay for dinner, but otherwise, everybody is to be——I mean,

6    counsel on both sides who are capable of acting, authorized to

7    act, ought to be in the courtroom or in the immediate environs.

8    Andy has to know where to get you at any time.

9            And that's that.  We'll await further communications.

10            ALL COUNSEL:  Thank you.

11            THE DEPUTY CLERK:  All rise.

12            (Recess pending verdict, 3:17 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

 1             THE COURT:  I just want to put on the record that the

 2    charge as it was typed and distributed to you previously has

 3    now got handwritten delineations which has been provided to

 4    both sides, and we will mark it as Court Exhibit whatever Andy

 5    tells me.

 6             THE DEPUTY CLERK:  Z.

 7             THE COURT:  Z.

 8             The proposal is to have Andy deliver 12 copies to the

 9    jury in that form?

10             Any objection.

11             MS. SASSOON:  Looks good, your Honor.  No objection.

12             MR. COHEN:  No objection.

13             THE COURT:  We will do that.

14             In case the word has not filtered to you, the jury has

15    asked for dinner and transportation.

16             Another note.

17             Two more notes.

18             Note 1 says:  "We want cars."  That will be Court

19    Exhibit AA.

20             Court Exhibit BB says:  "The defense thumb drive

21    appears to only have one audio file of portions of the

22    all-hands meeting.  There seem to be missing government

23    exhibits, including 558, on the thumb drive as well."

24             MS. SASSOON:  As I understood it, an exhibit like 558

25    wouldn't be on the thumb drive because it's a document.

1          MR. EVERDELL:  Your Honor, the defense drive just has

2     the one portion that the defense submitted from the all-hands

3     meeting, that one audio portion.  So the thumb drive and the

4     hard copy binders have the rest of the defense exhibits that

5     were admitted.

6          THE COURT:  It sounds to me like this is a very simple

7     message.  The very simple message is clear.  I would normally

8     bring the jury in and tell them, but it seems may be

9     sufficiently simple so everyone can agree that Andy will simply

10    tell them.  If anybody wants to have the jury brought in and

11    told on the record, I will do that.

12         MR. EVERDELL:  Fine to have Andy do it, your Honor.

13         MS. SASSOON:  No need to bring them in.

14         THE COURT:  Andy, the message is:  558 is a document

15    and only a portion of 558 is on the thumb drive.  It's the

16    portion the defense put in, and they should look at 558 on the

17    government thumb drive, right?

18         MS. SASSOON:  No.

19         THE COURT:  Then we are going to bring them in.

20         MS. SASSOON:  Two different things, your Honor.

21         558 is the terms of service, so it's a document that

22    should be in the government exhibit binder.  And what is on the

23    defense drive, they said it's just one file, that is the

24    entirety of what should be on that drive.  The defense put in

25    one audio exhibit.

```
 1              THE COURT:  Here is what I missed.  I assumed,

 2    incorrectly apparently, that the government exhibits went in on

 3    a thumb drive.  Apparently, they went in in hard copy.  Is that

 4    right?

 5              MR. REHN:  I think the message should say:  The

 6    exhibits are in hard copy, with the exception of multimedia and

 7    spreadsheets, which are on the thumb drives for both government

 8    and defense.

 9              THE COURT:  Andy, let's have you repeat it back for

10    the court reporter so we are sure you have it, unlike I,

11    straight.

12              THE DEPUTY CLERK:  I am going to print it off the

13    transcript myself, so I make no error.

14              MR. REHN:  There is one thumb drive containing

15    government exhibits and one thumb drive containing defense

16    exhibits.

17              THE DEPUTY CLERK:  I was going to copy and print that

18    the exhibits are in hard copy with the exception of multimedia

19    and spreadsheets, which are on the thumb drives for both

20    government and defense.

21              THE COURT:  Satisfactory.

22              Let us mark that exhibit Court Exhibit BB, and Andy

23    will take it in writing marked Court Exhibit BB.

24              Now.  Inasmuch as they have ordered supper, when do

25    you want your dinner hour, folks?
```

1           MS. SASSOON:  If the jury has a preference if they

2    want to relay to Andy, we will defer to them.

3           THE COURT:  Let just make a command decision here.

4           THE DEPUTY CLERK:  Judge, if I may I told the

5    cafeteria manager to expect to supply dinner about 6:00.

6           THE COURT:  We will trust the cafeteria manager to

7    supply dinner at 6, so you guys are free from 6 to 7.

8           Thank you.

9           (Recess pending verdict)

10          THE COURT:  I just want to make a record of the

11   various notes, and I'm going to take them out of order.

12          About an hour ago the jury sent in a note, now Court

13   Exhibit EE:  "Can we get the transcripts of the Matt Huang and

14   Robert Boroujerdi testimonies."

15          I gather you have agreed on the excerpts to go in, and

16   they are marked Court Exhibits FF and GG.

