USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

       -against-

SAMUEL BANKMAN-FRIED,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

S5 22-cr-0673 (LAK)

## MEMORANDUM OPINION

Appearances:

Danielle R. Sassoon
Nicolas Roos
Danielle Marie Kudla
Samuel Raymond
Thane Rehn
Assistant United States Attorneys
Jil Simon
Trial Attorney
DAMIAN WILLIAMS
UNITED STATES ATTORNEY

Mark Stewart Cohen
Christian R. Everdell
S. Gale Dick
Sri K. Kuehnlenz
Alexandra Theobald
David Lisner
Drew Dean
Sharon L. Barbour
COHEN & GRESSER LLP

Marc L. Mukasey
Torrey K. Young
MUKASEY YOUNG LLP
*Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

Defendant Samuel Bankman-Fried was indicted on seven counts alleging fraud, conspiracy, and money laundering arising from the collapse of cryptocurrency exchange FTX and cryptocurrency trading firm Alameda Research. The government moved *in limine* to preclude the defendant from arguing or adducing evidence regarding the involvement of attorneys in certain events at FTX and Alameda. After initially deferring any ruling on the motion,[1] the Court granted the government's motion to the extent of ordering the defendant to provide prior notice to the Court and government before offering any evidence relating to the involvement of attorneys.[2]

During the trial, the defense gave notice, albeit in vague terms, that it intended to elicit such testimony from the defendant.[3] In order to determine the substance and admissibility of the proposed testimony, the Court took an offer of proof outside the presence of the jury. Upon its conclusion, it held that the defendant could testify to the involvement of lawyers in the creation and implementation of document retention policies at FTX but excluded testimony about the involvement of attorneys in the other activities described in the defense notice.[4] This opinion sets

---

[1]     Dkt 289 at 13.

[2]     Dkt 305 at 9–10 [available at *United States v. Bankman-Fried*, No. S6 22-CR-0673 (LAK), 2023 WL 6392718 (S.D.N.Y. Oct. 1, 2023)].

[3]     Dkt 338 at 1–4.

[4]     Trial Tr. 2291–93.

out the context and bases for that ruling.

*Facts*

This case stems from the defendant's involvement in cryptocurrency exchange FTX and cryptocurrency trading firm Alameda Research. In addition to founding and holding substantial ownership stakes in both companies, the defendant served as chief executive officer of FTX from its founding in 2019 until its bankruptcy in 2022 and as chief executive officer of Alameda from its founding in 2017 until he stepped down in 2021.[5] In November 2022, FTX declared bankruptcy.[6] Soon thereafter, the defendant was indicted on two substantive counts alleging wire fraud and five counts alleging conspiracies to commit wire fraud, securities fraud, commodities fraud, and money laundering.[7] After a five-week trial, the defendant was convicted on all seven counts.

*Pretrial Motions*

The government moved *in limine* to preclude the defendant "from suggesting [at trial] that the presence of attorneys at his company or the involvement of attorneys in certain

---

[5] Trial Tr. 2304, 2313–14, 2365, 2531, 2564, 2570.

[6] Trial Tr. 2594–95.

[7] Dkt 202. The Court previously severed several other counts for which it set trial in March 2024. Dkt 165. The government decided not to pursue those counts. Dkt 388.

decision-making demonstrates that [defendant] lacked criminal intent."[8]   Such a "defense"

sometimes is called, imprecisely, an "advice-of-counsel defense."[9]   The defendant opposed the

government's motion.[10]   Although he disclaimed a "formal advice-of-counsel defense," the

defendant argued that his awareness that attorneys "were involved in decisions related to" charged

conduct was "directly relevant to his good faith and lack of criminal intent."[11]

Following extensive briefing on the government's motion, the Court concluded that

it lacked sufficiently specific information about the evidence the defense sought to introduce to

reach a definitive ruling.[12]   Accordingly, it granted the government's motion only to the extent that

it "preclude[d] the defendant from referring in his opening statement to the presence or involvement

of attorneys," and it required the defendant to provide the Court and government with notice before

---

[8]

Dkt 204 at 44.

[9]

Dkt 204 at 44.

As this Court noted in its pretrial opinion on this issue, "the characterization of such evidence as a 'defense' frequently is not accurate" in the respect that it is not an affirmative defense, which the defendant must prove, but is, rather, relevant to "whether the government has proved the required element of the offense that the defendant had an 'unlawful intent.'" Dkt 305 at 2–3 (quoting *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017)).

[10]

Dkts 222, 246 at 29–31.

[11]

Dkt 246 at 29.

[12]

Dkt 305 at 9.

"offering any evidence, argument, or testimony on those subjects."[13]

*Proffered Testimony*

During trial, the defendant notified the Court that Mr. Bankman-Fried planned to testify "regarding [his] knowledge of the involvement of counsel" in four areas:

1)      Implementing document retention policies at FTX and Alameda, including enabling auto-deletion for certain communications applications.

2)      Forming Alameda subsidiary North Dimension, opening its bank account at Silvergate Bank, and executing a payment processing agreement between FTX and Alameda.

