UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
    :
UNITED STATES OF AMERICA
    :   CONSENT INTERLOCUTORY
 - v. -        SALE ORDER
    :
RYAN SALAME,    S7 22 Cr. 673 (LAK)
    :
    Defendant.
    :
------------------------------------- X

WHEREAS, on or about September 7, 2023, RYAN SALAME (the "Defendant"), was charged in a two-count Superseding Information, S7 22 Cr. 673 (LAK) (the "Information"), with conspiracy to make unlawful political contributions and defraud the Federal Election Commission, in violation of Title 18, United States Code, Section 371 (Count One); and conspiracy to operate an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 371 (Count Two);

WHEREAS, on or about September 7, 2023, the Defendant pled guilty to both Counts of the Information;

WHEREAS, pursuant to an agreement with the United States, the Defendant admitted the forfeiture allegation with respect to Count Two of the Information and agreed to forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), a sum of money equal to $1,555,186,143 in United States currency, representing property involved in the offense charged in Count Two of the Information;

WHEREAS, on or about September 7, 2023, a Preliminary Order of Forfeiture as to Substitute Assets/Money Judgment (the "Preliminary Order of Forfeiture") was entered against

1

the Defendant, which (i) ordered the entry of a forfeiture money judgment in the amount of $1,555,186,143 (the "Money Judgment"); and (ii) forfeited all of the Defendant's right, title and interest in, *inter alia*, the following property as substitute assets:

   a. The real property commonly described as 12 Housatonic Street, Lenox, MA 01240, described as follows:

   > Beginning at a point in the southerly line of Housatonic Street at a northwesterly corner of land formerly of William C. Schermerhorn, now of Lenox Library Association, thence along a westerly line of said Library land south 28° 40' west seventy two feet and nine inches to an angle in said line marked by an octagonal shaped monument buried in the ground, thence along said Library land north 61° 20' west one hundred feet to land of Frank C. Hagyard, thence north 28° 40 east seventy two feet and nine inches along said Hagyard land to said southerly line of said Housatonic Street, thence along said line of said street south 61° 20' east one hundred feet to the place of beginning ("Real Property-1");

   b. The real property commonly described as 8 Tucker Street, Lenox, MA 01240, described as follows:

   > A parcel of land as shown on survey plan captioned "MARY F. MISCH, Property located at 8 & 12 Tucker Street, Lenox, MA, drawn by Hill Engineers Architects and Planners, Scale 1" = 20', dated 11/19/2021" recorded in the Berkshire Middle District Registry of Deeds on December 6, 2021 in Plat S-83, Being the same premises conveyed to the Grantor hereby by deed of Mary F. Misch dated December 2, 2021, and recorded December 7, 2021, in the Berkshire Middle District Registry of Deeds in Book 7077, Page 274 ("Real Property-2", and together with Real Property 1, the "Real Properties");

   c. Ownership and equity interest in East Rood Farm Corporation, a Massachusetts corporation, with Massachusetts Secretary of State ID number 001490439 (the "Corporation," and collectively with the Real Properties and the Corporation, the "Subject Properties");

WHEREAS, the Real Properties are titled in the name of North Sandy Brook, LLC ("NSB"), a limited liability company formed under the laws of the state of Massachusetts;

WHEREAS, the Defendant is the sole member of NSB;

WHEREAS, NSB has leased the bottom floor of Real Property-1 to the Corporation and has leased four residential units on the upper floor(s) of Real Property-1 to other individuals;

WHEREAS, the Defendant is sole owner and shareholder of the Corporation;

WHEREAS, no other parties are known to have an interest in the Subject Properties;

WHEREAS, the Government, the Defendant, NSB, and the Corporation seek the interlocutory sale of the Subject Properties to preserve their values pending a final order of forfeiture with the net proceeds of the sale to be held as the substitute *res* pending further order of this Court;

WHEREAS, pursuant to 21 U.S.C. § 853(g), following entry of an order of forfeiture, upon application of the United States, the Court is authorized to "take any . . . action to protect the interest of the United States in the property ordered forfeited"; and

WHEREAS, the proceeds of the Subject Properties will be distributed in accordance with the terms outlined in the Preliminary Order of Forfeiture, and as set forth below;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED THAT, by and between the United States, United States of America, by its attorney Damian Williams, United States Attorneys, Samuel Raymond, Danielle Kudla, Thane Rehn, Nicolas Roos, and Danielle Sassoon of counsel, and the Defendant, and his counsel, Jason Linder, Esq., and Gina Parlovecchio, Esq., that:

1.  The Government is authorized to sell the Subject Properties in a commercially feasible manner using the same policies, procedures, and methods it uses to sell forfeited real and personal property.

2.  In its sole discretion, the United States Marshals Service ("USMS") may elect to

sell the Corporation and Real Property-1 together or apart. If sold together, the Government may designate, in its sole discretion, what portion of the net sales price shall be apportioned to each asset.

