# EXHIBIT I

Marc Mukasey                                    Richard M. Simins
Torrey Young
**MUKASEY YOUNG LLP**                           **MONTGOMERY MCCRACKEN**
                                                **WALKER & RHOADS LLP**
570 Lexington Avenue, Suite 3500                437 Madison Avenue, 24th Floor
New York, New York 10022                        New York, New York 10022
Telephone: (212) 466-6400                       Telephone: 215-772-7303


*Counsel to Samuel Bankman-Fried*


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 1:22-cr-00673-LAK |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| v. | ) | |
| SAMUEL BANKMAN-FRIED | ) | |
| a/k/a "SBF" | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF JOEL E. COHEN IN SUPPORT**
**OF THE VALUATION OF CERTAIN ASSETS OF FTX**

---

I, Joel E. Cohen, hereby declare under penalty of perjury that the following is true and
correct to the best of my knowledge, information, and belief.

1. I am a Managing Director in the Disputes, Claims, & Investigations group and the New York
   Regional Office Leader of Stout Risius Ross, LLC ("Stout"). Stout was engaged in January
   2024 by Mukasey Young LLP, counsel for Samuel Bankman-Fried ("Mr. Bankman-Fried"),
   as a financial and valuation expert to determine the "fair value" of FTX Trading Ltd.'s ("FTX")
   investment in Anthropic, PBC ("Anthropic"). The determination of the "fair value" of FTX's

investment in Anthropic will be summarized in this Declaration and supported in greater detail in **Exhibit A** to this Declaration (referred to herein as the "Valuation Report").

2. Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my oversight of the Stout team as the financial and valuation experts to Mr. Bankman-Fried, (b) information learned from review of relevant documents, (c) information I received from Mr. Bankman-Fried's advisors and counsel[1], or (d) my past experience as a financial advisor and consulting expert.  If called upon to testify, I could and would competently testify to the facts set forth herein on that basis.

3. Stout is being compensated for my testimony at $800 per hour and Stout's compensation is not dependent on the outcome of the sentencing hearing for Mr. Bankman-Fried.

## QUALIFICATIONS

4. I am a Managing Director in the Disputes, Claims, & Investigations group and New York Regional Office Leader of Stout.  Stout is a global investment bank and advisory firm with extensive experience delivering financial and valuation analysis services to a broad range of companies, including financially distressed companies.  Stout and its senior professionals have extensive experience and expertise in (a) valuation, (b) the analysis, operation restructuring, and liquidation of business, (c) forensic and fraud investigation, (d) asset tracing, and (e) investment banking.

5. I have over twenty years of experience in the dispute, forensic, and insolvency practice areas, primarily focused on the financial services, asset management and digital asset industries.  My experience includes a number of significant cross-border insolvency and litigation matters,

---

[1] I have been engaged by Mr. Bankman-Fried, through Mukasey Young LLP and have additionally received information and had conversations with Mr. Richard Simins of Montgomery McCracken Walker & Rhoads LLP.

where I have served as financial advisor and consulting/testifying expert to fiduciaries, offshore liquidators, bankruptcy, and litigation trustees.  I have assisted these clients in a variety of litigation consulting services, including asset tracing, valuation, fraud, Ponzi schemes, industry custom and practice for investment managers, and forensic analysis.  I have also led several internal investigations within the context of family office, investment advisors, and various corporate structures.  Most recently, I have provided testimony in the confirmation hearing for the Celsius Networks LLC, et al confirmation hearing from bankruptcy.[2]  Additionally, I have worked on several high-profile digital asset related litigations including consulting for the trustee for the fraudulent conveyance litigation in the largest Chapter 11 bankruptcy cryptocurrency of the time and a breach of contract matter involving a large quantum of digital asset currency for an entity domiciled in Luxembourg.

6.  Before joining Stout, I was a Managing Director of Murray Analytics, Inc., a professional services firm specializing in restructuring financial advisory, litigation support, and complex valuation matters.  Prior to that, I was a Director at Duff & Phelps LLC (now Kroll LLC), a firm specializing in global valuation, forensic, and corporate finance advisory.  Prior to joining Duff & Phelps LLC I was a Senior Vice President at Citigroup Inc., where I led internal investigations for Global Wealth Management.  I received my B.A. in Economics from Rutgers University.  My Curriculum Vitae is included as **Exhibit B** to this Declaration.

## SUMMARY OF BANKRUPTCY PROCEEDINGS

7.  On November 11, 2022, FTX and more than 100 affiliates, including Alameda Research, (the "Debtors") filed for Chapter 11 bankruptcy protection in Delaware presided over by U.S. Bankruptcy Judge John T. Dorsey ("Judge Dorsey") (Case No. 22-11068 (JTD)).  The filing

---

[2] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174909272380000000074.pdf

was preceded by the collapse of FTX based on concerns over its FTT token and a flood of customers withdrawals from the platform.  As of January 2024, I understand it was reported there are approximately 2 million claimants.

8. At a hearing on January 31, 2024 related to FTX's bankruptcy, FTX Debtor attorneys announced that FTX intended to file a Chapter 11 plan that would project full repayment to customers and general unsecured creditors in lieu of prior attempts to restart the FTX exchange.[3]  Prior to the hearing, Judge Dorsey preliminarily ruled that the estimation of value of FTX's digital assets would be as of the petition date, November 11, 2022, as required by the bankruptcy code.  It is expected that this plan will include an estimate of FTX's interest in Anthropic and all other assets of the estate.

9. On February 2, 2024, the Debtors filed a motion for entry of an order authorizing and approving procedures for the sale of Debtors' equity interest in Anthropic [Docket No. 6950 (sealed), Docket No. 6952 (redacted)].  At a hearing on February 22, 2024, Bankruptcy Court Judge John Dorsey granted the motion for FTX to sell its shares in Anthropic [Docket No. 7908].

10. As the Valuation Report involves the determination of the "fair value" of FTX's investment in Anthropic, I reserve my right to amend this Declaration and analysis pursuant to the outcome of any subsequent sale of Anthropic or third-party valuations provided as part of this sale or the bankruptcy hearing.[4]

---

[3] At the time of the hearing, the plan was expected to be filed in February 2024, which was not filed at the time of this Declaration, with vote solicitation to follow.

[4] The Valuation Report was performed based on assumptions and publicly available information, outlined herein. It should be noted that the Fair Value of an asset can vary in the context of liquidations and bankruptcies, when a "fire sale" assumption can affect the ultimate price sold of an asset.

**BACKGROUND OF CRIMINAL CHARGES AGAINST MR. BANKMAN-FRIED**

11. Mr. Bankman-Fried was convicted on all seven criminal counts against him at trial on November 2, 2023 pursuant to the grand jury indictment on December 9, 2022 [Docket No. 1], including: two counts of conspiracy to commit wire fraud (on customers and on lenders), two counts of wire fraud (on customers and on lenders), conspiracy to commit commodities fraud, conspiracy to commit securities fraud, and conspiracy to commit money laundering.

**THE VALUATION REPORT**

12. The Valuation Report summarizes Stout's determination of the "fair value" of the equity investment in Anthropic held by parties related to FTX as of November 11, 2022 (the "Petition Date") and January 31, 2024 (the "Current Valuation Date"). Stout's determination of the fair value of Anthropic serves as an estimate of the price a market participant would have received or would have been required to pay for the sale of an asset in an orderly market transaction as of November 11, 2022 and January 31, 2024.

13. The Valuation Report estimates that the fair value of FTX's total investment value in Anthropic is between approximately $439.1 million and $528.8 million as of November 11, 2022 and between $1.1 billion and $1.4 billion as of January 31, 2024.

**I.      Information Reviewed and Methodology of Valuation Analysis**

14. In preparing the Valuation Report, Stout, among other things: (a) reviewed certain historical financial information of FTX's ownership in Anthropic and time of its investment as provided by FTX management; (b) reviewed post-money valuations for Anthropic as of the latest known transaction dates; (c) reviewed available private company data and comparable public company data; (d) conducted an analysis of other facts and data resulting in our conclusion of

value; and (e) reviewed certain other economic, industry, and financial information that Stout deemed relevant and appropriate in its analysis.

15. The Valuation Report was prepared in accordance with the Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) and standards promulgated thereunder.  Stout followed FASB ASC 820 (Fair Value Measurement) guidelines and applied the Market Approach to determine Anthropic's total equity value.

16. The Anthropic investment was valued using certain widely accepted valuation methodologies. Given the limited availability of financial information on Anthropic, Stout applied the As-Converted Approach valuation framework in the analysis of Anthropic with the underlying assumption that all the equity tranches are converted into Common Stock Equivalent Shares. For the purposes of this analysis, Stout relied on market cap changes in the market approach and selected different growth percentages, based on an evaluation of the nature, the growth stage, and the risk profile of Anthropic relative to two utilized sets of public comparable companies: the Peer Group (comparable public companies) and the Industry Group (public companies within the same industry).  Stout did not apply a Discount for Lack of Marketability, as the availability of a secondary market allows investors to sell their ownership stakes within a reasonable time frame.

## II.  Assumptions Underlying the Valuation Report and Other Considerations

17. The Valuation Report was prepared solely for the purposes of determining fair value of FTX's investment in Anthropic as of the Valuation Dates as evidence in advance of the sentencing hearing of Mr. Bankman-Fried.  Stout assumed that the investment in Anthropic presented by FTX management was unchanged as of January 31, 2024.  Events and conditions occurring after the Current Valuation Date were not considered in preparing the Valuation Report, and Stout makes no assurances as to the current valuation of Anthropic.  Events following the

Valuation Dates, including but not limited to prevailing market conditions and/or changes in FTX management's investment, could have a substantial impact on the fair value of FTX management's investment in Anthropic.

