

570 Lexington Avenue, Suite 3500
New York, NY 10022
212-466-6400

March 19, 2024

**VIA ECF**
The Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Samuel Bankman-Fried*, 1:22 CR 673 (LAK)

Dear Judge Kaplan:

      This letter is respectfully submitted on behalf of defendant Sam Bankman-Fried in reply to the government's Sentencing Memorandum, dated March 15, 2024 (ECF 410, "Gov. Br.").

      The government's memorandum is disturbing. With marked hostility, the memorandum distorts reality to support its precious "loss" narrative and casts Sam as a depraved super-villain; it attributes to him dark and megalomaniacal motives that fly in the face of the record; it makes apocalyptic prophecies of recidivism; and it adopts a medieval view of punishment to reach what amounts to a death-in-prison sentencing recommendation. That is not justice.

<u>No Loss</u>

      Section 3553 allows the Court to consider that the bankruptcy proceeding will result in customers and lenders being made whole as of the bankruptcy petition date. The government, predictably, downplays this fact. The truth is, there were never losses. The money has always been available. Assets remain. Each victim quoted in the government's opposition will receive 100 cents on the dollar -- plus interest.[1] This would be impossible if the estate's assets had disappeared into Sam's personal pockets.

      The government concedes that the Court can make "credits against loss" in cases "involving collateral pledged or otherwise provided by the defendant." Gov. Br. at 39-40. This is such a case. *See* Trial Tr. 1227 (discussion of collateral posted in the form of FTT, Robinhood stock, and Grayscale trust shares). The government also refuses to give Sam any credit for funds Alameda paid to FTX prior to the bankruptcy, refusing to acknowledge Sam's good faith effort to process client withdrawals. *See* Ex. A. The government sees only red.

---

[1] *See In re FTX Trading Ltd.*, Case No. 22-bk-11068 (JTD) (Bankr. D. Del. March 6, 2024), ECF 8676 at ¶¶ 12, 18.

Given that full payment of creditor claims from the bankruptcy estate is inevitable, the government instead laments that "nearly a year and a half" has passed without any payment and that Sam has not "provided any significant assistance" to recovery efforts. Gov. Br. at 40, 51-52. But it has never been Sam standing in the way.[2] Delay surely would have been reduced if Sam had not been rebuffed in his repeated efforts to assist with identifying "meaningful value" in FTX. *See* ECF 186-1, 186-2, 186-3 (attached as Ex. B); *see also* ECF 407-10. And the government omits that one of the reasons the Debtors have delayed finalization of the Chapter 11 plan is that they "continue discussions with the U.S. Department of Justice with respect to asset forfeitures and other governmental agencies regarding voluntary subordination of governmental claims behind the victims . . ." *In re FTX Trading Ltd.*, Case No. 22-11068 (JTD), ECF 8621 at 10 (Bankr. D. Del. Mar. 5, 2024). Thus, the same government seeking life in prison for Sam because no one has yet been repaid is itself partially responsible for the delay.

False Motive

Hellbent on portraying Sam as a monster, the government makes repeated references to his "unmatched greed" and his supposed ruthless desire to maximize his personal wealth. Gov. Br. at 2, 52, 94. This is a simple, seductive narrative. It is also a false one.

The word "greed" was never uttered by any trial witness. And the government snubs the people who have known Sam for years and tout his selflessness. The government also continues its conflation of corporate growth with personal greed. *See* Gov. Br. at 94-95. They fixate, still, on Sam living "in an expensive penthouse apartment" – while ignoring that he *paid rent for his room,* that he only rented one-tenth of the apartment, that FTX rented out corporate housing to scores of employees, and that the real estate was always an asset *of the company*. Nor is corporate sponsorship a marker of personal greed; it is garden-variety marketing.[3] The government also derides Sam's charitable giving because, they say, it was done with "other people's money." Gov. Br. at 95. They turn a blind eye to the fact that Sam gave away his earnings well before Alameda or FTX ever existed. *See* ECF 407 at 1.

Risk of Recidivism

The government's recidivism discussion stacks conjecture on top of hypothetical on top of supposition. Gov. Br. at 87-90. According to the government, it is "*conceivable*," that "*someday*," Sam "*may* feel compelled" to find people who "*may* hand over their money," concluding that "history *could* repeat itself." Gov. Br. at 87-90. That is not proof of recidivism. That is a work of fiction.

---

[2] *See* Ex. C, authorizing John Ray III omnibus corporate authority.
[3] *See e.g.,* Bank of America Stadium, TW Waterhouse Centre, Citizens Bank Park (*Stadium naming rights*, ESPN.com (September 29, 2023, 7:43 AM ET), https://www.espn.com/sportsbusiness/s/stadiumnames.html).

Offenders with no criminal history, like Sam, are the least likely to re-offend. Nor does offense level predict recidivism. And offenders with a college education are less likely to recidivate.[4] In the words of Daniel Gitner, now Chief of the S.D.N.Y.'s Criminal Division:

> [L]ong sentences often are not required to deter recidivism among business fraud offenders. White-collar offenders ... often become involved in illegal conduct as a result of their position within a legitimate enterprise or in the context of a legitimate financial relationship with others. That position or relationship is often destroyed, as is the ability to forge new ones, through the felony conviction alone. Similarly, research shows that the threat of short prison terms has a significant deterrent effect on the typical white-collar would be criminal.[5]

There are many other reasons why Sam would not re-offend, including that he would sooner suffer than bring disrepute to any philanthropic movement.

