# EXHIBIT A

1

```
 1                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK
 2   -----------------------------x
                                      20-CR-440(AMD)
 3   UNITED STATES OF AMERICA,
                                      United States Courthouse
 4                                    Brooklyn, New York

 5        -against-                   August 24, 2023
                                      10:30 a.m.
 6   RICHARD GARY,

 7        Defendant.

 8   -----------------------------x

 9        TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
            BEFORE THE HONORABLE ANN M. DONNELLY
10               UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:      BREON S. PEACE, ESQ.
                              UNITED STATES ATTORNEY
13                            Eastern District of New York
                              271 Cadman Plaza East
14                            Brooklyn, New York 11201
                              BY:  ANDREW GRUBIN, ESQ.
15                            Assistant United States Attorney

16   For the Defendant:       FEDERAL DEFENDERS OF NEW YORK
                              One Pierrepont Plaza
17                            Brooklyn, New York 11201
                              BY:  KANNAN SUNDARAM, ESQ.

18

19   Also Present:            JENNIFER BAUMANN, USPO

20
     Court Reporter:          AVERY N. ARMSTRONG, RPR, NYRCR
21                            Phone:  718-613-2419
                              Fax:    718-613-2639
22                            Email:  Aarm.edny@gmail.com

23
     Proceedings recorded by mechanical stenography.  Transcript
24   produced by computer-aided transcription.

25
```

PROCEEDINGS                                    2

1            (In open court.)

2            THE COURTROOM DEPUTY:  This is criminal cause for

3   sentencing, docket number 20-CR-440, USA versus Richard Gary.

4            Counsel, state your appearance, Government first.

5            MR. GRUBIN:  Good morning, Your Honor.

6            Andrew Grubin for the Government and...

7            MS. BAUMANN:  Jennifer Baumann on behalf of the

8   probation department.

9            Good morning, Your Honor.

10            THE COURT:  Good morning.

11            MR. SUNDARAM:  Kannan Sundaram, Federal Defenders of

12   New York for Mr. Gary.

13            THE COURT:  Good morning.  Good morning, Mr. Gary.

14            THE DEFENDANT:  Good morning.

15            THE COURT:  All right.  Just a reminder to both

16   sides, make sure your microphones are on.  Don't talk too

17   fast.

18            Okay.  So this is a sentencing proceeding.  Mr. Gary

19   pled guilty before Judge Mauskopf back in October of 2020, to

20   the only count of an indictment that charges him with

21   receiving approximately 481 counterfeited United States postal

22   money orders with a total purported value of $480,038 with the

23   intent that they will be used as true and genuine in violation

24   of 18 U.S.C. Section 473.

25            I'm going to go over the materials that I have

PROCEEDINGS                              3

1    reviewed in preparation for the sentencing.  I've obviously

2    read the presentence investigation report, as well as the

3    recommendation from probation as to sentence.

4            I'm assuming you have that, Mr. Sundaram; is that

5    right?

6            MR. SUNDARAM:  Yes.

7            THE COURT:  The Government has it, too?

8            MR. GRUBIN:  Yes, Your Honor.

9            THE COURT:  Okay.  Oh, you know what, I just want to

10   ask a technical question.  I just want to see the parties at

11   the side.  No need for the court reporter.  Just for a second.

12           (Whereupon, an off-the-record discussion was held at

13   this time.)

14           THE COURT:  All right.  And I've received the

15   objections from the Government and from Mr. Sundaram, to

16   aspects of the presentence investigation report.  There was

17   also an addendum addressing the Government's objections from

18   probation.

19           I did review the transcript of the plea before Judge

20   Mauskopf, and then I also reviewed the recommendations or the

21   positions of each party on what the sentence should be.  And

22   Mr. Sundaram's submission included a transcript of a

23   sentencing proceeding before Judge Amon, which I also read.

24           I also neglected to ask Mr. Sundaram, does Mr. Gary

25   have family in the courtroom?

PROCEEDINGS                    4

1           MR. SUNDARAM:  Yes.  In the -- seated on the bench

2    is his son, also named Richard, and next to him is Charles

3    Marcus who is a long-time friend of Mr. Gary's and also one of

4    the sureties on the bond.

5           THE COURT:  All right.  Good morning to you.

6           MR. MARCUS:  Good morning, Judge.

7           THE COURT:  All right.  I've kind of gone back and

8    forth between what I have.

