UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :

UNITED STATES OF AMERICA           :

                        :           STIPULATION AND ORDER

           -v.-               :

                        :           S6 22 Cr. 673 (LAK)

SAMUEL BANKMAN-FRIED        :
     a/k/a "SBF,"             :

         Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS, on August 14, 2023, SAMUEL BANKMAN-FRIED was charged in a seven-count superseding indictment (the "Operative Indictment"), with wire fraud on customers of FTX, in violation of 18 U.S.C. §§ 1343 and 2 (Count One); conspiracy to commit wire fraud on customers of FTX, in violation of 18 U.S.C. § 1349 (Count Two); wire fraud on lenders to Alameda Research, in violation of 18 U.S.C. §§ 1343 and 2 (Count Three); conspiracy to commit wire fraud on lenders to Alameda Research, in violation of 18 U.S.C. § 1349 (Count Four); conspiracy to commit securities fraud on investors in FTX, in violation of 18 U.S.C. § 371 (Count Five); conspiracy to commit fraud on customers of FTX in connection with the purchase and sale of cryptocurrency and swaps, in violation of 18 U.S.C. § 371 (Count Six); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Seven);

WHEREAS, the Operative Indictment included a forfeiture allegation as to Counts One, Two, Three, Four, and Five pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts One, Two, Three, Four and Five of the Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission

of the offenses charged in Counts One, Two, Three, Four, and Five of the Indictment, as well as a forfeiture allegation as to Count Seven seeking, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense;

WHEREAS, on or about February 8, 2023, Magistrate Judge Ona T. Wang issued a seizure warrant authorizing the Government to seize the following as proceeds of wire fraud, in violation of Title 18, United States Code, Section 1343, and as property involved in money laundering, in violation of Title 18, United States Code, Sections 1956(h) and 1957: a Bombardier Global 5000 BD-700-1A11 Aircraft Bearing Registration Number N410AT and Manufacturer Serial Number 9295 and related maintenance logs and engine logs (the "Global 5000");

WHEREAS, on or about October 4, 2023, the Government filed a bill of particulars asserting that the Global 5000 and an Embraer Legacy EMB-135BJ Aircraft Bearing Registration Number C6-BDE and Manufacturer Serial Number 14500967 (the "Legacy," and collectively with the Global 5000, the "Subject Properties") was property subject to forfeiture as a result of the offenses described in Counts One through Four and Seven of the Indictment;

WHEREAS, the Government understands that as of about March 2022, Island Air Capital ("IAC") claimed ownership of the Global 5000, and that as of about August 2022, IAC claimed ownership of the Legacy;

WHEREAS, as of about February 2023 the registered owner of the Global 5000 was Capital Peak Aviation, LLC ("Capital Peak");

WHEREAS, on or about February 8, 2023, the Government seized the Global 5000 pursuant to the seizure warrant issued on February 8, 2023;

WHEREAS, the Government understands that the Legacy is currently located in the Bahamas in the custody of IAC;

WHEREAS, on or about November 2, 2023, a jury convicted BANKMAN-FRIED of all charges in the Operative Indictment;

WHEREAS, the Government is aware of the potential interest of FTX Trading Ltd. and its associated companies[1] (collectively defined as "FTX"), in the Subject Properties;

WHEREAS, the Government is aware of the potential interest of Ryan Salame ("Salame") in the Subject Properties;

WHEREAS, the Government is aware of the potential interest of the Defendant in the Subject Properties;

WHEREAS, the Government is aware of the potential interest of IAC in the Subject Properties;

WHEREAS, the Government is aware of the potential interest of Capital Peak in the Subject Properties;

WHEREAS, the Government is aware of the potential interest of Paul Aranha ("Aranha") in the Subject Properties;

WHEREAS, the Government is not aware of any other party, other than IAC, Capital Peak, Aranha, the Defendant, Salame, or FTX with a potential interest in the Subject Properties;

WHEREAS, the Government, IAC, Capital Peak, Aranha, the Defendant, Salame, and FTX (the "Parties") have agreed that an interlocutory sale of the Subject Properties is necessary in order to prevent their devaluation before the conclusion of this matter;

---

[1] FTX Trading Limited and its associated companies are defined as those companies which have filed for Chapter 11 bankruptcy in *In Re FTX Trading Ltd, et al,* consolidated case 22-11068 (JTD) (Bankr. D. Del) (the "Chapter 11 Cases").

