O5SUSALS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                        22 Cr. 673 (LAK)

RYAN SALAME,

                                   Sentence
                Defendant.

------------------------------x

                                  New York, N.Y.
                                  May 28, 20224
                                  11:00 a.m.

Before:

                    HON. LEWIS A. KAPLAN,

                              U.S. District Judge

                       APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
BY:  SAMUEL RAYMOND
    NICOLAS ROOS
    DANIELLE RENEE SASSOON
    DANIELLE KUDLA
    NATHAN MARTIN REHN

MAYER BROWN LLP
    Attorneys for Defendant
BY:  JASON LINDOR
    GINA MARIE PARLOVECCHIO

O5SUSALS

1    (Case called)

2             THE DEPUTY CLERK:  Please put your appearances on the

3    record.

4             MR. RAYMOND:  Good morning, your Honor.

5             Sam Raymond, Nick Roos, Danielle Sassoon, Danielle

6    Kudla, and Thane Rehn for the government.

7             THE COURT:  Good morning.

8             THE DEPUTY CLERK:  Defendant, are you ready?

9             MR. LINDER:  Yes, we are.

10            Jason Linder and Gina Parlovecchio of Mayer Brown, on

11   behalf of Ryan Salame.

12            THE COURT:  Good morning.

13            MR. LINDER:  Good morning, your Honor.

14            THE COURT:  Have the defendant and the defense counsel

15   had the presentence report for the necessary period and both

16   read it?

17            MR. LINDER:  Yes, your Honor.

18            THE COURT:  Mr. Salame, do you confirm that you've

19   read the presentence report?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Have you read all of it including the

22   proposed conditions of supervision contained at the back end of

23   the report?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  Okay.  Thank you.

O5SUSALS

| | |
|---|---|
| 1 | Now, before we get any further, into the main order of |
| 2 | business, I want to try to understand better than I do the |
| 3 | financial aspects of the proposed sentence.  I'm looking at the |
| 4 | preliminary order of forfeiture and I'm a little bit confused. |
| 5 | It provides on page 2 for the defendant to make a payment to |
| 6 | the United States of $6 million.  It provides for the entry of |
| 7 | a money judgment in the amount, in round numbers, of a billion |
| 8 | and a half dollars.  It indicates at the bottom of page 2 and |
| 9 | elsewhere that the defendant consents to the forfeiture of |
| 10 | certain substitute assets, "to satisfy the outstanding |
| 11 | forfeiture money judgment."  And I'm not quite sure, because of |
| 12 | some ambiguity here, how this all fits together. |
| 13 | Is the $6 million intended to be a sum of money |
| 14 | forfeited to the United States or not? |
| 15 | MR. RAYMOND:  Yes, your Honor.  Excuse me. |
| 16 | THE COURT:  No.  You were about to say something else. |
| 17 | MR. RAYMOND:  Yes, your Honor.  The government -- so |
| 18 | the government's position is that under the forfeiture |
| 19 | statutes, the money service business charge with which the |
| 20 | defendant pled guilty to -- |
| 21 | THE COURT:  I'm sorry, the money... |
| 22 | MR. RAYMOND:  Count Two, the 1,960. |
| 23 | THE COURT:  Count Two. |
| 24 | MR. RAYMOND:  ... requires a forfeiture money judgment |
| 25 | of the total amount of money transmitted by the money |

O5SUSALS

| 1 | transmitting business.  The government is accepting a smaller

| 2 | payment in settlement of the outstanding money judgment in lieu

| 3 | of continuing to seek Mr. Salame's assets wherever they may be.

| 4 |        THE COURT:  That's what I thought you probably meant.

| 5 | But the $6 million is also part of the forfeiture, isn't it?

| 6 |        MR. RAYMOND:  Yes, your Honor.  Insofar as once the

| 7 | money is transferred, we will take that in lieu and settlement

| 8 | of the entirety of the money judgment.  So it's not 1.5 plus

| 9 | 6 -- 1.5 billion plus 6 million.  The 6 million will be

| 10 | accepted in lieu of the 1.5 billion in judgment.

| 11 |        THE COURT:  So that the judgment would be satisfied by

| 12 | the substitute assets and the $6 million?  Is that correct?

| 13 |        MR. RAYMOND:  That's right, your Honor.

| 14 |        THE COURT:  And the $1,480.74 that you added to it.

