**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

     -against-

RYAN SALAME,

         Defendant.

Case No.: 1:22-cr-00673-LAK


**PETITION FOR A WRIT OF ERROR CORAM NOBIS,**
**OR ALTERNATIVELY FOR A WRIT OF AUDITA QUERELA**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ..................................................................................................................... 4

    I.      The Court has the Authority to Grant the Requested Relief. ......................................... 5

    II.     Salame's Plea Agreement did not Waive This Challenge to his Conviction. ................. 9

    III.    The Court Should Grant the Requested Relief Because the Government Failed
           to Honor an Implied Commitment that Induced Salame's Plea...................................11

    IV.    Alternatively, the Government's Conditioning of its Decision on Whether to
           Prosecute Bond on Salame's Acceptance of the Plea Arrangement was
           Improper............................................................................................................. 22

PRAYER FOR RELIEF........................................................................................................ 26

# TABLE OF AUTHORITIES

## Cases

*Allyn v. Comm'r of Corr. Servs.*, 708 F. Supp. 592 (S.D.N.Y. 1989) ...................................... 24, 25

*Bemis v. United States*, 30 F.3d 220 (1st Cir. 1994) ..................................................................... 14

*Blackledge v. Allison*, 431 U.S. 63 (1977) ............................................... 8, 13, 14, 20, 21

*Blanton v. United States*, 94 F.3d 227 (6th Cir. 1996) ................................................................... 7

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978) ........................................................................ 2, 22

*Brady v. United States*, 397 U.S. 742 (1970) .............................................................................. 22

*Brown v. United States*, 565 F.2d 862 (3d Cir. 1977)..................................................... 14, 18, 20

*Chang v. United States*, 250 F.3d 79 (2d Cir. 2001) ........................................................... 8, 9, 21

*Collins v. Holinka*, 510 F.3d 666 (7th Cir. 2007) ......................................................................... 7

*Correale v. United States*, 479 F.2d 944 (1st Cir. 1973) .............................................................. 17

*Crow v. United States*, 397 F.2d 284 (10th Cir. 1968) ..................................................... 24, 25, 26

*Dean v. United States*, 418 F. Supp. 2d 149 (E.D.N.Y. 2006)...................................................... 6

*Dugan v. United States*, 521 F.2d 231 (5th Cir. 1975) ........................................................ 14, 20

*Fleming v. United States*, 146 F.3d 88 (2d Cir. 1998)............................................................... 5, 7

*Gonzalez v. United States*, 722 F.3d 118 (2d Cir. 2013) ......................................................... 8, 21

*Harman v. Mohn*, 683 F.2d 834 (4th Cir. 1982)............................................................. 23, 25, 26

*Heflin v. United States*, 358 U.S. 415 (1959)............................................................................... 5

*In re Altro*, 180 F.3d 372 (2d Cir. 1999).................................................................................... 9

*Machibroda v. United States*, 368 U.S. 487 (1962) .................................................................... 19

*Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994) ................................................................. 18

*Persico v. United States*, 418 F. App'x 24 (2d Cir. 2011) ............................................................ 7

*Raines v. United States*, 423 F.2d 526 (4th Cir. 1970) ............................................................... 21

*Santobello v. New York*, 404 U.S. 257 (1971) ........................................................................ 1, 12

*Shen v. United States*,
   No. 1:22-CV-8014-GHW, 2023 WL 4978104 (S.D.N.Y. Aug. 3, 2023) ....................... 7, 20, 21

*Spence v. Superintendent, Great Meadow Corr. Facility*,
  219 F.3d 162 (2d Cir. 2000) ................................................................ 12

*Taylor v. Kavanagh*, 640 F.2d 450 (2d Cir. 1981) ........................................ 12

*Townsend v. Burke*, 334 U.S. 736 (1948) .................................................. 15

*Trotter v. United States*, 359 F.2d 419 (2d Cir. 1966) ............................ 14, 18

*U.S. ex rel. McGrath v. LaVallee*, 319 F.2d 308 (2d Cir. 1963) ................... 18

*U.S. ex rel. Oliver v. Vincent*, 498 F.2d 340 (2d Cir. 1974) .................... 13, 18

*United States v. Abbott*, 241 F.3d 29 (1st Cir. 2001) ....................... 15, 23, 25

*United States v. Al-Arian*, 514 F.3d 1184 (11th Cir. 2008) ........................ 15

*United States v. Aller*, 486 F. Supp. 3d 752 (S.D.N.Y. 2020) ......................... 7

*United States v. Battle*, 447 F.2d 950 (5th Cir. 1971) ........................... 16, 17

*United States v. Blackner*, 721 F.2d 703 (10th Cir. 1983) ....................... 14, 18

*United States v. Bullock*, 725 F.2d 118 (D.C. Cir. 1984) ........................... 14

*United States v. Carbone*, 739 F.2d 45 (2d Cir. 1984) ............................... 5

*United States v. Carlino*, 400 F.2d 56 (2d Cir. 1968) ........................... 6, 8, 21

*United States v. Cieslowski*, 410 F.3d 353 (7th Cir. 2005) ......................... 12

*United States v. Clements*, 992 F.2d 417 (2d Cir. 1993) ............................ 15

*United States v. Daniels*, 821 F.2d 76 (1st Cir. 1987) .............................. 23

*United States v. Delvalle*, 94 F.4th 262 (2d Cir. 2024) .......................... 1, 12

*United States v. DeMartino*, 112 F.3d 75 (2d Cir. 1997) ............................. 6

*United States v. Durrani*, 115 F. App'x 500 (2d Cir. 2004) .......................... 7

*United States v. Elenes-Lopez*,
  No. CR-75-447-PHX-CAM, 1990 WL 10023717 (D. Ariz. Sept. 19, 1990) ............. 6

*United States v. Espinoza-Soto*,
  No. CIV. 94-662 TUC RMB, 1994 WL 16013615 (D. Ariz. Oct. 24, 1994) ............. 6

*United States v. Feldman*, 939 F.3d 182 (2d Cir. 2019) ..................... 13, 17, 18

*United States v. Garcia*, -- F. Supp. 3d --, 2024 WL 3413997 (D.N.M. 2024) ......... 6

*United States v. Garcia*, 956 F.2d 41 (4th Cir. 1992) ............................... 15

*United States v. Ghebreziabher*, 701 F. Supp. 115 (E.D. La. 1988)................................................ 6

*United States v. Gotti*, 399 F. Supp. 2d 252 (S.D.N.Y. 2005) ................................................ 12, 19

*United States v. Graves*, 374 F.3d 80 (2d Cir. 2004)........................................................ 13, 17, 18

*United States v. Hammerman*, 528 F.2d 326 (4th Cir. 1975) ...................................... 14, 16, 17, 18

*United States v. Hernandez*, 242 F.3d 110 (2d Cir. 2001)........................................................10, 11

*United States v. Keogh*, 391 F.2d 138 (2d Cir. 1968)........................................................ 7, 8, 20

*United States v. Khalaf*, 116 F. Supp. 2d 210 (D. Mass. 1999).......................................................... 6

*United States v. Knights*, 968 F.2d 1483 (2d Cir. 1992)........................................................ 16

*United States v. LaPlante*, 57 F.3d 252 (2d Cir. 1995) ........................................................ 5

*United States v. Marquez*, 909 F.2d 738 (2d Cir. 1990) ........................................................ 23, 24, 25

