UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

          -against-

SAMUEL BANKMAN-FRIED,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

(S6) 22-cr-0673 (LAK)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/28/2026__

## MEMORANDUM AND ORDER
## DENYING MOTION FOR A NEW TRIAL

LEWIS A. KAPLAN, *District Judge.*

       Samuel Bankman-Fried was charged with masterminding one of the largest financial frauds in American history – specifically, he was charged with two counts of wire fraud, two counts of conspiracy to commit wire fraud, and separate counts of conspiracy to commit securities fraud, commodities fraud, and money laundering. After a long jury trial at which he testified at length, he was convicted on all counts and sentenced principally to a term of imprisonment aggregating 300 months. His appeal is *sub judice* in the Court of Appeals.

       Nevertheless, on February 5, 2026, he moved in this Court – ostensibly *pro se* – for a new trial, primarily relying on supposed evidence that he claims to have been newly discovered. The government filed an extensive and detailed opposition. Bankman-Fried then sought and received extensions of time to file a reply but – the time thus granted having expired – has not done so. Accordingly, the motion is ripe for decision. And the government's opposition having been so thorough, so well documented, and so well taken, it would suffice to express the Court's substantial

2

agreement with the government's entire response and simply deny the motion.  But a few points warrant additional emphasis.

1.    As an initial matter, Bankman-Fried's conviction is on appeal.  In many circumstances, the pendency of an appeal is said to oust the district court of jurisdiction to act on a matter affecting the order or judgment from which the appeal was taken.  But that is only partly true with respect to a motion for a new trial in a criminal case on the basis of newly discovered evidence while a conviction is on appeal.  In such circumstances, Federal Rule of Criminal Procedure 33(b)(1) bars the trial court from *granting* such a motion "until the appellate court remands the case."  But it does not prohibit the trial court from *denying* such a motion.[1]  So the Court's consideration here of Bankman-Fried's motion and, if warranted, its denial are entirely appropriate.

2.    Turning to the merits, Bankman-Fried's motion is based on three supposedly "newly discovered" witnesses whose predicted testimony, he contends, warrants a new trial.  This contention is baseless on multiple independently sufficient levels with regard to each of the witnesses for the reasons thoroughly demonstrated by the government's memorandum.[2]  None of the witnesses, for example, is "newly discovered."  Bankman-Fried well before trial knew all three of them and purportedly knew also what he hoped they would say were they to testify.  He could have obtained or at least sought to compel their testimony.  But he did neither.  His assertion that

---

[1] *United States v. Cronic*, 466 U.S. 648, 667 n.42 (1984); *United States v. Camacho*, 302 F.3d 35, 36 (2d Cir. 2002) (per curiam).

[2] Gov't's Opp'n (Dkt 587) at 13-40.

their absence (or, in one case, the decision of the witness to testify *against* him) was a product of government threats and retaliation is wildly conspiratorial and entirely contradicted by the record.

Even if these individuals had testified for Bankman-Fried, his protestations that one or more of them would have supported his claims that FTX was not insolvent and that his victims all were compensated fully in the bankruptcy proceedings are inaccurate or misleading, and, in any case, immaterial, among other deficiencies. Nor is there any *reliable* evidence of what two of the three witnesses actually would have said if called by the defense, even assuming that they would not have invoked their privileges against self-incrimination had they been called previously by Bankman-Fried or would not do so if called by him in the future. There are no sworn or even unsworn written statements from one – Nishad Singh – beyond his sworn testimony for the government at trial. And the other – Ryan Salame, who pleaded guilty – recently has claimed through self-serving social-media posts and television and podcast interviews that the government's case was a lie and that sworn statements he made during his guilty plea allocution were false. If one were to take Salame at his current word, he lied under oath when pleading guilty before this Court.[3] On the other hand, the evidence on the record before this Court makes it clear that it in fact is Salame's much-belated and now-withdrawn attempt to recant that is false.[4] Mindful of ongoing proceedings in another case in this district that are related to Salame's claims, it suffices to say that Salame's credibility in any event is highly questionable and his out-of-court, unsworn statements

---

[3]
　　　See Salame Plea Tr. (Dkt 283) at 18:24-19:2 (denying that "anyone offered [him] any inducements or threatened [him] or *anyone else*, or forced [him] *in any way* to plead guilty") (emphasis added); *id.* at 19:20-23 (denying that "anyone made *any promises* other than whatever is set forth in the plea agreement that induced [him] to plead guilty") (emphasis added).