17          Yes?

18          MR. EVERDELL:  Yes, your Honor.

19          MS. SASSOON:  Yes, your Honor.

20          THE COURT:  Take them on in.

21          Just to make a record, the first note was:  "May we

22   have some highlighter pens and some Post-its, please," Court

23   Exhibit CC.  Those were provided.

24          And Court Exhibit DD:  "Can we get a copy of the

25   actual indictment."  And you were all informed of these and the

1   redacted indictment, which has been identified previously on

2   the record, was sent in.

3          Everyone agree to all that?

4          MS. SASSOON:  Yes.

5          MR. EVERDELL:  Yes, your Honor.

6          THE COURT:  We will recess pending further

7   communication from the jury.

8          (Recess pending verdict)

9          THE COURT:  We have a note from the jury saying they

10  have reached a verdict.  It's marked Court Exhibit HH.  It is

11  signed by juror number 4 as foreperson.

12         Before you bring in the jury, we will have decorum in

13  the courtroom when this is announced.  No demonstrations, no

14  shouting, no running for the door.  Everyone is to remain

15  seated until I discharge the jury.

16         Bring in the jury.

17         (Jury present)

18         THE COURT:  Madam Foreperson, I understand the jury

19  has reached a verdict, is that right?

20         THE FOREPERSON:  Yes.

21         THE COURT:  Would you please give the verdict to Andy.

22  Thank you.

23         The original verdict form is temporarily in your

24  custody.  The clerk will now publish the verdict.

25         THE DEPUTY CLERK:  Would the foreperson please rise.

1          THE COURT:  Mr. Bankman-Fried, please rise and face

2    the jury box.

3          THE DEPUTY CLERK:  As to Count One, wire fraud (FTX

4    customers) how do you find the defendant, guilty or not guilty?

5          THE FOREPERSON:  Guilty.

6          THE DEPUTY CLERK:  As to Count Two, conspiracy to

7    commit wire fraud (FTX customers), guilty or not guilty?

8          THE FOREPERSON:  Guilty.

9          THE DEPUTY CLERK:  As to Count Three, wire fraud

10   (Lenders to Alameda Research), guilty or not guilty?

11         THE FOREPERSON:  Guilty.

12         THE DEPUTY CLERK:  As to Count Four, conspiracy to

13   commit wire fraud (Lenders to Alameda Research), guilty or not

14   guilty.

15         THE FOREPERSON:  Guilty.

16         THE DEPUTY CLERK:  As to Count Five, conspiracy to

17   commit securities fraud, guilty or not guilty?

18         THE FOREPERSON:  Guilty.

19         THE DEPUTY CLERK:  As to Count Six, conspiracy to

20   commit commodities fraud, guilty or not guilty?

21         THE FOREPERSON:  Guilty.

22         THE DEPUTY CLERK:  As to Count Seven, conspiracy to

23   commit money laundering, guilty or not guilty?

24         THE FOREPERSON:  Guilty.

25         THE DEPUTY CLERK:  Thank you.  Please be seated.

```
 1            THE COURT:  There is another question, Andy.

 2            THE DEPUTY CLERK:  My apologies.

 3            Is your unanimous verdict based on concealment money

 4  laundering, wire fraud proceeds money laundering, or both?

 5            THE FOREPERSON:  Both.

 6            THE COURT:  Thank you.

 7            You may be seated, Mr. Bankman-Fried.

 8            Andy you can recapture the original verdict form.

 9            MR. COHEN:  Your Honor, we would ask that the jurors

10  be polled.

11            THE COURT:  Of course.

12            The clerk will poll the jury.

13            THE DEPUTY CLERK:  Juror number 1, is that your

14  verdict?

15            JUROR:  Yes.

16            THE DEPUTY CLERK:  Juror number 2, is that your

17  verdict?

18            JUROR:  Yes.

19            THE DEPUTY CLERK:  Juror number 3, is that your

20  verdict?

21            JUROR:  Yes.

22            THE DEPUTY CLERK:  Juror number 4, is that your

23  verdict?

24            JUROR:  Yes.

25            THE DEPUTY CLERK:  Juror number 5, is that your
```

1  verdict?

2          JUROR:  Yes.

3          THE DEPUTY CLERK:  Juror number 6, is that your

4  verdict?

5          JUROR:  Yes.

6          THE DEPUTY CLERK:  Juror number 7, is that your

7  verdict?

8          JUROR:  Yes.

9          THE DEPUTY CLERK:  Juror number 8, is that your

10 verdict?

11         JUROR:  Yes.

12         THE DEPUTY CLERK:  Juror number 9, is that your

13 verdict?

14         JUROR:  Yes.

15         THE DEPUTY CLERK:  Juror number 10, is that your

16 verdict?

17         JUROR:  Yes.

18         THE DEPUTY CLERK:  Juror number 11, is that your

19 verdict?

20         JUROR:  Yes.

21         THE DEPUTY CLERK:  Juror number 12, is that your

22 verdict?

23         JUROR:  Yes.

24         THE DEPUTY CLERK:  Verdict unanimous, your Honor.

25         THE COURT:  Mr. Cohen, Ms. Sassoon, is there any

1   reason why the verdict should not be filed and recorded?