3)      Structuring and documenting loans from Alameda to the defendant and other FTX executives.

4)      Drafting the FTX terms of service between FTX and its customers.[14]

While the defendant thus identified the general subjects on which he proposed to testify, he did not specify the substance of the proposed testimony. In view of the generality of the defendant's notice, the Court took an offer of proof in question and answer form from the defendant

---

[13]

Dkt 305 at 9–10.

[14]

Dkt 338 at 2–4.

outside the presence of the jury pursuant to Federal Rules of Evidence 103 and 104.[15]  On direct

examination of Mr. Bankman-Fried, the defense proffered evidence of the presence of attorneys at

various times and the effect of the attorneys' presence on the defendant's state of mind.  The

government also cross-examined Mr. Bankman-Fried.[16]

      After the offer of proof, the Court ruled that the defendant could testify regarding the

role of FTX attorneys in implementing document retention policies for the company, including auto-

deletion policies for messaging applications.[17]  It explained that this testimony would not pose a

substantial risk of confusion or unfair prejudice.[18]  The Court, however, excluded the other areas of

testimony regarding the presence of attorneys, including attorneys' role in forming Alameda

subsidiary North Dimension[19] and structuring and drafting intercompany agreements, loan

agreements, and the terms of service.[20]  The Court found that testimony on these topics would be

minimally probative but would be likely to be substantially "confusing and highly prejudicial"

---

[15]

      Trial Tr. 2072.

[16]

      Defendant made no timely objection to the government's cross-examination of defendant.
Trial Tr. 2288.

[17]

      Trial Tr. 2291–92.

[18]

      Trial Tr. 2291–92.

[19]

      North Dimension was used for payment processing, a conduit through which FTX
customers could deposit funds into their FTX accounts.  Trial Tr. 2233.

[20]

      Trial Tr. 2292–93.

because it "falsely impl[ied] . . . that the lawyers, with full knowledge of the facts . . . blessed what

the defendant is alleged to have done."[21]  The Court more fully explains its rationale here.

## *Discussion*

Ordinarily, a so-called advice-of-counsel "defense" requires a defendant to offer

proof that he or she "[1] made [a] complete disclosure to counsel [concerning the matter at issue],

[2] sought advice as to the legality of his conduct, [3] received advice that his conduct was legal,

and [4] relied on that advice in good faith."[22]  These requirements are inapplicable in this case,

however, because the defendant disclaimed any formal advice-of-counsel defense.[23]  Instead, he

sought to admit evidence of attorneys' presence for and participation in certain events to support his

good-faith defense.[24]  The Court therefore considered the defendant's proffered testimony under

primarily Federal Rules of Evidence 401 and 403, which call for the admission of *relevant* evidence

unless the court concludes that "its probative value is substantially outweighed by," *inter alia*,

---

[21]

Trial Tr. 2292.

[22]

*Markowski v. S.E.C.*, 34 F.3d 99, 104–05 (2d Cir. 1994) (citing *S.E.C. v. Savoy Industries, Inc.*, 665 F.2d 1310, 1314 n.8 (D.C. Cir. 1981)).

[23]

Trial Tr. 2273.

[24]

The Court observes, without further comment, that it is not entirely clear how, if at all, the relevance of evidence introduced through an informal advice-of-counsel defense varies from that of a formal advice-of-counsel defense.

"unfair prejudice, confusing the issues, [or] misleading the jury."[25] This approach is consistent with that employed by other courts in this district in similar circumstances.[26] Thus, the issue before the Court was not whether the defendant adduced evidence satisfying the elements of a formal advice-of-counsel defense, but rather whether the testimony he sought to give would have satisfied Rules 401 and 403.

Although evidence of the presence of attorneys can be probative of a defendant's state of mind,[27] it on occasion can pose a substantial risk of misleading the jury. Specifically, such evidence risks suggesting to the jury that, because lawyers were involved to some degree with one aspect of events, the defendant was entitled to conclude that he was acting within the law with respect to some other aspect of events. As Judge Forrest explained in *S.E.C. v. Tourre*, a "jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of *all* aspects of a transaction."[28]  Such a misunderstanding would unfairly prejudice the government because it would "give the defendant

---

[25]

Fed. R. Evid. 403.

[26]

*See, e.g.*, *S.E.C. v. Lek Sec. Corp.*, 17 Civ. 1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019); *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).

[27]

*See Lek Sec. Corp.*, 2019 WL 5703944, at *3 ("[E]vidence that a defendant relied on advice from counsel is relevant to the factfinder's assessment of whether the defendant acted with fraudulent intent.").

[28]

950 F. Supp. 2d at 684 (emphasis added); *accord Lek Sec. Corp.*, 2019 WL 5703944, at *4.

all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense."[29] These concerns are more likely to warrant exclusion where, as in this case, the proffered evidence is only collaterally related to the charged conduct and is thus minimally probative. Ultimately, however, a Rule 403 analysis requires a detailed assessment of the proffered testimony. Accordingly, the Court considered each area of testimony proffered by Mr. Bankman-Fried in detail.