3. The current management of the restaurant occupying Real Property-1 will continue to operate the business associated with the Corporation prior to sale, but shall deliver any revenue not needed for operating expenses, as determined in the sole and exclusive discretion of the USMS, to the USMS for inclusion in the Substitute *Res*-3, as defined below.

4. The USMS shall have the sole discretion to cease restaurant operations if the business is unable to support itself.

5. The Government and/or its appointed agents, may review the operations, records, and bank statements of the Corporation prior to the sale and may, without further order of this court, seize the Corporation's bank accounts and transfer the deposits to the Seized Asset Deposit Fund in its sole discretion and shall do so upon the closing of the sale of the Corporation, after ensuring that all legitimate wages and salaries of Corporation employees (not including Defendant and his family) are first paid.

6. To facilitate the review of records authorized above, Defendant, the Corporation, and/or NSB shall deliver to the Government all records requested in a timely manner.

7. The Government and/or its appointed agents shall have the authority to review and authorize all expenditures from the Corporation's bank accounts and no funds shall be withdrawn except upon the approval of the Government and/or its appointed agents.

8. All rents, past, present, and future, payable by the Corporation and the residential tenants in Real Property-1 shall be paid solely to the USMS for inclusion in the Substitute *Res*-1

as defined below. All past rents in the custody of Defendant or those associated with him, including his family, and in particular his mother, shall be immediately delivered to the USMS.

9.  The Government may, in its sole discretion, reject any offer to purchase the Subject Properties where it determines that the offer is being made by, or on behalf of, a person involved in the criminal activity alleged as the basis for forfeiture or anyone acting in concert with them or on the basis of price offered.

10. Upon the sale of the Subject Properties, the net proceeds from the sale of the asset will include all moneys realized from the sale of the Subject Properties, except for the following expenses which are to be deducted from the gross proceeds of sale in order:

   a. Any costs of seizure, storage, maintenance, sale, sales commission, marketing, and other costs and expenses incurred by the United States Marshals Service in the seizure, custody, storage, or sale of the Subject Properties;
   b. Any tax against or secured by the asset;
   c. Any other real estate, property, transfer, association, or other tax, which is due and owing at the time of the sale;
   d. Escrow fees;
   e. Title fees;
   f. County transfer fees;
   g. Any outstanding mortgages;
   h. Any liens; and
   i. Insurance costs.

collectively, the "Net Proceeds" for the sale of each asset.

11. The Net Proceeds of sale, as defined above, will serve as a substitute *res* for the asset ("Substitute *Res*-1" is the substitute *res* for the proceeds of the sale of Real Property-1, "Substitute *Res*-2" is the substitute *res* for the proceeds of the sale of Real Property-2, and "Substitute *Res*-3" is the substitute *res* for the proceeds of the sale of the Corporation) in the above-captioned case, with all claims and defenses applicable to each asset, including any other action

that may be brought by the Government for forfeiture of the Subject Properties or claims by third parties, to apply instead to, and be payable, if at all, solely from, the relevant Subject Property's Substitute *Res*.

12. Consequently, the buyer of the Subject Properties will take title free and clear of all encumbrances except for easements of record.

13. The United States Marshals Service shall hold each Substitute *Res* in the Seized Asset Deposit Fund pending further order of the Court.

14. In furtherance of the interlocutory sale the parties agree to execute promptly any documents which may be required to complete the interlocutory sale of the Subject Properties.

15. This Consent Interlocutory Sale Order may be executed in counterparts, each of which shall be deemed an original, and all of which, when taken together, shall be deemed the complete Consent Interlocutory Sale Order. Signature pages may be transmitted by fax or electronically in Portable Document Format (PDF), and such signatures shall be deemed to be valid originals.

16. This Consent Interlocutory Sale Order constitutes the complete agreement between the parties hereto and may not be amended except by written consent thereof.

17. The parties hereby waive all rights to appeal or to otherwise challenge or contest the validity of this Consent Interlocutory Sale Order.

18. Each party agrees to bear its costs and attorneys' fees.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

19. The Court shall retain jurisdiction in this matter to take additional action and enter further orders as necessary to implement and enforce this order authorizing the interlocutory sale of the Subject Properties.

STIPULATED TO:

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: *Samuel Raymond*
Danielle Kudla
Samuel Raymond
Thane Rehn
Nicolas Roos
Danielle Sassoon
Assistant United States Attorneys
(212) 637-2304 / 6519 / 2354 / 2421 / 1115

February 14, 2024

DATE

RYAN SALAME

By: *Ryan Salame*
RYAN SALAME
Defendant

1/22/2024

DATE

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

NORTH SANDY BROOK, LLC

By: _____  1/22/24
RYAN SALAME                          DATE
Sole Member

EAST ROOD FARM CORPORATION

By: _____  1/22/24
RYAN SALAME                          DATE
Owner

By: _____  2/6/24
Jason Linder, Esq.                   DATE
Gina Parlovecchio, Esq.
Counsel for Defendant,
the NSB, and the Corporation

SO ORDERED:

_____       2/15/24
HONORABLE LEWIS A. KAPLAN            DATE
UNITED STATES DISTRICT JUDGE

8