18. In developing the Valuation Report, Stout relied on the accuracy and completeness of all information provided by FTX management, its representatives, and Mr. Bankman-Fried's advisors and counsel and on certain publicly available information as to which Stout does not have independent knowledge.  Stout did not independently investigate or verify the data provided by the FTX management, its representatives, or Mr. Bankman-Fried's advisors and counsel, including information related to FTX's investment in Anthropic.  Furthermore, Stout has not conducted a physical inspection of FTX's or Mr. Bankman-Fried's facilities or assets. The valuations and calculations in the Valuation Report are dependent and reflective of certain assumptions, limiting conditions, and opinions of Stout.  The estimates provided in the Valuation Report do not purport to reflect or constitute appraisals, liquidation values, or estimates of the actual market values that may be realized through a market transaction.

19. I understand a recent valuation of Anthropic was performed that estimated a valuation as high as $18 billion[5], which would result in FTX's current stake of approximately 7.84% in the investment is approximately $1.4 billion according to the estimate ($1.4 billion = $18 billion

---

[5] https://www.cnbc.com/2023/12/21/openai-rival-anthropic-in-talks-to-raise-750-million-funding-round.html
https://www.nytimes.com/2024/02/20/technology/anthropic-funding-ai.html
https://www.bloomberg.com/news/articles/2024-02-22/ftx-cash-pile-of-6-4-billion-set-to-jump-with-sale-of-ai-stake

x 7.84%).  While I have not evaluated this valuation estimate, I note it is in line with the higher

end of the current valuation of Anthropic in the Valuation Report.

## **CONCLUSION**

20. Based on my work performed and the information and methodologies considered, I believe the

Valuation Report accurately reflects the fair value of FTX's investment in Anthropic is

between approximately $439.1 million and $528.8 million as of November 11, 2022 and

between $1.1 billion and $1.4 billion as of January 31, 2024.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  February 27, 2024

/s/

Name:  Joel E. Cohen
Title:    Managing Director
Stout Risius Ross, LLC

## **<u>Exhibit A</u>**

**Valuation Report**

# FTX Trading Ltd.

Valuation of Anthropic, PBC as of Certain Dates

Issued: February 27, 2024

CONFIDENTIAL



# Contact Information

**For more information, please contact one of the following members of the engagement team:**

**Joel E. Cohen**
Managing Director
+1.646.810.4407
jcohen@stout.com

**Harris I. Antoniades, PhD, CFA**
Managing Director
+1.310.601.2565
hantoniades@stout.com

**Ioannis A. Michopoulos**
Director
+1.646.807.4222
imichopoulos@stout.com

**Lily Cheng**
Vice President
+1.646.810.4308
licheng@stout.com

**Vasileios Choutouris**
Vice President
+1.646.532.5900
vchoutouris@stout.com

**Stelios Kouroumidis**
Analyst
+1.646.807.4235
skouroumidis@stout.com


STOUT'S SERVICES

**Investment Banking**
Advising buyers and sellers on mergers and acquisitions, private capital raising, and other corporate financial transactions.

**Valuation Advisory**
Providing valuations of business enterprises, complex securities, intellectual property, real estate, and personal property.

**Transaction Advisory**
Helping clients navigate the transaction process and provide transaction opinions and due diligence services.

**Disputes, Claims, & Investigations**
Providing expert testimony and consulting, as well as insurance claim, investigations, and compliance services for financial-related matters.

# Executive Summary



February 27, 2024

Torrey Young and Marc Mukasey
Mukasey Young LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022

Dear Torrey and Marc:

Stout Risius Ross, LLC ("Stout") has been engaged to assist FTX Trading Ltd. ("FTX" or the "Company") in the determination of the Fair Value of an equity investment held by related entities of FTX in Anthropic, PBC ("Anthropic", or the "Subject Interest"), as of November 11, 2022 (the "Petition Date") and January 31, 2024 (the "Current Valuation Date").

We prepared our analysis in accordance with Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") Topic 820, *Fair Value Measurement* ("ASC 820"). The term "Fair Value" is defined as the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date (ASC 820-10-20). Accordingly, the Fair Value measurements in this report are based on assumptions that market participants would use when pricing the asset or liability at the measurement date, assuming a transaction takes place at that date (i.e., an exit price).

We understand that our analysis will be utilized only for the stated scope indicated in the engagement letter. Our valuation is subject to the assumptions and limiting conditions outlined in the exhibits and narrative of this report.

## Company Synopsis

FTX, doing business as FTX.com, operates a cryptocurrency derivatives exchange and trading platform for traders and investment professionals. Its platform offers futures trading, leveraged tokens, and an OTC portal. The Company's platform supports quarterly and perpetual futures on various cryptocurrencies and altcoins, such as bitcoin, ether, binance coin, and tether, as well as various altcoin, midcap, and other indices. The Company was founded in 2017 and is based in St. John's, Antigua and Barbuda with an additional location in Bahamas. On November 11, 2022, FTX along with its affiliates, filed a voluntary petition for reorganization under Chapter 11 in the U.S. Bankruptcy Court for the District of Delaware.

## Information Reviewed and Procedures Performed

The principal sources of information used, and procedures performed in our valuation included, but were not limited to:

- Information about FTX's ownership in Anthropic and time of investment;

- Post-money valuations for Anthropic as of the latest known transaction dates published on press releases;

- Available data provided by PitchBook Data Inc. and CrunchBase Inc.;

- A list of comparable public companies screened via S&P Capital IQ; and

- Conducted an analysis of other facts and data resulting in our conclusion of value.

# Executive Summary



## Valuation Procedures

Given the limitability of information received from investment contacts of Anthropic, the following assumptions were made in order to conduct this analysis.

### EV and Total Equity Value Determination

To determine the concluded EV of Anthropic, current valuation theory includes consideration of several valuation approaches, including an Income Approach, a Market Approach, and an Asset Approach.

In the instant case, the determination of Anthropic's total equity value uses a form of the Market Approach as follows:

- First, we relied on the post-money valuation of Anthropic as of the latest financing round prior to the Petition Date (the "Series B Round") as obtained by PitchBook, to determine the total equity value as of the Series B Round date (the "Series B Round Date").

- Next, we adjusted the total equity value to determine the total equity value of Anthropic as of the Petition Date. Specifically, we performed the following procedures:

    - Analyzed market movements from the list of comparable public companies (the "Peer Group") for Anthropic in order to determine the appropriate market cap growth rate between the Series B Round Date and the Petition Date and to determine the range of implied equity values as of the Petition Date.

    - Next, we analyzed market movements from a list of public companies within the same industry (the "Industry Group") of Anthropic in order to determine the appropriate market cap growth rate between the Series B Round Date and the Petition Date and to determine the range of implied equity values as of the Petition Date.

- Subsequently, we relied on the post-money valuation of Anthropic as of the latest financing round prior to the Current Valuation Date (the "Series C Round") as obtained by PitchBook, to determine the total equity value as of the Series C Round date (the "Series C Round Date").

- Next, we adjusted the total equity value to determine the total equity value of Anthropic as of the Current Valuation Date. Specifically, we performed the following procedures:

    - Analyzed market movements from the Peer Group for Anthropic in order to determine the appropriate market cap growth rate between the Series C Round Date and the Current Valuation Date and to determine the range of implied equity values as of the Current Valuation Date.

    - Next, we analyzed market movements from the Industry Group of Anthropic in order to determine the appropriate market cap growth rate between the Series C Round Date and the Current Valuation Date and to determine the range of implied equity values as of the Current Valuation Date.

    - We also relied on the advertised post-money valuation of Anthropic, the recent investments and future commitments in Anthropic.

## Valuation Methodology

### *As-Converted Approach*

In the instant case, we employed the "As Converted Approach" in our analysis of the Subject Interest. The underlying assumption of the As-Converted Approach is that all the equity tranches are converted into Common Stock Equivalent Shares (the "CSE Shares"). The framework is more aligned with the pre-money valuation framework related to a financing round and the way that investors think about the equity securities on a fully

# Executive Summary



diluted basis. Given the limited information received for the Subject Interest, we applied this method of valuation for the Subject Interest.

## Conclusions

In accordance with the foregoing, and as presented in Exhibit A.1 and the table below, we determined the Fair Value of the Subject Interest, as of the Petition Date and the Current Valuation Date, to be:

| Summary of Conclusions | | | | |
|---|---|---|---|---|
| *In Millions of U.S. Dollars* | | | | |
| | Total Investment Value (11/11/2022) | | Total Investment Value (1/31/2024) | |
| Investment | Low | High | Low | High |
| Anthropic, PBC | $ 439.054 | $ 528.782 | $ 1,123.598 | $ 1,442.560 |

Source: Exhibit A.1.

\*        \*        \*        \*        \*        \*        \*

Our conclusions are applicable for the stated dates and purpose only and may not be appropriate for any other date or purpose. Reference should be made to the assumptions and limiting conditions that apply to this valuation report.

The conclusions indicated in this report are limited to the level of information that has been provided by FTX management as well as information available in public sources or other utilized platforms. Due to limited information rights, there was a lack of information for all assets included in scope due to the nature of this valuation (i.e. lack of financial statements, financial projections, specific capitalization table details, transaction details, further due diligence with the underlying entities, secondary transactions etc.). If we had access to the indicated additional information the results could have been different depending on the materiality and level of that information.

Yours very truly,

*Stout Risius Ross, LLC*

**STOUT RISIUS ROSS, LLC**

# Exhibits



**Exhibit A** ............................................................................................................... Summary of Conclusions

**Exhibit B** ................................................................................................................... Valuation Analysis

**Exhibit C** ..................................................................................................... Assumptions and Limiting Conditions

**Exhibit D** .......................................................................................................................... Certification

**Exhibit E** ............................................................................................................ Statement of Qualifications

# A.   Summary of Conclusions



**Summary of Conclusions**                                                                                                    **Exhibit A.1**

*In Millions of U.S. Dollars*

| | | | | | Total Investment Value (11/11/2022) | | | | Total Investment Value (1/31/2024) | | | |
| Investment | Notes | Total Cost | Last Round Date | Valuation Framework | Low | % of Cost | High | % of Cost | Low | % of Cost | High | % of Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **1** Anthropic, PBC | [a] | $ 500.000 | 5/23/2023 | As-Converted Approach | $ 439.054 | *87.8%* | $ 528.782 | *105.8%* | $ 1,123.598 | *224.7%* | $ 1,442.560 | *288.5%* |

[a] Refer to Exhibit B.1.1.