Unsupported Claims and Attacks

The government makes a host of other curious, unsupported and exaggerated claims. They say that "in cases with $200 million or more in losses, courts have typically imposed a sentence of 50 years imprisonment or more." Gov. Br. at 97. That is misleading. JSIN data, which aggregates five years of data for offenders sentenced under the same primary guideline and same final offense level, reflects much lower numbers.[6] The government's "comparable defendants" chart is also way off base: 9 of the 13 involved frauds extending beyond 8 years; several lasted decades (Madoff, Stanford, Wasendorft, Farkas); two attempted to flee the country (Stanford, Rothstein); and one was a recidivist (Nicholson).

They also allege that Sam "shirked," "evade[d]," and "deflect[ed] blame" (Gov. Br. at 1, 27), belittling his repeated, earnest statements to the contrary. *See, e.g.,* December 2022 proposed written Congressional testimony ("I fucked up…and so I'm dedicating as much of myself as I can to doing right by customers.").[7] The government also takes umbrage with Sam's protestations of innocence and his temerity in putting the government to its proof at trial. *See* Gov. Br. at 84-85. Sam is hardly the first defendant to acknowledge accountability without conceding criminal culpability and to assert his basic constitutional rights. *See e.g.*, Sentencing Transcript at 24:6-20, *United States v. Goyal*, S1 19 Cr. 844 (CS) (March 3, 2022), ECF 134 ("THE COURT: Well, you're not asking me to hold it against the defendant that he exercised his

---

[4] *See* U.S. Sent. Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* 18-24 (March 2016), https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview.
[5] Gabrielle S. Friedman, Kan M. Nawaday, Daniel M. Gitner, *Challenging the Guidelines' Loss Table*, Federal Sentencing Reporter, Volume 20, Number 3, February 1, 2008, 2008 WL 2201041, at *178 (internal citations omitted).
[6] *See* U.S. Sent. Comm'n, Joint Sent. Info., available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard (average sentence is 283 months, and 272 months with two non-custodial cases; applying § 2B1.1, the median sentence length is 156 months).
[7] *See* December 2022 Proposed Written Congressional Testimony Notes, available at https://s.wsj.net/public/resources/documents/SBFwrittentestimonynotes12122022.pdf.

constitutional rights, are you? . . . Everybody's entitled to say to the government prove it. He doesn't have to admit anything.").

Conclusion

At age 32, the government wants to break Sam Bankman-Fried. They ignore completely his condition and vulnerabilities. Instead, they urge, menacingly, that the sentence imposed must "disable" him even from "being in a position" where he theoretically "could" perpetrate a fraud. Gov. Br. at 86. That is a horrifying interpretation of specific deterrence.

We have yet to identify a federal defendant convicted of a non-violent offense who served a 40-50 year sentence and was released – perhaps because inmates suffer a two-year decline in life expectancy for each year of imprisonment.[8] Crushing Sam in this way is unnecessary.

> Hope is the necessary condition of mankind … A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment.[9]

John S. Martin, a former District Judge, recently addressed "the overly long sentences that are being imposed every day in our federal courts on nonviolent offenders."[10] He wrote that "[w]e have lost all sense of how horrible it is to spend even one year in prison, far away from family and friends . . . and under constant fear of an unprovoked attack by another inmate." *Id.* He concluded that "[w]e could achieve greater deterrence by sentencing Bankman-Fried to receive 30 lashes on the street outside the New York Stock Exchange . . . If we did so, there would be hue and cry about the cruelty of the criminal justice system. But 100 years in prison, ho hum." *Id.*

Sam has lost everything and almost everyone. If the government truly believes that Sam deserves to "return to liberty," (Gov. Br. at 70), then a significant downward variance from the proper guidelines range of 63-78 months is called for under § 3553, so that he may do so promptly.

---

[8] *See* Evelyn J. Patterson, *2013: The Dose-Response of Time Served in Prison on Mortality: New York State, 1989-2003*, American Journal of Public Health 103, 523-528.
[9] *United States v. Carvajal*, Case No. 04-CR-222 (AKH), 2005 WL 476125, at *6 (S.D.N.Y. Feb. 22, 2005); *see also United States v. Musgrave*, No. 15-3043, ECF 29-2 at 7 (6th Cir. 2016) ("[N]on-imprisonment sentence is …a significant and severe punishment...").
[10] John S. Martin, *Cruel But Not Unusual: The Sentence Recommended for Sam Bankman-Fried*, New York Law Journal (March 12, 2024), https://www.law.com/newyorklawjournal/2024/03/12/cruel-but-not-unusual-the-sentence-recommended-for-sam-bankman-fried/.

                                        Respectfully submitted,

                                        /s/ Marc L. Mukasey
                                        Marc L. Mukasey
                                        Torrey K. Young

cc:      All counsel (via ECF)