9           Did the parties agree that I have all the relevant

10   material?

11          MR. GRUBIN:  Yes, Your Honor.

12          MR. SUNDARAM:  Yes.

13          THE COURT:  Mr. Sundaram, I know you and Mr. Gary

14   have reviewed the presentence report and discussed it; is that

15   correct?

16          MR. SUNDARAM:  Yes.

17          THE COURT:  And is either side seeking an

18   evidentiary hearing on any issue?  From the Government?

19          You're not seeking an evidentiary hearing?

20          MR. GRUBIN:  No, Your Honor.

21          MR. SUNDARAM:  No.

22          THE COURT:  All right.  So what I'm going to do is

23   go over the calculation of the advisory guideline range.

24   There's a fairly, I think, interesting and somewhat

25   complicated issue about the loss.  I think this is largely an

PROCEEDINGS                          5

1   academic discussion, but I am required to calculate the

2   guideline range, so I'll go through that.  And if the parties

3   want to be heard on it further, I'll hear them.

4            But for this crime, there is a base offense level of

5   seven, according to probation.  Probation has added an

6   18-point adjustment, because the offense involved counterfeit

7   money orders with a total value of $4,800,380 (sic) which

8   represents intended loss.  Probation also added two points

9   because a substantial part of the scheme was committed from

10  outside of the United States.  There are additional two points

11  added because the offense involved possession and trafficking

12  of an authentication feature which is a hologram watermark.

13  Probation subtracted two points because Mr. Gary was a minor

14  participant in the offense.  And so that leaves an adjusted

15  offense level of 27.

16           So I don't know how much time you all want to spend

17  on this, but there is -- starting with this question of what

18  the appropriate base level should be.  Probation calculated

19  the base offense level at seven, under Section 2B1.1 of the

20  guidelines, and then the Government takes the position that

21  the loss -- the Section 2B5.1 should apply.

22           2B5.1 applies to counterfeit bearer obligations of

23  the United States, while 2B1.1 applies to larceny,

24  embezzlement, and other forms of theft, offenses involving

25  stolen property, property damage or destruction, fraud and

PROCEEDINGS                    6

1   deceit, forgery, and offenses involving altered or counterfeit

2   instruments other than counterfeit bearer obligations of the

3   United States.

4          I think probation has the better argument here

5   because of the nature of what postal money orders are.

6   They're like checks, and they're usually made out to a

7   specific payee, and so I think that is a better fit.  So I

8   adopt probation's view of what the starting offense level

9   should be.

10         The next question is this question of loss, and the

11  Government and probation part company on how much an

12  adjustment there should be.  The Government -- probation takes

13  the position that the intended loss here should be calculated,

14  and that should be calculated based on not only what was

15  recovered when Mr. Gary was arrested, but with the amount, in

16  money orders, over the years, that he was involved in this

17  scheme.  It's complicated also by the fact that nobody seems

18  to dispute that Mr. Gary says he didn't know that the money

19  orders were counterfeit until 2018.  And the Government takes

20  a position that the calculation is just what he had, which was

21  $408,000.

22         Layered on top of all this is the Supreme Court's

23  decision in Kisor, K-I-S-O-R, against Wilkie, W-I-L-K-I-E

24  which is a 2019 case where the Supreme Court held that the

25  Courts have to limit analysis to the text of the guidelines,

PROCEEDINGS                          7

1    rather than the comments, and they can look only to the

2    comments when the text of the guidelines is ambiguous.  And

3    Judge Amon had the opportunity to consider this recently.  And

4    this is all on the subject of whether intended loss is

5    something that courts should consider.  Intended loss is

6    mentioned in the comments.  Judge Amon said that the idea that

7    loss means intended loss rather than actual loss is not the

8    kind of ambiguity that the Supreme Court in Kisor was talking

9    about.

10          I think Judge Amon's reasoning is correct for a lot

11   of the reasons, the practical reasons that she cited in that

12   opinion.  And then the other issue here is that the --

13   nobody's identified any actual loss.  And so, as I said, this

14   is largely an academic discussion, in my view, because I don't

15   think this is a guidelines sentencing case.  I think it's more

16   of a statutory 3553(a) analysis.  But for whatever it's worth,

17   I think under Kisor, this idea of intended loss, at least for

18   purposes of the guidelines, it adds something that the

19   guidelines themselves don't say.  Obviously, a court can

20   consider what a defendant's intended loss was in considering

21   the statutory factors.  But I don't think, for purposes of the

22   guidelines themselves, that that's what we should do.