WHEREAS, the Government and FTX have agreed that in exchange for IAC delivering the Legacy to the United States Marshals Service ("USMS"), IAC may be paid for certain reasonable costs borne by IAC, as set forth below, from the proceeds of an interlocutory sale of the Subject Properties;

WHEREAS, the Global 5000 is currently in the secure custody and control of the USMS;

WHEREAS, IAC and Capital Peak have informed the Government that there are no liens on the Subject Properties;

WHEREAS, the Parties have agreed to the interlocutory sale of the Subject Properties before the conclusion of the forfeiture proceedings against BANKMAN-FRIED in order to preserve the value of the Subject Properties pending a final order of forfeiture;

WHEREAS, the Parties agree that the proceeds of the sale of the Subject Properties shall be held in escrow in the U.S. Marshals Service's ("USMS") Seized Asset Deposit Fund pending further order of this Court;

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between United States of America, by its attorney Damian Williams, United States Attorney, Samuel Raymond, of counsel, Salame and his counsel, Jason Linder Esq., FTX and its counsel, Jacob Croke, Esq., the Defendant Samuel Bankman-Fried, and his counsel, Marc Mukasey, Esq.; Paul Aranha, and his counsel, Sharon Frase, Esq. and Richard Weber, Esq.; Capital Peak and its counsel, Sharon Frase, Esq.; and IAC and its counsel, Sharon Frase, Esq. and Richard Weber, Esq., that:

1.     Upon the signing of this Stipulation by the Government, IAC and Aranha will undertake all steps to withdraw and dismiss, without prejudice, the motion for relief from the

automatic stay filed by IAC and Aranha in the Chapter 11 Cases (the "Motion").  Upon payment to Aranha of the Reasonable Costs and Final Transport Expenses (as defined below), the Motion will be deemed withdrawn with prejudice and IAC and Aranha shall file a notice of withdrawal of the Motion with prejudice in the bankruptcy court.

2.      IAC will deliver the Legacy to the Government at Ft. Lauderdale Executive Airport, Florida (FXE), but if aircraft performance limitations arising after takeoff require, the Legacy may divert to Ft. Lauderdale Hollywood International Airport (FLL), (the "Delivery Flight").  The Delivery Flight will occur within 30 days of the date the Court enters this Order unless, due to mechanical problems, weather issues, and/or other unforeseen circumstances not within IAC's control, the Government and IAC mutually agree to a later date for the Delivery Flight, agreement which will not be unreasonably withheld by either party.  Except as outlined in paragraph 8, *infra,* IAC will bear all costs for delivery of the Legacy.  As part of the delivery process, IAC will take all steps necessary to deregister the Legacy from the Bahamian Civil Aircraft Register, transfer the deregistration to the United States of America, and provide a copy of the Bahamian-issued deregistration certificate to the USMS.  Upon delivery of the deregistration certificate, the USMS will provide IAC with the name and contact information of a government-selected representative who can accept inquiries about the Subject Properties. Further, IAC, Capital Peak, and/or Paul Aranha will take such steps as are necessary to delist IAC, Capital Peak and/or Aranha from any publicly available on-line databases as the contact(s) for the Legacy and the Global 5000.

3.      The Parties agree to the interlocutory sale of the Subject Properties by the USMS, and the USMS is authorized to sell the Subject Properties in a commercially feasible manner consistent with the policies, procedures, and methods used to sell forfeited property.

4.      The USMS will endeavor to sell the Global 5000 in a timely fashion upon entry of this Order.

5.      **Reasonable Costs.**  The Parties agree that IAC has incurred reasonable costs in the maintenance and upkeep for the Subject Properties from November 11, 2022, up to the present, not to exceed $1.8 million.  The Parties agree that IAC should be compensated for such costs (the "Reasonable Costs").

6.      **Payments from the First Sold Subject Property**.  Upon the delivery of the logbooks, pursuant to paragraph 9, *infra,* and the sale of either of the Subject Properties (the "First Sold Subject Property"), the following will be paid at the close of escrow from the gross proceeds in the order listed:

a.   To the United States, all amounts expended in the seizure, maintenance, custody, storage, and sale of the First Sold Subject Property, and any maintenance expenses already paid by the Government to the extent not already refunded to the United States.

b.   To Aranha, as beneficial owner of IAC:

  i.   to the extent that the sale price of the First Sold Subject Property minus the costs referred to in paragraph 6(a) above equals or exceeds the Reasonable Costs, $1.8 million; but

  ii.  to the extent that the sale price of the First Sold Subject Property minus the costs referred to in paragraph 6(a) above is less than the Reasonable Costs, $900,000.

7.      **Payments from the Second Sold Subject Property**.  Upon the sale of the other of the Subject Properties (the "Second Sold Subject Property"), the following will be paid at the close of escrow from the gross proceeds in the order listed:

a. To the United States, all amounts expended in the seizure, maintenance, custody, storage, and sale of the Second Sold Subject Property, and any maintenance expenses already paid by the Government to the extent not already refunded to the United States.

b. To Aranha, to the extent that Aranha received less than $1.8 million from the proceeds of the First Sold Subject Property, an amount up to the balance of the unpaid Reasonable Costs, not to exceed $900,000.