| 15 |        MR. RAYMOND:  Yes, your Honor.  That's correct.

| 16 |        THE COURT:  Now does the defense agree with that?

| 17 |        MR. LINDER:  Yes, your Honor.

| 18 |        THE COURT:  All right.  Let me just take a moment to

| 19 | ensure that what I intend to do is consistent with that.

| 20 |        So the total amount of the forfeiture that the

| 21 | government wants me to enter in the judgment is

| 22 | $1,561,187,600 -- $187,623.74.  That was not read already but

| 23 | you get the idea.  And that would be satisfied by the

| 24 | $6 million plus the substitute assets?

| 25 |        MR. RAYMOND:  Yes, your Honor.

O5SUSALS

1            THE COURT:  Okay.

2            MR. RAYMOND:  Well, and the $1,400 that your Honor

3    mentioned.

4            THE COURT:  Well, that's included in the figure that I

5    mangled.

6            MR. RAYMOND:  Thank you, your Honor.

7            THE COURT:  Now, is there an order of restitution?

8            MR. RAYMOND:  No, your Honor.  Instead, the

9    defendant -- the government has confirmed that the defendant

10   has made his restitution payment already to the victim -- or

11   excuse me, to the non-victim charged --

12           THE COURT:  To the bankruptcy estate.

13           MR. RAYMOND:  That's right, your Honor.

14           THE COURT:  But does that need to be in the judgment

15   or not?

16           MR. RAYMOND:  I think, your Honor, you can order

17   restitution.  We don't need a separate order of restitution,

18   but the amount has actually already been satisfied.

19           THE COURT:  Okay.  It would have been helpful to have

20   all of this clarified.  That said, it's clear now.

21           Okay.  Are there any material unresolved objections to

22   the presentence report?

23           MR. LINDER:  Your Honor, we had two minor factual

24   corrections we had requested to the presentence investigation

25   report.  It doesn't seem that the government contests them.

O5SUSALS

| | |
|---|---|
| 1 | THE COURT:  Are they material to anything? |
| 2 | MR. LINDER:  They're not. |
| 3 | THE COURT:  Okay.  So that said, I adopt the |
| 4 | presentence report and the guideline computation and range it |
| 5 | contains.  I have received a veritable avalanche of materials |
| 6 | relating to the sentence.  The highlights of which are the |
| 7 | presentence report, the government's sentencing memorandum and |
| 8 | the defendant's sentencing memorandum, and everything else that |
| 9 | I've had is reflected on the docket sheet. |
| 10 | Is there anything else of which I ought to be aware? |
| 11 | MR. LINDER:  No, your Honor. |
| 12 | MR. RAYMOND:  Not from the government, your Honor. |
| 13 | THE COURT:  Okay.  I'll hear from defense counsel. |
| 14 | MR. LINDER:  Thank you, your Honor. |
| 15 | I'd like to first -- |
| 16 | THE COURT:  Please use with the podium. |
| 17 | MR. LINDER:  Of course. |
| 18 | Thank you, your Honor. |
| 19 | I'd like first to introduce some of the people who |
| 20 | have come to support Ryan today.  In the gallery are his |
| 21 | mother, his aunt, his long-term partner, Michelle, Michelle's |
| 22 | sister and brother-in-law, the founder of a nonprofit with whom |
| 23 | Ryan has been working to create educational materials for |
| 24 | incarcerated individuals, and other family, friends, and |
| 25 | supporters. |

O5SUSALS

1          Your Honor, Ryan fully accepts responsibility for the

2     crimes to which he has pleaded guilty.  I would like to offer

3     only a few points in response to the government's submission

4     and to provide context for the type of person Ryan is, the

5     nature of his crimes, and the limited need here for specific or

6     general deterrence.

7          I'll start first, your Honor, with who Ryan is.  Your

8     Honor has received, as you noted, a veritable avalanche of

9     materials which should include among it 45 letters from people,

10    give or take, from people who have known Ryan in all phases of

11    his life, from his family, to his high school friends and

12    college friends, through work colleagues and more recent

13    friends, through his neighbors and the family of long-term

14    partner.  I believe one letter even comes from a former

15    employee he had to terminate but is still very supportive.