*United States v. Mergen*, 764 F.3d 199 (2d Cir. 2014)........................................................11

*United States v. Morgan*, 202 F.2d 67 (2d Cir. 1953) ........................................................ 8

*United States v. Morgan*, 346 U.S. 502 (1954) ........................................................ 2, 6, 8

*United States v. Nelson*, 277 F.3d 164 (2d Cir. 2002) ........................................................ 12, 22

*United States v. Nuckols*, 606 F.2d 566 (5th Cir. 1979) ........................................................ 22, 25

*United States v. Raifsnider*, 663 F.3d 1004 (8th Cir. 2011)........................................................ 18

*United States v. Reyes*, 945 F.2d 862 (5th Cir. 1991)........................................................ 5

*United States v. Roberts*, 570 F.2d 999 (D.C. Cir. 1977) ........................................................ 15

*United States v. Robinson*,
   No. 15-CR-00010-SI-3, 2019 WL 1560447 (N.D. Cal. Apr. 10, 2019)........................................................ 6

*United States v. Schmick*, 21 F.3d 11 (2d Cir. 1994) ........................................................ 10

*United States v. Seng Chen Yong*, 926 F.3d 582 (9th Cir. 2019)........................................................ 23

*United States v. Singleton*,
   47 F.3d 1177 (Table), 1995 WL 66792 (9th Cir. 1995)........................................................ 17, 19

*United States v. Sperling*,
   No. 73 CR. 441 (MBM), 2003 WL 21518359 (S.D.N.Y. July 1, 2003) ........................................................ 5

*United States v. Tablie*, 166 F.3d 505 (2d Cir. 1999) ........................................................ 2

*United States v. Tribote*, 297 F.2d 598 (2d Cir. 1961)........................................................ 7, 9, 20, 21

*United States v. Tursi*, 576 F.2d 396 (1st Cir. 1978) ....................................................... 22

*United States v. Usher*, 703 F.2d 956 (6th Cir. 1983) .................................................. 26

*United States v. Valdez-Pacheco*, 237 F.3d 1077 (9th Cir. 2001) ................................... 2

*United States v. Valenciano*, 495 F.2d 585 (3d Cir. 1974) ........................................... 18

*United States v. Whalen*, 976 F.2d 1346 (10th Cir. 1992)........................................... 23

*United States v. White*, 366 F.3d 291 (4th Cir. 2004).......................................... 15, 19

*United States v. Williams*, 536 F.2d 247 (8th Cir. 1976) ........................................... 20

*United States v. Wolfson*, 558 F.2d 59 (2d Cir. 1977) ............................................ 8, 21

*United States v. Wright*, 43 F.3d 491 (10th Cir. 1994) ............................................... 23

*Zilich v. Reid*, 36 F.3d 317 (3d Cir. 1994) ............................................................... 18, 20

**Statute**

All Writs Act, 28 U.S.C. § 1651 ..................................................................... 1, 7

**Other Authorities**

28 U.S.C. § 2255 advisory committee's notes to Rule 2 ............................................ 6

Black's Law Dictionary (12th ed. 2024)........................................................... 15

## INTRODUCTION

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), Defendant Ryan Salame respectfully petitions for a writ of error coram nobis, or of audita querela, to hold the Government to its assurance that it would not continue investigating Michelle Bond if Salame pleaded guilty or, in the alternative, to vacate his conviction in this case.

Although Salame pleaded guilty to multiple counts in this matter, recent developments confirm that his conviction must be vacated.  As shown below, the Government used the plea negotiations to threaten Salame's domestic partner and the mother of his child, Michelle Bond.  In an effort to induce Salame's plea, Government lawyers conveyed that they would discontinue investigating Bond if Salame pleaded guilty.  Considering Salame's manifest desire to protect Bond, Salame responded by agreeing to enter into a plea agreement.

Yet the Government failed to abide by its word, recently resuming its investigation into Bond and pursuing an indictment against her.  In this Circuit, when a defendant enters a plea in reliance "on a promise … of the prosecutor," "such promise must be fulfilled."  *United States v. Delvalle*, 94 F.4th 262, 268 (2d Cir. 2024) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).  That precedent requires post-conviction relief here—either an order setting aside the guilty-plea conviction on the basis of the Government's breach, or an order for specific performance of the pledge not to pursue charges against Bond.

Alternatively, relief should be granted because there are serious questions about the lawfulness of the Government's tactics in trying to induce Salame to plead guilty.  Indeed, Government counsel should have been aware that the Supreme Court has long been skeptical of "a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused," as that sort of condition "might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider."  *Bordenkircher v. Hayes*,

434 U.S. 357, 365 n.8 (1978). Ignoring that precedent, the Government nonetheless sought to use Salame's caring for the mother of his child against him. And that is an independent basis for granting Salame post-conviction relief.

To be sure, "the All Writs Act does not confer an independent basis of jurisdiction; it merely provides a tool … in cases over which jurisdiction is conferred by some other source." *United States v. Tablie*, 166 F.3d 505, 506–07 (2d Cir. 1999). But no independent jurisdictional basis is necessary to decide the instant petition, which "is a step in the [above-captioned] criminal case and not … the beginning of a separate civil proceeding." *United States v. Morgan*, 346 U.S. 502, 506 n.4 (1954); *see also United States v. Valdez-Pacheco*, 237 F.3d 1077, 1079 (9th Cir. 2001).

## BACKGROUND[1]

Salame was charged by information with one count of conspiracy to make unlawful political contributions and defraud the Federal Election Commission and one count of conspiracy to operate an unlicensed money transmitting business. Dkt. No 262. On September 7, 2023, Salame pleaded guilty to both charges as part of a plea bargain, Dkt. No. 283, and the plea agreement ("Agreement") was memorialized in writing. By entering this Agreement, Salame forewent many available legal defenses to the charges brought against him.

Before Salame pleaded guilty to these charges and during the Government's underlying investigation, the Government conveyed to Salame that it was also investigating separate alleged campaign-finance violations by Michelle Bond, Salame's domestic partner and the mother to his eight-month-old child. Decl. of Ryan Salame ¶ 5 ("Salame Declaration"); Dkt. No. 283 at 21:18–22:9. Thereafter, during an April 28, 2023 video conference call with Salame's counsel, Assistant

---

[1] Given the Court's familiarity with the underlying subject matter, Salame does not provide here a full summary of all background information. Rather, Salame respectfully refers the Court to previous filings in this matter for a more thorough discussion of the events that led to his being charged.

U.S. Attorney Danielle Sassoon read from prepared talking points and explained that, although she could not put this condition within the four corners of the Agreement (as she said is often the practice of the office), "if we conclude" the investigation "as to [Salame], that would conclude th[e] facet of the investigation" into Bond. Salame Decl. ¶ 6. In other words, Sassoon represented that Salame's pleading guilty would also terminate the investigation into Bond.

Salame's lawyers, who also represented Bond, were surprised by such a direct statement tying a plea to Bond's investigation, and they communicated their understanding of this statement to both Salame and Bond. Salame Decl. ¶ 7. Salame's lead lawyers had long careers in DOJ, and, as they relayed to Salame, neither had seen such clear inducement presented in pre-charging discussions. *Id.* ¶ 8. That Sassoon was reading from talking points reinforced defense counsel's impression that the assurance was sincere, and not a thoughtless or off-hand comment. Indeed, defense counsel was so certain of the sincerity that, once Salame entered the Agreement, defense counsel put their file in storage as to Bond, believing the matter had concluded. *Id.* ¶ 9.