[4]
　　　See Salame Hr'g Tr. (Dkt 503) at 17:7-23 (withdrawing recantation *with prejudice*).

4

could not come anywhere close to clearing the bar to warrant a new trial, particularly in light of the "utmost suspicion" with which courts must look upon recantations of prior sworn testimony.[5]

**3.**     This motion appears to be one part of a plan to rescue his reputation that Bankman-Fried hatched and even committed to writing after FTX declared bankruptcy but before he was indicted.  Bankman-Fried – in his own words then memorialized in a few Google documents – laid out in detail a plan to rebuild his reputation by "start[ing] a large PR push," involving "go[ing] on a bunch of stations/podcasts/etc." and "[s]tart[ing to] tweet[] actively," to "[g]et as much support as possible."[6]  He brainstormed a list, again in his words, of "random probably bad ideas" to further that goal, such as (1) "[h]ave Michael Lewis interview [him] on e.g. ABC," (2) engage in what he described as "[r]adical honesty on Twitter–just explain exactly what happened, in detail," (3) "[f]ocus almost exclusively on the fact that we could give value back to customers and the Chapter 11 team is destroying it," and (4) "[g]o on Tucker Carlsen [*sic*]" to (a) "come out as a republican [*sic*]," (b) "[c]ome out against the woke agenda," (c) explain that "[w]hile [his] public contributions show[ed] one thing," – i.e., donations to the Democratic Party – his private contributions showed "another thing" – i.e., donations to the Republican Party, and (d) "[t]alk about how the cartel of lawyers is destroying value and throwing entrepreneurs under the bus in order to cover up the incompetence of lawyers."[7]

---

[5]      *See United States ex rel. Sostre v. Festa*, 513 F.2d 1313, 1318 (2d Cir. 1975) (quoting *United States v. Troche*, 213 F.2d 401, 403 (2d Cir. 1954)).

[6]      Gov't's Sent'g Submission, Ex. B (Dkt 410-2).

[7]      *Id.*, Ex. C (Dkt 410-3).

5

Bankman-Fried, even while on pretrial house arrest and later while incarcerated, has followed his plan to a remarkable degree.  He continued to sit for one or more interviews with Michael Lewis,[8] he (or someone purporting to write on his behalf) wrote about how the Chapter 11 process supposedly destroyed the value of FTX and disseminated that writing on social media,[9] and he went on Tucker Carlson's show to air the very claims he now makes in this motion.[10]  Time and time again, Bankman-Fried has sought to promote his narrative, which he previously described as "this is the reality, here are never before seen [*sic*] facts."[11]  A fatal flaw of that spin (and the present motion) is that Bankman-Fried's so-called "facts" have been seen before. Many times.  They in substance are the same "facts" that during pretrial motion practice he conceded were "irrelevant, speculative, and unduly prejudicial."[12]  They in substance thus are the same "facts" that this Court excluded at trial and that Bankman-Fried now argues on appeal to the

---

[8]

Andrew R. Chow, *Michael Lewis Likens Critics of His New Book on Sam Bankman-Fried to a 'Mob'*, TIME (Oct. 9, 2023, at 9:20 ET), https://time.com/6321668/michael-lewis-sam-bankman-fried-going-infinite/.

[9]

Samuel Bankman-Fried (@SBF_FTX), X, *This is where the money went*. (Oct. 30, 2025, at 22:52 ET), https://x.com/SBF_FTX/status/1984091090795032939.

[10]

TUCKER CARLSON, *Sam Bankman-Fried on Life in Prison With Diddy, and How Democrats Stole His Money and Betrayed Him* (YouTube, Mar. 6, 2025), https://www.youtube.com/watch?v=dN1CR2dyfo8.

[11]

Gov't's Sent'g Submission, Ex. D (Dkt 410-4).

[12]

Def.'s Opp'n Gov't's MIL (Dkt 246) at 28 n.7 (describing "evidence or argument as to whether the FTX Debtor Entities will be able to make their creditors whole" and waiving objection to government's motion "to preclude evidence about the amount of assets that have been recovered through the bankruptcy proceedings for purposes of suggesting to the jury that victims will be made whole").

6

Circuit should have been admitted. In no way are these "facts" never-before-seen, let alone newly discovered.

4.      Finally, Bankman-Fried's appellate brief argues to the Circuit that it should order reassignment of this case to a different district judge were it to remand. On that basis, his new trial motion asks that the undersigned recuse himself from deciding the present motion.