2          MS. SASSOON:  No, your Honor.

3          MR. COHEN:  No, your Honor.

4          THE COURT:  The verdict will be filed and recorded.

5          Members of the jury, you have completed your task.  I

6   have a couple of words to say to you.

7          First of all, there was a very distinguished judge of

8   this Court who has now long left us, probably generally

9   regarded as the finest trial judge of the 20th century in this

10  country, Ed Weinfeld.  And Judge Weinfeld's belief, and I and

11  most of the rest of us follow pretty much everything he ever

12  said, don't follow him in one thing, and it is that it was his

13  belief that serving on a jury is a privilege and a duty of

14  citizenship and it doesn't deserve thanks.  It is a duty, it is

15  a privilege of citizenship, it does deserve thanks, and you

16  deserve thanks, each and every one of you.

17         It was obvious from the first day of this case that

18  you paid attention, however complicated it got from time to

19  time.  You learned a whole new industry in the course of it.

20  You took your job just as seriously as you could have taken it,

21  and I thank you.  I know counsel on both sides thank you.

22         You did what we hope all citizens do when called for

23  jury service, and of course I make no comment on the verdict.

24  That was your call.  It is not mine.  I express no opinion on

25  it, and I never have, and I don't plan ever to do so.  But you

1    have my thanks and those of the others I have mentioned for

2    your service in this case.

3         Now, in just a minute I am going to discharge you and

4    you will go about your business.  You will be free to either

5    talk about this case privately or otherwise, or not to talk

6    about this case, privately or otherwise.  That's your call too.

7    Should you elect to say anything to anybody about it, I would

8    simply urge on all of you some sensitivity to the concerns and

9    feelings that other members of the jury may have about privacy

10   and about what you say.  It's the golden rule:  Do unto others

11   as you would have them do unto you.

12        If anybody involved in the case, the parties or the

13   people who work for the parties, lawyers or whatever, the

14   question of whether you talk to them or not is up to you should

15   they contact you.  But if you elect to say no or I've had

16   enough, I don't want to talk anymore and any of the lawyers or

17   people who are working with the lawyers don't easily take no

18   for an answer, you let Andy know, and I will take appropriate

19   steps to see that you are not bothered if I lawfully can do so.

20        With that, you are discharged.  Andy will escort you

21   into the jury room, and you can collect your stuff and head off

22   with thanks.

23        You will leave your notes or whatever in there, and he

24   will take care of them.

25        Counsel will remain and everyone else will remain for

1    a moment too.

2          THE DEPUTY CLERK:  Would the jury please come this

3    way.

4          (Jury discharged)

5          THE COURT:  Now, we have scheduled a second trial of

6    counts that were severed before this case was tried.  I believe

7    it's set for March 11.

8          I would ask the government -- I will tell the

9    government to let me know by February 1 if that's going to

10   proceed.  Obviously, it may be that you will come close to

11   February 1 and there will be a good reason why you can't say.

12   If that's so, you will let me know, but I want an update on

13   that come February 1.

14         Now, what is the government's position with respect to

15   setting a sentencing date on the present matter?

16         MR. ROOS:  Your Honor, you are correct that obviously

17   the second trial may have an implication on that.  That said,

18   we think it makes sense to set a sentencing date to get the PSR

19   process started.  We, of course, can always move that.  But if

20   we wait, we can't.

21         THE COURT:  I am just going to wait until Andy gets

22   back in a second because he is the only one who knows my

23   calendar as between the two of us, or indeed I can try to fly

24   blind on my own.  Let's see if I can get my calendar.

25         We will set sentencing for March 28 at 9:30 in the

 1   morning.

 2          Any defense submissions will be due February 16 and

 3   government submissions will be due March 8.

 4          Is that enough time, Mr. Cohen?

 5          MR. COHEN:  I was wondering, your Honor, if we might

 6   have a bit more time on this, maybe a couple more weeks.

 7          THE COURT:  February 27; government, March 15.

 8          Is that enough time for the government?

 9          MR. ROOS:  Yes, your Honor.

10          THE COURT:  The schedule is:  Defendant submissions by

11   February 27, government submissions by March 15, sentencing

12   March 28.

13          Is there anything else we need to accomplish tonight?

14          MR. COHEN:  A schedule for posttrial motions, your

15   Honor.

16          THE COURT:  Sure.  What do you have in mind?

17          MR. COHEN:  I think under the rule we get two weeks,

18   which would take us to the 16th.  We would ask if we could

19   submit on the 20th.

20          THE COURT:  That's November 20.

21          MR. COHEN:  Yes.

22          THE COURT:  Sure.  That's fine.

23          Government.

24          MR. ROOS:  In light of the holiday, can we have three

25   weeks from that date?

1             THE COURT:  December 11.

2             Reply papers by December 18.

3             I'll set an argument date later.

4             Anything else this evening?

5             MR. ROOS:  No, your Honor.

6             MR. COHEN:  No, your Honor.

7             THE COURT:  I just want to express appreciation to

8    counsel on both sides for a very well-prepared case and a great

9    deal of cooperation between attorneys on both sides and a good

10   job all around.

11            I think that's all I really want to say right now.

12   Thank you very much.

13            (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25