During his testimony outside of the presence of the jury, the defendant testified first that company counsel was involved in drafting and implementing FTX's document retention policies.[30] He testified also that he had discussed with counsel that some messaging applications used by FTX leaders and employees were configured automatically to delete messages after a predetermined period.[31] The Court admitted the testimony, explaining that it was unlikely to confuse the jury.[32] While a jury might have surmised from this testimony that lawyers sanctioned the data retention policies, such an impression would not have prejudiced the government unfairly because the testimony did not tend to suggest that the defendant believed that other, charged conduct had

---

[29] *Tourre*, 950 F. Supp. 2d at 684.

[30] Trial Tr. 2174, 2176–78.

[31] Trial Tr. 2181–82, 2212–13.

[32] Trial Tr. 2291–92.

been lawful.

The defendant testified next that counsel was involved in forming North Dimension, a subsidiary of Alameda, opening a bank account for the new entity, drafting a payment processing agreement between Alameda and FTX, and related matters.[33] The Court excluded this testimony. As it explained, the proffered testimony at best would have been only minimally probative because it pertained to lawyers' involvement in activities for which the defendant was not charged. Indeed, on cross-examination during the offer of proof, Mr. Bankman-Fried testified that he could not recall discussing with counsel the use or purpose of the North Dimension bank account[34] or the "topic of Alameda spending FTX customer deposits that came into Alameda bank accounts."[35] He admitted, moreover, that counsel did not tell him "that Alameda could spend FTX customer deposits."[36] In other words, the defendant testified that attorneys were not involved in the decision to divert and spend FTX customer deposits, allegations at the core of the government's case. Consequently, the involvement of attorneys in matters only tangentially related to charged conduct would have been irrelevant to whether the defendant acted with or without fraudulent intent. The testimony, on the

[33] Trial Tr. 2183–88.

[34] Trial Tr. 2232.

[35] Trial Tr. 2242.

[36] Trial Tr. 2245–46.

other hand, would have threatened to confuse the jury by suggesting, incorrectly, that the involvement of attorneys in those collateral activities — creating North Dimension and the payment processing agreement — would have provided a reasonable basis for defendant believing that diverting customer deposits for personal and business expenses was permissible.

For the same reasons, the Court excluded the defendant's testimony that counsel structured and documented loans from Alameda to the defendant and other FTX executives. The government did not allege that the loans, in and of themselves, or their structuring or documentation were unlawful. Rather, the criminal charges centered on the source of the funds. The defendant was accused of misappropriating customer funds by causing FTX customers to deposit money into Alameda-controlled accounts and by enabling Alameda to take FTX customer funds from FTX-controlled accounts.

The defendant's testimony would have been irrelevant to those allegations. As he admitted on cross-examination, he never discussed with counsel the fact "that some of the funds [for the loans] were coming from FTX customer money."[37] That the defendant took "comfort from the fact that the lawyers had structured the loans" would have been irrelevant to his state of mind in using FTX customer funds, conduct of which the lawyers were unaware.[38] Thus, while the probative

---

[37] Trial Tr. 2263; *see* Trial Tr. 2265.

[38] Trial Tr. 2192.

value of this proffered testimony was no more than *de minimis*, the risk of confusing the jury and unfairly prejudicing the government was manifest. The jury might have concluded that the involvement of attorneys in structuring and documenting the loans reasonably could have assured the defendant that his misappropriation of customer funds was permissible. It would have been highly misleading to permit the defendant to imply that his attorneys had been aware that the Alameda loans were funded by FTX customer funds and that his own actions in using that money were benign.

Last, the Court excluded Mr. Bankman-Fried's testimony that attorneys were involved in drafting FTX's terms of service and that he understood the terms' provisions for margins and futures trading to entitle Alameda to borrow from FTX.[39] The defense theory of relevance — that attorneys' involvement in drafting the terms of service reassured Mr. Bankman-Fried that his conduct was proper — was fatally undermined by the defendant's own admission that he did not discuss the charged conduct (*i.e.*, permitting Alameda to take vast sums of FTX customer deposits) with counsel. On cross-examination during the offer of proof, the defendant could not recall discussing with counsel any specific provisions of the terms of service, Alameda's line of credit, or the fact that Alameda could maintain a net negative balance with FTX.[40] As Mr. Bankman-Fried

---

[39]
Trial Tr. 2193–96.

[40]
Trial Tr. 2247–49.

could not have taken comfort in conversations he never had, the Court excluded testimony regarding attorneys' role in drafting the terms of service. Any probative value would have been outweighed significantly by the risk, detailed above, of confusing the jury and unfairly prejudicing the government.

## Conclusion

For the foregoing reasons, as well as those stated on the record on October 27, 2023, the Court granted the defendant's motion insofar as it concerned the participation of attorneys in drafting and implementing data retention policies, and it denied the defendant's motion in all other respects.[41]

SO ORDERED.

Dated:      February 7, 2024

_____
Lewis A. Kaplan
United States District Judge

---

[41] To the extent the defendant moved to introduce any other testimony concerning the presence, involvement, or advice of attorneys that is not specifically addressed herein, it was denied for substantially the reasons set forth in this opinion.