# B.   Valuation Analysis



**Summary of Results**                                                                                                                                              **Exhibit B.1.1**

*In Millions of U.S. Dollars*

| | Notes | Series B Round Date 4/29/2022 | | Petition Date 11/11/2022 | | Series C Round Date 5/23/2023 | | Current Valuation Date 1/31/2024 | |
|---|---|---|---|---|---|---|---|---|---|
| | | Base | | Low | High | Base | | Low | High |
| 1  Scenario | | Base | | Low | High | Base | | Low | High |
| 2  Implied Equity Value | [a] | $   4,000 | | $   3,512 | $   4,230 | $   5,000 | | $  14,332 | $  18,400 |
| | | Base | | Low | High | Base | | Low | High |
| **Subject Interest Conclusion** | | | | | | | | | |
| 3  **Implied Equity Value** | [a] | $   4,000 | | $   3,512 | $   4,230 | $   5,000 | | $  14,332 | $  18,400 |
| 4  Multiplied by: FTX Trading Ltd. / Alameda Research LLC Ownership % | | 12.50% | | 12.50% | 12.50% | 11.38% | | 7.84% | 7.84% |
| 5  **Total Implied Value of Subject Interest** | | $   500 | | $   439 | $   529 | $   569 | | $   1,124 | $   1,443 |
| 6  *% of Cost Basis* | | *100.0%* | | *87.8%* | *105.8%* | *113.8%* | | *224.7%* | *288.5%* |
| 7  **Total Fair Value of Subject Interest** | | $  500.000 | | $  439.054 | $  528.782 | $  568.750 | | $  1,123.598 | $  1,442.560 |

**Disclaimer**: Given the limited availability of financial information on Anthropic, the lack of details on the capitalization table and the lack of confirmation on liquidation rights for all securities, our analysis primarily utilized an As Converted Approach. It should be noted that if comprehensive financial data was available, we might have applied a different approach, which could yield a materially different valuation range.

For the purposes of our analysis, we relied on market cap changes in our market approach and selected different growth %, based on an evaluation of the nature, the growth stage, and the risk profile of Anthropic relative to two utilized sets of public comparable companies: the Peer Group and the Industry Group.

We do not apply a Discount for Lack of Marketability, as the availability of a secondary market allows investors to sell their ownership stakes within a reasonable time frame.

[a] Refer to Exhibits B.2.1 and B.2.2.

# B.  Valuation Analysis



**Summary of Analysis**                                                                                    Exhibit B.1.2

*In Millions of U.S. Dollars*



[a]  Refer to Exhibit B.1.1

# B.  Valuation Analysis



**Conclusions of Value as of November 11, 2022**                                                    **Exhibit B.2.1**

*In Millions of U.S. Dollars*

|   |   | Notes | Low | | High | |
|---|---|---|---|---|---|---|
|   |   |   | Peer Group | Industry Group | Peer Group | Industry Group |
| 1 | **Total Equity Value** | [a] | $      3,581 | $      3,443 | $      4,419 | $      4,042 |
| 2 | Multiplied by: Comparable Companies Group Weight |   | 50.0% | 50.0% | 50.0% | 50.0% |
| 3 | **Adjusted Equity Value** |   | **$1,791** | **$1,722** | **$2,209** | **$2,021** |
| 4 | **Total Fair Value** |   | **$3,512** | | **$4,230** | |

Due to lack of details for the actual capitalization structure, the specific economic rights and privileges of the various equity securities and any Company specific agreements, we have relied on a fully diluted As Converted Approach for the purpose of this analysis.

[a] Refer to Exhibits B.3.1 and B.3.2.

# B.  Valuation Analysis



**Conclusions of Value as of January 31, 2024**                                    **Exhibit B.2.2**

*In Millions of U.S. Dollars*

| | | Notes | Low | | High | |
|---|---|---|---|---|---|---|
| | | | Peer Group | Industry Group | Peer Group | Industry Group |
| 1 | **Total Equity Value** | [a] | $ 12,292 | $ 16,371 | $ 18,400 | $ 18,400 |
| 2 | Multiplied by: Comparable Companies Group Weight | | 50.0% | 50.0% | 50.0% | 50.0% |
| 3 | **Adjusted Equity Value** | | **$6,146** | **$8,186** | **$9,200** | **$9,200** |
| 4 | **Total Fair Value** | | **$14,332** ← | | **$18,400** ← | |

Due to lack of details for the actual capitalization structure, the specific economic rights and privileges of the various equity securities and any Company specific agreements, we have relied on a fully diluted As Converted Approach for the purpose of this analysis.

[a] Refer to Exhibits B.3.1 and B.3.2.

# B.   Valuation Analysis



**Company Fundamentals and Valuation Analysis - Peer Group**
Exhibit B.3.1

*In Millions of U.S. Dollars*

| | | Series B Round Date April 29, 2022 | | | | Petition Date November 11, 2022 | | | | | | | Series C Round Date May 23, 2023 | | | | Current Valuation Date January 31, 2024 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Company | Ticker | Total Enterprise Value | Market Capitalization | LTM Revenue | EV / LTM Sales | Total Enterprise Value | % TEV Change | Market Capitalization | % Market Cap Change [a] | LTM Revenue | %LTM Revenue Change | EV / LTM Sales | FY1 Revenue Projections | FY+1/Current LTM Growth | Total Enterprise Value | Market Capitalization | LTM Revenue | EV / LTM Sales | Total Enterprise Value | % TEV Change | Market Capitalization | % Market Cap Change [a] | LTM Revenue | %LTM Revenue Change | EV / LTM Sales | FY1 Revenue Projections | FY+1/Current LTM Growth |
| 1 NVIDIA Corporation | NVDA | $ 455,043 | $ 464,420 | $ 26,914 | 16.9x | $ 401,179 | -11.8% | $ 406,379 | -12.5% | $ 26,860 | 6.1% | 14.0x | $ 26,985 | 54,059 | -5.5% | $ 757,689 | $ 758,954 | $ 25,878 | 29.3x | $ 1,512,463 | 99.6% | $ 1,519,717 | 100.2% | $ 44,870 | 73.4% | 33.7x | $ 58,867 | 31.2% |
| 2 Amazon.com, Inc. | AMZN | 1,345,373 | 1,264,491 | 477,748 | 2.8x | 1,133,897 | -15.7% | 1,028,225 | -18.7% | 502,191 | 5.1% | 2.3x | 511,037 | | 1.8% | 1,293,980 | 1,179,836 | 524,897 | 2.5x | 1,705,738 | 31.8% | 1,603,842 | 35.9% | 574,785 | 9.5% | 3.0x | 636,485 | 10.7% |
| 3 Microsoft Corporation | MSFT | 2,048,902 | 2,075,581 | 192,557 | 10.6x | 1,811,967 | -11.6% | 1,842,075 | -11.3% | 203,075 | 5.5% | 8.9x | 212,964 | | 4.9% | 2,310,005 | 2,344,112 | 207,591 | 11.2x | 2,984,569 | 28.7% | 2,954,193 | 26.0% | 227,583 | 9.8% | 13.1x | 243,977 | 7.2% |
| 4 Alphabet Inc. | GOOGL | 1,402,825 | 1,508,193 | 270,334 | 5.2x | 1,162,859 | -17.1% | 1,249,782 | -17.1% | 282,113 | 4.4% | 4.1x | 283,496 | | 0.5% | 1,474,823 | 1,560,432 | 284,612 | 5.2x | 1,670,455 | 13.3% | 1,751,504 | 12.2% | 307,394 | 8.0% | 5.4x | 342,199 | 11.3% |
| 5 Meta Platforms, Inc. | META | 513,355 | 542,537 | 119,666 | 4.3x | 284,383 | -44.6% | 299,666 | -44.8% | 118,115 | -1.3% | 2.4x | 116,275 | | -1.6% | 623,152 | 632,329 | 117,346 | 5.3x | 978,359 | 57.0% | 1,002,606 | 58.6% | 134,902 | 15.0% | 7.3x | 151,413 | 12.2% |
| 6 C3.ai, Inc. | AI | 814 | 1,807 | 233 | 3.5x | 714 | -12.3% | 1,623 | -10.2% | 270 | 15.9% | 2.6x | 261 | -3.2% | 2,266 | 3,048 | 267 | 8.5x | 2,211 | -2.4% | 2,970 | -2.5% | 285 | 6.7% | 7.8x | 306 | 7.3% |
| 7 UiPath Inc. | PATH | 7,832 | 9,665 | 892 | 8.8x | 5,234 | -33.2% | 6,909 | -28.5% | 1,040 | 16.5% | 5.0x | 1,006 | -3.2% | 7,826 | 9,322 | 1,103 | 6.9x | 11,256 | 47.6% | 13,008 | 39.5% | 1,211 | 9.8% | 9.3x | 1,287 | 8.2% |
| 8 Instructure Holdings, Inc. | NYSE:INST | 2,917 | 2,558 | 425 | 6.9x | 3,619 | 24.1% | 3,362 | 31.4% | 461 | 8.5% | 7.8x | 472 | 2.4% | 3,925 | 3,518 | 491 | 8.0x | 3,765 | -4.1% | 3,564 | 1.3% | 520 | 5.9% | 7.2x | 530 | 1.9% |
| 9 Palantir Technologies Inc. | NYSE:PLTR | 19,015 | 21,279 | 1,647 | 11.5x | 15,221 | -19.7% | 17,494 | -17.8% | 1,830 | 11.1% | 8.3x | 1,901 | 3.9% | 24,212 | 26,777 | 1,985 | 12.2x | 32,046 | 32.4% | 35,012 | 30.8% | 2,125 | 7.1% | 15.1x | 2,661 | 25.2% |
| 10 CCC Intelligent Solutions Holdings Inc. | NasdaqGS:CCCS | 6,348 | 5,663 | 717 | 8.8x | 6,421 | 1.2% | 5,810 | 2.6% | 765 | 6.7% | 8.4x | 780 | 1.9% | 6,800 | 6,283 | 801 | 8.5x | 7,025 | 3.3% | 6,622 | 5.4% | 842 | 5.2% | 8.3x | 881 | 2.2% |
| 11 Maximum | | $ 2,048,902 | $ 2,075,581 | $ 477,748 | 16.9x | $ 1,811,967 | 24.1% | $ 1,842,075 | 31.4% | $ 502,191 | 16.5% | 14.0x | $ 511,037 | | 4.9% | $ 2,319,005 | $ 2,344,112 | $ 524,897 | 29.3x | $ 2,984,569 | 99.6% | $ 2,954,193 | 100.2% | $ 574,785 | 73.4% | 33.7x | $ 636,485 | 31.2% |
| 12 Upper Quartile | | 1,137,356 | 1,084,002 | 174,334 | 10.2x | 950,717 | -11.6% | 872,763 | -10.5% | 181,835 | 10.5% | 8.4x | 188,792 | | 2.3% | 1,159,907 | 1,074,617 | 185,030 | 10.5x | 1,630,957 | 43.6% | 1,582,810 | 38.6% | 204,413 | 9.8% | 12.2x | 220,836 | 12.0% |
| 13 Median | | 237,029 | 242,850 | 14,281 | 7.8x | 149,827 | -14.0% | 158,586 | -14.8% | 15,198 | 6.4% | 6.4x | 14,443 | | 1.1% | 323,582 | 329,553 | 13,931 | 8.2x | 505,203 | 30.3% | 518,809 | 26.4% | 23,498 | 8.8% | 8.1x | 30,764 | 9.0% |
| 14 Lower Quartile | | 6,719 | 6,664 | 761 | 4.5x | 5,531 | -19.0% | 6,085 | -18.5% | 834 | 5.2% | 5.0x | 836 | -2.8% | 7,006 | 7,043 | 876 | 5.7x | 8,082 | 5.6% | 8,219 | 7.1% | 934 | 6.8% | 7.2x | 967 | 6.5% |
| 15 Minimum | | 814 | 1,807 | 233 | 2.8x | 714 | -44.6% | 1,623 | -44.8% | 270 | -1.3% | 2.3x | 261 | -5.5% | 2,266 | 3,048 | 267 | 2.5x | 2,211 | -4.1% | 2,970 | -2.5% | 285 | 5.2% | 3.0x | 306 | 1.9% |