23          So, in my view, the -- well, I should just ask.  I

24   think the answer is no.  I don't think the Government can

25   prove actual loss, can you?

PROCEEDINGS                                    8

1          MR. GRUBIN:  No, Your Honor.

2          THE COURT:  Okay.  So I don't think I've missed

3   anything here.  But you can all -- Mr. Sundaram, do you have

4   anything to add to this?

5          MR. SUNDARAM:  No, I don't.

6          THE COURT:  Don't want to snatch defeat from the

7   jaws of victory?

8          MR. SUNDARAM:  Exactly.  Yes, that's the phrase I

9   was looking for.

10          THE COURT:  So I think the appropriate thing to do

11   is start with a base level of seven, add nothing for loss,

12   decrease -- I agree that with probation also that the

13   defendant is eligible for that 2-point deduction for a minor

14   role in the offense given the factual circumstances of this

15   case, and then four points are added which the parties agree

16   on too because the offense was committed outside of the U.S.

17   and two, because of that authentication feature.  And then

18   take off two points for acceptance of responsibility which

19   leaves a total offense level of seven, and a guideline range

20   of zero to six months.  I think the math is correct on that.

21   And I say that because my law clerk did it.  So if you had

22   left it to me, I would not have gotten it right.

23          MS. BAUMANN:  Just to add, I'm following along with

24   Your Honor.  That's the calculation I came up with, as well.

25          THE COURT:  Okay.  Good.  All right.  Great.

PROCEEDINGS                                    9

1          So with those adjustments, I otherwise accept the

2    probation report.  And I should also add which I didn't

3    before, under probation's calculation, the guideline range,

4    because Mr. Gary has a Criminal History Category of I, the

5    guideline range is, under probation's calculation is 51 to

6    63 months.  So, with those modifications, I accept the

7    probation report.

8          Anybody -- I know -- I think this is over at least

9    somebody's objection.  Is there anything else that you want to

10   say about that?

11         MR. GRUBIN:  No, Your Honor.  I'll just say for the

12   record, the only thing -- the Government would disagree on the

13   application of Kisor, but I don't think there's a need to

14   speak on that.

15         THE COURT:  All right.  Anything else you want to

16   say, Mr. Sundaram, on that subject?

17         MR. SUNDARAM:  No.  I'm going to also quit while I'm

18   ahead.

19         THE COURT:  All right.  So I have -- as I said

20   before, I have reviewed the sentencing submissions, and I'll

21   hear from the parties in the following order:  First, from

22   Mr. Sundaram, if there's anything else that you wish to say,

23   then from the Government, and then Mr. Gary, if you have

24   anything you want to say, I'll hear from you.

25         MR. SUNDARAM:  So with respect to the appropriate

PROCEEDINGS                                    10

1    sentence, I guess in this case, other than the unaccustomed

2    position of agreeing with the guidelines as a starting point.

3    But, either way, I think this case is -- even just putting the

4    guidelines aside, is a case where I don't think --

5    respectfully disagree with the Government that a custodial

6    sentence is necessary.

7            I mean, the Court has already discussed minor role.

8    And I think I agree with probation that the minor role factor

9    is also important in terms of the 3553 as a mitigating factor.

10   There's clearly no need to incarcerate Mr. Gary to protect the

11   public.  He's been on supervision for about four years now,

12   without incident, except for some occasional drug treatment

13   issues which he's gotten under control to his credit.  And he

14   had no prior issues with the criminal justice system for, you

15   know, 50 years.  He's now about to turn 54.  So, you know, I

16   think it boils down to whether incarceration is necessary for

17   punishment.

18           And, again, I think for somebody of his age to have

19   a felony record and to have been under supervision for this

20   long and possibly to be under additional supervision if the

21   Court imposes it, I think that's an adequate punishment and

22   should not be ignored.

23           In terms of rehabilitation and the need for, you

24   know, correctional assistance, medical assistance, for reasons

25   that have already been discussed, that it would be counter to

PROCEEDINGS                    11

1    that important goal.  And that purpose, I think, is often not

2    discussed enough.  But it's just as important as punishment.