8. **Expenses of Transport**.  As of March 11, 2024, Aranha estimates that IAC will incur $183,000 in reasonable costs for delivery by March 30, 2024 of the Legacy to the United States (the "Estimated Transport Expenses"), including:

a. Fuel for the Delivery Flight and for any required engine runs and/or test flights prior to the Delivery Flight;

b. Insurance;

c. Trans Island Airways ("TIA") daily contract rate, return flights and travel expenses for the Delivery Flight or, if the Delivery Flight occurs after the date on which TIA pilots are no longer current on the Legacy, the cost to procure outside current certified pilots for the Delivery Flight;

d. Airport fees and taxes for the Delivery Flight;

e. Deregistration costs;

f. Storage of the Legacy in TIA's hangar from December 1, 2023 to the date of the Delivery Flight, except that the storage costs will not include charges for any full days the Legacy was pushed out of the TIA hangar;

g. CAMP maintenance software subscription, if needed, to obtain a ferry permit for the Delivery Flight;

h. Parts and outside vendor costs required to obtain a ferry permit for the Delivery Flight;

i. TIA personnel labor costs needed to obtain a ferry permit for the Delivery Flight and incurred between December 1, 2023 to the Delivery Date; and

j. The costs to resolve and remove any liens on the Subject Properties identified by a title search performed one week prior to the date of the Delivery Flight.

The Government has reviewed the Estimated Transport Expenses and shall reimburse Aranha for the Estimated Transport Expenses actually incurred, after the sale of both Subject Properties, out of the net proceeds of sale of both Subject Properties and up to the limits of said net proceeds.  If any liens are identified, IAC will provide the Government with lien release documentation prior to sale.  The United States may, for accounting purposes, allocate those costs against one or both of the Subject Properties in its sole discretion.  The Parties agree that in the event IAC reasonably incurs Transport Expenses in excess of the Estimated Transport Expenses ("Excess Transport Expenses") in connection with delivering the Legacy to the United States, IAC and/or Aranha may seek reimbursement of the excess from the Government upon the same terms as reimbursement of the Estimated Transport Expenses.  IAC and/or Aranha must substantiate any Excess Transport Expenses to the Government and the Government shall reimburse the Excess Transport Expenses to the extent that it concludes they were reasonably incurred.  If reimbursement of any or all Excess Transport Expenses are denied by the Government, IAC and/or Aranha may petition the United States District Court, Southern District of New York, for reconsideration (the total sum of actually transport expenses paid by the Government called the "Final Transport Expenses").

9. **Facilitating Sale**.  In furtherance of the interlocutory sale, and in accordance with the procedures set forth in this Stipulation, the Parties agree to execute promptly any documents which may be reasonably required to convey clear title to the Subject Properties and complete the interlocutory sale of the Subject Properties.  IAC shall also deliver,  or cause to be delivered, to the USMS, on or before the date of the Delivery Flight, all logbooks and other documentation reasonably necessary to sell the Subject Properties.

10. **Risk of Loss.**  In the event either of the Subject Properties is lost in an insured occurrence, the payment from the insurance company shall become the substitute *res* for

said Subject Property and the insurance payment shall be treated as the sale proceeds of said Subject Property.

11. **Net Proceeds**. Proceeds from the sales of the Subject Properties that remain after payment of the amounts referenced in paragraphs 5, 6, 7 and 8 will be the "Net Proceeds". The Net Proceeds shall be paid to the United States Marshals Service (or its designee).

12. **Substitute *Res***. The Net Proceeds from the sale will be held by the USMS in its Seized Asset Deposit Fund pending entry of a final order of forfeiture and will serve as a substitute *res* for the Subject Properties (the "Substitute *Res*") in the above-captioned case, with all claims and defenses applicable to the Subject Properties, including any other claim or action that may be brought by the Office for forfeiture of the Subject Properties or claims by third parties, to apply instead to, and be payable only from, and up to the limit of, the Substitute *Res*. Accordingly, the buyer of the Subject Properties shall take clear title, free of all encumbrances.

13. Upon entry of any final Orders of Forfeiture as to the Subject Properties, the Substitute *Res* shall be forfeited to the United States and disposed of according to law.

14. Except as allowed by 21 U.S.C. § 853(k), the Defendant, Salame and FTX, agree not to bring any action for damages against the United States or any of its agents and employees, including the Federal Bureau of Investigation, USMS, Department of Justice, and the United States Attorney's Office for the Southern District of New York, in connection with, or arising out of, the United States' seizure, custody, and interlocutory sale of the Subject Properties.