16         The through line in all of them is that Ryan is a

17    warm, caring, committed, and sincere person, not one consumed

18    with greed, as the government would have it.  He is actively

19    invested in making the lives of those around him better of his

20    friends, his family, and his community.  That commitment to

21    community service and efforts to make the world a better place

22    began years before he had any assets, belying the government's

23    contention that he's engaged in philanthropy and service for

24    aggrandizement or to be the hometown hero, as they call him.

25         He has also recognized the errors of his ways, has

O5SUSALS

1    accepted responsibility, has already made substantial strides

2    to making amendments, including, as the government noted,

3    satisfying his restitution obligation and has rebuilt his life

4    to be of service to his family and his community.  In this new

5    chapter, he is returning to the person he was before joining

6    Alameda as reflected in all of those letters that your Honor

7    has received.

8         Ryan's previously blameless past and his conduct since

9    FTX collapsed in November of 2022 prove that his brief period

10   of criminal conduct under the thrall of Bankman-Fried was the

11   aberration and that when returned to society he has the gifts,

12   the temperament, and the commitment to contribute positively to

13   society.

14        I'll next address the nature and the seriousness of

15   each crime to which Ryan has pleaded guilty.  First, I'd like

16   to make a few observations, if I may, about both crimes.

17   Neither of these crimes, as I believe your Honor knows, and as

18   the government has conceded, was part of the central fraud

19   conspiracy for which Bankman-Fried has been convicted and now

20   sentenced.  Ryan was as unaware of that multibillion dollar

21   fraud as everybody else in the world.

22        In both conspiracies to which Ryan pleaded guilty,

23   four facts were true and the government does not seriously

24   contest them:  First, within the conspiracy, Ryan was the

25   lowest person on the totem pole.  Second, he did not design the

O5SUSALS

1   conspiracies nor direct others in the conspiracies.  Third,

2   Ryan had limited visibility into what others in the

3   conspiracies were doing.  And, fourth, in neither conspiracy

4   did Ryan seek to take anything of value from anyone else, nor

5   did he lie to customers, lenders, or investors.  In both, he

6   was eager to be of use to those above him in the company and

7   that eagerness led him to criminal conduct.

8           Turning now specifically to the campaign finance fraud

9   conspiracy, your Honor, I would like to address a few points

10  the government has made in its submission.  First, while the

11  government cites to a figure of $100 million for the political

12  contributions made by others in the conspiracy, Ryan's role in

13  the Nishad's and Bankman-Fried's conspiracy -- contributions

14  rather, were purely ministerial.  He solely completed wire

15  transfers determined and directed by others.  He didn't have a

16  voice in how those contributions were determined.  The conduct

17  at issue here, though large in dollar amount, is less grievous

18  and poses a lesser threat to American democracy than other

19  cases the government cites, other cases in this court, and

20  other judges in this district have overseen.

21          As we noted, and the government does not contest,

22  Bankman-Fried or Alameda could have made all or nearly all of

23  the donations themselves lawfully.  The goal of the crime, it

24  seems, then was for Bankman-Fried to have influence across the

25  political spectrum without his fingerprints being publicly

O5SUSALS

1    visible.  In other cases the government cites, the goal of the

2    campaign finance violations was to inject foreign money into

3    our elections or to evade contribution limits -- to evade

4    contribution limits.  Those factors are not present here.

5                Turning now to the unlicensed money transmitting

6    charge, your Honor, I'll make only a few points in response to

7    the government's submission.  First, we understand from the

8    government that the amount at issue is about $600 billion, in

9    currency that customers on-boarded while Ryan was still at

10   Alameda and about 900 million that they off-boarded.  We have

11   no basis to dispute it.  And that means that he helped to

12   off-board substantially more than he on-boarded.  Second,

13   unlike most of the cases the government cites, and those are

14   the cases that are present --

15                THE COURT:  How does that help you?

16                MR. LINDER:  It doesn't particularly help other than

17   to the degree as -- I was about to say, Ryan was unaware of any

18   criminal activity that Bankman-Fried and others were involved

19   in, and so to the degree that his conduct unwittingly put

20   victims more at risk --

21                THE COURT:  Well, he was aware money was being

22   on-boarded and off-boarded in a way that couldn't unlawfully be

23   done in the United States.

24                MR. LINDER:  Correct, your Honor.  What I was trying

25   to say is that he didn't --

O5SUSALS

1          THE COURT:  So it's a good thing that more came off

2     illegally than went in illegally?