Based on Sassoon's representations, Salame signed the Agreement even though it did not mention the condition regarding Bond and instead included a boilerplate integration clause stating that the writing "supersedes any prior understandings, promises, or conditions between this Office and the defendant." Agreement at 7; Salame Decl. ¶ 10. For similar reasons, when asked at his plea allocution whether "anyone made any promises other than whatever is set forth in the plea agreement that induced [him] to plead guilty," Salame answered in the negative. Dkt. No. 283 at 19:20–23; Salame Decl. ¶ 10. One of Salame's main motives for accepting the plea arrangement was his understanding that, if he did so, the Government would not pursue campaign-finance charges against Bond. Salame Decl. ¶ 12. And he took Government counsel at their word.

Yet despite Salame's cooperation, the Government failed to honor its implied commitment not to pursue the campaign-finance charges against Bond. *Id.* ¶ 13. Rather, now that the Government was able to secure Salame's plea, it has resumed pursuing charges against Bond.

The Government's inducement of a plea has real-life consequences. In advance of sentencing, the Government recommended a sentence "within the range of five to seven years' imprisonment." Dkt. No. 436 at 1. Instead, this Court sentenced Salame to 90 months' imprisonment followed by three years of supervised release. Dkt. No. 445 at 3–4. The Court also ordered Salame to pay $500,200 in assessments and fines and $5,593,177.91 in restitution—an obligation Salame has already satisfied. Dkt. No. 445 at 7. Salame is scheduled to begin his prison sentence on October 13, 2024. Salame Decl. ¶ 4.

## ARGUMENT

The Government's actions require post-conviction relief for either of two reasons. First, binding authority confirms that Government assurances made during plea negotiations must be fulfilled. Here, the Government failed to follow through on its implied assurances, and thus it falls to the Court to require the Government to do so. Second, and alternatively, if the Government is not held to its assurances, the Court should nonetheless grant post-conviction relief because the assurances made during the plea negotiations were unlawfully coercive, and the entire plea agreement and conviction must be vacated.

Accordingly, Salame requests the following relief: (i) holding the Government to its assurance that Bond would no longer be the subject of investigation, as that assurance induced Salame's plea; or (ii) in the alternative, if the foregoing relief is not granted, entering an order vacating Salame's conviction.

I.      **The Court has the Authority to Grant the Requested Relief.**

This Court may grant the requested relief in the form of a writ of coram nobis or audita querela.  True, a motion to set aside a guilty-plea conviction based on the government's breach of a plea agreement or to obtain specific performance of a plea agreement's terms would ordinarily be brought pursuant to 28 U.S.C. § 2255.  *See United States v. Carbone*, 739 F.2d 45, 46 (2d Cir. 1984).  But that provision only applies if the petitioner is "in custody," 28 U.S.C. § 2255(a), and cannot "be used to question a sentence which the prisoner has not begun to serve," *Heflin v. United States*, 358 U.S. 415, 418 (1959).  Here, Salame has not yet begun serving his term of imprisonment, and thus he cannot file a Section 2255 motion.

Nevertheless, "the writs of error coram nobis and audita querela remain available" as avenues for non-custodial petitioners to seek similar collateral relief "with respect to criminal convictions.  Coram nobis is available to redress an adverse consequence resulting from an illegally imposed criminal conviction or sentence."  *United States v. LaPlante*, 57 F.3d 252, 253 (2d Cir. 1995).  It "is essentially a remedy of last resort" for convicted defendants who are not "in custody … [and] therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus."  *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998).  Similarly, "[a]udita querela is probably available where there is a legal, as contrasted with an equitable, objection to a conviction that has arisen subsequent to the conviction and that is not redressable pursuant to another post-conviction remedy."  *LaPlante*, 57 F.3d at 253.  "The distinction between the two writs" is "largely, if not entirely, one of … timing, not substance."  *United States v. Sperling*, No. 73 CR. 441 (MBM), 2003 WL 21518359, at *4 (S.D.N.Y. July 1, 2003) (Mukasey, J.) (quoting *United States v. Reyes*, 945 F.2d 862, 863 n.1 (5th Cir. 1991)).

In this case, the Government failed to honor the implied assurances it gave to secure Salame's guilty plea, which any reasonable person would have interpreted as an assurance that the

Government would discontinue any investigation of Bond.  Indeed, even if the Government were to argue that it caveated its assurance or attempted to walk it back later, it was clearly intended to be taken as a promise.  Alternatively, the Government's conditioning its investigation of Bond on Salame's pleading guilty rendered Salame's plea not truly voluntary.

In the former scenario, Salame's guilty-plea conviction would have been rendered invalid by virtue of the Government's subsequent violation of its own commitments, in which case a writ of audita querela would lie.  *See United States v. Khalaf*, 116 F. Supp. 2d 210, 217 (D. Mass. 1999); *United States v. Ghebreziabher*, 701 F. Supp. 115, 117 (E.D. La. 1988); *United States v. Garcia*, -- F. Supp. 3d --, 2024 WL 3413997, at *7 (D.N.M. 2024); *United States v. Elenes-Lopez*, No. CR-75-447-PHX-CAM, 1990 WL 10023717, at *3 (D. Ariz. Sept. 19, 1990); *United States v. Espinoza-Soto*, No. CIV. 94-662 TUC RMB, 1994 WL 16013615, at *2 (D. Ariz. Oct. 24, 1994); *United States v. Robinson*, No. 15-CR-00010-SI-3, 2019 WL 1560447, at *5, *6 (N.D. Cal. Apr. 10, 2019).  In the latter scenario, the Government's plea condition would have been invalid at the time Salame's plea was entered and thus could be challenged via petition for a writ of coram nobis.  *See United States v. Carlino*, 400 F.2d 56, 57–58 (2d Cir. 1968); *Dean v. United States*, 418 F. Supp. 2d 149, 155, 157 (E.D.N.Y. 2006).  Either way, Salame is entitled to relief, and even "misstyl[ing] his motion" would not be a basis to "bar[] [Salame] from an appropriate remedy." 28 U.S.C. § 2255 advisory committee's notes to Rule 2.  Rather, "[t]he court should construe it as whichever one is proper under the circumstances and decide it on its merits."  *Id.*; *accord United States v. DeMartino*, 112 F.3d 75, 81 (2d Cir. 1997).

Once it is established that the Court may enter a writ of coram nobis or audita querela, the Court turns to Section 2255 proceedings for guidance on the applicable procedures.[2]  "Because of

---

[2] "Since [a] motion in the nature of … coram nobis is not specifically authorized by any statute enacted by Congress, the power to grant such relief … come[s] from the all-writs section of the Judicial Code."  *Morgan*, 346 U.S. at 506

the similarities between coram nobis proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in coram nobis cases." *Fleming v. United States*, 146 F.3d 88, 90 n.2 (2d Cir. 1998) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)).  "A motion in a criminal case … nominally … bearing [the] ancient title … audita querela" also "may be treated as one under § 2255, because the caption on a document does not matter." *Collins v. Holinka*, 510 F.3d 666, 667 (7th Cir. 2007).  Thus, the same procedures that govern motions pursuant to § 2255 also govern petitions for writs of coram nobis or audita querela.