The government has responded to both arguments fully, first in its brief to the Second Circuit[13] and then in its memorandum in opposition to the present motion.[14] The Court adopts all of the points made by the government. But it adds the following.

This claim to disqualify the undersigned never was raised during the multi-week trial. Nor was it made in the nearly five months that elapsed between the verdict[15] and the sentencing[16] during which Bankman-Fried was represented first by his trial counsel and then by newly retained sentencing counsel. Indeed, it was not raised for the first time until September 13, 2024, almost a full year after the verdict, when Bankman-Fried's third set of defense lawyers devoted less than five pages of their eighty-seven-page brief to a request for reassignment to a different judge in the event of a remand.[17] The argument first was raised in this Court upon receipt

---

[13]    Brief for United States (Dkt 50) at 78-80, *United States v. Bankman-Fried*, No. 24-961 (2d Cir. Dec. 13, 2024).

[14]    Gov't's Opp'n (Dkt 587) at 42-44.

[15]    The jury reached its verdict on November 2, 2023.

[16]    The sentencing was held on March 28, 2024, and judgment was entered the next day.

[17]    Brief for Defendant-Appellant (Dkt 28) at 83-87, *United States v. Bankman-Fried,* No. 24-961 (2d Cir. Sept. 13, 2024).

of the present motion on February 10, 2026, over twenty-seven months after the verdict and almost

two years after judgment was entered.

It is well established in this Circuit that:

> "*[A] party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.* Yet, in considering the question of timeliness, the actual time elapsed between the events giving rise to the charge of bias or prejudice and the making of the motion is not necessarily dispositive. A number of factors must be examined, including whether: (1) the movant has participated in a substantial manner in trial or pre-trial proceedings, (2) granting the motion would represent a waste of judicial resources, (3) the motion was made after the entry of judgment, and (4) the movant can demonstrate good cause for delay."[18]

Moreover, a "motion for recusal filed 'weeks' after trial is presumptively untimely."[19]

Here, Bankman-Fried's recusal motion is presumptively untimely. Even if

the presumption were put aside, the fact would remain that he did not raise his claim for

disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating

the alleged basis for the claim. He participated in much of the trial after the occurrence of the events

of which he now complains. At the very least, he obviously had full knowledge of all of the facts

upon which he relies in this Court and in the Court of Appeals no later than November 2, 2023, the

day on which the jury returned its verdict. Yet he proceeded through sentencing without raising the

---

[18] *Apple v. Jewish Hosp. and Med. Ctr.*, 829 F.2d 326, 333-34 (2d Cir. 1987) (internal citations omitted) (emphasis added); *accord Polizzi v. United States*, 926 F.2d 1311, 1321 (2d Cir. 1991); *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 183 (2d Cir. 1991); *In re Agent Orange Prod. Liability Litig.*, 996 F.2d 1425, 1439 (2d Cir. 1993), *abrogated on other grounds by Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28 (2002); *United States v. Brinkworth*, 68 F.3d 633, 639 (2d Cir. 1995); *Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 247 (2d Cir. 1996); *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 488 (2d Cir. 2005); *LoCascio v. United States*, 473 F.3d 493, 497-98 (2d Cir. 2007); *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 122 & n.126 (2d Cir. 2021).

[19] *Apple*, 829 F.2d at 334 (quoting *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986)).

issue. Granting the motion would be a large waste of judicial resources as it could require another judge to familiarize himself or herself with an extensive and complicated record.   Furthermore, the motion was made long (almost two years) after the entry of judgment.  And Bankman-Fried has demonstrated no cause whatsoever for the delay.  He thus certainly has waived any claim in this Court (and likely also in the Court of Appeals) for disqualification.[20]

     **5.**     It bears mentioning that Bankman-Fried has attempted to withdraw the new trial motion from this Court's consideration.  In a typical case, this Court often would grant a defendant's request to withdraw a pending motion *with prejudice* – meaning that the defendant could not refile the motion at a later point and advance the same arguments.  Such a request could indicate the defendant's recognition of the lack of merit of his or her own motion, the merit of the government's opposition, or both.  Granting such a request would obviate the need to issue a ruling and thus further considerations of judicial economy.  But this is not a typical case.  And Bankman-Fried does not request to withdraw his motion with prejudice.  What he requests – and why he requests it – is a horse of a different color.