Stout's conclusion is the indicated Low-High range. Given lack of details for the capitalization structure of the Company, we have performed a fully diluted approach for the purpose of this analysis.
[a] The Valuation Date growth rates selected are the following:

| | Market Cap Growth |
|---|---|
| Selected Low [i] | -10.5% |
| Selected High [ii] | 10.5% |

| | Market Cap Growth |
|---|---|
| Selected Market Cap Growth Rate | 66.4% |

|  | As Converted Approach [b][ii] Base | | As Converted Approach [c][ii] | |  | As Converted Approach [b][iii] Base | | As Converted Approach [d][iii] | |
|---|---|---|---|---|---|---|---|---|---|
| | Post-Money Valuation | | Low Market Approach Implied Equity Value | High Market Approach Implied Equity Value | | Post-Money Valuation | | Low Market Approach Implied Equity Value | High Transaction Implied Equity Value |
| 16 Indicated Equity Value | $ 4,000 | | $ 3,591 | $ 4,419 | | $ 5,000 | | $ 12,292 | $ 18,400 |

[i] The selected low market cap growth rate is based on the lower quartile of the market capitalization movement from the Peer Group.

[ii] The selected high market cap growth rate is based on the average of the upper quartile and the maximum of the market capitalization movement from the Peer Group.

The market cap growth rates are selected from a retrospective view, which is in line with the pre-money valuation from May 2023 Series C Round. Given we started with the post-money valuation as of April 2022, we applied different growth % from the Peer Group to reflect a range of different risk profiles of the Company.

The selected market cap growth rate is based on the average of the upper quartile and the maximum of the market capitalization movement from the Peer Group.

The market cap growth rate is selected based on the rapid expansion of the AI tech industry in the period following the Series C Round Date.

[b] Due to lack of details for the actual capitalization structure, the specific economic rights and privileges of the various equity securities and any Company specific agreements, we have relied on a fully diluted As Converted Approach for the purpose of this analysis.
[c] The indicated equity value is the post-money valuation equity value as of the latest arm's length transaction, dated April 29, 2022. Source: PitchBook Data, Inc.
[d] Due to the lack of information regarding any specific secondary transactions in any equity classes, we rely solely on the market approach for purposes of determining the Equity Value for the Company under each scenario, based on different riskiness assumptions utilized in each case.
[e] Based on the post-valuation equity value based on the Series C Round, dated May 23, 2023. Source: PitchBook Data, Inc.
[f] Based on the trajectory of the pre/post money valuation from various financing rounds from 2022 to 2023 and implied ownership % of FTX / Alameda in Anthropic from public resources, the below table illustrates the derivation of the applicable ownership % of the Subject Interest in the Company as of the various contemplated dates.

| | Series B Round Date [i] 4/29/2022 | Series C Round Date [ii] 5/23/2023 | Current Valuation Date [v] 1/31/2024 |
|---|---|---|---|
| Pre-Money Valuation | $ 3,420 | $ 4,550 | n/a |
| Incremental Amount Raised | 580 | 450 | $ 2,254 |
| FTX Trading Ltd. / Alameda Research LLC Investment | 500 | n/a | n/a |
| Post-Money Valuation | 4,000 | 5,000 | 7,254 |
| FTX Trading Ltd. / Alameda Research LLC Ownership % | 12.50% | 11.38% | 7.84% |

[i] The FTX Trading Ltd. / Alameda Research LLC Ownership Percentage is based on the amount invested in the Series B Round.
Source: PitchBook Data, Inc.
[ii] The FTX Trading Ltd. / Alameda Research LLC Ownership Percentage is adjusted to account for dilution effects in the Series C Round.
Source: PitchBook Data, Inc.
[iii] According to the Motion of FTX Trading Ltd. to the United States Bankruptcy Court for the District of Delaware, dated February 3, 2024, FTX Trading Ltd. Holds 7.84% of Anthropic on a fully diluted basis.
Based on the ownership percentage as of the Current Valuation Date, we derive the incremental amount raised after the Series C Round.
The Market Approach Implied Equity is calculated by applying the selected market cap growth rate on the sum of the post-money valuation of Series C Round and the incremental amount subsequently raised.
Source: https://restructuring.ra.kroll.com/FTX/Home-DownloadPDF?id1=MjA1NjAzMA==&id2=-1

[g] The Transaction Implied Equity Value is based on the advertised post-money valuation of Anthropic, the recent investments and future commitments in Anthropic.
https://archive.fortune.com/2023/12/21/openai-rival-anthropic-in-talks-to-raise-750-million-funding-round.html

# B.   Valuation Analysis



**Company Fundamentals and Valuation Analysis - Industry Group**     *In Millions of U.S. Dollars*     **Exhibit B.3.2**

**Public Company Screening Criteria**
Exchange: Major U.S. Exchanges
Industry: Software and Services
Size: $1-100B Enterprise Value