3    And, in this case, I think it would be overly punitive to

4    incarcerate Mr. Gary, given his medical condition.

5              In addition to the ones that have been really

6    highlighted for the Court in a memorandum by probation, his

7    spinal stenosis is very significant, as well.  He has a very

8    difficult time walking.  And even in the BOP facilities that

9    supposedly provide medical care and have hospitals with them,

10   my office's experience, especially in this past year, is that

11   they're not adequately tending to people's medical needs.  So

12   for that, I would just highlight that, as well, in addition to

13   what I've already submitted in writing and ask the Court to

14   impose a sentence that does not have custody.

15             THE COURT:  Okay.  Is there anything you want to add

16   to your submission?

17             MR. GRUBIN:  Unless Your Honor has questions, no.

18             THE COURT:  No, I don't, but thank you.

19             All right.  Mr. Gary, is there anything you want to

20   say?

21             THE DEFENDANT:  I've been thinking over the years.

22   And, yeah, I'm very remorseful of my part in this situation.

23   And I've been working hard over the last almost four years to

24   get myself back on track --

25             THE COURT:  Mr. Gary, I'm so sorry to interrupt you.

PROCEEDINGS                                                12

1   Do you mind turning on your microphone?

2              THE DEFENDANT:  Oh, I thought it was on already.

3              THE COURT:  I heard you, but I just want to make

4   sure the court reporter can get everything.

5              THE DEFENDANT:  Yes.  I'm very sorry in my role in

6   this situation.  And I've been working very hard over the last

7   four years to get myself back into being a productive member

8   of this society.  And, so far, I feel good about the direction

9   I've been going into in the last four years.

10              THE COURT:  What do you feel has changed?

11              Are you doing something new that you weren't doing

12   before?

13              THE DEFENDANT:  Part-time work, monthly work for two

14   different companies and going to the CSEDNY for treatment.

15   That's been really, really good for me.

16              THE COURT:  Are you still involved in treatment?

17              THE DEFENDANT:  Yes.

18              THE COURT:  And how long have you been in treatment?

19              THE DEFENDANT:  Almost two years.

20              THE COURT:  And what is it that you find helpful

21   about the -- I mean, obviously, the treatment aspect.  But

22   what else?  What do you find helpful?

23              I'm always interested to hear what people find

24   helpful about the programs.

25              THE DEFENDANT:  The camaraderie with the groups, you

PROCEEDINGS                                  13

1   know, how we can share informations and talk about our

2   problems which is usually something I can't do outside of

3   court, because, you know, everybody is living their lives.  So

4   it's usually hard.  So going there once a week has been a big

5   help for me.

6         THE COURT:  I'm sure it's helpful to the other

7   participants in the program.

8         THE DEFENDANT:  Yes.

9         THE COURT:  I interrupted you.

10        Anything else that you wanted to say?

11        THE DEFENDANT:  No, no.  Thank you.

12        THE COURT:  All right.  Well, as Courts do in every

13   case in imposing sentence, I am required, and I did, calculate

14   the appropriate advisory guidelines range.  But, as I said

15   before, I think the guidelines are a place to begin.  But, in

16   my view, this is not a guidelines case.  And so, obviously, in

17   that situation, and in every situation, I also considered the

18   statutory factors in 18 U.S.C. Section 3553(a), and the point

19   of that is to make sure the sentence imposed is sufficient,

20   but not greater than necessary to comply with the purposes of

21   sentencing.

22        Those purposes include the need that the sentence

23   reflect the seriousness of the crime, that it promote respect

24   for the law, that it be fair and just, that it act as a

25   deterrent to Mr. Gary, but to anybody else who would think

PROCEEDINGS                                    14

1   about doing the same thing, that the public be protected from

2   future crimes by the defendant, and that the defendant receive

3   any rehabilitation that he might need.

4          And I've also considered the need to avoid

5   unwarranted sentencing disparities.  I also have considered

6   the details of the offense, as well as Mr. Gary's

7   characteristics and his history.  And because, you know, this

8   case was reassigned to me, I took some special care to make

9   sure I was acquainted with not just the case but with

10  Mr. Gary's background and characteristic.

11         I don't think there's any question that this is a

12  serious case, and it's a serious offense, and it's spread over

13  a considerable period of time.  And while the Government

14  couldn't identify a particular loss, certainly the potential

15  for loss and the intended loss, at least by whoever was

16  running this, was certainly considerable.