15. IAC, Capital Peak, Aranha, and any company owned by, controlled by, or otherwise associated with Aranha, agree not to bring any claims, actions, or petitions of any kind, or facilitate the bringing of any claims, actions, or petitions of any kind by any third party, with respect to the Subject Properties, including any action for damages against the United States or

any of its agents and employees, including the Federal Bureau of Investigation, USMS, Department of Justice, and the United States Attorney's Office for the Southern District of New York, in connection with, or arising out of, the United States' seizure, custody, and interlocutory sale of the Subject Properties.

16.     For avoidance of doubt, neither entry into this Stipulation, nor the entry of an order approving this Stipulation, nor withdrawal of the Motion pursuant to this Stipulation, shall have any effect on any claims that have been or may be asserted in the Chapter 11 Cases by Aranha with respect to the FTX.com customer account registered in Aranha's name or by Fours Rock Ltd., with respect to amounts owing for flights or ground transportation, and all of the Parties' arguments, rights, defenses, and counterclaims thereto, are expressly reserved.

17.     Each party agrees to bear its costs and attorneys' fees in connection with the interlocutory sale of the Subject Properties.

18.     The Parties with potential claims to the Subject Properties retain and do not waive their legal rights to contest the forfeiture of the Subject Properties or Substitute *Res,* including any challenge to this court's jurisdiction over the Subject Properties and its inclusion in the above-captioned criminal case.

19.     This Court shall retain jurisdiction in this matter to take additional action and enter further orders as necessary to implement and enforce this order authorizing the sale of the Subject Properties.

20.     This Stipulation constitutes the entire agreement between the parties on the matters contained herein, and no other statement, promise or agreement, either written or oral, made by either party or agents of either party, that is not contained in this written agreement shall be enforceable. Any modifications to this agreement shall be in a writing signed by the parties.

DocuSign Envelope ID: 16E55FAF-AB26-455F-9002-1DAD10B51DC5

21.    The signature pages of this Stipulation may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:    _____          3/13/24
       Danielle Kudla                             DATE
       Samuel Raymond
       Thane Rehn
       Nicolas Roos
       Danielle Sassoon
       Assistant United States Attorneys
       26 Federal Plaza
       New York, New York 10278
       (212) 637-6519


SAMUEL BANKMAN-FRIED


       _____          _____
       Samuel Bankman-Fried                       DATE


By:    _____          _____
       Marc Mukasey, Esq.                         DATE
       Attorney for Defendant


RYAN SALAME

       _____          3/21/2024
       Ryan Salame                                DATE


By:    _____          3/21/2024
       Jason Linder Esq.                          DATE
       Attorney for Ryan Salame


11

DocuSign Envelope ID: 16E55FAF-AB26-455F-9002-1DAD10B51DC5

ISLAND AIR CAPITAL

By: _____    3/12/2024
         Paul Aranha                                            DATE

By: _____    3-13-2024
         Sharon Frase, Esq.                               DATE
         Attorney for Island Air Capital


CAPITAL PEAK AVIATION

By: _____    _____
         Jessica Ballou                                        DATE

By: _____    _____
         Sharon Frase, Esq.                               DATE
         Attorney for Capital Peak Aviation


PAUL ARANHA

By: _____    3/12/2024
         Paul Aranha                                            DATE

By: _____    3-13-2024
         Sharon Frase, Esq.                               DATE
         Attorney for Paul Aranha

DocuSign Envelope ID: 16E55FAF-AB26-455F-9002-1DAD10B51DC5

ISLAND AIR CAPITAL

By: _____        _____
       Paul Aranha                                                  DATE

By: _____        _____
       Sharon Frase, Esq.                                          DATE
       Attorney for Island Air Capital

CAPITAL PEAK AVIATION

By: _____        3·12·24
       Jessica Ballou                                              DATE

By: _____        3-13-2024
       Sharon Frase, Esq.                                          DATE
       Attorney for Capital Peak Aviation

PAUL ARANHA

By: _____        _____
       Paul Aranha                                                  DATE

By: _____        _____
       Sharon Frase, Esq.                                          DATE
       Attorney for Paul Aranha

FTX TRADING LTD.

By: _____        3/13/24
    John J. Ray III                              _____
    Chief Executive Officer                      Date

By: _____        3/13/24
    Jacob M. Croke, Esq.                         _____
    Attorney for FTX Trading Ltd.                DATE


SO ORDERED:


_____            _____
HONORABLE LEWIS A. KAPLAN                    DATE
UNITED STATES DISTRICT JUDGE