3          MR. LINDER:  What I was about to say, your Honor, is

4     that only -- the fact that more money was off-boarded meant

5     that less was available for Bankman-Fried and others to steal

6     later, that was my only point, not that it changes the

7     illegality of Ryan's conduct.

8          And as I just was about to say, Ryan, unlike most of

9     the other cases, whether they're unlicensed money transmitting

10     or charges was unaware of any other illegality beyond the

11     illegality of the money transmission itself.

12          I'll say only briefly, your Honor, about the relevant

13     conduct, the multiple sets of it that the government refers

14     to --

15          THE COURT:  I'm sorry.  The multiple...

16          MR. LINDER:  The multiple sets of relevant conduct to

17     which the government refers, we are bound by terms of the plea

18     agreement not to contest those, the conduct, and we will not do

19     so.  I will just note for your Honor that the facts are

20     substantially more nuanced than the government's presentation

21     of them, in part because those sets of conduct, unlike the

22     counts of conviction were not the subject of substantial

23     dialogue and proffering and sharing of information between the

24     parties.

25          As to general deterrence, your Honor, we stand largely

O5SUSALS

1    on our submission, that the ruin and public unraveling Ryan has

2    suffered in the last year and a half are ample deterrents from

3    anyone considering similar conduct.

4            I'll also note that the government, if it was

5    particularly interested, the government, in general deterrence

6    as to the money transmitting conduct, could have waited for an

7    answer from the Bahamas about whether it could have proceeded

8    against Bankman-Fried, which would have been a substantially

9    greater deterrence, in fact, given his greater prominence.

10           THE COURT:  I'm sorry.  Would you run through that

11   again?

12           MR. LINDER:  Sure.  They claim that one of the reasons

13   your Honor ought to sentence Ryan to a substantial term of

14   incarceration is to deter other crypto businesses from engaging

15   in unlicensed money transmitting.  My only point, your Honor,

16   it's a minor one, is that if that was really their intent, they

17   could have also sought to -- that that charge was one of the

18   charges that they voluntarily forewent in December of last year

19   against Bankman-Fried, and they could have had waited to see if

20   the Bahamas would have allowed them to proceed.  That would

21   have had a much greater deterrent effect given SBF's much

22   greater prominence than Ryan.  That was my point.

23           As to specific deterrence, and as I said at the

24   outset, Ryan did not design or direct any of the conspiracies

25   in which he engaged.  He was, in both, merely a tool, the

O5SUSALS

1    lowest person on the totem pole of the conspiracy.  While his

2    conduct showed a lapse in judgment, he did not prey on any

3    individual.  He has fully accepted responsibility for that

4    conduct, taking steps to rehabilitate himself, including

5    seeking treatment for substance abuse, and has already rebuilt

6    a life that is consistent with the values he had before he

7    worked for Alameda and FTX.  He has acknowledged his mistakes,

8    and as several of his friends observed in the letters of

9    support, he has desire to make amends for what he has done and

10   has taken steps towards growth.

11         The government attempts to paint Ryan's motivation of

12   as one of greed and a desire for power and prominence, which

13   may inevitably lead him to reoffend, but that is not the man

14   that I think your Honor sees from the many letters of support

15   that were submitted in this case.  I would point the Court's

16   attention to the letters from his high school and college

17   friends who were wholly unaware, even after he came into

18   substantial assets, that he was financially successful until

19   this case become public.

20         I would also point out the theme that runs through the

21   letters submitted to the Court:  Ryan has been devoted to

22   community service long before he was a wealthy man.  His record

23   of community service, which is detailed in those letters from

24   college professors, friends, and family, goes back to his time

25   as teenager and shows that it is rooted in his devotion to

O5SUSALS

1    helping people and making the world a better place, not

2    self-promotion or aggrandizement.  In fact, one of the steps he

3    has taken, and the government notes it, to take responsibility

4    and right the ship is by endeavoring to assist the U.S. and

5    Bahamian governments' investigation of Bankman-Fried and other

6    FTX insiders.  As we detailed in our submission, Ryan was the

7    first person to blow the whistle to his company's regulator

8    that Bahamian securities and authority.  He voluntarily

9    provided documents and information to the Southern District of

10   New York U.S. Attorney's Office as well as other authorities

11   here in the U.S. and provided information to the government for

12   its use in prosecuting Bankman-Fried.