It follows that, whether this filing is called a § 2255 motion or a petition for a writ of coram nobis or audita querela, similar principles apply in determining whether Salame is entitled to a hearing or to discovery.  *See United States v. Durrani*, 115 F. App'x 500, 502–03 (2d Cir. 2004).  His "allegations" need only "cross [a] rather low threshold [to] entitl[e] him to an evidentiary hearing on his petition …." *United States v. Keogh*, 391 F.2d 138, 142 (2d Cir. 1968) (Friendly, J.).  "A petitioner is entitled to a hearing on a writ of error *coram nobis*" or of audita querela "'if his petition alleges facts which would support a claim of deprivation of constitutional right, and some material issue of fact is in dispute.'" *Shen v. United States*, No. 1:22-CV-8014-GHW, 2023 WL 4978104, at *5 (S.D.N.Y. Aug. 3, 2023) (quoting *United States v. Tribote*, 297 F.2d 598, 600, 601 (2d Cir. 1961)).  And "'this Court must, in deciding whether [petitioner] is entitled to a hearing, assume the facts alleged to be true[.]" *Id.*

For instance, the Second Circuit has previously held in one case that the question of "[w]hether [a coram nobis petitioner] in fact was represented by counsel or whether he can … show[] that he did not intelligently waive this right can only be determined in a hearing.  That

---

(citing 28 U.S.C. § 1651(a)).  "A writ of *audita querela* is" likewise available "under the All Writs Act, 28 U.S.C. § 1651(a)." *United States v. Aller*, 486 F. Supp. 3d 752, 764 (S.D.N.Y. 2020) (quoting *Persico v. United States*, 418 F. App'x 24, 25 (2d Cir. 2011)).

hearing may be had upon affidavits or other evidentiary matter … and would not necessarily require that [the petitioner] be brought to the [district court] to testify orally. But unless the affidavits clearly show that [his] contention is without foundation, he should be present at the hearing and be permitted to testify." *United States v. Morgan*, 202 F.2d 67, 69 (2d Cir. 1953), *aff'd*, 346 U.S. 502 (1954). On appeal, the Supreme Court agreed, explaining that, while "[i]t is presumed the proceedings were correct and the burden rests on the accused to show otherwise," given the "barren" "state of the record," he "[wa]s entitled to an opportunity to attempt to show that this conviction was invalid." *Morgan*, 346 U.S. at 512–13; *see also Keogh*, 391 F.2d at 148–49; *cf. Carlino*, 400 F.2d at 58; *United States v. Wolfson*, 558 F.2d 59, 65–66 (2d Cir. 1977).

Recent Second Circuit caselaw on hearings and discovery in § 2255 proceedings charts a similar course: "To warrant a hearing, [a § 2255] motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). To be sure, "[i]n determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must also take into account admissions made by the defendant at his plea hearing …. '[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal[.]'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). But "allegations that [a] plea was induced by an unkept promise [a]re not vague or conclusory where," for example, "the motion 'indicate[s] exactly what the terms of the promise were; when, where, and by whom the promise had been made; and the identity of one witness to its communication[.]'" *Id.* (emphasis omitted) (quoting *Blackledge*, 431 U.S. at 76). Moreover, a "district judge … may employ a variety of measures in an effort to avoid the need for an evidentiary hearing." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (quoting *Blackledge*, 431 U.S. at 81). "It may instead

be perfectly appropriate … for the district court to proceed by requiring that the record be expanded to include letters, documentary evidence, and, in an appropriate case, even affidavits." *Id.*

All told, although the Second Circuit has acknowledged the "tendency to try to avoid hearings in coram nobis and habeas corpus proceedings," its caselaw has also admonished that a court "cannot refuse a hearing" simply "because it is improbable that a prisoner can prove his claims." *Tribote*, 297 F.2d at 603–04. As will be shown in due course, Salame is entitled to a hearing, or at least to discovery on his claim for post-conviction relief.

## II.    Salame's Plea Agreement did not Waive This Challenge to his Conviction.

Salame anticipates that the Government will argue that he waived this challenge through the Agreement. The Government would be mistaken. The Second Circuit generally "interpret[s] plea agreements under principles of contract law" but recognizes that, "unlike ordinary contracts, plea agreements call for defendants to waive fundamental constitutional rights, and … that the Government generally drafts the agreement and enjoys significant advantages in bargaining power," and accordingly "resolv[es] any ambiguities against the Government." *In re Altro*, 180 F.3d 372, 375 (2d Cir. 1999). Applying those principles, Salame has not waived this challenge.

Salame's plea Agreement states in part:

> It is agreed (i) that the [Salame] will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of *any sentence* equal to or below the Stipulated Guidelines Sentence of 120 months' imprisonment and (ii) that the Government will not appeal any sentence equal to or above the Stipulated Guidelines Sentence. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that *any appeal as to the [Salame]'s sentence* that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

Agreement at 5 (both emphases added).

The waivers in this passage should be limited to their "literal terms." *United States v. Schmick*, 21 F.3d 11, 12 n.1 (2d Cir. 1994). For starters, that Salame agreed not to appeal or bring a collateral challenge *to his sentence* does not foreclose a challenge to his *conviction*. This issue is controlled by the Second Circuit's decision in *United States v. Hernandez*, 242 F.3d 110 (2d Cir. 2001). In that case, Hernandez moved before sentencing to withdraw his guilty plea based on ineffective assistance of counsel. The district court denied the motion and sentenced Hernandez. Hernandez appealed, and on appeal the government "argu[ed] that the plea agreement forecloses defendant's right to take this appeal." *Id*. at 113. The Second Circuit rejected that argument, notwithstanding that the waiver in the *Hernandez* plea agreement was materially identical to the waiver in Salame's Agreement:

> It is further agreed (i) that the [Hernandez] will neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, *any sentence* within or below the stipulated Guidelines range of 120-135 months and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines range …. Furthermore, it is agreed that *any appeal as to the [Hernandez]'s sentence* that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

*Id*. (italics added by the Second Circuit). The Second Circuit held that the "plain" language of the waiver "clearly" did not bar Hernandez's appeal of his conviction:

> By the plain terms of this agreement, the waiver applies only to an appeal or motion to vacate regarding the defendant's "sentence." In this case, the defendant is not appealing any aspect of his sentence; he is appealing the denial of his motion to withdraw his guilty plea, an issue related to the merits of the underlying conviction. Therefore, the plea agreement clearly does not bar this appeal.

*Id*. (citation omitted). There is no material difference between Hernandez's waiver and Salame's in this case. Hence, Salame, too, may collaterally challenge his conviction.

Moreover, if there were any doubt about the scope of the Agreement's waiver, the waiver must be construed in Salame's favor to allow this collateral challenge. The Second Circuit's

"precedents indicate that specifically in the context of claimed waivers of appellate rights plea agreements are to be applied narrowly and construed strictly against the Government." *Hernandez*, 242 F.3d at 113 (cleaned up). This rule of construction is "quite settled." *United States v. Mergen*, 764 F.3d 199, 208 (2d Cir. 2014).

At any rate, "[e]ven if the plain language of the plea [A]greement barred this" post-conviction petition for relief, the Court should "not enforce such a waiver of … rights in this case because" Salame "is challenging the constitutionality of the process by which he waived those rights." *See Hernandez*, 242 F.3d at 113.

## III.    The Court Should Grant the Requested Relief Because the Government Failed to Honor an Implied Commitment that Induced Salame's Plea.