     After putting both the government, which filed a brief in opposition of almost fifty pages, and the Court to the task of dealing with the motion while his appeal remains pending, Bankman-Fried twice sought and obtained extensions of time within which to file a reply.[21]  Once

---

[20]

     *Polizzi*, 926 F.2d at 1321 (holding that defendant waived recusal claim on appeal by failing timely to move for recusal before trial court); *see also United States v. Bayless*, 201 F.3d 116, 127 (2d Cir. 2000) (distinguishing between untimeliness and waiver and stating that waiver "will preclude appellate courts from entertaining a recusal claim").  *But see Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 794-95 (2d Cir. 2002) (Sotomayor, J.) (holding that appellant did not waive recusal claim raised for first time on appeal but failure to raise below "necessarily limited" appellate review), *abrogated on other grounds by Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142 (2023).

[21]

     Barbara H. Fried's Mar. 12, 2026 Letter (Dkt 588); Def.'s Mar. 16, 2026 Letter (Dkt 590).

9

the time to do so expired, however, he apparently had a change of heart.  He now asks for permission to withdraw his motion *without prejudice to renewal after the appeal is decided*, ostensibly on the ground that he does not believe that he will get a fair hearing before the undersigned.[22]  In other words, he wants to retain the right to refile the motion at some later time of his choosing, perhaps after those most familiar with the extensive and complex trial record no longer are available.

One might think that a movant always ought to be able to withdraw a pending motion.  Indeed, no rule of procedure – civil or criminal – addresses the issue.  Yet, procedural rights and rules (and even pleadings for that matter) exist to facilitate decisions on the merits.[23]  A court accordingly has the discretion to deny leave to withdraw a motion that has been fully briefed in the same way that it may deny a motion to amend a pleading after a certain point,[24] deny a motion to amend or withdraw an admission,[25] deny a motion for voluntary dismissal in certain circumstances,[26] deny a motion to remand a state law claim over which the court has supplemental jurisdiction,[27]

---

[22]

Def.'s Apr. 13, 2026 Letter (Dkt 594).

[23]

Fed. R. Civ. P. 1 ("These rules . . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *see Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 906 (2d Cir. 1977).

[24]

Fed. R. Civ. P. 15(a)(2).

[25]

Fed. R. Civ. P. 36(b).

[26]

*See* Fed. R. Civ. P. 41(a)(2).

[27]

*Galella v. Onassis*, 487 F.2d 986, 996 (2d Cir. 1973).

10

deny a motion to amend a habeas petition,[28] or deny a motion to withdraw a guilty plea.[29]  Indeed, it logically follows that the scope of that discretion must be wider where the movant seeks to retain the right to refile the motion at a later time when it better suits his or her desires, as Bankman-Fried does here.

In such instances, courts must consider whether the interests of justice,[30] including considerations of judicial economy,[31] favor granting the motion.  It therefore is appropriate to deny leave to withdraw a motion – especially where the movant seeks to preserve the right to refile the initial motion at a later time of his or her choice – in the presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of [withdrawal], futility of [withdrawal], etc."[32]

Here, as noted, Bankman-Fried put the government and the Court to the burden of devoting time and effort to the new trial motion that he elected to file during the pendency of the appeal and before the undersigned.  His claimed reasoning behind the motion to withdraw cannot be reconciled – at least in a manner reflecting good faith – with his decision to file the new trial motion in the first instance, particularly in light of the fact that all of the grounds relied on by

---

[28] *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001) (per curiam).

[29] *United States v. Farooq*, 58 F.4th 687, 693 n.2 (2d Cir. 2023).

[30] Fed. R. Civ. P. 15(a)(2).

[31] *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 62 (2d Cir. 2016) (affirming denial of leave to amend); *Galella*, 487 F.2d at 996 (affirming denial of motion to remand).

[32] *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

11

him fully were known to him at least as early as the end of the trial.  The Court accordingly declines

to permit withdrawal of the new trial motion without prejudice.[33]

\*   \*   \*

For the foregoing reasons, as well as for substantially the same reasons stated in the

government's opposition, Bankman-Fried's motion for a new trial and request for recusal of the

undersigned (Dkt 583) are **DENIED** in all respects.  The Clerk is directed to mail a copy of this

memorandum and order to Bankman-Fried.

SO ORDERED.

Dated:       April 28, 2026

Lewis A. Kaplan
United States District Judge

---

[33]   *Cf. Camacho*, 302 F.3d at 36 (denying government's motion to withdraw appeal as "neither appropriate nor necessary at this juncture").