| | | Series B Round Date — April 29, 2022 | | | | Petition Date — November 11, 2022 | | | | | | | Series C Round Date — May 23, 2023 | | | | Current Valuation Date — January 31, 2024 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Company | Ticker | Total Enterprise Value | Market Capitalization | LTM Revenue | EV / LTM Sales | Total Enterprise Value | % TEV Change | Market Cap Change [a] | LTM Revenue | % LTM Revenue Change | EV / LTM Sales | FY1 Revenue Projections | FY+1/Current LTM Growth | Total Enterprise Value | Market Capitalization | LTM Revenue | EV / LTM Sales | Total Enterprise Value | % TEV Change | Market Cap Change [a] | % LTM Revenue Change | LTM Revenue | EV / LTM Sales | FY1 Revenue Projections | FY+1/Current LTM Growth |
| 1 Shopify Inc. | NYSE:SHOP | $ 47,221 | $ 53,838 | $ 4,827 | 9.8x | $ 46,529 | -1.5% | $ 50,171 | -6.8% | $ 5,245 | 8.7% | 8.9x | $ 5,503 | 4.9% | $ 71,137 | $ 74,601 | $ 5,904 | 12.0x | $ 99,217 | 39.5% | $ 103,013 | 38.1% | $ 6,651 | 12.7% | 14.9x | $ 6,987 | 5.1% |
| 2 Infosys Limited | NSEI:INFY | 83,532 | 85,923 | 16,311 | 5.1x | 79,298 | -5.1% | 81,747 | -4.9% | 17,530 | 7.5% | 4.5x | 18,254 | 4.1% | 83,674 | 64,523 | 18,212 | 3.5x | 81,294 | 27.7% | 82,794 | 27.0% | 18,552 | 1.9% | 4.4x | 18,595 | 0.2% |
| 3 Synopsys, Inc. | NasdaqGS:SNPS | 43,219 | 43,507 | 4,504 | 9.6x | 49,860 | 15.4% | 50,675 | 15.4% | 5,082 | 12.8% | 9.8x | 5,654 | 11.3% | 58,848 | 59,812 | 5,268 | 11.1x | 80,481 | 36.8% | 81,347 | 36.0% | 5,843 | 6.5% | 13.8x | 6,619 | 13.3% |
| 4 Cadence Design Systems, Inc. | NasdaqGS:CDNS | 40,811 | 41,598 | 3,154 | 12.9x | 45,555 | 11.6% | 45,783 | 10.1% | 3,435 | 8.9% | 13.3x | 3,546 | 3.2% | 55,869 | 56,107 | 3,682 | 15.2x | 78,166 | 39.9% | 78,479 | 39.9% | 3,921 | 6.5% | 19.9x | 4,095 | 4.2% |
| 5 Workday, Inc. | NasdaqGS:WDAY | 50,340 | 51,882 | 5,139 | 9.8x | 38,317 | -23.9% | 40,182 | -22.6% | 5,946 | 15.7% | 6.4x | 6,202 | 4.3% | 47,352 | 50,225 | 6,465 | 7.3x | 72,947 | 54.1% | 76,551 | 52.4% | 6,983 | 8.0% | 10.4x | 7,253 | 3.9% |
| 6 CrowdStrike Holdings, Inc. | NasdaqGS:CRWD | 44,657 | 45,867 | 1,452 | 30.8x | 31,872 | -28.6% | 33,401 | -27.2% | 2,035 | 40.2% | 15.7x | 2,234 | 9.8% | 32,221 | 34,119 | 2,446 | 13.2x | 99,217 | 105.9% | 2,648 | 16.4% | | 23.8x | 3,050 | 7.1% |
| 149 Amplitude, Inc. | NasdaqGS:AMPL | 1,540 | 1,540 | 187 | 8.2x | 1,526 | -0.9% | 1,520 | -5.4% | 222 | 18.6% | 6.9x | 237 | 6.4% | 508 | 521 | 251 | 2.0x | 1,238 | 50.4% | 1,543 | 41.8% | 270 | 7.6% | 4.5x | 299 | 2.8% |
| 150 Docebo Inc. | TSX:DCBO | 1,202 | 1,410 | 115 | 10.5x | 792 | -34.1% | 1,009 | -28.5% | 134 | 16.8% | 5.9x | 143 | 6.8% | 844 | 1,057 | 152 | 5.5x | 1,168 | 38.4% | 1,338 | 26.6% | 171 | 11.9% | 6.9x | 180 | 5.6% |
| 151 Couchbase, Inc. | NasdaqGS:BASE | 545 | 751 | 124 | 4.4x | 400 | -26.7% | 583 | -22.3% | 148 | 20.0% | 2.7x | 150 | 1.2% | 706 | 867 | 161 | 4.4x | 1,051 | 48.8% | 1,202 | 38.7% | 172 | 6.9% | 6.1x | 177 | 2.9% |
| 152 Consensus Cloud Solutions, Inc. | NasdaqGS:CCSI | 1,796 | 1,054 | 355 | 5.1x | 1,700 | -5.3% | 361 | 1.6% | 361 | 1.6% | 4.7x | 376 | 4.1% | 1,404 | 705 | 365 | 3.8x | 1,072 | -23.7% | 416 | -40.5% | 365 | 0.1% | 2.9x | 364 | -0.4% |
| 153 Model N, Inc. | NYSE:MODN | 934 | 941 | 207 | 4.5x | 1,401 | 50.1% | 1,443 | 53.2% | 218 | 5.7% | 6.4x | 243 | 11.0% | 1,129 | 1,106 | 236 | 4.8x | 1,042 | -7.7% | 1,032 | -4.9% | 249 | 5.7% | 4.2x | 262 | 5.1% |
| 154 Cerence Inc. | NasdaqGS:CRNC | 1,292 | 1,155 | 376 | 3.4x | 867 | -32.9% | 715 | -38.1% | 328 | -12.7% | 2.6x | 312 | -4.8% | 1,223 | 1,051 | 299 | 4.1x | 995 | -18.7% | 828 | -21.4% | 349 | 16.7% | 2.9x | 361 | 3.3% |
| 155 Maximum | | $ 83,532 | $ 85,923 | $ 18,932 | 40.2x | $ 79,298 | 87.7% | $ 91,747 | 166.8% | $ 19,366 | 104.6% | 25.8x | $ 19,335 | 588.1% | $ 71,137 | $ 74,601 | $ 19,414 | 36.2x | $ 99,217 | 239.6% | $ 103,013 | 211.4% | $ 19,434 | 121.2% | 1,595.1x | $ 19,783 | 54.8% |
| 156 Upper Quartile | | 13,491 | 13,069 | 1,513 | 10.9x | 10,681 | 1.9% | 10,528 | 1.0% | 1,827 | 16.4% | 8.8x | 1,801 | 7.5% | 11,256 | 10,940 | 1,837 | 9.2x | 13,772 | 43.2% | 13,599 | 40.0% | 2,108 | 11.1% | 10.6x | 2,161 | 7.4% |
| 157 Median | | 5,044 | 5,058 | 684 | 6.5x | 4,264 | -11.5% | 4,077 | -13.9% | 742 | 9.0% | 5.7x | 775 | 4.2% | 4,577 | 4,284 | 812 | 5.4x | 5,516 | 18.7% | 4,957 | 21.7% | 881 | 6.7% | 6.2x | 917 | 4.1% |
| 158 Lower Quartile | | 2,641 | 2,405 | 386 | 4.5x | 2,107 | -27.7% | 2,098 | -28.9% | 444 | 2.8% | 3.3x | 465 | 1.7% | 2,445 | 2,278 | 493 | 3.4x | 2,717 | 3.9% | 2,415 | 3.8% | 535 | 2.5% | 4.0x | 589 | 2.5% |
| 159 Minimum | | 0 | 0 | 105 | 0.0x | 0 | -70.2% | | -66.6% | 64 | -79.4% | 0.0x | 66 | -28.8% | 0 | 0 | 26 | 0.0x | 995 | -46.1% | 364 | -48.4% | 2 | -92.3% | 0.5x | 177 | -51.9% |



| | As Converted Approach [h][k] — Base | As Converted Approach [h][k] — Low / High Approach Implied Equity Value | As Converted Approach [h][k] — Base | As Converted Approach [h][k][j] — Low / High Approach Implied / Transaction Approach Implied Equity Value |
|---|---|---|---|---|

| 160 Indicated Equity Value | Post-Money Valuation | Low: Market Approach Implied Equity Value $ 3,443 / High: Market Approach Implied Equity Value $ 4,042 | Post-Money Valuation | Low: Market Approach Implied Equity Value $ 16,371 / High: Transaction Approach Implied Equity Value $ 18,400 |
| | $ 4,000 | | $ 5,000 | |

Stout's conclusion is the indicated Low-High range. Given lack of details for the capitalization structure of the Company, we have performed a fully diluted approach for the purpose of this analysis.

[a] The Valuation Date growth rates selected are the following:



| | Market Cap Growth |
|---|---|
| Selected Low [i] | -13.9% |
| Selected High [ii] | 1.0% |

[i] The selected low market cap growth rate is based on the median of the market capitalization movement from the Industry Group.

[ii] The selected high market cap growth rate is based on the upper quartile of the market capitalization movement from the Industry Group.

The market cap growth rates are selected from a retrospective view, which is in line with the pre-money valuation from May 2023 Series C Round. Given we started with the post-money valuation as of April 2022, we applied different growth % from the Industry Group to reflect a range of different risk profiles of the Company.

| | Market Cap Growth |
|---|---|
| Selected Market Cap Growth Rate | 125.7% |

The selected high market cap growth rate is based on the average of the upper quartile and the maximum of the market capitalization movement from the Industry Group.

The market cap growth rate is selected based on the rapid expansion of the AI tech industry in the period following the Series C Round Date.

[b] Due to lack of details for the actual capitalization structure, the specific economic rights and privileges of the various equity securities and any Company specific agreements, we have relied on a fully diluted As Converted Approach for the purpose of this analysis.
[c] The indicated equity value is the post-money valuation equity value as of the latest arm's length transaction, dated April 29, 2022. Source: PitchBook Data, Inc.
[d] Due to the lack of information regarding any specific secondary transactions in any equity classes, we rely solely on the market approach for purposes of determining the Equity Value for the Company under each scenario, based on different riskiness assumptions utilized in each case.
[e] Based on the post-valuation equity value based on the Series C Round, dated May 23, 2023. Source: PitchBook Data, Inc.
[f] Based on the trajectory of the pre/post money valuation from various financing rounds from 2022 to 2023 and implied ownership % of FTX / Alameda in Anthropic from public resources, the below table illustrates the derivation of the applicable ownership % of the Subject Interest in the Company as of the various contemplated dates.

| | Series B Round Date [c] 4/29/2022 | Series C Round Date [e] 5/23/2023 | Current Valuation Date [e] 1/31/2024 |
|---|---|---|---|
| Pre-Money Valuation | $ 3,420 | $ 4,550 | n/a |
| Incremental Amount Raised | 580 | 450 | $ 2,254 |
| FTX Trading Ltd. / Alameda Research LLC investment | 500 | n/a | n/a |
| Post-Money Valuation | 4,000 | 5,000 | 7,254 |
| FTX Trading Ltd. / Alameda Research LLC Ownership % | 12.50% | 11.38% | 7.84% |

[g] The Transaction Implied Equity Value is based on the advertised post-money valuation of Anthropic, the recent investments and future commitments in Anthropic.
https://www.cnbc.com/2023/12/21/openai-rival-anthropic-in-talks-to-raise-750-million-funding-round.html

[h] The FTX Trading Ltd. / Alameda Research LLC Ownership Percentage is based on the amount invested in the Series B Round.
Source: PitchBook Data, Inc.
[i] The FTX Trading Ltd. / Alameda Research LLC Ownership Percentage is adjusted to account for dilution effects in the Series C Round.
Source: PitchBook Data, Inc.
[j] According to the Motion of FTX Trading Ltd. In the United States Bankruptcy Court for the District of Delaware, dated February 3, 2024, FTX Trading Ltd. Holds 7.84% of Anthropic on a fully diluted basis.
Based on the ownership percentage as of the Current Valuation Date, we derive the investment amount raised after the Series C Round.
The Market Approach Implied Equity is calculated by applying the selected market cap growth rate on the sum of the post-money valuation of Series C Round and the incremental amount subsequently raised.
Source: https://restructuring.ra.kroll.com/FTX/Home-DownloadPDF?id1=MjA1NjAzMA==&id2=1

# C. Assumptions and Limiting Conditions



This valuation report is subject to the following assumptions and limiting conditions:

■ In performing our analysis, we use various financial and other information provided to us by management or its representatives, and rely on the accuracy and completeness of this information. We have not been engaged to compile, review, or examine such information in accordance with any accounting or financial standards as promulgated by any organization, regulatory agency, or governmental body. Accordingly, we do not express an opinion or any other form of assurance thereon.