17         On the positive side, though, Mr. Gary took

18  responsibility immediately for his role in this.  He was

19  cooperative with the Government.  I think 54 is young.  But it

20  is true that to start out at 54 with -- it's clearly an

21  aberration in your life because you've never had any

22  involvement with the criminal justice system.

23         I also, you know, in terms of rehabilitation, taking

24  control of your problem with drugs is all part of that.  And

25  so I take that into account, too.  I also consider that

PROCEEDINGS                              15

1   Mr. Gary is struggling with some serious health concerns, and

2   I take that into account, as well.

3           So applying those statutory factors, I don't think

4   that an incarceratory sentence would serve the purposes of

5   sentencing, and so therefore, I impose a sentence of

6   time-served, with two years of supervised release.  The

7   conditions of the release are a search condition, and that is

8   layed out in probation's recommendation.  I can read it.  I'm

9   required to put it on the record, but Mr. Sundaram, have you

10  and Mr. Gary discussed it?

11          MR. SUNDARAM:  I did discuss the recommendation with

12  him.  I don't remember if I specifically went over the search

13  condition.  But he's reviewed all the documents, including the

14  presentence report and the recommendation.

15          THE COURT:  All right.  Do you want me -- it is

16  layed out in there.

17          Do you want to consult with him and see if you want

18  me to read it into the record?

19          MR. SUNDARAM:  Sure.

20          (Pause in the proceedings.)

21          THE COURT:  I probably spent more time asking the

22  question than if I had just read it.  You know what I'm going

23  to do, let me just read it.  It is -- I'm, in part,

24  summarizing.

25          This condition, Mr. Gary, requires that you submit,

PROCEEDINGS                              16

1    not just yourself, but your property, your house, residence,

2    vehicle, any kind of electronic communications or data

3    storage, computers, or office to a search by probation.  If

4    you fail to submit to a search under this condition, this

5    could be grounds for a revocation of release.

6             You have to warn anybody else who's on the premises

7    that they might be subject to searches pursuant to this

8    condition.  An officer may conduct a search pursuant to this

9    condition only when there's reasonable suspicion that Mr. Gary

10   has violated a condition of supervised release and that the

11   places to be searched contain evidence of the violation.  A

12   search has to be done in a reasonable way and at a reasonable

13   time.

14             There's also a $100 special assessment.

15             And there are no counts to dismiss, are there?

16             MR. GRUBIN:  No, Your Honor.

17             THE COURT:  All right.  So I think what that leaves

18   is for me to advise Mr. Gary of his right to appeal.  You did

19   agree, I think, as part of that plea agreement, not to appeal

20   your sentence, as long as I impose a term of imprisonment

21   57 months or shorter.  I've clearly done that.  But you can

22   still appeal if you believe that your guilty plea was unlawful

23   or involuntary or if there was some fundamental defect in the

24   proceedings that you didn't waive when you pled guilty.

25             Any notice of appeal has to be filed within 14 days

PROCEEDINGS                          17

1   of the filing of the entry of judgment or within 14 days of

2   the filing of a notice of appeal by the Government.  If you

3   ask, the Clerk will prepare and file a notice of appeal for

4   you.  If you can't afford to pay for an appeal or for an

5   appellate lawyer, you have the right to apply for leave to

6   appeal in forma pauperis.  That means that you can apply to

7   have the Court waive the filing fee.  You can also apply for

8   court-appointed counsel.

9           I did sign a preliminary order of forfeiture, and so

10  I think I just have to pronounce that on the record.

11          Anything else that I forgot to do?

12          MR. GRUBIN:  Just that.  No, Your Honor.

13          THE COURT:  All right.  Anything else from

14  probation?

15          MS. BAUMANN:  No, Your Honor.

16          THE COURT:  Anything from the defense?

17          MR. SUNDARAM:  No, thank you.

18          THE COURT:  All right.  Mr. Gary, I wish you

19  continued success in your recovery.

20          THE DEFENDANT:  Thank you.

21          THE COURT:  And good luck to you.

22          THE DEFENDANT:  Thank you.

23          (Whereupon, the matter was concluded.)

24                  *     *     *     *     *

25

*AVERY N. ARMSTRONG, RPR*
I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.
/s/ Avery N. Armstrong        September 2, 2023