13           Given Ryan's devotion to his new chapter in life, his

14   ongoing public service, the steps he's taken toward

15   rehabilitation and making amends by attempting to cooperate

16   with law enforcement authorities, he has shown that specific

17   deterrence has been achieved and a lengthy sentence of

18   incarceration is not required to achieve the goals of 3553(a).

19           I would just note, as the government has, that he has

20   satisfied his restitution obligation.  And, your Honor, I

21   believe the Court -- the government filed last night a proposed

22   order extending his deadline for forfeiture.  He is very close

23   to meeting it and needs a bit more time.

24           That's all I have to say, your Honor.

25           THE COURT:  Okay.  Thank you.

O5SUSALS

1              Mr. Salame, if there's anything you'd like to say, I
2      would be happy to hear it.
3              Go over to the lectern, please.
4              THE DEFENDANT:  Would you like me to...
5              THE COURT:  Go to the lecturn, please.
6              THE DEFENDANT:  Thank you, your Honor.
7              In addition to the personal statement I submitted in
8      connection with my presentence investigation, I'd like to make
9      a few comments here now.
10             First and most importantly, I accept full
11     responsibility for my conduct.  Although I truly believe I was
12     helping FTX customers by on-boarding and off-boarding the
13     currency and that making the political contributions involved
14     in this case would bring about real good for people, I fully
15     understand that the means by which I sought to achieve these
16     goals was illegal.
17             There is no excuse for violating the law.  And for
18     that, I apologize to the Court and to the United States.
19             I would like to take a moment to apologize to FTX
20     customers as well and to the public.  I let you down.  I failed
21     to follow the licensing requirements that would have protected
22     customers that on-boarding and off-boarding currency to FTX and
23     I attacked the protections around our democracy when I made
24     donations in my name with funds borrowed from Alameda Research.
25             And I also want to apologize to my family.

O5SUSALS

       Michelle, I've put you, your children, and our son in
an unthinkably terrible position.  And for that, I'm sorry.
You're the strongest and most incredible woman I've ever met
and I thank you for your support.

       And, Mom, I can't imagine how this feels for you when
all you wanted in life was stability and a close family.

       And I'm deeply sorry to so many others I don't have
time to mention here who trusted me and my actions at these
companies.

       Your Honor, I regret a lot of choices at this point in
my life, which is something given that I am only 30.  But I did
make some positive choices, which I hope you'll consider.
Throughout my life and in this conduct, I cared about the
well-being of others, including FTX's customers.  I tried to do
the right thing by alerting authorities immediately about --
upon finding about the theft of customer funds and I provided
the DOJ everything I had to help them to pursue justice,
including some documents that hurt me personally and helped me
bring me for this Court.

       The past year and a half has allowed me to reflect on
my actions and begin on my path towards redemption.  I accept
what's next and I look forward to the positive contributions I
can make on the other side of this.  One thing I can assure
you, your Honor, is that I will never do anything to put
myself, my family, my employees, or the government in this

O5SUSALS

1    position again.

2         Thank you for the time and opportunity to speak, your

3    Honor.

4         THE COURT:  Thank you.

5         Mr. Raymond?

6         MR. RAYMOND:  Thank you, your Honor.

7         Your Honor, the government won't belabor points which

8    we made in our sentencing submission.

9         As we wrote there, the government requests the Court

10   impose a meaningful period of incarceration within a range of

11   five to seven years, which is sufficient but not greater than

12   necessary for this defendant under the 3553(a) factors.

13        Just a few factors to highlight, your Honor.  First,

14   the seriousness of the offenses here, the defendant's election

15   crimes undermined regular voters' faith in the political

16   system.  Just on two points, to respond to assertions made by

17   defense counsel, some of the contributions made by Mr. Salame

18   did, in fact, evade contribution limits when he made donations

19   that Mr. Bankman-Fried to candidates that Mr. Bankman-Fried had

20   already donated to, and some of the contributions could not be

21   made a corporation, in instance, to individual campaigns.

22   Regular voters' faith in their democracy and in their election

23   system is a precious commodity.  Instead of following the rules

24   that govern every voter, the defendant and his coconspirators

25   took secretive shortcuts to get around those rules.  The

O5SUSALS

defendant did so willfully.  He knew what the rules were.  And

he did so to support the political interests of FTX.  There was

some talk about greed and whether Mr. Salame was motivated by

greed.  I think it's clear, your Honor, that as FTX became more

successful that would mean the defendant was making more money.