As shown above, there is ample authority confirming this Court's authority to grant the requested relief, and the first reason to do so is the Government's failure to honor its implied commitment not to pursue investigation of Bond if Salame accepted the government's offer and pleaded guilty. As noted, AUSA Sassoon strongly implied to Salame's lawyers during plea negotiations that the Government would "conclude" its investigation into Bond if Salame pleaded guilty. Salame Decl. ¶ 6. There can be no doubt about that assurance, as all evidence points toward its sincerity. AUSA Sassoon read from prepared talking points, confirming that her statement, "as is often the case here, if we conclude as to Ryan, we would conclude this facet of the investigation," was not off the cuff. *Id.* ¶ 8. Salame, who was primarily focused on protecting the mother of his child, responded by pleading guilty. *Id.* ¶ 12. And defense counsel, who have a wealth of experience in this arena, understood this to be a sincere assurance and put their documents collected from Bond in storage as soon as Salame executed the Agreement. *Id.* ¶ 9.

Yet the Government failed to honor its commitment not to continue investigating Bond if Salame accepted the government's offer and pleaded guilty. *Id.* ¶ 13. He is therefore entitled to

withdraw his guilty plea or to obtain specific performance—that is, termination of any investigation into Bond and the dismissal of campaign-finance charges against Bond. *See Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000) ("Ordinarily, the remedy for the [government's] breach of a plea agreement is either to enforce the bargain made or to allow the defendant to withdraw his guilty plea."); *Taylor v. Kavanagh*, 640 F.2d 450, 454 (2d Cir. 1981) ("Relief for misconduct committed during a plea negotiation includes the setting aside of the plea or ordering specific performance of the agreement.").

1. In this Circuit, prosecutors are kept to their assurances, and the Court has an important role in determining whether such assurances were made. The Second Circuit requires that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Delvalle*, 94 F.4th at 268 (quoting *Santobello*, 404 U.S. at 262); *accord United States v. Gotti*, 399 F. Supp. 2d 252, 258 (S.D.N.Y. 2005) ("Notwithstanding [a] generic integration clause, if there was such a promise, due process would require the Government to abide by it, provided that the promise in fact induced" the guilty plea). This is true even "if [a] defendant ha[s] … received an undisclosed promise from … the government." *Delvalle*, 94 F.4th at 268. Furthermore, "a guilty plea … may be invalidated"—that is, subject to withdrawal—"if it [wa]s induced by … misrepresentation[.]" *United States v. Nelson*, 277 F.3d 164, 207 (2d Cir. 2002) (quotation marks omitted).

Even where there is a written plea agreement, a court may still "inquir[e] into whether oral promises may have induced a plea, thereby rendering it involuntary[.]" *United States v. Cieslowski*, 410 F.3d 353, 361 (7th Cir. 2005). The Second Circuit "ha[s] long recognized that plea agreements are significantly different from commercial contracts. [Judicial] review of a plea agreement is not limited to its four corners, and [courts] construe them strictly against the

government." *United States v. Feldman*, 939 F.3d 182, 189 (2d Cir. 2019) (quotation marks omitted). This "relaxed approach to the parol evidence rule … applies even when a plea agreement contains a merger clause[,]" where the court may still "consider the government's oral and written statements in [its] interpretive exercise." *Id.* at 190. The Second Circuit confirmed as much in an earlier case where a "written [plea] agreement contain[ed] an integration clause, explicitly disclaiming the effectiveness of any prior oral representations." *United States v. Graves*, 374 F.3d 80, 84 (2d Cir. 2004). In that case, the Second Circuit concluded that, "if [the defendant] was induced to enter into the plea agreement by representations that were made and not intended to be carried out, that sort of improper inducement might well provide a basis for invalidating the agreement, or at least for permitting withdrawal of the plea." *Id.*

Moreover, just as a formulaic merger clause in a plea agreement does not allow the government to escape accountability for oral assurances made to a defendant in order to secure a guilty plea, a defendant's "assurance to the … court at the time of the acceptance of his plea that no promises had been made to him" does not always "overcome the evidence to the contrary," given the "pressures which unhappily but not uncommonly have induced such assurances." *U.S. ex rel. Oliver v. Vincent*, 498 F.2d 340, 342 n.1 (2d Cir. 1974). "[T]he federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation" as to invalidate the plea. *Blackledge*, 431 U.S. at 74–75. "An analogy is to be found in the law of contracts.… [E]ven a … provision declaring that the contract contains the complete agreement of the parties, and that no antecedent or extrinsic representations exist, does not conclusively bar subsequent proof that such additional agreements exist and should be given

13

force.'" *Id.* at 75 n.6.[3]  As the Tenth Circuit explains, "[i]f the rule were otherwise, the strong policy favoring full disclosure of plea agreements could be emasculated by boilerplate answers and assurances that there were no agreements connected with the plea." *United States v. Blackner*, 721 F.2d 703, 709 (10th Cir. 1983).  Thus, where a defendant "asserted that his guilty plea had been induced and coerced by promises … made by … an Assistant United States Attorney," "[a] pre-sentencing colloquy between a trial judge and defendant" was "not conclusive.  The making of such promises … in bad faith may be trickery so flagrant as to violate [his] constitutional rights." *Trotter v. United States*, 359 F.2d 419, 420 (2d Cir. 1966) (quotation marks omitted).

Caselaw from other circuits is similar: Numerous courts have held that hearings were necessary to adjudicate "post-sentence application[s] [that] inform[ed] … trial court[s], for the first time, of … plea agreement term[s] that … prosecutor[s] allegedly failed to honor." *United States v. Bullock*, 725 F.2d 118, 119 (D.C. Cir. 1984); *accord United States v. Hammerman*, 528 F.2d 326, 331 (4th Cir. 1975) ("[The defendant]'s denial [at the allocution] of any inducement or commitment leaves untouched our determination that the assistant prosecutor's misrepresentation induced the plea."); *Brown v. United States*, 565 F.2d 862, 863 n.2 (3d Cir. 1977) ("Although [the defendant] denied under oath the existence of any plea negotiations at the plea hearing, the record does not preclude the possibility that such a bargain was in fact made.  And this is especially so since the trial court failed to ascertain whether the defendant had been instructed to respond untruthfully."); *Dugan v. United States*, 521 F.2d 231, 232–33 (5th Cir. 1975); *Blackner*, 721 F.2d at 709 ("[T]he court did discuss with the defendant that he had no 'assurances.'  However, because the court was not informed of the Government's agreement not to 'say anything at the time of

---

[3] Although *Blackledge* predates the current Federal Rule of Criminal Procedure 11, "the advent of modern Rule 11 procedures" has not "robbed that decision of all currency."  *Bemis v. United States*, 30 F.3d 220, 223 n.3 (1st Cir. 1994).

sentencing,' … that … '… does not estop [the defendant] from seeking to withdraw his plea.'" (quoting *United States v. Roberts*, 570 F.2d 999, 1007 (D.C. Cir. 1977)).

Buttressing the foregoing principles is the rule that "the prosecution must shoulder the burden of disclosing, in the first instance, all material information of plea agreements …." *United States v. Abbott*, 241 F.3d 29, 35 (1st Cir. 2001); *see also United States v. Clements*, 992 F.2d 417, 419 (2d Cir. 1993); Barbara J. Van Arsdale et al., Federal Procedure, Lawyers Edition § 22:975 (June 2024 update) ("Even though all parties have an obligation to disclose a plea bargain fully to the court, the government has a compelling duty to fully disclose its offer ….").