■ Public information and industry and statistical information have been obtained from sources we believe to be reliable. However, we make no representation as to the accuracy or completeness of such information and have performed no procedures to corroborate the information.

■ For the purpose of this engagement and report, we make no investigation of, and assume no responsibility for, the titles to, or liabilities against, the assets or equity of the Company, including, but not limited to, any contingent or environmental liabilities.

■ The conclusion of value assumes the inputs provided by management represent management's best estimate using reasonable assumptions. Any change in these inputs could cause a change in our conclusion of value. Furthermore, we assume that there are no hidden or unexpected conditions that would adversely affect the value we estimated.

■ We do not provide assurance on the achievability of the results forecasted herein. Differences between actual and expected results may be material and achievement of the forecasted results is dependent on actions, plans, and assumptions of management.

■ Our conclusion of value is applicable to the Subject Interest for the stated dates and purpose only, and may not be appropriate for any other date or purpose.

■ Our services, this report (which reflects an Appraisal Report as defined by Standard 10, "Business Appraisal, Reporting" of the Uniform

Standards of Professional Appraisal Practice) and the opinions expressed herein are provided exclusively for the use of the Company for the purpose stated herein, and are not to be referred to or distributed, in whole or in part, without our prior written consent. Furthermore, the rationale for how we arrived at the opinions and conclusions expressed herein may not be understood properly without additional information contained in our internal work papers.

■ The opinions expressed herein are not intended to be investment advice and should in no way be construed as such. Furthermore, this report does not constitute a "fairness opinion" or a "solvency opinion" regarding any contemplated present or future transaction.

■ None of our employees who worked on this engagement have any known financial interest in the assets or equity of the Company or the outcome of this valuation. Further, our compensation is neither based nor contingent on the results of our analysis.

■ Stout Risius Ross, LLC is not required to give testimony in court, or be in attendance during any hearings or depositions, unless previous arrangements have been made. We are committed to supporting the valuation report provided compensation arrangements for such additional services have been made.

■ This valuation contemplates facts and conditions that are known or knowable as of the Current Valuation Date. Events and conditions occurring after the Current Valuation Date have not been considered, and Stout Risius Ross, LLC have no obligation to update our report for such events and conditions.

■ Stout is only responsible for the conclusions or opinions set forth in the valuation, and the valuation is further subject to the limitations, qualifications and standards of conduct set forth herein. The nature and scope of our analysis as well as the form and substance of the valuation is such as we deem appropriate. Stout makes no representation as to the adequacy or sufficiency of the valuation as to any legal matter, and it is expected that the Company and any other

# C.  Assumptions and Limiting Conditions



authorized recipient of the valuation will consult with their own counsel with respect to the valuation and its ramifications.

- The Company warrants and represents that all information provided or otherwise made available to us by or on behalf of the Company has been, to the Company's knowledge, complete and correct in all material respects and does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein taken as a whole not misleading in light of the circumstances under which they are made.  The Company and its advisors will promptly notify Stout in writing of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to Stout. The Company further warrants and represents that any projections provided by it to us has been prepared in good faith and is based upon assumptions which, in light of the circumstances under which they are made, are the best reasonably available.  The Company acknowledges and agrees that in rendering our services we are using and relying on the information provided by and on behalf of the Company without independent investigation or verification thereof by us. We assume no responsibility for the accuracy or completeness of any information provided to us by or on behalf of the Company or any other information regarding the Company or otherwise made available to us.

- We have not conducted a physical inspection of the Company's facilities or assets. Our valuation is necessarily based on business, economic, market, and other conditions as they exist and can be evaluated by us at the Petition Date and the Current Valuation Date. It should be noted that although subsequent developments may affect our valuation, we do not have any obligation to update, revise, or reaffirm the valuation.  We reserve the right, however, to withdraw, revise, or modify the valuation based upon additional information which may be provided to or obtained by us after the issuance of the valuation which suggests, in our judgment, a material change in the assumptions upon which our valuation is based.

- The valuation and any other advice rendered by, or materials prepared by, Stout, may not be submitted, distributed or filed, in whole or in part, to or with any party, governmental agency or regulatory body or authority, or summarized or quoted from, in each instance, without

Stout's prior review and written approval.  In addition, no reference to Stout, the services provided by Stout or the valuation or its contents (in each such case, regardless of whether Stout is referred to by name) may be made, in each instance, without Stout's prior review and written approval (including, without limitation, in any filing(s), materials distributed to the security holders or creditors of the company, financial statements, or press releases).

- By accepting this report, the client acknowledges the terms and indemnity provisions provided in the executed engagement letter and the assumptions and limiting conditions contained herein.

- The conclusions indicated in this report are limited to the level of information that has been provided by FTX management as well as information available in public sources or other utilized platforms. Due to limited information rights, there was a lack of information for all assets included in scope due to the nature of this valuation (i.e. lack of financial statements, financial projections, specific capitalization table details, transaction details, further due diligence with the underlying entities, secondary transactions etc.). If we had access to the indicated additional information the results could have been different depending on the materiality and level of that information. We do not bear any responsibility for the impact that the indicated information could have into the valuation conclusions.

# D.   Certification



We certify that, to the best of our knowledge and belief:

- The statements of fact contained in this report, on which the analysis, opinions, and conclusions expressed herein are based, are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

- The data used in this report was obtained from sources believed to be reliable. All facts known to us that have bearing on the values presented in this report have been considered, and no facts of importance have been intentionally omitted.

- We have no present or prospective interest in the business that is the subject of this report, and we have no personal interest with respect to the parties involved.

- We have no bias with respect to the business that is the subject of this report or the parties involved with this assignment.

- Our engagement in this assignment was not contingent on developing or reporting predetermined results.

- Our compensation for completing this assignment is fee-based and is not contingent on the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- Our analyses, opinions, and conclusions are developed, and this report is prepared, with the intent of being in conformity with the Uniform Standards of Professional Appraisal Practice of The Appraisal Foundation, the Principles of Appraisal Practice and Code of Ethics of the American Society of Appraisers.

- Stout Risius Ross, LLC has not performed valuation services, as an appraiser or in any other capacity, regarding the business that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

- In addition to the undersigned, Ioannis Michopoulos, Lily Cheng, Vasileios Choutouris, and Stelios Kouroumidis assisted in the research, analysis development, and report preparation for this engagement.

Harris I. Antoniades, PhD, CFA
Managing Director

# E.   Statement of Qualifications





Los Angeles, CA USA
**Office:** +1.310.601.2565
**Mobile:** +1.310.498.0194
hantoniades@stout.com

## Education

Ph.D., Chemical Engineering,
University of California at Los Angeles
Post Graduate Diploma, Management,
Mediterranean Institute of
Management, Cyprus
Engineering Diploma, Chemical
Engineering, National Technical
University of Athens, Greece

## Designations

Chartered Financial Analyst (CFA)
Financial Risk Manager (FRM)

## Practice Areas

Portfolio Valuation
Complex Securities & Financial
Instruments
Corporate Tax Planning and
Compliance
Financial Reporting
Predictive Economics

Harris I. Antoniades is a Managing Director and the Complex Securities & Financial Instruments group leader with over 20 years of experience in complex securities and derivatives valuations, advance financial analytics, and risk management issues.

Mr. Antoniades' valuation experience encompasses a broad range of asset classes, including all types of derivatives, structure products, fixed income securities, and share based awards for financial and tax reporting purposes. He has also provided valuation advisory services to public and private companies, boards of directors, and other fiduciaries in connection with strategic planning, merger & acquisition investment decisions, bankruptcy and reorganization, shareholder disputes, and other corporate, tax and litigation related matters.

Mr. Antoniades lectured in finance at the University of Cyprus, where he developed and taught courses on Business Valuations, Corporate Financial Management and Financial Risk Management to M.B.A. students. He was also a visiting lecturer at the Mechanical and Aerospace Engineering department at UCLA.

Prior to joining Stout, Mr. Antoniades was a Director with PwC where he led projects for the Value Analytics & Derivatives group within Valuations.  Before that he worked at Houlihan Lokey, Ernst & Young, and Standard & Poor's.

# E.   Statement of Qualifications





**New York, NY USA**
**Office:** +1.646.807.4222
**Mobile:** +1.929.283.8406
imichopoulos@stout.com

## Education

Master of Finance (Mfin)
MIT Sloan School of Management

B.S., Accounting and Finance,
University of Macedonia, Economic
and Social Sciences, Greece

## Practice Areas

Portfolio Valuation
Complex Securities & Financial
Instruments
Financial Reporting

Ioannis Michopoulos is a Director in the Complex Securities & Financial Instruments group with experience in complex securities and derivatives valuations, advance financial analytics, and risk management issues.

Mr. Michopoulos has provided valuation advisory services to public and private companies, boards of directors, and other fiduciaries in connection with complex business transactions and financial instruments, portfolio valuations, strategic planning, consultation on quantitative topics, bankruptcy and reorganization, shareholder disputes, and other corporate, tax and litigation related matters.  In addition, Mr. Michopoulos' valuation experience applies to a broad range of asset classes, including all types of equity related instruments, embedded derivatives and exotic options, fixed income securities, various structured products and share based awards for financial reporting as well as tax and estate planning purposes.