The unlicensed money service charges in Count Two is

also a serious can offense, your Honor.  Operating an

unlicensed money services business the way the defendant did

undercut regulations of the financial system which ensures that

money transmitters engage in appropriate and money laundering

controls and deter potential suspicious activity.  The

defendant and his coconspirators did so through a series of

false statements to U.S. banks.  And, again, this served to

line his own pockets.  As FTX was more successful, it was able

to grow larger and quicker by offering customers the ability to

transact, which was a competitive advantage against other

crypto platforms.

And these are not merely technical violations.  As I

mentioned, the defendant's election offense was willful and the

campaign finances rules, as the moneys service rules, are there

for reasons, they're there to enhance transparency in our

elections and in our financial system.

Now, your Honor, the government does recognize that

there are mitigating factors here, as we pointed out,

particularly looking at comparer cases in similar contexts, so

O5SUSALS

money services charges and election offenses as well as the

defendant's attempted, if modest, cooperation.

So those are the reasons, your Honor, the government

is seeking a sentence within the range of five to seven years.

Your Honor, the last point I'll make is about general

deterrence.  The Court should send a message here.  As we cite,

crypto concurrency companies have been inveterate violators of

the money transmission rules.  Our sentencing submission cites

cases going back more than ten years in which digital assets

companies have faced serious sanctions for transmitting money

for nearly the same conduct as the defendant, FTX and Alameda.

The Court can send a message, a critical warning to the crypto

currency industry.

There is also intense focus on this case and

specifically the campaign finance crimes which the defendant

committed.  The Court's sentence should be to crafted to send a

message to wealthy individuals and companies about the

substantial consequences of perverting our electoral system and

its rules.

And, your Honor, this is also a classic case, as we

mentioned in our submission, indicating how challenging it can

be for investigators to unwind white collar crimes.

The defendant and Mr. Bankman-Fried committed these

crimes with lies and deceit going back to 2020.  It was only

after FTX's bankruptcy that the government was able to put the

O5SUSALS

pieces together identify the criminal conduct.

So, for those reasons, your Honor, in light of the other factors pursuant to 18, U.S.C., 3553(a), the government respectfully requests the Court imposes a sentence of five to seven years' imprisonment.

THE COURT:  Thank you.

I endorse the key points that the government has made. This was a circumvention of financial safeguards inherent in federal registration requirements for money transferring business.  Those are important safeguards.  Violation of them, at the scale that went on here and that goes on elsewhere, jeopardizes the stability of our economy and our financial system.

I'm certainly not going to be first person to observe that the state of our political life in this country is in jeopardy, has been in jeopardy for quite a number of years. One of the reasons, but only one, is that the amount of money sloshing around the political system is almost unimaginable.  I don't get to decide anew what the Supreme Court did in *Citizens United*, and whether that was right or wrong is not for me to say, but it certainly has not helped, and efforts like that undertaken by Mr. Salame and Bankman-Fried only make matters worse.  It is not conceivable to me, and I don't think it's disputed, that Mr. Salame knew that this straw donor operation in which he engaged was absolutely illegal.  He went along with

O5SUSALS

1    it.  He was a major figure in it, if not the person who

2    conceived it.  And he knowingly and willfully assisted in

3    destroying the limited transparency that the laws of the United

4    States provide in this area.

5          To me, nothing demonstrates that more clearly than the

6    text message that Mr. Salame sent on November the 2nd, 2021, to

7    a confidant in which he wrote, hey, we should have a bit of a

8    chat around something because it may end up public and feel

9    like it may put a bit of a strain on our relationship, so

10    easier just to say it.  Sam wants to donate to both Democratic

11    and Republican candidates in the U.S. because the world's

12    frankly lost its mind.  If you donate to a Democrat, no

13    Republicans will speak to you, and if you donate to a

14    Republican, than no Democrats will speak to you.  We won't be

15    flipping -- I think the word's supposed to be, any red seats

16    blue or blue seats red, but we will be heavily putting money to

17    weed out anti-crypto Dems for pro-crypto Dems and anti-crypto

18    Republicans for pro-crypto Republicans.

19          He knew precisely what he was doing.  He knew why it

20    was being done.  He knew it was illegal.  And the whole idea

21    was to hide it from the world.  Astonishing.