Indeed, beyond the general enforceability of a prosecutor's oral assurances, this case implicates the more fundamental principle that the Government cannot take advantage of a bargain induced by misleading representations. Even the circuits that apply a harsher policy against enforcing oral conditions of otherwise-written plea bargains nonetheless agree that "[p]arol evidence may be considered … where … government overreaching is alleged." *United States v. Al-Arian*, 514 F.3d 1184, 1191 (11th Cir. 2008). Overreaching, in the contract-law context, refers to "[t]he act or an instance of taking unfair commercial advantage of another, esp. by fraudulent means." Black's Law Dictionary (12th ed. 2024). Thus, "[p]roof of the Government's refusal to abide by … an oral promise" that induced a written agreement to plead guilty "would clearly constitute evidence of 'government overreaching' or 'fraud in the inducement,' admissible without running afoul of the parol evidence rule." *United States v. White*, 366 F.3d 291, 295 (4th Cir. 2004) (quoting *United States v. Garcia*, 956 F.2d 41, 44 & n.4 (4th Cir. 1992)); *see also Townsend v. Burke*, 334 U.S. 736, 740 (1948) ("[T]his … defendant was … overreached by the prosecution's submission of misinformation to the court ….").

At bottom, there can be no dispute that "the Government ought not be allowed to lure the defendant into a plea on false information." *United States v. Battle*, 447 F.2d 950 (5th Cir. 1971); *see also Hammerman*, 528 F.2d at 330, 331 ("We view the prosecutor's prediction as likely to inculcate belief and reliance and therefore an essential element of the plea bargain.…  It does not matter that the prediction or promise was made in good faith …."); *United States v. Knights*, 968 F.2d 1483, 1488 (2d Cir. 1992) ("Not only would it be unfair for the government to rely upon such known, pre-agreement circumstances …, it would have been fraudulent to have induced a defendant's plea with a promise that the government already knew it was not going to keep.").

2.  Yet the record in this case confirms that, by failing to abide by its assurances, the Government did just that—inducing Salame to plead guilty and then failing to live up to its assurances.  Here, the Government informed Salame's counsel, who in turn informed Salame, that his acceptance of a plea bargain would also "conclude" the "facet" of the U.S. Attorney's investigation of Bond for alleged campaign-finance violations.   Salame Decl. ¶ 6.  As the Government no doubt understood, that "prediction … [w]as likely to inculcate belief and reliance and therefore [was] an essential element of the plea bargain." *See Hammerman*, 528 F.2d at 330. Though the written Agreement and Salame's plea allocution did not mention this assurance, AUSA Sassoon told Salame's counsel that the Government could not put the condition within the four corners of the Agreement, which Salame took to mean that the commitment would be honored without regard to whether it was aired in open court.  Salame Decl. ¶ 11.  But the Government later failed to honor that commitment when it continued to investigate and pursue charges against Bond. Salame is entitled to hold the Government to its assurance by either withdrawing his plea or obtaining an order directing specific performance.

As noted above, that Salame's "plea [A]greement contains a merger clause" is not dispositive; "the merger clause is not ironclad and [a court] consider[s] the government's oral and written statements in [its] interpretive exercise." *See Feldman*, 939 F.3d at 190. Even if the Government's assurance had been akin to a mere "expression of optimism" regarding its investigation into Bond, Salame would nonetheless be entitled to some relief if the Government's representation "was misleading … [T]he government may not … rely exclusively on omissions of prior undertakings and representations from the four corners of the written agreement as effective nullification of them." *Id.* Indeed, *Feldman* is just one of multiple cases in which prosecutorial statements falling short of firm "promises" were held to constitute enforceable inducements of guilty pleas. *See Graves*, 374 F.3d at 85 ("[W]e feel compelled to return this matter to the District Court for a factual inquiry as to exactly what was said about 'proactive cooperation,' what understanding was reasonably conveyed to the Defendant concerning the cooperation."); *Battle*, 447 F.2d at 951 (holding that defendant accepting guilty plea was entitled to hearing on his argument "that the essence, though admittedly not unambiguous, of these conversations was that a light, if not minimal, sentence was in order and that the Government would not ask for … more"); *United States v. Singleton*, 47 F.3d 1177 (Table), 1995 WL 66792, at *3 (9th Cir. 1995) ("[The defendant] could have reasonably believed the terms of his plea agreement to include immunity from grand jury subpoenas."); *Hammerman*, 528 F.2d at 330 ("We view the prosecutor's prediction as likely to inculcate belief and reliance and therefore an essential element of the plea bargain."); *cf. Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973) ("Prosecutorial misrepresentations, though made in good faith, even to obtain a just, and here a mutually desired end, are not acceptable.… Nor are contradictory or confusing statements of the law adequate.").

Similarly, that Salame disclaimed during his plea colloquy that other promises were made is "not conclusive." *Trotter*, 359 F.2d at 420 (quoting *U.S. ex rel. McGrath v. LaVallee*, 319 F.2d 308, 314 (2d Cir. 1963)); *accord Oliver*, 498 F.2d at 342 n.1. As one appellate court noted in an appeal from a post-conviction proceeding, "[w]hile [the defendant's] responses to the questions posed by … the district attorney during the colloquy appear to conclusively negate [the defendant's] allegations in his habeas petition, total reliance on the colloquy is misplaced …. 'The possibility exists that an inherent part of the out-of-court understanding was that [the defendant] would respond negatively to an open court inquiry as to whether promises had been made.'" *Zilich v. Reid*, 36 F.3d 317, 322 (3d Cir. 1994) (quoting *United States v. Valenciano*, 495 F.2d 585, 587 (3d Cir. 1974)); *accord Brown*, 565 F.2d at 863 n.2; *Hammerman*, 528 F.2d at 331 (recognizing "possibility that fear that a truthful response might jeopardize the [plea] bargain may well produce an answer [at the plea allocution] that is false"). As Salame intends to show if afforded a hearing or discovery, that is what happened here.

3. In light of the record showing that the Government made assurances to induce a plea and then failed to follow through, Circuit precedent confirms that a hearing, or at least discovery, is required. Courts have held that several types of evidence may suffice to entitle a defendant to a hearing regarding undisclosed assurances or commitments by the government that the defendant alleges induced his or her guilty plea. For instance, "the prosecutor's own remarks at the plea allocution" may give rise to "factual issues … as to whether [the defendant] was led to believe" that there were other commitments or assurances undergirding his or her plea arrangement, *Graves*, 374 F.3d at 85, as may other concessions by prosecutors, *Feldman*, 939 F.3d at 188, 190; *see also Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994); *United States v. Raifsnider*, 663 F.3d 1004, 1010 (8th Cir. 2011); *Blackner*, 721 F.2d at 708. Likewise, in another case, the "parol

evidence c[ame] … from the district court's own observation of the plea negotiations.… [T]he district court concluded that [the defendant's] agreement to plead guilty was influenced by his understanding that he would not be required to cooperate with the Government," which "had an obvious effect on [his] understanding of the terms of the signed plea agreement." *Singleton*, 1995 WL 66792, at *3.