Prior to joining Stout, Mr. Michopoulos was a graduate student in the Master of Finance program of MIT Sloan School of Management. During the Joint Finance Research Practicum at MIT, he had the opportunity to work with Lazard Asset Management and perform multiple quantitative analyses and develop predictive models for certain emerging stock markets. Mr. Michopoulos had also the opportunity to perform extensive equity research analysis for Fidelity Management & Research Co., within the Joint Proseminar in Corporate Finance and Investment Banking.

Prior to MIT, Mr. Michopoulos earned his B.S. in Accounting and Finance at University of Macedonia, Economic and Social Sciences in Greece, where he graduated first among his peers and with the second highest grade in the history of the department.  During his undergraduate studies, Mr. Michopoulos was the head of the student research group of Accounting and Finance department, and at that role, he performed numerous applied finance research projects, which have been published in various business and academic journals as well as international conferences.

**Professional Memberships**

- Mensa International – The High IQ Society

# E.   Statement of Qualifications





**New York, NY USA**
**Office:** +1.646.810.4308
lcheng@stout.com

### Education

M.S., Mathematics in Finance
NYU Courant Institute of Mathematics

B.S., Mathematics
Emory University

### Practice Areas

Complex Securities & Financial
Instruments
Portfolio Valuation
Financial Reporting.

Lily Cheng is a Vice President in the Complex Securities & Financial Instruments group with experience in complex securities and derivatives valuation, as well as advanced financial analytics.

Ms. Cheng has provided valuation advisory services to publicly traded and privately owned companies, private equity and credit portfolio funds, boards of directors and other fiduciaries in connection with estate planning, merger & acquisition investment decisions, and other corporate-, tax-, and litigation-related matters.

Ms. Cheng's valuation experience applies to a broad range of asset securities, including but not limited to various equity-related instruments, embedded derivatives, fixed income securities and structured products, and other instruments like contingent considerations.

Prior to joining Stout, Ms. Cheng earned her master's degree in Mathematics in Finance from Courant Institute of Mathematics in New York University and had experience in quantitative research in an asset management firm in New York City.

**<u>Exhibit B</u>**

**Curriculum Vitae of Joel E. Cohen**



Joel E. Cohen

**Stout**
120 West 45th Street
New York, NY 10036

jcohen@stout.com
646-810-4407

*Over 20 years of experience in the dispute, forensic, and insolvency industry, most specifically focused in the financial services and asset management industry.*

<u>Career Experience</u>
*Stout Risius Ross, LLC*
Managing Director and New York Office Leader                    October 2018-Present
- Leading independent advisory firm specializing in Investment Banking, Valuation Advisory, Dispute Consulting, and Management Consulting

*Murray Analytics, Inc.*
Managing Director                                              October 2016-2018
- Professional services firm, founded by former Hedge Fund Manager, Marti Murray, and subsequently acquired by The Brattle Group, specializing in corporate restructuring, financial advisory, litigation support, and complex valuation products and services

*Duff & Phelps, LLC*
Director, Dispute & Investigations                                    2009-2016
- Managed a team of CPAs, economists, attorneys and finance professionals in executing a diverse array of complex engagements related to the various hedge fund/private equity fraud, valuation matter, insolvencies and litigations that have characterized the last ten years of the asset management industry
- Engagements include aspects of asset tracing, internal investigations and damage calculations

Director & Co-Chair, Dispute Advisory and Forensic Services (Kinetic Partners)
- One of the original team members of Kinetic Partners
- Led team providing targeted services to the asset management industry
- Kinetic Partners was purchased by Duff & Phelps, LLC in 2014

*Citigroup* - Global Wealth Management (Legal and Compliance)              2007-2009
Senior Vice President
- Responsible for managing large scale internal corporate investigations and reviews
- Co-managed broad Citigroup Compliance reengineering and reorganization projects

*Hudson Valley Systems, Inc.*                                                                2008
Forensic Audit Advisor
- Comprehensive review, investigation and verification of the system implementations, deliverables and work products related to all contracts between The City of New York and Hudson Valley Systems, Inc

*Deloitte Financial Advisory Services*                                             2001-2007
Manager, Forensic and Dispute Services
- Responsible for managing accounting malpractice, insurance claim dispute, fraud investigation projects and worked with upper echelon law firms to financially and economically consult during corporate litigation

*Gabel Associates*                                                                         1997-2001
Associate
- Aggregated and entered consumer energy purchasing information
- Created, implemented and maintained a file system for large client information database

Professional and Representative Experience
*Testifying Expert to Private Equity Funds within International Abraaj Structure - Largest Private Equity Fraud*
- Retained by Cayman and UK counsel to offer expert valuation report over multiple asset classes including, venture capital interests, private equity interests, real estate (London and Dubai), marine vessel and artwork within a disputed settlement arrangement as part of the workout and official liquidations related to the Abraaj fraud from 2018. Testimony taken (Cayman Proceeding).

*Expert to Interim Management of Celsius Networks LLC, Chapter 11 - One of the Largest Cryptocurrency Companies*
- Retained by counsel to offer highly scrutinized expert valuation report for asset classes of one of the largest digital asset Chapter 11 bankruptcies. This included working with interim management, the financial advisor (Alvarez and Marsal) and the court to provide a valuation of the cryptocurrency holdings, lending and credit platform and alternative assets, all totaling over $3.2 billion. Testimony taken.

*Monitorship of Large Real Estate Conglomerate Consisting of Over 500 entities – Supreme Court of the State of New York, New York County*
- Retained by the Monitor appointed by the New York State Supreme Court, as financial consultant in a civil fraud lawsuit filed by the Office of the Attorney General of the New York.
- Retained to review the submissions of all financial information and disclosures, sale processes, disposal, refinance or dissipation of assets.

*Receivership of StraightPath Venture Partners LLC, et al - Securities and Exchange Commission (SDNY)*
- Retained by the Hon. Melanie Cyganowski as Financial Advisor to the estate consisting of a large private equity structure ($400 million in AUM - 11 entities) to advise and assist in reviewing and analyzing the books and records, to confirm the asset acquisitions, the investors and partners involved and report to the court on various financial, economic forensic accounting related topics.
- Retained to manage a team of professionals responsible for managing the finance and investment activities of the private equity entities and the disposition of assets to creditors and investors.

*Receivership of Legend Venture Partners LLC - Securities and Exchange Commission (SDNY)*
- Retained by the Hon. Melanie Cyganowski as Financial Advisor to the estate consisting of a large private equity structure ($35 million in AUM - 6 entities) to advise and assist in reviewing and analyzing the books and records, to confirm the asset acquisitions, the investors and partners involved and report to the court on various financial, economic forensic accounting related topics.
- Retained as a result of the meaningful and related work to the matter above (StraightPath Venture Partners LLC) at the direct recommendation of the SEC.

*Damage and Lost Profit Calculation for Largest Translation and Technology Company*
- Retained by counsel to calculate lost profits, unjust enrichment and damages for a large translation company embroiled in a dispute remanded to arbitration.  Testimony taken.

*Receivership of ACP X, LP*
- Retained by the Receiver appointed by the New York Office of the Attorney General as Financial Advisor to the Receiver of a private equity structure to manage the investment activities, advise and assist in reviewing and analyzing the books and records of the entities, report to the court on various forensic accounting related topics and distribute assets to creditors and investors.

*Private Investment Fund Industry Custom and Practice*
- Retained by counsel to large private investment fund structure ($24 billion of AUM) to opine on the hedge fund and private equity structure and various practices related to management fees, performance fees and compensation and their alignment with industry custom and practice.

*Expert to Liquidating Trustee of Largest Cryptocurrency Chapter 11*
- Retained by counsel to liquidating trustee of the largest digital asset Chapter 11 bankruptcy at the time to act as expert consultant in the litigation over the transfer of assets involved in three large cross border federal litigation matters. This included the reconstruction of the books and records of the company, a valuation of the underlying assets and forensic investigation and asset tracing of related business operations and behavior.

3

*Damage and Lost Profit Calculation for Insurance Carrier*
- Retained by counsel to insurance carrier and underlying technology company to calculate lost profits and damages for an educational institution client embroiled in a dispute in federal court.  Testimony taken.

*Retirement Trust and Private Investment Dispute*
- Retained by general counsel of one of the largest healthcare coverage companies to assist with the aftermath of a private fund management investment loss by a retirement trust and benefits company.  This included tracing asset allocations, investment protocols and the testing of methodologies and valuations.

*Private Investment Dispute*
- Retained by counsel to assist with a dispute over the handling of a trust and investment portfolio that involved allegations of misappropriation of assets against a large financial institution.  This included a review of alleged mismanagement of public and private securities, calculation of damages, creation of various market simulations and models and consulting regarding industry custom and practice.

*Cross Border Financial Restructuring / CRO*
- Retained by counsel to the domestic subsidiary of a large notable European kitchen manufacturer upon their entry into German insolvency administration.   Our work consisted of management of cash flows, assessment of corporate distress, creation of financial reports and regular consultation with the CEO and her counsel regarding the finances of the company and potential insolvency or turnaround procedures.  This resulted in the successful sale of the company.

*Damage Calculation for Hospitality Dispute*
- Retained by counsel to employee of hospitality company in an arbitration where we provided a complex calculation of lost wages.  Testimony taken.

*Consultant to Receiver*
- Assisted Receiver of Private Equity Funds to better understand the complex structure of investments and offer guidance on the valuation, financial assessment, and marketability of underlying assets.

*Hedge Fund Wind down / Asset Transfer*
- Retained by hedge fund manager to help facilitate the wind down of a special situations portfolio of assets which included providing forensic consulting and issuing a report on the range of fair value of the investment holdings for the purpose of executing an arm's length transaction.

*Expert to Liquidating Trustee*
- Retained by counsel to liquidating trustee of a large hedge fund to act as expert consultant in the litigation over a sale transaction of bonds consummated outside of the restrictions of a global class action legal and U. S. Bankruptcy plan settlement. This included a valuation of the underlying assets and forensic investigation and asset tracing of related business operations and behavior.