22          Now, I've long operated on the premise that nobody in

23    this life is a saint or a sinner unalloyed, in either case.  I

24    hold to that today.

25          Mr. Salame, you've done some good things in your life.

O5SUSALS

1    You've been a good person in many respects.  I acknowledge it.

2    I respect it.  And hopefully, you'll get back on the straight

3    and narrow.  But there are other elements to what you did here

4    too, and greed was one of them.  The scheme that I just

5    referred to, of course, would have had, had it succeeded, the

6    collateral benefit of making you even wealthier.  But I don't

7    have to look that far for greed.  As the government has made

8    clear, when it became apparent that FTX was on the brink of

9    bankruptcy and was at the least a billion dollars in the hole,

10   you pulled $5 million in cryptocurrency from an account you

11   controlled at FTX into your own crypto wallet.  You tried to

12   withdraw tens of millions more that day, but the withdrawals

13   failed, the further withdrawals.  And you spent millions from

14   the more than $5 million you got out just before the collapse

15   came on hiring a public relations firm, paying off personal

16   obligations, and the like.  It was me first, I'm getting in the

17   life boat first, the heck with all those customers.

18        I acknowledge that you went to Ms. Rolle at the

19   Bahamas Security Commission, but I think that was part of your

20   leap into the lifeboats.  Your job in the Bahamas, as FTX's

21   representative, was to get close to the Bahamian government.

22   We saw at the trial with Mr. Bankman-Fried some evidence at

23   least that he tried to steer this whole scandal into the hands

24   of the Bahamian government.  Why?  Because he thought that the

25   relationships that had been built up would result in a better

O5SUSALS

outcome for FTX and the rest of you. I don't think you were

blind to that. I think that's one of the reasons you went

there instead of to U.S. authorities, and that was part of your

life-boat plan.

So while I do acknowledge all of the good things you

have done in your life, when the crisis came, those

let's-help-others instincts, if not vanished, were

subordinated.

I think also that there is in this case a very

substantial need for general deterrence. These kinds of cases,

as Mr. Raymond said, are very hard to detect on the fly. They

are very hard to unravel even after everything, pardon my

language, everything goes to hell, as it did here, and people

have to understand that attempted, really, corruption of our

political system and that hiding money transfers, especially at

this level from the limited regulation that exists, are very

dangerous to this country, and people need to be deterred.

They need to get a message from what we are doing today. And I

certainly hope to be sending it. And that's a perfectly

appropriate consideration on my part. It's mandated on the

Sentencing Reform Act.

So please rise for the imposition of sentence,

Mr. Salame, which I'll say at the outset --

Everybody else can remain seated.

And the sentence I'm about to impose, although I'm

O5SUSALS

1    sure it is not going to make Mr. Salame happy, is substantially

2    below the top of the guideline range because I've taken into

3    account some of the factors that defense counsel have pointed

4    to in support of a variance.

5        It is the judgment of this Court, Mr. Salame, that you

6    be committed to the custody of the Attorney General of the

7    United States or his designee for a term of imprisonment of

8    60 months on Count One and 60 months on Count Two. The term on

9    Count Two shall run concurrently with the last 30 months on

10   Count One and consecutively to the remainder on Count One for

11   an aggregate term of imprisonment of 90 months; that you'll

12   thereafter serve a term a supervised release of three years;

13   and that you pay the mandatory special assessment of $200.

14       It is further adjudged that you forfeit to the United

15   States the sum of $1,561,187,623.74, or as more fully set forth

16   in the consent preliminary order of forfeiture as to substitute

17   assets/money judgment entered September 7, 2023, as modified by

18   the partial vacatur of the preliminary order of forfeiture

19   dated today; that you pay a fine of $250,000 on each count for

20   an aggregate fine of $500,000; and that you pay restitution in

21   the amount of $5,593,177.91, to the bankruptcy estate of FTX

22   Trading Limited, that's the U.S. Bankruptcy Estate, and the

23   government has acknowledged that the restitution has been paid

24   as of this time.

25       The term of supervised release shall be subject to the

O5SUSALS

mandatory, the standard, and the special conditions of

supervision set forth at pages 41 through 42 of the presentence

report, which you have said you have read.

The substance abuse condition is appropriate due to

your history of substance abuse.