But neither a government concession nor an on-the-record statement by the district court is *necessary* to secure a hearing as to the existence of an undisclosed term or commitment of a plea bargain. For instance, the Fourth Circuit confirmed in a § 2255 proceeding that such a hearing was warranted notwithstanding the plea agreement's integration clause:

> Although neither defense nor Government counsel has directly attested under oath to the existence of an oral agreement (nor were they questioned about the agreement during the Rule 11 hearing), both have made *express* representations in their court submissions, acting as officers of the court, and those representations directly contradict each other. When, as here, the factual allegations "relate[] primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light," and where the ultimate resolution rests on a credibility determination, an evidentiary hearing is especially warranted. Accordingly, we remand for an evidentiary hearing on the question of whether the Government did make the alleged oral promise that [the defendant's] plea was conditional, permitting him to appeal denial of the suppression motion.

*White*, 366 F.3d at 302 (quoting *Machibroda v. United States*, 368 U.S. 487, 494–95 (1962)); *accord Gotti*, 399 F. Supp. 2d at 258 (deciding "the question of whether the Government induced [the defendant's] guilty plea by means of an oral promise or representation not reflected in the written agreement" only after "[the AUSA] and [the defendant's counsel], who were the lead negotiators as the parties neared a plea agreement, have each submitted affidavits concerning their respective recollections of any oral promises or representations ….").

Elsewhere, the Fifth Circuit held that, although at "the guilty plea hearing," "the district court questioned both defendants and their lawyers as to whether any promises in connection with

their pleas had been made and received negative replies," "[a]n evidentiary hearing [wa]s required to explore [the defendant's] contention that his guilty plea resulted from an unkept plea bargain": "When [a] petitioner goes beyond mere allegations by presenting credible affidavits that raise a substantial inference that an unkept bargain was in fact made, § 2255 requires an evidentiary hearing." *Dugan*, 521 F.2d at 232–33, 234, 233.[4]  The takeaway from this body of caselaw is that, as one court put it, "[i]f the allegations … go[] beyond matters covered in the Rule 11 proceedings or [a]re supported by credible affidavits that raised substantial inference that an unkept plea bargain was in fact made, section 2255 … ordinarily require[s] a hearing." *United States v. Williams*, 536 F.2d 247, 250 (8th Cir. 1976).

Here, Salame has put forth enough to warrant a hearing, or at least discovery, on whether an oral assurance by the government regarding the campaign-finance investigation into Bond induced Salame's guilty plea.  Per the Second Circuit, a coram nobis petitioner's "allegations" need only "cross [a] rather low threshold [to] entitl[e] him to an evidentiary hearing on his petition …." *Keogh*, 391 F.2d at 142.  Salame easily clears that threshold: "[H]is petition alleges facts which would support a claim of deprivation of constitutional right, and some material issue of fact is in dispute." *Shen*, 2023 WL 4978104, at *5 (quoting *Tribote*, 297 F.2d at 600).  The sworn affidavits that accompany the instant petition establish, at the very least, a "material issue of fact."

Moreover, although this Court "is not 'obliged to accept as facts mere conclusory allegations,'" the Court "must, in deciding whether [petitioner] is entitled to a hearing, assume the

---

[4] Similarly, the Third Circuit held that a habeas petitioner was entitled to an evidentiary hearing on whether the prosecution had made undisclosed assurances to secure his guilty plea, even though he denied the existence of such promises during the plea colloquy—since that petitioner "offered specific testimony that, if true, would negate the voluntariness of his plea and establish that he pled guilty only because of a belief he would receive probation in return for waiving his right to trial." *Zilich*, 36 F.3d at 321; *see also Brown*, 565 F.2d at 863 n.2 (reaching same conclusion because "[t]he specific allegations of the complaint" seeking post-conviction review, "viewed against the record established at the … plea hearing are not so 'palpably incredible' as to warrant summary dismissal of the petition on the basis of the pleadings" (quoting *Blackledge*, 431 U.S. at 76)).

facts alleged to be true." *Shen*, 2023 WL 4978104, at *5 (quoting *Tribote*, 297 F.2d at 601). Salame's allegations are more than sufficient in this respect. According to the Supreme Court and the Second Circuit, a defendant's post-conviction "allegations that [a] plea was induced by an unkept promise [a]re not vague or conclusory where," as here, "the motion 'indicate[s] exactly what the terms of the promise were; when, where, and by whom the promise had been made; and the identity of one witness to its communication[.]'" *Gonzalez*, 722 F.3d at 131 (emphasis omitted) (quoting *Blackledge*, 431 U.S. at 76). Indeed, such "assertions … warrant discovery or a hearing" even in the face of contradictory "admissions made by the defendant at his plea hearing …." *Id.*

Alternatively, even if this Court concludes that a live hearing is not yet warranted, the Court should at least take the "permissible intermediate step" of "requiring that the record be expanded to include letters, documentary evidence, and, in an appropriate case, even affidavits." *Chang*, 250 F.3d at 86 (quoting *Raines v. United States*, 423 F.2d 526, 529–30 (4th Cir. 1970)). Indeed, in a case holding that a coram nobis petitioner was not entitled to a live hearing, the Second Circuit explained that the district court considering the petition at least "had the benefit of … [the petitioner's] moving affidavit, counter-affidavits filed by the government, and various exhibits including copies of correspondence between [the petitioner's] counsel and the government prior to [his] change of plea." *Carlino*, 400 F.2d at 58; *see also Wolfson*, 558 F.2d at 65–66. In this case, some discovery would likely be required to obtain such documentary evidence.

For these reasons, Salame is entitled to a hearing, or at least to discovery, on his claim that his plea was induced by the government's unkept assurance that it would not pursue the campaign-finance charges against Bond. "[C]oncern for efficiency must not outweigh our concern for individual rights," and thus a court should not "refuse a hearing" simply because the court thinks it "improbable that a [petitioner] can prove his claims." *Tribote*, 297 F.2d at 603–04.

**IV.    Alternatively, the Government's Conditioning of its Decision on Whether to Prosecute Bond on Salame's Acceptance of the Plea Arrangement was Improper.**

Alternatively, the Government acted improperly by making the assurance in the first place. As the Second Circuit confirms, a guilty plea" also "may be invalidated if it is 'induced by … promises that are by their nature improper.'" *Nelson*, 277 F.3d at 207 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)).  In this case, even if the Government's suggestion that it would not prosecute Bond was not an aspect of Salame's plea bargain, that implied commitment was improper by nature and is grounds for him to withdraw the plea.  Indeed, when viewed through the lens of the distinct power imbalance between a prosecutor and the subject of an investigation, such inducements are particularly inappropriate.

1. The Supreme Court has long been skeptical of a prosecutor using his or her position to make assurances about third parties to induce pleas.  In fact, the Supreme Court flagged this issue almost 50 years ago, noting that "a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused … might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider." *Bordenkircher*, 434 U.S. at 364 n.8.  That is no doubt why the "general consensus" among federal courts of appeals is "that guilty pleas made in consideration of lenient treatment as against third persons pose a *greater danger of coercion* than purely bilateral plea bargaining, and that, accordingly, 'special care must be taken to ascertain the voluntariness of' guilty pleas entered in such circumstances." *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979) (emphasis added) (quoting *United States v. Tursi*, 576 F.2d 396, 398 (1st Cir. 1978)).  "A plea negotiation that includes a benefit to a third person can place pressure on a defendant in two respects.  The defendant feels the weight of his own concern to have the benefit conferred and also endures the entreaty of the third person who is anxious to receive the benefit." *United States v. Marquez*, 909

F.2d 738, 742 (2d Cir. 1990).  Understanding this power imbalance, the Fourt Circuit highlights that "prosecutors [must] exercise a high standard of good faith in negotiating such pleas," and "courts accepting such pleas [must] examine them carefully to insure that the accused understands the plea agreement and the consequences not only to himself, but to such third persons as may be affected …." *Harman v. Mohn*, 683 F.2d 834, 838 (4th Cir. 1982).