*Forensic Investigation and Remediation*
- Retained by counsel and board of directors of a large scale not-for-profit to review the finance function of the organization, report on findings and issue a remediation report. Issues to review include the structure of the accounting function, labor, internal controls, segregation of duties, revenue recognition and expense management.

*Contested Receivership*
- Retained by counsel to submit an expert report and testimony on the financial state, accounting, management and solvency of a group of women's health supplement companies where a Motion to Appoint a Receiver was submitted by the Connecticut Hedge Fund that provided funding. (matter pending)

*Asset Tracing / Litigation Support*
- Retained by special counsel to Chapter 11 Trustee of Ponzi Scheme to trace assets across a complex structure of hedge funds and private equity companies across various Offshore and Onshore jurisdictions.

*Special Consultant / Litigation Support*
- Retained by Offshore Trustees and Directors to various international Trusts and Companies embroiled in an international criminal fraud action to consult on complex on shore assets and prepare for negotiations and sale processes under the scrutiny and approval of the United States Department of Justice.

*Misappropriation of Assets*
- Retained by external counsel and principal of related companies to review, and render a court accounting of two of the related entities in the Supreme Court of the State of New York. This involved the evaluation of the "cash in" and "cash out" of the companies.
- Retained by external counsel for expert consulting to investigate and trace assets flowing from foreign funds into various entities.

*For-Profit Education Investigation and Interim Management Role*
- Retained by external counsel and board of directors to review, investigate and report on fraudulent regulatory filings, remediate issues raised as a result and assist interim management advisor in managing and improving the company.

*Regulatory Investigation*
- Retained by external counsel and general counsel to review, investigate and report on industry custom and practice for investment management service provider and provide objective analysis of fund investments and activities amidst a fraud and SEC enforcement action.

*Private Equity / Real Estate Internal Investigation*
- Retained by external counsel and private equity firm to investigate, trace assets, expense and funds related to a join real estate / construction endeavor and rehabilitation project.
- Examined all aspects of the project and reviewed the financial data involved with all parties.
- Interviewed key individuals and traced all assets of all parties involved.

*Venture Capital Internal Investigation*
- Retained by external counsel and general counsel to investigate the dealings of the CEO of a portfolio company, post-closing of a venture capital investment agreement.

*Private Equity Dispute and Internal Investigation*
- Retained by majority investor to complete a forensic review of the actions of the general partner of investment company after potentially illicit behavior was discovered involving prepaid management fees.

*Asset Tracing*
- Retained by counsel to perform an in depth review of corporate and executive financial footprints.
- Asset tracing of individuals and companies since inception post multimillion dollar judgement in Federal Court.

*Soundview Elite, Ltd., et al*
- Assisted the Financial Advisor retained by the Chapter 11 Trustee to six debtor funds as a result of the alleged misdealing of hedge fund manager, Alphonse Fletcher.
- Assisted counsel and US Trustee with the creation of a cash model and detailed analyses tracing all interfund transactions along with managing investments, accounting, FATCA requirements and all statutory requirements of debtors.

*Bear Stearns High-Grade & Enhanced Structured Credit Strategies (Overseas) Ltd.*
- Assisted Joint Official Liquidators with asset recovery and fund wind down.
- Managed liquidators' efforts pursuing litigation claims (in excess of $1 billion) and accompanying forensic work and analysis.

*Hedge Fund of Funds*
- Supported liquidator on the wind down of a large scale Hedge Fund of Funds.
- Drove litigation claims against underlying funds for potentially fraudulent conduct and investigate valuation issues.

6

*Private Investment in Public Equity (PIPE) Dispute*
- Retained to investigate and opine on the asset valuation and liquidity of specific asset classes that were part of a hedge fund portfolio.
- Assisted counsel in resolving the mismanagement of these assets for the investor.

*Ariel Fund Limited*
- Managed Cayman Islands liquidation and U.S. Receiver with asset recovery and fund wind down pursuant to Order of the New York State Supreme Court.

*Highview Point Offshore Limited*
- Retained by a law firm to lead a team of 30+ professionals to determine if a hedge fund's capital was used to facilitate a Ponzi scheme.
- Computed the proof of claim amount for the receivership and performed detailed asset tracing to determine the parties that paid in to the fund and those that benefited.
- Defended against litigation claims of comingling of funds, piercing the corporate veil and the legitimacy of investment trading and strategy.

*Palm Beach Finance I & II Liquidating Trusts*
- The funds were involved in a $3.5 billion dollar Ponzi scheme perpetrated by Thomas Petters.
- Retained to assist with various forensic accounting services including asset tracing, claw back & preference claim analysis, cash in/cash out analysis, and round tripping analysis.
- Our team provided litigation support to the lawyers handling cases against third parties that allegedly wronged the funds, such as, banks, individuals, law firms, corporations and auditors.

*Vicis Capital Management*
- Retained by counsel and trustee to secure all books and records of the company and perform an investigation and analysis pertaining to the investments and transactions of the company.
- Our team provided forensic accounting and litigation support to any legal actions or dealings.

<u>Speaking Engagements</u>
- Hedge Fund Fraud:  Perpetrators and Victims
- Rogue Trading and Market Abuse
- Using Technology to Drive Value-Based Client-Law Firm Relationships
- Detecting Financial Fraud
- Fund Disputes on the Rise – Emerging Trends & Practical Solutions
- The (GP) Replacements – Creative Solutions within Private Equity
- Hunting Zombie Funds – Kill or Cure?
- Financial Statements and Red Flags – "What Lawyers need to know" discussing red flags real case studies. This is an accredited CLE program
- When Financial Fraud Occurs:  The Liabilities of Professional Service Providers
- Portfolio Litigation Funding and its Use by Insolvent Estates
- Detecting Fraud in Closely Held Businesses

- Litigation Funding in Bankruptcy
- Strategic Use of Independent Directors in Multi-Jurisdictional Insolvency Proceedings
- Enter the Offshore Jurisdictions for Investigation and Insolvency
- Litigation Finance:  A Conversation About The Basics and Latest Complexities
- Business Interruption: COVID-19 - Changing the Playbook:   What CFO's are Planning?
- Private Funds Compliance Playbook
- Liquidity Stress and Monetizing Legal Assets During the Great Shutdown
- Men as Allies
- Insolvency and Restructuring Update 2020
- Regulatory Review and Litigation Update:  Private Funds 2021
- Federal Equity Receiverships – Financial Poise Three Part Series
- Cross Border Fraud
- Unlocking Insights: Litigation and Enforcement Update
- INSOL International:  Hot topics in Insolvency and Restructuring

Testimony Experience

- On behalf of Plaintiff in *Zunzorovski v. Jacaranda*:  Deposition, August 2019 - Arbitration
- On behalf of Defendants in *College Essay Optimizer, LLC v. Simple Solutions, Inc.*: Deposition, November 2021 – United States District Court, District of New Jersey
- On behalf of Plaintiff in *TransPerfect Translations International, Inc. v. Milos Milosavljevic and Emisia GmbH:* Trial Testimony, May 2023 – Arbitration
- On behalf of the debtor in *Celsius Network LLC, et al. (Chapter 11 Bankruptcy)*: Trial Testimony, October 2023, SDNY
- On behalf of Defendant in *Abdulhameed Dhia Jafar v. Abraaj Holdings, GHF General Partner Limited, The GHF Group Limited and Abraaj General Partner VIII Limited*: Trial Testimony, December 2023 - Grand Court of the Cayman Islands, Financial Services Division

Publications

- *Portfolio Litigation Funding and its Use by Insolvent Estates*, A Lexis Practice Advisor® Practice Note by Joel E. Cohen, Stout Risius Ross, LLC; and Ken Epstein, Bentham IMF
- *Portfolio Litigation Funding and Its Use by Insolvent Estates*, The Journal, A Stout Publication, by Joel E. Cohen, Stout Risius Ross, LLC; and Ken Epstein, Bentham IMF
- *Regulatory Challenges in Illiquid Asset Valuation Litigation,* The Journal, A Stout Publication, by Joel E. Cohen, Colin Gray, Jamie Spaman, and Nick Morgan of Paul Hastings
- *A Trustee's Choice:  Hire Contingency Counsel or Use Litigation Funding*, LexisNexis by Joel Cohen and Ken Epstein, Omni Bridgeway
- *Fending Off Bankruptcy Preference Claims,* Law360, by Joel E. Cohen and Howard Magaliff
- *Fixing Ch. 11 For Small Biz: SBRA's Puzzling Preference Edit*, Law360 by Joel E. Cohen and Howard Magaliff

- Practioner's Toolbox, Portfolio Litigation Funding, NAFER NEWS by Joel E. Cohen, Amy T. Geise and Ken Epstein
- *Private Funds Should Prepare for More SEC Oversight in 2022*, Law360, by Joel E. Cohen and Jaclyn Grodin

Professional Associations and Affiliations

*International Insolvency Institute*                                          2024-Present
- Member by Nomination Only

*American Bankruptcy Institute*                                            2014-Present
- Member / Cross Border Committee / Panelist

*Association for Insolvency and Restructuring Advisors*            2016-Present
- Member / Panelist

*National Association of Federal Equity Receivers (NAFER)*         2017-Present
- Member / Author

*National Association of Certified Valuators and Analysts (NACVA)*
- NACVA 2018 40 Under Forty Recognition Program                   2018

*Anti-Defamation League (ADL)*                                          2014-Present
- New York Regional Board Member
- National Commissioner / Leadership 2020 / ADL ACT Co-Chair
- The Sidney Wilf Distinguished Young Leadership Award Recipient   2018

*Her Justice*                                                                    2014- 2017
- Volunteer / Signatory to the Supreme Court Project

Certifications
Certified Fraud Examiner (CFE)

Education
*Rutgers College, New Brunswick, NJ*
B.A.: Economics (with Accounting Focus) 2001

9