The financial special conditions are appropriate to

the financial nature of the offenses of conviction and the

substantial financial obligations imposed by this judgment.

I find on the basis of the financial statement

included in the presentence report that you are well able to

pay the fine that I have imposed.

I advise you that, to whatever extent you haven't

waived it, you have the right to appeal from the judgment

imposing this sentence.  If you wish to appeal, you must file a

written notice of appeal with the clerk of the district court

no later than 14 days after the date on which it is entered,

which could be as soon as today.  If you wish to appeal and you

can't afford to pay the fees necessary to do so, you have the

right to apply for permission to appeal as a poor person.  If

such an application were granted, you would be permitted to

appeal without payment of the fees.  And if you couldn't afford

a lawyer, a lawyer would be appointed for you.

The mandatory drug testing condition is suspended

because the conditions of supervised release contemplate drug

testing.

O5SUSALS

1          I recommend that you be enrolled in the RDAP program.

2          I recommended that you be designated to a facility as

3     close to Washington D.C. as reasonably possible consistent with

4     your security classification.

5          And you may be seated.

6          Now, are there any other findings that anyone regards

7     as necessary for the purpose of this sentence?  Mr. Raymond?

8          MR. RAYMOND:  Not from the government, your Honor.

9          THE COURT:  Counsel?

10          MR. LINDER:  No, your Honor.

11          THE COURT:  Does either side wish me to read the

12     special conditions of supervision out *in haec verba* or is it

13     adequately covered in your view?  Mr. Raymond?

14          MR. RAYMOND:  It's adequately covered, your Honor.

15          THE COURT:  Mr. Linder?

16          MR. LINDER:  Same, your Honor.

17          THE COURT:  Okay.  Is there anything else anyone

18     wishes to raise?

19          MR. LINDER:  Yes, your Honor.  In addition to the

20     recommendations you have made, we would ask for a

21     self-surrender date of August 29th.

22          THE COURT:  Any objection?

23          MR. RAYMOND:  No, your Honor.

24          THE COURT:  Okay.  That's granted.

25          I continue you on bail, Mr. Salame, pending your

O5SUSALS

1    surrender to the Bureau of Prisons on the date and by the time

2    designated by and for the commencement of your service of your

3    sentence.  That date shall not be earlier than

4    August 29, 2024.

5             Your compliance with the obligation of surrender is a

6    condition of your bail.  All of the bail conditions that have

7    been in effect until now remain in effect.  Any failure to

8    comply with any of those conditions could result in your

9    revocation of bail and your immediate incarceration.  They

10   could also result in your being charged with escape, which

11   would be a separate and independent offense that could lead to

12   a further term of imprisonment.

13            Anything further?

14   MR. LINDER:  Your Honor, in addition to requesting a

15   designation to a facility near Washington D.C., would your

16   Honor consider specifically requesting FCI Cumberland in

17   Maryland?  It's the closest to his house.

18            THE COURT:  I'll leave that to the Bureau of Prisons.

19   I don't have any objection to it, to be clear.

20            And also, because I understand that members of the

21   family are here and I don't want this to seem any worse from

22   their point of view than it is, in the absence of any

23   unforeseen circumstances such as disciplinary problems during

24   the term of incarceration, the defendant, at the discretion of

25   the Bureau of Prisons, would be entitled to up to 54 days of

O5SUSALS

```
1    what is commonly known as good time per year of incarceration,

2    which could reduce the amount of time served by as much as

3    15 percent.  If he is selected for the RDAP program and

4    successfully completes it, he could earn a substantial

5    additional period off the time actually served, as I understand

6    it, up to year.  And under, I believe it's The First Step Act

7    participation in programs designed to limit recidivism could

8    lead to a further reduction and the time actually served, as I

9    understand it, of up to a year.

10           There's no guarantee to any of that.  None of that is

11   up to me, but I thought I would share with you my understanding

12   that seven and a half years may seem like more -- may turn out

13   to be more like four and a half years, and there's the

14   possibility for part of that being served in a halfway house.

15   So, that's just in the interest of everybody understanding the

16   practical realities of federal time as opposed to state time.

17   That what I understand.

18           Anything else, folks?

19           MR. RAYMOND:  No.  Thank you, your Honor.

20           MR. LINDER:  No, your Honor.

21           THE COURT:  Okay.  Thanks to counsel on both sides for

22   helpful presentations.

23                              o0o

24

25
```