Nevertheless, the Second Circuit has not proscribed such bargains across the board but has instead held that "[t]he inclusion of a third-party benefit in a plea bargain is simply one factor for a district court to weigh in making the overall determination whether the plea is voluntarily entered." *Marquez*, 909 F.2d at 742.  In evaluating a such condition, several criteria are relevant.

First, "[w]here the plea is entered after the prosecutor threatens prosecution of a third party, courts have afforded the defendant an opportunity to show that probable cause for the prosecution was lacking when the threat was made." *Id.*  Indeed, "a defendant may successfully challenge the voluntariness of his plea by showing that probable cause to prosecute the third party did not exist at the time the defendant pleaded guilty, even if the Government had probable cause to prosecute at an earlier time." *United States v. Seng Chen Yong*, 926 F.3d 582, 592 (9th Cir. 2019).  For example, in a case where, "[a]t the [post-conviction] evidentiary hearing, [a defendant] offered evidence plausibly showing that the prosecution never had the requisite probable cause" to charge the third party and "the government merely averred that the prosecution had acted in good faith," the Tenth Circuit held that a remand was necessary, explaining that "there [wa]s no evidence from which to conclude that the prosecution had probable cause to indict those persons it allegedly threatened to indict." *United States v. Wright*, 43 F.3d 491, 499 (10th Cir. 1994); *see also United States v. Daniels*, 821 F.2d 76, 80–81 (1st Cir. 1987) (similar); *United States v. Abbott*, 241 F.3d 29, 35–37 (1st Cir. 2001) (similar); *United States v. Whalen*, 976 F.2d 1346, 1349 (10th Cir. 1992)

(similar); *Crow v. United States*, 397 F.2d 284, 285 (10th Cir. 1968) ("Relief is sought … on the grounds that officers threatened the prosecution of another person unless appellant pleaded guilty …. A hearing must be held to determine the issue of voluntariness unless the files and records of the case show conclusively that the plea was knowingly and voluntarily entered.").

Conversely, the Second Circuit held in another case that a plea condition that threatened a third party (the defendant's wife) was permissible, *but only after* the Second Circuit noted that the court in which the defendant was convicted had already "conducted a thorough Rule 11 allocution." *Marquez*, 909 F.2d at 742–43. In that case, the Second Circuit noted that "the facts concerning the involvement of defendant's wife in the criminal activity and the extent of her benefit were fully aired before the District Court when she and her husband entered their pleas at the same hearing. Both were ably represented by separate counsel." *Id.* Of course, there has been no such "air[ing]" of the facts here. Similarly, a court in this district held that a plea secured by a threat to prosecute a defendant's daughter was valid because it fulfilled certain criteria:

> Both the [defendant] and her daughter had already been arrested and indicted by the time the government began its plea negotiations with the petitioner. [Her daughter] was indicted for eight separate felony offenses. [The defendant] does not even challenge the underlying prosecution of her daughter as not being in good faith. She merely asserts that by making her daughter's plea contingent upon her guilty plea, the government forced her to make an involuntary plea. All of the details of the plea were freely discussed in open court. [The daughter's] attorney made a statement representing his own agreement with the terms of the plea bargain negotiated between petitioner and the district attorney. The court was fully aware of the circumstances of the plea and repeatedly sought to ascertain [the defendant's] state of mind as to her decision to accept its conditions.

*Allyn v. Comm'r of Corr. Servs.*, 708 F. Supp. 592, 594 (S.D.N.Y. 1989). Again, there has been no similar investigation into the Government's assurances here.

2. This authority confirms that, at a minimum, the Court should conduct a hearing or permit Salame to engage in discovery to afford him an opportunity to show that, judged according to the

foregoing guidelines for third-party-related conditions in plea bargains, the Government's implied condition regarding the campaign-finance charges against Bond was improper.

First, there was no mention during Salame's plea allocution of the government's intention not to pursue campaign-finance charges against Bond if Salame accepted the plea arrangement. *See generally* Dkt. No. 283. Thus, it *cannot* be said that "the facts concerning the involvement," if any, "of [Bond] in the criminal activity" to which Salame pleaded guilty "and the extent of her benefit were fully aired before the District Court," which is a relevant consideration in determining whether a third-party-related plea condition is permissible. *See Marquez*, 909 F.2d at 742–43; *cf. Harman*, 683 F.2d at 838 ("[C]ourts accepting such pleas [must] examine them carefully to insure that the accused understands …."); *Allyn*, 708 F. Supp. at 594 ("All of the details of the plea were freely discussed in open court."); *Crow*, 397 F.2d at 285–86; *Abbott*, 241 F.3d at 35–37. Another consideration underscoring the impropriety of the government's third-party condition in this case is that Bond was not involved in the conduct to which Salame pleaded guilty. Salame pleaded guilty to campaign-finance-related charges, but those charges differ substantially from the violations of which Bond is accused. *See* Salame Decl. ¶ 5; *Nuckols*, 606 F.2d at 570 (holding that fact-finding hearing was necessary as to propriety of plea arrangement because "[t]here is no evidence indicating that appellant's wife was an accomplice to appellant's criminal conduct, or implicated in any other that would have justified her prosecution"); *cf. Marquez*, 909 F.2d at 742–43 ("[T]he facts concerning the involvement of defendant's wife in the criminal activity and the extent of her benefit were fully aired before the District Court …."). Furthermore, unlike situations in which courts have approved third-party-connected conditions in plea arrangements, Salame and Bond had the same counsel at the time Salame entered his plea. *See* Salame Decl. ¶ 7; *cf. Marquez*, 909 F.2d at 743 ("Both [the defendant and the third party] were ably represented by separate

counsel."); *Harman*, 683 F.2d at 837–38 ("[The defendant] was represented by separate counsel, so there can be no claim that an attorney sacrificed one client to free another."); *United States v. Usher*, 703 F.2d 956, 958 (6th Cir. 1983).

In sum, because the Government "threatened the prosecution of another person"—Bond— "unless [Salame] pleaded guilty," and because the "records of the case" do not "show conclusively that the plea was knowingly and voluntarily entered" according to the criteria of voluntariness discussed above, "[a] hearing must be held," or at least discovery must be allowed, "to determine the issue of voluntariness."  *See Crow*, 397 F.2d at 285.

**PRAYER FOR RELIEF**

WHEREFORE, Salame prays this court grant the following relief:

(i)     An order dismissing with prejudice any indictment of Michelle Bond for the campaign-finance offenses the investigation of which was supposed be concluded by Salame's guilty plea in this case;

(ii)    Alternatively, if the foregoing relief is not granted, an order vacating and setting aside the judgment of conviction entered against Salame on May 28, 2024;

(iii)   An order scheduling a fact-finding hearing on the allegations in the instant petition; or

(iv)    An order permitting the parties to take discovery on the allegations in the instant petition; and

(v)     Any other and further relief as this Court may deem just and proper.

August 21, 2024

Respectfully submitted,

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci*
 (D.C. Bar No.453423)
Brian J. Field*
 (D.C. Bar No. 985577)
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
Email: cbartolomucci@schaerr-jaffe.com
Email: bfield@schaerr-jaffe.com

*Pro hac vice* motion submitted

*Counsel for Ryan Salame*